**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA et al.,<br><br>       *Plaintiffs,*<br><br>  v.<br><br>KRISTI NOEM, Secretary of Homeland Security, et al.,<br><br>       *Defendants.* | Civil No.: 8:25-cv-00951-PX<br><br><br>**DEFENDANTS' CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |

**Table of Contents**

INTRODUCTION ................................................................................................. 2

STATEMENT OF FACTS ................................................................................... 3

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ......................................................................................................... 6

I.    Plaintiffs have not made a clear showing that they will likely prevail on the merits. .................................................................... 6

    A.    This Court lacks jurisdiction because Abrego Garcia is not in United States custody. ............................................................ 6

    B.    Plaintiffs cannot show redressability. ........................................ 9

    C.    8 U.S.C. § 1252(g) deprives this Court of jurisdiction............... 11

II.   Plaintiffs have not clearly shown that irreparable harm is likely without the preliminary relief they seek................................. 14

III.  Plaintiffs have not shown that the balance of the equities and public interest clearly weigh in their favor. ......................... 16

CONCLUSION...................................................................................................... 21

## INTRODUCTION

Plaintiffs are a Salvadoran national removed to El Salvador and his two U.S. citizen family members who live in the United States. Compl., ECF No. 1, ¶¶ 4–6. They have sued Defendants, federal officials in their official capacities, seeking declaratory and injunctive relief. *Id.* ¶¶ 7–13; *id.* Request for Relief. The core allegation is that the lead Plaintiff, Abrego Garcia, was removed to El Salvador despite a grant of withholding of removal to that country.

Plaintiffs have moved for a temporary restraining order ("TRO") asking for a prohibitory injunction—an order that Defendants "immediately stop paying compensation to the Government of El Salvador for the detention of Plaintiff Abrego Garcia"—and a mandatory injunction—an order that the federal government "request that the Government of El Salvador return Plaintiff Abrego Garcia to [Defendants'] custody." TRO Mot., ECF No. 6, at 2–3.

This Court should deny the motion because Plaintiffs have not made the requisite showings for a TRO. First, Plaintiffs have not shown they are likely to succeed on the merits of the case. Indeed, they have not shown how this Court has jurisdiction even to issue a TRO in this case. Second, Plaintiffs have not shown a likelihood they will suffer an irreparable injury absent their requested TRO. Finally, Plaintiffs have not shown that the balance of the equities and the public interest weigh in their favor.

## STATEMENT OF FACTS[1]

Plaintiff Abrego Garcia is a citizen and native of El Salvador, and his coplaintiffs are his U.S. citizen wife and five-year-old child, who reside in Maryland. Compl. ¶¶ 4–6, 42. Both Abrego Garcia and his wife work full-time to support their family. *Id.* ¶ 44.

In March 2019, Abrego Garcia was served a notice to appear in removal proceedings, charging him as inadmissible as an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." *Id.* ¶¶ 25–29 (quoting 8 U.S.C. § 1182(a)(6)(A)(i)). During a bond hearing, Immigration and Customs Enforcement ("ICE") stated that a confidential informant had advised that Abrego Garcia was an active member of the criminal gang MS-13. *Id.* ¶ 31. Bond was denied. *See id.* ¶¶ 34, 39; *see also* IJ Order, *infra* Ex. A, at 2–3 (finding that Abrego Garcia was a danger to the community); BIA Opinion, *infra* Ex. B, at 1–2 (adopting and affirming IJ Order, specifically finding no clear error in its dangerousness finding).

Abrego Garcia then filed an I-589 application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. Compl. ¶ 35. Although Abrego Garcia was found removable, the immigration judge granted him withholding of removal to El Salvador in an order dated October 10, 2019. *Id.* ¶ 41.

---

[1] As alleged in the complaint, except as to the exhibits attached to this memorandum.

