1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
2                 GREENBELT DIVISION

3   _____
                                          )
4   KILMAR ARMANDO ABREGO GARCIA,         )
    et al.,                               )
5                                         )
        Plaintiff,                        )
6                                         )Docket Number
             vs.                          )8:24-cv-00951-PX
7                                         )
    KRISTI NOEM, et al,                   )
8                                         )
        Defendant.                        )
9   _____)

10              TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE PAULA XINIS
11             UNITED STATES DISTRICT COURT JUDGE
              FRIDAY, APRIL 4, 2025, AT 1:00 P.M.
12  APPEARANCES:

13  On Behalf of the Plaintiff:
        BY:  SIMON SANDOVAL-MOSHENBERG, ESQUIRE
14      MURRAY OSORIO
        4103 Chain Bridge Road, Suite 300
15      Fairfax, VA  22030
        (703)352-2399
16
        BY:  JONATHAN COOPER, ESQUIRE
17      QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
        1300 I Street NW
18      Suite 900
        Washington, DC  20005
19      (202)538-8000

20  On Behalf of the Defendant:
        BY:  EREZ REUVENI, ESQUIRE
21      UNITED STATES DEPARTMENT OF JUSTICE
        450 Fifth Street NW
22      Washington, D.C. 20530
        (202)t616-8962
23
    ALSO PRESENT:  Jennifer Vasquez Sura, Plaintiff
24

25      ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

```
 1                    P R O C E E D I N G S

 2         (Court called to order.)

 3         DEPUTY CLERK:  All rise.  The United States District

 4    Court for the District of Maryland is now in session.  The

 5    Honorable Paula Xinis presiding.

 6         THE COURT:  Good afternoon everyone.  You all can

 7    have a seat.

 8         Mr. Ulander.

 9         DEPUTY CLERK:  The matter now pending before the

10    court is Civil Action Number PX25-951, Kilmar Armando Abrego

11    Garcia, et al. v. Kristi Noem, et al.  The matter comes before

12    this Court for a motions hearing.

13         Counsel, please identify yourselves for the record.

14         MR. SANDOVAL-MOSHENBERG:  Good morning, Your Honor.

15    Simon Sandoval-Moshenberg from the law firm Murray Osorio. With

16    me is Jonathan Cooper from the law firm Quinn, Emmanuel,

17    Urquhart, and Sullivan; and plaintiff Jennifer Vasquez Sura for

18    the plaintiffs.

19         THE COURT:  Okay.

20         MR. REUVENI:  Good afternoon.  Erez Reuveni from the

21    Department of Justice.

22         THE COURT:  I'm sorry.  Can you speak up a little bit

23    so I can hear you?

24         MR. REUVENI:  Yes.  Sorry, Your Honor.

25         Erez Reuveni from the Department of Justice, for
```

1  defendants.

2          THE COURT:  Okay.  Mr. Reuveni, am I saying your name

3  right?

4          MR. REUVENI:  You are.  Thank you, Your Honor.

5          THE COURT:  Okay.  Great.  Give me one second here.

6      Okay.  All right.  Counsel, at some point, I'm going to

7  have to get my computer up and running, but let's begin.

8      This -- we're all here together today on a motion from the

9  plaintiffs for a preliminary injunction.  The motion was filed

10 at ECF 10 and 11, and as you all know, the evidence has been

11 produced, but I want to check in with each of you to make sure

12 that you're not intending -- or if you are, intending to call

13 any witnesses or put on any additional evidence from both

14 sides, I would like to know it now.

15     So Mr. Sandoval-Moshenberg?

16         MR. SANDOVAL-MOSHENBERG:  No, Your Honor, the facts

17 of the case seem to be largely undisputed.

18         THE COURT:  Okay.  Well, we'll see about that.  But I

19 just wanted to make sure that there wasn't any additional

20 evidence presentation that you wished for today.

21         MR. SANDOVAL-MOSHENBERG:  That's right, Your Honor.

22         THE COURT:  Okay.

23     Same question to you, Mr. Reuveni.

24         MR. REUVENI:  Nothing further evidentiary-wise from

25 the government, Your Honor.

4

```
1            THE COURT:  Okay.  Well, word of caution, with
2   respect to questions of fact, if you're going to represent a
3   fact, and you don't have evidence to back it up, then it is not
4   a fact that the Court will recognize.  That's just the way that
5   it works in a court of law.
6        With respect to the law at issue, what I ask of both sides
7   is if you're going to cite me to authority, one, it should be
8   in your briefs already, but two, if not, it should be a rare
9   case in which that happens that you give me the case, the
10  citation, and -- and point me to the -- to the language you
11  want me to look at.  Because if these binders are any
12  indication, we've been working overtime to make sure that we
13  have considered all arguments from all sides and then some, and
14  I do need your help in directing me to where you want me to
15  look so that we make the best use of this time.
16       As I see it, there's some preliminary jurisdictional
17  questions, and then there are the Winter factors.  I intend to
18  hear them all.  It seems to me, best, to ask the movant to go
19  first, addressing first jurisdiction and then the Winter
20  factors, and then I'll turn to the government.  Okay?
21            MR. SANDOVAL-MOSHENBERG:  Thank you, Your Honor.
22            THE COURT:  All right.
23            MR. SANDOVAL-MOSHENBERG:  Your Honor, the government
24  raises two jurisdictional bars to this case, first the core
25  habeas argument that this was not filed as a habeas corpus
```

1  petition, and then 1252(g).

2       With regards to the core habeas argument, this is not a

3  case challenging his detention by the United States, primarily.

4  This is a case that was filed as a complaint for injunctive

5  relief.  It's challenging his deportation as having had -- not

6  only no basis in law, but being actually directly prohibited by

7  the governing law.

8       His detention for roughly a weekend prior to being

9  deported was really incidental to this case and isn't really

10 being challenged here.  And --

11          THE COURT:  I'm sorry.  I'm sorry.  Can I ask a

12 question about that?

13          MR. SANDOVAL-MOSHENBERG:  Of course, Your Honor.

14          THE COURT:  Have you gotten any information, any

15 document, any -- anything that we see in the ordinary course,

16 when a person is arrested, to explain the basis for the arrest?

17          MR. SANDOVAL-MOSHENBERG:  No, Your Honor.

18          THE COURT:  So not a warrant, not a statement of

19 probable cause, not a police report, nothing?

20          MR. SANDOVAL-MOSHENBERG:  Nothing.  The Cerna

21 declaration is the only factual information that we've been

22 given.

23          THE COURT:  The Cerna declaration?

24          MR. SANDOVAL-MOSHENBERG:  That's correct.

25          THE COURT:  Okay.  All right.  Go ahead.

1      Sorry to interrupt.

2           **MR. SANDOVAL-MOSHENBERG:**  So really we don't think

3     the habeas corpus necessarily applies here.  We have pled a

4     cause of action for habeas corpus in the alternative on the

5     theory of essentially constructive custody.  I think there's,

6     candidly, factual development that would need to be done in

7     order for that claim to proceed, but we're really not relying

8     on that here today.  We're relying on the fact that this is a

9     complaint for injunctive relief.  We've stated causes of action

10    under the withholding of removal statute, procedural due

11    process, administrative procedural act.

12           **THE COURT:**  Can I ask, with respect to that, there is

13    one area in which I think jurisdiction and perhaps the remedy

14    overlap.

15           **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.

16           **THE COURT:**  Because to the extent you are making the

17    argument that I can and should order the government to return

18    Mr. Abrego Garcia forthwith, immediately, because there is just

19    no basis, it was conceded to be a mistake, what do you say in

20    response to what I believe the argument will be that the United

21    States no longer has control over him, so how can they bring

22    him back?

23           **MR. SANDOVAL-MOSHENBERG:**  Your Honor, Courts

24    routinely order the United States to facilitate the return of

25    individuals.  We cited to the government's brief, to the

```
 1   Supreme Court, and in the Nken case, in which the government
 2   represented to the Supreme Court that they do this all the
 3   time, and the Supreme Court relied on that.
 4        Mindful of Your Honor's admonition not to bring new law
 5   into the matter, I do have one case I would like to cite to the
 6   Court.  I can hand it up, if you would like, but it's Ramirez
 7   v. Sessions, it's 887 F.3d 693, which is a 2018 case from the
 8   Fourth Circuit.
 9        I can hand that up, if would you like.
10             THE COURT:  Okay.
11             MR. SANDOVAL-MOSHENBERG:  But the Fourth Circuit
12   granted an immigration appeal in a relatively routine case, and
13   then the last paragraph says, "We therefore grant Ramirez's
14   petition for review, vacate the order of removal, and remand
15   with directions for the government to facilitate Ramirez's
16   return to the United States for the purpose of participating in
17   further proceedings."
18        So the Fourth Circuit issues orders of this nature all the
19   time.  I've got two others, but they are basically word for
20   word the same.
21        It's pretty clear that Courts can order the government to
22   facilitate the return of an individual who is wrongly departed.
23             THE COURT:  And in these cases, obviously, what
24   you're talking about is folks who have been deported to a
25   country but not have actually been placed in a detention center
```

1    without any other independent lawful basis like

2    Mr. Abrego Garcia has.  These are just folks who are returned

3    to their country of origin, and then the Fourth Circuit is

4    saying, we command you, United States, to bring them back, to

5    facilitate bringing them back.  Is that the take-home point

6    here?

7              MR. SANDOVAL-MOSHENBERG:  I believe that to be

8    correct.  I think that this Court does have jurisdiction to

9    order the government to facilitate the return of

10   Mr. Abrego Garcia.  I think that it would be premature for this

11   Court to find that that cannot happen, that the government will

12   be incapable of doing that.

13         And then I think the facts in the record show that there's

14   significant coordination between the two governments with

15   regards to operations at this prison, not least of which being

16   defendant Kristi Noem being inside the walls of that prison on

17   Wednesday of last week.  So I think there's good reason to

18   believe that the government will be successful in facilitating

19   the return if so ordered.

20         We -- we understand that the government gets to take a

21   first and fair crack at it.  I'm -- the thing that flabbergasts

22   me the most about this case is they haven't done so.

23             THE COURT:  What do you mean by that?

24             MR. SANDOVAL-MOSHENBERG:  Your Honor, candidly, I

25   expected that between the time we filed this lawsuit and today,

1    they would be reaching out to me to say, all right, we agree

2    that we messed this one up, here's what we're doing to try to

3    bring him back.  And then their argument before this Court will

4    be something to the effect of, well, we're already working on

5    it.  You know, Judge, please don't get in the way, because

6    we're already working on it.

7          I expected that that was going to be the tenor of their

8    argument.

9          Instead, their argument is they've got no responsibility

10   to do anything about this situation whatsoever.  And

11   furthermore, that the Court can't order them to do anything

12   about the situation whatsoever.

13         Our position is that the Court does have jurisdiction to

14   order them to facilitate his return, and what we would like is

15   for the Court to enter that order and then enter a very --

16   relatively prompt status report ordering the government to

17   update the Court as to its efforts to comply with the order.

18         We think the government should be put on a very short

19   leash on this case with regards to how much time given --

20              **THE COURT:**  And before get to remedy --

21              **MR. SANDOVAL-MOSHENBERG:**  Of course, Your Honor.

22              **THE COURT:**  -- can we make sure we've tagged all the

23   bases with respect to the arguments --

24              **MR. SANDOVAL-MOSHENBERG:**  Yes, Judge.

25              **THE COURT:**  -- that the government makes?

1    The first is that this sounds, in habeas, it's a core

2  habeas challenge.  Frankly, I don't see it that way.  I

3  don't -- I think you have pled the case as you have chosen to

4  plead the case, and that the first four counts, especially the

5  statutory claim, the INA claim, the due process claim, all

6  challenges the fact of the removal to a country in which the

7  government was prohibited from removing Mr. Abrego Garcia to.

8  Never mind putting him in a facility where he faces the very

9  persecution of the persecutor that the IJ, also part of the

10  government, found to be a reason why he's not to be deported

11  there.

12    That's what you're challenging, correct?  You're not

13  challenging a condition of confinement or the fact of

14  confinement.  And frankly, the way I've been thinking about

15  this, and I would like your input on it, as well as the

16  government's, is you would be bringing the same challenge if

17  Mr. Abrego Garcia were removed to El Salvador and were on the

18  streets of El Salvador?

19         MR. SANDOVAL-MOSHENBERG:  That's exactly right, Your

20  Honor.  We would be bringing the same case if he were at large.

21    The fact that he's detained in a CECOT prison goes

22  certainly to irreparable harm, it goes to the speed at which

23  the government should be ordered to carry out its remedy.  And

24  then issues on relationships between the government of the

25  United States and the CECOT prison, you know, certainly would

1    be a defense to any claim of impossibility by the government.

2    But the remedy that we're ordering would be the same if he

3    were, you know, at large in El Salvador today.

4            **THE COURT:**  Okay.  So that handles that -- the

5    question from -- if I'm getting it right, unless you have

6    something else to add, to the this is not a core habeas action.

7    The -- the argument that the INA prohibits me, strips me of

8    jurisdiction, I believe, is the alternative argument that the

9    government has made.

10           **MR. SANDOVAL-MOSHENBERG:**  Yes, Your Honor.

11       Courts have generally held that Section 1252(g) applies to

12   actions seeking judicial review of removals under the INA.

13   This was not a removal under the INA, it was a removal entirely

14   outside of the INA.  The Courts hearing cases on the Alien

15   Enemies Act removals, which this was not --

16           **THE COURT:**  Right.

17           **MR. SANDOVAL-MOSHENBERG:**  -- it was temporally

18   proximate to the Alien Enemies Act removal, but it was not an

19   Alien Enemies Act removal.  Having agreed that 1252(g) doesn't

20   bar challenges to removals under other legal authority.

21   Likewise, the *Huisha-Huisha* court from the D.C. circuit, which

22   we cited with the Title 42 expulsions during COVID, and several

23   other cases that we've cited have all agreed that 1252(g)

24   prohibits review of removals under this chapter, and on the

25   facts of this case, it was not a removal under this chapter.

1          **THE COURT:**  So the argument is, even though, first, I

2    have to read that statute -- I don't read it expansively.

3    That's what the Supreme Court has said.  It has to fall into

4    one of three discrete categories, the only conceivable one here

5    would be the execution of a removal order.  But one, it has to

6    be a nondiscretionary -- it has to be a discretionary decision,

7    but I think more to your point, it has to be a lawful one.

8       If the challenge is to an execution of a deportation

9    order, which is, on its face, unlawful, then isn't that the

10   very thing that a district court can hear in the first

11   instance?

12          **MR. SANDOVAL-MOSHENBERG:**  I would even take a step

13   further -- step back further than that, Your Honor.

14          **THE COURT:**  Okay.

15          **MR. SANDOVAL-MOSHENBERG:**  And say that on the facts

16   of this case, there was no removal order to El Salvador at all.

17          **THE COURT:**  Because you haven't been -- you haven't

18   been given one, right?

19          **MR. SANDOVAL-MOSHENBERG:**  Correct.  He --

20          **THE COURT:**  Nothing?  No warrant of removal, no --

21   nothing that you would otherwise see in the ordinary course, is

22   that what you're saying?

23          **MR. SANDOVAL-MOSHENBERG:**  Correct.

24       If they had chosen to remove him to Panama, we would have

25   a very different case in front of us, and the 1252(g) argument

1    would -- we would still have a response to that, but I think it

2    would certainly carry a lot more water.  But in this case,

3    there was no removal order El Salvador at all.

4           **THE COURT:**  So what if the government gets up and

5    says well, in 2019, in order to find withholding of removal,

6    there had to be a removal order to begin with, and this was

7    just a big mistake, that's the order that was executed, but

8    there was a removal order.  What's your response to that?

9           **MR. SANDOVAL-MOSHENBERG:**  Your Honor, there is no

10   such thing as a removal order to no country, right?  So he is

11   certainly removable to many, many countries on earth,

12   El Salvador is simply not one of them.

13          **THE COURT:**  Okay.  So what you're saying, if I'm -- a

14   very practical sense is, you have certainly not seen an

15   executed removal order from the attorney general, am I getting

16   that right?  Or who --

17          **MR. SANDOVAL-MOSHENBERG:**  I'm sure if there were one,

18   they would have attached it to their pleadings.

19          **THE COURT:**  And you have not seen a companion warrant

20   for removal, meaning the very permission -- the very thing that

21   would give the agents, at the time that they apprehended

22   Mr. Abrego Garcia, permission to do so; am I right?

23          **MR. SANDOVAL-MOSHENBERG:**  That's right, Your Honor.

24          **THE COURT:**  And so you're saying, this just isn't a

25   removal at all?

1        MR. SANDOVAL-MOSHENBERG:  Correct.  This was not a

2  removal pursuant to a removal order in the INA because there

3  was no removal order as to El Salvador.  This was essentially

4  the equivalent of a forcible expulsion.

5        THE COURT:  And so it's -- yeah, the jurisdiction

6  stripping provision of the INA just simply does not apply?

7        MR. SANDOVAL-MOSHENBERG:  That's our contention, Your

8  Honor.

9        THE COURT:  Okay.  How about, lastly, redressability?

10 The government makes the argument that this case is not

11 redressable because there's nothing they can do now.  What do

12 you say to that?

13       MR. SANDOVAL-MOSHENBERG:  Yeah, Your Honor, I mean

14 they are coming before this Court saying we have tried nothing

15 and we're out of options.  I think it's really premature for

16 the government to ask this Court to find, as a matter of law,

17 that there's no steps that could be taken that would result in

18 Mr. Abrego Garcia being brought back to the United States.

19    We are not going to ask the Court to micromanage that

20 process.

