FILED: April 7, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 25-1345
(8:25-cv-00951-PX)

———————————

KILMAR ARMANDO ABREGO GARCIA; JENNIFER STEFANIA VASQUEZ
SURA; A.A.V., a minor, by and through his next friend and mother, Jennifer Vasquez
Sura

        Plaintiffs - Appellees

v.

KRISTI NOEM; TODD LYONS; KENNETH GENALO; NIKITA BAKER; PAMELA
JO BONDI; MARCO RUBIO

        Defendants - Appellants

--------------------------------

ERWIN CHEMERINSKY; MARTHA MINOW; LAURENCE H. TRIBE, Professors

        Amici Supporting Appellees

———————————

O R D E R

———————————

Upon consideration of the submissions relative to Appellants' motion for stay

pending appeal and immediate administrative stay, the court denies the motion.

Entered at the direction of Judge Thacker with the concurrence of Judge Wilkinson and Judge King.

For the Court

/s/ Nwamaka Anowi, Clerk

THACKER, Circuit Judge, with whom Judge KING joins, concurring:

The panel unanimously agrees that the district court's order requiring the Government "to facilitate and effectuate the return of Plaintiff Kilmar Armando Abrego Garcia to the United States by no later than 11:59 PM on Monday, April 7, 2025," should not be stayed. The Government's motion to stay is, therefore, denied. I write to explain my view.

The United States Government has no legal authority to snatch a person who is lawfully present in the United States off the street and remove him from the country without due process. The Government's contention otherwise, and its argument that the federal courts are powerless to intervene, are unconscionable.

I.

Abrego Garcia is an El Salvadoran national who has been lawfully present in the United States since 2019, when he was granted withholding of removal to El Salvador. Abrego Garcia has no criminal history and has never even been charged with a crime in the United States, El Salvador, or any other country. On March 12, 2025, agents with United States Immigration and Customs Enforcement ("ICE") took Abrego Garcia into custody without authority. Although ICE agents told Abrego Garcia that his "status had changed," S.A.[1] 19; 147, that was not true. On March 15, 2025, in what the Government has conceded was "an administrative error," the Government flew Abrego Garcia from the United States to Tecoluca, El Salvador. Dist. Ct. Op. at 2 n.3 (citing Hr'g Tr., Apr. 4, 2025,

---

[1] "S.A." refers to the supplemental appendix attached to Abrego Garcia's response to the Government's motion for a stay.

at 19:11–13 (Mr. Reuveni: "This person should -- the plaintiff, Abrego Garcia, should not have been removed. That is not in dispute.")).  He was placed at the Terrorism Confinement Center ("CECOT") in El Salvador, "a notorious supermax prison known for widespread human rights violations."  Dist. Ct. Op. at 5.  The Government undertook this action pursuant to its agreement with El Salvador, wherein the United States paid El Salvador six million dollars to hold detainees "for one (1) year, pending the United States' decision on [their] long term disposition."  Dist. Ct. Op. at 6.

On March 24, 2025, Abrego Garcia, along with his wife, Jennifer Vasquez Sura, and son, filed a lawsuit in the District of Maryland against Department of Homeland Security Secretary Kristi Noem; Acting Director of ICE, Todd Lyons; Acting Executive Associate Director of ICE Enforcement and Removal Operations, Kenneth Genalo; ICE Baltimore Field Office Director, Nikita Baker; Attorney General, Pamela Bondi; and Secretary of State, Marco Rubio (collectively the "Government").  Abrego Garcia's complaint asserts five claims for relief premised on his forcible removal to El Salvador: (1) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A); (2) violation of procedural due process pursuant to the Due Process Clause of the Fifth Amendment; (3) violation of substantive due process pursuant to the Due Process Clause of the Fifth Amendment; (4) violation the Administrative Procedure Act, 5 U.S.C. § 706(2); and (5) for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Abrego Garcia moved for a temporary restraining order, requesting that the district court order the Government "to request that the government of El Salvador remove Mr. Abrego Garcia from the CECOT . . . and return him to the custody of the United States"

and "stop compensating the operators of the CECOT torture prison for their continued detention of Mr. Abrego Garcia." S.A. 34. The district court held a hearing on Abrego Garcia's motion on April 4, 2025. That same day, the district court issued an order construing the motion as a motion for preliminary injunctive relief and granting that relief. The district court ordered the Government "to facilitate and effectuate the return of Plaintiff Kilmar Armando Abrego Garcia to the United States by no later than 11:59 PM on Monday, April 7, 2025." Mot. for Stay Add. at 2.[2] In response, the Government filed a notice of appeal, and moved before this court for an emergency stay of the preliminary injunction pending appeal and an administrative stay.

