KILMAR ARMANDO ABREGO GARCIA
and others,

       Plaintiffs,

  v.

KRISTI NOEM
and others,

       Defendants.

No. 8:25-cv-951 (PX)

# AMICUS BRIEF OF JOSEPH DUDEK IN SUPPORT OF PLAINTIFFS' MOTION FOR ADDITIONAL RELIEF

## I. BACKGROUND

On April 10, 2025, the Supreme Court unanimously affirmed this Court's temporary restraining order (TRO). *Noem v. Abrego Garcia*, no. 24A949, slip op. at 2.[1] Explaining its order *per curiam*, the Supreme Court wrote that this Court "should clarify its directive with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Id*. The same day, this Court clarified its order, focusing on Defendants' (the "Government's") obligation to facilitate Mr. Abrego Garcia's return to the United States from a Salvadoran prison to which he was unlawfully rendered.

At a hearing the next day, the Government argued that "due regard for the deference owed to the Executive Branch" requires that this Court receive a new round of briefing before the unanimously affirmed TRO could be reimposed. ECF No. 60; *see* Anna Bower, BLUESKY (April 11, 2025), https://bsky.app/profile/annabower.bsky.social/post/3lmkjiol5e22j. This Court

---

[1] https://www.supremecourt.gov/opinions/24pdf/24a949_lkhn.pdf

rejected that argument, instead finding that the Government has failed to comply with the TRO. ECF No. 61.

Over the weekend, the Government appeared to contend that deference to the Executive means this Court cannot enforce its twice-affirmed TRO. On Saturday, a senior bureau official at the State Department wrote that Mr. Abrego Garcia "is alive and secure" in a Salvadoran prison, but the official said nothing about what the Government is doing to facilitate his return to the United States. ECF No. 63 at 2. On Sunday, the Assistant Director for Enforcement and Removal Operations at U.S. Immigration and Customs Enforcement (ICE) provided no update at all: "It is my understanding that Defendants have no updates for the Court beyond what was provided yesterday." ECF No. 64 at 3.

But a late-Sunday filing clarified the Government's new argument: If this Court's directive to "facilitate" Mr. Abrego Garcia's return to the United States means that the government must actively try to get him back, then the order "would … flout the Supreme Court's order" and "violate the separation of powers." ECF No. 65 at 3. The Government's new position, then, is that "due regard for the deference owed to the Executive Branch" means this Court cannot direct the Government to get Mr. Abrego Garcia back.

Given the pace of this litigation and the Government's persistent failure to correct its admitted error, the Supreme Court's "due regard" directive is likely to resurface without adequate time for the parties or the Court to fully brief and consider its meaning. To that end, this brief surveys Supreme Court precedents relevant to the likely meaning of this shadow-docket directive in the hope that this research might help the Court resolve disputes and help the parties organize their affairs.

## II. ARGUMENT

### A. Deference to the Executive means letting the Executive choose from among its lawful options.

This Court always owes the rest of the government some measure of deference. The other branches are "coequal"—they "also have taken the oath to observe the Constitution and … have … responsibility for carrying on government." *Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 164 (1951) (Frankfurter, J., concurring). This basic willingness to consider the other branch's view of the law is especially appropriate when the branch "specifically considered" whether it was acting constitutionally. *Rostker v. Goldberg*, 453 U.S. 57, 64 (1981).

Deference is heightened when the case involves foreign relations. The Supreme Court "has recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive.'" *Dep't of Navy v. Egan*, 484 U.S. 518, 529–30 (1988) (quoting *Haig v. Agee,* 453 U.S. 280, 293-294 (1981)). Because foreign relations is one of the President's "Art[icle] II duties," courts show "the utmost deference to Presidential responsibilities." *Id*. (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). "Thus, unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id*. at 530 (collecting cases).

But deference in this context means that the Executive can choose how to act *lawfully*; it does not mean that the Executive can act *unlawfully*. For example, the Executive is entitled to a high level of deference in its management of military affairs. *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953) ("judges are not given the task of running the Army"). But the Executive earns deference only when it acts legitimately: "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to

3

intervene in judicial matters." *Id*. at 94. Under this rule, courts can "determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders," but they cannot "revise duty orders as to one lawfully in the service." *Id*. Similarly, even though the Executive has substantial authority over "core strategic matters of warmaking" that can affect the procedures available to captured enemy combatants, the Executive cannot offer a procedure that "give[s] short shrift to the values that this country holds dear" like "our Nation's commitment to due process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 531–32 (2004). The Executive can choose a procedure, but it must choose a constitutional one. *Id*.; *see Boumediene v. Bush*, 128 S.Ct. 2229, 2275 (2008) ("If and when habeas corpus jurisdiction applies, as it does in these cases, then proper deference can be accorded to reasonable procedures … under lawful and proper conditions … for a reasonable period of time.").

