# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, Secretary, United States Department of Homeland Security, *et al.*,<br><br>Defendants. | No. 8:25-cv-951 (PX)<br><br>Declaration of Marco Rubio |

## DECLARATION OF SECRETARY OF STATE MARCO RUBIO

I, Marco Rubio, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.   I am the Secretary of State of the United States and head of the United States Department of State, an Executive Department of the United States. *See* 22 U.S.C. § 2651. As Secretary of State, I am the President's chief foreign affairs advisor. I carry out the President's foreign policy through the State Department and the Foreign Service of the United States. *See* 22 U.S.C. § 2651a.

2.   The statements made herein are based on my personal knowledge, on information provided to me in my official capacity, reasonably inquiry, and information obtained from various records, systems, databases, State Department employees, and information portals maintained and relied upon by the United States Government in the regular course of business, and on my evaluation of that information.

3.   The purpose of this Declaration is to assert, in my capacity as Secretary of State and head of the Department of State, a formal claim of the state secrets privilege over certain

information requested by this Court in its expedited discovery order of April 15, 2025, and information requested by plaintiffs in discovery requests, in order to protect the foreign relations and national security interests of the United States. As explained in this Declaration, disclosure of the information covered by my privilege assertion reasonably could be expected to cause significant harm to the foreign relation and national security interests of the United States. I have discussed with knowledgeable State Department employees the details of the information over which I am asserting privilege to ensure that the bases for the privilege assertions set forth in this Declaration are appropriate.

4. In the course of my official duties, I am aware that the instant lawsuit has been filed regarding the removal of Mr. Abrego Garcia, a Salvadoran national, from the United States to El Salvador.

5. In the course of my official duties, I have been informed that this Court issued an Order Granting Expedited Discovery on April 15, 2025, directing the disclosure of non-privileged information regarding what steps, if any, the Government has taken or will take to facilitate Abrego Garcia's return to the United States. ECF No. 79 at 2. I am aware that, in a further Order dated April 22, 2025, this Court determined that "information regarding Abrego Garcia's removal, as well as his placement and confinement in CECOT", as well as the identities and roles of any individual who has been involved in such actions is relevant and probative in this matter. ECF 100 at 4-5.

6. After careful and actual personal consideration of this matter and of the materials described herein, I have concluded that the disclosure of certain information that has been requested by Plaintiffs, including through interrogatories, document production requests, and through questions asked and expected to be asked during deposition testimony, could reasonably

be expected to cause significant harm to the foreign relations interests of the United States and, relatedly, the national security interests of the United States.

7. When the United States seeks to remove individuals to a foreign country, the United States must negotiate the logistical details of that removal with the foreign country. This requires nonpublic, sensitive, and high stakes negotiation with the foreign State. Those negotiations cover sensitive issues, such as the nature of the working relationship between the United States and the destination country's government and migration policies that may impact regional neighbors; sensitive factual details or foreign policy priorities revealed in the course of highly sensitive negotiations; and the content of those negotiations, such as the categories of individuals a country may be willing to consider accepting or information necessary to facilitate removals and subsequent entry into the receiving country, which can impact the foreign State's willingness to accept the removed aliens and the procedures it will employ in doing so. Compelled disclosure of any sensitive communications or discussions with the Government of El Salvador regarding Abrego Garcia's removal and confinement in CECOT and Centro Industrial threatens significant harm to the United States' foreign affairs and national security interests. The same is true for information regarding the details of and discussions with the Salvadoran government regarding specific steps the United States has or has not taken, or will take or elects not to take, to facilitate Mr. Abrego Garcia's release from custody and/or return to the U.S.; internal U.S. government discussions planning the content of relevant communications with the Salvadoran government; the identities of State Department officials involved in any discussions with the Salvadoran government or other foreign entities and the substance of those discussions; and the identities of Salvadoran government officials involved in any such discussions.

8.      I also recall the declaration I signed invoking the state secrets privilege for similar reasons in a related case, *J.G.G. et al v. Trump et al*. In that filing, I stated that

