# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |
|---|---|
| Kilmar Armando ABREGO GARCIA, et al. | |
| *Plaintiffs* | |
| v. | Civ. No. 8:25-cv-00951 |
| Kristi NOEM, Secretary of Homeland Security, et al. | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF FIX THE COURT'S MOTION TO INTERVENE AND TO PROTECT THE PUBLIC RIGHT OF ACCESS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY .................................................... 2

I.      Information Relating to Mr. Abrego Garcia's Removal and the Government's
        Compliance with Court Orders Is of Significant Public Interest ................................. 2

II.     For Weeks, The Public Has Had Limited Information About This Case ..................... 3

ARGUMENT ...................................................................................................................... 5

I.      This Court Should Allow Fix the Court to Intervene for the Limited Purpose of
        Protecting the Public Right of Access to Court Proceedings ....................................... 5

II.     The Court Should Promote Transparency by Taking All Available Measures to Ensure
        the Public Has Meaningful Access to These Proceedings ........................................... 8

        A.      The Public Has a Common Law and First Amendment Right of Access to
                These Proceedings ............................................................................................ 8

        B.      The Court Should Livestream Proceedings in this Case................................... 9

III.    Issues Relating to Public Access Should Be Addressed Expeditiously and Secrecy
        Should Be Permitted Sparingly.................................................................................... 12

CONCLUSION.................................................................................................................... 15

## INTRODUCTION

As both federal courts and the public have recognized, the issues being litigated in this case are of tremendous consequence. Because "[t]he government is asserting a right to stash away residents of this country in foreign prisons without [a] semblance of due process," this case affects millions of people who fear the consequences of this administration's expansive interpretation of executive power and willful disregard for federal court orders. *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, *1 (4th Cir. Apr. 17, 2025). The public has closely followed the legal developments in this case by piecing together information published in news articles and gleaned from records filed publicly. But discerning the truth about what is happening in these proceedings grows increasingly difficult as members of this administration continue to make out-of-court statements that are plainly contrary to what this Court, the Fourth Circuit, and the Supreme Court have ordered. Just yesterday, Department of Homeland Security Secretary Kristi Noem—a Defendant in this case—testified during a Senate committee hearing that there is "no scenario" in which Mr. Abrego Garcia will ever be in the country again.[1]

This Court has the opportunity to foster public trust in the judiciary at a time when confidence in our nation's courts is at a record low.[2] By the present motion, Movant Fix the Court seeks to intervene for the purpose of protecting the public's common law and First Amendment right of

---

[1] When asked whether "the Supreme Court order require[s] you to facilitate the return of Mr. Abrego Garcia," Defendant Noem replied, "It is up to the president of the El Salvador to make the decision." Jennifer Bendery, *DHS Secretary Flouts SCOTUS Order, Says 'No Scenario' Where Abrego Garcia Comes Back*, HuffPost (May 8, 2025), https://perma.cc/YJK2-QAFK.

[2] *See* Benedict Vigers and Lydia Saad, *Americans Pass Judgment on Their Courts*, Gallup (Dec. 17, 2024) (reporting that public confidence in the judiciary has dropped to a record-low of 35%) https://perma.cc/3V85-4QPH. These poll results are notable because "[i]n contrast with earlier eras, one side's disapproval is not offset by approval from the other side, but we seem instead to be seeing an overall erosion of institutional confidence." Adam Liptak, *Confidence in U.S. Courts Plummets to Rate Far Below Peer Nations,* New York Times (Dec. 17, 2024) https://tinyurl.com/5ajvw4zj.

access to these proceedings. Specifically, Fix the Court asks the Court to widen the public's window into these proceedings by livestreaming all future court hearings, including the upcoming May 16, 2025, hearing at which the Court will hear argument relating to the government's invocation of privilege. *See* ECF No. 115. As discussed below, the Court's exercise of discretion in granting Fix the Court's request is well-supported by the public policies underpinning the public right of access to court records and proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

### Information Relating to Mr. Abrego Garcia's Removal and the Government's Compliance with Court Orders Is of Significant Public Interest

