**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

|  |  |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KRISTI NOEM, Secretary of the Department of Homeland Security, *et al.*, <br><br> *Defendants*. | Case No. 8:25-cv-00951 (PX) |

**SUPPLEMENTAL BRIEF ON PLAINTIFFS' REQUEST FOR LEAVE TO FILE A
MOTION TO COMPEL**

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................. 2

DISCUSSION ............................................................................................................... 3

    I.    Defendants properly raised and withheld documents and information subject to the state secrets privilege. ........................................................................................... 4

    II.   Defendants have properly withheld documents, and descriptions of information contained within those documents, subject to the deliberative process privilege. ........................... 11

CONCLUSION.............................................................................................................. 19

CERTIFICATE OF SERVICE ........................................................................................ 20

Plaintiffs have obtained extensive information and documents from Defendants about the current physical location and custodial status of Abrego Garcia and what steps Defendants have taken, are currently taking, and will take to facilitate Abrego Garcia's return to United States custody. As a result, expedited discovery has served its purpose—Plaintiffs know that Defendants have complied with this Court's preliminary-injunction order. But, notwithstanding the purpose and scope of expedited discovery, Plaintiffs' counsel is attempting to pry into the privileged inner workings of the U.S. government apparatus and its communications with a foreign government, regardless of the likely harm this would do to the United States' national-security and foreign-affairs interests, its relationships with foreign sovereigns, and even to Abrego Garcia. The Court should deny Plaintiffs' request.

In the parties' May 7, 2025, letter to the Court, Plaintiffs requested an order compelling Defendants to: (1) fully answer Interrogatory Nos. 1–7 and respond to RFP Nos. 1–2 and 12, which "concern Defendants' actions to facilitate Abrego Garcia's release and return," and (2) fully answer Interrogatory Nos. 9–11 and respond to RFP Nos. 6–8, which "concern the agreement with El Salvador related to Abrego Garcia's confinement." ECF No. 112. Defendants have already provided Plaintiffs with robust interrogatory responses showing that Defendants are complying with this Court's order to facilitate Abrego Garcia's release from custody in El Salvador and return him to United States custody.[1] Defendants have also produced responsive, non-privileged documents that could be located after a reasonable search. Granting Plaintiffs the supplemental information and documents they now seek would not advance any legitimate end of expedited discovery. Nearly all the additional materials Plaintiffs demand are protected by the state secrets

---

[1] Defendants designated their responses to Plaintiffs' amended interrogatories as "Confidential" under the stipulated protective order and can make them available to the Court if helpful.

and deliberative process privileges and so cannot be produced. The Court should deny Plaintiffs'
request for leave to file a motion to compel.

## BACKGROUND

On April 15, the Court ordered expedited discovery limited to "(1) the current physical
location and custodial status of Abrego Garcia; (2) what steps, if any, Defendants have taken to
facilitate Abrego Garcia's immediate return to the United States; and (3) what additional steps
Defendants will take, and when, to facilitate his return." ECF No. 79 at 7. Plaintiffs served 15
interrogatories and 14 requests for production of documents, ECF No. 98-1, and Defendants
objected and responded, ECF No. 98-2. After ruling on Defendants' objections, providing guidance
on privilege assertions, and instructing Plaintiffs to narrow Interrogatory Nos. 9–11 and RFP Nos.
6–8, ECF No. 100, the Court stayed discovery for seven days, ECF No. 103.

Plaintiffs served amended interrogatories and requests for production, Ex. A, ECF No. 112-
1; Ex. B, ECF No. 112-2, and on April 30, the Court lifted the stay and ordered Defendants to
"answer and respond to all outstanding discovery requests and supplement their invocation of
privilege(s), consistent with the Court's Order at ECF No. 100, by no later than Monday, May 5,
2025," ECF No. 107 at 1. Defendants served their objections and responses on May 5. Ex. C, ECF
No. 112-3; Ex. D, ECF No. 112-4. The parties were unable to resolve the discovery dispute at their
May 6 meet and confer, so they filed a joint discovery dispute letter. *See* ECF No. 112 at 1. In
response, the Court entered an order directing the parties to file simultaneous briefs by May 12,
2025, "addressing the legal and factual bases for the invocation of [the state secrets and deliberative
process] privileges, including Plaintiff's request for the Court to conduct *in camera* review of the
withheld documents." ECF No. 115 at 1.

