UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

KILMAR ARMANDO ABREGO GARCIA, *et al.*,

              *Plaintiffs*,

   v.

KRISTI NOEM, Secretary of the Department of Homeland Security, *et al.*,

              *Defendants*.

Case No. 8:25-cv-00951 (PX)

**DEFENDANTS' RESPONSE IN OPPOSITION TO PRESS MOVANTS' MOTION TO INTERVENE AND UNSEAL COURT RECORDS**

**BACKGROUND**

On April 15, the Court ordered expedited discovery limited to: "(1) the current physical location and custodial status of Abrego Garcia; (2) what steps, if any, Defendants have taken to facilitate Abrego Garcia's immediate return to the United States; and (3) what additional steps Defendants will take, and when to facilitate his return." ECF No. 79 at 7. Plaintiffs served 15 interrogatories and 14 requests for production of documents, ECF No. 98-1, and Defendants objected and responded, ECF No. 98-2. On April 22, 2025, the parties jointly filed a sealed request for a conference with this Court. *See* ECF No. 98.2. The Court provided guidance on privilege assertions and instructed Plaintiffs to narrow Interrogatory Nos. 9–11 and RFP Nos. 6–8, ECF No. 100. On April 23, 2025, the government filed a sealed motion to stay discovery for one week, *see* ECF No. 101, and Plaintiffs filed a sealed response in opposition to the government's motion, *see* ECF No. 102. The Court, in an April 23, 2015 ruling , stayed discovery for one week based on "agreement of the parties." *See* Apr. 23, 2025 Order (ECF No. 103). On April 29, 2025, the government filed another sealed motion to stay discovery, *see* ECF No. 104, which the Court

denied, *see* ECF No. 106.  On May 6, 2025, the proposed Intervenors—fourteen news organizations—moved to unseal the Court records in this case found at ECF Nos. 98, 101, 102, 104, 105, along with a transcript of the April 30, 2025 hearing referenced in ECF No. 106.

## **DISCUSSION**

The Court placed highly sensitive judicial records under seal to preserve their sensitivity and prevent significant harm if they were to be disclosed.  Intervenors now seek access to obtain and presumably disseminate these documents.  Neither the First Amendment nor common law entitles them to do so.  The qualified right of access to judicial proceedings created by the First Amendment does not extend to the present circumstances, as the discovery process in civil cases has not historically been open to the press and public.  Moreover, even if the news organizations enjoyed a First Amendment right of access to the discovery process, which they do not, that right does not extend to the inspection and publication of a hearing transcript containing classified, *ex parte* information or to highly sensitive documents which no party disputes are entitled to attorneys'-eyes-only protection under ECF No. 105.  To the contrary, courts have consistently undertaken to protect classified and other highly sensitive information through sealing orders and other protective orders – as this Court has provisionally done in this case consistent with the law on the right of access.

The intervenors' efforts to pry into highly sensitive matters fares no better under the common law.  The default presumption of access is subject to a balancing test in which access may be denied if, as is the case here, a countervailing interest overcomes it.  As courts have consistently recognized, there is no more compelling or substantial interest the United States possesses than protection of national security and classified information.  The government's compelling interest in protecting the sealed information in this case from disclosure plainly

2

outweighs any asserted public right of access, and the same goes for the protection of sensitive but non-classified information disclosed as part of the discovery process where disclosure might adversely affect the outcome of the case. The Intervenors' arguments do nothing to suggest otherwise. At the same time, the rules and procedures governing this case already provide broad public access to the proceeding, including publicly available briefs, hearings, and opinions, which are sufficient to inform the public how this case is decided and to satisfy the "citizen's desire to keep a watchful eye on the workings of" this Court. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). Accordingly, the material sought by the news organizations is properly sealed, and they fail to demonstrate any right to obtain it.

## I.   Legal Overview

The public's right of access to the courts and court records "springs from the First Amendment and the common-law tradition." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). "[T]he strength of the right of access varies depending on whether the public's right of access to the document or proceeding derives from the common law or the First Amendment." *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020). "Under the First Amendment, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The more rigorous First Amendment standard typically applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, and documents filed in connection with a summary judgment motion in a civil case. *Id*.

