IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Defendants. | Case No. 8:25-cv-00951-PX |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE PRESS MOVANTS'
MOTION TO INTERVENE AND UNSEAL COURT RECORDS**

In their motion to intervene and unseal, the Press Movants set out three settled and straightforward propositions: (1) the public has a right of access to the records filed and proceedings held in this case; (2) whether that right of access arises from the First Amendment or common law, the party seeking to deny access bears the burden of justifying secrecy; and (3) the right of access further requires the Court to consider alternatives to sealing and provide reasons on the record for denying access and rejecting less restrictive measures. *See generally* Mem. in Supp. of Press Movants' Mot. to Intervene & Unseal Court Records ("Mem."), ECF 108-1. The government does not dispute any of those points, yet it opposes the access motion, offering only the conclusory claim that keeping the Sealed Records secret protects "national security." *See* Gov't's Resp. in Opp. to Press Movants' Mot. to Intervene & Unseal ("Opp.") at 9, ECF 151. Indeed, the government claims the Court *has no choice* but to obey the government's call for secrecy, arguing that unsealing these records is "not within [the Court's] province." *Id.* at 13.

The government's opposition errs on access law generally and these records specifically. As a general matter, the Fourth Circuit has rejected the government's claim that the decision to

unseal records is outside of the Court's "province," holding instead that this Court cannot "abdicate its decisionmaking responsibility" merely because "national security concerns are present." *In re Washington Post Co.*, 807 F.2d 383, 391-92 (4th Cir. 1986). To the contrary, "[a] blind acceptance by the courts of the government's insistence on the need for secrecy, without notice to others, without argument, and without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse." *Id.* Thus, while national security considerations can, in the right circumstances, establish a legitimate need for sealing or redaction, even then the First Amendment, common law, and local rules require that the Court follow the proper procedural requirements before making that determination.

As to these records in particular, the government has failed to show that keeping them sealed actually advances a compelling interest, or that no less restrictive measures would suffice to protect that interest. The clearest example of this failure is the parties' April 21, 2025 joint request for a discovery conference, ECF 98, which the government claims must remain sealed "given the compelling government interest in protecting national security and foreign affairs and preventing the dissemination of sensitive information that might adversely affect the litigation." Opp. at 12-13. The problem with this argument is that *ECF 98 is already publicly available*,[1] and it is clear on its face that it does not contain *any* information whose release would harm national security or foreign affairs or that otherwise qualifies as "sensitive" in any sense.

As this Court has recognized, the filings in this matter are subject to "the presumption of public access to judicial records, which may be overcome only with a compelling justification."

---

[1] As the Press Movants noted in their initial brief, *see* Mem. at 4 n.2, this filing is not accessible on PACER but is available at https://storage.courtlistener.com/recap/gov.uscourts.mdd.578815/gov.uscourts.mdd.578815.98.0.pdf.

May 7, 2025 Order at 2, ECF 115.  The government has failed to overcome that presumption.  That failure would make sealing unjustified in any case, but it is especially improper in such a closely watched matter—one that also raises profoundly important constitutional questions and issues.  The Court should grant the Press Movants' motion and promptly unseal the records.

I.  **THE JUDICIARY, NOT THE EXECUTIVE, DECIDES WHETHER COURT RECORDS SHOULD BE UNSEALED**

The government is wrong to suggest that it "is not within its province" for the Court to decide whether to grant access to any of the Sealed Records.  *See* Opp. at 13.  Under basic separation of powers principles, the Judicial Branch, not the Executive Branch, decides what judicial records can and should be released.

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution.'"  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)).  Among these is the "supervisory power over [the court's] own records and files."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Indeed, for more than a century, the Judicial Branch has not let the Executive Branch dictate sealing of court records.  *See, e.g.*, *Ex parte Drawbaugh*, 2 App. D.C. 404, 405 (D.C. Cir. 1894) (refusing to seal record despite patent secrecy regulation, as "this is a public court of record, governed by very different principles and considerations . . . from those that apply to an executive department"); *Parhat v. Gates*, 532 F.3d 834, 836 (D.C. Cir. 2008) ("it is the court, not the Government, that has discretion to seal a judicial record") (cleaned up).

The Fourth Circuit's decision in *In re Washington Post* underscores this point.  There, when the press sought access to records related to an espionage prosecution, the government argued that the standard procedural requirements for closure or sealing "should not apply where national security interest are at stake."  *In re Washington Post Co.*, 807 F.2d at 391.  The Fourth

Circuit soundly rejected that argument, stating that "troubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decisionmaking responsibility to the executive branch whenever national security concerns are present." *Id.* The Fourth Circuit therefore held that "the procedural requirements" for denying access to court records and proceedings "are fully applicable" when requests for sealing are "based on threats to national security." *Id.* at 392.

