# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

KILMAR ARMANDO ABREGO GARCIA, *et al.*,

                            *Plaintiffs*,

        v.

KRISTI NOEM, Secretary of the Department of Homeland Security, *et al.*,

                           *Defendants*.

Case No. 8:25-cv-00951 (PX)

# DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Plaintiff Abrego Garcia, a Salvadoran national removed to El Salvador, and his wife and child have sued Defendants seeking declaratory and injunctive relief. Compl. ¶¶ 4–13, ECF No. 1; *id*. at 21. Plaintiffs contend that Abrego Garcia was unlawfully removed to El Salvador despite a grant of withholding from removal to that country. This Court should dismiss Plaintiffs' claims against Defendants for lack of subject-matter jurisdiction.

## STATEMENT OF FACTS

For purposes of a motion to dismiss, the Complaint's allegations are assumed to be true. Plaintiff Abrego Garcia is a citizen and native of El Salvador; Plaintiffs Jennifer Vasquez Sura and A.A.V. are his wife and child. Compl. ¶¶ 4–6, 42. Abrego Garcia violated United States law in 2011 by entering the country without inspection. *Id*. ¶ 22.

In March 2019, Abrego Garcia was served a notice to appear in removal proceedings, charging him as inadmissible as an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." *Id*. ¶¶ 25–29 (quoting 8 U.S.C. § 1182(a)(6)(A)(i)). On April 24, 2019, Abrego Garcia appeared for his first hearing in immigration court and moved for release on bond pursuant to 8 U.S.C. § 1226(a). *Id*. ¶ 30. During a bond hearing, U.S. Immigration and Customs Enforcement ("ICE") stated that local police had verified, through a confidential informant, that Abrego Garcia was an active member of the criminal gang MS-13 and, thus, a danger to the community. *Id*. ¶ 31. ICE provided a Gang Field Interview Sheet ("GFIS") generated by the Prince George County Police Department, which explained the rationale behind the belief that Abrego Garcia was a gang member. *Id*. After review of the evidence, an immigration judge denied Abrego Garcia's bond request. *See id*. ¶¶ 34, 39. Abrego Garcia then filed an I-589 application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. *Id*.

1

¶ 35. Abrego Garcia's individual hearing took place on August 9, 2019, and September 27, 2019. *Id*. The immigration judge found Abrego Garcia removable but granted him withholding of removal to El Salvador. *Id*. ¶ 41.

On March 12, 2025, Abrego Garcia was stopped by ICE officers, who informed him that his immigration status had changed. *Id*. ¶¶ 48–50. After being detained, he was questioned about gang affiliations and transferred to a detention center in Texas. *Id*. ¶¶ 53, 56. Three days later, Abrego Garcia told Vasquez Sura that he would be removed to El Salvador and detained at CECOT prison. *Id*. ¶¶ 56–57 & n.1.

On March 24, 2025, Plaintiffs filed a Complaint against Defendants, asserting claims for violating Abrego Garcia's withholding of removal under 8 U.S.C. § 1231(b)(3)(A); his Fifth Amendment procedural due-process rights; and Abrego Garcia, Vasquez Sura, and A.A.V.'s Fifth Amendment substantive due-process rights. *Id*. ¶¶ 73–77, 79–83, 85–89. Plaintiffs also assert that Defendant's actions were arbitrary, capricious, and an abuse of discretion and that "Abrego Garcia is being held in custody by the Government of El Salvador . . . in violation of the Constitution or laws or treaties of the United States." *Id*. ¶¶ 90–95, 98.

## LEGAL STANDARD

"A federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3); *Goldsmith v. Mayor & City Council of Baltimore,* 845 F.2d 61, 64 (4th Cir. 1988)). "When faced with a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a court must first determine whether the defendant is alleging a lack of jurisdiction based on the face of the Complaint or as a factual matter." *Arora v. Daniels*, No. 3:17-CV-134, 2018 WL 1597705, at *3 (W.D.N.C. Apr. 2, 2018) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th

Cir. 2009)). "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Kerns*, 585 F.3d at 192. But the Court need not "assume that a plaintiff's *legal conclusions or arguments* are also true." *Falwell v. City of Lynchburg, Virginia*, 198 F. Supp. 2d 765, 771–72 (W.D. Va. 2002) (citation omitted). "[W]hen the defendant challenges the veracity of the facts underpinning subject matter jurisdiction," however, "the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Kerns*, 585 F.3d at 192. Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *Lovern*, 190 F.3d at 654.

