**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

Kilmar Armando Abrego Garcia, *et al.*,

               Plaintiffs,

v.

Kristi Noem, *et al.*,

               Defendants.

Case No.: 8:25-CV-00951-PX

**Plaintiffs' Opposition to Defendants' Motion To Dismiss**

## Table of Contents

Table of Authorities ...................................................................................................................ii

Introduction .................................................................................................................................1

Background ..................................................................................................................................2

Legal Standard ............................................................................................................................5

Argument .....................................................................................................................................6

I.      This Court has jurisdiction even though Abrego Garcia is not in the United States............6

II.     Plaintiffs' injuries are redressable. ......................................................................................12

III.    8 U.S.C. §1252(g) does not deprive this Court of jurisdiction. ...........................................16

Conclusion..................................................................................................................................19

## Table of Authorities

**Page(s)**

### <u>Cases</u>

*Abrego Garcia v. Noem*,
2025 WL 1021113 (4th Cir. Apr. 7, 2025) ......................................1, 4, 10, 16, 17, 19

*Abrego Garcia v. Noem*,
2025 WL 1135112 (4th Cir. Apr. 17, 2025) .......................... 1, 4, 5, 6, 11, 12, 14, 18

*Abu Ali v. Ashcroft*,
350 F. Supp. 2d 28 (D.D.C. 2004) ........................................................................ 10

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982) .............................................................................5, 6

*Arce v. United States*,
899 F.3d 796 (9th Cir. 2018) ..............................................................................15, 18

*Biden v. Texas*,
597 U.S. 785 (2022) ................................................................................................7

*Boumediene v. Bush*,
553 U.S. 723 (2008) ............................................................................................... 10

*Bowrin v. INS*,
194 F.3d 483 (4th Cir. 1999) .................................................................................. 18

*Braden v. 30th Judicial Circuit Court of Kentucky*,
410 U.S. 484 (1973) .............................................................................................9, 11

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
--- F. Supp. 3d ----, 2025 WL 1142968 (D. Mass. Apr. 18, 2025).....................14, 19

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
--- F. Supp. 3d ----, 2025 WL 1487238 (D. Mass. May 23, 2025)........................... 13

*Deal v. Mercer Cnty. Bd. of Ed.*,
911 F.3d 183 (4th Cir. 2018) .................................................................................. 12

*Enriquez-Perdomo v. Newman*,
54 F.4th 855 (6th Cir. 2022) .................................................................................. 18

*Gordon v. Barr*,
965 F.3d 252 (4th Cir. 2020) .................................................................................. 13

*Grace v. Whitaker*,
344 F. Supp. 3d 96 (D.D.C. 2018) ................................................................ 13

*Grace v. Whitaker*,
No. 1:18-cv-01853-EGS (D.D.C. 2018) ........................................................ 14

*Hamama v. Adducci*,
No. 2:17-cv-11910 (E.D. Mich. Jan. 15, 2019) ............................................ 14

*Heck v. Humphrey*,
512 U.S. 477 (1994) ......................................................................................... 7

*J.G.G. v. Trump*,
2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ................................................ 17

*J.L. v. Cuccinelli*,
No. 18-cv-04914-NC (N.D. Cal. Feb. 20, 2020) .......................................... 14

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
2025 WL 1431263 (4th Cir. May 19, 2025) .............................................. 9, 13

*Jarpa v. Mumford*,
211 F. Supp. 3d 706 (D. Md. 2016) .............................................................. 11

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ........................................................................ 5, 6

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) .......................................................................... 18

*Lin v. United States*,
690 F. App'x 7 (D.C. Cir. 2017) ................................................................... 16

*Ludecke v. Watkins*,
335 U.S. 160 (1948) ......................................................................................... 8

*Madu v. Attorney General*,
470 F.3d 1362 (11th Cir. 2006) ..................................................................... 18

*Munaf v. Geren*,
553 U.S. 674 (2009) ................................................................................... 10, 11

*Nance v. Ward*,
597 U.S. 159 (2022) ..................................................................................... 7, 8

*Nken v. Holder*,
556 U.S. 418 (2009) ....................................................................................... 13

*Noem v. Abrego Garcia*,
  145 S. Ct. 1017 (2025) .................................................................. 1, 2, 3, 4, 7, 9, 12, 18, 19

*Nunez-Vasquez v. Barr*,
  965 F.3d 272 (4th Cir. 2020) ......................................................................... 13

*Orabi v. Att'y Gen.*,
  738 F.3d 535 (3d Cir. 2014) ........................................................................... 13

*Plyler v. Moore*,
  129 F.3d 728 (4th Cir. 1997) ............................................................................ 7

*Preiser v. Rodriguez*,
  411 U.S. 475 (1973) .......................................................................................... 7

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................... 9

*Ramirez v. Sessions*,
  887 F.3d 693 (4th Cir. 2018) ......................................................................... 13

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ........................................................................................ 17

*Rosenfield v. Wilkins*,
  280 F. App'x 275 (4th Cir. 2008) .................................................................... 7

