# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

|  |  |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, Secretary of Homeland Security, et al., <br><br> *Defendants.* | No. 8:25-CV-00951-PX |

## DEFENDANTS' SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' AMENDED FIRST SET OF INTERROGATORIES

Defendants object and respond to Plaintiffs' Amended First Set of Interrogatories ("Interrogatories") in accordance with Federal Rules of Civil Procedure 26 and 33, Local Rule 104, and the Court's Order Granting Expedited Discovery ("Order") (Dkt. 79).

### PRELIMINARY STATEMENT

Defendants have made a diligent and good faith effort to obtain information that is responsive to the Interrogatories. Defendants' responses are based on their knowledge, information, and documents acquired and reviewed to date. Importantly, these interrogatory responses contain confidential and attorney's eyes only information, as defined by the protective order in this case, and are subject to the protective order entered in the case.

1

Defendants' objections and responses shall not be deemed to constitute admissions that (a) information or any document or thing exists or is relevant, non-privileged, or admissible in evidence; or (b) any statement or characterization by Plaintiffs in the Interrogatories is accurate or complete.

**OBJECTION TO DEFINITIONS**

"**You**" and "**Your**." Defendants object to Plaintiffs' definition of "You" and "Your" and will construe those words in the context of Plaintiffs' Interrogatories as meaning the person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives. This objection is incorporated into each of Defendants' responses to the Interrogatories.

**OBJECTIONS AND RESPONSES TO AMENDED INTERROGATORIES**

**Interrogatory No. 1**: Describe with particularity each action You have already taken, and when, to Facilitate Abrego Garcia's release from custody in El Salvador.

**Defendants' Response to Interrogatory No. 1**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 1 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 1 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El Salvador and the

2

SBU - LEGAL

content of discussions with individuals in the government of El Salvador regarding efforts to facilitate Mr. Abrego Garcia's release from custody. Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm to the United States' foreign affairs and national security interests.

Defendants also object to Interrogatory No. 1 to the degree it calls for information relating to the Defendants' deliberative processes. Defendants will share one or more declarations invoking that privilege at the appropriate time.

Subject to the foregoing objections and assertions of privilege, Defendants respond as follows: Before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers. After the Fourth Circuit's clarification, the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia, including direct communication by the Secretary of State with the President of El Salvador.

**Interrogatory No. 2**: Describe with particularity each action You have already taken, and when, to Facilitate Abrego Garcia's return to the United States.

**Defendants' Response to Interrogatory No. 2**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include

3

"person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 2 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 2 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El Salvador and the content of discussions with individuals in the government of El Salvador regarding efforts to facilitate Mr. Abrego Garcia's return to the United States. Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm to the United States' foreign affairs and national security interests.

Defendants also object to Interrogatory No. 2 to the degree it calls for information relating to the Defendants' deliberative processes. Defendants will share one or more declarations invoking that privilege at the appropriate time.

Subject to the foregoing objections and assertion of privileges, Defendants respond as follows:

1.    Subject to the foregoing objections and assertions of privilege, Defendants respond as follows: Before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers.  After the Fourth Circuit's clarification, the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia,

SBU - LEGAL

including direct communication by the Secretary of State with the President of El Salvador.

2.      DHS has long-established processes for taking steps to remove domestic obstacles that would otherwise prevent an alien from lawfully entering the United States. In this case, DHS is prepared to facilitate Abrego Garcia's presence in the United States in accordance with those processes if he presents at a port of entry. For instance, rather applying routine obstacles to prevent an alien like Mr. Abrego Garcia from illegally reentering the United States, ICE Enforcement and Removal Operations (ERO) would coordinate air transportation, either via charter or commercial airline, to facilitate Abrego Garcia's return to the United States and ICE would facilitate the issuance of any necessary documents to facilitate that travel. If Abrego Garcia does present himself at a port of entry, he would become subject to detention by DHS. In that case, DHS would take him into custody in the United States and either remove him to a third country or seek to terminate his withholding of removal because of his membership in MS-13, a designated foreign terrorist organization, and remove him to El Salvador.

