June 6, 2025

**VIA ECF**
The Honorable Paula Xinis, U.S.D.J.
United States District Court for the District of Maryland
6500 Cherrywood Lane
Suite 255
Greenbelt, MD 20770

Re:   <u>Abrego Garcia, et al. v. Noem, et al.</u>, Case No. 8:25-cv-00951-PX (D. Md.)

Pursuant to this Court's May 29, 2025 Order (ECF No. 172), Plaintiffs write to address the propriety of the Defendants' privilege assertions in the updated privilege log dated May 23, 2025 ("May 23 Privilege Log").[1,2]

1.   **Missing Custodians**

The May 23 Privilege Log contains entries from only six of eighteen custodians from whom Defendants agreed to produce documents. Numerous key custodians have never appeared on a log. For instance, neither Secretary Kristi Noem nor Secretary Marco Rubio have any corresponding log entries, even though Secretary Noem testified before the Senate regarding communications between the United States and El Salvador that she had personally reviewed. Similarly, Secretary Rubio's declaration explicitly references communications and document review. *See* Rubio Decl. at ¶¶ 2, 4. Since no documents from these custodians have been logged, no documents from their custodial files should be withheld as privileged.

2.   **Privilege Issues**

Defendants have taken a blunderbuss approach to invoking privilege, invoking more than one privilege in 962 of its 1,084 privilege log entries. There are multiple, overlapping deficiencies in these privilege assertions.[3] Plaintiffs respectfully request that the Court find these privileges waived, or in the alternative, review the identified documents *in camera*.

   a.   *State Secrets Privilege*

Defendants' privilege log entries undercut their assertion of the state secrets privilege, which is discussed more fully in ECF No. 129. *First*, Defendants cannot invoke the state secrets

---

[1] On May 30, 2025, Defendants served a production with a supplemental privilege log containing 234 new entries. On June 4, 2025, Defendants produced Mr. Abrego Garcia's A-file, accompanied by a privilege log with three entries. Consistent with this Court's May 29, 2025 Order, Plaintiffs' letter focuses on objections to the privilege assertions in the May 23 Privilege Log. The updated logs do not cure, and in some cases exacerbate, the deficiencies enumerated in this letter.

[2] As directed by the Court, Defendants provided a "representative sample" of withheld documents. This sample excludes redacted documents, but all text and Signal messages that appear in the May 23 Privilege Log were redacted. The same is true for the documents on the log that were cited by the New York Times, *infra* App'x 7. Plaintiffs therefore respectfully request that the Court require Defendants to provide a sample of redacted documents for *in camera* review as well.

[3] Some of the errors are obvious. *See, e.g.*, App'x 6 at row 362 (purportedly describing status updates before the Court had ordered status updates).

1

privilege on behalf of the Department of Homeland Security and Department of Justice because neither department filed affidavits from their department heads. *See* May 16, 2025 Hr'g Tr. 28:15–21; ECF 129. But, as shown in Appendix 1, 118 documents have been withheld on the basis of state secrets privilege even though there are no Department of State employees on the document.[4] Every document on Appendix 1 should be produced.

*Second*, the privilege log does not adequately justify Defendants' privilege invocation in other entries.[5] For example, Defendants repeatedly withhold information that appears to exclusively relate to Abrego Garcia, with only a generalized reference to national security concerns. *See*, *e.g.*, App'x 2 at row 36. Defendants also justify their privileges with vague, copy-and-paste descriptions. *See, e.g.*, *id.* at 996, 998-99, 1003, 1005, 1010, 1011, 1012, 1020, 1028, 1029 (referencing "past and contemplated diplomatic" communications). Merely invoking "an ethereal fear" that disclosure will threaten national security "is insufficient to support the privilege." *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007). Some entries include no state secret explanation at all. *See, e.g.*, App'x 2 at 48. No logged documents are classified.

