June 6, 2025

**VIA ECF**

The Honorable Paula Xinis, U.S.D.J.
United States District Court for the District of Maryland
6500 Cherrywood Lane
Suite 255
Greenbelt, MD 20770

Re:   *Abrego Garcia, et al. v. Noem, et al.*, Case No. 8:25-cv-00951-PX (D. Md.)

On May 29, 2025, this Court ordered the parties to file simultaneous letter briefs regarding the propriety of Defendants' privilege assertions in the May 23 Privilege Log. ECF No. 172. Earlier today, Defendants filed their Notice of Compliance with Preliminary Injunction and Request for a Stay of All Case Deadlines (ECF 181), informing the Court that Abrego Garcia has been returned to the United States, thereby achieving full compliance with the preliminary injunction. Because Defendants have now complied with the Court's preliminary injunction to facilitate Abrego Garcia's return, there is no longer a need for the Court to evaluate discovery issues relating to past and future efforts to facilitate his return. Accordingly, the Court should decline to consider the matter further. Notwithstanding the mootness of discovery, as set forth below, Defendants have properly asserted the state-secrets, deliberative-process, and attorney-client privileges, and the attorney work-product doctrine. Notably, Plaintiffs have not objected to any particular entry on the May 23 Privilege Log. Defendants therefore respectfully request an opportunity to respond to any objections that Plaintiffs may raise in today's filing.

**State Secrets.**  Defendants' May 23 Privilege Log reflects that Defendants have invoked the state-secrets privilege with respect to responsive documents containing sensitive information relating to foreign affairs. Defendants do not assert the state secrets privilege to shield documents or facts showing that senior Department of State officials—including Secretary of State Marco Rubio, Ambassador William Duncan, Senior Bureau Official of the Western Hemisphere Affairs Michael Kozak, and Special Envoy for Latin America Mauricio Claver-Carone, among others— have made several requests to officials in the Salvadoran government for the release of Abrego Garcia from Salvadoran custody and his return to U.S. custody. Rather, Defendants assert the state secrets privilege to shield from public view only sensitive details and the granular content of the Department of State's communications with El Salvador. As Secretary of State Rubio explained in his State Secrets Declarations, disclosing those documents and facts would harm the United States' foreign relations and national security interests with El Salvador and other foreign states across the globe because the disclosure would be viewed as a breach of trust, discourage foreign states from working cooperatively with the United States in the future, and discredit the United States' assurances that information would remain confidential. Secretary of State Rubio detailed and explained these harms in the updated declaration (including the confidential *ex parte* addendum) that Defendants have provided. ECF No. 155. The updated declaration sets forth the narrow types of documents and facts the privilege has been asserted to protect and appropriately refers to Defendants' privilege log as an additional reference.

**Deliberative Process.** Defendants have properly asserted the deliberative-process privilege to prevent the disclosure of "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Ethyl Corp. v. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994) (citation omitted). The privilege covers "predecisional and deliberative" materials. *City of Virginia Beach. v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993). Documents are predecisional if they "are 'prepared in order to assist an agency decisionmaker in arriving at his decision,'" *id.*, though they need not be connected to one "specific decision," *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n.18 (1975), and deliberative if they "reflect[ ] the give-and-take of the consultative process, . . . revealing the manner in which the agency evaluates possible alternative policies or outcomes." *City of Virginia Beach*, 995 F.2d at 1253; *see also* Defs.' Br. ECF No. 125. Under the deliberative-process privilege, Defendants have withheld email correspondence deliberating on various strategic and policy matters related to this lawsuit and exchanging drafts of pre-decisional memoranda and other written advice prepared to aid Defendants in the decision-making process. In many instances the materials are independently protected by the attorney-client privilege, but the predecisional, deliberative materials are protected by the deliberative-process privilege as well.

Plaintiffs cannot defeat Defendants' assertion of the deliberative-process privilege with claims of government misconduct premised on the original removal of Abrego Garcia to El Salvador, rather than to a third country. For one thing, while the deliberative-process privilege may be denied when documents "may shed light on government *misconduct*," *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (emphasis added), the D.C. Circuit has observed that "the word 'misconduct' implies 'nefarious motives.'" *Neighborhood Assistance Corp. of Am., v. United States Dep't of Hous. & Urb. Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013) (quoting *In re Subpoena Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1425 n.2 (D.C. Cir. 1998)). And courts "wrest[ling] with the exception's scope" have "limit[ed] its application to cases of 'extreme government wrongdoing,'" *id*. at 14, so as not to permit the exception to "swallow the rule," *Hall & Assocs. v. U.S. EPA*, 14 F. Supp. 3d 1, 9 (D.D.C. 2014) (quoting *ICM Registry, LLC v. U.S. Dep't of Com.*, 538 F.Supp.2d 130, 133 (D.D.C. 2008) ("If every hint of marginal misconduct sufficed to erase the privilege, the exception would swallow the rule.")). But there is no basis in this case to suggest that the removal of Abrego Garcia to the wrong country was anything more than an administrative error. Even Plaintiffs have never claimed otherwise.