Plaintiffs allege that, on March 12, 2025, Abrego Garcia was stopped by ICE officers, who informed him that his immigration status had changed. *Id.* ¶¶ 48–50; *see also* Cerna Decl., *infra* Ex. C, ¶ 11. After being detained, he was questioned about gang affiliations and transferred ultimately to a detention center in Texas. Compl. ¶¶ 53, 56; Cerna Decl. ¶¶ 2, 11. Plaintiffs allege Abrego Garcia was told he would be removed to El Salvador and detained at the CECOT prison there. Compl. ¶¶ 56–57 & n.1.

On March 15, although ICE was aware of his protection from removal to El Salvador, Abrego Garcia was removed to El Salvador because of an administrative error. Cerna Decl. ¶¶ 12–15. On March 16, a news article contained a photograph of individuals entering intake at CECOT. *Id.* ¶ 59. Abrego Garcia's wife identified one of the detainees depicted as her husband based on his tattoos and head scars. *Id.*

Plaintiffs allege, based on a news article, that the federal government "has paid or continues to pay the Government of El Salvador six million dollars in order for the Government of El Salvador to detain" individuals removed there from the United States, "including Plaintiff Abrego Garcia." *Id.* ¶ 65 & n.2.

## LEGAL STANDARD

Emergency injunctive relief is an extraordinary remedy requiring "a clear showing that the plaintiff is entitled to relief." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, (2008)); *Seth v. McDonough*, 461 F. Supp. 3d 242, 257 (D. Md. 2020) ("[T]he standards for a temporary restraining order and a preliminary injunction are the

same." (citing *Int'l Longshoremen's Ass'n, Local 333 v. Int'l Longshoremen's Ass'n, AFL-CIO*, Civil No. 15-813, 2015 WL 1402342, at *1 (D. Md. Mar. 25, 2015))). Plaintiffs' motion asks this Court, "on an incomplete record, [to] order a party to act, or refrain from acting, in a certain way." *Seth*, 461 F. Supp. 3d at 257. Thus, "[t]he danger of a mistake in this setting is substantial." *Id.* (alteration in original) (quoting *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)). This Court must therefore exercise its discretion with caution. *See id.* This concern is even greater when, as here, the "requested immediate injunctive relief deeply intrudes into the core concerns of the executive branch." *Adams v. Vance*, 570 F.2d 950, 954 (D.C. Cir. 1978); *see also Sampson v. Murray*, 415 U.S. 61, 83–84 (1974) (A court is "quite wrong in routinely applying . . . the traditional standards governing more orthodox 'stays'" in an area to which "the Government has traditionally been granted the widest latitude.").

Additionally, the mandatory preliminary injunctive relief Plaintiffs request "is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). The standard for obtaining a mandatory injunction is thus "even more searching" than the already "exacting standard of review" for a prohibitory injunction. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).

The factors this Court considers, as prescribed by *Winter*, are (1) whether the party seeking the injunction is "likely to succeed on the merits," (2) whether that party is "likely to suffer irreparable harm" absent the injunction, (3) whether "the

balance of hardships tips in [that party's] favor," and (4) whether the "injunction is

in the public interest." *Id.* at 320. This Court must ensure that each factor is

"satisfied as articulated" before an injunction may issue. *Stinnie v. Holcomb*,

77 F.4th 200, 208 (4th Cir. 2023) (en banc) (quoting *Real Truth About Obama, Inc.*

*v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089

(2010))). The latter two factors "merge when the Government is the opposing party."

*Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*,

556 U.S. 418, 435 (2009)).

## **ARGUMENT**

### I.    **Plaintiffs have not made a clear showing that they will likely prevail on the merits.**

#### A.    **This Court lacks jurisdiction because Abrego Garcia is not in United States custody.**

Plaintiffs' claims fall within the historical "core" of the writ of habeas corpus.

Because Plaintiffs' claims sound in habeas, they can proceed only in habeas. But

because Plaintiffs concede that Abrego Garcia is not in United States custody, this

Court cannot hear those claims.