21    We are going to ask the Court to order that they do it.

22 We are going to give them a fair chance to do it.  But then

23 we're also going to ask the Court to keep them on a very short

24 leash, both due to the fact that they didn't get things started

25 in the first place prior to today's hearing, and then also,

```
 1   quite candidly, due to statements from the White House press
 2   secretary that, quote, he's not coming back to the United
 3   States, closed quote.
 4       So we're not going to ask the Court, to, you know, order
 5   particular government functionaries to communicate particular
 6   messages to particular other government functionaries.  And we
 7   do think that any foreign policy considerations can be
 8   adequately addressed by the government if it deemed so
 9   necessary, filing its status report under seal.
10           THE COURT:  And I'm sorry, I didn't catch the last
11   part of what you said was the basis to file it under seal.
12           MR. SANDOVAL-MOSHENBERG:  Well, if the government so
13   seeks.  You know, if the government is worried that providing
14   detailed explanations of their steps to get him back,
15   essentially, how they are complying with what I hope this Court
16   will order today, if the government is worried that revealing
17   that information would reveal, you know, sensitive foreign
18   policy information, then of course --
19           THE COURT:  They haven't argued that, right?
20           MR. SANDOVAL-MOSHENBERG:  Right, but if they do,
21   plaintiffs won't object to them filing it under seal.
22           THE COURT:  There's nothing in the pleadings.
23       Okay.  All right.  That's fine.  Do you know to move to
24   the Winter factors?
25           MR. SANDOVAL-MOSHENBERG:  Sure, Your Honor.  I think
```

that likelihood of success on the merits is practically

established given that the facts are undisputed.  They had --

they admit that they had no legal authorization to remove him

to El Salvador.  The parties quibble over whether it was

negligent or reckless, but I don't think that really makes any

difference at all to the ruling that we're asking this Court to

enter today.

Irreparable harm, I think the government's argument that

unless it rises to the level of torture, irreparable harm can't

be found, I think, doesn't have any support in the case law.  I

think clearly we've shown evidence that he's subject to harsh

treatment above and beyond the ordinary erroneous deportation,

and that that is sufficient under the Fourth Circuit standard

to meet the irreparable harm standard.

And then, finally, with regards to the equities in the

public interest, I think the Fourth Circuit is fairly clear,

the public interest lies in, you know, that the -- the

government following the law, essentially, that the -- the

substantial public interest in having governmental agencies

abide by the federal laws that govern their existence and

operations, that's a D.C. Circuit case; the Fourth Circuit has

held similarly.

The government raises a lot of issues about, you know,

their contention that this individual is an MS-13 gang member.

We've provided evidence explaining why he isn't.  But in any

1    event, that's a matter for the immigration court to decide on

2    further proceedings once he's brought back to the United

3    States.

4             THE COURT:  I've been given -- again, I mean, that's

5    just chatter, in my view.  I haven't been given any evidence.

6    I haven't been given any -- you know, in a court of law, when

7    someone is accused of membership in such a violent and

8    predatory organization, it comes in the form of an indictment,

9    a complaint, a criminal proceeding that is then -- you know,

10   has robust process so we can assess the facts.

11        I haven't yet, I'll hear from the government in a moment,

12   heard any of those.

13             MR. SANDOVAL-MOSHENBERG:  Your Honor --

14             THE COURT:  Have you?

15             MR. SANDOVAL-MOSHENBERG:  No, Your Honor, and I think

16   it's right on the nose that Your Honor mentioned, indictment,

17   because if he were indicted for any of these crimes, you know

18   what they would be doing right now?  They would be extraditing

19   him from El Salvador to the United States.

20        So I think the fact that they do this, you know, all day

21   every day, we extradite drug lords from Columbia prisons, we

22   extradite cartel leaders from Mexican prisons, we've extradited

23   MS-13 leaders from El Salvadorian prisons, this is not

24   something that's outside of the government's power.

25             THE COURT:  And likewise, you have not received any

1  information that the opposite is true, that there is some

2  charge out in El Salvador for which there is an extradition

3  treaty, and that your client is facing some other reason why

4  he's being detained in El Salvador?  You see what I'm saying?

5          **MR. SANDOVAL-MOSHENBERG:**  Correct, Your Honor.

6          **THE COURT:**  Okay.

7          **MR. SANDOVAL-MOSHENBERG:**  The evidence indicates --

8  the evidence in the form of a tweet from the President of

9  El Salvador, and the responsive tweet from the Secretary of

10  State Rubio indicates that he is being detained at the

11  direction of the United States, not detained -- detained in a

12  CECOT prison at the direction of the United States, not due to

13  any legal process in El Salvador.

14          **THE COURT:**  Okay.  All right.

15          **MR. SANDOVAL-MOSHENBERG:**  Anything further, Your

16  Honor?

17          **THE COURT:**  No.  But given that you're the movant,

18  I'll certainly give you the last word.

19          **MR. SANDOVAL-MOSHENBERG:**  Thank you, Judge.

20          **THE COURT:**  Okay.  Thank you.

21      All right.  Mr. Reuveni, why don't we take it in the same

22  order.

23          **MR. REUVENI:**  Certainly, Your Honor.  Thank you.

24      Just one housekeeping item, I have given -- I've given

25  your court a notice of appearance today.

1          **THE COURT:**  Okay.

2          **MR. REUVENI:**  I've not actually been able to enter an

3    appearance on the docket due to technical issues that I don't

4    need to waste the Court's time with.

5          **THE COURT:**  Yes.  That's fine.

6      Mr. Ulander has told me he has received it and it's on the

7    docket.  So I do appreciate that.

8          **MR. REUVENI:**  Thank you.  My apologies for that.

9      So the facts are conceded.  This person --

10         **THE COURT:**  I'm sorry?

11         **MR. REUVENI:**  The facts -- we concede the facts.

12   This person should -- the plaintiff, Abrego Garcia, should not

13   have been removed.  That is not in dispute.

14         **THE COURT:**  Okay.  Let's -- okay.  That's -- and I

15   appreciate that.  That's an important concession.

16   Mr. Abrego Garcia should not have been removed, right?

17         **MR. REUVENI:**  Yes.

18         **THE COURT:**  Can you answer for me, then, on what

19   authority was he seized?  When he was -- when he was taken off

20   the street, taken out of his car, what authority did those law

21   enforcement officers have to do that?

22         **MR. REUVENI:**  So, Your Honor, my answer to a lot of

23   these questions is going to be frustrating.  I am also

24   frustrated that I have no answers for you on a lot of these

25   questions.

1      **THE COURT:** Okay. And don't -- I'm not shooting the

2 messenger, okay? Because I really do appreciate your candor in

3 this respect, but I do take that answer seriously in that if

4 there isn't a document, a warrant, a statement of probable

5 cause, then there is no basis to have seized him in the first

6 place. That's how I'm looking at it. So that's why I wanted

7 to give you ample opportunity to be heard on that, because

8 that's a very important, in my view, that -- that -- that

9 supports everything that the plaintiff is saying, if even when

10 he was picked up, this was a quote, unquote, mistake, that

11 means from the moment he was seized, it was unconstitutional.

12    So I just -- I wanted to make sure there isn't any warrant

13 of removal, you know, an IN -- what is it? What's the name of

14 the form? I have it here that we're missing.

15      **MR. REUVENI:** I think you're thinking of the I-205,

16 perhaps? Or I-200, an arrest warrant?

17      **THE COURT:** I can tell you -- right. Exactly. The

18 arrest warrant that says it is a warrant of removal which gives

19 the ICE officer the authority to seize the person pursuant

20 to -- yep, ICE Form I-205. You're exactly right.

21      **MR. REUVENI:** So I have a couple of responses, and

22 again, they are not going to be fully satisfactory.

23    We have the Cerna declaration from an ICE officer

24 explaining how things got to this point.

25    But before we get to that, I should sort of push back just

1    a little bit on the characterization of an absence of removal

2    order.

3         As plaintiffs' counsel noted, there is a final order of

4    removal, it is -- but the individual -- Mr. Abrego Garcia

5    cannot be removed to El Salvador due to the withholding grant

6    he received.

7              **THE COURT:**  Right.

8              **MR. REUVENI:**  That final order of removal is still

9    valid to remove Mr. Abrego Garcia anywhere else in the world so

10   long as the procedure is followed.

11             **THE COURT:**  Okay.  That's fine.  And I just -- I want

12   to ask, though, the very specific question, if there is a final

13   order of removal, what -- what document got this process

14   started?  There is no warrant for his arrest by an order of

15   removal.  There is no statement of probable cause.  There's no

16   charge.  There's no report that says that anyone saw Mr. Abrego

17   Garcia doing anything illegal or criminal.  So what is the

18   actual document that gave these officers the authority to start

19   this process?

20             **MR. REUVENI:**  That is not in the record, and the

21   government has not put that into the record.  And that's the

22   best I can do.

23             **THE COURT:**  All right.  Well, that's helpful.  Thank

24   you.

25             **MR. REUVENI:**  And so, really, all I can point the

1    Court to is Paragraphs 11 to 15 of the Cerna declaration.

2    That's the only evidence before you explaining why Immigration

3    and Customs Enforcement picked this -- picked plaintiff up on

4    the date that he was picked up.

5         Paragraph 11 does not refer to any warrant, just refers to

6    his alleged role in MS-13.  It also refers earlier in the

7    declaration to the events that led to the Alien Enemies flights

8    that left the United States in the case now pending before

9    Judge Boasberg in the District of Columbia.  As I understand

10   this declaration, and what this declaration says, is he was

11   picked up as part of that.  And that was --

12           **THE COURT:**  Part of what?

13           **MR. REUVENI:**  Of that group of individuals who were

14   picked up under the Alien Enemies Act to be put on a plane and

15   sent to El Salvador.

16           **THE COURT:**  See, I read it differently.  I read

17   this -- and Mr. Cerna, or Officer Cerna, whatever we call him,

18   Director Cerna, he is not here, right?

19           **MR. REUVENI:**  He is not here.

20           **THE COURT:**  Okay.  So the way I read it from Page --

21   from Paragraph 6 is that there was a plane with Title 8 removal

22   order detainees, which is its whole other kettle of fish, I

23   should say.  But my understanding is that Mr. Abrego Garcia was

24   on that flight, correct?

25           **MR. REUVENI:**  That is correct.

1      What I meant, Your Honor, that flight went out the same

2   weekend.  So he was picked up in that -- whatever ICE was doing

3   that weekend to get these -- to get -- pick up a number of

4   individuals that they believed they were -- had the authority

5   to send to El Salvador, either under the Alien Enemies Act or

6   under a Title 8 removal order.

7          **THE COURT:**  Okay.  So if there's a Title 8 removal

8   order, there would be an order of removal that's being

9   executed, and we don't have one for Mr. Abrego Garcia, right?

10         **MR. REUVENI:**  We don't have that document in the

11  record.  That is the removal order from 2019 that cannot be

12  executed as to El Salvador.

13         **THE COURT:**  Got it.

14      And so when Mr. Cerna says, in that same paragraph, this

15  removal was an error, I am to infer that that means because

16  there was no valid executable removal order as to Mr. Abrego

17  Garcia, am I right?

18         **MR. REUVENI:**  I don't want to quite use those terms,

19  because you'll see in a minute when we talk about 1252(g), but

20  this order could not be used to send Mr. Abrego Garcia to

21  El Salvador, that is correct.

22         **THE COURT:**  What order?

23         **MR. REUVENI:**  This removal order he has from 2019 of

24  which he also has withholding of removal of, so --

25         **THE COURT:**  Do you have that order?

1          **MR. REUVENI:**  I do --

2          **THE COURT:**  Is it in the record?

3          **MR. REUVENI:**  I do not have that order.  It is not in

4    the record.

5        What we do have is the -- I think plaintiffs put this in,

6    so we did not, it's Exhibit 1-1.

7          **THE COURT:**  Okay.

8          **MR. REUVENI:**  It is the decision --

9          **THE COURT:**  Right.

10          **MR. REUVENI:**  -- in removal proceedings that led to

11    the withholding of removal decision.  It's 13 pages.  This

12    is -- if you look at the last page, you can see what the

13    decision was.

14          **THE COURT:**  Yes.

15          **MR. REUVENI:**  The government did not appeal that

16    decision, so it is final.

17          **THE COURT:**  Okay.  And what that means, as a matter,

18    if I'm getting it right, is that there may have been an order

19    of removal which the immigration judge said must be withheld.

20          **MR. REUVENI:**  As to El Salvador.

21          **THE COURT:**  As to El Salvador.

22          **MR. REUVENI:**  Correct.

23          **THE COURT:**  And so that is pursuant to the INA, it's

24    a law Congress passed, and that means that order cannot be

25    executed, right?

1              **MR. REUVENI:**  That is what that means.

2         **THE COURT:**  As a matter of law?

3         **MR. REUVENI:**  That is what that means.

4         **THE COURT:**  Okay.  All right.  Very good.  And

5    there's not a factual question in that respect?

6         **MR. REUVENI:**  There's no dispute that the order could

7    not be used to send Mr. Abrego Garcia to El Salvador.

8         **THE COURT:**  Okay.  All right.  Very good.

9         **MR. REUVENI:**  So to go to the primary argument the

10   government has, and I mean, I'll just say it up front, if

11   you're not buying our jurisdictional arguments, like, we're

12   done here, right.  So our only arguments are jurisdictional.

13   We have nothing to say on the merits.  We concede he should not

14   have been removed to El Salvador.

15        **THE COURT:**  Okay.

16        **MR. REUVENI:**  We have three arguments.  I think

17   starting with 1252(g), so I will also apologize, I have two

18   cases for you that are not in our brief, that I think go to the

19   heart of the dispute as to whether 1252(g) applies to a

20   nonexecutable order, as Your Honor has put it.

21        There's a circuit split on this.

22        **THE COURT:**  Well, can I -- can I just put sort of a

23   bit of a finer point on it?

24        **MR. REUVENI:**  Sure.

25        **THE COURT:**  It's not just it was not executable, this

1    was an illegal act.  I mean, you've conceded the merits.  If

2    you've conceded the merits, then you've conceded that the

3    plaintiff is going to win on the acts of DHS, of the named

4    defendants.  Those acts were in violation of the Immigration

5    and Nationality Act.  That means that Congress said can't do

6    it, they did it anyway.

7         So it's just not a matter of executing an unexecutable

8    order or -- you know, this is -- this is -- this is orders of

9    magnitude different in that regard.

10             MR. REUVENI:  So here's why -- if the Court will

11    indulge me for a moment --

12             THE COURT:  Sure.

13             MR. REUVENI:  -- why I think it does matter.  And

14    again, my apologies, these are not in the brief.  We can give

15    you a short supplemental pleading if you would like, but I can

16    just give you the cases.

17             THE COURT:  Why don't you give me the cases.

18             MR. REUVENI:  There's a circuit split on this.

19    There's cases that support plaintiff on this, and there's cases

20    that support the government.

21         These are all cases wherein there was a stay --

22             THE COURT:  I was just about to say.  Are these the

23    stay cases?

24             MR. REUVENI:  These are the stay cases.  If you have

25    those already, I won't -- but just to get it in the record.

1          **THE COURT:**  Mr. Jenkins, we have these, don't we?

2      Yeah, but this is not a stay, right?

3          **MR. REUVENI:**  It's the same practical effect.  You

4  cannot execute the order.  And so the stay takes away the legal

5  effect.  The argument --

6          **THE COURT:**  Can I ask you a question about that,

7  though?

8          **MR. REUVENI:**  Sure.

9          **THE COURT:**  When there is a stay, is that a stay that

10  either the immigration judge or the BIA or the Fourth Circuit

11  issues, or is that a stay of another source of authority?

12          **MR. REUVENI:**  It's one of those three that you've

13  identified.  So the one -- the one at issue in two of the

14  cases, it's an automatic stay if you appeal your order to the

15  Board of Immigration Appeals.

16          **THE COURT:**  Okay.

17          **MR. REUVENI:**  And I think this is in plaintiffs'

18  brief, citing to *Nken,* the effect of the stay is to take away

19  the legal effect of the removal order.  So it has the same

20  practical effect as a withholding of removal for purposes of

21  whether, in our view, 1252(g) applies.

22          **THE COURT:**  Although this is a different legal

23  posture, in that it is not a stay, it's an outright violation

24  of the Immigration and Nationality Act 1231, right, which says

25  the attorney general may not deport or remove, I can't remember

 1  that exact language, back to the country for which withholding

 2  of removal has been granted.

 3      So can you ask -- answer for me why should I -- I mean

 4  this, is a highly unusual circumstance.  I dare say

 5  unprecedented.  Why am I looking to the stay cases for analogy,

 6  especially if there's a circuit split?

 7          **MR. REUVENI:**  We -- my job is to find the best

 8  authority for my client, and that's what I've done.  That's

 9  what the brief has, these are the cases I've got.

10          **THE COURT:**  Okay.

11          **MR. REUVENI:**  There is no case directly on point to

12  Your Honor's question.

13          **THE COURT:**  Okay.  All right.  I understand.

14      And so your argument is, the stay has the same practical

15  effect as what DHS did here?

16          **MR. REUVENI:**  Yes.  So if I can just briefly point to

17  the same sort of arguments that were raised in the *Silva* case,

18  866 F.3d 938, that's the Eighth Circuit.

19          **THE COURT:**  Yes, I've got it.

20          **MR. REUVENI:**  And *Foster,* 243 F.3d 210, that's the

21  Fifth Circuit case.  And put it all out there, there's

22  obviously a case going the other way, as I mentioned, in the

23  Ninth Circuit*, Arce,* 899 F.3d 796.

24      And so the dispute between the parties in each of those

25  cases is whether something that has no legal effect, if it's

1  unlawful from the get-go, whether the Court can review that

2  before deciding whether the 1252(g) applies, and the Ninth

3  Circuit says yes; the Eighth Circuit and the Fifth Circuit say

4  no.

5        To me, that seems similar to the situation we have here.

6        Plaintiffs cite one other case out of Sixth Circuit,

7  *Enriquez-Perdomo,* that's in the briefs, that sides with the

8  Ninth Circuit on this issue in a slightly different context

9  involving the wrongful removal of an individual by DACA.

10 That's not quite this circumstance here as well.

11       But those are the cases.  I know there's a couple of

12 district court cases, one of which plaintiff cites in his brief

13 that follows the Ninth Circuit.  There's a couple of others

14 that are not in our briefs that go the other way.  So there's a

15 circuit split and no controlling authority on this exact set of

16 facts.

17            **THE COURT:**  Okay.  And just so I'm clear, in -- in

18 *Silva*, in particular, there was an order from an immigration

19 judge to deport, and Mr. Silva was fighting that deportation,

20 right?