## II.

"A stay is not a matter of right," but is "instead an exercise of judicial discretion." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (cleaned up). As the party seeking relief, the Government bears the burden of demonstrating "that the circumstances justify an exercise of that discretion." *Id.* at 433–34. In making that determination, we must consider the following factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. While the last two factors merge "when the Government is the opposing party," *id.* at 435, they remain "distinct" here, where the Government is the party seeking the stay, *U.S. Navy Seals 1-26*

---

[2] On April 6, 2025, the district court issued a thorough memorandum opinion detailing its sound reasoning.

*v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022).  The Government argues it is entitled to a stay because: (1) the district court's order was impermissibly broad and violated the separation of powers; (2) the district court did not have jurisdiction to hear Appellees' lawsuit; and (3) the equities favor Appellees.

### III.

### A.

I begin with the Government's second argument because our first act must always be to determine the existence of jurisdiction.  The Government argues that the district court, and thus this court, lacks jurisdiction because the INA strips federal courts of jurisdiction to review "any cause or claim by or on behalf of any [non-citizen] arising from the decision or action by the Attorney General to . . . execute removal orders against any [non-citizen]." 8 U.S.C. § 1252(g).  But, as the Supreme Court has made clear, § 1252(g) strips the federal courts of jurisdiction only to review the Attorney General's exercise of **lawful** discretion to commence removal proceedings, adjudicate those cases, and execute orders of removal. *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). "There are of course many other decisions or actions that may be part of the deportation process," but the jurisdictional bar "applies only to [those] three discrete actions."  *Id.*

Thus, the question is whether the Government is likely to succeed on the merits of its claims that the Attorney General removed Abrego Garcia pursuant to a lawful order of removal.  The Government claims in its motion that "[t]here is no doubt that a removal order was issued against Abrego Garcia . . . . [a]nd there is no doubt that Abrego Garcia was removed pursuant to that order."  Mot. for Stay at 12; *see also* Mot for Stay Add. at

53, Decl. of Robert Cerna, ICE Field Officer ("Cerna Declaration") (explaining that Abrego Garcia's removal was "an oversight" but was "based on the existence of a final order of removal"). But the Government is wrong. While an "order of removal is separate from and antecedent to a grant of withholding of removal," *Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021), the Government well knows -- or should know -- that the grant of withholding prevents the Attorney General from removing the non-citizen to the country specified in the withholding order. *See* 8 U.S.C. § 1231(b)(3)(A) (explaining that, subject to certain exception, "the Attorney General may not remove a [non-citizen] to a country if the Attorney General decides that the [non-citizen's] life or freedom would be threatened in that country" for certain statutorily protected reasons).

As the Government readily admits, Abrego Garcia was granted withholding of removal -- "It is true that an immigration judge concluded six years ago that Abrego Garcia should not be returned to El Salvador." Mot. for Stay at 16; *see also* Cerna Declaration at 53 ("ICE was aware of this grant of withholding of removal at the time [of] Abrego-Garcia's removal from the United States.").[3] And "the Government had available a procedural mechanism under governing regulations to reopen the immigration judge's prior order, and terminate its withholding protection." Mot. for Stay at 16–17. But, "the Government did not avail itself of that procedure in this case." *Id.*; *see* Dist. Ct. Op. at 4

---

[3] Consistent with this reality, the Government attorney appearing before the district court at the April 4 hearing candidly admitted that no order of removal is part of the record in this case. Dist. Ct. Op. at 14 (citing Hr'g Tr. Apr. 4, 2025, at 20 (counsel admitting no order of removal is part of the record), and *id.* at 22 (counsel confirming that "the removal order" from 2019 "cannot be executed" and is not part of the record)).