The same is true in immigration cases (of which this is arguably one). Courts are traditionally sensitive to the foreign-relations issues raised by immigration litigation. *INS v. Abudu,* 485 U.S. 94, 110 (1988); *see Trump v. Hawaii*, 138 S.Ct. 2392, 2424 (2018) (Kennedy, J., concurring) (describing "the substantial deference that is and must be accorded to the Executive in the conduct of foreign affairs"). To that end, courts apply an abuse-of-discretion standard when reviewing immigration-related agency adjudications, because the agency's rulings "must exercise especially sensitive political functions that implicate questions of foreign relations."[2] *Id*. at 110. This standard leaves courts to review whether the Executive was following the law, because violating the law is an abuse of discretion. *Citizens to Preserve Overton Park, Inc. v. Volpe*,

---

[2] For a while, this rule also justified *Chevron* deference. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–45 (1999) (Kennedy, J.); *but see Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron* deference).

401 U.S. 402, 412–14 (1971) ("Plainly, there is 'law to apply' and thus the exemption for action 'committed to agency discretion' is inapplicable."). So long as there is some "meaningful standard by which to judge the [Executive's] action," courts can ensure that the Executive behaves legally. *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2568 (2019).

A workable version of this deference is clearest in *Turn v. Safley*. There, the Supreme Court considered deference owed to the Executive's imposition of prison regulations. 482 U.S. 78, 90 (1987). The Court explained that when "'other avenues' remain available for the exercise of [an inmate's] right[s], … courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials … in gauging the validity of the regulation.'" *Id*. (quoting *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 131 (1977), and *Pell v. Procunier*, 417 U.S. 817, 827 (1874)). That is, because there might be several ways to lawfully provide prisoners access to due process, courts should give the Executive latitude to choose from among them. But the Executive was entitled only to choose from among the *lawful* methods.

"While the executive's consistent and contemporaneous views warranted respect, they 'by no means control[led] the action or the opinion of this court in expounding the law with reference to the rights of parties litigant before them.'" *Loper Bright*, 144 S. Ct. at 2284 (Gorsuch, J., concurring) (quoting *Irvine v. Marshall,* 20 How. 558, 567 (1858), and citing Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 YALE L. J. 908, 987 (2017)). Indeed, "[n]otwithstanding the deference each branch must accord the others, the 'judicial Power of the United States' vested in the federal courts by Art. III, § 1, of the Constitution can no more be shared with the Executive Branch than the Chief Executive, for example, can share with the

Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Nixon*, 418 U.S. at 704.

In sum, even in cases that justify substantial deference to the Executive, this Court can make the Executive follow the law.

### B. The Government's invocation of vague foreign-relations powers should limit this Court's deference.

The Executive is entitled to less deference when, as here, it offers only conclusory invocations of its broad powers. When the Executive asserts only a "broad, undifferentiated claim of public interest" supporting its position, its assertion is subject to more skepticism from the courts. *Nixon*, 418 U.S. at 706. That is because while the Executive has a duty to take care that the laws are faithfully executed, this Court has a "primary constitutional duty … to do justice." *Id*. at 707. The constitutional effort to form "a workable government" requires that this Court instead focus on "the legitimate needs of the judicial process" to do right by the parties. *Id*. (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (R. Jackson, J., concurring)).

This decline in deference is in part because the Executive is constitutionally outnumbered. If the Executive's chosen action violates a duly enacted statute, then both the courts and Congress suffer an injury.[3] And if the Executive's chosen action violates the Constitution, then both the Courts and "We the People"—the people who gave the government all its powers and limitations—suffer an injury. U.S. CONST. pmbl. In either case, the Executive may not seek

---

[3] "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter. Courts can sustain exclusive presidential control in such a case only by disabling the Congress from acting upon the subject." *Youngstown*, 343 U.S. at 637–8 (R. Jackson, J., concurring).

deference that would undermine "our historic commitment to the rule of law." *Nixon*, 418 U.S. at 709.