> Compelled disclosure of the number of aliens aboard any deportation flight—including the alleged deportation flights addressed in this Court's Minute Order—and the reasons any of those aliens were placed aboard the deportation flight, threatens significant harm to the United States' foreign affairs and national security interests. For example, if compelled disclosure of that information came to light, it could cause the foreign State's government to face internal or international pressure, making that foreign State and other foreign States less likely to work cooperatively with the United States in the future, both within and without the removal context. Disclosure of that information—to anyone—likewise is likely to be viewed as a breach of the trust on which our foreign relationships are based, leading to a less robust relationship in the future. And if a disclosure were to in any way undercut or, in the eyes of a foreign State (fairly or not) cast doubt on representations made in sensitive negotiations with the United States, that could likewise make that foreign State less likely to work cooperatively with the United States, both within and outside the removal context. [...]
>
> Compelled disclosures of [sensitive details including the destination of deportation flights, as well as the time and departure at destination, and the form and timing of the transfer of custody], or of information that would allow any third party to determine that information in whole or in part, would allow the national and international public to confirm that a particular flight was indeed a deportation flight—a fact which threatens the willingness of foreign States to accept removed aliens but only if done secretly, and which will more broadly threaten the willingness of foreign States to work with the United States on sensitive and confidential matters, both within and without the removal context. Again, the compelled disclosure—to anyone—of sensitive matters such as this is likely to be seen by foreign nations as a breach of trust that will damage our relationships with allies, negatively affecting the United States' foreign relations and national security. For these reasons, compelled disclosure of the following information would threaten significant harm to the United States' foreign affairs and national security interests: 1) the time that an alleged deportation flight took off from U.S. soil and from where; 2) the time an alleged deportation flight left U.S. airspace; 3) the time the alleged deportation flight landed in a foreign country; and 4) the location in which the alleged deportation flight landed.
>
> Likewise, compelled disclosure of information that could reveal whether an alleged deportation touched down in a third country—neither the United States nor the foreign State to which removal is being made—would threaten significant harm to the United States' foreign affairs and national security interests. Whether a particular flight, carried out for a specific purpose, may land in a third country can itself be a matter of sensitive diplomatic discussions and negotiations with the United States' partners and allies. Compelled disclosure of that sensitive information would likely be seen as a breach of trust, threatening the willingness of foreign States to negotiate and cooperate with the United States on confidential and sensitive matters, both within and without the removal context. Moreover, if a flight is stopped-over in a foreign State that was unaware of the nature or purpose of the flight, the compelled disclosure of that information—or of other information that could effectively reveal that information—would, if it reached the public, threaten to

directly damage the United States' relationship with that foreign State and would make that State and other foreign States less likely to work cooperatively with the United States in the future, both within and outside the removal context.

Notice Invoking State Secrets Privilege, Attachment 2 (Declaration of Secretary of State Marco Rubio) at 4-5, *J.G.G. et al v. Trump et al*, No. 25-766 (D.D.C. March 24, 2025), ECF 56-2. Those considerations remain true, and are relevant to the present case as well.

9. If compelled disclosure of such information came to light, it could cause the foreign State's government to face domestic or international pressure, making the State—and potentially other foreign States that are observing this high-profile matter—less likely to work cooperatively with the United States in the future, both within and beyond the removal context. Disclosure of that information—to anyone—likewise is likely to be viewed as a breach of the trust on which our relationship with El Salvador is based, leading to a less robust relationship in the future and potentially leading other foreign States to also doubt our trustworthiness. And if a disclosure were in any way undercut or, in the eyes of a foreign States (fairly or not), cast doubt on representations made in sensitive negotiations with the United States, this scenario could likewise make El Salvador or another foreign State less likely to work cooperatively with the United States, both within and beyond the removal context.

10. If foreign States believed that the information sought in this Court's orders—or similar information—could be revealed to third parties, simply because a lawsuit has been filed or a judge asked for the information, it would erode the credibility of the United States' assurances that information will be maintained in confidence and thus impede the ability of the United States to secure the cooperation of foreign authorities in critical operations. Again, this threat to the United States' foreign affairs interests extends beyond the removal context that is the subject of this case.

11.   Importantly, the compelled disclosure of this sensitive information would cause significant harm to the United States' foreign affairs interests even if some of the alleged detail may have made it into public sources through unofficial means. The disclosure of foreign affairs information through official acknowledgement or confirmation is vital to the protection of the United States' ability to conduct foreign affairs. There is a difference between official acknowledgement and informal reports: official disclosures or acknowledgements threaten the United States' national interests in a way that informal reports or statements do not, because informal statements leave an important element of doubt that provides an essential layer of protection and confidentiality. That protection would be lost if the United States were forced to confirm or deny the accuracy of unofficial disclosures or speculation. Thus, even if the public or the press believes certain information to be true, providing an official acknowledgment by confirming or denying specific details threatens the significant diplomatic and foreign relations harms discussed above.

12.   For the foregoing reasons, I formally assert the state secrets privilege over the interrogatories marked as such in Defendants' responses, the documents marked as such in Defendants' privilege log, and past and future deposition questions and any subsequent discovery or judicial requests that call for sensitive information as described above in paragraphs 7 and 8 of this declaration.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 5th day of May 2025.

*[signature]*

Marco Rubio
Secretary of State

SBU - LEGAL