In the aftermath of the controversial deportation of almost two hundred Venezuelan men to the "Centro de Confinamiento del Terrorismo," or "Terrorism Confinement Center" ("CECOT") in El Salvador, the government admitted that Plaintiff Kilmar Armando Abrego Garcia, a non-citizen resident of Maryland who was entitled to relief from removal, was among those deported due to an "administrative error." ECF No. 11 at 5. The government's admission captured the public's attention: between the day this lawsuit was filed and today's filing, there have been thousands of news posts concerning his case. And even though these proceedings have been ostensibly open to the public, millions of people "far removed from courthouses" have had no choice but to wait for secondhand information about what transpires in the courtroom because public access has been limited to in-person attendance. *Abrego Garcia*, 2025 WL 1135112 at *1; Ex. 1, Decl. of Gabe Roth ("Roth Decl.") ¶¶ 8–10. The interest in real-time access to these proceedings is significant, as demonstrated in part by public engagement with "live update" posts created by reporters physically present in the courtroom.[3] In addition to expressions of interest in

---

[3] For example, a Bluesky thread providing live updates on the April 15, 2025 proceeding has garnered 3,500 reposts and 16,400 "likes." *See* @annabower.bsky.social, Bluesky (Apr. 15, 2025 3:56PM), available at https://tinyurl.com/3nmyxwub.

expanded public access, members of the public have expressed frustration with the lack of remote access to these court proceedings.[4]

As part of its advocacy efforts to make federal courts more open and accountable to the public, Movant Fix the Court contacted the Clerk of Court for the U.S. District Court for the District of Maryland to ask whether there would be a way to listen remotely to the April 15, 2025, hearing in this case. Roth Decl. ¶¶ 1, 3, 4, 8. He was told that there would not be. *Id.* ¶ 8. Fix the Court renewed this request on April 21, 2025, but received no response. *Id.* ¶ 9. On May 5, 2025, Fix the Court emailed the Clerk of Court once again, this time asking for "elaborat[ion] on the reasons why this request cannot be accommodated." *Id.* ¶ 10. He received a response stating:

> I cannot comment on hypothetical future hearings and whether they will have audio-only availability, but generally proceedings occurring in the courtroom are only available by attending in person at the courthouse. That is our bench's decision, though we do share requests we receive with the bench so they can periodically review this protocol.

*Id.*

### For Weeks, The Public Has Had Limited Information About This Case

On April 15, 2025, after the Supreme Court largely affirmed this Court's order directing the government to facilitate Mr. Abrego Garcia's return to the United States, *Noem v. Abrego Garcia*, No. 24A949, 604 U.S. ____ (2025), Slip Op. at 2, this Court ordered expedited discovery relating to the government's compliance with that order, noting that "the record reflects that Defendants have done nothing at all" to facilitate Mr. Abrego Garcia's return. ECF No. 79 at 1, 4.

---

[4] Fix the Court offers the following examples of demonstrated public interest in remote public access to these proceedings: @gabrielmalor.bsky.social, "Also, I know there is intense interest in this case (including my own!). Unfortunately, at the moment, there isn't a public access line for this court. So we'll have to wait to find out what happens at this afternoon's hearing.", Bluesky (Apr. 11, 2025, 12:07PM), available at https://tinyurl.com/5xfm3fr2; "Far from the most important thing, but it is completely absurd that in the year of our Lord two thousand and twenty-five we still don't have livestreamed public audio from every federal court.", Bluesky (Apr. 15, 2025, 3:53PM), available at https://tinyurl.com/yxdex8j7 (quoting a post about Mr. Abrego Garcia's case).

For the next five days, the government filed daily status reports containing little to no information about the government's compliance with the order. ECF No. 83 ("[T]here are no further updates."); ECF No. 89 (same); ECF No. 90 (same); ECF No. 91 (reporting that declarant was "aware of public reporting" relating to Mr. Abrego Garcia's updates but "there is still nothing further to report"); ECF No. 92 (providing "a partial update" on Mr. Abrego Garcia's location and sharing information relating to Senator Chris Van Hollen's meeting with him); ECF No. 97 (reporting that upon inquiry, the Salvadoran government responded that Mr. Abrego Garcia was being held at a different facility). After that, everything the Parties filed was sealed without public explanation. ECF Nos. 98, 99, 101, 102, 104. Against this backdrop of secrecy, President Trump proclaimed on national television that he "could" get Mr. Abrego Garcia back to the United States.[5]

In an undocketed hearing held April 30, 2025, this Court considered the government's second sealed motion to stay discovery and denied the request for relief. *See* ECF No. 105, 106 (docket entry referencing "today's proceeding"). On May 6, 2025, a coalition of press organizations ("Press Movants") moved to intervene for the limited purpose of seeking access to sealed court records. ECF No. 108. Press Movants also raised concerns that no public record existed from the April 30, 2025, hearing. *See* ECF No. 108-1 at 2. In the early hours of May 7, 2025, the Parties jointly moved—under seal—for a discovery conference. ECF No. 112. The same day, this Court instructed the parties to follow the proper procedure when seeking to seal documents and gave the Parties until May 10, 2025, to file a motion to seal the pending request for a conference. ECF No. 115 at 2. Later that same night, Plaintiffs filed a heavily redacted motion for leave to take additional depositions, which includes quotes from (and includes as exhibits)

---

[5] *See* Fritz Farrow, *Trump says 'I could' get Abrego Garcia back from El Salvador*, ABC News (Apr. 29, 2025), https://perma.cc/QS9F-VMTA.

deposition testimony containing information designated as "Confidential" or "Attorney's Eyes Only" under the applicable protective order. *See* ECF Nos. 116, 118; *see also* ECF No. 93 at 1.

This Court has scheduled an in-person hearing on May 16, 2025, to address "the government's invocation of privilege, principally the state secrets and deliberative process privileges." ECF No. 115.

## ARGUMENT

Fix the Court is a nonprofit organization seeking to protect one of the most "indispensible attribute[s]" of the U.S. legal system: open access to judicial records and court proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980); Roth Decl. ¶¶ 1, 3–5. It structures its argument in three parts: Part I asks this Court to grant Fix the Court's Motion to Intervene; Part II urges the Court to expand public access to these proceedings by livestreaming all future hearings; and Part III explains the need for expeditious relief on document sealing or court closure requests where, as here, First Amendment rights are at stake.

## I.    This Court Should Allow Fix the Court to Intervene for the Limited Purpose of Protecting the Public Right of Access to Court Proceedings

This Court should permit Fix the Court to intervene under Fed. R. Civ. P. 24(b) for the limited purpose of requesting expanded public access to these proceedings. The Fourth Circuit routinely allows discretionary non-party intervention by members of the public who have been aggrieved by a lack of access to presumptively public court records and proceedings. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014).

A court may grant permissive intervention under Federal Rule of Civil Procedure 24(b) if the movant (1) presents a timely motion; (2) has a claim or defense that shares with the main action a common question of law or fact; and (3) demonstrates that the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See Hisp. Nat'l L. Enf't Ass'n NCR v.*

*Prince George's Cnty.*, No. CV TDC-18-3821, 2021 WL 168458, at *2 (D. Md. Jan. 19, 2021). Fix the Court's request to intervene easily satisfies Rule 24(b)'s requirements.

First, Fix the Court's motion is timely. Timeliness is "determined from all the circumstances[,] [a]nd it is to be determined by the court in the exercise of its sound discretion." *NAACP v. New York*, 413 U.S. 345, 366 (1973) (footnotes omitted); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 785-87 (1st Cir. 1988) (discussing timeliness factors); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994) (same). Fix the Court has taken prompt action: It filed this Motion within four days of its last communication with the Clerk of Court, who indicated that no public access line would be provided for future hearings and there was no procedure in place through which members of the public could formally request a public access line, *see* Roth Decl. ¶¶ 8–10; within ten days of the April 30, 2025, closed hearing held by the Court, *see* ECF No. 105; and within seventeen days of submission of the first sealed record docketed in this case, *see* ECF No. 98. Any of these intervals are far shorter periods than the "delays measured in years [that] have been tolerated where an intervenor is pressing the public's right of access to judicial records." *San Jose Mercury News* v. *U.S. Dist. Ct.—N. Dist. (San Jose)*, 187 F.3d 1096, 1101 (9th Cir. 1999); *Liggett Grp.*, 858 F.2d at 785 (collecting cases and observing that that "[n]umerous courts have allowed third parties to intervene" to preserve a public right of access, "many involving delays measured in years rather than weeks"); *Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (concluding that the district court did not abuse its discretion in finding that a four-year delay in moving to intervene was timely in "light of all the circumstances").

Second, Fix the Court "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Although the "language" of Rule 24(b) "appears to limit permissive intervention to circumstances in which the putative intervenor seeks

to become involved in an action in order to litigate a legal claim or defense on the merits," *E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998), courts tend to "liberally" construe "the claim or defense portion of Rule 24(b)" in the context of motions to intervene to preserve a public right of access. *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) (cleaned up); *cf. Nat'l Child.'s Ctr., Inc.*, 146 F.3d at 1045 ("[D]espite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders."). Fix the Court's challenge therefore "falls squarely within the legal definition of 'claim,'" because this Court and others have "long recognized" the public's right of access to court records and proceedings. *Hernandez*, 80 F.4th at 577 (quotation marks and citation omitted); *Doe*, 749 F.3d at 265 (stating that members of the public have a longstanding "qualified right of access to judicial documents and records filed in civil and criminal proceedings").

Finally, intervention poses no risk of prejudice or delay to the parties. *See* Fed. R. Civ. P. 24(b)(3). The parties in this matter have an existing burden to establish that there are compelling reasons to close proceedings. *See, e.g., United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020) (explaining that a court order should be sealed "only if . . . closure serves a compelling interest") (quotation marks and citation omitted); *In re Wash. Post Co.*, 807 F.2d 383, 393 n.9 (4th Cir. 1986) (extending the First Amendment right of access and its concomitant "constitutional tests" to both "documents as well as [] hearings"). For that reason, "[t]he mere fact that [the parties] will need to explain" why secrecy is warranted, "is not, itself, unduly prejudicial." *Muhaymin v. City of Phoenix*, No. CV-17-04565, 2021 WL 5173767, at *2 (D. Ariz. Nov. 3, 2021).

For these reasons, the Court should grant Fix the Court's motion to intervene and grant the relief it seeks as requested below.

## II.    The Court Should Promote Transparency by Taking All Available Measures to Ensure the Public Has Meaningful Access to These Proceedings

### A.    The Public Has a Common Law and First Amendment Right of Access to These Proceedings

The public has a well-established right of access to court records and proceedings. *See Richmond Newspapers,* 448 U.S. at 580 n.17 (plurality opinion) ("[H]istorically both civil and criminal trials have been presumptively open."); *Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 580 (4th Cir. 2004) ("[P]roceedings in civil cases are traditionally open, and 'in some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases.'") (citation omitted). Rooted in both common law and the First Amendment, the right of access "protects the public's ability to oversee and monitor the workings [and] promotes the institutional integrity of the Judicial Branch." *Doe*, 749 F.3d at 263 (cleaned up). Because "courts are where government power is contested, defined, and ultimately actualized . . . [p]ublic access to courts aids in legitimizing the exercise of all governmental powers." David S. Ardia, *Court Transparency and the First Amendment*, 38 Cardozo L. Rev. 835, 906 (2017); *see Richmond Newspapers,* 448 U.S. at 572 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 596 (1982) (noting that access to trials helps ensure that "the constitutionally protected 'discussion of governmental affairs' is an informed one"). Accordingly, "[t]he value of openness in judicial proceedings can hardly be overestimated." *United States v. Moussaoui*, 65 F. App'x 881, 885 (4th Cir. 2003).

The public right of access applies to these proceedings, which have raised highly consequential issues relating to the rule of law and separation of powers. As the Fourth Circuit has recognized, "[t]he interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation. Indeed, the public has a strong interest in monitoring

8

not only functions of the courts but also the positions that its elected officials and government agencies take in litigation." *Doe*, 749 F.3d at 271. The need to protect this interest is in full display here, where the government's position as to the reason why Mr. Abrego Garcia was removed has evolved. *Compare* ECF No. 11 at 5 (admitting Mr. Abrego Garcia's removal was the result of an "administrative error") *with* ECF No. 64 ¶ 7 (stating that Mr. Abrego Garcia was removed "pursuant to Title 8 of the United States Code" and was no longer eligible for immigration relief). The government's lack of compliance with Court orders and its failures to litigate in good faith are also of significant public concern. *See, e.g.,* ECF No. 79 (finding that "Defendants appear to have done nothing to aid in Abrego Garcia's release from custody and return to the United States"); ECF No. 100 at 2, 8 (noting that Defendants' objections "reflect[ed] a willful and bad faith refusal to comply with discovery obligations" and finding that Defendants' privilege assertions were "equally specious").

Given that the public's common law and First Amendment right of access extends to these proceedings, this Court must consider how to best protect those interests. As discussed below, this current moment in time demands more than merely opening the courthouse doors.

### B.     The Court Should Livestream Proceedings in this Case

Fix the Court requests that this Court livestream proceedings in this case through whatever technology is available to the Court.[6] Fix the Court presumes that this Court has the capacity to run an audio-visual broadcast without undue burden using the equipment it has previously used to hold hearings "by audio or video conference" during the COVID-19 pandemic. *In Re COVID-19*

---

[6] As a preliminary matter, Fix the Court acknowledges that the Local Rules of the District of Maryland provide that "no court proceeding may be . . . broadcast" without an order from the Chief Judge. L.R. 506. However, there does not appear to be a formal mechanism for requesting remote public access. Fix the Court inquired about and later formally requested remote public access to proceedings in this case before filing this motion. Roth Decl. ¶¶ 8–10.

*Pandemic Procedures*, 1:20-mc-00146, Order Phase One (D. Md. May 22, 2020); *see* Administrative Office of the U.S. Courts, *History of Cameras, Broadcasting, and Remote Public Access in Courts*, https://perma.cc/SS4C-64HV (discussing a pilot program relating to audio streaming and noting "[a] significant finding of the pilot was that there were limited technical or administrative challenges related to livestreaming or making streamed recordings available publicly").

Fix the Court's request is supported by the public policies that animate the right of access to court proceedings and is consistent with national trends increasing remote access to our courts. The public's growing desire for remote access to court proceedings reveals a long-standing tension between what modern public access demands and what federal courts are used to doing. For decades, the Federal Judicial Conference and district courts around the country have grappled with how to address "the transformation from the largely paper-based world of the twentieth century to an interconnected, electronic world where physical and temporal barriers to information are diminishing." Ardia, *Court Transparency and the First Amendment*, at 843; *see also History of Cameras, Broadcasting, and Remote Public Access in Courts*, *supra*. In March 2020, in response to the COVID-19 pandemic, the Judicial Conference eased its policy disfavoring the use of technology in the courtroom by providing a temporary exception that allowed district courts to freely provide the public with audio access to court proceedings. *Id.* Recognizing the benefits of technology in safeguarding the public's right to access court proceedings, in September 2023, the Judicial Conference made this temporary exception permanent, allowing for "judge[s] presiding over a civil . . . proceeding [to], in the judge's discretion, authorize live remote public audio access to any portion of that proceeding in which a witness is not testifying." Judicial Conference Policy § 420(b), https://perma.cc/7NSP-7H78. District courts have embraced this expansion of public

access, some amending their local rules to allow broad judicial discretion to livestream civil proceedings. *See, e.g.,* N.D. Cal. L.R. 77-3 (allowing remote video or audio public access to court proceedings at the judge's discretion); D.R.I. L.R. 112 (allowing videoconference narrowcasting in civil cases). These courts have exercised that discretion and allowed remote access in multiple high-profile cases involving challenges to the Trump administration. *See, e.g.*, *Nat'l TPS All. v. Noem*, No. 25-CV-01766, Hearing (N.D. Cal. Mar. 24, 2025) (offering live video stream); *City and Cnty. of San Francisco v. Trump*, No. 25-CV-01350, Hearing (N.D. Cal. Apr. 23, 2025) (same); *Rhode Island v. Trump*, No. 1:25-CV-128, Hearing (D.R.I. Apr. 18, 2025) (same). And even the courts that have not changed their local rules have responded to increased demand for public access by providing audio-only coverage of civil proceedings. *See New Hampshire Indonesian Cmty. Support v. Trump*, 1:25-CV-38, Hearing (D.N.H. Feb. 10, 2025) (providing live Zoom audio); *see also J.G.G. v. Trump*, 1:25-CV-00766, Hearing (D.D.C. Apr. 3, 2025) (providing a call-in number); *D.B.U. v. Trump*, 1:25-CV-01163, Hearing (D. Colo. Apr. 21, 2025) (same); *Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-10685, Hearing (D. Mass. Apr. 23, 2025) (same); *Bedi v. The U.S. House of Representatives Comm. on Educ. and Workforce*, 1:25-CV-03827, Hearing (N.D. Ill. Apr. 10, 2025) (same); *Metro. Transp. Auth. v. Duffy*, 1:25-CV-01413, Hearing (S.D.N.Y. Apr. 9, 2025) (same).

This Court should act in step with other courts, recognizing that when "tens of thousands of individuals, organizations and governmental entities all over the United States are . . . affected by . . . litigation, [allowing the audio-visual coverage of a civil hearing] is in the public interest." *In re Zyprexa Products Liability Litigation*, No.04-MD-1596 (JBW), 2008 WL 1809659, *1 (E.D.N.Y. Mar. 4, 2008)*; see In re Sony BMG Music Ent.*, 564 F.3d 1, 11-12 (1st Cir. 2009) (Lipez, J. concurring) (noting that "new technological capabilities provide an unprecedented opportunity

to increase public access to the judicial system in appropriate circumstances. They have also created expectations that judges will respond sensibly to these opportunities").

This is especially true because verbatim hearing transcripts are available on PACER only after they have been filed with the Court for 90 days. *Questions and Answers on the Availability of Transcripts and Transcript Redaction Procedures*, Administrative Office of the U.S. Courts, 1 (Jun. 4, 2018), available at: https://perma.cc/NXA7-LR5C. And, particularly in the context of swiftly moving litigation, the receipt of information after the fact is no substitute for the live monitoring of proceedings. This is because the public "has an interest in ensuring basic fairness and deterring official misconduct not only in the outcome of certain proceedings, but also in the very proceedings themselves." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 172–73 (4th Cir. 2024). Allowing the public to observe these proceedings would engender trust in the judiciary, and in our government in general.

Accordingly, Fix the Court respectfully requests that this Court establish an audio-visual live stream, or at minimum, an audio-only public access line for all interested members of the public and the press, for all future hearings in Mr. Abrego Garcia's case, using whatever technology it has readily available.[7] *See* United States District Court for the District of Maryland, *Courthouse/Courtroom Technology*, available at https://perma.cc/R58M-DLWL.

### Issues Relating to Public Access Should Be Addressed Expeditiously and Secrecy Should Be Permitted Sparingly

This Court has rightfully acknowledged "the importance of transparency" in this case. ECF No. 117. Because of the critical role that transparency plays in establishing the legitimacy of the

---

[7] Fix the Court is aware that federal courts in California, the District of Columbia, Massachusetts, New Hampshire, Rhode Island, and Washington have opted to offer remote public access to court proceedings through either an embedded media player on the court's website; online video conferencing apps, such as Zoom or YouTube; or a call-in number. *See* Roth Decl. ¶ 5.

courts and fostering the public's ability to monitor and oversee government action, *see* Section II.A, *supra*, the strong presumption of openness can be overcome only if closure is necessary to "preserve higher values and is narrowly tailored to serve that interest." *In re Charlotte Observer (Div. of Knight Pub. Co.)*, 882 F.2d 850, 852 (4th Cir. 1989) (quotation marks and citation omitted). And even when the government does purport to have a compelling interest in secrecy, in "assessing whether closure is appropriate in the face of such conflicting constitutional claims, there is an ingoing presumption in favor of openness." *Id.* at 853. This is particularly true in cases involving the deportation of non-citizens where "[t]he only safeguard on this extraordinary governmental power is the public." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002) (holding that national security concerns did not override the public's First Amendment access right to immigration removal proceedings). This Court should disfavor taking this "safeguard away from the public by placing [the government's] actions beyond scrutiny" because "[d]emocracies die behind closed doors." *Id.*

Fix the Court is mindful of the pressing demands on this Court's time, but respectfully request that the Court promptly consider and rule on its Motion, Press Movants' motion, and all pending or future motions relating to document sealing or hearing closure.[8] This is because "a 'minimal delay' of access 'unduly minimizes, if it does not entirely overlook, the value of

---

[8] Presumably because of the speed at which this case is evolving, this Court did not publicly notice the proceedings held on April 30, 2025, issue a closure order, or ensure a public record was created. *See* ECF No. 108 at 5. Fix the Court asks that the Court docket all hearings and provide notice and an opportunity to be heard before conducting proceedings behind closed doors. *See In re Knight Pub. Co.*, 743 F.2d 231, 234 (4th Cir. 1984) (citing *United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir.1982) ("[W]hen the district court has been made aware of the desire of specific members of the public to be present, reasonable steps to afford them an opportunity to submit their views should be taken before closure.")). If, after hearing the objections, this Court still believes that closure is necessary, "it must state its reasons on the record, supported by specific findings," including why no less drastic alternatives to closure are feasible. *Id.*

'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.'" *Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991); *see Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("[A] necessary corollary of the right to access is a right to timely access."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (holding that a court's delay in ruling on a motion to intervene and unseal records was "effectively a denial of any right to contemporaneous access" that infringed on First Amendment rights, and that "each passing day" without access to records "may constitute a separate and cognizable infringement of the First Amendment") (quotation marks and citation omitted).

As courts have recognized, "'[t]he newsworthiness of a particular story is often fleeting.'" *Courthouse News*, 947 F.3d at 594 (quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994)). To delay or postpone open access to court proceedings therefore "undermines the benefit of public scrutiny and may have the same result as complete suppression." *Id.*; *see also Int'l News Serv. v. Associated Press*, 248 U.S. 215, 235 (1918) ("The peculiar value of news is in the spreading of it while it is fresh.").

Accordingly, Fix the Court respectfully requests that the Court promptly grant this motion and effectuate greater transparency into the present proceedings and the important issues they implicate. This should include allowing remote public access at all future hearings, including the upcoming May 16, 2025, hearing, as well as unsealing documents related to that hearing so that the public has the opportunity to meaningfully observe and engage with the arguments presented to the Court on issues of public concern. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000) (noting that "publicity of [court] records, of course, is necessary . . . so that the public can judge the product of the courts in a given case").

## CONCLUSION

The circumstances of this case have been far from ordinary and have revealed the limits of courtroom-only access. It is precisely for that reason that this Court should act to maximize transparency. The Court should take this opportunity by using the technology it has readily available to join its sister courts in protecting constitutionally mandated public access and allowing the livestream of proceedings in this case.

Dated: May 9, 2025

Submitted,

*/s/ Andrew M. Adelman*
Linda M. Correia (Bar No. 14560)
Jonathan C. Puth (Bar No. 15131)
Andrew M. Adelman (Bar No. 19449)
CORREIA & PUTH, PLLC
1775 K Street NW, Suite 600
Washington, DC 20006
(202) 602-6500
lcorreia@correiaputh.com
jputh@correiaputh.com

*/s/ Jaqueline Aranda Osorno*
Jaqueline Aranda Osorno*
Mariam Elbakr*
Lucia Goin*
PUBLIC JUSTICE
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net
melbakr@publicjustice.net
lgoin@publicjustice.net

* pro hac vice applications forthcoming

*Counsel for Fix the Court*