**DISCUSSION**

Plaintiffs seek leave to file a motion to compel Defendants to provide additional information and documents about two principal issues: *first*, Defendants' domestic and foreign affairs actions to "facilitate Abrego Garcia's release and return" to United States custody, *see* Interrogatory Nos. 1–7 and RFP Nos. 1, 4, and 12; and *second*, the United States' "agreement with El Salvador related to Abrego Garcia's confinement," *see* Interrogatory Nos. 9–11 and RFP Nos. 6–8; Ex. C, ECF No. 112-3; Ex. D, ECF No. 112-4.

Regarding the first issue, Defendants have gone to great lengths to coordinate internally and respond to Plaintiffs' discovery requests. Defendants have already produced over 1,000 pages of documents, logged 1,140 documents on a privilege log, and intend to make further productions as soon as practicable. ECF No. 112 at 3. Defendants explained in their interrogatory responses that ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ Ex. C. at 3–5, ECF No. 112-3. Defendants provided ████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ *Id.* at 9–10. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id*. at 12–13. These fulsome responses easily comply with Defendants' obligations under the Federal Rules, even though Defendants' have withheld some additional responsive information under several applicable privileges.

3

Defendants have also made Robert L. Cerna, Evan C. Katz, Michael G. Kozak, and Joseph N. Mazzara available for deposition. Defendants' counsel never instructed Mr. Mazzara not to answer any of plaintiffs' questions based on the state secrets or deliberative process privileges, and while Mr. Katz and Mr. Cerna were instructed not to answer certain questions based on those privileges, they were permitted to answer questions peripheral to facts that may have been privileged. Plaintiffs have yet to notice Ambassador Kozak's deposition.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████     Under Federal Rule of Civil Procedure 33(d), Defendants will refer to these documents in an updated response to Interrogatory Nos. 9 and 11.

Plaintiffs now have all the information they need to confirm that Defendants have complied with the Court's preliminary injunction. To be sure, Defendants have withheld some information and several documents under the state secrets and deliberative process privileges, but only because those materials reflect the granular details of the Department of State's implementation of the Court's order or the internal decision-making process regarding such implementation, which Plaintiffs do not need and may not discover regardless. Unsatisfied with Defendants' responses, Plaintiffs now seek to compel privileged information. The Court should deny their request.

## I.      Defendants properly raised and withheld documents and information subject to the state secrets privilege.

"The state secrets privilege permits the Government to prevent disclosure of information when that disclosure would harm national security interests." *United States v. Zubaydah*, 595 U.S. 195, 204 (2022) (quoting *United States v. Reynolds*, 345 U.S. 1, 10–11 (1953)). Although

developed at common law, the state secrets privilege "performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its military and foreign-affairs responsibilities." *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007). It "provides exceptionally strong protection because it concerns 'areas of Art. II duties [in which] the courts have traditionally shown the utmost deference to Presidential responsibilities.'" *Id*. (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)). "[T]he Executive's constitutional authority is at its broadest in the realm of military and foreign affairs." *El-Masri*, 479 F.3d at 303. And "the judiciary's role as a check on presidential action in foreign affairs is limited." *Id*. (citing *Jama v. Immigr. & Customs Enf't,* 543 U.S. 335, 348 (2005) (recognizing judiciary's "customary policy of deference to the President in matters of foreign affairs"); *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103 (1948) (prescribing limited judicial role in foreign policy matters, especially those involving "information properly held secret")).

Courts conduct a three-step analysis to assess state secrets privilege claims. *Abilt v. CIA*, 848 F.3d 305, 311 (4th Cir. 2017). First, the court must determine whether the government has satisfied the procedural requirements for invoking the privilege. *Id*. at 311. "To assert the privilege," and satisfy the procedural requirements for invoking it, "the Government must [make a] 'formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *Zubaydah*, 595 U.S. at 205 (quoting *Reynolds*, 345 U.S. at 7-8).

Second, the court must decide whether the information the government seeks to shield is a state secret. *Abilt*, 848 F.3d at 311–12. When doing so, the court must "honor the Executive's assertion of the privilege if it is satisfied from all the circumstances of the case that there is a

5

reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." *Id.* at 312 (quotation omitted). "Frequently, the explanation of the department head who has lodged the formal privilege claim, provided in an affidavit or personal declaration, is sufficient to carry the Executive's burden." *Id*. Deferring to the Executive makes sense practically, as well as constitutionally, because it is in a superior position to evaluate the consequences of releasing sensitive information. *See El-Masri*, 479 F.3d at 305. Once the government satisfies its burden, "the claim of privilege will be accepted without requiring further disclosure" so as not to force disclosure "of the very thing the privilege is designed to protect." *Abilt*, 848 F.3d at 313 (*quoting Reynolds*, 345 U.S. at 7–9).

And third, if the information is privileged, then "the ultimate question . . . is how the matter should proceed in light of the successful privilege claim." *Abilt*, 848 F.3d at 315. "Information that is properly privileged under the state secrets doctrine 'is absolutely protected from disclosure— even for the purpose of in camera examination by the court.'" *Id*. at 313; *see also Reynolds*, 345 U.S. at 10 ("When . . . the occasion for the privilege is appropriate, . . . the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers."); *FBI v. Fazaga*, 595 U.S. 344, 358 (2022). The "need" for the information at issue is only relevant to "help the court determine how deeply to probe the details of, and basis for, the Government's privilege claim." *Zubaydah*, 595 U.S. at 209–10; *see also Reynolds*, 345 U.S. at 11 ("[E]ven the most compelling necessity cannot overcome the claim of privilege."). "Where necessity is dubious at most, a formal claim of privilege demonstrating a reasonable possibility of harm to national security will have to prevail." *Zubaydah*, 595 U.S. at 205 (cleaned up).

Plaintiffs object to Defendants assertion of the state secrets privilege with respect to Interrogatory Nos. 1–7 and RFP Nos. 1, 4, and 12, which concern "Defendants' actions to facilitate Abrego Garcia's release and return," and Interrogatory No. 10 and RFP Nos. 6–7, which concern "the agreement with El Salvador related to Abrego Garcia's confinement." ECF No. 112 at 1–2.[2] As explained above, Defendants have already provided robust interrogatory responses, deposition testimony, and produced documents, giving Plaintiffs everything they need to understand Defendants' efforts to facilitate Abrego Garcia's release from custody in El Salvador and return to United States custody.

The first category of requests calls for "information regarding the details of the United States' diplomatic outreach to El Salvador and the content of discussions with individuals in the government of El Salvador regarding efforts to facilitate Mr. Abrego Garcia's release from custody," his "return to . . . the United States," his "continued confinement in CECOT," and "the removal of individuals to El Salvador." Ex. C at 2–12, 15, ECF No. 112-3; *see also* Ex. D at 4, 8, 18, ECF No. 112-4. These requests implicate functions at the core of the Executive Branch's foreign affairs powers and call for information and documents that are protected by the state secrets privilege. The second category of requests, relating to the government's "agreement" with El Salvador related to Abrego Garcia's confinement, concerns documents that, ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

---

[2] Defendants did not assert the state secrets privilege with respect to Interrogatory Nos. 9 and 11, and RFP No. 8.

Defendants have satisfied the procedural requirements for invoking the state secrets privilege by submitting Secretary of State Marco Rubio's declaration. Ex. E, ECF No. 112-5; *Zubaydah*, 595 U.S. at 205. In his declaration, Secretary Rubio affirms that, as head of the Department of State and after actual personal consideration of the supplemental information and documents that are responsive to Plaintiffs' discovery requests, disclosure of such materials "reasonably could be expected to cause significant harm to the foreign relation[s] and national security interests of the United States." Ex. E at 3–4, ECF No. 112-5. He states that negotiations concerning the removal of individuals to a foreign country involve "sensitive issues, such as the nature of the working relationship between the United States and the destination country's government and migration policies . . . ; sensitive factual details or foreign policy priorities . . . ," such as "the categories of individuals a country may be willing to consider accepting . . . ." *Id*. at 4. Compelled disclosure of those sensitive communications with the government of El Salvador regarding Abrego Garcia's removal and confinement, information regarding the details of discussions concerning the steps the United States has taken or intends to take to facilitate his return, internal U.S. government discussions planning communications with the Salvadoran government, and the identities of government officials involved would harm the United States' foreign-affairs and national-security interests. *Id*. Specifically, Secretary Rubio feared that if this information were disclosed, foreign governments would be less likely to work cooperatively with the United States in the future because the disclosure would be viewed as a breach of trust. *Id*. at 6. Further, if that kind of information could be revealed with the mere filing of a lawsuit, it would hinder the United States' ability to make assurances regarding confidentiality in the future.[3] *Id*.

---

[3] While certain Executive Branch officials have made public comments about immigration policy and foreign outreach related to Abrego Garcia, none of those statements reveal or were intended to reveal the inner working of the Department of State's foreign affairs apparatus or sensitive details about its ongoing interactions with the Salvadoran

The information Defendants seek to shield are state secrets. *See Abilt*, 848 F.3d at 312 (explaining that often "the explanation of the department head who has lodged the formal privilege claim, provided in . . . [a] personal declaration, is sufficient to carry the Executive's burden"). As stated, Secretary Rubio explained in his declaration that compelled disclosure of the information that Plaintiffs seek would harm the United States' foreign relations and national security because it would be viewed as a breach of trust and discourage El Salvador and other foreign states from working cooperatively with the United States in the future. Ex. E at 6, ECF No. 112-5. Similarly, if third parties can obtain the kind of information Plaintiffs seek, such as the content of ongoing diplomatic negotiations, that would erode the United States' credibility by invalidating its assurances that information will remain confidential. *Id*. An erosion of that kind would "impede the ability of the United States to secure the cooperation of foreign authorities in critical operations." *Id*. "There is no question that information that would result in . . . disruption of diplomatic relations with foreign governments falls squarely within the definition of state secrets." *Sterling v. Tenet*, 416 F.3d 338, 346 (4th Cir. 2005) (quotation omitted).

Because the information Plaintiffs seek is privileged, it is protected from disclosure—"even for the purpose of in camera examination by the court." *Abilt*, 848 F.3d at 313; *see also Reynolds*, 345 U.S. at 10. Plaintiffs contend, however, that in camera review is appropriate, and that this Court should not "lightly accept[ ]" Defendants' claim of privilege in view of their "strong showing of necessity." ECF No. 112 at 2. But "need" is only relevant to "help the court determine how deeply to probe the details of . . . the Government's privilege claim." *Zubaydah*, 595 U.S. at 209–10. Here, Plaintiffs' necessity is "dubious" at best. Defendants have already confirmed that,

---

government regarding the release of Abrego Garcia. That information and those communications must remain state secrets, notwithstanding Plaintiffs' attempt to discover them here.

██████████████████████████████████████████████████

██████████████████████ *See* Ex. C at 3, ECF No. 112-3. Defendants have already

provided Plaintiffs ample documents and information confirming their compliance with this

Court's preliminary injunction. Plaintiffs need not know the sensitive details of Defendants'

diplomatic negotiations, for example, to continue to pursue their claims. Thus, "a formal claim of

privilege demonstrating a reasonable possibility of harm to national security will have to prevail."

*Zubaydah*, 595 U.S. at 205 (cleaned up). ████████████████████████████

█████████████████████████████████████

       Nevertheless, Plaintiffs argue the Court should overrule Defendants' assertion of the state

secrets privilege because invoking the privilege "requires a declaration from 'the head of the

department which has control over the matter,'" and Defendants have not served a declaration from

DHS or DOJ. ECF No. 112 at 2 (quoting *Zubaydah*, 595 U.S. at 205). And "Secretary Rubio's

declaration fails to show a 'reasonable danger of harm to national security.'" *Id.* (quoting

*Zubaydah*, 595 U.S. at 205). Asserting the state secrets privilege requires the agency "which has

*control over the matter*" to submit a declaration formally invoking the privilege. *Zubaydah*, 595

U.S. at 205 (emphasis added). The Department of State is the agency with custody of the most

relevant materials to which the state secrets privilege applies. DHS and DOJ, therefore, need not

submit independent declarations.[4]

       Finally, Plaintiffs contend that Secretary Rubio's declaration fails to show a reasonable

danger of harm to national security. But Secretary Rubio explained in detail how disclosure of the

---

[4] Even if agencies other than the one "with control over the matter" were required to submit declarations to support invoking the state secrets privilege, the DOJ only acts as legal counsel for the other Defendants in this litigation and is not substantively involved in the communications with El Salvador or operations entailed with facilitating Abrego Garcia's release and return to United States custody. Furthermore, DHS submitted a state secrets declaration in *J.G.G., et al. v. Trump*, et al., No. 25-cv-00766-JEB (D.D.C.), which Defendants have invoked and applies equally to establish the state secrets privilege in this case.

information Plaintiffs seek would damage United States' foreign relations. Foreign-relations concerns "fall[ ] squarely within the definition of state secrets," *Sterling*, 416 F.3d at 346, as they are intimately intertwined with issues of national security. *See Mathews v. Diaz*, 426 U.S. 67, 82 n.17 (1976) ("(A)ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."). Defendants therefore have satisfied the threshold requirement to invoke the state secrets privilege. The Court should deny Plaintiffs' request for leave to file a motion to compel the disclosure of state secrets.

## II.    Defendants have properly withheld documents, and descriptions of information contained within those documents, subject to the deliberative process privilege.

The deliberative-process privilege "protect[s] the quality of administrative decisionmaking by ensuring that it is not done 'in a fishbowl.'" *City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1252 (4th Cir. 1993). It "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but 'for matters they considered before making up their minds.'" *Id.* at 1252–53. The privilege prevents the disclosure of "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994), to safeguard "the candor of agency deliberations in the future," *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 n.8 (D.C. Cir. 1992).

To successfully invoke the privilege, "the government must show that, in 'the context in which the materials are used,' the documents are both predecisional and deliberative." *City of Virginia Beach*, 995 F.2d at 1253. "Predecisional documents are 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Id.* But "the line between pre-decisional documents and postdecisional documents may not always be a bright one," *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n.19 (1975), and "the existence of the privilege" does not "turn[ ] on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared," *id.* at 153 n.18. Material is deliberative if it "reflects the give-and-take of the consultative process," and "reveal[s] the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253.

The deliberative-process and state secrets privileges are sometimes overlapping grounds to withhold the same documents and information in this case because much of the deliberative material concerns state secrets. Plaintiffs object to Defendants' assertion of the deliberative-process privilege with respect to Interrogatory Nos. 1–5 and 7 and RFP Nos. 1, 2, and 12, which "concern Defendants' actions to facilitate Abrego Garcia's release and return," and RFP Nos. 6–8, which "concern the agreement with El Salvador related to Abrego Garcia's confinement."[5] ECF No. 112 at 1–2. As explained in the state secrets privilege discussion, the second category of requests, relating to what the Plaintiffs have termed the government's "agreement" with El Salvador, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

---

[5] Defendants did not assert deliberative process privilege with respect to Interrogatory Nos. 6 or 9–11.

RFP Nos. 1 and 2 ask Defendants to produce "[a]ll documents concerning each action [they] have already taken, or plan to take in the future, to Facilitate Abrego Garcia's release from custody in El Salvador" and "return to the United States." Ex. D at 3–4, ECF No. 112-4. This request asks for the production of *all* documents related to those topics without qualification. This would include "recommendations, draft documents, proposals, suggestions, and other subjective documents," *Ethyl Corp.*., 25 F.3d at 1248, exploring alternative policies that were created before decisions had been made concerning past actions and those evaluating future decisions. The deliberative process privilege covers documents that would be responsive to both requests.

RFP No. 12 asks for "[a]ll documents reflecting non-privileged discussions about any court order in this case, including the Supreme Court's order dated April 10, 2025." Ex. D. at 18, ECF No. 112-4. But as Defendants noted in their response to the request, privileged documents may include non-privileged discussions. *Id*. This broad request therefore does not exclude documents prepared to assist Defendants in determining how best to comply with a court order or considering different policy decisions in light of a court order, for example. The privilege therefore also covers documents responsive to this request.

Plaintiffs also object to Defendants' assertion of the deliberative process privilege in response to RFP Nos. 6–8. ECF No. 112 at 2. RFP No. 6 requests "[a]ll documents concerning any agreement, arrangement, or understanding between the governments of the United States and El Salvador related to the removal and confinement in El Salvador of Abrego Garcia and any other individuals who were transported with him on March 15, 2025, including . . . the memorandum issued by El Salvador's Ministry of Foreign Affairs . . . ." Ex. D at 9–10, ECF No. 112-4. RFP No. 7 asks for "[a]ll documents concerning the rights the government of the United States possesses, retains, or has exercised with respect to Abrego Garcia and any other individuals who were

13

transported with him on March 15, 2025, including . . . Documents concerning the decision-making authority over the long term disposition of Abrego Garcia and any other individuals who were transported with him . . . ." *Id.* at 11. And RFP No. 8 seeks "[a]ll documents reflecting payments [Defendants] made (or payments that are to be made) in connection with any agreement, arrangement, or understanding responsive to Interrogatory No. 9," *id.* at 12, which requests a description of "any agreement . . . between the governments of the United States and El Salvador to confine in El Salvador individuals removed or deported from the United States . . . ," Ex. C. 13, ECF No. 112-3. Each of these three requests would cover documents "prepared to assist" Defendants in "arriving at [their] decision[s]" and considering possible alternatives related to: entering into an arrangement with El Salvador concerning "the removal and confinement of Abrego Garcia and other individuals"; the rights Defendants possess or exercise with respect to Abrego Garcia and other individuals transported to El Salvador, and their long-term disposition; and financial arrangements with El Salvador concerning the confinement of individuals deported from the United States. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (explaining that courts have permitted withholding even factual material such as cost estimates when disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions"). ██████████████████████ ███████████████████████ but the documents reflecting the deliberative process in arriving at those arrangements remain privileged. The deliberative process privilege applies to documents responsive to all three of these requests.

"[T]he [deliberative process] privilege serves to protect the . . . process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537–38

(D.C. Cir. 1993) (explaining that factual material may be withheld "on the ground that its disclosure would expose an agency's policy deliberations to unwarranted scrutiny"). Thus, it may be asserted to prohibit the disclosure of information revealing the nature of agency deliberations. *See Franklin Sav. Ass'n v. Ryan,* 922 F.2d 209, 211 (4th Cir. 1991); *BPS v. Bd. of Trs. for Colorado Sch. for Deaf & Blind*, 2013 WL 5486228, at *1 (D. Colo. Oct. 1, 2013) (holding that "information which is protected by . . . the deliberative process privilege need not be provided in response to these Interrogatories"). Such is the case here with Plaintiffs' interrogatories.

Interrogatory Nos. 1 through 4 ask Defendants to "[d]escribe with particularity each action" they "have already taken [and plan to take], and when, to Facilitate Abrego Garcia's release from custody in El Salvador" and "return to the United States." Ex. C. 2–6, ECF No. 112-3. "Describ[ing] with particularity *each* action" taken in past or future service of those two objectives arguably includes things like phone calls Defendants may have made or intend to make and proposals they have offered or intend to offer before committing to a particular course of conduct. Those actions would be predecisional because they would have been carried out or will be carried out to assist the decisionmaker in determining the best way to facilitate Abrego Garcia's release and return. And they would be deliberative because they would reveal information about Defendants' evaluation of alternative policies. The deliberative process privilege therefore properly applies to information requested by Interrogatory Nos. 1 through 4.

The privilege applies similarly to information requested by Interrogatory No. 5, which asks Defendants to "[i]dentify and describe the role of each individual who has been involved, or whom [they] anticipate will become involved, in any of the actions responsive to Interrogatory Nos. 1–4 or in ordering or authorizing Abrego Garcia's removal to El Salvador, his initial placement in CECOT, or his continued confinement in CECOT." *Id*. at 8. Describing the role of each individual

15

who has been involved, or whom Defendants anticipate will be involved, could arguably require Defendants to disclose things like the nature of phone calls, proposals, or recommendations made to explain that individual's role. For the reasons explained above, those actions, and the individuals' involvement in those actions, would reveal predecisional, deliberative information. Thus, the deliberative process privilege also protects information requested by Interrogatory No. 5.

Interrogatory No. 7 is even more expansive. It asks Defendants to "[d]escribe with particularity each Communication [they] have had with anyone in the government of El Salvador or at CECOT concerning Abrego Garcia, including when, in what form, by whom, and to whom." *Id*. at 11. Describing "with particularity" each communication with El Salvadoran government officials would require Defendants to reveal discussions that occurred to help decisionmakers arrive at a decision and reveal alternatives considered. Interrogatory No. 7, therefore, also calls for information protected by the deliberative process privilege.

Still, Plaintiffs claim the privilege does not apply here because "there is reason to believe government misconduct has occurred," ECF No. 112 at 3 (quoting *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 135 (D.D.C. 2005); the "privilege yields where . . . Plaintiffs have a compelling need for the discovery," *id*. (citing *NAACP v. Bureau of the Census*, 401 F. Supp. 3d 608, 617–18 (D. Md. 2019); and Defendants "have not carried their burden of showing the requested discovery is deliberative and predecisional (such as by submitting a declaration that the discovery pertains to some final decision)," *id*. (citing *NAACP*, 401 F. Supp. 3d at 611–17). Not so—Defendants have no reasonable basis to believe that any government misconduct has occurred and there is no compelling need to obtain the supplemental discovery materials Plaintiffs seek.

First, though "the deliberative process privilege yields . . . when government misconduct is the focus of the lawsuit," *Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 134, that exception does not apply to this case. The scope of misconduct is not clearly defined within the meaning of the exception, but it has been applied to "circumstances of extreme government wrongdoing." *ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F. Supp. 2d 130, 133 (D.D.C. 2008) (citing *Alexander v. FBI,* 186 F.R.D. 154, 164–65 (D.D.C. 1999) (no privilege where documents related to misuse of a government personnel file to discredit a witness in an ongoing investigation of Clinton administration); *Tax Reform Research Grp. v. IRS,* 419 F. Supp. 415, 426 (D.D.C. 1976) (no privilege where documents concerned recommendation to use the powers of the IRS in a discriminatory fashion against "enemies" of the Nixon administration)); *see also In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1425 n.2 (D.C. Cir. 1998) (explaining that "misconduct" implies "nefarious motives"). The exception must be applied narrowly because otherwise, "every hint of marginal misconduct [would] suffice[ ] to erase the privilege" and "the exception would swallow the rule." *ICM Registry*, 538 F. Supp. 2d at 133. Plaintiffs assert that Defendants unlawfully removed Abrego Garcia from the United States to El Salvador, in violation of the withholding of removal statute and his procedural and substantive due process rights, resulting in arbitrary and capricious agency action. Compl. 16–20, ECF No. 1. But not every challenge to the lawfulness of the government's conduct involves extreme wrongdoing or implies nefarious motives. From the outset, Defendants admitted that Abrego Garcia's removal *to El Salvador* was an administrative error considering his withholding of removal protection. It was an administrative error, not egregious misconduct.

Second, Plaintiffs cannot demonstrate that they have a compelling need for the discovery. Once the government "makes a sufficient showing of entitlement to the privilege," the party

17

challenging the assertion of the deliberative process privilege bears the burden of demonstrating sufficient need to overcome the government's interest in non-disclosure. *See Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 854 (3d Cir. 1995). In balancing these interests, courts consider: "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) 'the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Cipollone v. Liggett Grp. Inc.*, 1987 WL36515, at *2 (4th Cir. Feb. 13, 1987) (quoting *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984)). First, much of the information protected by the deliberate-process privilege that Plaintiffs seek is not relevant. The Court ordered expedited discovery on "(1) the current physical location and custodial status of Abrego Garcia; (2) what steps, if any, Defendants have taken to facilitate Abrego Garcia's immediate return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate his return." ECF No. 79 at 7. Defendants' predecisional, deliberative considerations, which the language of Plaintiffs' requests captures, are not relevant to the topics the Court has limited discovery to. Second, Defendants have cooperated to make evidence available to Plaintiffs on the Court's designated topics. Plaintiffs have had the opportunity to take discovery on the topics the Court has allowed. Defendants have made four individuals available for depositions, and Plaintiffs have yet to notice the deposition of Mr. Michael Kozak. Defendants also responded to Plaintiffs' discovery requests to the extent they did not call for privileged material. In fact, Defendants produced 1,027 pages of documents and logged 1,140 documents on a privilege log. ECF No. 112 at 3. Third, the government is an active participant in this litigation, and last, disclosing Defendants' predecisional deliberations related to their "actions to facilitate Abrego Garcia's release and return," and enter into an "agreement with El Salvador related to

18

Abrego Garcia's confinement," involve weighty foreign policy concerns, *see supra* I, the disclosure of which would greatly "hinder frank and independent discussion regarding contemplated policies and decisions," *Cipollone v. Liggett Grp. Inc.*, 1987 WL36515, at *2. Plaintiffs cannot demonstrate they have a sufficient need for information reflecting Defendants' deliberative processes to overcome Defendants' interest in non-disclosure.

Finally, Plaintiffs mistake what Defendants' burden requires at this stage. The government bears the initial burden to show the privilege applies. *Redland Soccer Club, Inc.*, 55 F.3d at 854. To meet that burden "the government must present more than a bare conclusion or statement that the documents sought are privileged." *Id*. Defendants have just explained how the privilege applies to materials sought by each of the interrogatories and requests Plaintiffs identified. Beyond that, Defendants need not submit a declaration in support of their deliberative process privilege assertion until Plaintiffs move to compel the privileged documents and responses. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (holding that the White House was not obligated to "formally invoke its [executive] privileges in advance of the motion to compel;" it was sufficient that it said, in response to a subpoena, that it "believed the withheld documents were privileged"); *Huntleigh USA Corp. v. United States*, 71 Fed. Cl. 726, 727 (2006) (procedural requirements for privilege assertion are satisfied through the production of a declaration or affidavit in response to a motion to compel); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 134 n.13 (D.D.C. 2005). But even though no motion to compel has been filed, and the Court should deny Plaintiffs' request for leave to file one, Defendants will provide Secretary of State Rubio's declaration asserting the deliberative process privilege to the Court if that would be helpful.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request for leave to file a motion to compel.

19

Dated: May 12, 2025                         Respectfully submitted,

                                            YAAKOV M. ROTH
                                            Acting Assistant Attorney General

                                            /s/ Drew C. Ensign
                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General
                                            Civil Division, Office of Immigration Litigation
                                            950 Pennsylvania Avenue, NW
                                            Washington, DC 20530
                                            Telephone: (202) 514-2000
                                            Email: drew.c.ensign@usdoj.gov

                                            BRIDGET K. O'HICKEY
                                            Counsel to the Assistant Attorney General
                                            Civil Division

                                            *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I certify that on May 12, 2025, I caused to be filed the foregoing document via CM/ECF, which caused a copy to be served on all parties.

                                            /s/ Drew Ensign
                                            Drew C. Ensign
                                            Deputy Assistant Attorney General
                                            Office of Immigration Litigation
                                            Civil Division
                                            U.S. Department of Justice
                                            950 Pennsylvania Ave., NW
                                            Washington, DC 20530
                                            (202) 514-2000
                                            drew.c.ensign@usdoj.gov

20