Separately if relatedly, under the common law, there is a "presumption of access . . . [which] can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. The mere existence of a common law right of access to a particular kind of document does not entitle the press and the public to access in every case. *Id*.

3

Importantly, the common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment. *Id*.

## II. The Court Did Not Abuse its Discretion in Provisionally Sealing the Documents in Question.

A district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Ordinarily, "before a district court may seal any court documents, it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citing *Knight*, 743 F.2d at 235-36; *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988)). The Fourth Circuit has stated that in entering a sealing order, "a judicial officer may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable." *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (internal citations and quotations omitted). Moreover, "if appropriate, the government's submission and the officer's reason for sealing the documents can be filed under seal." *Id*.

A motion to seal must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection. The Court will not rule upon the motion until at least fourteen (14) days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an

4

>opportunity to withdraw the materials. Upon termination of the action, sealed materials will be disposed of in accordance with L.R. 113.

Loc. R. 105.11 (D. Md. 2023).

Here, the Court permitted "provisional sealing" of the documents in question for "the early stages of this case to accommodate its expedited nature and to safeguard sensitive information." Briefing Schedule Order, May 7, 2025, Docket 8:25-cv-00951, Entry 115, at 2. This was appropriate given the nature of the proceedings and the compelling governmental interest in protecting foreign affairs and national security and preventing the dissemination of then-classified information.[1] However, the Court stated that, going forward, "the parties must now strictly comply with the Court's Local Rules governing sealed filings." *Id.* "Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 488 (D. Md. 2014), aff'd, 885 F.3d 271 (4th Cir. 2018) (citations omitted). Given the expedited nature and sensitive information involved, the Court did not abuse its discretion in provisionally sealing the documents in question. *See Stone*, 855 F.2d at 180 ("[A] court's denial of access is reviewable only for abuse of discretion"); *see also U.S. v. Morgan*, 962 F.2d 8 (4th Cir. 1992). Additionally, the Court's decision to seal is fully consistent with the case law on the right of access.

---

[1] Certain production in the case was originally classified and had been lodged with the Court. However, that information since been declassified, and the information has been deemed "Attorneys'-Eyes-Only" consistent with the Court's protective order. Accordingly, the material remains sensitive and protected. However, the contents of hearings have not been declassified and should remain protected.

### III. The First Amendment Does Not Provide a Right of Access to the Requested Judicial Records and Documents

"[T]he First Amendment guarantee of access has been extended only to particular judicial records and documents—namely, plea hearings and sentencing hearings in criminal cases, and documents filed in connection with a summary judgment motion in a civil case. *See Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) ("Stone I"); *Rushford*, 846 F.2d at 253.

"When the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Stone I*, 855 F.2d at 180.) "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Id.* (*citing Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion")).

Intervenors argue that the First Amendment requires that the judicial records and documents in question be unsealed because the parties have failed to demonstrate a compelling interest in keeping the requested judicial records and documents under seal. Memorandum of Law in Support of Press Movants Motion ("Memorandum") at 7-8. But, as shown below, they fail to make a threshold showing that the First Amendment provides a right of access to the requested judicial records and documents. Regardless, there is a compelling governmental interest in keeping the requested judicial records and documents under seal.

### A. Intervenors Failed to Demonstrate a First Amendment Right of Access to the Requested Judicial Records and Documents

The First Amendment guarantees access when (1) "the place and process have historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986) ("*Press–Enterprise II*"); *see Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (applying *Press-Enterprise II*). Intervenors seek access to judicial records and documents that relate to the scope and process of discovery. Memorandum at 5. Applying the *Press-Enterprise II* test demonstrates that Intervenors do not have a First Amendment right of access to the requested judicial records and documents as there is both a lack of historical access and a significant positive role in open access to the materials Intervenors seek.

#### 1. Intervenors Fail to Demonstrate a Historical Practice of Access to the Requested Judicial Records and Documents

Intervenors have not put forth any argument that discovery has been historically open to the press and public. They cannot do so because *discovery has* not *historically been open to the press and public*. *See United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) ("[T]here is no tradition of access to criminal discovery"); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1336 (D.C. Cir., 1985) (right of access to civil discovery document not supported by experience); *United States v. Tomison*, 969 F. Supp. 587, 595 (E.D. Cal. 1997) *see also United States v. Smith*, 985 F. Supp. 2d 506, 519-20 (S.D.N.Y. 2013) (compiling cases). Thus, there is not a history of having the discovery process or discovery material open to the press and public.

### 2.    Intervenors Fail to Demonstrate a Significant Positive Role in Access to the Requested Judicial Records and Documents

Intervenors likewise have not put forth any argument that public access plays a significant positive role in the discovery process.  They cannot do so because public access plays a significant negative role in the discovery process.  As the Fourth Circuit has explained, discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court."  *Rushford*, 846 F.2d at 252 (internal quotation marks omitted); *see United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("If ... discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe"); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d at 1336 ("they are not greatly enhanced by access to documents … before judgment rather than after"); *see also Smith*, 985 F. Supp. 2d at 520 (compiling cases).  Thus, there is no evidence that public access plays a significant positive role in the discovery process.

Accordingly, Intervenors failed to demonstrate that experience and logic requires access to the requested sensitive judicial records and documents.  *Press–Enterprise II*, 478 U.S. at 8. Intervenors' reliance on *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118 (D. Md. 2009), is misplaced because the Court there failed to apply the requirements of *Press–Enterprise II.  See Goetz*, 886 F.2d at 64.   Therefore, the *Minter* Court's conclusory assumption is not supported by the holdings and rationale of the Supreme Court or the Fourth Circuit.  Indeed, that assumption was criticized in *Kinetic Concepts, Inc. v. Convatec Inc*., 2010 WL 1418312 at 10 n. 13 (M.D.N.C. Apr. 2, 2010) (not precedential), noting "research has revealed no circuit-level decisions holding that a public access right applies to materials filed in connection with discovery motions."

Therefore, Intervenors have failed to demonstrate a First Amendment right of access to the requested judicial records and documents. As such, this Court need not consider the question of whether a compelling governmental interest exists. *See Immigration & Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 25 (1976).

### B.    Regardless, there is a Compelling Governmental Interest in Keeping the Requested Judicial Records and Documents Under Seal

Even if the Court considers the matter further, Intervenors are still not entitled to access the requested judicial records and documents because there is a compelling governmental interest—protecting national security and preventing the dissemination of sensitive information—in keeping sensitive information under seal. *See Central Intelligence Agency v. Sims*, 471 U.S. 159, 175 (1985) ("The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service") (quotation omitted); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the Nation."); *see also El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007) ("In assessing the risk that such a disclosure might pose to national security, a court is obliged to accord the 'utmost deference' to the responsibilities of the executive branch."); *United States v.. Moussaoui*, 65 Fed. Appx. 881, 887 (4th Cir. May 13, 2003) (*not precedential*) ("[T]here can be no doubt that the Government's interest in protecting the security of classified information is a compelling one.") (*citing Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988)).

At the same time, the rules and procedures governing this case already provide the public with broad access to the proceeding, with publicly available briefs, oral arguments, and opinions. These comprehensive procedures are sufficient to inform the public how this case is decided and

9

to satisfy the "citizen's desire to keep a watchful eye on the workings of" this Court. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). In sum, the relevant interests are best served by the procedures currently in place that seal sensitive material presented to this Court.

Further, the sealing is narrowly tailored to achieve that interest. The requested judicial records include unclassified but sensitive information, and redactions to avoid divulging this information would be burdensome, and it is unclear that the sensitive information could readily be disentangled from non-sensitive information such that redactions would be a feasible less restrictive approach to protecting the sensitive information. Therefore, no less reasonable alternative than continued sealing will protect the Government's interest in preventing the unauthorized dissemination of this information. *See In re Nat'l Sec. Letter*, 33 F.4th 1058, 1072 (9th Cir. 2022), citing *Dep't of the Navy*, 484 U.S. 518, 527; (noting that keeping sensitive information confidential in order to protect national security is a compelling government interest); *see also Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015) ("The First Amendment "requires that [the speech restriction] be narrowly tailored, not that it be 'perfectly tailored.'").

Therefore, there is a compelling governmental interest in keeping the sensitive information under seal. Intervenors do not have a First Amendment right to the requested judicial records and documents. And even if they did, the government's interest in national security is compelling, and sealing that information is narrowly tailored to achieve that interest.

**IV.    Any Common Law Presumption of Access Intervenors Have to the Requested Judicial Records is Outweighed by the United States's Compelling Interest in Protecting National Security Information**

The Intervenors' request to unseal the challenged filings and presumably publish their contents to the world must be rejected. The five challenged sealed filings all contain sensitive national security and foreign affairs information worthy of protection. *Cf. generally* Classified

Information Procedures Act ("CIPA") § 1 (defining "classified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security); Exec. Order No. 12,958 § 1.3(a)(1)-(3), 60 Fed.Reg. 19,825, 19,826 (Apr. 17, 1995); 28 C.F.R. § 17.21; *see also United States v. Smith,* 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government ... may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it.").

Analogously, the government has a compelling interest in protecting classified information.[2] "There can be no doubt that the Government's interest in protecting the security of classified information is a compelling one. *United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003), citing *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988); *see also United States v. Al–Arian,* 267 F.Supp.2d 1258, 1266–67 (M.D.Fla. 2003) ("This Court cannot think of a more compelling or substantial interest that the United States possesses than protection of classified information."); *Haig v. Agee*, 453 U.S. 280, 307 (1981)("[N]o governmental interest is more compelling than the security of the Nation."). The government's compelling interest in protecting the sensitive information in this case from disclosure outweighs any generic public right of access. *See Nixon,* 435 U.S. at 598 (common law right of access may be outweighed by important competing interests); *United States v. Aref*, No. 04 CR 402, 2006 WL 1877142, at *1 (N.D.N.Y. July 6, 2006) (finding that the Government's interest in protecting the national security and preventing the dissemination of classified information outweighed the public's right of access to these materials). As discussed supra, III. B, there is a compelling governmental

---

[2] As noted, while some documents were declassified and then produced to Plaintiffs as attorneys'-eyes-only production protected under the protective order, other evidence orally provided to the Court *ex parte* has not been declassified.

interest in maintaining the seal on those records. *See, e.g., Sims*, 471 U.S. 159, 175 (1985) ("The government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service").

Indeed, the Court placed the information under seal to preserve its secrecy. Before doing so, the Court weighed the interests advanced by the parties in light of the public interests and the duty of the courts. *See* ECF Nos. 98, 101-103, 105; *Rushford*, 846 F.2d 249, 253. *cf. Stone*, 855 F.2d at 182 (noting that district court has "superior vantage point" from which to make decisions regarding sealing of materials before it). The Intervenors now seek to supersede the Court's informed determination based on a *pro forma* assertion of a right of public access. They offer little more than garden-variety rationales for why public access to these documents is purportedly needed, instead relying heavily on the common law default presumption. *See* Motion at 8-9 ("The common law right of access applies to them and they are presumptively public."); ("[b]ecause the common law right of access applies to the Sealed Records, the public has a powerful interest in accessing them."). Citing *Rushford*, 846 F.2d at 253, the Intervenors assert that "the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Memorandum at 9. Yet they fail to grapple with the weight of available authority cited above that establishes that the government's interest in protecting sensitive national security information from public dissemination can be not only a "significant interest," but a compelling one. *See Moussaoui*, 65 F. App'x at 887; *Dep't of Navy v. Egan*, 484 U.S. at 527; *Haig v. Agee,* 453 U.S. at 307. Although the challenged materials are not classified, the common law right of access is subject to a balancing test and does not entitle the press and the public to access in every case. *Rushford v. New Yorker Mag., Inc*., 846 F.2d at

253. But given the compelling government interest in protecting national security and foreign affairs and preventing the dissemination of sensitive information that might adversely affect the litigation, the default presumption of access is easily rebutted in these circumstances. The Intervenors should await those contexts where their right of access are pertinent considerations, by which time the Parties will have done much to provide greater insight into the propriety of further restriction on access. The only particularized rationale the Intervenors posit for public disclosure of the sealed records is one of process—that is, they wish to understand why the five docket entries seemingly reflect changes in the Court's and parties' positions concerning the pace of discovery. The public utility of accessing this information, they assert, is a promoted "understanding [of] the system in general and its workings in [this] particular case." Memorandum at 9. Intervenors' curiosity does not outweigh the national security and foreign affairs interests in keeping the sealed material sealed. As with any district court case, the procedural maneuverings are highly fact-driven and circumstance specific. Indeed, as to the April 23, 2025 under-seal hearing, the Court's procedural rulings were responsive to, and inextricably intertwined with, the substance of the classified information presented to the Court by a government witness. Particularly with respect to the requested transcript of the Court's April 30 hearing on that motion (referenced in ECF No. 106), the Intervenors implicitly ask the Court to take a course of action that is not within its province to take. "It is not the province of the judiciary . . . to determine whether a source or method should be (or should not be) disclosed." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 762 (D.C. Cir. 1990), citing *Sims*, 471 U.S. 159, 167 (1985). The case against disclosure is also further enhanced by the fact that the Court entered a protective order, ECF 95, designating materials as confidential or even attorneys'-eyes-only, to allow the parties to litigate this dispute while ensuring that implicated information may

13

remain under seal. *See Cape Fear Pub. Util. Auth. v. Chemours Co. FC, LLC*, No. 7:17-CV-00195-D, 2024 WL 2027377, at *2 (E.D.N.C. May 7, 2024) ("In light of the Stipulation and Order designating materials as confidential, the court concludes that the interests in maintaining the restricted nature of the documents heavily outweighs the public's interest in having access to these documents" and "finds that there is no alternative short of sealing these documents to safeguard the interests at issue."). Thus, any promoted understanding of the court system is clearly outweighed by the most paramount countervailing interest—the security of the Nation. *Haig v. Agee*, 453 U.S. 280, 307 (1981). Accordingly, the challenged records should remain sealed and the Intervenors' request should be denied. *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 293–94 (4th Cir. 2013) (determining common law presumption of access was outweighed by govt's interest in continued sealing where challenged records implicated Government's interests in maintaining the secrecy of its investigation, preventing potential subjects from being tipped off, or altering behavior to thwart the Government's ongoing investigation, outweighed those interests); *Moussaoui*, 65 F. App'x at 887 ("We therefore conclude that all classified information filed with this court in relation to this appeal will remain under seal.").

///
///
///
///
///

## CONCLUSION

For the foregoing reasons, the Court should deny the Intervenors' motion to intervene and unseal Court records.

    Respectfully submitted,

    **Yaakov M. Roth**
    Acting Assistant Attorney General
    Civil Division

    s/Drew C. Ensign
    **Drew C. Ensign**
    Deputy Assistant Attorney General
    Office of Immigration Litigation
    Civil Division
    U.S. Department of Justice
    P.O. Box 878, Ben Franklin Station
    Washington, DC 20044-0878
    (202) 514-2000
    drew.c.ensign@usdoj.gov

Dated: May 20, 2025    Counsel for Defendants

## CERTIFICATE OF SERVICE

I certify that on May 20, 2025, I caused to be filed the foregoing document via CM/ECF, which caused a copy to be served on all parties.

                    s/Drew C. Ensign
                    **Drew C. Ensign**
                    Deputy Assistant Attorney General
                    Office of Immigration Litigation
                    Civil Division
                    U.S. Department of Justice
                    P.O. Box 878, Ben Franklin Station
                    Washington, DC 20044-0878
                    (202) 514-2000
                    drew.c.ensign@usdoj.gov