The controlling precedent is clear: it is up to this Court—not the government—to decide whether keeping the Sealed Records secret is justified.

## II.   THE GOVERNMENT HAS NOT OVERCOME THE PRESUMPTION OF PUBLIC ACCESS UNDER THE FIRST AMENDMENT OR COMMON LAW

The Court need not decide whether the Sealed Records are subject to the First Amendment right of access or the common law right of access, because the government has failed to satisfy even the common law standard: the government has not demonstrated both that "countervailing interests heavily outweigh the public interests in access" and that "less drastic alternatives to closure" are inadequate to advance those "countervailing interests." *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 266, 272 (4th Cir. 2014).

### A.   The Government Fails to Show that its Asserted Interest in Secrecy Outweighs the Public's Powerful Interest in Access

In opposing the Press Movants' access motion, the government asserts it has a "compelling government interest in protecting national security and foreign affairs," and that the Sealed Records, while "not classified," contain "sensitive information." Opp. at 12-13.[2] The

---

[2] The government also claims that unsealing these records "might adversely affect" the outcome of this litigation, *see* Opp. at 3, 13, but the government does not explain what that means, the likelihood that such an adverse effect "might" occur, or how that risk differs from any other case.

4

Press Movants do not dispute that protecting national security and foreign affairs can qualify as compelling interests. Here, however, the government has offered *no explanation whatsoever* about what the national security risk at stake is or how maintaining these records under seal in particular advances that interest. That failure is fatal to the government's opposition to access.

Two records in particular illustrate that the government's arguments are threadbare. First, the Court has granted public access to the Declaration of Secretary of State Marco Rubio, ECF 112-5, which the government initially filed under seal. *See* May 16, 2025 Order at 1, ECF 146. That declaration, marked "SBU"—*i.e.*, sensitive but unclassified—is now unsealed without redactions,[3] and it is clear on the face of the document that it does not contain any information which, even if released from the start, would have harmed national security or foreign affairs. And the government, in its most recent filing, does not even attempt to argue otherwise—nor could it credibly do so. Second, as noted above, the parties' April 21 request for a discovery conference, ECF 98, remains sealed on PACER despite being available to the public elsewhere.[4] Nothing in that record, either, could plausibly compromise national security or foreign affairs. Nevertheless, the government asks the Court to keep that already-disclosed record under seal. *See* Opp. at 12-14 (listing ECF 98 as one of "the challenged records [that] should remain sealed").

In light of these now-public documents, the government cannot plausibly maintain that keeping the Sealed Records secret advances any interest sufficient to outweigh the powerful interest in disclosure. The government offers only two points by way of rebuttal, both non

---

[3] The Rubio Declaration is also publicly available at https://storage.courtlistener.com/recap/gov.uscourts.mdd.578815/gov.uscourts.mdd.578815.112.5.pdf.

[4] *See* Mem. at 4 n.2 (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004), for the proposition that courts "simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again").

sequiturs. First, the government belittles the Press Movants' arguments for unsealing as "*pro forma*" and "garden-variety," see Opp. at 12, but, even if that were the case, the government can hardly fault the Press Movants for advancing generalized interests in access when, at the time they sought to intervene and unseal, there was *nothing* on the public docket to indicate why records in this matter were suddenly being kept secret. In any event, the interests in public disclosure advanced by the Press Movants were hardly "*pro forma*." As the Press Movants explained, the public interest in this case is intense: senior Executive Branch officials, including the President, have commented about it in press interviews, before Congress, and on social media, *see, e.g.*, Mem. at 1; Pls.' Mem. of Law Regarding Privilege Assertions at 17-20, ECF 128; members of Congress have traveled to El Salvador to meet Mr. Abrego Garcia and investigate the conditions of his detention, *see* Mem. at 1; and despite only being filed at the end of March, the case has already been before the U.S. Supreme Court and the Fourth Circuit twice, *see id*. Indeed, the government does not deny that this case has been discussed at the highest levels of all three branches, or that it remains the subject of intense public scrutiny. *See id.* Especially in such a closely watched case, the judicial process must "satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571-72 (1980) (citation omitted).

Second, the government claims that the court records already on the public docket "are sufficient to inform the public how this case is decided," *see* Opp. at 3, but the government cites no authority for the proposition that there exists some minimum level of access above which additional disclosures are optional. Nor does it explain how it purports to decide when the public has "sufficient" access to judicial records and proceedings. Rather, as the government concedes, there is a process that must be followed before "a district court may seal any court documents,"

which includes public notice of a request to seal, an opportunity for interested parties to object, consideration of less drastic alternatives to blanket closure, and on-the-record reasons supporting the decision to seal.  Opp. at 4.  None of those steps had been followed before the Press Movants filed their motion for access to the Sealed Records.

Because the government has not shown that any "countervailing interests [in secrecy] heavily outweigh the public interests in access," *see Doe*, 749 F.3d at 266, it fails to carry its burden under the common law right of access, and the Court should unseal the Sealed Records.

## B. The Government Fails to Show that Less Restrictive Measures are Inadequate

A separate and independent justification for granting the Press Movants' motion is the government's failure to show why alternative measures less restrictive than wholesale sealing are insufficient to protect its asserted interests.  The entirety of the government's argument on this point appears in a single sentence: "The requested judicial records include unclassified but sensitive information, and redactions to avoid divulging this information would be burdensome, and it is unclear that the sensitive information could readily be disentangled from non-sensitive information such that redactions would be a feasible less restrictive approach to protecting the sensitive information."  Opp. at 10.  This is both inadequate to carry the government's burden and flatly in conflict with the government's other filings in this case.

It is axiomatic that wholesale sealing is improper where the Court can protect the asserted interests in secrecy by "giving the public access to some of the documents or releasing a redacted version of the documents that are the subject of the government's motion to seal." *See, e.g.*, *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005).  Indeed, to satisfy the local rules alone, the government must provide "an *explanation* of why alternatives to sealing, such as redaction, would be inadequate." *See* May 7, 2025 Order at 2 (citing Local Rule

105.11) (emphasis added).  Its failure to offer any such explanation about how "burdensome" redacting a handful of records could possibly be is therefore fatal to its request to maintain the records completely under seal.  *See Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 488 (D. Md. 2014) (denying motion to seal for failure to satisfy Local Rule 105.11, including because "the motion to seal is written in a boilerplate fashion with the parties stating" only "that 'there is no alternative to sealing that would provide sufficient protection to the confidentiality of the materials'") (cleaned up), *aff'd*, 885 F.3d 271 (4th Cir. 2018).

      The government's argument also conflicts with its own filings in this case.  Following the Court's May 7, 2025 Order, the government has filed at least two substantive briefs, one of which contains *no* redactions, despite including excerpts from the depositions of Robert L. Cerna, the Acting Field Office Director for Enforcement and Removal Operations at U.S. Immigration and Customs Enforcement, and Joseph N. Mazzara, the acting General Counsel for the Department of Homeland Security.  *See generally* ECF 119.  In other words, despite maintaining its confidentiality designations over broad swaths of these depositions, *see* ECF 118, the government managed to "readily disentangle" the supposedly sensitive information from the non-sensitive information.  So, too, for the government's second filing, which redacts several lines of text containing information pertaining to the government's discovery responses.  *See generally* ECF 125.  Indeed, of that 19-page filing, no more than 30 lines of text are redacted, *id*., undermining the government's claim that making similar redactions to these Sealed Records "would be burdensome."

For this reason as well, the government fails to carry its burden under the common law test, and the Court should grant the press and public immediate access to the Sealed Records.[5]

## CONCLUSION

For the foregoing reasons and those set forth in their initial brief, the Press Movants respectfully request that the Court grant their motion to intervene and unseal the Sealed Records (ECF Nos. 98, 101, 102, 104, 105, and a transcript of the April 30, 2025 hearing referenced in ECF No. 106) and promptly place those records on the public docket.[6]  The Press Movants further request that the Court provide notice and an opportunity to object, and continue requiring compliance with Local Rule 105.11, if the parties seek to file additional records or hold additional proceedings under seal in this matter.

Dated:  May 27, 2025

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Maxwell S. Mishkin*
Maxwell S. Mishkin (D. Md. Bar No. 20650)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
mishkinm@ballardspahr.com

Isabella Salomão Nascimento (*pro hac vice*)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281 | Fax: (612) 371-3207
salomaonascimentoi@ballardspahr.com

*Counsel for the Press Movants*

---

[5] Plaintiffs take no position on the Press Movants' motion, except to "request that, should documents be unsealed, any personally identifiable information (PII) be redacted consistent with" the Federal Rules.  *See* Pls.' Resp. to Press Movants' Mot. to Intervene & Unseal, ECF 149.  The Press Movants do not object to such limited redactions.

[6] Because the government has now revealed that there was another sealed hearing on April 23, 2025, *see* Opp. at 13, the Press Movants respectfully request that the Court deem the foregoing access arguments as applicable to that hearing as well and unseal a transcript accordingly.