## ARGUMENT

The Court must dismiss Plaintiffs' claims against Defendants because, taking all factual allegations in their Complaint as true, they fail to establish subject-matter jurisdiction. This Court lacks jurisdiction because Abrego Garcia is not in United States custody, his injury is not redressable by this Court, and 8 U.S.C. § 1292(g) deprives this Court of jurisdiction. These arguments are not foreclosed by the prior rulings of the Supreme Court, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025), or the Fourth Circuit, *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025), in connection with Defendants' stay motions. Those decisions do not "squarely address" these jurisdictional issues and therefore are not binding as to whether Abrego Garcia's claims are proper, his injury is redressable by this Court, or 8 U.S.C. § 1292(g) deprives this Court of jurisdiction. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

## I. **This Court lacks jurisdiction because Abrego Garcia is not in United States custody.**

Though Plaintiffs bring four claims in addition to a 28 U.S.C. § 2241 habeas claim, all Plaintiffs' claims challenge Abrego Garcia's confinement in El Salvador. Compl. ¶ 75

("Defendants' violation of law . . . is causing Plaintiff Abrego Garcia irreparable harm with each day that he spends . . . *detained in CECOT*." (emphasis added)); *see also id*. ¶¶ 81, 87, 93, 98. Because Plaintiffs make a core habeas claim, they must bring it exclusively in habeas. But suit is proper only against the immediate "custodian" (the Warden of CECOT) and in the jurisdiction where Abrego Garcia is confined (El Salvador). Plaintiffs admit that Abrego Garcia "is being held in custody by the Government of El Salvador." *Id*. ¶ 98. Therefore, this Court lacks jurisdiction to hear Plaintiffs' claims and should dismiss them.

Habeas corpus "is the appropriate remedy to ascertain . . . whether any person is rightfully in confinement or not." *DHS v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (quoting 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1333, p.206 (1833)). 28 U.S.C. § 2241 applies to those held "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1); *see also Carafas v. LaVallee*, 391 U.S. 234, 238 & n.9 (1968); *Smith v. Ashcroft*, 295 F.3d 425, 428 (4th Cir. 2002). And a person "is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce him.'" *Munaf v. Geren*, 553 U.S. 674, 686 (2008) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

Precedent confirms that core habeas claims like the ones Plaintiffs bring—claims that challenge the authority of the Executive to exercise a power that led to the detention—*must* be brought in habeas. *See, e.g.*, *Nance v. Ward*, 597 U.S. 159, 167 (2022) ("[A]n inmate must proceed in habeas when the relief he seeks would 'necessarily imply the invalidity of his conviction or sentence." (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994))); *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (answering in the affirmative the question "whether the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy available"

despite the broad language of 42 U.S.C. § 1983); *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997) (explaining that if "an action [i]s one challenging the legality of physical confinement . . . the only proper avenue for relief was a petition for a writ of habeas corpus").

Here, Plaintiffs seek review of the legality of the Executive's restraint of and removal of Abrego Garcia to El Salvador, leading to his present detention there. Compl. ¶ 63 (alleging Defendants "decided to deport Plaintiff Abrego Garcia without following the law"). Plaintiffs make clear that the ultimate relief they seek is Abrego Garcia's return to the United States. *Id.* ¶¶ 76–77, 82–83, 88–89, 94–95 (alleging irreparable harm from separation from his family and asking, "the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States"). Plaintiffs also bring a claim under 28 U.S.C. § 2241, in addition to four other claims seeking the same relief, acknowledging that habeas is the appropriate vehicle to obtain the relief they seek. *Id.* ¶¶ 96–99.

Because Plaintiffs seek Abrego Garcia's release from allegedly unlawful detention on the grounds that it was effected illegally, they make a core habeas claim and must bring it exclusively in habeas. But there is no jurisdiction in habeas. Plaintiffs admit that Abrego Garcia "is being held in custody by the Government of El Salvador." *Id.* ¶ 98. And they acknowledge that Defendants do not have the power to produce him. *Id.* ¶ 99 (asking the Court to order Defendants to "*request* that the Government of El Salvador release Plaintiff" to Defendants' custody (emphasis added)). Despite their allegations that "the Government of El Salvador is detaining Plaintiff Abrego Garcia at the direct request . . . and financial compensation of Defendants," *id.* ¶ 98, Plaintiffs do not assert that the United States can exercise its will over a foreign sovereign. The most they ask for is that this Court order the United States to "request" his release. *See, e.g.*, *id.* ¶ 99. This is not

"custody" to which the great writ may run. *See* 28 U.S.C. § 2243 ("The writ… shall be directed to the person having custody of the person detained."). This Court therefore lacks jurisdiction.

And even if the writ were to run to Abrego Garcia's custody in El Salvador, the fact remains that the writ acts not on the detainee but the custodian. *Id*. §§ 2242–43. Thus, a custodian with the power to produce Abrego Garcia must be physically within the jurisdiction of this Court for this Court to exercise jurisdiction in habeas. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). But the only Defendant alleged to be within the physical jurisdiction of this Court is Defendant Nikita Baker. Compl. ¶¶ 3, 10. And no allegation is made that Defendant Baker, the Baltimore Field Office Director for ICE, has the power to produce Abrego Garcia to this Court. *See id.* ¶¶ 3, 10, 49, 63 (containing the only allegations in the Complaint about Defendant Baker individually). Plaintiff has therefore failed to plead a viable habeas claim.

This Court previously rejected the application of *Munaf* to this context because "Abrego Garcia is not being held for crimes committed . . . anywhere" and "[h]is claims do not implicate any question of competing sovereign interests." *Abrego Garcia v. Noem*, No. 8:25-cv-00951-PX, 2025 WL 1014261, at *5 (D. Md. Apr. 6, 2025). But the point remains that "[t]he jurisdiction of the nation within its own territory is necessarily exclusive and absolute." *Munaf*, 553 U.S. at 694 (quoting *Schooner Exchange v. McFaddon,* 7 Cranch 116, 136 (1812)). Plaintiffs themselves do not dispute this. Instead, they admit that their claims implicate "competing sovereign interests," since they acknowledge that Abrego Garcia is in the physical custody of El Salvador, Compl. ¶ 98, and ask the Court to "order Defendants to immediately *request* that the Government of El Salvador release Plaintiff Abrego Garcia," *id*. ¶ 99, and even recognize that "the Government of El Salvador" may "decline such request," *id*. at 21 (emphasis added).

6

## II.     Plaintiffs cannot show redressability.

Plaintiffs bear the burden of establishing that they have suffered a concrete and particularized injury in fact, that is fairly traceable to Defendants' conduct, and is "likely, as opposed to merely speculative[ly]" redressable "by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs failed to satisfy their burden on redressability. That failure means this Court lacks jurisdiction because the "irreducible constitutional minimum" of standing to sue in federal court is not met. *Id*. at 560. When "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Id.* at 562 (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.)). Here, "Plaintiffs' injury can only be redressed by [a] foreign nation[] not before the court." *Lin v. United States*, 690 F. App'x 7, 8–9 (D.C. Cir. 2017) (collecting cases) (dismissing claim for declaratory relief for lack of redressability because plaintiffs did not show "that a court ruling invalidating [certain] decrees would likely cause [other nations] to provide relief").

Plaintiff Abrego Garcia asserts that he was injured when Defendants removed him from the United States and that he suffers harm each day he spends outside the United States. Compl. ¶¶ 75–76. Plaintiffs request that this Court declare Defendants' actions violated federal law and the Fifth Amendment; order "Defendants to immediately *request* that the Government of El Salvador release . . . Abrego Garcia"; and, "*[s]hould the government of El Salvador decline such request*," to order Defendants "to take all steps reasonably available to them . . . to return . . . Abrego Garcia to the United States." Compl. at 21 (emphasis added). But none of Plaintiffs' requested relief would redress Plaintiffs' injury because Abrego Garcia is in the custody of El

Salvador—a separate sovereign, not before this Court. *See supra* I; Compl. ¶ 98.

Defendants' point is simple: even if they make every effort to facilitate his return (as they are doing), the success of those efforts depends on the "choices of [an] independent actor[ ] not before [this] [C]ourt." *See Lujan*, 504 U.S. at 562. For that reason, it is speculative that directing Defendants to facilitate Abrego Garcia's return would redress Plaintiffs' injury.

This Court previously rejected this argument because "Defendants can and do return wrongfully removed migrants as a matter of course." *Abrego Garcia*, 2025 WL 1014261, at *6 (D. Md. Apr. 6, 2025) (citing *Lopez-Sorto v. Garland*, 103 F.4th 242, 248–53 (4th Cir. 2024); *Nken v. Holder*, 556 U.S. 418, 436 (2009) (noting that aliens "who prevail" on petitions for review of removal orders "can be afforded effective relief by facilitation of their return")). But Plaintiffs acknowledge that Defendants have ceded control of Abrego Garcia to El Salvador, Compl. ¶ 98 ("Plaintiff Abrego Garcia is being held in custody by the Government of El Salvador . . . ."), and it is their burden to prove jurisdiction exists. Moreover, *Lopez-Sorto* concerned an ICE directive that describes a policy for "facilitating" the return of certain lawfully removed aliens whose petitions for review are granted after removal. 103 F.4th at 249. The directive defines "facilitation" as "engag[ing] in activities which allow a lawfully removed alien to travel to the United States (such as by issuing a Boarding Letter to permit commercial air travel) and, if warranted, parol[ing] the alien into the United States upon his or her arrival at a U.S. port of entry"—actions entirely within the United States' control that amount to removing domestic barriers. *Id*. While the Fourth Circuit did not define with exacting specificity what "facilitation" requires in the context of this Court's injunction, it rejected the argument that it requires only removing domestic barriers. *Abrego Garcia*, 2025 WL 1135112, at *1. *Lopez-Orto* therefore has no bearing on whether the relief contemplated in this case is too speculative to support standing because in this case Abrego

Garcia's ability to secure the relief he seeks depends on the actions of a foreign sovereign.

### III.    8 U.S.C. § 1252(g) deprives this Court of jurisdiction.

Finally, this Court lacks jurisdiction to review Defendants' removal of Abrego Garcia under 8 U.S.C. § 1252(g). Section 1252(g) states that "no court shall have jurisdiction to hear *any* cause or claim by or on behalf of any alien *arising from the decision or action* by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien." 8 U.S.C. § 1252(g) (emphasis added). Interpreting § 1252(g), the Supreme Court has held that the provision's plain language bars any claim related to conduct falling within one of these three events—commencing proceedings, adjudicating cases, or executing removal orders. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). While § 1252(g) "does not sweep broadly," the provision's "narrow sweep is firm," and this Court cannot "entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021). It "precludes judicial review of 'any' challenge to 'the decision *or action by [DHS] to . . . execute removal orders*,'" which "includes challenges to DHS's 'legal authority' to do so." *E.F.L.*, 986 F.3d at 965 (alteration in original) (emphasis added); *see also Camarena v. Director*, ICE, 988 F.3d 1268, 1273–74 (11th Cir. 2021) ("No matter how [the plaintiffs] characterize their claims, they amount to an attack on the government's execution of their removal orders. That runs afoul of § 1252(g): If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order.").

Here, Plaintiffs' claims—that Abrego Garcia's removal order was executed "without following the law," Compl. ¶ 63—plainly "aris[e] from" the government's "decision or action" to "execute" his removal order. 8 U.S.C. § 1252(g). They each raise a challenge "by or on behalf of" Abrego Garcia to the decision to execute his removal order. *See* Compl. ¶¶ 74, 79, 85, 92, 98; *see*

9

*also Mapoy v. Carroll*, 185 F.3d 224, 228 (4th Cir. 1999) (where basis for claim is denial of stay of removal and continued detention in anticipation of removal, claim arises from decision to execute order of removal); *see also Duron v. Johnson*, 898 F.3d 644, 647–48 (5th Cir. 2018) (court must look at substance of complaint to determine whether claim is "by or on behalf of" alien; complaint of unlawful discrimination against U.S. citizen's alien father, styled as violating U.S. citizens' Fifth Amendment rights, is necessarily claim on behalf of father "to be free of such discrimination").

This Court previously held that § 1252(g) did not strip its jurisdiction because it could not "credit that Defendants removed Abrego Garcia pursuant to an 'executed removal order' under the INA" and because Abrego Garcia's "claims do not seek review of any discretionary decisions," only a pure question of law. *Abrego Garcia*, 2025 WL 1014261, at *8. But Defendants removed Abrego Garcia pursuant to a lawful removal order, whether or not he had been served a warrant for removal. Plaintiffs themselves attached to their Complaint a copy of the order finding Abrego Garcia removable and granting him withholding of removal to El Salvador. Compl. Ex. A, ECF No. 1-1. The order thus authorizes his removal to any country except El Salvador. *See* Compl. ¶ 77; *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not vacated or otherwise side aside. It remains in full force . . . ."). And Defendants removed him on that basis. *See* Compl. ¶ 45 ("As a condition of his withholding of removal status, Plaintiff Abrego Garcia [was] required to check in with ICE once a year."); *id*. ¶ 50 ("One ICE officer . . . told Plaintiff Abrego Garcia that his 'status ha[d] changed.' Within minutes, Plaintiff Abrego Garcia was handcuffed and detained . . . .").

Second, the Fourth Circuit has held that "§ 1252(g) does not apply to agency interpretations

of statutes as these decisions do not fall into any of the three categories enumerated in § 1252(g)." *Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999). But Plaintiffs' claims seek review of discretionary decisions. Plaintiffs challenge Abrego Garcia's removal to El Salvador, after he was granted withholding of removal to that country, not the validity of the removal order itself. Compl. ¶¶ 74, 79, 85, 92, 98. Plaintiffs therefore challenge Defendants' discretionary decisions to execute Abrego Garcia's removal several years after the order and where to send Abrego Garcia. *See Johnson*, 594 U.S. at 536 (explaining that withholding of removal "relates to *where* an alien may be removed"). And Plaintiffs' claims arising from the decision to send him to El Salvador do not present "a pure question of law." *See Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (holding that an error in executing a removal order did not present a "pure question of law"). Because Plaintiffs' claims all arise from the government's execution of Abrego Garcia's removal order, § 1252(g) prohibits this Court from hearing them.

## CONCLUSION

Because this Court lacks jurisdiction, it should dismiss Plaintiffs' Complaint.

Dated: May 27, 2025                         Respectfully submitted,

                                            YAAKOV M. ROTH
                                            Acting Assistant Attorney General

                                            BRIDGET K. O'HICKEY
                                            Counsel to the Assistant Attorney General
                                            Civil Division

                                            /s/ Drew C. Ensign
                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General
                                            Civil Division, Office of Immigration Litigation
                                            950 Pennsylvania Avenue, NW
                                            Washington, DC 20530
                                            Telephone: (202) 514-2000
                                            Email: drew.c.ensign@usdoj.gov

                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 27, 2025, I caused to be filed the foregoing document via CM/ECF, which caused a copy to be served on all parties.

/s/ Drew C. Ensign
Drew C. Ensign
Deputy Assistant Attorney
General Office of Immigration
Litigation Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-2000
drew.c.ensign@usdoj.gov