*Rumsfeld v. Padilla*,
  542 U.S. 426 (2004) ........................................................................................ 11

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................................... 11

*Sierra Club v. U.S. Dep't of the Interior*,
  899 F.3d 260 (4th Cir. 2018) .................................................................... 12, 15

*Trump v. J.G.G.*,
  145 S. Ct. 1003 (2025) ................................................................................ 8, 17

### Statutes / Rules

28 U.S.C. §1331 ................................................................................................ 7, 8

28 U.S.C. §2241 ................................................................................................ 3, 9

5 U.S.C. §706(2) .................................................................................................. 3

50 U.S.C. §21 ....................................................................................................... 8

8 C.F.R. §208.22 .................................................................................................................. 17

8 C.F.R. §1208.22 ................................................................................................................ 17

8 U.S.C. §1231(b)(3) ................................................................................................ 2, 3, 17, 19

8 U.S.C. §1252(g) .............................................................................................. 2, 4, 16, 17, 18, 19

D. Md. L. Civ. R. 105.2(a) ..................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 5

## Introduction

The Government asks this Court to accept a shocking proposition: that federal officers may snatch residents of this country and deposit them in foreign prisons in admitted violation of federal law, while no court in the United States has jurisdiction to do anything about it. This Court, the Fourth Circuit, and the Supreme Court each rejected that jurisdictional gambit. All three courts unanimously affirmed a preliminary injunction that the Government must facilitate the return of Kilmar Armando Abrego Garcia from El Salvador to the United States. *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025); *Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025); *Abrego Garcia v. Noem*, 2025 WL 1021113 (4th Cir. Apr. 7, 2025); ECF Nos. 31, 51.

Unfazed, the Government's motion to dismiss reprints—nearly verbatim—the same jurisdictional arguments those courts rejected. The Government's position that courts cannot order it to aid the return of U.S. residents it unlawfully removed to foreign cells was "eye-popping" before. ECF No. 31 at 9. Repetition does not make it less so. Jurisdiction is not a game of "best two out of three." Once decided, it stays decided unless the facts or the law change. Neither has.

The facts are simple. In 2019, an immigration judge ordered that Abrego Garcia, a native of El Salvador residing in Maryland, could not be removed to El Salvador. For five years he worked to support his U.S.-citizen family in Maryland. Yet in March 2025, the Government stopped his car, announced his "status has changed" (it has not), and flew him to a prison in El Salvador.

The law is just as clear. The Government's removal of Abrego Garcia to El Salvador— which the Government admits was an "administrative error," ECF No. 11-3 ¶15—was "illegal." *Noem*, 145 S. Ct. at 1018. The Government nonetheless moves to dismiss based on three jurisdictional arguments that this Court already ruled "fail as a matter of law." ECF No. 31 at 2.

***First***, the Government argues that no U.S. court could have jurisdiction over Plaintiffs' claims because they challenge Abrego Garcia's confinement and therefore must proceed as habeas

claims, which the Government contends are not viable because Abrego Garcia is not in U.S. custody. Yet Plaintiffs' claims arise under federal statutes and the U.S. Constitution, so this Court has federal-question jurisdiction. These claims challenge Abrego Garcia's *removal*, not his *confinement*, so they are not habeas claims. And even if they were, Abrego Garcia remains in U.S. custody because he is detained in El Salvador at the behest of the U.S. Government.

**Second**, the Government insists that no remedy is available. That argument is incompatible with the Supreme Court's order that this Court "properly require[d] the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018.

**Third**, the Government contends that 8 U.S.C. §1252(g) strips this Court of jurisdiction. But §1252(g) blocks review only of a limited set of "discretionary" actions. Flying a man to the one country an immigration judge ordered that he could not be removed to is not a "discretionary" action shielded by §1252(g).

This Court's power to remedy the Government's illegal removal of Abrego Garcia to El Salvador has been affirmed at every level of the Judicial Branch. The Government's latest motion offers nothing new. It should be swiftly denied, and the case should proceed without further delay.

Plaintiffs also ask that, under Local Rule 105.2(a), the Court shorten the Government's time to file a reply brief from fourteen to seven days. Further briefing on recycled arguments should not prolong a case that has already dragged on far too long for Abrego Garcia and his family.

## Background

On October 10, 2019, at the conclusion of removal proceedings, Abrego Garcia won an order granting him withholding of removal, pursuant to Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §1231(b)(3), as to El Salvador. ECF No. 1-1 at 14. The Government did not appeal that order, so it became final. ECF No. 1-5 at 2.

Since 2019, Abrego Garcia has lived with his family in Maryland, including his U.S.-citizen wife, Plaintiff Jennifer Stefania Vasquez Sura, and their three special needs children: D.T.V., X.T.V., and Plaintiff A.A.V. (all U.S. citizens). ECF No. 1 (**Complaint**) ¶24; ECF No. 1-2 ¶¶2–6, 45. He has worked full-time as a union sheet metal worker and dutifully appeared for annual check-ins with immigration authorities (most recently in January 2025). Complaint ¶¶44–45. He has never been charged with or convicted of any crime. *Id.* ¶¶46–47.

On March 12, 2025, after completing his shift, and while driving with his five-year-old, disabled son, Abrego Garcia was pulled over by ICE officers who falsely told him that his "status has changed." *Id.* ¶¶48–50. On March 15, he was illegally removed to the Terrorism Confinement Center (**CECOT**) in El Salvador. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). He has remained incarcerated in El Salvador for 79 days and counting.

On March 24, Plaintiffs filed suit and moved for a temporary restraining order. ECF Nos. 1, 2. The Complaint alleges that Abrego Garcia's removal to El Salvador violated a provision of the Immigration and Nationality Act, 8 U.S.C. §1231(b)(3)(A) (Count I); the Due Process Clause of the Fifth Amendment (Counts II & III); and the Administrative Procedure Act, 5 U.S.C. §706(2) (Count IV); and, in the alternative, it seeks habeas relief under 28 U.S.C. §2241 (Count V). Complaint ¶¶72–99. The Complaint and motion seek the same remedy: "ordering Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States." *Id.* at 21.

The Government opposed that motion, despite acknowledging that Abrego Garcia's removal to El Salvador—which violated the 2019 order that granted withholding of removal—was an "administrative error." ECF No. 11-3 ¶13 ("ICE was aware of this grant of withholding of removal at the time Abrego-Garcia's removal from the United States."); *id.* ¶15 ("Through

administrative error, Abrego-Garcia was removed from the United States to El Salvador."); Hr'g Tr., Apr. 4, 2025, at 25:13–14 ("We have nothing to say on the merits. We concede he should not have been removed to El Salvador."). Instead, the Government argued that this Court was powerless to hear the case. Specifically, the Government claimed that this Court lacks jurisdiction because Abrego Garcia's claims sound exclusively in habeas, they are not redressable, and 8 U.S.C. §1252(g) purportedly strips this Court of jurisdiction. ECF No. 12-1 at 6–14.

These jurisdictional arguments have been thoroughly rejected by every level of the federal judiciary. In its written opinion of April 6, this Court held that the Government's "jurisdictional arguments fail as a matter of law." ECF No. 31 at 2. The Fourth Circuit affirmed on April 7, calling the Government's "argument that the federal courts are powerless to intervene . . . unconscionable." *Abrego Garcia*, 2025 WL 1021113, at *1 (Thacker, J., with King, J., concurring). Three days later, on April 10, the Supreme Court ruled that this Court's preliminary injunction "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. That same day, this Court amended its preliminary injunction to direct the Government to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." ECF No. 51 at 1. The Government again appealed, and on April 17 the Fourth Circuit again affirmed, rejecting as "shocking" the Government's contention that "because it has rid itself of custody that there is nothing that can be done," and reiterating that the Government must take active steps to facilitate Abrego Garcia's return to the United States. *Abrego Garcia*, 2025 WL 1135112, at *1–2.

The Government was required to answer or otherwise respond to Plaintiffs' complaint by May 27, 2025. *See* ECF No. 162 at 1. When that day came, the Government moved for an

4

additional 30 days to respond to Plaintiffs' Complaint. *Id.* This Court promptly denied that request and ordered the Government to respond "today." ECF No. 163 at 2.

The Government responded by filing a motion to dismiss that recycles the same jurisdictional arguments this Court, the Fourth Circuit, and the Supreme Court already considered and rejected. Indeed, the Government's motion is largely a cut-and-paste job rehashing the *identical* arguments it raised in opposing Plaintiffs' motion for a temporary restraining order. *Compare* ECF No. 165 at 4–5 (arguing because "Plaintiffs make a core habeas claim, they must bring it exclusively in habeas"), *and id.* at 7 ("Here, 'Plaintiffs' injury can only be redressed by [a] foreign nation[] not before the court.'"), *and id.* at 10 (arguing "Plaintiffs' claims all arise from the government's execution of Abrego Garcia's removal order"), *with* ECF No. 12-1 at 6 (arguing because "Plaintiffs' claims fall within the historical 'core' of the writ of habeas corpus . . . they can proceed only in habeas"), *and id.* at 10 ("Here, 'Plaintiffs' injury can only be redressed by [a] foreign nation[] not before the court.'"), *and id.* at 12 ("Here, Plaintiffs' claims are challenges to the execution of his removal order . . . .").

Having lost at every level of the judiciary, the Government now improperly attempts to relitigate these same failed jurisdictional challenges rather than answer Plaintiffs' Complaint.

### Legal Standard

The Government's motion argues (at 3) that "taking all factual allegations in their Complaint as true, [Plaintiffs] fail to establish subject-matter jurisdiction." Where, as here, a "defendant [] contend[s] 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,]' . . . 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "In that situation,

the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

Argument

**I.    This Court has jurisdiction even though Abrego Garcia is not in the United States.**

The Government's lead argument is that no U.S. court could have subject-matter jurisdiction because Abrego Garcia is not in custody in the United States. According to the Government (at 3–4), "Plaintiffs' claims challenge Abrego Garcia's confinement," which Plaintiffs must pursue "exclusively in habeas," but Plaintiffs can file a habeas claim only "in the jurisdiction where Abrego Garcia is confined (El Salvador)" and "only against the immediate 'custodian' (the Warden of CECOT)."[1] The Fourth Circuit found this argument "shocking":

> The government is asserting a right to stash away residents of this country in foreign prisons without the semblance of due process that is the foundation of our constitutional order. Further, it claims in essence that because it has rid itself of custody that there is nothing that can be done.
>
> This should be shocking not only to judges, but to the intuitive sense of liberty that Americans far removed from courthouses still hold dear.

*Abrego Garcia*, 2025 WL 1135112, at *1. This Court deemed it "stunning" and "eye-popping":

> [Defendants] do indeed cling to the stunning proposition that they can forcibly remove any person—migrant and U.S. citizen alike— to prisons outside the United States, and then baldly assert they have no way to effectuate return because they are no longer the "custodian," and the Court thus lacks jurisdiction. . . .
>
> Nor do the Defendants cite any authority for this eye-popping proposition.

---

[1] It is unclear whether the statement that "the Warden of CECOT" is Abrego Garcia's "immediate 'custodian'" is an error. Over a month ago, the Government reported that Abrego Garcia "had been transferred from CECOT to the detention facility 'Centro Industrial' in Santa Ana." ECF No. 92 ¶2. The Government reiterated on May 16 that "Abrego Garcia is currently being held in . . . El Centro penitentiary in Santa Ana, El Salvador." Hr'g Tr., May 16, 2025, at 112:15–19.

ECF No. 31 at 8–9. This Court rightly rejected this argument in the last go-around as being "wrong on several fronts." ECF No. 31 at 8; *see also Noem*, 145 S. Ct. at 1019 (Sotomayor, J., statement respecting the Court's disposition of the application) ("The only argument the Government offers in support of its request, that United States courts cannot grant relief once a deportee crosses the border, is plainly wrong."). It remains equally wrong today, for at least three reasons.

*First*, this Court's jurisdiction over Plaintiffs' core claims is secure under 28 U.S.C. §1331, the federal question statute. Complaint ¶1. Plaintiffs have pleaded claims for violations of the Immigration and Nationality Act (**INA**), the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act (**APA**). Complaint ¶¶72–95. Each of these claims arises under a federal statute or the U.S. Constitution, so this Court has federal question jurisdiction under §1331. *See Biden v. Texas*, 597 U.S. 785, 798 (2022) ("Absent [a provision that potentially stripped jurisdiction], the District Court clearly had federal question jurisdiction over respondents' suit, which asserted claims arising under two federal statutes, the INA and the APA."); *Rosenfield v. Wilkins*, 280 F. App'x 275, 281 (4th Cir. 2008) (Fifth Amendment due process claims supply federal question jurisdiction).

The Government insists (at 4–5) that all these claims "*must* be brought in habeas" under *Nance v. Ward*, 597 U.S. 159, 167 (2022), *Heck v. Humphrey*, 512 U.S. 477, 480 (1994), *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973), and *Plyler v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997). Not so. This line of cases holds that an inmate's claim that "challenges the validity of a conviction or sentence," or that seeks relief that would "necessarily imply the invalidity of his conviction or sentence," must proceed in habeas. *Nance*, 597 U.S. at 167 (cleaned up). A claim that "does not go to the validity of a conviction or sentence"—such as a "prison-conditions claim" or a claim

"challenging the adequacy of a prison's medical care"—"falls outside habeas's core" and therefore need not proceed in habeas. *Id.* at 168.

Here, as the Court previously ruled, Plaintiffs' claims fall outside habeas's core. ECF No. 31 at 8. The INA, due process, and APA claims each challenge Abrego Garcia's unlawful *removal* to El Salvador, not his *confinement*. Complaint ¶¶72–95. For example, the INA claim alleges that "Defendants removed Plaintiff Abrego Garcia to El Salvador, the country from which he had been granted withholding of removal, without formally terminating his grant of withholding of removal, thus violating this law." Complaint ¶74. The procedural due process claim complains that "Defendants removed Plaintiff Abrego Garcia to El Salvador, the country from which he had been granted withholding of removal, without formally terminating his grant of withholding of removal, thus violating his procedural due process rights under the Fifth Amendment to the U.S. Constitution. Complaint ¶80. And so on. In arguing otherwise, the Government simply "ignore[s] the difference between challenging legality of *removal* as opposed to confinement." ECF No. 31 at 8. Because Plaintiffs' claims do not sound in habeas, jurisdiction is secure under §1331, and the Court "need not wade into the murky" waters of habeas jurisdiction. *Id.*

The Supreme Court has ruled that "challenges to removal under the AEA [Alien Enemies Act] . . . must be brought in habeas." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025). But that ruling was limited to the unique context of the AEA, "which largely 'preclude[s] judicial review.'" *Id.* (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163–64 (1948)). It does not apply here, where the Government did not remove Abrego Garcia under the AEA. *See* ECF No. 31 at 2 n.2 ("Defendants did not assert . . . that Abrego Garcia was . . . an 'alien enemy' under the Alien Enemies Act, 50 U.S.C. §21."). Moreover, the plaintiffs in *J.G.G.* sought to challenge a *future* removal, which would "'necessarily imply the invalidity' of their confinement,'" whereas "Abrego Garcia sued

only after he had left U.S. custody," so he is not challenging his "confinement by federal officers pending his removal" and thus his claims do not sound in habeas. *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *17 n.4 (4th Cir. May 19, 2025) (Richardson, J., dissenting).

It is true that Plaintiffs have also pleaded a habeas claim, for which jurisdiction arises under 28 U.S.C. §2241, but that claim is pleaded in the alternative, not as Plaintiffs' core legal contention. *See* Complaint ¶¶96–99. "In this context, habeas claims need not be brought to the exclusion of all other claims." ECF No. 31 at 8 n.10 (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185–86 (D.D.C. 2015)). So the alternative habeas claim does not displace this Court's federal-question jurisdiction over the INA, due process, and APA claims.

**Second**, the Government's argument is irreconcilable with the Supreme Court's order affirming that this Court's injunction "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. If the Government were right that Plaintiffs could pursue only "habeas" and that "federal courts had no jurisdiction to hear" non-habeas claims for injunctive relief, then "the Supreme Court's *Abrego Garcia* opinion had no reason to opine on whether the district court's injunction breached Article II." *J.O.P.*, 2025 WL 1431263, at *17 n.4 (Richardson, J., dissenting).

**Third**, the Government is wrong that habeas relief is unavailable just because Abrego Garcia is incarcerated in El Salvador. Habeas jurisdiction can extend beyond the borders of the United States. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 498 (1973) ("Where American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus, we have held, if only implicitly, that the petitioners' absence from the district court does not present a jurisdictional obstacle to the consideration of the claim.");

*Boumediene v. Bush*, 553 U.S. 723, 732 (2008) (extending habeas jurisdiction to aliens detained by the U.S. Government at Guantanamo Bay, Cuba).

Here, the U.S. Government retains functional control over Abrego Garcia's detention—it has simply contracted with El Salvador to be the jailer. *See* Complaint ¶¶65, 98; *see also Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring) ("[A]ll publicly available information about the Government's agreement with El Salvador indicates that the Government has outsourced part of the United States' prison system. . . . Considering these facts, and with no evidence to the contrary provided by the Government, the district court properly determined that 'just as in any other contract facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included.'") (cleaned up; quoting ECF No. 31 at 12). These plausible allegations (and findings by this Court) of functional control are all that is needed to deny the Government's motion to dismiss. *See Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 45–51 (D.D.C. 2004) (denying motion to dismiss federal habeas petition where individual plausibly alleged he was detained in Saudi Arabia as the behest of U.S. officials).

The Government's reliance on *Munaf v. Geren*, 553 U.S. 674 (2009), is backwards. In *Munaf*, the Supreme Court concluded that habeas jurisdiction *did* extend to American citizens detained in Iraq by American soldiers as part of a multinational force. *Id.* at 685–88. *Munaf* is fully consistent with extending habeas jurisdiction to Abrego Garcia, who is detained in El Salvador at the "direct request" of the U.S. Government and in exchange for "financial compensation" from the U.S. Government. Complaint ¶98. And while the Supreme Court ultimately denied the habeas petitions in *Munaf* on the merits, that was because of particular "facts" not present here, namely the petitioners had committed crimes in Iraq, so Iraq had a sovereign interest in prosecuting them. 553 U.S. at 694. The Government emphasizes (at 6) *Munaf*'s statement that "[t]he jurisdiction of

the nation within its own territory is necessarily exclusive and absolute." 553 U.S. at 694 (citation omitted). But that statement arose in the context of explaining that "Iraq has a sovereign right to prosecute Omar and Munaf for *crimes committed on its soil*." *Id.* (emphasis added). Here, El Salvador has not charged Abrego Garcia with any crime. Complaint ¶¶20, 47. It merely warehouses American detainees, so the foreign sovereign interests that warranted denial of habeas relief in *Munaf* are absent here. *See* ECF No. 31 at 9 (distinguishing *Munaf* for this reason).

The Government is also wrong that the only proper habeas defendant is Abrego Garcia's immediate custodian in El Salvador. The Government points (at 6) to *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). But the Supreme Court recognized in *Padilla* that there are exceptions to the immediate custodian rule, including that "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* at 438 (citing *Braden*, 410 U.S. at 494–95). That is the exact situation here: Plaintiffs' habeas claim challenges not Abrego Garcia's "present physical confinement" but instead the custody the U.S. Government has exerted over Abrego Garcia by illegally removing him to El Salvador and by requesting and paying El Salvador to detain him. Complaint ¶98. Indeed, the government of El Salvador has "disclaim[ed] any authority and/or responsibility to return Abrego Garcia" because it maintains that it is the U.S. Government that is calling the shots. *Abrego Garcia*, 2025 WL 1135112, at *2. Where, as here, a detainee is "held in federal detention in a non-federal facility pursuant to a contract," the detainee "should sue the federal official most directly responsible for overseeing that contract facility when seeking a habeas writ," *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017), or "the head of the agency in charge of interpretating and executing the immigration laws," *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 724 (D. Md. 2016). That is what Plaintiffs have done by suing

Secretary Noem, Secretary Rubio, and Attorney General Bondi. *See* Complaint ¶¶7, 11, 12; *see also* ECF No. 31 at 5–6, 11–12 (describing involvement by Secretary Noem and Secretary Rubio).

## II.    Plaintiffs' injuries are redressable.

The Government next argues (at 7–8) that, even though Abrego Garcia's removal was "illegal," *Noem*, 145 S. Ct. at 1018, this Court cannot redress that illegality because "Abrego Garcia is in the custody of El Salvador," not the United States, so "it is speculative that directing Defendants to facilitate Abrego Garcia's return would redress Plaintiffs' injury." That contention is wrong for at least three reasons.

*First*, it is irreconcilable with the Supreme Court's unanimous ruling that Plaintiffs' claims *are* redressable through an order that, at minimum, "requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. The Fourth Circuit elaborated that this requires "[a]ctive . . . steps be taken," beyond merely "remov[ing] any *domestic* barriers to Abrego Garcia's return." *Abrego Garcia*, 2025 WL 1135103, at *1 (cleaned up). If Plaintiffs' injuries were not redressable, then neither the Supreme Court nor the Fourth Circuit would have issued these decisions affirming the preliminary injunction entered by this Court.

The redressability requirement "is not onerous." *Deal v. Mercer Cnty. Bd. of Ed.*, 911 F.3d 183, 189 (4th Cir. 2018). Plaintiffs "need not show that a favorable decision will relieve [their] every injury" but "only [] that they personally would benefit in a tangible way from the court's intervention." *Id.* (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)). "The removal of *even one* obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Sierra Club*, 899 F.3d at 285 (emphasis added). An order requiring the Government to facilitate Abrego Garcia's return by removing both domestic

and foreign barriers—as the Supreme Court, Fourth Circuit, and this Court have ordered the Government to do—easily satisfies this standard.

*Second*, the potential or necessary cooperation of a foreign government in facilitating the return of a removed individual does not eliminate standing. Any time someone is wrongfully removed, a foreign country is involved. That is inherent in removals. Yet the Supreme Court has recognized that wrongfully removed individuals can be "afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal," just like Plaintiffs request here. *Nken v. Holder*, 556 U.S. 418, 435 (2009); Complaint ¶¶77, 83, 89, 95, 99 (seeking that "Defendants [] take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States"). The Fourth Circuit and other courts routinely order the Government to facilitate the return of certain removed individuals. *E.g.*, *J.O.P*, 2025 WL 1431263, at *1 (denying stay of district court order to facilitate return of non-citizens removed in violation of a settlement agreement); *Ramirez v. Sessions*, 887 F.3d 693, 707 (4th Cir. 2018) (directing Government "to facilitate Ramirez's return to the United States" from El Salvador); *Gordon v. Barr*, 965 F.3d 252, 261 (4th Cir. 2020) (similar); *Nunez-Vasquez v. Barr*, 965 F.3d 272, 287 (4th Cir. 2020) (directing Government "to return Nunez-Vasquez to the United States"); *Orabi v. Att'y Gen.*, 738 F.3d 535, 543 (3d Cir. 2014) (similar); *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2025 WL 1487238, at *1, *7 (D. Mass. May 23, 2025) (noting "[c]ourts, including district courts, regularly find that return is the appropriate remedy when a removal is found to be unlawful" and ordering to the Government to "take all immediate steps . . . to facilitate the return of O.C.G. to the United States"); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 105 (D.D.C. 2018) ("order[ing] the government to return to the

United States the plaintiffs who were unlawfully deported"), *aff'd in relevant part, rev'd in part and remanded sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020).

And in many other cases the Government has facilitated the return of wrongfully removed individuals "as a matter of course," even when such efforts require extraterritorial conduct. ECF No. 31 at 10; *see, e.g., D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2025 WL 1142968, at *15 n.34 (D. Mass. Apr. 18, 2025) ("Defendants acknowledge that there are procedures to compel the return of illegally remov[ed] individuals."); *Grace v. Whitaker*, No. 1:18-cv-01853-EGS (D.D.C. 2018), ECF No. 113 (working with the governments of El Salvador and Honduras to ensure that wrongly-deported detainees obtain necessary documents to return to the United States); *J.L. v. Cuccinelli*, No. 18-cv-04914-NC (N.D. Cal. Feb. 20, 2020), ECF Nos. 282, 282-1 (describing "extraordinary measures" the Government undertook to "facilitate R.M.N.'s return to the United States" despite "the complicated interplay between U.S. and Guatemalan policy" regarding travel policies during the onset of the COVID-19 pandemic); *Hamama v. Adducci*, No. 2:17-cv-11910 (E.D. Mich. Jan. 15, 2019), ECF No. 513 (order noting the Government's agreement to "rectify" an unlawful deportation by, among other things, coordinating with foreign government officials).

Consistent with this precedent and historical practice, Plaintiffs seek to have the Government take all available steps, in good faith, to facilitate Abrego Garcia's return. *See* Complaint ¶¶77, 83, 89, 95, 99 (requesting "Defendants [] take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States"); ECF No. 51 (requiring "Defendants take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible"); *Abrego Garcia*, 2025 WL 1135112, at

*1–2 (explaining "facilitation" requires the Government take "active . . . steps" beyond removing "domestic" barriers).

There can be no serious doubt that Defendants' "tak[ing] all available steps," in good faith, "to facilitate the return" of Abrego Garcia would "remov[e] [] even one obstacle" to Abrego Garcia's return. *Sierra Club*, 899 F.3d at 285. But Defendants have to try. And to date, there is no indication that they have. *E.g.*, Hr'g Tr., May 16, 2025, at 63:18–20 ("The whole reason we're here is because I've said repeatedly you've done nothing, and now you tell the world you're not going to do anything[.]"); ECF No. 61 at 2 ("[C]ounsel could not confirm, and thus did not advance *any* evidence, that Defendants had done anything to facilitate Abrego Garcia's return.") (emphasis in original). Notably, history shows that when the Government makes good faith efforts to facilitate someone's return, it succeeds. *E.g.*, *Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) ("DHS . . . deported [Anaya] to Mexico," where he "remained . . . until . . . DHS returned him to the United States pursuant to [the] court's order to bring him back."). Defendants' "refusal" to seek Abrego Garcia's return in good faith, while simultaneously claiming his return is out of their hands, "does not negate redressability." ECF No. 31 at 12.

***Third***, contrary to the U.S. Government's claims (at 8), it retains functional control over Abrego Garcia, which further contributes to its ability to facilitate his return. *See* pages 10–11, above. The "Government of El Salvador is detaining Plaintiff Abrego Garcia *at the direct request of Defendants*, and *at the financial compensation of Defendants*." Complaint ¶98 (emphasis added); *see also id.* ¶65 ("ICE and DHS has paid or continues to pay the Government of El Salvador six million dollars in order for the Government of El Salvador to detain these individuals, including Plaintiff Abrego Garcia."). Indeed, as this Court and the Fourth Circuit previously recognized, the Government's agreement with El Salvador indicates "the Government has

outsourced part of the United States' prison system" to El Salvador, *Abrego Garcia*, 2025 WL 1021113, at *4 (Thacker, J., with King, J., concurring) (cleaned up), "without ceding control over the detainee's fates," ECF No. 31 at 11–12. And "just as in any other contract facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included." *Id.* at 12.

For this reason, the Government's reliance (at 8) on *Lin v. United States*, 690 F. App'x 7, 8–9 (D.C. Cir. 2017), is misplaced. There, the court held that a claim was not redressable where it sought a declaration that decrees by the Republic of China "stripp[ing]" plaintiffs of their Japanese citizenship were unlawful. *Id.* at 8. Because "[s]overeign nations control their own citizenship," a declaration from a U.S. court could not affect plaintiffs' loss of Japanese citizenship, so their injury was not redressable by a U.S. court. *Id.* at 9. But here, the U.S. Government unlawfully removed Abrego Garcia to El Salvador in the first place, and El Salvador is detaining Abrego Garcia at the U.S. Government's "direct request" in exchange for a fee. Complaint ¶98. So unlike *Lin*, an order by this Court can redress Plaintiffs' injuries by facilitating his return to the United States.

## III.    8 U.S.C. §1252(g) does not deprive this Court of jurisdiction.

The Government's final argument (at 9) is that "this Court lacks jurisdiction to review Defendants' removal of Abrego Garcia under 8 U.S.C. §1252(g)." Both the Fourth Circuit and this Court previously rejected this argument as a matter of law. *See Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring) ("§1252(g) does not strip us of jurisdiction here"); ECF No. 31 at 15 ("Section 1252(g) does not deprive the Court of jurisdiction over the claims."). The Government's argument should therefore be dismissed out of hand.

If this Court re-entertains the Government's argument, it should reject it once again. Section 1252(g) provides in pertinent part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). This jurisdictional bar "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting §1252(g); emphasis in *American-Arab Anti-Discrimination Committee*). And it applies to those actions only when they are taken "under this chapter"—*i.e.*, under Title 8, Chapter 12—and not to removals that are "not part of Title 8, Chapter 12." *J.G.G. v. Trump*, 2025 WL 914682, at *28 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring), *rev'd on other grounds by Trump v. J.G.G.*, 145 S. Ct. 1003 (2025). The Government argues (at 9) that §1252(g)'s jurisdictional bar applies because the third type of discrete action—the decision to "execute removal orders . . . under this chapter"—is at issue here. That is wrong for at least two reasons.

**First**, the Government was not executing a removal order under Title 8, Chapter 12, when it removed Abrego Garcia to El Salvador in March 2025. The Government has not produced any "documents which reflect *any* authority, lawful or otherwise, to transfer [Abrego Garcia] to El Salvador. ECF No. 31 at 18. That is because there is no order authorizing Abrego Garcia's removal to El Salvador under Title 8, Chapter 12. In 2019, Abrego Garcia was granted *withholding* of removal to El Salvador under 8 U.S.C. §1231(b)(3)(A). Complaint ¶41; ECF No. 1-1; ECF No. 31 at 3–4. That withholding order remains in force. Complaint ¶62. Section 1231(b)(3)(A) is part of Title 8, Chapter 12. Thus, under Title 8, Chapter 12, the Government "may not" remove Abrego Garcia to El Salvador. ECF No. 31 at 17–18 (citing 8 C.F.R. §§208.22, 1208.22).

Because the Government was not executing a removal order under Title 8, Chapter 12, the jurisdictional bar of §1252(g) is inapplicable. *See Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring) ("The removal was not the enforcement of a valid order of

17

removal."); ECF No. 31 at 14 ("[T]he Court cannot credit that Defendants removed Abrego Garcia pursuant to an 'executed removal order' under the INA."); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 865 (6th Cir. 2022) (§1252(g) is inapplicable "when a removal order is not subject to execution").

**Second**, even if there were a removal order under Title 8, Chapter 12, this Court would still have jurisdiction. Section 1252(g) "stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her *discretion* to initiate or prosecute these specific stages in the deportation process." *Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999) (emphasis added); ECF No. 31 at 13 (collecting cases). The provision does not foreclose challenges raising a *non-discretionary* bar to removal: "Where the Attorney General totally lacks the discretion to effectuate a removal order, §1252(g) is simply not implicated." *Arce*, 899 F.3d at 801. Courts have therefore concluded that §1252(g) does not erase jurisdiction over challenges to the "lawfulness" of the Government's non-discretionary removal-related actions, *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023), including challenges that arise under "statutes," *Bowrin*, 194 F.3d at 488, and challenges that are "constitutional" in nature, *Madu v. Attorney General*, 470 F.3d 1362, 1368 (11th Cir. 2006).

Here, the order barring Abrego Garcia's removal to El Salvador was mandatory, not discretionary, so §1252(g) does not apply. Indeed, the Supreme Court has found, and the Government has conceded, that Abrego Garcia's removal was illegal: "The United States acknowledges that Abrego Garcia was subject to a withholding order forbidding his removal to El Salvador, and that the removal to El Salvador was therefore illegal." *Noem*, 145 S. Ct. at 1018; *accord, e.g.*, *Abrego Garcia*, 2025 WL 1135112, at *1 ("[T]he government has conceded that Abrego Garcia was wrongly or 'mistakenly' deported."); ECF No. 31 at 4 ("[A]s Defendants have

repeatedly admitted, they were legally prohibited from deporting Abrego Garcia to El Salvador."). Because Abrego Garcia's removal was "plainly in violation of §1231(b)(3)(A)" and "not an action undertaken within the Attorney General's discretion, §1252(g) does not strip [the Court] of jurisdiction here." *Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring).

The Government insists (at 10) that Abrego Garcia was removed "pursuant to a lawful removal order" because the withholding of removal was limited to El Salvador, and the Government maintains that it could have removed Abrego Garcia to a third country. That is wrong. The Government could not have removed Abrego Garcia to a third country without providing the notice and following the procedures required by law, which include giving Abrego Garcia a meaningful opportunity to contest the third-country removal. *See D.V.D.*, --- F. Supp. 3d ----, 2025 WL 1142968, at *3, *19–22, *24 (cataloguing the law governing removals to third countries and entering preliminary injunction that bars such removals unless certain notice is provided and specified procedures are followed, including providing a "meaningful opportunity" to raise certain challenges to the third-country removal), *amended*, No. 1:25-cv-10676, ECF No. 86 (D. Mass. Apr. 30, 2025), *clarified*, 2025 WL 1323697 (D. Mass. May 7, 2025), *emergency motion for stay denied*, No. 25-1393 (1st Cir. May 16, 2025), *further clarified*, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied*, --- F. Supp. 3d ----, 2025 WL 1495517 (D. Mass. May 26, 2025), *application for stay submitted*, No. 24A1153 (U.S. May 27, 2025).

In any event, Abrego Garcia was *not* removed to a third country—he was removed to El Salvador. That removal was indisputably "illegal." *Noem*, 145 S. Ct. at 1018.

## Conclusion

The Court should deny the Government's motion to dismiss and should shorten the time for the Government to file its reply from fourteen days to seven days.

Dated: June 2, 2025

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

*/s/ Jonathan G. Cooper*
**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
**admitted in Texas; not admitted in D.C.*
*Supervised by attorney admitted in D.C.*

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Plaintiffs*