**Interrogatory No. 3**: Describe with particularity each action You plan to take in the future, and when, to Facilitate Abrego Garcia's release from custody in El Salvador.

**Defendants' Response to Interrogatory No. 3**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include

5

"person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 3 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 3 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El Salvador and the content of discussions with individuals in the government of El Salvador regarding efforts to obtain Mr. Abrego Garcia's release from custody in El Salvador. Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm to the United States' foreign affairs and national security interests.

Defendants also object to Interrogatory No. 3 to the degree it calls for information relating to the Defendants' deliberative processes. Defendants will share one or more declarations invoking that privilege at the appropriate time.

Subject to the foregoing objections and assertions of privilege, Defendants respond as follows: Before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers. After the Fourth Circuit's clarification, the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia, including direct communication by the Secretary of State with the President of El Salvador.

6

**Interrogatory No. 4**: Describe with particularity each action You plan to take in the future, and when, to Facilitate Abrego Garcia's return to the United States.

**Defendants' Response to Interrogatory No. 4**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 4 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 4 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El Salvador and the content of discussions with individuals in the government of El Salvador regarding efforts to facilitate Mr. Abrego Garcia's return to the United States. Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm to the United States' foreign affairs and national security interests.

Defendants also object to Interrogatory No. 4 to the degree it calls for information relating to the Defendants' deliberative processes. Defendants will share one or more declarations invoking that privilege at the appropriate time.

Subject to the foregoing objections and assertions of privilege, Defendants respond as follows:

7

1.    Before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers. After the Fourth Circuit's clarification, the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia, including direct communication by the Secretary of State with the President of El Salvador.

2.    DHS has long-established processes for taking steps to remove domestic obstacles that would otherwise prevent an alien from lawfully entering the United States. In this case, DHS is prepared to facilitate Abrego Garcia's presence in the United States in accordance with those processes if he presents at a port of entry. For instance, rather applying routine obstacles to prevent an alien like Mr. Abrego Garcia from illegally reentering the United States, ICE Enforcement and Removal Operations (ERO) would coordinate air transportation, either via charter or commercial airline, to facilitate Abrego Garcia's return to the United States and ICE would facilitate the issuance of any necessary documents to facilitate that travel. If Abrego Garcia does present himself at a port of entry, he would become subject to detention by DHS. In that case, DHS would take him into custody in the United States and either remove him to a third country or seek to terminate his withholding of removal because of his membership in MS-13, a designated foreign terrorist organization, and remove him to El Salvador.

SBU - LEGAL

**Interrogatory No. 5**: Identify and describe the role of each individual who has been involved, or whom You anticipate will become involved, in any of the actions responsive to Interrogatory Nos. 1–4 or in ordering or authorizing Abrego Garcia's removal to El Salvador, his initial placement in CECOT, or his continued confinement in CECOT.

**Defendants' Response Interrogatory No. 5**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Subject to the foregoing objection, Defendants respond as follows:

1. The following individuals from the State Department were involved in activities related to actions responsive to Interrogatories 1-4: Secretary Marco Rubio, in his capacity as Secretary of State; Ambassador Michael Kozak, in his capacity as Senior Bureau Official for the Bureau of Western Hemisphere Affairs; Ambassador William Duncan, in his capacity as the U.S. Ambassador to El Salvador; and Mauricio Claver-Carone, in his former capacity as the Secretary of State's Special Envoy for Latin America.

2. The following individuals from DHS are the operational employees who may have been involved in Abrego Garcia's removal to El Salvador: Robert Cerna, Acting Field Office Director, Harlingen Field Office; Matthew Ochoa, Assistant Field Office Director/Chief of Staff, San Antonio; Gerald Handley, Homeland Security

9

Investigations; Orlando Torres, ERO Supervisory Detention and Deportation Officer; Bryan Zepeda, Deportation Officer; Ramon Mendez, Deportation Officer; Doroteo Cisneros, Deportation Officer; Ramon Sandoval, Deportation Officer; Jason L. Feliciano, Deportation Officer; Kristian Bahamundi Gonzalez, Deportation Officer; Kristian Dominguez, Deportation Officer; Heriberto Dominguez, Deportation Officer; Florentino Villanueva, Deportation Officer; Samuel L. Leal, Deportation Officer; Roberto Harnandez Jr. , Deportation Officer; Jose G. Alvarado, Deportation Officer; Michael De La Fuente, ICE Air Operations Deportation Officer; Francisco M. Garza, ICE Air Operations Deportation Officer; Efrain Carmona, ICE Air Operations Deportation Officer; Sotero Cepeda, ICE Air Operations Deportation Officer. The following individuals from DHS may be involved in facilitating Abrego Garcia's presence in the United States if he presents at a port of entry: Mellissa Harper, Acting Assistant Director, Removal; Christopher George, Deputy Assistant Director; Guadalupe Serna, Deputy Attaché for Removal; Barrett McDaniel, Country Attaché; Matthew Elliston, Deputy Assistant Director, Field Operations; Jamison Matuszewski, Executive Deputy Assistant Director; Katrina Kane, Deputy Assistant Director, Removal; Richard Cordova, Supervisory Detention and Deportation Officer; Vernon Liggins, Deputy Field Office Director' Clayton Wright, Unit Chief, Homeland Security Investigations Witness Security and Joint Parole Operations Division; Crystal Williams, Parole Program Specialist; and Melina Jackson, Immigration Officer.

10

3.      Defendants address questions Plaintiffs have posed concerning Defendants' response to this Interrogatory: (1) This is Defendants' complete list of DHS operational employees who may have been involved in Abrego Garcia's removal in response to Interrogatory No. 5 according to Defendants' understanding of the word "involved"; (2) Defendants have not withheld any names from this list on the basis of any privilege; and (3) this response is made by the State Department, DHS, ICE, and DOJ.  Defendants note that DOJ, itself, plays no specific role in removal or return or the efforts to facilitate removal or return other than in its role as attorney, therefore is not likely to have information beyond that protected by the attorney-client privilege and attorney work product doctrine.

**Interrogatory No. 6**: Describe with particularity each request for Abrego Garcia's release from custody in El Salvador that You conveyed to anyone in the government of El Salvador or at CECOT, including when, in what form, by whom, and to whom.

**Defendants' Response to Interrogatory No. 6**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants further object to Interrogatory No. 6 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 6 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El

11

Salvador and the content of discussions with individuals in the government of El Salvador regarding Mr. Abrego Garcia's release from custody in El Salvador. Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm to the United States' foreign affairs and national security interests.

Subject to the foregoing objections and assertions of privilege, Defendants respond as follows: Before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers. After the Fourth Circuit's clarification, the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia, including direct communication by the Secretary of State with the President of El Salvador.

**Interrogatory No. 7**: Describe with particularity each Communication You have had with anyone in the government of El Salvador or at CECOT concerning Abrego Garcia, including when, in what form, by whom, and to whom.

**Defendants' Response to Interrogatory No. 7**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants further object to Interrogatory No. 7 to the extent it calls for the disclosure of state secrets. Specifically, Interrogatory No. 7 calls for the disclosure of information regarding the details of the United States' diplomatic outreach to El Salvador and the content of discussions with individuals in the government of El Salvador regarding Mr. Abrego Garcia.  Pursuant to the May 5 and 23 declarations by Secretary of State Marco Rubio, Defendants assert that such information is protected by the state secrets privilege because it is highly sensitive, and its disclosure reasonably could be expected to cause significant harm the United States' foreign affairs and national security interests.

Defendants object to Interrogatory No. 7 to the degree it calls for information relating to the Defendants' deliberative processes. Defendants will share one or more declarations invoking that privilege at the appropriate time.

Subject to the foregoing objections and assertions of privilege, Defendants respond as follows: Regarding the location and custodial status of Mr. Abrego Garcia, on April 4, the U.S. Ambassador to El Salvador had a conversation with a representative of the Government of El Salvador who told the Ambassador Abrego Garcia was being held at CECOT. On April 17, a representative of the Government of El Salvador contacted the U.S. Ambassador to El Salvador to arrange a meeting between U.S. Senator Van Hollen and Abrego Garcia, as requested by Senator Van Hollen. Following several communications between the Ambassador and the representative of the Government of El Salvador regarding timing and logistics, the meeting occurred that same day. On April 20 and 21, the Ambassador requested an

13

update on the physical location and custodial status of Mr. Abrego Garcia. The Salvadoran government responded on April 21 that he is being held at the Centro Industrial penitentiary facility in Santa Ana, in good conditions and in an excellent state of health. On April 29, the U.S. Ambassador received information from the Salvadoran government confirming that Mr. Abrego Garcia remains at the Centro Industrial penitentiary in Santa Ana and remains in good condition and health.  On May 15 and May 30, the U.S. Ambassador again received information from the Salvadoran government confirming that Mr. Abrego Garcia remains at the Centro Industrial penitentiary and remains in good condition and health.

**Interrogatory No. 8**: Describe with particularity the legal basis for Abrego Garcia's continued confinement in CECOT.

**Defendants' Response to Interrogatory No. 8**:

Defendants respond as follows:  Mr. Abrego Garcia is no longer confined at CECOT but has instead been housed since at least mid-April in the Centro Industrial penitentiary in Santa Ana, El Salvador. To the extent Interrogatory No. 8 suggests that the Defendants have any legal basis for or authority over Mr. Abrego Garcia's continued confinement, the Defendants did not request that El Salvador detain Mr. Abrego Garcia and the Defendants neither have nor exercise any authority over his continued detention. However, to the extent that Interrogatory No. 8 asks for the Defendants' understanding of the basis for his continued confinement, Mr. Abrego Garcia is detained pursuant to the sovereign, domestic authority of El Salvador.

14

**Interrogatory No. 9**: Describe with particularity the terms of any agreement, arrangement, or understanding between the governments of the United States and El Salvador related to removal and confinement in El Salvador of Abrego Garcia and any other individuals who were transported with him on March 15, 2025, including any rights the government of the United States has concerning Abrego Garcia and any other individuals who were transported with him on March 15, 2025.

**Defendants' Response to Interrogatory No. 9**:

Defendants object to Interrogatory No. 9 as based on the premise that the United States may exercise authority over Salvadoran citizens detained by El Salvador within the sovereign territory and pursuant to the domestic law of El Salvador.

Subject to the foregoing objections, Defendants respond as follows:

The Government of El Salvador has for many years cooperated with the United States in receiving citizens of El Salvador removed from the United States. It has done so based on its recognition of its responsibility as a sovereign state to accept the return of its own citizens, not on the basis of any agreement negotiated with the Government of the United States. The Government of El Salvador has determined whether Salvadorans returned should be incarcerated or not based on its own domestic legal authorities.  The United States has not conditioned the removal of any citizen of El Salvador—including Mr. Abrego Garcia—on a commitment to incarcerate such individuals.  The United States has entered into arrangements involving the removal of specific individuals wanted by the legal

SBU - LEGAL

authorities of El Salvador. Mr. Abrego Garcia is not one of the individuals subject to any of these arrangements.

The United States and El Salvador have also entered into arrangements concerning the removal to El Salvador of third country nationals and these arrangements are likewise not applicable to Mr. Abrego Garcia. Furthermore, pursuant to pursuant to Federal Rule of Civil Procedure 33(d), Defendants refer to KAAG-Noem-0000001569–0000001573. The only portion of that arrangement that applies to Mr. Abrego Garcia is the portion of the March 31 diplomatic note that confirms that all Tren de Aragua and MS-13 persons removed to El Salvador will be covered by El Salvador's assurance of compliance with its domestic and international legal obligations, including under the Convention Against Torture. There is no other agreement or arrangement with El Salvador—and at the time of Mr. Abrego Garcia's removal to El Salvador, there was no such agreement or arrangement with El Salvador, nor did the U.S. government believe any such agreement or arrangement existed—related to the removal or confinement of Mr. Abrego Garcia.

**Interrogatory No. 10**: Identify and describe the role of each individual involved in negotiating or approving any agreement, arrangement, or understanding responsive to Interrogatory No. 9.

**Defendants' Response to Interrogatory No. 10**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include

16

"person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Subject to the foregoing objection, Defendants respond as follows: The following individuals from the State Department were involved in negotiating or approving arrangements between the US and El Salvador: Secretary Marco Rubio, in his capacity as Secretary of State; Counselor Michael Needham, in his capacity as Chief of Staff to the Secretary of State; Ambassador Michael Kozak, in his capacity as Senior Bureau Official for the Bureau of Western Hemisphere Affairs; Ambassador William Duncan, in his capacity as the U.S. Ambassador to El Salvador; and Mauricio Claver-Carone, in his former capacity as the Secretary of State's Special Envoy for Latin America. However, as noted in the response to Interrogatory No. 9, such arrangements were not applicable to Mr. Abrego Garcia.

**Interrogatory No. 11**: List each payment that has been, or will be, made or withheld in connection with any agreement, arrangement, or understanding responsive to Interrogatory No. 9, including when each payment was or will be made or withheld, in what amount, by whom, to whom, and from what source.

**Defendants' Response to Interrogatory No. 11**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

17

Subject to the foregoing objection, and pursuant to Federal Rule of Civil Procedure 33(d), the United States provided a lump sum to El Salvador under a March 22 grant agreement for law enforcement or anticrime purposes, which El Salvador can use, in its discretion, for accommodating Tren de Aragua members. Defendants refer in this regard to KAAG-Noem-0000001556–0000001559 and KAAG-Noem-0000001574–0000001577. The United States is considering one further grant for these purposes. Otherwise, there are no other plans for future payments. Defendants also note that El Salvador has not requested nor received any payments or assistance in connection with the return of its own citizens, including Mr. Abrego Garcia.

**Interrogatory No. 12**: Describe with particularity each instance since 2015 in which You removed or deported a person to El Salvador and later undertook efforts to Facilitate that person's return to the United States (*e.g.*, ECF No. 31 at 5 n.7; Defendants' Status Update in *Grace v. Sessions*, No. 1:18-cv-01853-EGS (D.D.C. Jan. 11, 2019), ECF No. 113).

**Defendants' Response to Interrogatory No. 12**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 12 because the identification of all cases since 2015 in which DHS removed or deported a person to El Salvador and later

undertook efforts to Facilitate that person's return to the United States would be unduly burdensome, as this information is not tracked centrally and would require individual case assessments and manual review of cases pre-2023. DHS Homeland Security Investigations (HSI) Witness Security and Joint Parole Operations Division has determined that it would need eight (8) months to review more than 10,000 Law Enforcement Significant Public Paroles to attempt to answer how many aliens who were removed later needed to be returned to the United States.

Subject to the foregoing objections, Defendants respond as follows: Following a diligent search and reasonable inquiry, DHS ICE ERO was able to identify two instances where an alien was removed to El Salvador and later returned to the United States. In September 2019, the first individual was in custody of the Salvadoran authorities and returned once his case was dismissed (after approximately one year); the individual had outstanding warrants in El Salvador for homicide, criminal organization/gang membership and gang member/gang activity. Once he was in the custody of the Salvadoran Government, ERO relied on other federal departments to relay information on the individual and his Salvadoran proceedings. Once he was released from Salvadoran custody, ERO facilitated his return to the United States. In the second instance, occurring in 2024, the individual was not in Salvadoran custody following her removal. She was later paroled into the United States and returned to ICE detention.

19

SBU - LEGAL

**Interrogatory No. 13**: Describe with particularity each instance since 2015 in which You undertook extraterritorial efforts to Facilitate the return to the United States of any removed or deported individual.

**Defendants' Response to Interrogatory No. 13**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "You," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Defendants object to Interrogatory No. 13 because the size and scope of the request is unduly burdensome for the reasons cited in Interrogatory No. 12.

Subject to the foregoing objections, Defendants respond as follows:  Defendants refer Plaintiffs to Defendants' response to Interrogatory No. 12.

**Interrogatory No. 14**: Describe with particularity the complete factual basis for Your assertions that Abrego Garcia "is a member of MS-13" (*e.g.*, ECF No. 77-1 at 12), including by identifying the source of that information.

**Defendants' Response to Interrogatory No. 14**:

Defendants hereby incorporate the general objection to the Plaintiffs' definition of "Your," and will confine their understanding of the term to include "person(s) to whom the Interrogatories are addressed, and all that person's agents and representatives."

Subject to the foregoing objection, Defendants respond as follows: DHS ICE ERO is aware of information contained in Mr. Abrego Garcia's I-213, which identified

SBU - LEGAL

Mr. Abrego Garcia as MS-13. The information regarding Mr. Abrego Garcia's MS-13 membership contained in the I-213 originated from Prince Georges County Police's "Gang Field Interview Sheet" from the year 2019:

- On March 28, 2019, Prince George's County Police Department (PGPD) arrested Mr. Abrego Garcia with Christhyan Fernando Hernandez Romero and Jose Guillermo Dominguez outside of a Home Depot in Hyattsville, Maryland, in connection to a murder investigation. *See* ICE E-ROP at 746-48; DHS Form I-213 Record of Deportable / Inadmissible Alien.

- ICE and PGPD identified Mr. Abrego Garcia as an active member of MS-13 in the Westerns clique, possessing the rank of Chequeo, and identified by the gang moniker "Chele." *See id.* E-ROP at 750-51; PGPD Gang Interview Field Sheet. This information was provided to PGPD by a confidential human intelligence source considered to be "past proven and reliable[.]" *See* E-ROP at 751. Based on information and belief, a Chequeo is a senior-level associate member of MS-13.

- Symbolism on Mr. Abrego Garcia's attire was also consistent with gang symbolism espoused by active members of MS-13, including a black and white baseball cap with a plain Chicago Bulls logo and a sweatshirt with rolls of money covering the ears, eyes, and mouths of past U.S. presidents. The plain Chicago Bulls logo is frequently worn by MS-13 members as a reflection of a horned demon. The imagery on Mr. Abrego Garcia's sweatshirt incorporated

21

SBU - LEGAL

the known MS-13 theme of "*ver, oir y callar*" or "see no evil, hear no evil and say no evil." *See id.*

- PGPD also identified Mr. Abrego Garcia's two associates, Hernandez Romero and Dominguez, as known members of MS-13. *See id.*

The immigration judge in Mr. Abrego Garcia's 2019 bond hearing ruled that the evidence showed that he is a member of MS-13. The Board of Immigration Appeals affirmed that finding, concluding that he is a member of MS-13.

Based on a review of court records, DHS is aware that, in August of 2018, Edwin Trejo Ramos, ex-husband of Mr. Abrego Garcia's wife (Jennifer Vasquez), filed an emergency motion in a custody lawsuit alleging that he is scared for her kids because she is dating a gang member. Based on information and belief, Jennifer Vasquez began dating Mr. Abrego Garcia in 2018.

DHS has additional knowledge based on review of local law enforcement reports: Based on information from the Tennessee Highway Patrol, Mr. Abrego Garcia was pulled over on November 30, 2022, while driving a Chevrolet Suburban registered to Jose Ramon Hernandez Reyes, who had been previously convicted of alien smuggling. Based on information obtained from a confidential law enforcement source, Mr. Hernandez Reyes had previously attempted to contact MS-13 to arrange passage through Mexico while smuggling 100 kilos of cocaine into the United States. According to a law enforcement sensitive summary of the Tennessee incident obtained through a collaborative law enforcement partnership, "there were eight other individuals in the vehicle with" Mr. Abrego Garcia, who said he was driving

22

SBU - LEGAL

from Houston to Temple Hills, MD to bring in people to perform construction work. According to that same summary, "[t]here was no luggage in the vehicle, leading the encountering officer to suspect this was a human trafficking incident. All the passengers gave the same home address as the subject's home address. During the interview, subject pretended to speak less English than he was capable of and attempted to put encountering officer off-track by responding to questions with questions. When asked what relationship he had with the registered owner of the vehicle, subject replied that the owner of the vehicle is his boss."

DHS is also aware of a photo of Mr. Abrego Garcia posted by the President of El Salvador reflecting the following tattoos on Mr. Abrego Garcia's knuckles: images of a marijuana leaf, smiley face, cross and skull.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

/s/ Drew Ensign
**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-2000
drew.c.ensign@usdoj.gov

**Ernesto Molina**
Deputy Director
Office of Immigration Litigation

Dated: May 30, 2025                 *Counsel for Defendants–Appellant*

SBU - LEGAL

## VERIFICATION OF INTERROGATORY ANSWERS

I, Michael G. Kozak, am Senior Bureau Official in the Bureau of Western Hemisphere Affairs, United States Department of State. I believe, based on personal knowledge and reasonable inquiry, that the following Interrogatory answers—Defendants' Responses to Interrogatory Nos. 1, 2.1, 3, 4.1, 5.1, 6, 7, 8, 9, 10, and 11—are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2025.


**Michael G. Kozak**

## VERIFICATION OF INTERROGATORY ANSWERS

I, Robert L. Cerna, am Acting Field Office Director of Enforcement and Removal Operations at U.S. Immigration and Customs Enforcement within the U.S. Department of Homeland Security. I believe, based on personal knowledge and reasonable inquiry, that the following Interrogatory answers—Defendants' Responses to Interrogatory Nos. 5 and 12, to the extent they provide information on behalf of ICE ERO, and 14—are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2025.

ROBERT L CERNA II  
Digitally signed by ROBERT L CERNA II  
Date: 2025.05.16 10:27:41 -05'00'

**Robert L. Cerna**

## VERIFICATION OF INTERROGATORY ANSWERS

I, Mellissa B. Harper, am Acting Assistant Director for the Removal Division, within Enforcement and Removal Operations (ERO) at U.S. Immigration and Customs Enforcement within the U.S. Department of Homeland Security. I believe, based on personal knowledge and reasonable inquiry, that the following Interrogatory answers—Defendants' Responses to Interrogatory Nos. 2.2, 4.2, 5 and 12, to the extent the information pertains to ICE ERO—are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2025.

MELLISSA B HARPER

Digitally signed by MELLISSA B HARPER
Date: 2025.05.16 12:38:08 -04'00'

**Mellissa B. Harper**

## VERIFICATION OF INTERROGATORY ANSWERS

I, Clayton Wright, am Unit Chief of the Parole and Law Enforcement Programs Unit (PLEPU) within Homeland Security Investigations (HSI) at U.S. Immigration and Customs Enforcement (ICE) within the U.S. Department of Homeland Security. I believe, based on personal knowledge and reasonable inquiry, that the following Interrogatory answers—Defendants' Responses to Interrogatory Nos. 2.2, 5 and 12 to the extent they provide information on behalf of ICE HSI—are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2025.

CLAYTON R WRIGHT
Digitally signed by CLAYTON R WRIGHT
Date: 2025.05.16 11:24:10 -04'00'

**Clayton Wright**