Thus, the state secrets privilege has not been adequately invoked by the May 23 Privilege Log. In the alternative, Plaintiffs request that the Court review *in camera* the examples identified in Appendix 2, or another random sample of documents withheld or redacted on this basis. *See* ECF 129 at 24–25 (discussing availability of *in camera* review for state secrets privilege).

b.  Presidential Communications Privilege – Qualified Privilege

The presidential privilege applies only to "documents and other communications 'solicited and received' by the Office of the President, and thus do[es] not extend to agency documents that are not submitted for Presidential consideration." *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1112 (D.C. Cir. 2004). "The presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997).

Not one of Defendants' 132 invocations of the presidential communications privilege passes muster.[6] *First*, Defendants' log entries are inadequate. Many invoke the privilege but make no attempt to justify the privilege in the "[p]rivilege description" column. *E.g.*, App'x 3 at rows 519, 521, 523. Several lack any White House advisers or attorneys on the communications. *E.g.*, *id.* at rows 46, 49, 167, 170.

*Second*, the Government has not suggested that any of the logged documents were "solicited and received" for the purpose of decisionmaking by the President. *See In re Sealed Case*, 121 F.3d at 752. Most logged documents relate directly to this litigation, and don't specify who is making the decision. *E.g.*, App'x 3 at rows 1036, 1037 ("PCP: Email between senior DOS official and White House senior official regarding litigation strategy."); *see also, e.g.*, *id.* at rows 475, 477, 519, 537, 549, 644, 665. Forwarding to or copying someone from the White House on an email

---

[4]  This evaluation is complicated because in many rows, the "To" and "From" fields are blank, notwithstanding Defendants' claim that the communication involves State Department personnel. App'x 1 at 826–863. In others, the communication descriptions misidentify or fail to completely identify all participants in the communication. App'x 1 at 925–976.

[5]  A sample of entries that invoke this privilege is attached as Appendix 2.

[6]  A sample of entries that invoke this privilege is attached as Appendix 3.

does not transform these ordinary-course litigation strategy documents into documents solicited for the purpose of giving advice to the President, just like copying an attorney onto an email about routine business matters does not create attorney-client privilege.

*Finally*, the presidential privilege is qualified and "must yield," *Stone v. Trump*, 356 F. Supp. 3d 505, 516–17 (D. Md. 2018), *amended on reconsideration*, 402 F. Supp. 3d 153 (D. Md. 2019), when a "document likely contains important evidence" that "is not available with due diligence elsewhere," *In re Sealed Case*, 121 F.3d at 754 (cleaned up); see *also Dairyland Power Co-op. v. United States*, 2008 WL 8776547, at *2–3 (Fed. Cl. Mar. 17, 2008) (applying the *In re Sealed Case* test). If the court "believes that an adequate showing of need has been demonstrated, it should then proceed to review the documents in camera to . . . release[]" the relevant material. *Sealed Case*, 121 F.3d at 745. Plaintiffs request that the Court review *in camera* the examples identified in App'x 3, or another random sample of documents withheld or redacted on this basis.

   c. *Deliberative Process Privilege – Qualified Privilege*

Defendants' 430 invocations of the deliberative process privilege do not withstand scrutiny. *First*, the Government's log entries reflect deficiencies.[7] Most of the entries are drafts of legal filings, which do not reflect a final agency decision on policy formulation or judgment. *See, e.g.*, App'x 4 at rows 1047, 50, 52, 57, 60. Numerous other entries purport to cover communications about "contemplated agency decisions, and contemplated steps which may be taken related to facilitation of return," but the log does not identify what final decision was made or final action was taken, nor by whom. *See, e.g., id.* at rows 1047, 54, 108–111, 287–299. Others describe factual information that is not covered by the deliberative process privilege, like documents that "memorialize[] certain information obtained after investigation relating to Abrego Garcia's detention and the facilitation of his return." *See, e.g.,* 380–82; *see NAACP v. Bureau of the Census*, 401 F. Supp. 3d 608, 615–16 (D. Md. 2019) (holding that spreadsheets created for the purpose of making a budget requests were not covered by deliberative process privilege).

*Second*, the qualified deliberative process privilege yields where the Government's intent—or its possible misconduct—is squarely at issue. May 16 Hr'g Tr. 94:13-95:23; *In re Subpoena Duces Tecum Served on Office of Comptroller Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998); *see also Stone v. Trump*, 356 F. Supp. 3d 505, 516–17 (D. Md. 2018), *amended on reconsideration,* 402 F. Supp. 3d 153 (2019) (privilege did not apply when the government's intent was at issue regarding President Trump's tweets banning transgender military service); *Ferrell v. U.S. Dep't of Hous. & Urb. Dev.*, 177 F.R.D. 425, 430–31 (N.D. Ill. 1998) (holding privilege yields where "the government's decisionmaking process in this matter—and the corresponding 'roads not taken'—is 'the case' and is directly relevant and crucial to Plaintiffs' contempt motion"). Thus, the Court should find this privilege does not apply and yields here. In the alternative, Plaintiffs request that the Court review the documents in Appendix 4, or another random sample of documents withheld or redacted on this basis, *in camera*.

   d. *Law Enforcement Privilege – Qualified Privilege*

Defendants assert law enforcement privilege 14 times in the May 23 privilege log.[8] Defendants' assertions of law enforcement privilege fall short at the outset because invoking the privilege requires "a declaration or affidavit, under oath and penalty of perjury, from a responsible

---

[7] A sample of entries that invoke this privilege is attached as Appendix 4.
[8] All entries that invoke the law enforcement privilege are listed in Appendix 5.

official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987)). The Government has failed to provide such a declaration. Accordingly, all of the documents in Appendix 5 should be produced.

Even if Defendants had satisfied this basic procedural requirement, their assertion of the privilege would be invalid. Assuming this case implicates national security interests, Defendants still must demonstrate the information includes: "(1) information pertaining to law enforcement techniques and procedures; (2) information that would undermine the confidentiality of sources; (3) information that would endanger witness and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations." *Jardaneh v. Garland*, 2021 WL 4169600, at *9 (D. Md. 2021).

Defendants have failed to do so. The administration has announced publicly and repeatedly that it removed individuals from certain countries that it suspects are members of TdA or MS-13, meaning there is no risk that disclosure of this information would warrant the sweeping application of the law enforcement privilege. *See Metris-Shamoon v. City of Detroit*, 335 F.R.D. 387, 392 (E.D. Mich. 2020); *see also Hamama v. Adducci*, 2018 WL 2445042 (E.D. Mich. May 31, 2018). Even if there is some information in the Government's entries that goes to specific investigative procedures, the full email threads that have been withheld could be redacted to adequately address the privilege issue. *See, e.g.*, App'x 5 at row 508.

e.   *Attorney-Client and Attorney Work Product Privilege*

The Government invokes either the attorney-client privilege, attorney work product, or both, for nearly all of the 1,084 total entries on its May 23 Privilege Log—and for 499 entries, the Government invokes *only* attorney-client and/or attorney work product privilege. *Hundreds* of these entries are deficient.[9]

One category of deficiencies—a mismatch between the parties listed in an entry's privilege description and its To/From/CC fields—is pervasive throughout the log. *See, e.g.*, App'x 6 at rows 5, 43, 104, 124, 442, 664, 669, 709, 955. For 41 entries, despite the descriptions referencing DOJ and State counsel "solicit[ing] and provid[ing] advice regarding diplomatic communications," the corresponding To/From/CC fields do not include *anyone* from DOJ or State. *See, e.g.*, *id.* at rows 15, 154, 264, 332, 408. This deficiency also exists where certain documents—withheld in full—are described as email chains with DHS clients, but their To/From/CC fields only include DHS attorneys and no actual clients. *See, e.g.*, *id.* at rows 480, 484, 501, 697.

Other deficient entries do not include an attorney (*see, e.g.*, *id.* at rows 822, 1108), or do include an attorney, but only in the CC field (*see, e.g.*, *id.* at row 264)—even though the privilege applies "only [to] confidential communications occurring between the lawyer and his client" for the purpose of obtaining legal advice. *Hawkins v. Stables*, 148 F.3d 379, 383–84 (4th Cir. 1998). In addition to the sample provided by Defendants, Plaintiffs respectfully request the Court review

---

[9] Deficiencies include blank To/From/CC fields, conflated descriptions of the attorney-client and work product privileges, and privilege descriptions that seemingly describe an entirely different privilege. 172 entries on the log have virtually identical descriptions of both attorney-client and work product privilege. A sample of 46 deficient privilege log entries invoking the attorney-client and/or work product privilege is attached as Appendix 6.

the documents on Appendix 6 *in camera* to evaluate these questionable assertions.

    3.    Crime-Fraud Exception

Finally, there is sufficient evidence for the Court to apply the crime-fraud exception to vitiate the attorney-client/work product privilege. It is well-established that both "[t]he attorney-client and work-product privileges are lost . . . when a client gives information to the attorneys for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proc.*, 102 F.3d 748, 750–51 (4th Cir. 1996). The "crime-fraud" exception applies broadly, including to materials furthering "misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982); *see also Cleveland Hair Clinic, Inc. v. Puig*, 968 F.Supp. 1227, 1241 (N.D. Ill. 1996) (applying the crime-fraud exception where attorneys engaged in "deceptive conduct" and "bad faith litigation conduct" "violative of Rules 11 and 37"); *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 455–56 (Bankr. D. Vt. 1995) ("[N]ot just technical crimes or frauds are excluded from the attorney-client privilege.").

Defendants appear to be relying on overbroad privilege invocations in order to shield evidence that Defendants and their attorneys have actively worked to defy, not comply with, this Court's, the Fourth Circuit's, and the Supreme Court's orders. Their repeated public statements have made this clear. *See, e.g.*, Eric Cortellessa & Sam Jacobs, *Read the Full Transcript of Donald Trump's '100 Days' Interview With TIME*, TIME (Apr. 25, 2025) (asked if he would ask the President of El Salvador to return Abrego Garcia, the President stating "I haven't asked him positively" "because I haven't been asked to ask him by my attorneys"); Rebecca Beitsch, *Bondi Says Mistakenly Deported Man 'Not Coming Back to Our Country'*, The Hill (Apr. 16, 2025) (Attorney General Pam Bondi stating that Abrego Garcia "is not coming back to our country" and that "he's from El Salvador. He's in El Salvador, and that's where the president plans on keeping him."). Defendants appear to have logged multiple documents that were obtained and are described by the New York Times in *How Trump Officials Debated Handling of the Abrego Garcia Case: 'Keep Him Where He Is'*, N.Y. Times (May 21, 2025). The article quotes from emails between Joseph Mazzara, James Percival, Erez Reuveni, James Bischoff, and others from March 27–31, 2025. There are documents with matching dates and names on the privilege log.[10,11] Defendants have marked nearly all of them as "withheld" because they contain purported legal advice or strategy regarding the "facilitation" of Abrego Garcia's release from custody in El Salvador. But the New York Times quotes portions of the emails where officials are brainstorming how to actively avoid facilitating Abrego Garcia's return—not how to facilitate it.

Given these misleading descriptions and the ample evidence that Defendants have actively strategized to avoid compliance with Court orders, Plaintiffs respectfully request (at a minimum) that the Court review *in camera* the communications listed in Appendix 7 to determine whether they should be produced on this basis. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 556–57 (1989) (holding that application of crime-fraud exception may be determined by *in camera* review.

---

[10]   *Compare* App'x 7 at row 154, 157, 162, 164, *with How Trump Officials* (reporting that Percival and Mazzara exchanged emails on March 28 stating "We are working to fix it so he doesn't need to be returned to the U.S." and "We're also trying to keep him where he is").

[11]   *Compare* App'x 7 at row 403 *with How Trump Officials* (reporting that on March 30, J. Percival emailed E. Reuveni and others that Abrego Garcia's removal "was an administrative error," "(Not that we should say publicly.)").

Respectfully submitted,

By: /s/ *Jonathan G. Cooper*
**QUINN EMANUEL URQUHART &
   SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
**admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.*

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030
(703) 352-2399
ssandoval@murrayosorio.com


**QUINN EMANUEL URQUHART &
   SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

**QUINN EMANUEL URQUHART &
   SULLIVAN, LLP**
Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

Counsel for Plaintiffs

6