In addition, the discovery here concerns deliberations that occurred *after* the removal of Abrego Garcia to El Salvador. The government-misconduct exception is designed to ensure that the deliberative process privilege protects real "governmental policy-making" rather than abuse of government power. *Tax Reform Research Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976); *see also Alexander v. FBI*, 186 F.R.D. 154, 164–65 (D.D.C. 1999); *Alexander v. F.B.I.*, 186 F.R.D. 78, 83 (D.D.C. 1998). But here, there is no possible argument that any misconduct or mistake in connection with the original removal of Abrego Garcia somehow taints the legitimacy of governmental deliberations over how to comply with this Court's subsequent orders.

At minimum, if this Court remains unconvinced, it should conduct an *in-camera*, page-specific review before concluding that a given portion of a document falls within the scope of the misconduct exception. *See, e.g., Alexander*, 186 F.R.D. at 165.

**Attorney Client Privilege & Attorney Work Product.** Defendants have also properly asserted the attorney-client privilege and attorney work-product doctrine with respect to attorney-client communications and draft documents, for example. To "encourage[ ] observance of the law and aid[ ] in the administration of justice, the attorney-client privilege protects 'full and frank' communication between lawyer and client." *Hawkins v. Stables*, 148 F.3d 379, 382–83 (4th Cir. 1998). "[W]hen the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." *Id*. The Fourth Circuit applies the "'classic test' for determining the existence of attorney-client privilege." *Id*. at 383. The privilege applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id*. Here, Defendants Secretary Noem, Todd Lyons, Kenneth Genalo, Nikita Baker, Attorney General Pam Bondi, and Secretary Rubio are all represented by the Department of Justice. Defendants and their subordinates have communicated facts about this case, including information about the parties, to DOJ and other agency lawyers in confidence for the purpose of assistance in this lawsuit. They have asserted this privilege in the May 23 Privilege Log and withheld email correspondence and drafts, communicating suggestions on legal strategy and providing advice on advancing Defendants' legal position, between Defendants' counsel on that basis. Communications among the different agencies and their lawyers does not waive the privilege because Defendants enjoy the joint defense privilege—"an extension of the attorney-client privilege," which "protects communications between parties who share a common interest in litigation." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). Here, Defendants are government agencies involved in the immigration process that share a common interest in the outcome of this litigation. The joint defense privilege therefore allows them to "communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims," without waiving attorney-client privilege. *Id*. It is routine for the Department of Justice to represent multiple agencies and to communicate with lawyers and clients at those agencies about privileged matters.

The attorney work product doctrine protects the work product prepared for Defendants "in preparation for litigation." *In re Grand Jury Proc. #5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). "[N]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id*. (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). The privilege includes both fact and opinion work product. *Id*. Fact work product "consists of documents prepared by an attorney that do not contain the attorney's mental impressions, 'can be discovered upon a showing of both a substantial need and an inability to

secure the substantial equivalent of the materials by alternate means without undue hardship.'" *Id*. Opinion work product, however, "contain[s] the fruit of an attorney's mental processes" and "is 'more scrupulously protected as it represents the actual thoughts and impressions of the attorney." *Id*. "Because the work product privilege protects not just the attorney-client relationship but the interests of attorneys to their own work product, the attorney, as well as the client, hold the privilege." *Id*. (citing *Hickman*, 329 U.S. at 511). As detailed in the May 23 Privilege Log, Defendants have withheld communications containing the attorneys' mental processes, discussing matters such as legal theories regarding facilitating Abrego Garcia's return, providing recommendations, and responding to the litigation's needs. Defendants have also withheld draft litigation documents, such as declarations, as work product. All Defendants' assertions of the work-product doctrine protect mental impressions of attorneys or of those working with attorneys on matters in contemplation of litigation. Regardless, Plaintiffs have made no showing of a substantial need for work product materials or an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.

For the reasons explained above, Defendants properly asserted the state-secrets, deliberative-process, and attorney-client privileges, as well as the work-product doctrine in the May 23 Privilege Log. And Plaintiffs have yet to identify any particular entries on the Privilege Log that they dispute, let alone explained their basis for such objection. Defendants therefore respectfully request the opportunity to further respond in writing to any arguments that Plaintiffs may advance in today's submission.

Moreover, if this Court ultimately overrules any of Defendants' privilege assertions, this Court should either grant a stay pending appeal and/or mandamus, or at least delay the effective date of its order for at least 14 days, so that Defendants can determine whether to seek appellate review in an orderly manner. The Judiciary piercing well-established privileges of the Executive Branch raises significant separation of powers concerns that militate strongly in favor of allowing an opportunity to seek appellate review before such grave steps are undertaken.

Respectfully submitted,

*Drew C. Ensign*
Drew C. Ensign
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-2000
drew.c.ensign@usdoj.gov