Habeas corpus "is the appropriate remedy to ascertain . . . whether any

person is rightfully in confinement or not." *DHS v. Thuraissigiam*, 591 U.S. 103,

117 (2020) (quoting 3 Joseph Story, *Commentaries on the Constitution of the United*

*States* § 1333, p.206 (1833)). Thus, habeas requires as an essential element of

jurisdiction that the detainee be in the custody of the United States. *See, e.g.*,

*Carafas v. LaVallee*, 391 U.S. 234, 238 & n.9 (1968); *Smith v. Ashcroft*, 295 F.3d

425, 428 (4th Cir. 2002). And a person "is held 'in custody' by the United States

when the United States official charged with his detention has 'the power to produce him.'" *Munaf v. Geren*, 553 U.S. 674, 686 (2008) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

The Supreme Court and Fourth Circuit's case law confirms that core habeas claims like the ones Plaintiffs bring—claims that challenge the authority of the Executive to exercise a power that led to the detention—*must* be brought in habeas. *See, e.g.*, *Nance v. Ward*, 597 U.S. 159, 167 (2022) ("[A]n inmate must proceed in habeas when the relief he seeks would 'necessarily imply the invalidity of his conviction or sentence." (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994))); *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (answering in the affirmative the question "whether the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy available" despite the broad language of 42 U.S.C. § 1983); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (explaining that if "an action [i]s one challenging the legality of physical confinement . . . the only proper avenue for relief was a petition for a writ of habeas corpus").

Here, Plaintiffs seek review of the legality of the Executive's restraint of and removal of Abrego Garcia to El Salvador, leading to his present detention there. Compl. ¶ 63 (alleging Defendants "decided to deport Plaintiff Abrego Garcia without following the law"). Plaintiffs make it clear that the ultimate relief they seek is his return to the United States to live at liberty with his family. *Id.* ¶¶ 76–77, 82–83,

88–89, 94–95 (alleging irreparable harm from separation from his family and asking "the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States.") Because Plaintiffs seek Abrego Garcia's release from allegedly unlawful detention on the grounds that it was effected illegally, they make a core habeas claim, and they must therefore bring it exclusively in habeas.

But there is no jurisdiction in habeas. Plaintiffs admit—as they must—that the United States does not have custody over Abrego Garcia. They acknowledge that there may be "difficult questions of redressability" in this case, reflecting their recognition that Defendants do not have "the power to produce" Abrego Garcia from CECOT in El Salvador. Mem. Supp. TRO Mot. 2. But even more, they concede that Abrego Garcia is not in Defendants' custody. *Id.* (asking the Court to order Defendants to "request that the government of El Salvador return Plaintiff to Defendants' custody"). Despite their allegations of continued payment for Abrego Garcia's detention, Plaintiffs do not argue that the United States can exercise its will over a foreign sovereign. The most they ask for is a court order that the United States entreat—or even cajole—a close ally in its fight against transnational cartels. This is not "custody" to which the great writ may run. This Court therefore lacks jurisdiction.

And even if the writ were to run to Abrego Garcia's custody in El Salvador, the fact remains that the writ acts not on the detainee but the custodian. 28 U.S.C.

§§ 2242–43. Thus, a custodian with the power to produce Abrego Garcia must be physically within the jurisdiction of this Court for this Court to exercise jurisdiction in habeas. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). But the only Defendant alleged to be within the physical jurisdiction of this Court is Defendant Nikita Baker. Compl. ¶¶ 3, 10. And no allegation is made that Defendant Baker, the Baltimore Field Office Director for ICE, has the power to produce Abrego Garcia to this Court. *See id.* ¶¶ 3, 10, 63 (containing the only allegations in the complaint about Defendant Baker individually).

### B.     Plaintiffs cannot show redressability.

Plaintiffs cannot, as they must, show that it is "'likely,' as opposed to merely 'speculative,' that [their alleged] injury will be 'redressed by a favorable decision'" in this Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)); *see also id.* ("The party invoking federal jurisdiction bears the burden of establishing [redressability]."). A failure to do so means that the "irreducible constitutional minimum" of standing to sue in federal court is not met. *Id.* at 560. This Court thus lacks Article III jurisdiction, for there is no justiciable case or controversy.

When "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . .

permit redressability of injury." *Id.* at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)). Here, "Plaintiffs' injury can only be redressed by [a] foreign nation[] not before the court." *Lin v. United States*, 690 F. App'x 7, 8–9 (D.C. Cir. 2017) (collecting cases) (dismissing claim for declaratory relief for lack of redressability because plaintiffs did not show "that a court ruling invalidating [certain] decrees would likely cause [other nations] to provide relief"). Plaintiffs concede that Abrego Garcia is in the custody of El Salvador, a foreign sovereign over which this Court "has no jurisdiction." TRO Mot. 2. Plaintiffs instead seek orders from this Court directing the United States to obtain Abrego Garcia's release from Salvadoran custody by financial pressure and diplomacy. *Id.* at 2–3. But they have made no showing that such measures are *likely*, not merely speculative, to obtain the ultimate relief they seek—Abrego Garcia's release. There is no showing that any payment made to El Salvador is yet to occur; no showing that El Salvador is likely to release CECOT detainees but for any such payment; no showing that El Salvador is even inclined to consider a request to release a detainee at the United States' request.

Although their motion and supporting memorandum contemplate the futility of this Court's order, Plaintiffs relegate the redressability requirement to a later time. *Id.* at 2 ("If those efforts are unsuccessful, the parties can brief any further remedial steps that may lie within this Court's jurisdiction."); Mem. Supp. TRO Mot., ECF No. 10, at 2 ("This case may end up raising difficult questions of redressability in a subsequent phase, but a preliminary injunction should issue

promptly."). To the contrary—if Plaintiffs cannot clearly show a likelihood of satisfying redressability *now*, they cannot obtain the extraordinary remedy of a TRO. *See Lujan*, 504 U.S. at 561 ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). Even if Plaintiffs could surpass the lighter burden of showing redressability for purposes of pleading, they have not met their higher burden for purposes of preliminary equitable relief.

Because this Court has no power over a foreign sovereign and because Plaintiffs have not clearly shown that enjoining Defendants as Plaintiffs ask will likely redress their injuries, Plaintiffs lack standing for the relief they seek.

### C.    8 U.S.C. § 1252(g) deprives this Court of jurisdiction.

This Court lacks jurisdiction to review Defendants' removal of Abrego Garcia. Section 1252(g) deprives district courts of jurisdiction to review "*any* cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien" under the INA, notwithstanding any other provision of law, except as otherwise provided in § 1252. 8 U.S.C. § 1252(g) (emphasis added). Interpreting this provision, the Supreme Court has held the statute's plain language bars any claim related to conduct falling within one of these three events—commencing proceedings, adjudicating cases, or executing removal orders.

*See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). While section 1252(g) "does not sweep broadly," the provision's "narrow sweep is firm" and this Court cannot "entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). It "precludes judicial review of 'any' challenge to 'the decision or action by [DHS] to . . . execute removal orders'" which "includes challenges to DHS's 'legal authority' to do so." *Id.* at 965 (alteration in original); *see also Camarena v. Director, ICE*, 988 F.3d 1268, 1273–74 (11th Cir. 2021) ("No matter how [the plaintiffs] characterize their claims, they amount to an attack on the government's execution of their removal orders. That runs afoul of § 1252(g): If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."). And, although authority exists permitting "substantive review of the underlying legal bases for" an execution of an order of removal, that review is limited to whether a removal order exists at all. *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006); *see also Camarena*, 988 F.3d at 1273.

Here, Plaintiffs' claims are challenges to the execution of his removal order, review of those claims is barred in the district courts under § 1252(g). Contrary to their assertion otherwise, *see* Mem. Supp. TRO Mot. 10, they specifically challenge the decision to execute Abrego Garcia's removal order. Compl. ¶ 63 (alleging Defendants "decided to deport Plaintiff Abrego Garcia without following the law"). Their bare assertion that "there was no removal order to execute," Mem. Supp. TRO

Mot. 10, is refuted by their own admission. Mem. Supp. TRO Mot. 1 ("The government could have chosen to remove Mr. Abrego Garcia to any *other* country on earth, but did not."). *See also* Compl., Ex. A, at 2 ("Based on [Abrego Garcia]'s admissions and concessions, the Court found his removability to be established by clear and convincing evidence as required by INA § 240(c)(3)."); *id.* at 14 (granting withholding of removal under INA § 241(b)(3)).

And Plaintiffs' claims for relief fall within the § 1252(g) prohibition because they each raise a challenge "by or on behalf of" Abrego Garcia to the decision to execute his removal order. *See* Compl. ¶¶ 74, 79, 85, 92; *see also Mapoy v. Carroll*, 185 F.3d 224, 228 (4th Cir. 1999) (where basis for claim is denial of stay of removal and continued detention in anticipation of removal, claim arises from decision to execute order of removal); *see also Duron v. Johnson*, 898 F.3d 644, 647–48 (5th Cir. 2018) (court must look at substance of complaint to determine whether claim is "by or on behalf of" alien; complaint of unlawful discrimination against U.S. citizen's alien father, styled as violating U.S. citizens' Fifth Amendment rights, is necessarily claim on behalf of father "to be free of such discrimination").

Here, Plaintiffs' contention that their challenge to the Executive's destination of removal does not fall within § 1252(g) because the destination is illegal under the INA, Mem. Supp. TRO Mot. 10, is circular and proves too much. Under their logic, this Court may assume jurisdiction to decide whether the order is legal, but if the order were determined legal, then jurisdiction would disappear again. Besides the fact that this Court must determine its own jurisdiction before reaching the merits

of a claim, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), if Plaintiffs were correct, then any challenge to the legality of a removal order would avoid § 1252(g) altogether. But Congress added that provision precisely to avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings," which such an interpretation of § 1252(g) would incentivize. *Reno*, 525 U.S. at 487.

Thus, because Plaintiffs' claims arise from Defendants' decision to execute Abrego Garcia's removal order, those claims cannot be raised in this Court, and preliminary relief cannot issue.[2]

## II. Plaintiffs have not clearly shown that irreparable harm is likely without the preliminary relief they seek.

Plaintiffs cannot meet the second *Winter* requirement, either. They point only to two irreparable harms they say they will suffer: the separation of Plaintiffs' family, and the alleged risk that Abrego Garcia will be tortured or killed in CECOT.

---

[2] Abrego Garcia should have requested a stay of removal in connection to a motion to reopen directed to the immigration judge, 8 C.F.R. § 1003.23(b)(v), and then filed a petition for review in the Fourth Circuit if the immigration judge (and Board of Immigration Appeals on appeal) ultimately denied reopening. That was Congress's intent—to streamline all matters into review of a final order of removal. *See* 8 U.S.C. § 1252(a)(5) (petition for review exclusive means of judicial review), (b)(9) (judicial review of all questions of law and fact arising from "any action taken . . . to remove an alien from the United States under this subchapter" available only in petition for review); *Shaboyan v. Holder*, 652 F.3d 988, 990–91 (9th Cir. 2010) ("[T]he BIA's order denying Shaboyan's request for a stay would still be reviewable as part of a petition for review stemming from a final order of removal.").

And Plaintiffs could have taken these steps while Abrego Garcia was still in the United States—Plaintiffs allege he was able to talk to his wife by phone multiple times and that, the morning of March 15, he told his wife that there were plans to remove him to El Salvador. Compl. ¶¶ 52–57. Plaintiffs' failure to invoke the appropriate remedy when they had the chance does not mean there was no adequate remedy to review the impending removal action.

Mem. Supp. TRO Mot. 8.[3] But family separation is not an injury of the kind necessary to prevail on this factor in light of the Supreme Court's admonishment not to "routinely apply[] . . . the traditional standards governing more orthodox 'stays'" in an area to which "the Government has traditionally been granted the widest latitude." *Sampson*, 415 U.S. at 83–84.

And Plaintiffs have not clearly shown a likelihood that Abrego Garcia will be tortured or killed in CECOT. Plaintiffs point to little evidence about conditions in CECOT itself (focusing primarily on its capacity for detainees), instead extrapolating from allegations about conditions in different Salvadoran prisons. Goebertus Decl., Ex. B to Mem. Supp. TRO Mot., ¶¶ 2–4; Bishop Decl., Ex. C to Mem. Supp. TRO Mot., ¶¶ 24 & n.17, 30 & n.27. While there may be allegations of abuses in other Salvadoran prisons—very few in relation to the large number of detainees—there is no clear showing that Abrego Garcia himself is likely to be tortured or killed in CECOT.

More fundamentally, this Court should defer to the government's determination that Abrego Garcia will not likely be tortured or killed in El Salvador. "[S]eparation of powers principles . . . preclude the courts from second-guessing the Executive's assessment of the likelihood a detainee will be tortured by a foreign sovereign." *Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009). The United States, as a signatory to the Convention Against Torture, is committed not

---

[3] Notably, Plaintiffs do not contend that Abrego Garcia is threatened by the reason he gave to get withholding of removal—alleged harm from the Barrios 18 gang's extortion of his family's pupusa shop. *See generally* Ex. 1 to Compl.

to return a person to a country where that person is likely to be tortured. *See generally* 8 C.F.R. § 1208.18. And, as one of Plaintiffs' declarants concedes, "El Salvador is a signatory to both the Convention Against Torture and the International Covenant on Civil and Political Rights." Bishop Decl. ¶ 32. Although the government erred in removing Abrego Garcia specifically to El Salvador, the government would not have removed *any* alien to El Salvador for detention in CECOT if it believed that doing so would violate the United States' obligations under the Convention. That judgment is therefore due respect under separation-of-powers principles. *See Kiyemba*, 561 F.3d at 515.

Thus, Plaintiffs cannot show the clear likelihood of irreparable harm necessary to satisfy the second *Winter* factor, especially in light of heightened burden necessitated by the intrusion of Plaintiffs' requested relief on the core of Executive foreign-affairs functions.

## III.    Plaintiffs have not shown that the balance of the equities and public interest clearly weigh in their favor.

Nor can Plaintiffs prevail on the remaining *Winter* factors. Abrego Garcia is a danger to the community—he is estopped from asserting otherwise—and there is a weighty public interest in ensuring the Executive can implement a unified course of conduct in foreign affairs. These interests tip the balance decisively against the Plaintiffs' asserted interests.

Abrego Garcia is barred from disputing that, as a member of the criminal gang MS-13, he is a danger to the community. This factual finding was made in his bond proceedings before the agency, IJ Order 2–3, and he appealed that finding to

the Board of Immigration Appeals, which affirmed it as not clearly erroneous, BIA

Opinion 1–2. Because he did not seek further review of the Board's decision, that

decision is a final judgment precluding relitigation of the issues it resolved. *Hagan*

*v. McNallen* (*In re McNallen*), 62 F.3d 619, 624 (4th Cir. 1995) (noting that

collateral estoppel may apply to administrative proceedings as well as judicial).

Collateral estoppel applies when "(1) the issue sought to be precluded [was]

the same as that involved in the prior action, (2) that issue [was] actually litigated,

(3) it [was] determined by a valid and final judgment, and (4) the determination

[was] essential to the prior judgment." *Combs v. Richardson*, 838 F.2d 112, 115

(4th Cir. 1988) (quoting *In re Ross*, 602 F.2d 604, 607–08 (3d Cir. 1979)); *see also In*

*re McNallen*, 62 F.3d at 624 (requiring that "the party against whom the prior

decision was asserted enjoyed a full and fair opportunity to litigate that issue in an

earlier proceedings").

Here, Abrego Garcia cannot now relitigate the finding that he is a danger to

the community. That issue was actually litigated and decided in his bond hearing in

2019. IJ Order 2–3 ("Respondent failed to meet his burden of demonstrating that

his release from custody would not pose a danger to others, as the evidence shows

that he is a verified member of MS-13" and he "has failed to present evidence to

rebut that assertion."). He appealed that decision to the appropriate administrative

review body, the Board of Immigration Appeals, which adopted and affirmed the

immigration judge's "danger ruling" notwithstanding Abrego Garcia's arguments.

BIA Opinion 1–2. There is no evidence of further review by the Fourth Circuit, and

17

the time for such review has passed, so the agency decision is a valid and final judgment. Moreover, because the Board affirmed the immigration judge solely on the ground that Abrego Garcia was a danger to the community, that ground is essential to the judgment. Restatement (Second) of Judgments § 27 cmt. o (Am. L. Inst. 1982). Finally, Abrego Garcia had a full and fair opportunity to litigate the issue. He had the opportunity to give evidence tending to show he was not part of MS-13, which he did not proffer. IJ Order 2–3. And he had sufficient motivation to challenge the finding—he needed to prevail on it to obtain bond pending his removal proceedings. *See* Compl. ¶ 39 (discussing missing the birth of his son because he was detained); *accord* Restatement (Second) of Judgments § 28 cmt. j (discussing unfairness in applying preclusive effect to first judgment when "the amount in controversy in the first action [was] so small in relation to the amount in controversy in the second"). Thus, the finding of Abrego Garcia's danger to the community is conclusive, and he is estopped from challenging it now.

In light of Abrego Garcia's danger to the community, the balance of equities and the public interest tip against an injunction ordering Defendants to orchestrate his return to the United States. Although there is a "public interest in preventing aliens from being wrongfully removed," *Nken*, 556 U.S. at 435, there too is a strong public interest in not importing members of violent transnational gangs into the country. *See id.* at 436 (noting a heightened "interest in prompt removal" if an "alien is particularly dangerous"). And though the danger to the general public may be mitigated if Abrego Garcia were detained upon return to the United States, even

while in detention, gang members may stoke violence against government officials and other detainees. *See* Michael E. Miller, Wash. Post, *"Vying for Control": How MS-13 Uses Violence and Extortion in America's Jails* (Feb. 4, 2018).[4] And detainees may also escape.

Further, as discussed above, an injunction as Plaintiffs request would harm the public interest by preventing the Executive from implementing a unified course of conduct for the United States' foreign affairs. "[M]atters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'" *Hernandez v. Mesa*, 589 U.S. 93, 103–04 (2020) (ellipsis in original) (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). "Between the two political branches, only the Executive has the characteristic of unity at all times," giving him the capability, which the other departments of government lack, "of engaging in the delicate and often secret diplomatic contacts" necessary in foreign affairs. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14–15 (2015). Thus, ordering the Executive to renege on any promise of payment that might exist would threaten the nation's credibility in any future negotiations or allow foreign negotiators to seek to leverage the disunity in foreign policy caused by this Court's order. *See id.*; *cf. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 ("[T]he President's maximum power to persuade rests on his capacity to bargain for the benefits of access to the entire

---

[4] *Available at* https://www.washingtonpost.com/local/vying-for-control-how-ms-13-uses-violence-and-extortion-in-americas-jails/2018/02/04/c8b8ab92-06c8-11e8-8777-2a059f168dd2_story.html.

national economy without exception for enclaves fenced off willy-nilly by inconsistent political tactics."). And ordering the Executive to request the release of a member of a gang responsible for violence and drug trafficking throughout the Americas threatens the country's national security. Such orders would therefore constitute "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013).

The heavy interest in the President's primacy in foreign affairs outweigh the interests on the Plaintiffs' side of the scale. Although the Defendants recognize the financial and emotional hardships to Abrego Garcia's family, *see* Compl., Ex. 2, ¶ 47, the public interest in not returning a member of a violent criminal gang to the United States outweighs those individual interests. *See Nken*, 556 U.S. at 436. And to the extent that the Plaintiffs assert a general public interest in not perpetuating unlawful agency action, Mem. Supp. TRO Mot. 9, they have made no showing that the removal of Abrego Garcia to El Salvador was something other than an administrative error, *see* Cerna Decl. ¶¶ 12–15.

Because Plaintiffs have not made a clear showing that a TRO is warranted under these circumstances, their motion should be denied.

## <u>CONCLUSION</u>

The motion should be denied.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

s/Erez Reuveni
**Erez Reuveni**
Acting Deputy Director
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 307-4293
Erez.R.Reuveni@usdoj.gov

**Christopher Ian Pryby**
Trial Attorney
Office of Immigration Litigation

Dated: March 31, 2025                    *Counsel for Defendants*