21            **MR. REUVENI:**  That's correct.

22            **THE COURT:**  He was appealing it.

23            **MR. REUVENI:**  He appealed it, and by operation of a

24 regulation that was applicable at the time.  It may have

25 changed, but it was the same sort of regulation now that stayed

1  the effect of the order.

2      **THE COURT:**  But here we actually have an immigration

3  judge making findings as to why the removal would be unlawful

4  because Mr. Abrego Garcia would be subject.  There was a clear

5  probability, which means, what, more likely than not, that he

6  would be subject to persecution and torture in El Salvador.  I

7  see that as distinct in that where Mr. Silva lost, essentially,

8  before the IJ and the Court, was simply pressing pause before

9  the execution of the order was lawfully obtained.  Here,

10  there's no lawful way that the United States could execute that

11  order because of what the immigration judge had found.

12      So I -- again, I'm not even yet convinced that these

13  cases, which I appreciate you saying they go both ways, would

14  really apply because of the difference, the substantive

15  difference in the decision that would -- that led to the

16  withholding of that removal order.

17      **MR. REUVENI:**  So I will push back a little bit on

18  that.  Yes, this order --

19      **THE COURT:**  Okay.

20      **MR. REUVENI:**  -- could not have been executed, as

21  we've all agreed in this court today.  But the text of

22  8 U.S.C. 1252(g) doesn't make so fine a distinction.  It says

23  simply execute an order of removal.

24      And the way I read *Silva* and the way I read *Foster*, it

25  didn't matter to those Courts whether the underlying order

1  itself, there was no legal authority to execute it.  And that's

2  what made the difference.

3       The Ninth Circuit went the other way.

4       And there's a little bit of wrinkle, of course, you

5  mentioned discretionary and versus nondiscretionary decisions

6  earlier --

7            THE COURT:  Correct, right.

8            MR. REUVENI:  -- and we get that from *Reno,* I think.

9  But I don't believe --

10           THE COURT:  Well, we also don't get that from in our

11 circuit.  So there's *Bowrin* in the Fourth Circuit.  My

12 wonderful colleague, Judge Grimm, followed it in a case very

13 similar in that when the detainee is challenging the execution

14 of a removal order for which there was no discretion, and

15 should not have happened, then it -- it goes to the heart of

16 the -- of the legal question, it's a pure legal question, did

17 the government violate the law.  There's a companion question

18 here.  Did the government deny Mr. Abrego Garcia due process,

19 and then did they violate the APA?  All of which are -- because

20 you've conceded the facts, are pure questions of law.

21      At least in our circuit, the way I read the cases, it

22 would be not.  My jurisdiction has not been stripped because

23 what the plaintiff is challenging is the outright illegality.

24 Not any sort of decision-making that -- in other words, this

25 would be a different situation if the plaintiff was conceding

1  legality, but challenging the basis for the decision.  That's

2  at least how I read the cases in this circuit in my district.

3       Would you disagree with that?

4            **MR. REUVENI:**  That is not an unreasonable reading.

5       I am not familiar with the Fourth Circuit case you

6  mentioned.  I didn't see it in plaintiffs' papers.  But I

7  believe you.  And if there is controlling law in the Fourth

8  Circuit that makes that discretionary/nondiscretionary

9  distinction, then that seems to put the Fourth Circuit squarely

10  with the Ninth Circuit on this point.

11            **THE COURT:**  Well, what *Bowrin* says is that following

12  *Reno,* that the Supreme Court reasoned that 1252(g) does not

13  apply to, quote, all claims arising from deportation

14  proceedings, because 1252 stripped federal courts of

15  jurisdiction only to review challenges to the attorney

16  general's decision to exercise her discretion to initiate or

17  prosecute these three specific stages that we've talked about.

18       And so *Bowrin,* at least, suggests that -- well, I believe

19  it holds that when the -- when the -- when the issue is a

20  question of discretion, then my jurisdiction is stripped.  But

21  when the issue is a pure question of nondiscretionary law or of

22  constitutional magnitude, whereas you say the facts are not

23  disputed, then I have jurisdiction to hear the matter.  So --

24            **MR. REUVENI:**  So just to put the -- to respond to one

25  of your points, to put our argument in the record and move on,

 1    since I understand you can read it that way.

 2              **THE COURT:**  Sure.  Okay.

 3              **MR. REUVENI:**  1252(g) does cover constitutional

 4    claims, discretionary or otherwise.  It says any cause or

 5    action, statutory and nonstatutory, regardless --

 6              **THE COURT:**  But isn't that what *Reno* said?  You can't

 7    read it so expansively, because then that rule would swallow

 8    all questions of jurisdiction.  I would never have jurisdiction

 9    to hear anything.  And that's what all of these circuits, you

10    know, have followed, and that's why we're having a conversation

11    about a circuit split when it came to stays, right?  I mean,

12    you would agree with that?  It's not -- it can't be read so

13    expansively.

14              **MR. REUVENI:**  *Reno* does say that.

15              **THE COURT:**  Okay.

16              **MR. REUVENI:**  I want to make clear our point, though,

17    that we don't concede that just because it raises a

18    constitutional claim, that takes it outside of 1252(g).

19              **THE COURT:**  Understood.

20              **MR. REUVENI:**  I understand Your Honor's discretionary

21    and nondiscretionary distinction, and understand that if you

22    view it that way, our argument doesn't work.

23              **THE COURT:**  Okay.  Got it.  Thank you.

24              **MR. REUVENI:**  I do have one other or two other

25    points, I know just briefly, I'll touch on.

```
1         You mentioned in your colloquy with plaintiffs' counsel

2    that you didn't view this as a habeas case, and that may be so,

3    that may be right, because they pleaded in the alternative, and

4    they asked one of their two forms of relief is for you to order

5    the government to cease paying the country of El Salvador to

6    detain Mr. Abrego Garcia, that, to me, sounds like an argument

7    that he -- plaintiffs believes he's in the constructive custody

8    of the United States.  And that's why we've spent some time in

9    our brief discussing habeas jurisdiction.

10        THE COURT:  Well, isn't that, though, really a

11   response to the argument, if I read your argument right, that,

12   hey, there's nothing we can do about it now, he's -- he's in

13   a -- he's in another country, somewhere else, we have no

14   control to practically redress the injury?

15        MR. REUVENI:  We made that argument in response to

16   the opening papers in the complaint, which both made the

17   argument, as I understood it, and if I misunderstood it, that's

18   my fault, that they believed -- or plaintiffs believed that

19   there's an argument to be made that Mr. Abrego Garcia is still

20   in the constructive custody of the United States, because the

21   United States, in plaintiffs' view, is paying for El Salvador

22   to detain him.

23        THE COURT:  Well, in what -- what basis is he held in

24   CECOT?  And I hope I'm saying that right.  But what basis is he

25   held?  Why is he there of all places?
```

1              **MR. REUVENI:**  This is where I'm going to respond in a

2    frustrating way:  I don't know.

3              **THE COURT:**  You don't know?

4              **MR. REUVENI:**  I don't know.  That information has not

5    been given to me.  I don't know.

6              **THE COURT:**  Okay.  Well, then, again, for everyone

7    here, that means there is no evidence that there is a basis to

8    hold him in the very place, in the very country that this

9    administration, that the -- the immigration judge was -- it was

10   2019, said should never have happened.  So -- so we got that

11   straight.

12       But let me ask you this:  So there's not some other legal

13   authority to hold him?

14             **MR. REUVENI:**  I don't know.

15             **THE COURT:**  Let --

16             **MR. REUVENI:**  Oh, I'm sorry.

17             **THE COURT:**  Can we talk about, then, just very

18   practically, why can't the United States get Mr. Abrego Garcia

19   back?

20             **MR. REUVENI:**  Your Honor, I will say, for the Court's

21   awareness, that when this case landed on my desk, the first

22   thing I did was ask my clients that very question.

23       I've not received, to date, an answer that I find

24   satisfactory.

25             **THE COURT:**  Okay.  Well, I, again, appreciate your

1  candor.

2       The way I see the record, though, is that there is an

3  agreement between your clients and El Salvador where your

4  clients are the payor of $6 million.  And the payor to house

5  individuals who, but a couple of weeks ago, were in the custody

6  of immigration, just happened to be in the United States, but

7  there's nothing to suggest that they are still not in the

8  custody of DHS and immigration, they are just being housed in

9  El Salvador.

10       And what is more, is that the named defendants in this

11  case have told the public, and I can take note of this, that

12  plaintiffs have put it in their pleadings, that the facility is

13  one of the tools in the United States' tool kit that the United

14  States will use if an individual commits crimes against the

15  American people.

16       The Republic of El Salvador has confirmed that they will

17  hold individuals for one year pending the United States'

18  disposition -- decision on disposition; that the contract, or

19  the agreement is renewable after one year.  There were terms

20  and conditions under which certain people were transported and

21  certain people were returned.

22       The United States had the ability -- we know this from

23  JGG, the United States had the ability and in fact returned

24  certain people.  They are affiants now in JGG.  All of this

25  points to a functional control, and that if the United States,

1    as a contracting party, can strike terms and conditions for the

2    placement, then certainly they have the functional control to

3    unwind that decision when -- the wrong decision when it comes

4    to Mr. Abrego Garcia.  Those are the facts -- the findings of

5    fact that I'm prepared to make in terms of the practical

6    implications of an order to -- to return him.

7        Tell me what the impediment is to that or why that's not

8    the case.

9            MR. REUVENI:  So just so I -- just to give you the

10   correct line of argument here, I heard you say earlier to

11   plaintiffs' counsel you didn't view this as a habeas case, but

12   now what we're talking about is constructive control for

13   purposes of finding this person to be in the custody of the

14   United States constructively, which to me sounds like habeas.

15           THE COURT:  No, because we're mixing apples and

16   oranges.  You made an argument that this is a challenge to

17   confinement, and, therefore, the immediate custodian rule

18   applies, full stop.

19       I'm saying the immediate custodian rule does not apply to

20   the challenges at hand, but a habeas claim can proceed,

21   especially in this case.  The Supreme Court has said it, that

22   this is for time and memorial, writs of habeas have to be

23   flexible, and they have to handle those situations in which a

24   person, the body, has been moved.  And moved in ways in which

25   the plaintiff can't -- can't catch up with the body.

1    And when you make claims of now we can't get him back when

2    that's the -- the facts are belied by that, I do think that

3    there is room for both to live in the same place.

4    The plaintiff can say we're not challenging the fact of

5    confinement, however, the remedy is still that you have control

6    enough to bring him back.  I think those things can -- can live

7    in the same space.

8    Or let me ask a more simple question, what if I say,

9    you're right about the habeas, now we're just going under the

10   *Winter* factors, there's likelihood of success on the merits of

11   the other claims, why isn't the remedy still a very practical

12   fact-bound question of bring him back?  You can bring him back?

13   That's what the facts show.  Why isn't it as simple as that?

14          **MR. REUVENI:**  So I have a couple of responses.

15          **THE COURT:**  Okay.

16          **MR. REUVENI:**  That was a lot.

17   I just want to make sure we get our argument in on this

18   custody point.

19   I hear what you're saying.  I understand what you -- where

20   you're going with the factual discussion, but I don't think the

21   facts, as you're describing the matter, given the law, and we

22   cite these cases in our brief, the *Munaf* decision 553 U.S. 674,

23   which I'll talk about in a moment, the *Kiyemba* decision from

24   the D.C. Circuit, 561 F.3d 515, these are both cases that

25   involved, not similar circumstances, but circumstances where

1  individuals were detained outside the territory of the United

2  States.  In the *Munaf* case, it was even a military base in

3  Baghdad, Iraq; and in the *Kiyemba* case, it's Guantanamo.

4          **THE COURT:**  Right.

5          **MR. REUVENI:**  The *Munaf* decision defined habeas

6  jurisdiction, but only because they were American citizens held

7  overseas by American soldiers subject to a United States chain

8  of command.  That's not what we have here.  We have an

9  individual in the custody of El Salvador, a foreign sovereign

10 nation.

11         **THE COURT:**  Is that the only exclusive way I can do

12 it?  Because didn't *Munaf* also say 2241(c)(1), that section of

13 the habeas statute applies to persons, quote, held in custody

14 or under -- or by color of the authority of the United States,

15 an individual is held in custody by the United States when the

16 United States official charged with his detention has the power

17 to produce him.  That's the law.

18         **MR. REUVENI:**  Yeah, that --

19         **THE COURT:**  So I don't have to find that's only

20 satisfied in one particular way.  If I do find from the facts,

21 that are given to me, you certainly have the power to produce

22 him.  You had the power to produce him there.  The facts lead

23 to the logical inference that they are still -- they are still

24 wards of the United States.  You haven't relinquished them.

25 There's no facts that you've relinquished those detainees.

1           **MR. REUVENI:**  I don't think it's in dispute that he

2    is in the custody of a foreign country.  I don't think anyone

3    disputes that.

4           **THE COURT:**  Right.

5           **MR. REUVENI:**  I think the dispute is whether the

6    United States can pick up a phone and call someone in

7    El Salvador and say, give us our guy back.

8           **THE COURT:**  But that's *Munaf,* right?  That's *Munaf.*

9    There were two potential custodians in *Munaf,* the United States

10   and Iraq.  Right?

11          **MR. REUVENI:**  The distinction, however, is that it

12   was a U.S. military base controlled by the United States, not a

13   foreign sovereign entity not in any way controlled by the

14   United States.  And I will, then, point the Court to *Kiyemba,*

15   if I may.

16          **THE COURT:**  Let's not get away from this quite yet.

17          **MR. REUVENI:**  Sure.

18          **THE COURT:**  Because this is a Supreme Court case, and

19   I do want to make sure I understand it.

20       There is no dispute that there is a contract, right, by

21   which the United States paid money for a particular service.

22          **MR. REUVENI:**  That is -- that is in dispute.

23          **THE COURT:**  That is in dispute?

24          **MR. REUVENI:**  There's nothing in the record that

25   shows a contract.

1          **THE COURT:**  Well, no that's because you didn't want

2    to produce it or didn't produce it, but there's certainly in

3    the record, we have an agreement with El Salvador.  I believe

4    that's what Secretary of State Rubio said, as well as Secretary

5    Noem, right?

6          **MR. REUVENI:**  I can't speak to where they got their

7    information from.  I --

8          **THE COURT:**  But they are the named defendants.

9          **MR. REUVENI:**  I understand.  I understand, Your

10   Honor, but neither of them said there was a contract.

11         **THE COURT:**  Okay.  So they may not have used the word

12   "contract," but agreement sounds a lot like contract, where we

13   paid $6 million, which is a really -- you know, to house, I

14   believe that's what was said, and that we have President Bukele

15   saying this is -- someone said it's pennies on the dollar, and

16   that President Bukele said this is a good deal for us.

17        So I think I can draw the logical inference that there is

18   an agreement in which the United States is the payor to house

19   these individuals.

20        If you would -- if you wanted to present contrary evidence

21   or evidence which shines a different light on this, you

22   certainly had that opportunity.  So I don't have it.

23         **MR. REUVENI:**  That is -- that is correct.  And I will

24   say again, the government made a choice here to produce no

25   evidence.  So --

```
 1          THE COURT:  Okay.  So -- so I see, you know, with

 2   Munaf, you read it strictly as it has to be the custody of the

 3   United States military.  I don't know if I agree with that

 4   reading.  I think that the power to produce is the critical

 5   legal issue.  But in any event, you said you wanted me to look

 6   at another case.

 7          MR. REUVENI:  Yes, two other cases, actually, also

 8   Boumediene, another Supreme Court case, which extended habeas

 9   jurisdiction to Guantanamo, notwithstanding Guantanamo not

10   technically a part of the United States.  It extended there

11   because, and I'll quote there, it was under the, quote,

12   complete and total control of our government, end quote, so

13   another thing that is different between the situation here and

14   the situation in a prior Supreme Court decision extending

15   habeas outside the territory of the United States.

16      I go back to Munaf for a moment as well, that Court did

17   find habeas jurisdiction over U.S. citizens and U.S. custody

18   abroad, but it did not grant habeas relief, because the Court

19   decided that article three courts have no authority to prevent

20   the United States from transferring even U.S. citizens to a

21   foreign government.  So it didn't grant habeas relief.  It had

22   jurisdiction, but said there was no remedy.

23          THE COURT:  Right.  But in that case there was

24   actually some basis to believe that those individuals should be

25   in foreign jurisdiction.  That's why I asked the question of,
```

1  do you know why he's in the detention facility in El Salvador?

2  Is there any evidence he's there because the El Salvadorans

3  want him?  And the answer is no.  Which leads to the logical

4  inference that he's there because the United States wants him

5  there, although there's no legal basis for that either.  So

6  different -- different, I believe, than *Munaf,* although I'll

7  take a close look at it.

8        **MR. REUVENI:**  I appreciate that, Your Honor.

9     One other case I would like to point you to is *Kiyemba.*

10 It's a D.C. Circuit case, so not a Fourth Circuit case, but

11 many of the big habeas decisions come out of the D.C. Circuit

12 given that Guantanamo jurisdiction goes there.

13       **THE COURT:**  I'm sorry.  Can you slow down just a

14 little bit and let me get the citation from you?

15       **MR. REUVENI:**  Yes.  It's 561 F.3d at 515.

16       **THE COURT:**  All right.  And you did cite this in your

17 brief?

18       **MR. REUVENI:**  We did, Your Honor.

19       **THE COURT:**  Give me the -- it's *Kiyemba,* is that

20 right?

21       **MR. REUVENI:**  *Kiyemba,* K-I-Y-E-M-B-A.

22       **THE COURT:**  Okay.

23       **MR. REUVENI:**  And that was a decision explaining that

24 once an individual in U.S. custody or in U.S. territory, I

25 should say, was transferred to another sovereign, quote, the --

 1  after the transfer, quote, would be effected by the foreign

 2  government pursuant to its own laws and not on behalf of the

 3  United States, end quote.

 4      The dissent in that decision was inclined to adopt a view

 5  that it sounds like you might be inclined to adopt, Your Honor,

 6  but the majority in that case rejected that as a basis for

 7  finding habeas jurisdiction.

 8      Another --

 9          THE COURT:  I'm sorry, what is the basis?  You --

10  you're moving real fast for me.  Okay?  And I want to slow it

11  down so I understand it.

12          MR. REUVENI:  The individual began in the United

13  States custody and then ended up in the custody of a foreign

14  government.

15          THE COURT:  Okay.  And?

16          MR. REUVENI:  That case goes on to respond, I think,

17  to some of the questions you and I are talking about today.  At

18  Page 515, so after the release from U.S. custody --

19          THE COURT:  Okay.  Hold on.  *Kiyemba* was about enemy

20  combatants and the entire statutory scheme regarding enemy

21  combatants, am I right?

22          MR. REUVENI:  Not exactly.  It was based on habeas

23  jurisdiction because it found the jurisdiction stripping

24  provision that Congress had put into effect was

25  unconstitutional as to --

 1              THE COURT:  Right.  But it says while this appeal was

 2  pending, that Congress passed the Military Commissions Act of

 3  which provided no Court shall have jurisdiction to hear or

 4  consider an application for writ of habeas corpus filed by or

 5  on behalf of an alien detained by the United States who has

 6  been determined by the United States to have been properly

 7  detained as an enemy combatant or is awaiting such

 8  determination.

 9      Am I right about that?

10              MR. REUVENI:  I don't think so, Your Honor.  That's

11  the provision that *Boumediene* declared unconstitutional.

12              THE COURT:  Okay.  I'm reading from *Kiyemba.*

13              MR. REUVENI:  *Kiyemba* predates *Boumediene.*

14              THE COURT:  I'm sorry?

15              MR. REUVENI:  This particular *Kiyemba* decision

16  predates *Boumediene.*

17              THE COURT:  This predates *Boumediene*?

18              MR. REUVENI:  That's my understanding.  There's a

19  follow on *the Kiyemba* case that deals with *Boumediene* on

20  remand, but that's not the case we're relying on here.

21              THE COURT:  Okay.  Then this was your -- from your

22  brief, *Kiyemba v. Obama* that -- I'm pulling up the case

23  according to --

24              MR. REUVENI:  Yes, this is from our brief.

25              THE COURT:  Okay.

1          MR. REUVENI:  And what that case goes on to discuss,

2     after an individual is transferred from the sovereign territory

3     of the United States to the sovereign territory of another

4     country, and recites this longstanding principle from a Supreme

5     Court case from 1812, the jurisdiction of a nation within its

6     own territory is necessarily exclusive and absolute, and then

7     it went on to explain why the Court can't order habeas relief

8     in that context.

9          THE COURT:  Can you give me the -- first of all, give

10    me the cite so I know I'm looking at the right case.

11         MR. REUVENI:  Absolutely.  561 F.3d at 515.

12         THE COURT:  And where are you reading from?

13         MR. REUVENI:  It's a document in which I have the

14    quote, but it's Page 515 in the F.3d reports.

15         THE COURT:  515?

16         And what was the grounds on which these individuals were

17    held?

18         MR. REUVENI:  They were enemy combatants.

19         THE COURT:  Enemy combatants.

20         So a moment ago when I asked you about enemy combatants,

21    you told me I had the wrong -- wrong part of the case, right?

22         MR. REUVENI:  No.  I was saying the Court

23    nevertheless reviewed their claims in habeas under Section

24    2241, 28 U.S.C. 2241.

25         THE COURT:  Okay.  But the point I'm trying to make,

1    just real basic, is Mr. Abrego Garcia is not an enemy

2    combatant.  He has not been designated as such, and those facts

3    matter in these analyses, don't they?

4            MR. REUVENI:  No, I don't think so.  It's different,

5    yes.  He's not an enemy combatant, no one contends that today.

6        The principle that we're saying those cases provide and

7    that the other cases all provide, is that once an individual

8    has been transferred to the custody of another sovereign, the

9    habeas remedy does not lie.

10           THE COURT:  Okay.  But you will agree with me, just

11   so when I'm looking at this case, that there is just no factual

12   basis right now that anyone can hold Mr. Abrego Garcia, the

13   United States or El Salvador, there's just nothing.  At least

14   in this case, there was some showing that the individuals were

15   held pursuant to a Congressional act that allows certain acts

16   to be taken against alleged enemy combatants?  You know,

17   there's some framework.  Where here, we've got -- we've got

18   nothing.  I just don't have any -- any facts on what authority

19   Mr. Abrego Garcia is being held anywhere.

20           MR. REUVENI:  I also do not know, and therefore,

21   cannot answer your question as to what authority

22   Mr. Abrego Garcia is being held by in El Salvador.

23           THE COURT:  Okay.  All right.  I'll take a close look

24   at this case.

25           MR. REUVENI:  The last point, Your Honor, of the

1  threshold issues, then I'm happy to sit down, is on

2  redressability.  And I think you discussed this a bit with

3  plaintiffs' counsel.  Our position from our brief, citing a

4  case out of the D.C. Circuit, *Lin*, which also has other cases

5  it cites there for the same proposition, is where relief

6  depends on the actions of a foreign government not before the

7  Court.  The case lacks redressability.  So we don't -- we

8  don't -- I know the question you've asked is why can't I order

9  you just to -- your clients, my clients, to ask the question,

10  and we think those cases stand for the proposition you can't

11  order even that.

12          **THE COURT:**  But, again, I think I'm taking a

13  different view of this, as the case has evolved, and we've all

14  had an opportunity to look at the evidence, is that this isn't

15  an ask.  This is in the absence of you showing otherwise, you

16  have an agreement with this facility where you're paying the

17  money to perform a certain service.  And so it stands to reason

18  that you can go to the payee and say, we need one of our

19  detainees back, especially when the payee says we're only

20  holding them for a period of time until the United States

21  figures out what they want to do.

22          **MR. REUVENI:**  I understand.

23          **THE COURT:**  So all of which suggests that the terms

24  of the agreement -- you know, I have the authority to review

25  and interpret agreements.  That's what treaties are.  That's

1  what contracts -- that's what they are.  So I'm happy to take a

2  look at it, if you wish to produce it.

3      But otherwise, based on the facts, I'm going to have to

4  make certain inferences.  I think those are logical ones.

5          **MR. REUVENI:**  I understand, Your Honor.  My clients

6  also understand that the absence of evidence speaks for itself.

7          **THE COURT:**  Got it.  Okay.

8      So that handles redressability.  I think it also handles

9  the practical implications of any potential remedy, which I

10  would, again, and I fully acknowledge, injunctive relief is

11  extraordinary.  I'm looking at the most -- the narrowest relief

12  if I do enjoin, to issue the injunction, that it be narrow.

13      What have we not addressed, Mr. Reuveni, that you believe

14  we should?

15          **MR. REUVENI:**  I don't have much more to say on the

16  equities, we haven't addressed that.  But our brief says what

17  it has to say, and I don't have much more to add to it.

18          **THE COURT:**  On the merits.

19          **MR. REUVENI:**  That's right.  Nothing on the merits,

20  nothing on the equities.

21          **THE COURT:**  All right.  I appreciate that.  Very

22  good.

23          **MR. REUVENI:**  I would suggest one thing.

24          **THE COURT:**  Yeah, sure.

25          **MR. REUVENI:**  Although this is sort of is the boy who

1  cried wolf a little bit here, that's the wrong metaphor, but I

2  would ask the Court to give us, the defendants, one more chance

3  to do this without Court superintendence here.

4          **THE COURT:**  Without what?  Without what?

5          **MR. REUVENI:**  Give us 24 hours to --

6          **THE COURT:**  You want to try to work it out to get

7  Mr. Abrego Garcia here, you got it.

8          **MR. REUVENI:**  That's my recommendation to my clients,

9  but, of course, that's why that hasn't happened.

10         **THE COURT:**  Okay.  And, Mr. Reuveni, I very much

11 appreciate your candor to the Court.  Good clients listen to

12 their lawyers.

13     I'll -- I'll turn to the plaintiffs and see if they are

14 amenable.

15         **MR. REUVENI:**  Thank you, Your Honor.

16         **THE COURT:**  The practical reality is, I'm going to

17 try to get out an order as quickly as possible and then write,

18 if I need to, to explain the order, but Mr. Reuveni has asked

19 for 24 hours.

20         **MR. SANDOVAL-MOSHENBERG:**  By all means, Your Honor,

21 if the defendants can produce Mr. Abrego Garcia in this court

22 on Monday, we're -- we're more than happy to accept that.

23         **THE COURT:**  Okay.

24         **MR. SANDOVAL-MOSHENBERG:**  I have a -- not much to say

25 at this point.  Just essentially, very small point to make with

1  regards to this Court's remedial order to the extent that I

2  sincerely hope Mr. Reuveni is able to persuade his clients, but

3  in case he's not, given the defendants' course of dealing in

4  this matter, and the matter in which they have chosen to

5  litigate this case, at least today it doesn't appear that they

6  are taking it seriously.  And so for that reason, I think that

7  to the extent that the Court orders any sort of status reports

8  or any sort of essentially the defendants to inform the Court

9  as to what the defendants are doing in order to carry out the

10  Court's order, I would request that the Court order that the

11  declarations be provided by individuals with personal

12  knowledge.

13      What we've seen is -- for example, if you look at the

14  Cerna declaration, and this is very typical of these ICE

15  declarations generally, is that it's a hearsay declaration, and

16  it doesn't specify what he knows versus what his -- I'm looking

17  at Paragraph 4 here specifically, it doesn't specify what he

18  knows versus what is his reasonable inquiry, versus what is the

19  information obtained from various records, systems, databases,

20  other DHS employees, et cetera.

21          **COURT REPORTER:**  I'm sorry.  I'm sorry.

22          **THE COURT:**  Slow down.

23          **MR. SANDOVAL-MOSHENBERG:**  Apologies.

24      Essentially, Your Honor, to the extent that Your Honor is

25  going to order that anyone within the government provide this

1    Court with ongoing information about the government's remedial

2    steps, we would request that the Court specify that the person

3    who provides that declaration is a person with personal

4    knowledge and that they state the basis of their personal

5    knowledge, not these sort of generic 30(b)(6) declarations.

6         Thank you, Your Honor.

7              **THE COURT:**  Okay.  All right.  Well, if you would all

8    indulge me for a few minutes, I want to take a brief recess.

9    I'll be back in ten.

10             **THE DEFENDANT:**  All rise.  This Honorable Court now

11   stands in recess.

12        (Recess taken from 2:05 p.m. to 2:43 p.m.)

13             **DEPUTY CLERK:**  All rise.  This Honorable Court now

14   resumes in session.

15             **THE COURT:**  All right, everyone.  You can have a

16   seat.

17        All right.  I want to thank all counsel here for your

18   attention to this matter, for your professionalism, for your

19   candor.  It's very much appreciated.

20        I also want to thank everyone who has come out today,

21   because this case is certainly important to Mr. Abrego Garcia

22   and his family.  It's also very important to you all.

23        And in recognition of that, I feel like I can't wait on

24   giving my order.  I will write a formal opinion to support the

25   order, but my plan right now is to read the order itself based

1   on the record, all of the evidence, and the argument as I see

2   it into the record.  I will sign it.  And it will be on the

3   docket immediately.

4       So I am going to grant the motion for preliminary

5   injunction.  I've reviewed -- and I'll read this word for word

6   so that there is no dispute that the oral order is the written

7   order.

8       The Court has reviewed plaintiffs' motion for injunctive

9   relief pursuant to Rule 65 of the Federal Rules of Civil

10  Procedure, along with supporting memoranda, reply briefs, and

11  the record in this case.

12      The defendants named in this suit are the United States

13  Secretary of Homeland Security; the Attorney General of the

14  United States; the United States Secretary of State; the acting

15  director of U.S. Immigration and Customs Enforcement, ICE; the

16  Acting Executive Associate Director of ICE Enforcement and

17  removal operations; and the director of ICE's Baltimore field

18  office, collectively, the defendants.

19      Kilmar Armando Abrego Garcia -- Abrego Garcia, a native of

20  El Salvador, was granted withholding of removal in 2019 which

21  prohibited his removal to El Salvador.  The record reflects

22  that Abrego Garcia was apprehended in Maryland without legal

23  basis on March 12, 2025, and without further process or legal

24  justification was removed to El Salvador by March 15th, 2025.

25      Abrego Garcia is detained in El Salvador's terrorism

1  confinement center, Centro de Confinamiento del Terrorismo, or

2  CECOT.  Plaintiffs contend that his removal violated 8 U.S.C.

3  Section 1231(b)(3)(A), and it's implementing regulations, as

4  well as the Fifth Amendment to the United States Constitution,

5  the Administrative Procedures Act, 5 U.S.C. 706(2)(A), and

6  other applicable legal protections.  Based on the record before

7  the Court, I find that this Court retains subject matter

8  jurisdiction.

9       I further find that, first, plaintiffs are likely to

10 succeed on the merits because Abrego Garcia was removed to El

11 Salvador in violation of the Immigration and Nationality Act,

12 specifically U.S.C. Section 1231(b)(3)(A), and without any

13 legal process; his continued presence in El Salvador for

14 obvious reasons constitutes irreparable harm; the balance of

15 equities and the public interest weigh in favor of returning

16 him to the United States; and last, fourth, the issuance of a

17 preliminary injunction without further delay is necessary to

18 maintain the status quo, I should say restore him to the status

19 quo, and to avoid ongoing irreparable harm resulting from

20 Abrego Garcia's unlawful removal.

21      For the reasons stated above, the Court hereby directs

22 defendants to return Abrego Garcia to the United States no

23 later than 11:59 p.m. on April 7th, 2025.

24      A memorandum opinion further setting forth the basis for

25 this ruling will be issued in due course.  Accordingly, it is

1  this 4th day of April, 2025, by the United States District

2  Court for the District of Maryland, hereby ordered that, one,

3  plaintiffs' motion ECF Number 6 construed as one for

4  preliminary injunction relief is granted; two, defendants are

5  here by ordered to facilitate and effectuate the return of

6  plaintiff Kilmar Armando Abrego Garcia to the United States by

7  no later than 11:59 p.m. on Monday, April 7, 2025; three, this

8  preliminary relief is issued to restore the status quo and to

9  preserve Abrego Garcia's access to due process in accordance

10  with the Constitution and governing immigration statutes;

11  fourth, the clerk is directed to transmit copies of this order

12  to the parties.

13       I will sign it, and I will get it filed.

14       Is there anything else that we need to discuss today,

15  Counsel?

16           MR. SANDOVAL-MOSHENBERG:  Nothing further for the

17  plaintiff, Your Honor.

18           THE COURT:  Mr. Reuveni?

19           MR. REUVENI:  Nothing further.

20       Just one housekeeping matter.  You said it twice, I just

21  want to make sure I have it correct when I leave the courtroom,

22  11:59 p.m., April 7th?

23           THE COURT:  That's right, Monday, April 7th.  I did

24  do the calendar right, Monday, April 7th, 11:59 p.m.

25           MR. REUVENI:  Thank you.

1          **THE COURT:**  All right.  Thank you all.

2          **DEPUTY CLERK:**  All rise.  This Honorable Court now

3    stands adjourned.

4      (Proceedings were concluded at 2:48 p.m.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4       I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                              Dated this 4th day of April 2025.

13

14

15                  /S/ Paula J. Leeper
                   _____
16
                   Paula J. Leeper, RPR, CRR
17                 Federal Official Reporter

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| COURT REPORTER: [1] 51/21 | 47/1 47/12 47/19 47/22 50/7 50/21 52/21 53/19 | article [1] 42/19 |
| DEPUTY CLERK: [4] | 53/19 53/22 53/25 54/10 54/20 54/22 55/6 55/9 | ask [18] 4/6 4/18 5/11 6/12 14/16 14/19 14/21 |
| MR. REUVENI: [111] | abroad [2] 35/25 43/22 | 14/22 20/25 28/1 30/7 30/11 35/12 35/22 38/8 48/9 |
| MR. SANDOVAL-MOSHENBERG: [43] 2/14 3/16 3/21 4/1 | absence [1] 46/8 | 48/14 |
| 4/23 5/13 5/17 5/20 5/24 6/2 6/15 6/23 7/11 8/7 | absolute [1] 46/6 | asked [5] 34/4 42/25 46/20 48/8 50/18 |
| 8/24 9/21 10/24 10/19 11/10 11/17 12/12 12/15 12/19 | Absolutely [1] 46/11 | asking [1] 16/6 |
| 12/23 13/9 13/17 13/23 14/1 14/7 14/13 15/12 15/20 | accept [1] 50/22 | assess [1] 17/10 |
| 15/25 17/13 17/15 18/5 18/7 18/15 18/19 19/20 | access [1] 55/9 | Associate [1] 53/16 |
| 50/24 51/23 55/16 | accordance [1] 55/9 | attached [1] 13/18 |
| THE COURT: [156] | according [1] 45/23 | attention [1] 52/18 |
| THE DEFENDANT: [1] 52/10 | Accordingly [1] 54/25 | attorney [4] 13/15 27/25 32/15 53/13 |
| | accused [1] 17/7 | authority [17] 4/7 11/20 19/19 19/20 20/19 21/8 |
| $ | acknowledge [1] 49/10 | 23/4 27/11 28/25 31/1 35/13 39/14 42/19 47/18 |
| $6 [2] 36/4 41/13 | act [13] 6/11 11/15 11/18 11/19 22/14 23/5 26/1 | 47/21 48/24 |
| $6 million [2] 36/4 41/13 | 26/5 27/24 45/2 47/15 54/5 54/11 | authorization [1] 16/3 |
| | acting [2] 53/14 53/16 | automatic [2] 27/14 |
| / | action [5] 2/10 6/4 6/9 11/6 33/5 | avoid [1] 54/19 |
| /S [1] 57/15 | actions [2] 11/12 48/6 | awaiting [1] 45/7 |
| | acts [3] 26/3 26/4 47/15 | awareness [1] 31/3 |
| 1 | actual [1] 21/18 | away [3] 27/4 27/18 40/16 |
| 1-1 [1] 24/6 | actually [6] 5/6 7/25 19/2 30/2 42/7 42/24 | |
| 10 [1] 3/10 | add [2] 11/6 49/17 | B |
| 11 [3] 3/10 22/1 22/5 | additional [2] 3/13 3/19 | back [22] 4/3 6/22 8/4 8/5 9/3 12/13 14/18 15/2 |
| 11:59 p.m [4] 54/23 55/7 55/22 55/24 | addressed [3] 15/8 49/13 49/16 | 15/14 17/2 20/25 28/1 30/17 31/19 38/1 38/6 38/12 |
| 12 [1] 53/23 | addressing [1] 4/19 | 38/12 40/7 42/18 48/19 52/9 |
| 1231 [3] 27/24 54/3 54/12 | adequately [1] 15/8 | Baghdad [1] 39/3 |
| 1252 [15] 5/1 11/11 11/19 11/23 12/25 23/19 25/17 | adjourned [1] 56/3 | balance [1] 54/14 |
| 25/19 27/21 29/2 30/22 32/12 32/14 33/3 33/18 | administration [1] 35/9 | Baltimore [1] 53/17 |
| 13 [4] 16/24 17/23 22/6 24/11 | administrative [2] 6/11 54/5 | bar [1] 11/20 |
| 1300 [1] 1/17 | admit [1] 16/3 | bars [1] 4/24 |
| 15 [1] 22/1 | admonition [1] 7/4 | base [2] 39/2 40/12 |
| 15th [1] 53/24 | adopt [2] 44/4 44/5 | based [4] 44/22 49/3 52/25 54/6 |
| 1812 [1] 46/5 | affiants [1] 36/24 | bases [1] 9/23 |
| 1:00 [1] 1/11 | after [4] 36/19 44/1 44/18 46/2 | basic [1] 47/1 |
| | afternoon [2] 2/6 2/20 | basically [1] 7/19 |
| 2 | again [9] 17/4 20/22 26/14 30/12 35/6 35/25 41/24 | basis [18] 5/6 5/16 6/19 8/1 15/11 20/5 32/1 34/23 |
| 200 [1] 20/16 | 48/12 49/10 | 34/24 35/7 42/24 43/5 44/6 44/9 47/12 52/4 53/23 |
| 20005 [1] 1/18 | against [2] 36/14 47/16 | 54/24 |
| 2018 [1] 7/7 | agencies [1] 16/19 | because [34] 4/11 6/16 6/18 9/5 12/17 14/2 14/11 |
| 2019 [5] 13/5 23/11 23/23 35/10 53/20 | agents [1] 13/21 | 17/17 20/22 20/7 23/15 23/19 30/4 30/11 30/14 31/19 |
| 202 [2] 1/19 1/22 | ago [2] 36/5 46/20 | 31/22 32/14 33/7 33/17 34/7 34/3 36/9 39/6 39/12 |
| 2025 [7] 1/11 51/3 53/23 53/24 54/23 55/1 55/7 57/12 | agree [4] 9/1 33/12 42/3 47/10 | 40/18 41/1 42/11 42/18 43/2 43/4 44/23 52/21 54/10 |
| 205 [2] 20/15 20/20 | agreed [1] 11/19 11/23 30/21 | before [14] 1/10 2/9 2/11 9/3 9/20 14/14 20/25 |
| 20530 [1] 1/22 | agreement [7] 36/3 36/19 41/3 41/12 41/18 48/16 | 22/2 22/8 29/2 30/8 30/8 48/6 54/6 |
| 210 [1] 28/20 | 48/24 | began [1] 44/12 |
| 22030 [1] 1/15 | agreements [1] 48/25 | begin [2] 3/7 13/6 |
| 2241 [3] 39/12 46/24 46/24 | ahead [1] 5/25 | behalf [4] 1/13 1/20 44/2 45/5 |
| 2399 [1] 1/15 | AIDED [1] 1/25 | being [12] 5/6 5/9 8/18 8/16 14/18 18/4 18/10 |
| 24 [2] 50/5 50/19 | al [3] 1/4 1/7 2/11 | 23/6 36/8 47/19 47/22 |
| 243 [1] 28/20 | al. [1] 2/11 | belied [1] 38/2 |
| 28 [2] 46/24 57/6 | al. v. Kristi [1] 2/11 | believe [12] 6/20 8/7 8/18 11/8 31/9 32/7 32/18 |
| 2:05 [1] 52/12 | alien [7] 11/14 11/18 11/19 22/7 22/14 23/5 45/5 | 41/3 41/14 42/24 43/6 49/3 |
| 2:43 [1] 52/12 | all [58] | believed [3] 23/4 34/18 34/18 |
| 2:48 [1] 56/4 | alleged [2] 22/6 47/16 | believes [1] 34/7 |
| | allows [1] 47/15 | best [4] 4/15 4/18 21/22 28/7 |
| 3 | along [1] 53/10 | between [6] 8/14 8/25 10/18 24/24 28/24 36/3 42/13 |
| 30 [1] 52/5 | already [4] 4/8 9/4 9/6 26/25 | beyond [1] 16/12 |
| 300 [1] 1/14 | also [17] 1/23 10/9 14/23 14/25 19/23 22/6 23/24 | BIA [1] 27/10 |
| 352-2399 [1] 1/15 | 25/17 31/10 39/12 42/7 47/20 48/4 49/6 49/8 52/20 | big [2] 13/7 43/11 |
| | 52/22 | binders [1] 4/11 |
| 4 | alternative [3] 6/4 11/8 34/3 | bit [8] 2/22 21/1 25/23 30/17 31/4 43/14 48/2 50/1 |
| 4103 [1] 1/14 | although [4] 27/22 43/5 43/6 49/25 | Board [1] 27/15 |
| 42 [1] 11/22 | am [11] 3/2 13/15 13/22 19/23 23/15 23/17 28/5 | Boasberg [2] 22/9 |
| 450 [1] 1/21 | 32/5 44/21 45/9 53/4 | body [2] 37/24 37/25 |
| 4th [2] 55/1 57/12 | amenable [1] 50/14 | both [7] 3/13 4/6 14/24 30/13 34/16 38/3 38/24 |
| | Amendment [1] 54/4 | Boumediene [6] 42/8 45/11 45/13 45/16 45/17 45/19 |
| 5 | American [3] 36/15 39/6 39/7 | bound [1] 38/12 |
| 515 [6] 38/24 43/15 44/18 46/11 46/14 46/15 | ample [1] 20/7 | Bowrin [3] 31/11 32/11 32/18 |
| 538-8000 [1] 1/19 | analogy [1] 28/5 | boy [1] 49/25 |
| 553 [1] 38/22 | analyses [1] 47/3 | Bridge [1] 1/14 |
| 561 [3] 38/24 43/15 46/11 | another [9] 27/11 34/13 42/6 42/8 42/13 43/25 44/8 | brief [14] 6/25 25/18 26/14 27/18 28/9 29/12 34/9 |
| | 46/3 47/8 | 38/22 43/17 45/22 45/24 48/3 49/16 52/8 |
| 6 | answer [17] 19/18 19/22 20/3 28/3 35/23 43/3 47/21 | briefly [2] 28/16 33/25 |
| 65 [1] 53/9 | answers [1] 19/24 | briefs [4] 4/8 29/7 29/14 53/10 |
| 674 [1] 38/22 | anyone [4] 21/16 40/2 47/12 51/25 | bring [7] 6/21 7/4 8/4 9/3 38/6 38/12 38/12 |
| 693 [1] 7/7 | anything [7] 5/15 9/10 9/11 18/15 21/17 33/9 53/9 | bringing [3] 8/5 10/16 10/20 |
| | anyway [1] 26/6 | brought [2] 14/18 17/2 |
| 7 | anywhere [2] 21/9 47/19 | Bukele [2] 41/14 41/16 |
| 703 [1] 1/15 | APA [1] 31/19 | buying [1] 25/11 |
| 706 [1] 54/5 | apologies [3] 19/8 26/14 51/23 | |
| 753 [1] 57/6 | apologize [1] 25/17 | C |
| 796 [1] 28/23 | appeal [4] 7/12 24/15 27/14 45/1 | calendar [1] 55/24 |
| 7th [4] 54/23 55/22 55/23 55/24 | appealed [1] 29/23 | call [3] 3/12 12/12 22/17 40/6 |
| | appealing [1] 29/22 | called [1] 2/2 |
| 8 | Appeals [1] 27/15 | came [1] 33/11 |
| 8 U.S.C. 1252 [1] 30/22 | appear [1] 51/5 | can't [15] 9/11 16/9 26/5 27/25 33/6 33/12 35/18 |
| 8000 [1] 1/19 | appearance [2] 18/25 19/3 | 37/25 37/25 38/1 41/6 46/7 48/8 48/10 52/23 |
| 866 [1] 28/18 | APPEARANCES [1] 1/12 | candidly [3] 6/6 8/24 15/1 |
| 887 [1] 7/7 | apples [1] 37/15 | candor [4] 20/2 36/1 50/11 52/19 |
| 8962 [1] 1/22 | applicable [2] 29/24 54/6 | cannot [6] 8/11 21/5 23/11 24/24 27/4 47/21 |
| 899 [1] 28/23 | application [1] 19/23 | car [1] 19/20 |
| 8:24-cv-00951-PX [1] 1/6 | applies [7] 6/3 11/11 25/19 27/21 29/2 37/18 39/13 | carry [1] 10/23 13/2 51/9 |
| | apply [1] 14/6 30/14 32/13 37/19 | cartel [1] 17/22 |
| 9 | appreciate [8] 19/7 19/15 20/2 30/13 35/25 43/8 | case [65] |
| 900 [1] 1/18 | 49/21 50/11 | cases [27] 7/23 11/14 11/23 25/18 26/16 26/17 |
| 938 [1] 28/18 | appreciated [1] 52/19 | 26/19 26/19 26/21 26/23 26/24 27/14 28/5 28/9 |
| 951 [1] 2/10 | apprehended [2] 13/21 53/22 | 28/25 29/11 29/12 30/13 31/21 32/2 38/22 38/24 |
| | APRIL [8] 1/11 54/23 55/1 55/7 55/22 55/23 55/24 | 42/7 47/6 47/7 48/4 48/10 |
| A | 57/12 | catch [2] 15/10 37/25 |
| abide [1] 16/20 | April 7 [1] 55/7 | categories [1] 12/4 |
| ability [2] 36/22 36/23 | April 7th [4] 54/23 55/22 55/23 55/24 | cause [5] 5/19 6/4 20/5 21/15 33/4 |
| able [2] 19/2 51/2 | Arce [1] 28/23 | causes [1] 6/9 |
| above [3] 16/12 54/21 57/9 | area [1] 6/13 | caution [1] 4/1 |
| above-entitled [1] 57/9 | argued [1] 15/19 | cease [1] 34/5 |
| ABREGO [41] 1/4 2/10 6/18 8/2 8/10 10/7 10/17 | argument [28] 4/25 5/2 6/17 6/20 9/3 9/8 9/9 11/7 | CECOT [5] 10/21 10/25 18/12 34/24 54/2 |
| 13/22 14/12 14/19 16/22 19/16 21/4 21/9 21/16 22/23 23/9 | 11/8 12/1 12/25 14/10 16/8 25/9 27/5 28/14 32/25 | center [2] 7/25 54/1 |
| 23/16 23/20 25/7 30/4 31/18 34/6 34/19 35/18 37/4 | 33/22 34/6 34/11 34/15 34/17 34/19 37/10 | Centro [1] 54/1 |
| | 37/16 38/17 53/1 | Cerna [5] 5/20 23/20 23/22 22/1 22/17 22/17 22/18 |
| | arguments [6] 4/13 9/23 25/11 25/12 25/16 28/17 | 23/14 51/14 |
| | arising [1] 32/13 | certain [6] 36/20 36/21 36/24 47/15 48/17 49/4 |
| | ARMANDO [4] 1/4 2/10 53/19 55/6 | certainly [12] 10/22 10/25 13/2 13/11 13/14 18/18 |
| | arrest [4] 5/16 20/16 20/18 21/14 | 18/23 37/9 39/21 41/2 41/22 52/21 |
| | arrested [1] 5/16 | CERTIFICATE [1] 56/5 |

**C**

certify [1]  57/6
cetera [1]  51/20
chain [1]  1/14 39/7
challenge [4]  10/2 10/16 12/8 37/16
challenged [1]  5/10
challenges [4]  10/6 11/20 32/15 37/20
challenging [8]  5/3 5/5 10/12 10/13 11/13 11/23
32/1 38/4
chance [2]  14/22 50/2
changed [1]  29/25
chapter [2]  11/24 11/25
characterization [1]  21/1
charge [2]  18/2 21/16
charged [1]  39/16
chatter [1]  17/5
check [1]  3/11
choice [1]  41/24
chosen [3]  10/3 12/24 51/4
circuit [38]  7/8 7/11 7/18 8/3 11/21 16/13 16/16
16/21 16/21 25/24 26/18 26/18 26/18 28/21
28/23 29/3 29/3 29/3 29/6 29/8 29/13 29/15 31/3
31/11 31/11 31/21 32/2 32/5 32/8 32/9 32/10 33/11
32/15 34/10 43/10 43/11 48/4
circuits [1]  33/9
circumstance [2]  28/4 29/10
circumstances [2]  38/25 38/25
citation [2]  41/0 43/14
cite [6]  4/7 7/5 29/6 38/22 43/16 46/10
cited [3]  6/25 11/22 11/23
cites [1]  29/12 48/5
citing [2]  27/18 48/3
citizens [3]  39/6 42/17 42/20
Civil [2]  2/10 53/9
claim [7]  6/7 10/5 10/5 10/5 11/1 33/18 37/20
claims [5]  32/13 33/4 38/1 38/11 46/23
clear [5]  7/21 16/16 29/17 30/4 33/16
clearly [1]  16/11
clerk [1]  55/11
client [2]  18/3 28/8
clients [9]  35/22 36/3 36/4 48/9 48/9 49/5 50/8
50/11 51/2
close [2]  43/7 47/23
closed [1]  15/3
colleague [1]  31/12
collectively [1]  53/18
colloquy [1]  34/1
color [1]  39/14
Columbia [2]  17/21 22/9
combatant [3]  45/7 47/2 47/5
combatants [6]  44/20 44/21 46/18 46/19 46/20 47/16
come [2]  43/11 52/20
comes [3]  2/11 17/8 37/3
coming [2]  14/14 15/2
command [2]  8/4 39/8
Commissions [1]  45/2
commits [1]  36/14
communicate [1]  15/5
companion [2]  13/19 31/17
complaint [4]  5/4 6/9 17/9 34/16
complete [2]  42/12
comply [1]  9/17
complying [1]  15/15
computer [2]  1/25 3/7
COMPUTER-AIDED [1]  1/25
concede [3]  19/11 25/13 33/17
conceded [6]  6/19 19/9 26/1 26/2 26/2 31/20
conceivable [1]  12/4
concession [1]  19/15
concluded [1]  56/4
condition [1]  10/13
conditions [2]  36/20 37/1
Conference [1]  57/10
Confinamiento [1]  54/1
confinement [5]  10/13 10/14 37/17 38/5 54/1
confirmed [1]  36/16
conformance [1]  57/10
Congress [4]  24/24 26/5 44/24 45/2
Congressional [1]  47/15
consider [1]  45/4
considerations [1]  15/7
considered [1]  4/13
constitutes [1]  54/14
Constitution [2]  54/4 55/10
constitutional [3]  32/22 33/3 33/18
constructive [4]  6/5 34/7 34/20 37/12
constructively [1]  37/14
construed [1]  55/3
contend [1]  54/2
contends [1]  47/5
contention [2]  14/7 16/24
context [2]  29/8 46/8
continued [1]  54/13
contract [6]  36/18 40/20 40/25 41/10 41/12 41/12
contracting [1]  37/11
contracts [1]  49/1
contrary [1]  41/20
control [6]  6/21 34/14 36/25 37/2 37/12 38/5 42/12
controlled [2]  40/12 40/13
controlling [2]  29/15 32/7
conversation [1]  33/12
convinced [1]  30/12
COOPER [2]  1/16 2/16
coordination [1]  8/14
copies [1]  55/11
core [4]  4/24 5/2 10/1 11/6
corpus [4]  4/25 6/3 6/4 45/4
correct [17]  5/24 8/8 10/12 12/19 12/23 14/1 18/5
22/24 22/25 23/21 24/22 29/21 31/7 37/10 41/23
55/21 57/7
counsel [8]  2/13 3/6 21/3 34/1 37/11 48/3 52/17
55/15

**D**

D.C [7]  1/22 11/21 16/21 38/24 43/10 43/11 48/4
DACA [1]  28/4
dare [1]  28/4
databases [1]  51/19
date [2]  22/4 35/23
Dated [1]  57/12
day [4]  17/20 17/21 55/1 57/12
DC [1]  1/18
de [1]  54/1
deal [1]  41/16
dealing [1]  51/3
deals [1]  45/19
decide [1]  17/1
decided [1]  42/19
deciding [1]  29/2
decision [19]  12/6 24/8 24/11 24/13 24/16 30/15
31/24 32/1 32/16 36/18 37/3 37/3 38/22 38/23 39/5
42/14 43/23 44/4 45/15
decision-making [1]  31/24
decisions [2]  31/5 43/11
declaration [10]  5/21 5/23 20/23 22/1 22/7 22/10
22/10 51/14 51/15 52/3
declarations [3]  51/11 51/15 52/5
declared [1]  45/11
deemed [1]  15/8
defendant [2]  1/8 1/20 8/16
defendants [12]  3/1 26/4 36/10 41/8 50/2 50/21
51/8 51/9 53/12 53/18 54/22 55/4
defendants' [1]  51/3
defense [1]  11/1
defined [1]  39/5
del [1]  54/1
delay [1]  54/17
deny [1]  31/18
departed [1]  7/22
DEPARTMENT [1]  1/21 2/21 2/25
depends [1]  48/6
deport [2]  27/25 29/19
deportation [5]  5/12 6/12 16/12 29/19 32/13
deported [3]  5/9 7/24 10/10
describing [1]  38/21
designated [1]  47/2
desk [1]  35/21
detailed [1]  15/14
detain [2]  34/6 34/22
detained [9]  10/21 18/4 18/10 18/11 18/11 39/1
45/5 45/7 53/25
detainee [1]  31/13
detainees [3]  22/22 39/25 48/19
detention [5]  5/3 5/9 7/25 39/16 43/1
determination [1]  45/8
determined [1]  45/6
development [1]  6/6
DHS [4]  26/3 28/15 36/8 51/20
difference [4]  16/6 30/14 30/15 31/2
different [11]  12/25 26/9 27/22 29/8 31/25 41/21
42/13 43/6 43/6 47/4 48/13
differently [1]  22/16
directed [1]  55/11
directing [1]  4/14
direction [2]  18/11 18/12
directions [1]  7/15
directly [2]  5/6 28/11
director [4]  22/18 53/15 53/16 53/17
directs [1]  54/21
disagree [1]  32/3
discrete [1]  12/4
discretion [3]  31/14 32/16 32/20
discretionary [5]  12/6 31/5 32/8 33/4 33/20
discretionary/nondiscretionary [1]  32/8
discuss [2]  46/1 55/14
discussed [2]  48/2
discussing [1]  34/9
discussion [1]  38/20
disposition [2]  36/18 36/18
dispute [10]  19/13 25/6 25/19 28/24 40/1 40/5
40/20 40/22 40/23 53/6
disputed [1]  32/23
disputes [1]  40/3
dissent [1]  44/4
distinct [1]  30/7
distinction [3]  30/22 32/9 33/21 40/11
district [13]  1/1 1/1 1/11 2/3 2/4 12/10 22/9
29/12 32/2 55/1 55/2 57/5 57/5
DIVISION [1]  1/2

**E**

each [2]  3/11 28/24
earlier [2]  22/6 31/6 37/10
earth [1]  13/10
ECF [2]  31/10 55/3
effect [9]  9/4 27/3 27/5 27/18 27/19 27/20 28/15
28/25 30/1 44/24
effected [1]  44/1
effectuate [1]  55/5
efforts [1]  9/17
Eighth [2]  28/18 29/3
either [3]  23/5 27/10 43/5
El [42]  10/17 10/18 11/3 12/16 13/3 13/12 14/3
16/4 17/19 17/23 18/2 18/14 18/14 19/6 22/5 22/15
23/5 23/12 23/21 24/20 24/21 25/7 25/14 30/6 34/5
34/21 36/3 36/9 36/16 39/9 40/7 41/3 42/3 43/12
47/13 47/22 53/20 53/21 53/24 53/25 54/10 54/13
El Salvador [7]  13/12 18/9 23/21 25/14 30/6 40/7
54/13
El Salvadorian [1]  17/23
else [4]  11/6 21/9 34/13 55/14
EMANUEL [1]  1/17
Emmanuel [2]  2/16
employees [1]  51/20
end [2]  42/12 44/3
ended [1]  44/13
Enemies [6]  11/15 11/18 11/19 22/7 22/14 23/5
enemy [9]  44/19 44/20 45/7 46/18 46/19 46/20 47/1
47/5 47/16
enforcement [4]  19/21 22/3 53/15 53/16
enjoin [1]  49/2
enough [1]  38/6
Enriquez [1]  29/7
Enriquez-Perdomo [1]  29/7
enter [9]  9/15 9/15 16/7 19/2
entire [1]  44/20
entirely [1]  11/13
entitled [1]  57/9
entity [1]  40/13
equities [4]  16/15 49/16 49/20 54/15
equivalent [1]  14/4
EREZ [3]  1/20 2/20 2/25
erroneous [1]  16/12
error [1]  23/15
especially [4]  10/4 28/6 37/21 48/19
ESQUIRE [2]  1/13 1/16 1/20
essentially [8]  6/5 14/3 15/15 16/18 30/7 50/25
51/8 51/24
established [1]  16/2
et [5]  1/4 1/7 2/11 2/11 51/20
even [7]  12/1 12/12 20/9 30/12 39/2 42/20 48/11
event [2]  17/1 42/5
events [1]  22/7
every [1]  17/21
everyone [4]  2/6 35/6 52/15 52/20
everything [1]  20/9
evidence [18]  3/10 3/13 3/20 4/3 16/11 16/25 17/5
17/18 18/8 22/2 35/7 41/20 41/21 41/25 43/2 48/14
49/6 53/1
evidentiary [1]  3/24
evidentiary-wise [1]  3/24
evolved [1]  48/13
exact [2]  28/1 29/15
exactly [4]  10/19 20/17 20/20 44/22
example [1]  51/3
exclusive [2]  39/11 46/6
executable [2]  23/16 25/25
execute [4]  27/4 30/10 30/23 31/1
executed [6]  13/7 13/15 23/9 23/12 24/25 30/25
executing [1]  26/7
execution [4]  12/5 12/8 30/9 31/13
Executive [1]  53/16
exercise [1]  32/16
Exhibit [1]  24/6
existence [1]  16/20
expansively [3]  12/2 33/7 33/13
expected [2]  8/25 9/7
explain [3]  5/16 46/7 50/18
explaining [4]  16/25 20/24 22/2 43/23
explanations [1]  15/14
expulsion [1]  14/4
expulsions [1]  11/22
extended [2]  42/8 42/10
extending [1]  42/14
extent [4]  6/16 51/1 51/7 51/24
extradite [2]  17/21 17/22
extradited [1]  17/22
extraditing [1]  17/18
extradition [1]  18/2
extraordinary [1]  49/11

**F**

F.3d [8]  7/7 28/18 28/20 28/23 38/24 43/15 46/11
46/14
face [1]  12/9
faces [1]  10/8
facilitate [7]  6/24 7/15 7/22 8/5 8/9 9/14 55/5

---

**countries** [1]  13/11
country [10]  7/25 8/3 10/6 13/10 28/1 34/5 34/13
35/8 35/16 37/9 37/10
counts [1]  5/19
couple [5]  10/21 29/11 30/24 43/10 46/13
course [9]  5/13 5/15 9/21 12/21 15/18 31/4 50/9
51/3 54/25
court [71]
Court's [4]  19/4 35/20 51/1 51/10
courtroom [1]  55/21
courts [7]  6/23 7/21 11/11 11/14 30/25 32/14 42/19
cover [1]  33/3
COVID [1]  11/22
crack [1]  8/21
cried [1]  50/1
crimes [2]  17/17 36/14
criminal [2]  17/9 21/17
critical [1]  42/4
CRR [1]  57/16
custodian [2]  37/17 37/19
custodians [1]  40/9
custody [18]  6/5 34/7 34/20 36/5 36/8 37/13 38/18
39/9 39/13 39/15 40/2 42/2 42/17 43/24 44/13 44/15
44/18 47/8
Customs [2]  22/3 53/15
cv [1]  1/6

## F

facilitating [1]   9/18
facility [4]   10/4 17/11 18/2 40/16
facing [1]   18/3
fact [3]   4/2 4/3 4/4 6/8 10/6 10/13 10/21 14/24
  17/20 36/23 37/5 38/4 38/12
fact-bound [1]   38/12
factors [4]   4/17 4/20 15/24 38/10
facts [22]   3/16 8/13 11/25 12/15 16/2 17/10 19/9
  19/11 19/11 29/16 31/20 32/22 37/4 38/2 38/13
  38/21 39/20 39/22 39/25 47/2 47/18 49/3
factual [5]   5/21 6/6 25/5 38/20 47/11
fair [2]   8/21 14/22
Fairfax [1]   1/15
fairly [1]   16/16
fall [1]   12/3
familiar [1]   32/5
family [1]   52/22
fast [1]   44/10
fault [1]   34/18
favor [1]   54/15
federal [5]   16/20 32/14 53/9 57/4 57/17
feel [1]   52/23
few [1]   52/8
field [1]   53/17
Fifth [4]   1/21 28/21 29/3 54/4
fighting [1]   29/19
figures [1]   48/21
file [1]   15/11
filed [6]   3/9 4/25 5/4 8/25 45/4 55/13
filing [2]   15/9 15/21
final [4]   21/3 21/8 21/12 24/16
finally [1]   16/15
find [10]   8/11 13/5 14/16 28/7 35/23 39/19 39/20
  42/17 54/7 54/9
finding [2]   37/13 44/7
findings [2]   30/3 37/4
fine [4]   15/23 19/5 21/11 30/22
finer [1]   25/23
firm [2]   2/15 2/16
first [13]   4/19 4/19 4/24 8/21 10/1 10/4 12/1
  12/10 14/25 20/5 35/21 46/9 54/9
fish [1]   21/2
flabbergasts [1]   8/21
flexible [1]   37/23
flight [2]   22/24 23/15
flights [1]   22/7
folks [2]   7/24 8/2
follow [1]   45/19
followed [3]   21/10 31/12 33/10
following [2]   16/18 32/11
follows [1]   29/13
forcible [1]   14/4
foregoing [1]   57/7
foreign [10]   15/7 15/17 39/9 40/2 40/13 42/21
  42/25 44/1 44/13 48/6
form [4]   17/8 18/8 20/14 20/20
formal [1]   52/24
format [1]   57/9
forms [1]   8/5
forth [1]   54/24
forthwith [1]   6/18
Foster [2]   28/20 30/24
found [4]   10/10 16/10 30/11 44/23
four [1]   10/4
fourth [15]   7/8 7/11 7/18 8/3 16/13 16/16 16/21
  27/10 31/11 32/5 32/7 32/9 43/10 54/16 55/11
framework [1]   47/17
frankly [1]   10/2 10/14
FRIDAY [1]   1/11
front [2]   12/25 25/10
frustrated [1]   19/24
frustrating [2]   19/23 35/2
full [1]   37/18
fully [2]   20/22 49/10
functional [2]   36/25 37/2
functionaries [2]   15/15 15/6
further [21]   3/24 7/17 12/13 12/13 17/2 18/15
  53/23 54/9 54/17 54/24 55/16 55/19
furthermore [1]   9/11

## G

gang [1]   11/4
GARCIA [39]   1/4 2/11 6/18 8/2 8/10 10/7 10/17
  13/22 14/18 19/12 19/16 21/4 21/9 21/17 22/23 23/9
  23/17 23/20 25/7 30/4 31/18 34/6 34/19 35/18 37/4
  47/1 47/12 47/19 47/22 50/7 50/21 52/21 53/19
  53/19 53/22 53/25 54/10 54/22 55/6
Garcia's [2]   54/20 55/9
gave [1]   21/18
general [3]   13/15 27/25 53/13
general's [1]   32/16
generally [2]   11/11 51/15
generic [2]   52/5
get-go [1]   29/1
getting [3]   11/5 13/15 24/18
give [16]   3/5 4/9 13/21 14/22 18/18 20/7 26/14
  26/16 26/17 37/9 40/7 43/19 46/9 46/9 50/2 50/5
given [15]   5/22 9/19 12/18 16/2 17/4 17/5 17/6
  18/17 18/24 34/5 35/8 38/21 39/21 43/12 51/3
giving [1]   52/24
go [9]   4/18 5/25 25/9 25/18 29/1 29/14 30/13 42/16
  48/18
goes [6]   10/21 10/22 31/15 43/12 44/16 46/1
going [20]   3/6 4/2 4/7 9/7 14/19 14/21 14/22 14/23
  15/4 19/23 20/22 26/3 28/22 35/1 38/9 38/20 49/3
  50/16 51/25 53/4
good [9]   2/6 2/14 2/20 8/17 25/4 25/8 41/16 49/22
  50/7
got [14]   7/19 9/9 20/24 21/13 23/13 28/9 28/19
  33/23 35/10 41/6 47/17 47/17 49/7 50/7

## gotten — guy (H section header column)

gotten [1]   5/14
govern [1]   16/20
government [3]   4/23
governmental [4]   4/23
  8/9 8/11 8/18 8/20 9/16 9/18 9/25 10/23 10/23
  10/24 11/1 11/9 13/4 14/10 14/16 15/5 15/16 15/8
  15/12 15/13 15/16 16/18 15/23 17/11 21/21 24/15
  25/10 26/20 31/17 31/18 34/5 41/24 42/12 42/21
  44/2 44/14 48/6 51/25
government's [4]   6/25 10/16 16/8 17/24 52/1
governmental [1]   16/19
governments [1]   8/14
grant [5]   7/13 21/5 42/18 42/21 53/4
granted [4]   7/12 28/2 53/20 55/4
Great [1]   3/5
GREENBELT [1]   1/2
Grimm [1]   31/12
grounds [2]   46/16
group [1]   22/13
Guantanamo [4]   39/3 42/9 42/9 43/12
guy [1]   40/7

## H

habeas [29]   4/25 4/25 5/2 6/3 6/4 10/1 10/2 11/6
  34/2 34/9 37/11 37/14 37/20 37/22 38/9 39/5 39/13
  42/8 42/15 42/17 42/18 42/21 43/11 44/7 44/22 45/4
  46/7 46/23 47/9
hand [3]   7/6 7/9 37/20
handle [1]   37/23
handles [3]   11/4 49/8 49/8
happen [1]   8/11
happened [4]   31/15 35/10 36/6 50/9
happens [1]   16/11
happy [3]   48/1 49/1 50/22
harm [6]   10/22 16/8 16/9 16/14 54/14 54/9
harsh [1]   16/11
hasn't [1]   50/9
having [4]   5/5 11/19 16/19 33/10
hear [8]   2/23 4/18 12/10 17/11 32/23 33/9 38/19
  45/3
heard [3]   17/12 20/7 37/10
hearing [4]   1/10 2/12 11/14 14/25
hearsay [1]   51/15
heart [2]   25/19 31/15
held [12]   11/11 16/22 34/23 34/25 39/6 39/13 39/15
  46/17 47/15 47/19 47/22 57/8
help [1]   4/14
helpful [1]   21/23
hereby [3]   54/21 55/2 57/6
hey [1]   34/12
highly [1]   28/4
him [25]   6/21 6/22 9/3 10/8 12/24 15/14 16/3 17/19
  20/5 22/17 34/22 35/8 35/13 37/6 38/1 38/6 38/12
  38/12 39/17 39/22 39/22 43/3 43/4 54/16 54/18
his [16]   5/3 5/5 5/8 9/14 19/20 21/14 22/6 29/12
  39/16 51/2 51/16 51/18 52/22 53/21 54/2 54/13
hold [5]   35/8 35/13 36/17 44/19 47/12
holding [1]   48/20
holds [1]   32/19
home [1]   8/5
Homeland [1]   53/13
Honor [45]   2/14 2/24 3/4 3/16 3/21 3/25 4/21 4/23
  5/13 5/17 6/15 6/23 8/24 9/21 10/20 11/10 12/13
  13/9 13/23 14/8 14/13 15/25 17/13 17/11 17/16 18/5
  18/16 18/23 19/22 23/1 25/20 37/10 41/10 43/8
  43/18 44/5 45/10 47/25 49/5 50/15 50/20 51/24
  51/24 52/6 55/17
Honor's [3]   7/4 28/12 33/20
HONORABLE [5]   1/10 2/5 52/10 52/13 56/2
hope [3]   15/15 34/24 51/2
hours [2]   50/5 50/19
house [4]   15/1 36/4 41/13 41/18
housed [1]   36/8
housekeeping [1]   18/24 55/20
however [2]   38/5 40/11
Huisha [2]   11/21 11/21
Huisha-Huisha [1]   11/21

## I

I'll [13]   4/20 17/11 18/18 25/10 33/25 38/23 42/11
  43/6 47/23 50/13 50/13 52/9 53/5
I'm [38]   2/22 3/6 11/5 11/1 11/25 11/5 13/13 13/17
  15/10 18/14 19/12 20/1 20/6 24/18 29/17 30/12 34/24
  35/15 35/16 37/5 37/19 43/13 44/9 45/12 44/5 45/22
  46/10 46/25 47/11 48/1 48/12 49/1 49/3 49/11 50/16
  51/16 51/21 51/21
I've [10]   7/19 10/14 17/4 18/24 19/2 28/8 28/9
  28/19 35/23 53/5
I-200 [1]   20/16
I-205 [2]   20/15 20/20
ICE [7]   20/19 20/20 20/23 23/2 51/14 53/15 53/16
ICE's [1]   53/17
identified [1]   27/13
identify [1]   2/13
IJ [2]   10/9 30/8
illegal [2]   21/17 26/1
illegality [1]   31/23
immediate [2]   37/17 37/19
immediately [2]   6/18 53/3
immigration [17]   7/12 17/1 22/2 24/19 26/4 27/10
  27/15 27/24 29/18 30/2 30/11 35/9 36/6 36/8 53/15
  54/11 55/10
impediment [1]   37/7
implementing [1]   54/3
implications [2]   37/6 49/9
important [4]   19/15 20/8 52/21 52/22
impossibility [1]   11/1
INA [8]   10/5 11/7 11/12 11/13 11/14 14/2 14/6
  24/23
incapable [1]   8/12
incidental [1]   5/9
inclined [2]   44/4 44/5
independent [1]   8/1

## indication — itself (K/L column)

indication [2]   18/7 18/10
indication [1]   4/12
indication [1]   4/12
indicated [1]   4/12
individual [1]   7/22 16/24 21/4 29/9 36/14 39/9
  39/15 43/24 44/12 46/22 46/7
individuals [11]   6/25 22/13 23/4 36/5 36/17 39/1
  41/19 42/24 46/16 47/14 51/11
indulge [2]   26/11 52/8
infer [1]   23/15
inference [3]   39/23 41/17 43/4
inferences [1]   49/4
inform [1]   51/8
information [9]   5/14 5/21 15/17 15/18 18/1 35/4
  41/7 51/19 52/1
initiate [1]   32/16
injunction [5]   3/9 49/12 53/5 54/17 55/4
injunctive [1]   5/4 6/9 49/10 53/8
injury [1]   34/14
input [1]   10/15
inquiry [1]   51/18
inside [1]   8/20
instance [1]   12/11
Instead [1]   9/9
intend [1]   4/17
intending [2]   3/12 3/12
interest [4]   16/16 16/17 16/19 54/15
interpret [1]   48/25
interrupt [1]   6/1
involved [1]   38/25
involving [1]   29/9
Iraq [2]   39/3 40/10
irreparable [6]   10/22 16/8 16/9 16/14 54/14 54/19
is [195]
isn't [1]   5/9 12/9 13/24 16/25 20/4 20/12 33/6
  34/10 38/11 38/13 48/14
issuance [1]   54/16
issue [17]   4/6 27/13 29/8 32/19 32/21 42/5 49/12
issued [2]   54/25 55/8
issues [6]   7/18 10/24 16/23 19/3 27/11 48/1
item [1]   18/24
itself [3]   31/1 49/6 52/25

## J

Jenkins [1]   27/1
Jennifer [2]   1/23 2/17
JGG [2]   36/23 36/24
job [1]   28/7
JONATHAN [2]   1/16 2/16
judge [12]   1/11 9/5 9/24 18/19 22/9 24/19 27/10
  29/19 30/3 30/11 31/12 35/9
judicial [2]   11/12 57/10
jurisdiction [25]   4/19 6/13 8/8 9/13 11/8 14/5
  31/22 32/15 32/20 32/23 33/8 34/9 39/6 42/9
  42/17 42/22 42/23 44/23 44/23 45/3 46/5
  54/8
jurisdictional [4]   4/16 4/24 25/11 25/12
JUSTICE [3]   1/21 2/21 2/25
justification [1]   53/24

## K

K-I-Y-E-M-B-A [1]   43/21
keep [1]   14/23
kettle [1]   22/22
KILMAR [4]   1/4 2/10 53/19 55/6
kit [1]   36/13
Kiyemba [12]   38/23 39/3 40/14 43/9 43/19 43/21
  44/9 45/12 45/13 45/15 45/19 45/22
knowledge [3]   51/12 52/4 52/5
knows [2]   51/16 51/18
KRISTI [3]   1/7 2/11 8/16

## L

lacks [1]   48/7
landed [1]   35/21
language [2]   4/10 28/1
large [2]   10/20 11/3
largely [1]   3/17
last [7]   7/13 8/17 15/10 18/18 24/12 47/25 54/16
lastly [1]   14/9
later [2]   54/23 55/7
law [20]   2/15 2/16 4/5 4/6 5/6 5/7 7/4 14/16 16/10
  17/20 17/20 24/24 25/2 31/17 31/20 32/7 32/21
  38/21 39/17
lawful [3]   8/1 12/7 30/10
lawfully [1]   30/9
laws [2]   16/20 44/2
lawsuit [1]   8/25
lawyers [1]   50/12
lead [1]   39/22
leaders [2]   17/22 17/23
leads [1]   43/3
leash [2]   9/19 14/24
least [6]   8/15 31/21 32/2 32/18 47/13 51/5
leave [1]   55/21
led [3]   22/7 24/10 30/15
Leeper [3]   57/4 57/15 57/16
left [1]   22/8
legal [17]   11/20 16/3 18/13 27/4 27/19 27/22 28/25
  31/1 31/16 31/16 35/12 42/5 43/5 53/22 53/23 54/6
  54/13
legality [1]   32/1
level [1]   16/9
lie [1]   47/9
lies [1]   16/17
light [1]   41/21
likelihood [2]   16/1 38/10
likely [2]   30/5 54/9
likewise [2]   11/21 17/25
Lin [1]   48/3
line [1]   37/10
listen [1]   50/11

**L**

litigate [1]  51/2
little [6]  2/22 24/11 25/9 53/2 57/16 57/25
live [2]  38/3 38/6
LLP [1]  1/17
logical [4]  39/23 41/17 43/3 49/4
long [1]  21/10
longer [1]  6/21
longstanding [1]  46/4
look [9]  4/11 4/15 24/12 42/5 43/7 47/23 48/14 49/2 51/13
looking [6]  20/6 28/5 46/10 47/11 49/11 51/16
lords [1]  17/21
lost [1]  30/7
lot [6]  13/2 16/23 19/22 19/24 38/16 41/12

**M**

made [7]  11/9 31/2 34/15 34/16 34/19 37/16 41/24
magnitude [2]  26/9 32/22
maintain [1]  54/18
majority [1]  44/6
make [16]  3/11 3/19 4/12 4/15 9/22 20/12 30/22 33/16 37/5 38/1 38/17 40/19 46/25 49/4 50/25 55/21
makes [4]  9/25 14/10 16/5 32/8
making [3]  6/16 30/3 31/24
many [1]  13/11 13/11 43/11
March [2]  53/23 53/24
March 12 [1]  53/23
March 15th [1]  53/24
MARYLAND [5]  1/1 2/4 53/22 55/2 57/6
matter [19]  2/9 2/11 7/5 14/16 17/1 24/17 25/2 26/7 26/13 30/25 32/23 38/21 47/3 51/4 51/4 52/18 54/7 55/20 57/9
may [7]  24/18 27/25 29/24 34/2 34/3 40/15 41/11
mean [7]  8/23 14/13 17/4 25/10 26/1 28/3 33/11
meaning [1]  13/20
means [10]  20/11 23/15 24/17 24/24 25/1 25/3 26/5 30/5 35/7 50/20
meant [1]  23/1
meet [1]  16/14
member [1]  16/24
membership [1]  17/7
memoranda [1]  53/10
memorandum [1]  54/24
memorial [1]  37/22
mentioned [5]  17/16 28/22 31/5 32/6 34/1
merits [8]  16/1 25/13 26/1 26/2 38/10 49/18 49/19 54/10
messages [1]  15/6
messed [1]  9/2
messenger [1]  20/2
metaphor [1]  50/1
Mexican [1]  17/22
micromanage [1]  14/19
might [1]  44/5
military [4]  39/2 40/12 42/3 45/2
million [2]  36/4 41/13
mind [1]  10/8
Mindful [1]  7/4
minute [1]  23/19
minutes [1]  52/8
missing [1]  20/14
mistake [3]  6/19 13/7 20/10
misunderstood [1]  34/17
mixing [1]  37/15
moment [6]  17/11 20/11 26/11 38/23 42/16 46/20
Monday [4]  50/22 55/7 55/23 55/24
money [2]  40/21 48/17
more [9]  12/7 13/2 30/5 36/10 38/8 49/15 49/17 50/2 50/22
morning [1]  2/14
MOSHENBERG [3]  1/13 2/15 3/15
most [2]  8/22 49/11
motion [5]  3/8 3/9 53/4 53/8 55/3
motions [1]  1/10 2/12
movant [2]  41/19 53/17
move [2]  15/23 32/25
moved [2]  37/24 37/24
moving [1]  44/10
Mr [1]  23/14
Mr. [44]  2/8 3/2 3/15 3/23 6/18 8/2 8/10 10/7 10/17 13/22 14/18 18/21 19/6 19/16 21/4 21/9 21/16 22/17 22/23 23/9 23/16 23/20 25/7 29/19 30/4 30/7 31/18 34/6 34/19 35/18 37/4 47/1 47/12 47/19 47/22 49/13 50/7 50/10 50/18 50/21 51/2 52/21 55/18
Mr. Abrego [25]  6/18 10/7 10/17 13/22 14/18 21/4 21/9 21/16 22/23 23/9 23/16 23/20 25/7 30/4 31/18 34/6 34/19 35/18 37/4 47/1 47/12 47/19 50/7 50/10 50/18
Mr. Abrego Garcia [4]  8/2 8/10 19/16 47/22
Mr. Cerna [1]  22/17
Mr. Jenkins [1]  27/1
Mr. Reuveni [8]  3/2 3/23 18/21 49/13 50/10 50/18 51/2 55/18
Mr. Sandoval-Moshenberg [1]  3/15
Mr. Silva [2]  29/19 30/7
Mr. Ulander [2]  18/21 19/6
MS [1]  16/24 17/23 22/6
MS-13 [1]  16/24 17/23 22/6
much [6]  9/19 49/15 49/17 50/10 50/24 52/19
Munaf [10]  38/22 39/2 39/5 39/12 40/8 40/8 40/9 42/2 42/16 43/6
MURRAY [2]  1/14 2/15
must [1]  24/19

**N**

name [2]  3/2 20/13
named [4]  26/3 36/10 41/8 53/12
narrow [1]  49/12
narrowest [1]  49/11
nation [2]  39/10 46/5

**Nationality** [3]  26/5 27/24 54/11
native [1]  53/19
necessarily [1]  15/9 54/17
necessary [2]  15/9 54/17
need [6]  4/14 6/6 19/4 48/18 50/18 55/14
negligent [1]  16/5
neither [1]  41/10
never [3]  10/8 33/8 35/10
nevertheless [1]  46/23
new [1]  7/14
Ninth [6]  28/23 29/2 29/8 29/13 31/3 32/10
Nken [2]  7/1 27/18
no [51]  3/16 5/6 5/17 6/19 6/21 9/9 12/16 12/20 12/20 13/3 13/9 13/10 14/3 14/17 16/3 17/15 18/17 19/24 20/5 21/14 21/15 21/15 21/16 23/16 25/6 28/11 28/25 29/4 29/15 30/10 31/1 31/14 34/13 35/7 37/15 39/25 40/20 41/1 41/24 42/19 42/22 43/3 43/5 44/18 46/6 46/24 46/25 47/11 53/6 54/22 55/7
NORM [4]  1/7 2/11 8/16 41/5
nondiscretionary [5]  12/6 31/5 32/8 32/21 33/21
nonexecutable [1]  25/20
nonstatutory [1]  33/5
nose [1]  17/16
not [104]
note [1]  36/11
noted [1]  21/3
NOTES [1]  1/25
nothing [18]  3/24 5/19 5/20 12/20 12/21 14/11 14/14 15/22 25/13 34/12 36/7 40/24 47/13 47/18 49/19 49/20 55/16 55/19
notice [1]  18/25
notwithstanding [1]  42/9
number [4]  1/6 2/10 42/3 55/3
NW [2]  1/17 1/21

**O**

Obama [1]  45/22
object [1]  15/21
obtained [2]  30/9 51/19
obvious [1]  54/14
obviously [2]  7/23 28/22
off [1]  19/19
office [1]  53/18
officer [3]  20/19 20/23 22/17
officers [2]  19/21 21/18
official [7]  39/16 57/1 57/4 57/17
Oh [1]  35/16
okay [58]
once [13]  17/2 43/24 47/7
one [34]  3/5 4/7 6/13 7/5 9/2 12/4 12/4 12/5 12/7 12/18 13/12 13/17 18/24 23/9 27/22 29/10 29/13 29/6 29/12 32/24 33/24 34/4 36/13 36/17 36/19 39/20 43/9 47/5 48/18 49/23 50/2 55/2 55/17 56/20
ones [1]  49/4
ongoing [2]  52/1 54/19
only [10]  5/6 5/21 12/4 22/2 25/12 32/15 39/6 39/11 39/19 48/19
opening [1]  34/16
operation [1]  29/23
operations [3]  8/15 16/21 53/17
opinion [2]  52/24 54/24
opportunity [3]  20/7 41/22 48/14
opposite [1]  18/1
options [1]  14/15
oral [1]  53/6
oranges [1]  37/16
order [78]
ordered [4]  8/19 10/23 55/2 55/5
ordering [2]  9/16 11/2
orders [3]  7/18 26/8 51/7
ordinary [3]  5/15 12/21 16/12
organization [1]  17/8
origin [1]  8/3
OSORIO [2]  1/14 2/15
other [21]  8/1 11/20 11/23 15/6 18/3 22/22 28/22 29/6 29/14 31/3 31/24 33/24 35/12 38/11 42/7 43/9 47/7 48/4 51/20 54/6
others [2]  7/19 29/13
otherwise [4]  12/21 33/4 48/15 49/3
out [15]  9/1 10/23 14/15 18/2 19/20 23/1 28/21 29/6 43/11 48/4 48/21 50/6 50/17 51/9 52/20
outright [2]  27/23 31/23
outside [5]  11/14 17/24 18/19 39/1 42/15
over [3]  6/21 16/4 42/17
overlap [1]  6/14
overseas [1]  39/7
overtime [1]  4/12
own [2]  44/2 46/6

**P**

p.m [8]  1/11 52/12 52/12 54/23 55/7 55/22 55/24 56/4
page [5]  22/20 24/12 44/18 46/14 57/9
pages [1]  24/11
paid [2]  40/21 41/13
Panama [1]  12/24
papers [2]  32/6 34/16
paragraph [5]  7/13 22/5 22/21 23/14 51/17
Paragraphs [1]  22/1
part [6]  10/9 15/11 22/11 22/12 42/10 46/21
participating [1]  7/16
particular [7]  15/5 15/5 15/6 29/18 39/20 40/21 45/15
parties [1]  16/4 28/24 55/12
party [1]  37/1
passed [2]  24/24 45/2
PAULA [5]  1/10 2/5 57/4 57/15 57/16
pause [1]  30/8
payee [2]  48/18 48/19
paying [3]  34/5 34/21 48/16
payor [3]  36/4 36/4 41/18
pending [4]  2/9 22/8 36/17 45/2

pennies [1]  41/15
people [4]  36/15 36/20 36/21 36/24
Perdomo [1]  6/13
perform [2]  20/16
perhaps [2]  6/13 20/16
period [1]  48/20
permission [2]  13/20 13/22
persecution [2]  10/9 30/6
persecutor [1]  10/9
person [8]  5/16 19/19 19/12 20/19 37/13 37/24 52/2 52/3
personal [3]  51/11 52/3 52/4
persons [1]  39/13
persuade [1]  51/2
petition [2]  5/1 7/14
phone [1]  40/6
pick [2]  23/3 40/6
picked [7]  20/10 22/3 22/3 22/4 22/11 22/14 23/2
place [4]  14/25 22/6 35/8 38/3
placed [1]  7/25
placement [1]  37/2
places [1]  34/25
plaintiff [16]  1/5 1/13 1/23 2/17 19/12 20/9 22/3 26/3 26/19 29/12 31/23 31/25 37/25 38/4 55/6 55/17
plaintiffs [1]  1/12 25/21 24/5 29/6 34/7 34/18 36/12 50/13 54/2 54/9
plaintiffs' [9]  21/3 27/17 32/6 34/1 34/21 37/11 48/3 53/8 55/3
plan [1]  52/25
plane [2]  22/14 22/21
plead [1]  10/4
pleaded [1]  34/3
pleading [1]  26/15
pleadings [3]  13/18 15/22 36/12
please [2]  2/13 9/5
pled [2]  6/3 10/3
point [18]  3/6 4/10 8/5 12/7 20/24 21/25 25/23 28/11 28/16 32/13 40/18 40/14 43/9 46/25 47/25 50/25 50/25
points [3]  32/25 33/25 36/25
police [1]  5/19
policy [2]  15/7 15/18
position [2]  9/13 48/3
possible [1]  50/17
posture [1]  27/23
potential [2]  40/9 49/9
power [5]  17/24 39/16 39/21 39/22 42/4
practical [8]  13/14 27/3 27/20 28/14 37/5 38/11 49/9 50/16
practically [3]  16/1 34/14 35/18
predates [3]  45/13 45/16 45/17
predatory [1]  17/8
preliminary [6]  3/9 4/16 53/4 54/17 55/4 55/8
premature [2]  8/10 14/15
prepared [1]  37/5
presence [1]  54/13
present [2]  1/23 41/20
presentation [1]  3/20
preserve [1]  53/9
President [3]  18/8 41/14 41/16
presiding [1]  2/5
press [1]  15/1
pressing [1]  30/8
pretty [1]  7/21
prevent [1]  42/19
primarily [1]  5/3
primary [1]  25/9
principle [2]  46/4 47/6
prior [3]  5/8 14/25 42/14
prison [5]  8/15 8/16 10/21 10/25 18/12
prisons [3]  17/21 17/22 17/23
probability [1]  30/5
probable [3]  5/19 20/4 21/15
procedural [2]  6/10 6/11
procedure [2]  21/10 53/10
Procedures [1]  54/5
proceed [2]  6/7 37/20
proceeding [1]  17/9
proceedings [6]  7/17 17/2 24/10 32/14 56/4 57/8
process [11]  6/11 10/5 14/20 17/10 18/13 21/13 21/19 31/18 53/23 54/13 55/9
produce [9]  39/17 39/21 39/22 41/2 41/2 41/24 42/4 49/2 50/21
professional [1]  3/11
professionalism [1]  52/18
prohibited [3]  5/6 10/7 53/21
prohibits [2]  11/7 11/24
prompt [1]  9/16
properly [1]  45/6
proposition [2]  48/5 48/10
prosecute [1]  32/17
protections [1]  54/6
provide [3]  47/6 47/7 51/25
provided [3]  16/25 45/3 51/11
provides [1]  52/3
providing [1]  15/13
provision [3]  14/6 44/24 45/11
proximate [1]  11/18
public [5]  16/16 16/17 16/19 36/11 54/15
pulling [1]  45/15
pure [3]  31/16 31/20 32/21
purpose [1]  7/16
purposes [2]  27/20 37/13
pursuant [5]  14/2 20/19 24/23 44/2 47/15 53/9 57/6
push [2]  20/25 30/17
put [13]  3/13 9/18 21/21 22/14 24/5 25/20 25/22 28/21 32/9 32/24 36/12 36/24 46/18
putting [1]  10/8
PX [1]  1/12
PX25 [1]  2/10
PX25-951 [1]  2/10

**Q**

question [19]  3/23 5/12 11/5 21/12 25/5 27/6 28/12

**Q**
question... [12] 31/16 31/16 31/17 32/00 42/21
35/22 38/8 38/11
questions [7] 4/2 4/17 19/23 19/25 31/20 33/8
44/17
quibble [1] 16/4
quickly [1] 50/17
QUINN [2] 1/17 2/16
quite [4] 15/1 23/18 29/10 40/16
quo [3] 54/18 54/19 55/8
quote [12] 15/2 15/3 29/10 32/13 39/13 42/11 42/11
42/12 43/25 44/1 44/3 46/14

**R**
raised [1] 28/17
raises [3] 4/24 16/23 33/17
Ramirez [1] 7/6
Ramirez's [2] 7/13 7/15
rare [1] 4/8
reaching [1] 9/1
read [16] 12/2 12/2 22/16 22/16 22/20 30/24 30/24
31/21 32/2 33/1 33/7 33/12 34/11 42/2 52/25 53/5
reading [4] 32/4 42/4 45/14 52/16
real [2] 44/10 47/1
reality [1] 50/16
really [11] 5/9 5/9 6/2 6/7 14/15 16/5 16/5 20/2 21/25
30/14 34/10 41/13
reason [5] 8/17 10/10 18/3 48/17 51/6
reasonable [1] 54/16
reasoned [1] 32/12
reasons [2] 54/14 54/21
received [4] 17/25 19/6 21/6 35/23
recess [3] 52/8 52/11 52/12
recites [1] 46/4
reckless [1] 16/5
recognition [1] 52/23
recognize [1] 4/4
recommendation [1] 50/8
record [17] 2/13 8/13 12/20 21/21 23/11 24/2 24/4
24/25 32/25 36/2 40/24 41/3 53/1 53/2 53/11 53/21
54/6
records [1] 51/19
redress [1] 34/14
redressability [4] 14/9 48/2 48/7 49/8
redressable [1] 14/11
refer [1] 22/5
refers [2] 22/5 22/6
reflects [1] 53/21
regard [1] 26/9
regarding [1] 44/20
regardless [1] 33/5
regards [5] 5/2 8/15 9/19 16/25 51/1
regulation [2] 29/24 29/25
regulations [2] 54/3 57/10
rejected [1] 44/6
relationships [1] 10/24
relatively [2] 7/12 9/16
release [1] 44/18
relied [1] 7/3
relief [12] 5/5 6/9 34/4 42/18 42/21 46/7 48/5
49/10 49/11 53/9 55/4 55/8
relinquished [2] 39/24 39/25
relying [3] 8/17 6/8 45/20
remand [2] 7/14 45/20
remedial [2] 51/1 52/1
remedy [9] 6/13 9/20 10/23 11/2 38/5 38/11 42/22
47/9 49/9
remember [1] 27/25
removable [1] 13/11
removal [54] 6/10 7/14 10/6 11/13 11/13 11/18
11/19 11/25 12/5 12/16 12/20 13/8 13/24 14/2 14/2
14/3 20/13 20/18 21/1 21/4 21/8 21/13 21/15 22/21
23/6 23/7 23/8 23/11 23/15 23/16 23/23 23/24 24/10 24/11 24/19
27/19 27/20 28/2 29/9 30/3 30/16 30/23 31/14 53/17
54/10 53/21 54/2 54/20
removals [4] 11/12 11/17 11/20 11/24
remove [4] 12/24 16/3 21/9 27/25
removed [7] 11/17 19/13 19/16 21/5 25/14 53/24
54/10
removing [1] 10/7
renewable [1] 36/19
Reno [4] 31/8 32/12 33/6 33/14
reply [1] 53/10
report [4] 5/19 9/16 15/9 21/16
reported [1] 57/8
REPORTER [3] 57/1 57/4 57/17
reports [2] 46/14 51/7
represent [1] 4/2
represented [1] 7/2
Republic [1] 36/16
request [2] 51/10 52/2
respect [6] 4/2 4/6 6/12 9/23 20/3 25/5
respond [3] 32/24 35/1 44/16
response [5] 6/20 13/1 13/8 34/11 34/15
responses [2] 20/21 38/14
responsibility [1] 9/9
responsive [1] 18/9
restore [2] 14/18 55/8
result [1] 14/17
resulting [1] 54/19
resumes [1] 52/14
retains [1] 54/7
return [10] 6/17 6/24 7/16 7/22 8/9 8/19 9/14 37/6
54/22 55/5
returned [3] 8/2 36/21 36/23
returning [1] 54/15
REUVENI [11] 1/20 2/20 2/25 3/2 3/23 18/21 49/13
50/10 50/18 51/2 55/18
reveal [1] 15/17
revealing [1] 15/16
review [6] 7/14 11/12 11/24 29/1 32/15 48/24

reviewed [3] 46/23 53/5 53/8
right [70]
rise [2] ... 56/2
rises [1] ...
Road [1] 1/14
robust [1] 17/10
role [1] 22/6
room [1] 38/3
roughly [1] 5/8
routine [1] 7/12
routinely [1] 6/24
RPR [1] 57/16
Rubio [2] 18/10 41/4
rule [4] 33/7 37/17 37/19 53/9
Rules [1] 53/9
ruling [2] 16/6 54/25
running [1] 3/7

**S**
Salvador [39] 10/17 10/18 11/3 12/16 13/3 13/12
14/3 16/4 17/19 18/2 18/4 18/9 18/13 21/5 22/15
23/5 23/12 23/23 24/21 24/21 25/7 25/14 30/6 34/5
34/21 36/3 36/9 36/16 39/9 40/7 41/3 43/1 47/13
47/22 53/20 53/21 53/24 54/11 54/13
Salvador's [1] 53/25
Salvadorans [1] 43/2
Salvadoran [1] 17/23
same [16] 3/23 7/20 10/16 10/20 11/2 18/21 23/1
23/14 27/3 27/19 28/14 28/17 29/25 38/13 38/15 57/7
SANDOVAL [3] 1/13 2/15 3/15
SANDOVAL-MOSHENBERG [2] 1/13 2/15
satisfactory [2] 20/22 35/24
satisfied [1] 39/20
saw [1] 21/16
saying [15] 3/2 8/4 12/22 13/13 13/24 14/14 18/4
20/9 30/13 34/24 37/19 38/19 41/15 46/22 47/6
scheme [1] 44/20
seal [3] 15/9 15/11 15/21
seat [2] 2/7 52/16
second [1] 3/5
secretary [6] 15/2 18/9 41/4 41/4 53/13 53/14
section [5] 11/11 39/12 46/23 54/3 54/12
Security [1] 53/13
see [15] 3/18 4/16 5/15 10/2 12/21 18/4 22/16
23/19 24/12 30/7 32/6 36/2 42/1 51/10 53/1
seeking [1] 11/12
seeks [1] 15/13
seem [1] 3/17
seems [3] 4/18 29/5 32/9
seen [3] 13/14 13/19 51/13
seize [1] 20/19
seized [3] 19/4 23/20 25/7
send [3] 23/5 23/20 25/7
sense [1] 13/14
sensitive [1] 15/17
sent [1] 22/15
seriously [2] 20/3 51/6
service [2] 40/21 48/17
session [2] 4/24 52/14
Sessions [1] 7/7
set [1] 29/15
setting [1] 54/24
several [1] 11/22
shall [1] 45/3
shines [1] 41/21
shooting [1] 20/1
short [3] 9/14 23/13 26/15
show [2] 8/13 38/13
showing [2] 47/14 48/15
shown [1] 16/11
shows [1] 40/25
sides [4] 3/14 4/6 4/13 29/7
sign [2] 53/2 55/13
significant [1] 8/14
Silva [5] 28/17 29/18 29/19 30/7 30/24
similar [3] 29/5 31/13 38/25
similarly [1] 16/22
SIMON [2] 1/13 2/15
simple [2] 38/8 38/13
simply [4] 13/12 14/6 30/8 30/23
since [1] 33/1
sincerely [1] 51/2
sit [1] 48/1
situation [6] 9/10 9/12 29/5 31/25 42/13 42/14
situations [1] 37/23
Sixth [1] 39/6
slightly [1] 29/8
slow [3] 43/13 44/10 51/22
small [1] 50/25
so [96]
soldiers [1] 39/7
someone [3] 17/7 40/6 41/15
something [4] 9/4 11/6 17/24 28/25
somewhere [1] 34/13
sorry [13] 2/22 2/24 5/11 5/11 6/1 15/10 19/10
35/16 43/13 44/9 45/14 51/21 51/21
sort [9] 20/25 25/22 28/17 29/25 31/24 49/25 51/7
51/8 52/5
sounds [5] 10/1 34/6 37/14 41/12 44/5
source [1] 27/11
sovereign [6] 39/9 40/13 43/25 46/2 46/3 47/8
space [1] 38/7
speak [2] 2/22 41/6
speaks [1] 49/6
specific [2] 21/12 32/17
specifically [2] 51/17 54/12
specify [3] 51/16 51/17 52/2
speed [1] 10/22
spent [1] 34/8
split [5] 25/21 26/18 28/6 29/15 33/11
squarely [1] 32/9
stages [1] 32/17
stand [1] 48/10

standard [2] 16/13 16/14
stands [3] 48/17 52/11 56/3
started [1] 33/11
starting [1] 25/17
state [4] 18/10 41/4 52/4 53/14
stated [2] 6/9 54/21
statement [3] 5/18 20/4 21/15
statements [1] 15/1
STATES [62]
States' [2] 36/13 36/17
statute [6] 9/16 15/9 51/7 54/18 54/18 55/8
statute [2] 6/10 12/2 39/13
statutes [1] 55/10
statutory [3] 10/5 33/5 44/20
stay [13] 26/21 26/23 26/24 27/2 27/4 27/9 27/9
27/11 27/14 27/18 27/23 28/5 28/14
stayed [1] 29/25
stays [1] 33/11
stenographically [1] 57/8
stenographically-reported [1] 57/8
STENOTYPED [1] 1/25
step [2] 12/12 12/13
steps [3] 14/17 15/14 52/2
still [8] 13/1 21/8 34/19 36/7 38/5 38/11 39/23
39/23
stop [1] 37/18
straight [1] 35/11
street [3] 1/17 1/21 19/20
streets [1] 10/18
strictly [1] 42/2
strike [1] 37/1
stripped [3] 31/22 32/14 32/20
stripping [2] 14/6 44/23
strips [1] 11/7
subject [5] 16/11 30/4 30/6 39/7 54/7
substantial [1] 16/19
substantive [1] 30/14
succeed [1] 54/10
success [2] 16/1 38/10
successful [1] 8/18
such [4] 13/10 17/7 45/7 47/2
sufficient [1] 16/13
suggest [2] 36/7 49/23
suggests [2] 32/18 48/23
suit [1] 53/12
Suite [1] 1/14 1/18
SULLIVAN [2] 1/17 2/17
superintendence [1] 50/3
supplemental [1] 26/15
support [4] 16/10 26/19 26/20 52/24
supporting [1] 53/10
supports [1] 20/9
Supreme [10] 7/1 7/2 7/3 12/3 32/12 37/21 40/18
42/8 42/14 46/4
Sura [2] 1/23 2/17
swallow [1] 33/7
systems [1] 51/19

**T**
t616 [1] 1/22
t616-8962 [1] 1/22
tagged [1] 9/22
take-home [1] 8/5
taken [5] 14/17 19/19 19/20 47/16 52/12
takes [2] 27/4 33/18
taking [2] 48/12 51/6
talk [3] 23/19 35/17 38/23
talked [1] 32/17
talking [3] 7/24 37/12 44/17
technical [1] 19/3
technically [1] 42/10
tell [2] 20/17 37/7
temporarily [1] 11/17
ten [1] 52/9
tenor [1] 9/7
terms [5] 23/18 36/19 37/1 37/5 48/23
territory [6] 39/1 42/15 43/24 46/2 46/3 46/6
terrorism [1] 53/25
Terrorismo [1] 54/1
text [1] 30/21
theory [1] 6/5
therefore [3] 7/13 37/17 47/20
they've [1] 9/9
thing [7] 8/21 12/10 13/10 13/20 35/22 42/13 49/23
things [3] 14/24 20/24 38/6
think [45] 6/2 6/5 6/13 8/8 8/10 8/13 8/17 9/18
10/3 12/7 13/1 14/5 14/22 15/6 16/8 16/10
16/11 16/16 17/15 17/20 20/15 24/5 25/16 25/18
26/13 27/17 31/8 38/2 38/6 38/20 40/1 40/2 40/5
41/17 42/4 44/16 45/10 47/4 48/2 48/4 49/4 49/6
49/8 51/6
thinking [2] 10/14 20/15
though [6] 12/1 21/12 27/7 33/16 34/10 36/2
three [6] 12/16 26/17 32/12 42/17 42/19 55/7
threshold [1] 48/1
time [11] 4/15 7/3 7/19 8/25 9/19 13/21 19/4 29/24
34/8 37/22 48/20
Title [1] 11/22 22/21 23/6 23/7
today [14] 3/8 3/20 6/8 8/25 11/3 15/16 16/7 18/25
30/21 44/17 47/5 51/5 52/20 55/14
today's [1] 14/25
together [1] 3/8
told [3] 19/6 36/11 46/21
tool [1] 36/13
tools [1] 36/13
torture [2] 16/9 30/6
total [1] 42/12
touch [1] 33/25
transcript [3] 1/10 57/7 57/9
TRANSCRIPTION [1] 1/25
transfer [1] 44/1
transferred [3] 43/25 46/2 47/8

**T**

transferring [1]  42/20
transmit [1]  55/23
transported [1]  36/20
treaties [1]  48/25
treatment [1]  16/12
treaty [1]  18/3
tried [1]  14/14
true [2]  18/1 57/7
try [3]  9/2 50/6 50/17
trying [1]  46/25
turn [2]  4/20 50/13
tweet [2]  18/8 18/9
twice [1]  55/20
two [11]  4/8 4/24 7/19 8/14 25/17 27/13 33/24 34/4
40/9 42/7 55/4
typical [1]  51/14

**U**

U.S [9]  38/22 40/12 42/17 42/17 42/20 43/24 43/24
44/18 53/15
U.S.C [5]  46/24 54/2 54/5 54/12 57/6
U.S.C. [1]  30/22
Ulander [2]  2/8 19/6
unconstitutional [3]  20/11 44/25 45/11
under [18]  6/10 11/12 11/13 11/20 11/24 11/25 15/9
15/11 15/21 16/13 22/14 23/5 23/6 36/20 38/9 39/14
42/11 46/23
underlying [1]  30/25
understand [14]  8/20 22/9 28/13 33/1 33/20 33/21
38/19 40/19 41/9 41/9 44/11 48/22 49/5 49/6
understanding [2]  22/23 45/18
understood [2]  33/19 34/17
undisputed [2]  3/17 16/2
unexecutable [1]  26/7
UNITED [64]
unlawful [4]  12/9 29/1 30/3 54/20
unless [2]  11/5 16/9
unprecedented [1]  28/5
unquote [1]  20/10
unreasonable [1]  32/4
until [1]  48/20
unusual [1]  28/4
unwind [1]  37/3
up [19]  2/22 3/7 4/3 7/6 7/9 9/2 13/4 20/10 22/3
22/4 22/11 22/14 23/2 23/3 25/10 37/25 40/6 44/13
45/22
update [1]  9/17
URQUHART [2]  1/17 2/17
use [3]  4/15 23/18 36/14
used [3]  23/20 25/7 41/11

**V**

v. [1]  2/11
VA [1]  1/15
vacate [1]  7/14
valid [2]  21/9 23/16
various [1]  51/19
Vasques [2]  1/23 2/17
versus [4]  31/5 51/16 51/18 51/18
very [25]  9/15 9/18 10/8 12/10 12/25 13/14 13/20
13/20 14/23 20/8 21/12 25/4 25/8 31/12 35/8 35/8
35/17 35/22 38/11 49/21 50/10 50/25 51/14 52/19
52/22
view [9]  17/5 20/8 27/21 33/22 34/2 34/21 37/11
44/4 48/13
violate [2]  31/17 31/19
violated [1]  54/2
violation [3]  26/4 27/23 54/11
violent [1]  17/7
vs [1]  1/6

**W**

wait [1]  52/23
walls [1]  8/16
want [17]  3/11 4/11 4/14 21/11 23/18 33/16 38/17
40/19 41/1 43/3 44/10 48/21 50/6 52/8 52/17 52/20
55/21
wanted [5]  3/19 20/6 20/12 41/20 42/5
wants [1]  43/4
wards [1]  39/24
warrant [10]  5/18 12/20 13/19 20/4 20/12 20/16
20/18 20/18 21/14 22/5
was [81]
Washington [2]  1/18 1/22
wasn't [1]  3/19
waste [1]  19/4
water [1]  13/2
way [19]  4/4 9/5 10/2 10/14 22/20 28/22 29/14
30/10 30/24 30/24 31/3 31/21 33/1 33/22 35/2 36/2
39/11 39/20 40/13
ways [2]  30/13 37/24
we'll [1]  3/18
Wednesday [1]  8/17
week [1]  8/17
weekend [3]  5/8 23/2 23/3
weeks [1]  36/5
weigh [1]  54/15
well [21]  3/18 4/1 9/4 10/15 13/5 15/12 21/23
25/22 29/10 31/10 32/11 32/18 34/10 34/23 35/6
35/25 41/1 41/4 42/16 52/7 54/4
went [3]  23/1 31/3 46/7
whatever [2]  22/17 23/2
whatsoever [2]  9/10 9/12
whereas [1]  32/22
wherein [1]  26/21
whether [8]  16/4 25/19 27/21 28/25 29/1 29/2 30/25
40/5
while [1]  45/1
White [1]  15/1
whole [1]  22/22
win [1]  26/3

**Winter [4]**  4/17 4/19 15/24 38/10
wise [1]  3/24
wish [1]  44/10
wished [1]  49/24
withheld [1]  24/19
withholding [9]  6/10 13/5 21/5 23/24 24/11 27/20
28/1 30/16 53/20
within [2]  46/5 51/25
without [8]  8/1 50/3 50/4 50/4 53/22 53/23 54/12
54/17
witnesses [1]  3/13
wolf [1]  50/1
won't [2]  15/21 26/25
wonderful [1]  31/12
word [7]  4/1 7/19 7/20 18/18 41/11 53/5 53/5
words [1]  31/24
work [2]  33/22 50/6
working [3]  4/12 9/4 9/6
works [1]  4/5
world [1]  21/9
worried [2]  15/13 15/16
wrinkle [1]  31/4
writ [1]  45/4
write [2]  50/17 52/24
writs [1]  37/22
written [1]  53/6
wrong [4]  37/3 46/21 46/21 50/1
wrongful [1]  29/9
wrongly [1]  7/22

**X**

XINIS [2]  1/10 2/5

**Y**

yeah [5]  14/5 14/13 27/2 39/18 49/24
year [2]  36/17 36/19
yep [1]  20/20
yes [15]  2/24 6/15 9/24 11/10 19/5 19/17 24/14
28/16 28/19 29/3 30/18 42/7 43/15 45/24 47/5
yet [3]  17/11 30/12 40/16
you'll [1]  23/19
yourselves [1]  2/13