(Mr. Reuveni: "There's no dispute that the order [of removal] could not be used to send Mr. Abrego Garcia to El Salvador." (quoting Hr'g Tr., Apr. 4, 2025, at 25:6–7)); *see also Guzman Chavez*, 594 U.S. at 531 (explaining that a non-citizen who has been granted withholding of removal may not be removed "to the country designated in the removal order unless the order of withholding is terminated"). Based on those facts, the Government conceded during the district court hearing, "The facts -- we concede the facts. This person should -- **the plaintiff, Abrego Garcia, should not have been removed**. That is not in dispute." S.A. 98 (emphasis supplied).[4]

As such, the Attorney General's decision to remove Abrego Garcia to El Salvador was not one that was within her lawful discretion. The removal was not the enforcement of a valid order of removal. Instead, it was plainly in violation of § 1231(b)(3)(A). And because removing Abrego Garcia to El Salvador was not an action undertaken within the

---

[4] Of note, in response to the candid responses by the Government attorney to the district court's inquiry, that attorney has been put on administrative leave, ostensibly for lack of "zealous[] advocacy." Evan Perez, Paula Reid and Katie Bo Lillis, *DOJ attorney placed on leave after expressing frustration in court with government over mistakenly deported man*, CNN (Apr. 5, 2025, 10:40 PM), https://www.cnn.com/2025/04/05/politics/doj-attorney-leave-maryland-father-deportation/index.html [https://perma.cc/7C6Z-8GWD]; *see also* Glenn Thrush, *Justice Dept. Lawyer Who Criticized Administration in Court Is Put on Leave*, New York Times (Apr. 5, 2025, 5:41 PM), https://www.nytimes.com/2025/04/05/us/politics/justice-dept-immigration-lawyer-leave.html [https://perma.cc/FS26-66NH]. But, the duty of zealous representation is tempered by the duty of candor to the court, among other ethical obligations, and the duty to uphold the rule of law, particularly on the part of a Government attorney. United States Department of Justice, Home Page, https://www.justice.gov/ [https://perma.cc/RA8K-5EQK] (last visited Apr. 6, 2025) ("Our employees adhere to the highest standards of ethical behavior, mindful that, as public servants, we must work to earn the trust of, and inspire confidence in, the public we serve.").

Attorney General's discretion, § 1252(g) does not strip us of jurisdiction here.  Therefore, the Government is not likely to succeed on its argument that we lack jurisdiction.

## B.

Next, I turn to the Government's argument that the scope of the district court's injunction is an unlawful violation of the Separation of Powers because it intrudes into Article II's exclusive delegation of international relations to the Executive.  Mot. for Stay at 11 ("A judicial order that forces the Executive to engage with a foreign power in a certain way, let alone compel a certain action by a foreign sovereign, is constitutionally intolerable.").[5]  Critically, what the Government fails to acknowledge is that just as it is the province of the Executive to undertake its Constitutional duties within the bounds of its legitimate authority, so too is it "the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government . . . have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void."  *Powell v. McCormack*, 395 U.S. 486, 506 (1969).  Indeed, precisely to provide "practical and real protections for individual liberty," the Framers drafted a Constitution that divides the legislative, executive, and judicial powers between three branches of Government."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 414 (2024) (Thomas J., concurring).  Thus, "the legislature makes, the executive executes,

---

[5] To the extent the Government argues that the scope of the district court's order was improper because Abrego Garcia never asked for an order facilitating his return to the United States, that is incorrect.  *See* S.A. 88 (arguing that the district court has "jurisdiction to order [the Government] to facilitate his return, and what we would like is for the Court to enter that order"); *see also* S.A. 74–75; 85–87.

and the judiciary construes the law." *Wayman v. Southard*, 23 U.S. 1, 46 (1825) (Marshall, C.J.).

In any event, the Government's argument that the district court's order improperly directs the Executive's engagement in international affairs by requiring it to somehow "compel a certain action by a foreign sovereign" is inaccurate. Mot. for Stay at 11. The Government avers that it no longer has authority over Abrego Garcia after it placed him in Salvadoran custody. But as the district court explained, the Government has not provided any evidence to support its claim that it lacks the authority to return Abrego Garcia to the United States.

> THE COURT: Can we talk about, then, just very practically, why can't the United States get Mr. Abrego Garcia back?
>
> MR. REUVENI: Your Honor, I will say, for the Court's awareness, that when this case landed on my desk, the first thing I did was ask my clients that very question. I've not received, to date, an answer that I find satisfactory.

Dist. Ct. Op. at 12 (quoting Hr'g Tr., Apr. 4, 2025, at 35–36).

What is more, all publicly available information about the Government's agreement with El Salvador indicates that the Government has "outsource[d] part of the [United States'] prison system." Nayib Bukele (@nayibbukele),[6] X (Mar. 19, 2025, 8:12 PM), https://x.com/nayibbukele/status/1886606794614587573 [https://perma.cc/433W-MQJG]; *see also* U.S. Dep't of Homeland Sec., How It's Going, DHS, https://www.dhs.gov/medialibrary/assets/video/59108 [https://perma.cc/VGQ4-TFXK]

---

[6] Nayib Bukele is the President of El Salvador.

(last visited Apr. 6, 2025) (quoting Defendant Noem: "This facility is one of the tools in our toolkit that we will use").  And, El Salvador's ministry of foreign affairs confirmed that it "will house these individuals for one (1) year, *pending the United States' decision on their long term disposition*."  S.A. 149 (quoting Matthew Lee & Regina Garcia Cano, *Trump Officials Secretly Deported Venezuelans and Salvadorans to a Notorious Prison in El Salvador*, ASSOCIATED PRESS (Mar. 15, 2025), https://apnews.com/article/trumpdeportations-salvador-tren-aragua-64e72142a171ea57c869c3b35eeecce7 [https://perma.cc/7LBD-RGDK] (emphasis supplied)).

Considering these facts, and with no evidence to the contrary provided by the Government, the district court properly determined that "just as in any other contract facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included."  Dist. Ct. Opinion at 12.  In its filings before this court, the Government makes no more than a naked assertion that Abrego Garcia "is in the custody of a foreign sovereign over whom America has no jurisdiction."  Mot. for Stay at 9.  But the record demonstrates otherwise.  There is no indication that Abrego Garcia has been charged with a crime in El Salvador or is being held there pursuant to the laws of El Salvador.  On the contrary, Abrego Garcia is a detainee of the United States Government, who is being housed temporarily in El Salvador, "pending the United States' decision on [his] long term disposition."  S.A. 149.  Thus, the district court's order does not require the United States to demand anything of a foreign sovereign.

The Government's claim that it can remove an individual from the United States pursuant to such an agreement and thereby lose the ability to reclaim that individual and return him to the country for process (or for any other purpose) cannot stand. The Government's actions in this case most assuredly violated the Fifth Amendment to the Constitution. The Government cannot escape its responsibility to return Abrego Garcia to the United States by claiming it now lacks authority to control El Salvador. And the district court's injunction requires no such thing. The injunction requires only that the United States Government exercise the authority and control it must have retained over the detainees it is temporarily housing in El Salvador. Requiring that the Government effectuate and facilitate Abrego Garcia's return is not a novel order. The Government can -- and does -- return wrongfully removed migrants as a matter of course. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[Non-Citizens] who are removed may continue to pursue their petitions for review, and those that prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal.").[7]

---

[7] S*ee also Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024) (explaining that the Government could redress wrongful removal to El Salvador by facilitating the plaintiff's return per DHS' own directives); *Ramirez v. Sessions*, 887 F.3d 693, 706–07 (4th Cir. 2018) ("As our sister circuits have done in similar circumstances, we grant this relief because judicial review would otherwise be frustrated if [petitioner] cannot be restored to the status he had before his removal.") (collecting cases); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 287 (4th Cir. 2020) (directing Government "to return Nunez-Vasquez to the United States"); *Gordon v. Barr*, 965 F.3d 252, 261 (4th Cir. 2020) (similar); *Orabi v. Att'y Gen. of U.S.*, 738 F.3d 535, 543 (3d Cir. 2014) (vacating the BIA's order and directing the Government "to return [petitioner] to the United States"); *Samirah v. Holder*, 627 F.3d 652, 665 (7th Cir. 2010) ("We remand . . . for the issuance of a mandamus commanding the Attorney General to take whatever steps are necessary to enable the

Requiring the Government to do so here is nothing less than exercising our duty to uphold the separation of powers.  Indeed, "[a] world in which federal courts lacked the power to order the government to take every possible step to bring back to the United States individuals like Abrego Garcia is a world in which the government could send *any of us* to a Salvadoran prison without due process, claim that the misstep was a result of 'administrative error,' and thereby wash its hands of any responsibility for what happens next."  Steve Vladeck, *Abrego Garcia, Constructive Custody, and Federal Judicial Power* (Apr. 5, 2025), https://www.stevevladeck.com/p/138-abrego-garcia-constructive-custody [https://perma.cc/7GFQ-6V6A].

## C.

Before turning to the Government's final argument regarding the public interest, I note that the Government made no argument whatsoever that it would suffer irreparable harm in the absence of a stay of the district court's injunction.  Pursuant to *Nken*, the Government, as the stay applicant, must demonstrate that it "will be irreparably injured absent a stay."  556 U.S. at 434.  Yet, the Government has not even attempted to make this showing.  Perhaps for good reason -- the Government is not irreparably harmed by facilitating and effectuating the return of a person within its control who was wrongfully removed from the United States.  And, as noted above, the Government has conceded that Abrego Garcia "should not have been removed" in the first place.  S.A. 98.  This failure alone is fatal to the Government's request for a stay.

---

plaintiff to reenter the United States for the limited purpose of reacquiring the status . . . that he enjoyed when he left the United States.").

D.

Finally, I turn to the Government's assertion that the public interest favors a stay because Abrego Garicia is a "prominent" member of MS-13 and is therefore "no longer eligible for withholding relief."  Mot. for Stay at 14–15.  Whatever the merits of the 2019 determination of the Immigration Judge ("IJ") regarding Abrego Garcia's connection to MS-13,[8] the Government presented "[n]o evidence" to the district court to "connect[] Abrego Garcia to MS-13 or any other criminal organization."  Dis.t Ct. Op. at 22 n.19; *see also id.* at 2 n.2 ("Invoking such theories for the first time on appeal cannot cure the failure to present them before this Court.").  Indeed, such a fact cannot be gleaned from this record, which shows that Abrego Garcia has no criminal history, in this country or anywhere else, and that Abrego Garcia is a gainfully employed family man who lives a law abiding and productive life.  Tellingly, the Government "abandon[ed]" its position that Abrego Garcia was "a danger to the community" at the hearing before the district court.  Dist. Ct. Op. at 22 n.19.  The balance of equities must tip in the movant's favor based on the record before the issuing court.  An unsupported -- and then abandoned -- assertion that Abrego Garcia was a member of a gang, does not tip the scales in favor of removal in violation of this Administration's own[9] withholding order.  If the Government wanted to prove to the district

---

[8] Even then, the Government's "evidence" of any connection between Abrego Garcia and MS-13 was thin, to say the least.  The Government's claim was based on (1) Abrego Garcia "wearing a Chicago Bulls hat and hoodie," and (2) "a vague, uncorroborated allegation from a confidential informant claiming he belonged to MS-13's 'Western' clique in New York—a place he has never lived."  S.A. 146 n.5; Mot. for Stay Add. at 10–11.

[9] Of note, the IJ's 2019 decision, which granted Abrego Garcia withholding of removal to El Salvador pursuant to 8 U.S.C. § 1231(b)(3)(A) because he faced threats to

court that Abrego Garcia was a "prominent" member of MS-13, it has had ample opportunity to do so but has not -- nor has it even bothered to try.

The Government's argument that there is a public interest in removing members of "violent transnational gangs" from this country is no doubt true, but it does nothing to help the Government's cause here.  As noted, the Government has made no effort to demonstrate that Abrego Garcia is, in fact, a member of any gang, nor did the Government avail itself of the "procedural mechanism under governing regulations to reopen the immigration judge's prior order[] and terminate its withholding protection."  Mot. for Stay at 16–17.  The Government may not rely on its own failure to circumvent its own ruling that Abrego Garcia could not be removed to El Salvador.  More importantly, the Government cannot be permitted to ignore the Fifth Amendment, deny due process of law, and remove anyone it wants, simply because it claims the victims of its lawlessness are members of a gang.  Nor can the Government be permitted to disclaim any ability to return those it has wrongfully removed by citing their physical presence in a foreign jurisdiction.  This is a slippery -- and dangerous -- constitutional slope.  If due process is of no moment, what is stopping the Government from removing and refusing to return a lawful permanent resident or even a natural born citizen?

Contrary to the Government's position, "upholding constitutional rights surely serves the public interest."  *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir.

---

his life from an El Salvadoran gang that had targeted him and his family, was during President Trump's 2016–2020 term in office.  That decision became final on November 9, 2019, and was not appealed by this Administration.

2002); *Nken*, 556 U.S. at 436 ("[T]here is a public interest in preventing [non-citizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm."). This is the exact situation the Government has placed Abrego Garcia in. An IJ has already determined that Abrego Garcia was entitled to withholding of removal to El Salvador because he was likely to face persecution there. But the Government removed him anyway. The irreparable harm in this case is the harm being done to Abrego Garcia every minute he is in El Salvador. And the public interest undoubtedly favors requiring the Government to facilitate and effectuate his return to the United States.

The balance of equities cannot support what the Government has done here.

IV.

My good colleague Judge Wilkinson believes that I view this case as a simple one. I do not. I do, however, view it as straightforward. As Judge Wilkinson notes, the Government "screwed up." Post at 17. The Government has admitted as much. And now it must clean up the mess it has made.

The Government's motion for a temporary administrative stay and a stay pending appeal of the district court's injunction is

*DENIED*.

WILKINSON, Circuit Judge, concurring in the denial of a motion for a stay pending appeal:

I would deny the request for a stay of the district court's order pending appeal. We deal here with what I hope is the extraordinary circumstance of the government conceding that it made an error in deporting the plaintiff to a foreign country for which he was not eligible for removal. In this situation, I think it legitimate for the district court to require that the government "facilitate" the plaintiff's return to the United States so that he may assert the rights that all apparently agree are due him under law. It is fair to read the district court's order as one requiring that the government facilitate Abrego Garcia's release, rather than demand it. The former seems within the trial court's lawful powers in this circumstance; the latter would be an intrusion on core executive powers that goes too far.

## I.

There is no question that the government screwed up here. Abrego Garcia was subject to a withholding of removal order. An immigration judge granted this protection pursuant to 8 U.S.C. § 1231(b)(3)(A) on the basis that plaintiff's family had been subject to gang-based extortion when he lived in El Salvador, and that he would more likely than not be persecuted further upon his return. *See* Compl. ¶ 41.

The withholding of removal order was country specific; it banned the government from removing Abrego Garcia to El Salvador and El Salvador only. *See* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General may not remove an alien to *a country* if the Attorney General decides that the alien's life or freedom would be threatened in *that country* . . . ." (emphasis added)); *Johnson v. Guzman Chavez,* 594 U.S. 523, 531-32

(2021). Thus the government here took the only action which was expressly prohibited. It had no authority to remove plaintiff to El Salvador without first seeking to reopen and successfully terminate the withholding of removal. This protection is a mandatory limit on the Executive's deportation power, not a discretionary one. *See Dankam v. Gonzales*, 495 F.3d 113, 115 (4th Cir. 2007) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 420 (1999)).

And the government rightfully concedes that it was an "error" and a "mistake" to ignore this process. Mot. for Stay at 16-17. And, if it is truly a mistake, one would also expect the government to do what it can to rectify it. Most of us attempt to undo, to the extent that we can, the mistakes that we have made. But, to the best of my knowledge, the government has not made the attempt here. The facts of this case thus present the potential for a disturbing loophole: namely that the government could whisk individuals to foreign prisons in violation of court orders and then contend, invoking its Article II powers, that it is no longer their custodian, and there is nothing that can be done. It takes no small amount of imagination to understand that this is a path of perfect lawlessness, one that courts cannot condone.

## II.

That having been said, the government articulates a powerful separation-of-powers principle: that judicial orders should not require the government to demand from a foreign nation that it release one of its own citizens from one of its own facilities and return that individual to the United States. Demanding such a thing breaches not only the sovereignty of another country, but the separation of powers embedded in the Constitution of our own.

Even plaintiffs concede that the Judiciary cannot order such a demand. *See* Renewed Mot. for TRO ¶ 3. This would not only introduce tensions between the United States and its allies, it would also invite other nations simply to defy the order by saying, in effect, "Just who do you think you are?"

I am reluctant to embed any such principle in our jurisprudence. Much debate has centered around the question of the propriety of nation-wide injunctions by the lower federal courts. I recognize that the relief requested here is to an individual rather than to a class. At the same time, the territorial overreach of a nationwide injunction is compounded when the injunction applies abroad in the manner evidenced herein and intrudes upon the authority of the democratic branches, principally the Executive, in the field of international diplomacy. I do not wish to have planetary injunctions become a routine feature of judicial overreach whenever some mere defect in the execution of removal is discerned by a federal judge.

Put bluntly, our founding document entrusted the conduct of international relations to the democratic branches, and that conduct involves negotiation in all manner of interaction with other nations. *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("The President is the sole organ of the nation in its external relations, and its sole representative with foreign nations." (quoting 10 ANNALS OF CONG. 613 (1800) (statement of then-Representative John Marshall))); *Zivotofsky v. Kerry*, 576 U.S. 1, 13, 20-21 (2015). Moreover, the remedial powers of the federal courts have never been thought to be unlimited. *See Missouri v. Jenkins*, 515 U.S. 70, 132 (1995) (Thomas, J., concurring). The equitable power of the federal courts cannot be read to override the design

compellingly set forth in our Constitution, except in the most extraordinary circumstances. That document grants substantive authority in foreign affairs both to Congress in Article I and to the Executive in Article II. No such substantive power is granted to the Judiciary. And its equitable instincts, so poignantly presented by the district court's opinion here, can still not override the entrustment of precisely this sort of matter to the other branches of our government.

III.

My good colleague sees this as a simple case. I see it as a complex one. We are seemingly caught between two legitimate principles here. One is the fear that the government will preemptively transport—without due process and in contradiction to court orders—residents of this country to other nations and then cite its Article II powers for the proposition that courts are powerless to redress the action. Two is the concern that federal courts can require the Executive Branch to dictate to other sovereign countries the release of their own citizens from their own facilities for return to the United States.

The conflict between the two principles, however, may be more apparent than real. Construing the trial court's direction to the government to "facilitate" Abrego Garcia's release relieves the government of its fear that it is breaching the sovereignty of another nation by demanding the release of its own citizens whom it is detaining. Positing the government's duty as simply one of facilitation also softens the tension between the judicial and executive branches. Further confining the district court's directive as an opportunity for the government to correct its own admitted error allays the concern that the Judiciary

20

is on the verge of some broad intrusion into what rightly are executive diplomatic powers. At the same time, it vindicates the interests of courts in upholding the respect due the fundamental value of the rule of law.

Broad powers are not "unbounded" powers. *See Zivotofsky*, 576 U.S. at 20. The President's robust foreign-affairs powers must still accommodate his obligation to "take care that the Laws be *faithfully* executed." U.S. CONST. art II, § 3 (emphasis added). And that must include both laws passed by Congress and the orders prescribed by courts. But, at the same time, the Executive's broad authority in international relations must afford it latitude as to how the facilitation of Abrego Garcia's release can best be accomplished. In this case, that means that the relationship between the executive and judicial powers might be more collaborative than combative. The separation of powers has never been defined by its rigidity but by a play in the joints. *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 381 (1989) (adopting a "flexible understanding of separation of powers"). A reciprocal respect for the roles of the Executive and the Judiciary may be too much to hope for in this most fraught and polarized of times, but it remains the only way that our system of constitutional governance can ever hope to work.

For the foregoing reasons, I would uphold the authority of the district court to require that the government "facilitate" the plaintiff's return to the United States. I would deny the request for a stay of the district court's order pending appeal.