  C. **The Government's opposition to Plaintiffs' motion seeks unreviewable authority to deny due process, not deference.**

In its most recent filing, the Government argues in a single paragraph that this Court cannot tell the Government to try to bring Mr. Abrego Garcia home. ECF No. 65 at 3–4. They contend that this Court has "no authority to direct the Executive Branch to conduct foreign relations in a particular way, or to engage with a foreign sovereign in a given manner." *Id.* at 3. But they misapply precedent and misstate the law.

Let's start with the Government's precedents. The Government is right that the President is "the sole organ of the federal government in the field of international relations" and thus holds a "plenary and exclusive power." ECF No. 65 (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936). But "like every other governmental power," international relations powers "must be exercised in subordination to the applicable provisions of the Constitution." *Id*. That is why the core holding of *Curtiss-Wright* was that *Congress* has limited power to intervene in foreign relations—it wasn't talking about this Court's power to enforce the basic provisions of the constitution like the Due Process Clause. *See Curtiss-Wright*, 299 U.S. at 319–320.

Similarly, the Government is right that the President's constitutional powers are "conclusive and preclusive" powers, ECF No. 65 (quoting *Trump v. United States*, 603 U.S. 593, 607 (2024)), but only "sometimes," *Trump*, 603 U.S. at 607. These powers are "conclusive and preclusive" only as against Congress, not as against the Constitution: "When the President exercises such authority, [they] may act even when the measures [they] take[] are 'incompatible

7

with the expressed or implied will of Congress.'" *Id*. (quoting *Youngstown*, 343 U.S. at 637). Nothing in this analysis justifies the President using his foreign-affairs power to permanently deprive someone of due process by leaving that person trapped in a foreign prison.

To the contrary, this Court acts within *its* authority when it directs the Government to work in good faith to get Mr. Abrego Garcia back. The Government readily admits that it sent Mr. Abrego Garcia to a foreign prison by accident and in violation of an immigration judge's final order. ECF No. 11-3 at ¶¶ 9, 15. At least at this early stage, the deference due to the Executive should keep this Court from telling the Government *how* to get Mr. Abrego Garcia back. But deference should not prevent this Court from telling the Government *to* get him back. In other words, the Government may be right that this Court has "no authority to direct the Executive Branch to conduct foreign relations *in a particular way*," ECF No. 65 at 4 (emphasis added), but this Court has the authority to direct the Executive Branch to behave constitutionally.

### D. The Government's purported interpretation of this Court's order is nonsense.

Indeed, this Court *has already* directed the Government to get Mr. Abrego Garcia back. Perhaps the most astonishing part of the Government's Sunday opposition is its claim about the word "facilitate." The Government says that when this Court ordered it to "facilitate" Mr. Abrego Garcia's return, the Court meant that if Mr. Abrego Garcia escapes the foreign prison we sent him to and arrives back in the United States, the Government cannot keep him out. That is a nonsensical reading of this Court's order as affirmed by twelve appellate judges.

Far from "track[ing] longstanding executive practice," ECF No. 65 at 3, the Government's reading would frustrate decades of executive practice. The Government cites Justice Sotomayor, who cited a USCIS policy: "U. S. Immigration and Customs Enforcement,

8

Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, §2 (Feb. 24, 2012)." *Noem*, slip op. at 4. The policy defines "facilitate an alien's return" to mean "[t]o engage in activities which allow a lawfully removed alien to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) and, if warranted, parole the alien into the United States upon [their] arrival at a U.S. port of entry."[4] In the context of someone who the Government sent to a foreign prison, "activities which allow" him "to travel to the United States" necessarily include working in good faith to get him out of prison. And we know that "facilitate" includes this kind of affirmative step, because in issuing Boarding Letters, USCIS helps similarly situated folks board commercial aircraft abroad—it has nothing to do with "domestic measures" as the Government describes them. *See* USCIS, I-131A, *Application for Carrier Documentation*, https://www.uscis.gov/i-131a (accessed Apr. 14, 2025). The Government offers no authority for its contrary reading of what it describes as "longstanding executive practice."

### III. Conclusion

For these reasons, this Court should reject the Government's appeal to "deference" as a basis for its refusal to comply with this Court's valid orders.

Respectfully submitted,

*/s/ Joseph Dudek*
Joseph Dudek (20261)
4605 Huntley Drive
Ellicott City, Maryland 21043
(585) 755-6479
dudekj@gmail.com

---

[4] https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf