```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                     GREENBELT DIVISION


 3   _____
                                        )
 4   KILMAR ARMANDO ABREGO GARCIA,      )
     et al.,                            )
 5                                      )
          Plaintiff,                    )
 6                                      )Docket Number
              vs.                       )8:25-cv-00951-PX
 7                                      )
     KRISTI NOEM, et al,                )
 8                                      )
          Defendant.                    )
 9   _____)

10           REDACTED TRANSCRIPT OF EX PARTE HEARING
                BEFORE THE HONORABLE PAULA XINIS
11             UNITED STATES DISTRICT COURT JUDGE
             WEDNESDAY, APRIL 30, 2025, AT 9:00 A.M.
12

13   APPEARANCES:

14       On Behalf of the Defendants:


15

         BY:  JONATHAN GUYNN, ESQUIRE
16       DEPUTY ASSISTANT ATTORNEY GENERAL
         CIVIL DIVISION, DEPARTMENT OF JUSTICE
17       950 Pennsylvania Avenue NW
         Washington, DC 20530
18       (202)856-4809

19

     ALSO PRESENT:  Ernesto Molina, Esquire, DOJ
20


21


22       ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***

23


24


25
```

```
 1                    P R O C E E D I N G S

 2       (Court called to order.)

 3           DEPUTY CLERK:  All rise.  The United States District

 4  Court for the District of Maryland is now in session.  The

 5  Honorable Paula Xinis presiding.

 6           THE COURT:  Good morning, gentlemen.

 7       Mr. Ulander, would you call the case?

 8           DEPUTY CLERK:  The matter now pending before the

 9  court is Civil Action Number PX25-951, Kilmar Armando Abrego

10  Garcia, et al., v. Kristi Noem, et al.  The matter comes before

11  this Court for an ex parte hearing.

12       Counsel, please identify yourselves for the record.

13           MR. GUYNN:  Good morning, Your Honor.  Jonathan Guynn

14  with the U.S. Department of Justice on behalf of defendants,

15  and with me here is Mr. Ernesto Molina.

16           THE COURT:  Okay.  All right.  Good morning.  You all

17  can have a seat.

18       All right, Counsel.

19       Just to briefly recap where we are, last week I did grant

20  the government's motion for a one-week stay and -- at that

21  hearing, which the plaintiffs were partially involved in, but

22  it was still under seal, I granted it out of an abundance of

23  caution to give -- take the government at its word.  And as I

24  think plaintiffs' counsel said, that leap of faith, that there

25  would be some fruit to bear if there had been a stay of
```

1    discovery.

2        As you both know, the orderly progression of discovery is

3    wholly within the province of the Court, but this Court is

4    acutely mindful of the deference that's owed to foreign

5    relations and diplomatic discussions.

6        I know I warned the government twice of two things:  One,

7    to not stop working on the litigation piece because part of

8    that deference owed to the government is to allow a

9    full-throated assessment of privilege.  And that is one very

10   important, perhaps, central protection that's -- is the way in

11   which this court can give deference.  So keep working, is what

12   I said.

13       And, secondly, that there had to be an ongoing showing,

14   because I wasn't going to continue the stay ad infinitum simply

15   because someone who may be working in good faith says I should;

16   that I need the details.

17       The parties had roughed out a plan by which yesterday I

18   would hear as to whether there was agreement from the parties

19   as to a path forward or not, and I took from what I did

20   receive, which is the motion, the ex parte motion at 104, the

21   government seeking a continued stay of a week with the

22   plaintiff deferring that -- to the Court's decision that that

23   motion was, in fact, shared with the plaintiff, and the

24   plaintiffs' position was sought and put into the motion.

25       Is that right, Mr. Guynn?

1    **MR. GUYNN:**  That is correct.

2    **THE COURT:**  Okay.  And then I also made clear to the

3  government that I was disinclined to grant the continuance

4  absent further evidence to include witness testimony.

5    And late last night, I want to say at about 10:45, I

6  received the following letter, and I'm going to read it into

7  the record so we can discuss its contents.

8    At 10:45, I received a letter from ████████████████

9  ████████████████████████ and it reads:

10    "Dear Judge Xinis, I write on an ex parte basis with

11  regard to the Court's ex parte e-mail from earlier today

12  requesting, quote, additional testimony from persons with

13  knowledge regarding the need for the stay. ████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████

18    ████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20  ████████████████

21    "I've just spoken with Secretary of State Rubio.  He has

22  informed me that he is personally handling the ongoing

23  discussions regarding Mr. Abrego Garcia with the government of

24  El Salvador."

25    "Secretary Rubio has a personal relationship with

1  President Bukele and senior officials in the El Salvadoran

2  government that dates back over a decade to the Secretary's

3  service on the Senate Foreign Relations Committee.  As a result

4  of this deep experience with El Salvador and the Secretary's

5  familiarity with political and diplomatic sensitivities in that

6  country, he believes that he is best positioned to seek

7  facilitation of Mr. Abrego Garcia's release."

8

9

10

11

12  the Secretary does understand

13  the Court's order to facilitate Abrego Garcia -- Mr. Abrego

14  Garcia's release and wants to assure you that he's committed to

15  making prompt and diligent efforts on behalf of the United

16  States to comply with this order."

17

18

19

20

21

22

23

24

25



1 ████████████████████████████████████████

2 █████████████████████████████████████████

3 ███████████████████████████████████████

4 ████████████████████████████████████

5 ███████████████████████████████████

6 ██████████████

7 ███████████████

8 And I have not received anything else from the government.

9 So a couple of things. Since the last hearing, it's

10 important for the record to reflect that I think within a day

11 or two after the hearing, it was reported by the *Atlantic* that

12 there are individuals within the Department of Justice who have

13 disclosed that within three days after Mr. Abrego Garcia's

14 lawsuit, government attorneys began discussing how to undo the

15 mistake and bring him back. And I'm quoting from the *Atlantic*

16 article entitled "How the Trump Administration Flipped on

17 Kilmar Abrego Garcia."

18 And it will become clear in a minute why I'm putting this

19 before you all, and I will solicit your feedback on it.

20 "In their conversations, officials went so far as to float

21 the idea of having the U.S. ambassador to El Salvador make a

22 personal appeal to the country's president for Abrego Garcia's

23 return, but, first, the State Department's legal team wanted

24 more information from DHS about his alleged role in the MS-13

25 gang. The thin evidence supplied in response was met with

1  skepticism from the State Department lawyers."

2      "Abrego Garcia, who came to the United States illegally

3  when he was 16 years old, was one of 23 Salvadorans deported on

4  March 15, but his name had not appeared on an internal list of

5  ten gang members sought by President Nayib Bukele."

6      It goes on about DHS's -- the attorneys having other

7  concerns regarding the protected status that Abrego Garcia had

8  received in 2019 from an immigration judge under the Trump

9  administration.

10      "These attorneys wanted to know if U.S. diplomats could

11  ask the Salvadoran government to keep him separated from

12  Barrio 18 who had threatened him in the past and might harm

13  him.  But as the criticism of the mishandling of the case

14  spread, the White House took over the official response."

15  ███████████████████████████████████

16  ██████████████████████████████████████████

17  ██████████████████████████████████████████

18  ███████████████████████████████████████████

19  ██████████████████████████████████████████

20  ███████████████████████████████████████████

21  █████████████████████████

22      There are two others that I think, in fairness to you, I

23  wish to put before you so that you can then be heard on all of

24  it.  We can take it however you wish.

25      The other two are that despite this letter that I received

1  imploring me to stay discovery because ongoing publicity would

2  somehow harm diplomatic efforts, your own -- the President of

3  the United States continues to give open interviews about the

4  details of this case.  And, specifically, to *Time Magazine,* and

5  then again to ABC News, in which I have the full transcript.

6  And the full transcript in which the President of the United

7  States asked if he is facilitating the release of Mr. Abrego

8  Garcia, says, "I leave that to my lawyers.  I give them no

9  instructions.  They feel that the order said something very

10 much different from what you're saying.  But I leave that to my

11 lawyers."

12      Question:  Have you asked President Bukele to return him?

13      Answer:  I haven't.  He said he wouldn't.

14      Question:  Did you ask him?

15      Answer:  But I haven't asked him positively, but he said

16 he wouldn't.

17      Question:  But if you haven't asked him, then how are you

18 facilitating his release?

19      Answer:  Well, because I haven't been asked to ask him by

20 my attorneys.  Nobody asked me to ask him that question except

21 you.

22      Question:  Do you believe he deserves his day in court?

23      Answer:  I believe that they made him look like a saint,

24 and then we found out about him.  He wasn't a saint, he was

25 MS-13.  He was a wife-beater, and he had a lot of things that

1  were very bad; you know, very, very bad.  When I first heard of

2  the situation, I was not happy, and then I found out that he

3  was a person who was an MS-13 member.  And, in fact, he had a

4  tattooed -- he had a tattoo right on his -- I'm sure you know

5  this, he had it tattooed right on his knuckles, MS-13.  No, I

6  believe a man who has got quite a past.  This is no longer just

7  a nice, wonderful man from Maryland, which people -- which the

8  fake news had me and other people, for a period of time,

9  believing.  Now nobody believes that.  And I think this is a

10  very bad -- I think this is another men's/women's sports thing

11  for the democrats.

12      Question:  But maybe, Mr. President, whatever he might

13  have done, whoever he might be affiliated with, doesn't he

14  deserve his day in court?  Nazi saboteurs who came on our

15  shores at Montauk during World War II had their day in court.

16  Al-Qaeda terrorists had their day in court.

17      Answer:  I really give that to my lawyers to determine.

18  That's why I have them.  That's not my determination.  If it's

19  something that, frankly, bringing him back and retrying him,

20  wouldn't bother me, but I leave that to my lawyer.  You could

21  bring him back and retry him, but I leave that decision to the

22  lawyers.  At the moment -- at this moment, they just don't want

23  to do that.  They say we're in total compliance with the

24  Supreme Court.

25      Question:  What about the lower courts, are you committed

1  to complying with the lower courts?

2      Sure -- answer:  Sure, all courts.

3      Okay.  Then there is the ABC interview, which has been

4  widely reported last night and this morning to include the *New*

5  *York Times* -- the transcript of -- bear with me because I do

6  think it's just important to put all of this on the record and

7  then get your response.

8          **MR. GUYNN:**  Your Honor?

9          **THE COURT:**  Yes?

10         **MR. GUYNN:**  If I could, it would be helpful to know

11 the dates of the specific --

12         **THE COURT:**  Sure.  This was the -- the *Time*

13 interview, the transcript that was provided from httpstime.com

14 is date stamped April 25th, 2025, at 6:01; ABC News transcript

15 is April 29 at 9:00 -- 2025, at 9:00 p.m.

16     And I don't want to quote it from an article, I want to

17 quote it from the actual interview so that you have it as it

18 was captured, so give me a moment.

19         **MR. GUYNN:**  And it --

20         **THE COURT:**  Okay.  Let's move on to immigration.  All

21 right?  So -- okay.  Okay.

22     Question from Terry Moran:  Well, let me ask about one man

23 and one court order, Kilmar Abrego Garcia.  He's the Salvadoran

24 man who crossed into this country illegally but who is under a

25 protective order that he not be sent back to El Salvador.  Your

government sent him back to El Salvador and acknowledged in

court that that was a mistake.  And now the Supreme Court has

upheld an order that you must return him, to facilitate his

return to the United States.  What are you doing to comply?

Answer:  Well, the lawyer said it was a mistake -- the

lawyer that said it was a mistake was here a long time and not

appointed by us, should not have said that; should not have

said that.  And just so you understand --

Terry Moran:  Said in court, said it in court?

Answer, Mr. Trump, President Trump:  The person that

you're talking about -- you know, you're making this person

sound -- this MS-13 gang member, a tough cookie, and in lots of

skirmishes beat the hell out of his wife, and the wife was

petrified to even talk about him.  Okay?  This is not an

innocent, wonderful gentleman from Maryland.

Terry Moran:  I'm not saying he's a good guy.  It's about

the rule of law.  The order from the Supreme Court stands, sir.

President Trump:  He came into our country illegally.

Terry Moran:  You could get him back.  There's a phone on

this desk.

President Trump:  I could.

Terry Moran:  You could pick it up, and with all --

President Trump:  I could.

Terry Moran -- the power of the presidency, you could call

up the President of El Salvador and say send him back right

1     now.

2         President Trump:  And if he were the gentleman you say he

3     is, I would do that.

4         But the Court - Terry Moran:  But the court ordered you

5     to --

6         President Trump:  But he's not.

7         Terry Moran -- to facilitate that, his release.

8         President Trump:  I'm not the one making this decision.

9     We have lawyers that don't want --

10        Terry Moran:  You're the president.

11        President Donald Trump:  -- to, do this, Terry.

12        Terry Moran:  Yes.  But the buck stops in this office.

13        President Trump:  No, no, no, I follow the law.  You want

14    me to follow the law.  If I were the president that just wanted

15    to do anything, I would probably keep him right where he is.

16        Terry Moran:  The Supreme Court says what the law is.

17        President Donald Trump:  Listen, I was elected to take

18    care of the problem that was -- it was an unforced error that

19    was made by a very incompetent man, a man that turned out to be

20    incompetent that you always said was wonderful, a great genius,

21    right?  And now you find out, all of the media, and now they

22    are saying what a mistake they made, a man who was grossly

23    incompetent, allowed us to have open borders where millions of

24    people float in.  All right.

25        So we'll stop there.

 1      These are just a slice of the publicity that has been

 2  generated by the Executive Branch.  This is just a snapshot of

 3  the statements that have been made that run contrary to -- and

 4  make no mistake, I'm not faulting you lawyers in front of me.

 5  I would like to know whether you are the lawyers who are

 6  telling the President don't facilitate Abrego Garcia's return,

 7  but I don't think that's a fair question for either one of you.

 8      So I'm not shooting the messenger, but what I'm making

 9  crystal clear to you all is that these interviews is what's

10  generating the publicity.  This Court and the orderly

11  progression of a case is not what ███████████should be

12  concerned about in terms of generating publicity.  So I

13  reject -- as of now, you can tell me why I'm wrong, that

14  resumption of discovery would -- would -- would be the problem

15  with regard to publicity.

16      The problem is that the Executive Branch, and starting

17  with the President on down, continues to talk openly about this

18  case and to give interviews which strongly suggest, if not

19  admit, that there are no efforts to facilitate Mr. Abrego

20  Garcia's return, at least from the President of the United

21  States.

22      So that's a huge problem, in my view.

23      The second is, with all deference to the Executive Branch,

24  I asked for details, not granular details, basic details of

25  who, what, when and where to confirm that efforts are ongoing.

1      If you read this letter very carefully, and that's why I

2  wanted to read it into the record, it tells me, and I credit

3  this, 

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23      But in my view, currently, that does not -- that's not a

24  sufficient showing to allow the stay to continue.

25      Thirdly, especially because you would get all the

1  protections that the law affords you in terms of privilege and

2  litigating privilege and keeping what you believe is sensitive

3  diplomatic negotiations, if you believe that privilege warrants

4  keeping that out of the litigation space, that you make your

5  arguments to the Court, and you do so in a way that fleshes

6  them out.  But not to give me, you know, "take our word for

7  it," which is how I see this right now.

8      Okay.  I've said a lot, Mr. Guynn, and I will allow you

9  now to tell me where you want to start in terms of the

10  discussion.

11      **MR. GUYNN:**  Yes, you did say a lot, and -- but I

12  tried to take detailed notes, and so I think I understand where

13  the important points are to address some of your concerns.  But

14  if -- if I miss anything, please, let me know.

15      I think where we -- where we -- the starting place for

16  this, I -- I think we can talk about discovery in a moment.

17  But the starting place, I think, is your order at Docket 79,

18  which is, "Upon a showing of good cause, the Court may permit

19  discovery where significant questions regarding noncompliance

20  with the court order had been raised."

21      Our hope, Your Honor, was that that good cause -- the

22  defendant's burden to show good cause that we were complying

23  with the court order would be satisfied by the ex parte

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████

 1          THE COURT:  Wait a minute.  I think we're mixing up

 2   things.

 3          MR. GUYNN:  Sure.

 4          THE COURT:  You asked for a stay.

 5          MR. GUYNN:  Yes.

 6          THE COURT:  That's what's before me, not the prior

 7   order which ordered discovery to get to that question.

 8     So you're asking to pause the very procedure that would

 9   get to the bottom of this.  And you're asking -- if I

10   understand it right, you are asking for that because you

11   believed that discovery ████████████████████████████████

12   ████████████████████████████████████████████████████

13     And I granted you that for a week.  That's before me right

14   now.

15     So --

16          MR. GUYNN:  Sure, I --

17          THE COURT:  -- what's the point with 79?

18          MR. GUYNN:  I guess I want to make sure that we're

19   not speaking past each other.

20          THE COURT:  Okay.

21          MR. GUYNN:  My understanding is the reason that the

22   Court felt that it needed to grant the plaintiffs' -- not that

23   it needed, that it should grant the plaintiffs' request for

24   expedited discovery of the government's actions to facilitate

25   his return to the United States was because the Court had

```
 1   genuine questions about whether those efforts were under way.
 2            THE COURT:  Well, I'm not going to relitigate the
 3   order.  I'm not going to revisit it.  It is what it is.
 4        So tell me why it's relevant to 104.
 5            MR. GUYNN:  Yes.  And I'm trying to do that.
 6            THE COURT:  Okay.
 7            MR. GUYNN:  Is that, Your Honor, if the ends of that
 8   discovery is to understand what we're doing, that -- we --
 9            THE COURT:  No.
10            MR. GUYNN:  We believe that these submissions is our
11   attempt to show you what we're doing.
12            THE COURT:  But you haven't said anything.  You
13   haven't said anything in this letter apart from ███████████
14   ████████████████████████████████████████████████
15   ██████████████████████████
16       ██████████████████████████████████████████████
17   ██████████████████████████████████████████████████████
18   ████████
19        And there's nothing that this Court is going to do to
20   interfere with that.  If that's one manner to facilitate
21   Mr. Abrego Garcia's return, you are fully -- I have no say in
22   that.  And you haven't made -- here's the narrow question
23   before me:  Have you made a sufficient showing to stay
24   discovery?  That there is some reason to continue the stay?
25   That's where my focus is.
```

1    Last week, again, with -- with concern, I granted it for a

2    week.  And I said, show your work.

3        What you have shown me, and I credit this, is that I think

4    in fairness to the government, ████████████████████████

5    ██████████████████████████████████████████

6        But on the other side, the Executive Branch continues to

7    tell the world:  Can't do it; won't do it; lawyers have told me

8    I won't do it; he's a bad man, very bad man.

9        And so -- so what do I do with that?  Where you don't give

10   me details about what you are doing, but -- but the same

11   Executive Branch tells the world that you will not -- that the

12   President of the United States will not do anything?

13        **MR. GUYNN:**  So, Your Honor, I -- President Trump

14   is -- you know, is a master messenger in many ways, but he also

15   doesn't speak with precision about things sometimes.  And I

16   think that this might be one of those situations where perhaps

17   his comments were based on what he was recalling may have been

18   the state of play previously.

19        **THE COURT:**  Here's the problem for the Executive

20   Branch, though:  Isn't it basic, isn't it black letter law that

21   the Executive Branch must speak with one voice?

22        Right now, the administration is not speaking with one

23   voice, and I'm not here to credit one versus the other.  I'm

24   simply to put them both before you and say if I can't -- if I

25   can't get that one voice, and you don't give me details when I

1  give you the most protection available, I give you an ex parte

2  under-seal proceeding, I give you all of the assurance that

3  this will be handled with all that the -- the protection that

4  you had last week, and you tell me, ███████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████

7      And the reason why is "take our word for it," and yet the

8  word being spoken by the Executive Branch is, in many ways, at

9  cross purposes with one another.  I don't know what to do with

10 that.

11     Well, I -- I do apologize, Your Honor, that that is how

12 you perceived this, and --

13     THE COURT:  Well, I'm reading it.  I'm not perceiving

14 it.  I have a right to provide further explanation of why.

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████and then to not give me

17 any detail in writing, that's the words on the page.  This is

18 not my interpretation.

19     MR. GUYNN:  I apologize.  What I meant was our intent

20 in providing this letter was to give what we thought the Court

21 desired and needed to -- to be able to credit and understand

22 that we were acting in good faith to comply.  And I hear that

23 that -- that --

24     THE COURT:  And, Mr. Guynn, I'm not questioning your

25 good faith.  I'm not questioning ████████████████ good faith.

1  I'm talking about sufficiency.

2        **MR. GUYNN:**  And I -- I would be -- I would like to

3  have the opportunity to consult with my clients because if what

4  the Court is asking for is in addition to this, ████████

5  ██████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11        **THE COURT:**  ████████████████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████████████████████████████████████████████

14  ████████████████████████████████████████

15     The Supreme Court was clear, the government should be

16  prepared, when it can, to give details about the steps that has

17  been taken and will be taken.  If you can't, that's privilege,

18  and then you assert the privilege.

19     If you can, you give it.

20     And so I don't understand what it is that's going to

21  happen if I give you more time.  I was real clear.  I tried to

22  be really clear, and I give lawyers opportunity to ask.  And I

23  was -- I don't think I could have been clearer:  Show your

24  work.  So that's number one.

25     And number two is, I'm not doing this ex parte under seal

1  anymore.  Because if you don't have evidence, then there's no

2  need for ex parte under seal.

3      I will certainly protect what you've given me so far.  I'm

4  not suggesting I'm going to release, you know, thus far.  But

5  at 10:00, I'm going to get the plaintiffs on the phone so we

6  can talk about next steps, because this is not going to stay

7  under -- like, this is, you know, this case is a mushroom.

8  It's not appropriate.

9      So you -- feel free to talk to your colleagues, because if

10  you think that there's a more showing that you wish to make,

11  you can refile the motion.

12          **MR. GUYNN:**  Well, I'm hearing from Your Honor that

13  this letter is deficient because it doesn't provide the who,

14  what, when and where.

15          **THE COURT:**  Well, it's --

16          **MR. GUYNN:**  I would like --

17          **THE COURT:**  No, no, I don't -- I don't really want

18  you to splice it like that.  Okay?  This is the overarching

19  picture.

20  ███████████████████████████████████████████████████

21  █████████████████████████  you may very well need to assert certain

22  privileges to discovery going forward.  And I welcome the

23  litigation so I can fully and fairly decide those.

24      But this cannot be -- this doesn't mean that discovery is

25  stayed.  That is an extraordinary measure in an extraordinary

1  case, and I have been given no facts to support the stay of

2  discovery precisely because there's procedures in place under

3  the rules and under well-established law to give you the

4  protection you need.

5      So let's just get real granular about it. You -- you

6  rightly asked, and the plaintiff did not object, to certain

7  answers to interrogatories being under seal. And I granted

8  that motion. That is a -- that is a procedure that's put in

9  place to protect the very concerns that you're articulating in

10 this letter. It's just one very simple -- one very simple tool

11 in the Court's toolkit, but there are many.

12     You have a protective order. You have the assertions of

13 privilege. You even said last time that this reason I should

14 grant the stay is so you don't have to file an emergency motion

15 to forestall a deposition.

16     Well, maybe what we need to talk about is whether the

17 discovery order needs to be modified in some way, that you have

18 certain concerns about certain parts of the discovery going

19 forward. But -- but you got to litigate that, and maybe we

20 litigate it under seal. The parties have to -- but the parties

21 have to give me input on that.

22     In other words, there are a lot of protections available

23 in the ordinary course of litigation, and you have not

24 demonstrated that this is such an extraordinary situation that

25 I can't honor those protections and give the Executive Branch

1  the deference it's owed but still have the case proceed.  And

2  certainly not for publicity sake, because I do not buy that at

3  all.

4      The Executive Branch won't stop talking about this case,

5  so certainly whatever interest the publicity -- the public has

6  is not my -- it's not my doing.  So -- see what I'm saying?  Is

7  I think you have so many tools that you can use.

8          **MR. GUYNN:**  I do understand what you're saying.  And

9  I know we're not -- we're not relitigating the -- the order

10  that there would be expedited discovery, but I do wish to just

11  be heard on the point, Your Honor, that the -- the end of that

12  was to discover and, I think, to provide pressure for the

13  Executive to do what it was ordered to do by this Court and by

14  the Supreme Court.

15          **THE COURT:**  Right.  Okay.

16          **MR. GUYNN:**  And I think that, you know, the Supreme

17  Court made clear that the way in which the Executive would

18  comply with your -- Your Honor's order, as clarified by the

19  Supreme Court, and then as further clarified by the Fourth

20  Circuit, would be something within the purview of the

21  Executive, but the Executive does need to act.

22      I mean, I read Judge Wilkinson's order on our appeal,

23  and -- emergency appeal and stay as saying, look, facilitate is

24  not just a passive verb, it's an active verb.

25          **THE COURT:**  Right.

1        **MR. GUYNN:**  You need to reach out and do something.

2        **THE COURT:**  Right.

3        **MR. GUYNN:**  And we think that we had been doing some

4   of that, but we did hear that loud and clear, Your Honor.

5        And so, look, I can't comment on, you know, what the date

6   is of those communications that apparently were leaked to the

7   *Atlantic*.  I -- I can't even necessarily comment on some of the

8   statements that President Trump has made.

9        **THE COURT:**  Well, who can?

10       **MR. GUYNN:**  Well, but here's --

11       **THE COURT:**  Who is the lawyer?  Who is the lawyer

12   that's telling the President he can't do anything or shouldn't

13   do anything?

14       You see what I'm saying?  Come on.  This is not -- this is

15   not that complicated.

16       **MR. GUYNN:**  Your Honor, but where I'm going is, is --

17   as I said in -- when I was here with you last week, we -- we

18   made our argument to the Fourth Circuit about what we thought

19   we had to do.

20       **THE COURT:**  Right.

21       **MR. GUYNN:**  And we lost.

22       **THE COURT:**  Okay.

23       **MR. GUYNN:**  And we then changed course.  So, you

24   know, if -- if the *Atlantic* is --

25       **THE COURT:**  You haven't given me a reason to stay

1  discovery, though.  Because, okay, facilitate.  Facilitate the

2  way that the Executive Branch interprets it, right?  Okay.  Do

3  what you think you do to act.

4      If the plaintiff asks for something that you believe they

5  are not entitled to or this Court is not entitled to, are

6  grounds of privilege, assert the privilege.

7          MR. GUYNN:  I understand.

8          THE COURT:  So what's the problem with doing this in

9  the ordinary course, since I don't believe you have given me

10 any additional evidence that the stay should continue?

11         MR. GUYNN:  The ordinary course is no expedited

12 discovery.  The ordinary course is we answer the complaint.

13 The ordinary course is --

14         THE COURT:  No, no, no, the injunction -- this is

15 about the scope and relief of the injunction.  Okay?  We're not

16 on -- we're not on the complaint as -- you know, answering the

17 complaint, okay?  We're about the scope of the relief of the

18 injunction.  We're on remand from the Supreme Court.  The

19 Executive still maintains, all depending on who you are

20 listening to, that you're in compliance with the Supreme Court.

21 This is about whether you are, in part, right?

22         MR. GUYNN:  I understand that's all this is about, is

23 whether we are.

24         THE COURT:  Well, whatever it is about, I ordered

25 discovery.  You have to make a showing as to why I should

1  continue to stay discovery.  The two grounds you've given me

2  ████████████████████████████████████████████████

3  ██████████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████

6      ████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ██████████████████

9      ██████████████████████████████████████████████

10  ████████████████████████████████████████

11  ████████████████

12      Well, then, I -- I strongly suggest that the evidence

13  demonstrates you need to talk to your own Executive Branch,

14  that the discovery is not the problem with ongoing publicity.

15  You want to reduce the ongoing publicity, it doesn't -- that

16  job doesn't lie with me.

17          MR. GUYNN:  And I understand the Court's point on

18  that.  And I understand the Court's frustration with that

19  statement, coupled with the matters the Court has raised here.

20  I understand that frustration.

21      I guess --

22          THE COURT:  Give me why the alternatives that are

23  available to you in the law are not sufficient?  Why is it not

24  sufficient to take full advantage of the protective order, the

25  privileges that you can assert?  You told me you would work --

1  keep working, so obviously you've been working on these issues.

2  Why do we not -- why do you not get -- meet-and-confer with the

3  plaintiff and ask for enlargement of time?  Have you done that

4  yet?  Since you seem to be bristling at the expedited nature of

5  the discovery, have you and the plaintiff discussed

6  alternatives?

7          **MR. GUYNN:**  We have not met and conferred yet about

8  that -- about alternatives.

9      But, Your Honor, it's not just that I'm bristling at the

10  expedited nature of the discovery, it's that if -- if we -- the

11  Supreme Court ordered us to facilitate his return, and then the

12  Supreme Court --

13          **THE COURT:**  And to tell -- tell the Court what steps

14  you have taken or will take when you can.

15          **MR. GUYNN:**  But the details that we share about those

16  steps are also, you know, shrouded in privilege and secrecy for

17  a very good reason.

18          **THE COURT:**  Correct.  Okay.

19          **MR. GUYNN:**  Including what we say to plaintiffs and

20  what we can even say here.

21          **THE COURT:**  But, Mr. Guynn, then you either have

22  to -- you have to show your work in court.

23          **MR. GUYNN:**  Yeah, well, and, Your Honor, what I'm --

24  what I'm trying to suggest is, our -- the view of the

25  defendants is that we have gone far above and beyond what the

1  Supreme Court would have anticipated we were ordered to do.  I

2  mean, this isn't -- this isn't just --

3         **THE COURT:**  You've lost me there because the

4  Executive Branch is telling the world that the lawyers told him

5  he doesn't have to do anything.

6         **MR. GUYNN:**  There's some reporting about some private

7  statements that I'm not sure when they were made, and then

8  there's been reporting that you've shared of public statements,

9  he President --

10         **THE COURT:**  April 25th and April 29th, post stay.

11         **MR. GUYNN:**  And so what I understand, is Your Honor

12  is crediting those over this --

13         **THE COURT:**  No, I'm not crediting them.  I'm not

14  crediting them.  I'm saying they don't exist in the same space.

15  You haven't demonstrated a sufficient showing to extend the

16  stay.  You haven't answered my questions to my satisfaction.

17  You have given me no evidence.  Okay?

18      And nothing that you have raised is -- is -- it cannot be

19  remedied if you make the proper showing through the ordinary

20  course of discovery.  These -- these principles that you have

21  articulated in the responses, which my last order was clear,

22  you're -- you're given the opportunity to flesh them out, you

23  have to flesh them out.

24      These privileges, you cite me a litany of privileges.  I

25  welcome the litigation in that regard.  And the courts have

1   dealt with these privileges for time and memorial.  Why can't
2   we do it that way here?
3           **MR. GUYNN:**  So I -- I think I've tried to address, I
4   think, what is the kernel of that question.  And I can see --
5           **THE COURT:**  Yeah.
6           **MR. GUYNN:**  And I'm hearing the Court is not inclined
7   to continue the stay.
8       In terms of how the concerns about, you know, the
9   sensitivities, the privileges and the other issues implicated
10  by responding to discovery, what I would just ask the Court to
11  be -- I would just implore the Court to be cognizant of is the
12  difficulty of collecting data, information from multiple
13  agencies.  You know, the -- what is required --
14          **THE COURT:**  I understand that.  But --
15          **MR. GUYNN:**  Due in one week.
16          **THE COURT:**  But there has been no shortage of
17  opportunity for so many, from the President on down, to speak
18  openly and with great flourish about all the details in this
19  case.
20          **MR. GUYNN:**  My apologies.  I meant in terms of
21  providing the actual responses in a way that fully comply with
22  the Rules of Civil Procedure.
23          **THE COURT:**  Okay.  Well, then you talk with the
24  plaintiffs.  But, you know, the Rules of Civil Procedure have a
25  clause in there where you say if discovery is ongoing, it

1  will -- we will supplement.  You need to -- you didn't say that

2  in your answers and your responses.  Think about that.

3       You need to confer.  You meet and confer with the

4  plaintiffs and work out a schedule if you can.

5       But these -- these arguments are not good grounds for a

6  stay.

7       Now, I will say this:  I'm not going to make a final

8  decision until the plaintiffs weigh in.  And the reason for

9  that is that the plaintiffs have a stake in this.  In other

10 words, their response in your pleading to me was, Judge, if you

11 believe that these efforts are in good faith, we defer.

12      And my response, when we get the plaintiffs on the line

13 is, I don't believe it's about good faith.  I believe at least

14 this narrow why -- there's other issues of good faith, but on

15 this narrow question, this is about sufficiency.

16      And I want the plaintiffs' position.  Because it's

17 possible that the plaintiff might say, "From our clients'

18 perspective, we want the stay.  We want to give -- give this a

19 chance, Judge."  And I'm not going to stand -- in other words,

20 I can't make that decision, ultimate decision without hearing

21 from them.

22      So this is my plan, and I want you to comment on this, if

23 you think that there's some interest I am at cross purposes

24 with.  But at 10:00, when the plaintiffs join us, I will let

25 them know that you have made a showing

1            But beyond that, I don't find the showing

2   sufficient, but I don't believe it's a question of good versus

3   bad faith.

4      And I do want the plaintiffs' position on granting a week

5   additional stay, because if the plaintiffs' position is the

6   plaintiff wants to give that -- that -- the plaintiff doesn't

7   want to engage in the litigation for whatever reason, I want

8   them to be heard on that.

9      Does that make sense to you, Mr. Guynn?

10       **MR. GUYNN:** I understand what you're saying.

11       **THE COURT:** And they have to be involved at some

12   point, because this is not -- this is really outside the

13   ordinary course. And the only reason I grant ex parte under

14   seal is because

15

16

17       **MR. GUYNN:** And I am very -- I really appreciate that

18   Your Honor has given us that opportunity twice.

19      And I think to your point, I mean, our position is that

20   this letter, although Your Honor believes it's lacking in some

21   critical details, we still think that it is just a shot through

22   with information and material --

23       **THE COURT:** I disagree with you. I'm asking a very

24   direct question.

25       **MR. GUYNN:** Yes.

1    **THE COURT:**  And I would like an answer from you on

2    this.

3        If I were to share with the plaintiffs that the showing

4    has been ████████████████████████ I don't believe I am

5    sharing anything of any sensitivity that cannot be handled by

6    the under-seal nature of the proceedings and the protective

7    order that you have in place.

8        You've already answered the interrogatories with

9    essentially that.  And all -- the only detail I'm giving the

10   plaintiff ████████████████████ Okay?  That's it.  I

11   want them to know that because they might want the stay.

12       But beyond that, that's the only detail I'm willing to

13   provide.

14       I'm also willing to say at this juncture, if you continue

15   to defer to the Court, I don't believe the showing has been

16   met, but I want the parties' input on it and it has to be an

17   adversarial process.

18       What I don't want to do is risk disclosure of anything of

19   sensitivity.  And I don't think telling the plaintiff this

20   █████████████████████████████████████████ that's it,

21   without further detail, does risk that.

22       Do you agree with that?

23       **MR. GUYNN:**  I think I agree.  I would like to confer

24   with my clients on that.  I know there's not much time.

25       **THE COURT:**  Yeah, so at 10:00, before we get the

1   plaintiffs on the line, you give me your position and I'll

2   decide if it's warranted.  Because, frankly, I don't really

3   see -- given the way you answered the interrogatories, I don't

4   see the additional detail, which is to your credit.  I mean,

5   understand why I want to share it with the plaintiff.  It's to

6   say that to the extent there's a good-faith showing here, that

7   that's the issue, ████████████████████.  Okay?

8           **MR. GUYNN:**  I understand.

9           **THE COURT:**  It doesn't -- that's -- that's a good

10  thing, in my view.

11          **MR. GUYNN:**  I agree.  I just need to confer with my

12  clients.

13          **THE COURT:**  I understand that.  But that's where it

14  stops.  That's where it -- the factual disclosure would stop,

15  and I wouldn't tell them the grounds, other than to say apart

16  from that, the showing has not been made.  I do not believe

17  it's a question of good versus bad faith.  I believe it's a

18  request of sufficiency.

19      With that, though, I want the plaintiffs' input.  If the

20  plaintiff wishes to keep discovery on ice to give this process

21  additional time, I want to know that.  If not, I want to know

22  that.  If they are agnostic, I want to know that.  That's it.

23  And then I'll make my decision.

24          **MR. GUYNN:**  I understand.  I understand, thank you,

25  Your Honor.

1          **THE COURT:**  All right.  Thank you all.

2      So we will resume at 10:00.  I'll hear from you first, and

3  then we'll patch in the plaintiffs.

4      Okay.  Great.  Thanks.

5          **DEPUTY CLERK:**  All rise.  This Honorable Court now

6  stands in recess.

7      (Proceedings were concluded at 9:44 a.m.)

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                              Dated this 6th day of June 2025.

13

14

15                              /S/ Paula J. Leeper

16                              _____

17                              Paula J. Leeper, RPR, CRR
                                Federal Official Reporter

18

19

20

21

22

23

24

25

DEPUTY CLERK: [3]   2/3 2/8 34/5
MR. GUYNN: [48]   
THE COURT: [50]

**/**
/s [1]   35/15

**1**
104 [2]   3/20 17/4
10:00 [4]   21/5 30/24 32/25 34/2
10:45 [2]   4/5 4/8
13 [5]   6/24 8/25 9/3 9/5 11/12
15 [1]   7/4
16 [1]   7/3
18 [1]   7/12

**2**
2019 [1]   7/8
202 [1]   1/18
2025 [4]   1/11 10/14 10/15 35/12
20530 [1]   1/17
23 [1]   7/3
25th [2]   10/14 28/10
28 [1]   35/6
29 [1]   10/15
29th [1]   28/10

**3**
30 [1]   1/11

**4**
4809 [1]   1/18

**6**
6:01 [1]   10/14
6th [1]   35/12

**7**
753 [1]   35/6
79 [2]   15/17 16/17

**8**
856-4809 [1]   1/18
8:25-cv-00951-PX [1]   1/6

**9**
950 [1]   1/17
951 [1]   2/9
9:00 [2]   1/11 10/15
9:00 p.m [1]   10/15
9:44 [1]   34/7

**A**
a.m [2]   1/11 34/7
ABC [3]   8/5 10/3 10/14
able [1]   19/21
above [2]   27/25 35/9
above-entitled [1]   35/9
ABREGO [16]   1/4 2/9 4/23 5/7 5/13 5/13 6/13 6/17
  6/22 7/2 7/7 8/7 10/23 13/6 13/19 17/21
absent [1]   4/4
abundance [1]   2/22
acknowledged [1]   11/1
act [2]   23/21 25/3
acting [1]   19/22
Action [1]   2/9
actions [1]   16/24
active [1]   23/24
actual [2]   10/17 29/21
acutely [1]   3/4
ad [1]   3/14
addition [1]   20/4
additional [5]   4/12 25/10 31/5 33/4 33/21
address [2]   15/13 29/3
administration [3]   6/16 7/9 18/22
admit [1]   13/19
advantage [1]   26/24
adversarial [1]   32/17
affiliated [1]   9/13
affords [1]   15/1
after [2]   6/11 6/13
again [2]   8/5 18/1
agencies [1]   29/13
agnostic [1]   33/22
agree [3]   32/22 32/23 33/11
agreement [1]   3/18
AIDED [1]   1/22
al [5]   1/4 1/7 2/10 2/10 9/16
Al-Qaeda [1]   9/16
all [25]   2/3 2/16 2/16 2/18 6/19 7/23 10/2 10/6
  10/20 11/22 12/24 13/9 13/24 14/19 19/2 19/3
  23/3 25/15 29/22 29/18 32/9 34/1 34/1 34/5
alleged [1]   6/24
allow [3]   3/8 14/24 15/8
allowed [1]   12/23
already [1]   32/8
also [5]   1/19 4/2 18/14 27/16 32/14
alternatives [3]   26/22 27/6 27/8
although [1]   31/20
always [1]   12/20
am [3]   30/23 31/17 32/4
ambassador [1]   6/21
another [2]   9/10 19/9
answer [10]   8/13 8/15 8/19 8/23 9/17 10/2 11/5
  11/10 25/12 32/1
answered [3]   28/16 32/8 33/3
answering [1]   25/16
answers [2]   22/7 30/2

**B**
anticipated [1]   28/1
anymore [1]   21/1
anything [3]   14/3 24/14 35/2
apart [2]   17/13 33/15
apologies [1]   29/20
apologize [2]   19/11 19/19
apparently [1]   24/6
appeal [3]   6/22 23/22 23/23
APPEARANCES [1]   1/13
appeared [1]   7/4
appointed [1]   11/7
appreciate [1]   31/17
appropriate [1]   21/8
APRIL [5]   1/11 10/14 10/15 28/10 28/10
April 25th [2]   10/14 28/10
April 29 [1]   10/15
April 29th [1]   28/10
argument [1]   24/18
arguments [2]   15/5 30/5
ARMANDO [2]   1/4 2/9
article [2]   6/16 10/16
articulated [1]   28/21
articulating [1]   22/9
ask [9]   7/11 8/14 8/19 8/20 10/22 20/22 27/3 29/10
asked [9]   8/7 8/12 8/15 8/17 8/19 8/20 13/24 16/4
  22/6
asking [5]   16/8 16/9 16/10 20/4 31/23
asks [1]   25/4
assert [4]   20/18 21/21 25/6 26/25
assertions [2]   22/12
assessment [1]   3/9
ASSISTANT [1]   1/16
assurance [1]   19/2
assure [1]   5/14
Atlantic [4]   6/11 6/15 24/7 24/24
attempt [1]   17/11
ATTORNEY [1]   1/16
attorneys [2]   6/14 7/6 7/10 8/20
available [3]   19/1 22/22 26/23
Avenue [1]   1/17

**B**
back [8]   5/2 6/15 9/19 9/21 10/25 11/1 11/19 11/25
bad [7]   9/1 9/1 9/10 18/8 18/8 31/3 33/17
Barrio [1]   7/12
Barrio 18 [1]   7/12
based [1]   18/17
basic [2]   13/24 18/20
basis [1]   4/10
bear [2]   2/25 10/5
beat [1]   11/13
beater [1]   8/25
because [24]   3/7 3/14 3/15 8/1 8/19 10/5 14/25
  16/10 16/25 20/3 21/1 21/6 21/9 21/13 22/2 23/2
  25/1 28/3 30/16 31/5 31/12 31/14 32/1 33/2
become [1]   6/18
before [10]   1/10 2/8 2/10 6/19 7/23 16/6 16/13
  17/23 18/24 32/25
began [1]   6/14
behalf [3]   1/14 2/14 5/15
being [2]   19/8 22/7
believe [16]   8/22 8/23 9/6 15/2 15/3 17/10 25/4
  25/9 30/11 30/13 30/13 31/2 32/4 32/15 33/16 33/17
believed [1]   16/11
believes [1]   5/6 9/9 31/20
believing [1]   9/9
best [1]   5/6
beyond [3]   27/25 31/1 32/12
black [1]   18/20
borders [1]   12/23
both [2]   3/2 18/24
bother [1]   9/20
bottom [1]   16/9
Branch [13]   13/2 13/16 13/23 18/6 18/11 18/20
  18/21 19/8 22/25 23/4 25/2 26/13 28/4
briefly [1]   2/19
bring [2]   6/15 9/21
bringing [1]   9/19
bristling [2]   27/4 27/9
buck [1]   12/12
Bukele [3]   5/1 7/5 8/12
burden [1]   15/22
buy [1]   23/2

**C**
call [2]   2/7 11/24
called [1]   2/2
came [3]   7/2 9/14 11/18
can't [10]   18/7 18/24 18/25 20/17 22/25 24/5 24/7
  24/12 29/1 30/20
cannot [3]   21/24 28/18 32/5
captured [1]   10/18
care [1]   12/18
carefully [1]   14/1
case [10]   2/7 7/13 8/4 13/11 13/18 21/7 22/1 23/1
  23/4 29/19
cause [3]   15/18 15/21 15/22
caution [1]   2/23
central [1]   3/10
certain [4]   21/21 22/6 22/18 22/18
certainly [1]   21/3 23/2 23/5
CERTIFICATE [1]   34/8
certify [1]   35/6
chance [1]   30/19
changed [1]   24/23
Circuit [2]   23/20 24/18
cite [1]   28/24
CIVIL [4]   1/16 2/9 29/22 29/24
clarified [2]   23/18 23/19
clause [1]   29/25
clear [9]   4/2 6/18 13/9 20/15 20/21 20/22 23/17
  24/4 28/21

**C**
clearer [1]   20/23
clients [2]   20/3 32/24 33/12
client's [1]   
cognizance [1]   
colleagues [1]   21/9
collecting [1]   29/12
Come [1]   24/14
comes [1]   2/10
comment [3]   24/5 24/7 30/22
comments [1]   18/17
committed [2]   5/14 9/25
Committee [1]   5/3
communications [1]   24/6
complaint [3]   25/12 25/16 25/17
compliance [2]   9/23 25/20
complicated [1]   24/15
comply [5]   5/16 11/4 19/22 23/18 29/21
complying [2]   10/1 15/22
COMPUTER [1]   
COMPUTER-AIDED [1]   1/22
concern [1]   18/1
concerned [1]   13/12
concerns [5]   7/7 15/13 22/9 22/18 29/8
concluded [1]   34/7
confer [5]   27/2 30/3 30/3 32/23 33/11
Conference [1]   35/10
conferred [1]   27/7
confirm [1]   13/25
conformance [1]   35/10
consult [1]   20/3
contents [1]   4/7
continuance [1]   4/3
continue [7]   3/14 14/24 17/24 25/10 26/1 29/7
  32/14
continued [1]   3/21
continues [3]   8/3 13/17 18/6
contrary [1]   13/3
conversations [1]   6/20
cookie [1]   11/12
correct [3]   4/1 27/18 35/7
counsel [3]   2/12 2/18 2/24
country [3]   5/6 10/24 11/18
country's [1]   6/22
couple [1]   6/9
coupled [1]   26/19
course [8]   22/23 24/23 25/9 25/11 25/12 25/13
  28/20 31/13
court [54]   
Court's [6]   3/22 4/11 5/13 22/11 26/17 26/18
courts [4]   9/25 10/11 10/22 28/25
credit [5]   14/2 18/3 18/23 19/21 33/4
crediting [3]   28/12 28/13 28/14
critical [1]   31/21
criticism [1]   7/13
cross [2]   19/9 30/23
crossed [1]   10/24
CRR [1]   35/16
crystal [1]   13/9
currently [1]   14/23
cv [1]   1/6

**D**
data [1]   29/12
date [2]   10/14 24/5
Dated [1]   35/12
dates [2]   5/2 10/11
day [6]   6/10 8/22 9/14 9/15 9/16 35/12
days [1]   6/13
DC [1]   1/17
dealt [1]   29/1
Dear [1]   4/10
decade [1]   5/2
decide [2]   21/23 33/2
decision [7]   3/22 9/21 12/8 30/8 30/20 30/20 33/23
deep [1]   5/4
Defendant [1]   1/8
defendant's [1]   15/22
Defendants [3]   1/14 2/14 27/25
defer [2]   30/11 32/15
deference [5]   3/4 3/8 3/11 13/23 23/1
deferring [1]   3/22
deficient [1]   21/13
democrats [1]   9/11
demonstrated [2]   22/24 28/15
demonstrates [1]   26/13
DEPARTMENT [4]   1/16 2/14 6/12 7/1
Department's [1]   6/23
depending [1]   25/19
deported [1]   7/3
deposition [1]   22/15
DEPUTY [1]   1/16
deserve [1]   9/14
deserves [1]   8/22
desired [1]   19/21
desk [1]   11/20
despite [1]   7/25
detail [5]   19/17 32/9 32/12 32/21 33/4
detailed [1]   15/12
details [11]   3/16 8/4 13/24 13/24 18/10
  18/25 20/16 27/13 28/18 31/21
determination [1]   9/18
determine [1]   9/17
DHS [1]   6/24
DHS's [1]   7/6
different [1]   8/10
difficulty [1]   29/12
diligent [1]   5/15
diplomatic [4]   3/5 5/5 8/2 15/3
diplomats [1]   7/10
direct [1]   31/24
disagree [1]   31/23
disclosed [1]   6/13
disclosure [2]   32/18 33/14

**D**

discover [1] 23/12
discovery [28] 16/11 16/24 17/8 17/14 18/1 18/9 22/4 22/7 22/17 22/18 23/10 25/11 25/12 25/25 26/1 26/14 27/5 27/10 28/20 29/10 29/25 33/20
discuss [1] 4/7
discussed [1] 27/5
discussing [1] 6/14
discussion [1] 12/11
discussions [2] 3/5 4/23
disinclined [1] 4/3
DISTRICT [7] 1/1 1/1 1/11 2/3 2/4 35/5 35/5
DIVISION [2] 1/2 1/16
do [38]
Docket [2] 1/6 15/17
doing [8] 11/4 17/8 17/11 18/10 20/25 23/6 24/3 25/8
DOJ [1] 1/19
Donald [2] 12/11 12/17
down [2] 13/17 29/17
Due [1] 29/15
during [1] 9/15

**E**

e-mail [1] 4/11
each [1] 16/19
earlier [1] 4/11
efforts [6] 5/15 8/2 13/19 13/25 17/1 30/11
either [2] 13/7 27/21
E1 [7] 4/24 5/1 5/4 6/21 10/25 11/1 11/25
El Salvador [1] 10/25
elected [1] 12/17
else [1] 6/8
emergency [2] 22/14 23/23
end [1] 23/11
ends [1] 17/7
engage [1] 31/7
enlargement [1] 27/3
entitled [4] 6/16 25/5 25/5 35/9
Ernesto [2] 1/19 2/15
error [1] 12/18
especially [1] 14/25
ESQUIRE [2] 1/15 1/19
essentially [1] 32/9
established [1] 22/3
et [4] 1/4 1/7 2/10 2/10
even [4] 11/14 22/13 24/7 27/20
evidence [6] 4/4 6/25 21/1 25/10 26/12 28/17
ex [10] 1/10 2/11 3/20 4/10 4/11 15/23 19/1 20/25 21/2 31/13
except [1] 8/20
Executive [18] 13/2 13/16 13/23 18/6 18/11 18/19 18/21 19/8 22/25 23/4 23/13 23/17 23/21 23/25 25/2 25/19 26/13 28/4
exist [1] 28/14
expedited [5] 16/24 23/10 25/11 27/4 27/10
experience [1] 5/4
explanation [1] 19/14
extend [1] 28/15
extent [1] 33/6
extraordinary [3] 21/25 21/25 22/24

**F**

facilitate [11] 5/13 11/3 12/7 13/6 13/19 16/24 17/20 23/23 25/1 25/11 27/11
facilitating [2] 8/7 8/18
facilitation [1] 5/7
fact [2] 3/23 9/3
facts [1] 12/2
factual [1] 13/14
fair [1] 13/7
fairly [1] 21/23
fairness [2] 7/22 18/4
faith [11] 2/24 3/15 19/22 19/25 19/25 30/11 30/13 30/14 31/3 33/6 33/17
fake [1] 9/8
familiarity [1] 5/5
far [4] 6/20 21/3 21/4 27/25
faulting [1] 13/4
Federal [2] 35/4 35/17
feedback [1] 6/19
feel [2] 8/9 21/9
felt [1] 16/22
file [1] 22/14
final [1] 30/7
find [2] 12/21 31/1
first [3] 6/23 9/1 34/2
flesh [2] 28/22 28/23
fleshes [1] 15/5
Flipped [1] 6/16
float [2] 6/20 12/24
flourish [1] 29/18
focus [1] 17/25
follow [2] 12/13 12/14
following [1] 4/6
foregoing [1] 35/7
foreign [2] 3/4 5/3
forestall [2] 22/15
format [1] 35/9
forward [3] 3/19 21/22 22/19
found [2] 8/24 9/2
Fourth [2] 23/19 24/18
frankly [2] 9/19 33/2
free [1] 21/9
front [1] 13/4
fruit [1] 2/25
frustration [2] 26/18 26/20
full [4] 3/9 8/5 8/6 26/24
full-throated [1] 3/9
fully [3] 17/21 21/23 29/21
further [4] 4/4 19/14 23/19 32/21

**G**

gang [3] 6/25 7/5 11/3
GARCIA [19] 2/2 3/15 /13 6/ 10/23
Garcia's [7] 5/7 5/14 6/13 6/22 13/6 13/20 17/21
GENERAL [1] 1/16
generated [1] 13/2
generating [2] 13/10 13/12
genius [1] 12/20
gentleman [2] 11/15 12/2
gentlemen [2] 2/6
genuine [1] 17/1
give [28] 2/23 3/11 8/3 8/8 9/17 10/18 13/18 15/6 18/9 18/25 19/1 19/1 19/2 19/16 19/20 20/16 20/19 20/21 20/22 22/25 26/22 30/18 30/18 31/6 33/1 33/20
given [9] 21/3 22/1 24/25 25/9 26/1 28/17 28/22 31/18 33/3
giving [1] 32/9
goes [1] 7/6
going [14] 3/14 4/6 17/2 17/3 17/19 20/20 21/4 21/5 21/6 21/22 22/18 24/10 30/7 31/17
gone [1] 27/25
good [20] 2/6 2/13 2/16 3/15 11/16 15/18 15/21 15/22 19/22 19/25 19/25 27/17 30/5 30/11 30/13 30/14 31/2 33/6 33/9 33/17
good-faith [1] 33/6
got [2] 9/6 22/19
government [13] 2/23 3/6 3/8 3/21 4/3 4/23 5/2 6/8 6/14 7/11 11/1 18/4 20/15
government's [2] 2/20 16/24
grant [6] 2/19 4/3 16/22 16/23 22/14 31/13
granted [4] 2/22 16/13 18/1 22/7
granting [1] 31/4
granular [2] 13/24 22/5
great [3] 12/20 29/18 34/4
GREENBELT [1] 1/2
grossly [1] 12/22
grounds [4] 25/6 26/1 30/5 33/15
guess [2] 16/18 26/21
guy [1] 11/16
GUYNN [7] 1/15 2/13 3/25 15/8 19/24 27/21 31/9

**H**

handled [2] 19/3 32/5
handling [1] 9/4
happen [1] 20/21
happy [1] 9/2
harm [2] 7/12 8/2
having [2] 6/21 7/6
hear [4] 3/18 19/22 24/4 34/2
heard [4] 7/23 9/1 23/11 31/8
hearing [8] 1/10 2/11 2/21 6/9 6/11 21/12 29/6 30/22
held [1] 35/8
hell [1] 11/13
helpful [1] 10/10
hereby [1] 35/6
him [23] 6/15 7/11 7/12 7/13 8/12 8/14 8/15 8/17 8/19 8/20 8/23 8/24 9/19 9/9 9/21 11/1 11/3 11/14 11/19 11/25 12/15 28/4
his [13] 6/24 7/4 8/18 8/22 9/4 9/5 9/14 11/3 11/13 12/7 16/25 18/17 27/11
honor [17] 2/13 10/8 15/21 17/7 18/13 19/11 21/12 22/25 23/11 24/1 24/14 24/16 27/9 27/23 28/11 31/10 31/20 33/25
Honor's [1] 23/18
HONORABLE [3] 1/10 2/5 34/5
hope [1] 15/21
House [1] 7/14
however [1] 7/24
httpstime.com [1] 10/13

**I**

I'll [3] 33/1 33/23 34/2
I'm [42]
I've [3] 4/21 15/8 29/3
ice [1] 33/20
idea [1] 6/21
identify [1] 2/12
II [1] 9/15
illegally [3] 7/2 10/24 11/18
immigration [2] 7/8 10/20
implicated [1] 29/9
implore [1] 29/11
imploring [1] 9/1
important [4] 3/10 6/10 10/6 15/13
inclined [1] 29/6
include [2] 4/4 10/4
Including [1] 27/19
incompetent [3] 12/19 12/20 12/23
individuals [1] 6/12
infinitum [1] 3/14
information [3] 6/24 29/12 31/22
informed [1] 4/22
injunction [3] 25/14 25/15 25/18
innocent [1] 11/15
input [3] 22/21 32/16 33/19
instructions [1] 8/9
intent [1] 19/19
interest [2] 23/5 30/23
interfere [1] 17/20
internal [1] 7/4
interpretation [1] 19/18
interpret [1] 25/2
interrogatories [3] 22/7 32/8 33/3
interview [3] 10/3 10/13 10/17
interviews [3] 8/3 13/9 13/18
involved [2] 2/21 31/11
is [117]
isn't [4] 18/20 18/20 28/2 28/2

issue [1] 33/7
issues [3] 27/1 29/9 30/14

**J**

job [1] 26/16
join [1] 30/24
JONATHAN [2] 1/15 2/13
judge [2] 1/11 4/10 7/8 23/22 30/10 30/19
Judicial [1] 35/10
juncture [1] 32/14
June [1] 35/12
JUSTICE [1] 1/16 2/14 6/12

**K**

keep [5] 3/11 7/11 12/15 27/1 33/20
keeping [2] 15/2 15/4
kernel [1] 29/4
KILMAR [4] 1/4 2/9 6/17 10/23
knowledge [1] 4/13
knuckles [1] 9/5
KRISTI [2] 1/7 2/10

**L**

lacking [1] 31/20
last [9] 2/19 4/5 6/9 10/4 18/11 19/4 24/2 24/17 28/21
late [1] 4/5
law [8] 11/17 12/13 12/14 12/16 15/1 18/20 22/3 26/23
lawsuit [1] 6/14
lawyer [5] 9/20 11/5 11/6 24/11 24/11
lawyers [11] 7/1 8/8 8/11 9/7 9/22 12/9 13/4 13/5 18/7 20/22 28/4
leaked [1] 24/6
leap [1] 2/24
least [2] 13/20 30/13
leave [4] 8/8 8/10 9/20 9/21
Leeper [3] 35/4 35/15 35/16
legal [1] 6/23
letter [10] 4/6 4/8 7/25 14/1 17/13 18/20 19/20 21/13 22/10 31/20
lie [1] 26/16
line [2] 30/12 33/1
list [1] 7/4
Listen [1] 12/17
listening [1] 25/20
litany [1] 28/24
litigate [2] 22/19 22/20
litigating [1] 15/2
litigation [6] 3/7 15/4 21/23 22/23 28/25 31/7
long [1] 11/6
longer [1] 9/6
look [3] 8/23 23/23 24/5
lost [2] 24/21 28/3
lot [4] 8/25 15/8 15/11 22/22
lots [1] 11/12
loud [1] 24/4
lower [1] 9/25 10/1

**M**

made [13] 4/2 8/23 12/19 12/22 13/3 17/22 17/23 23/17 24/8 24/18 28/7 30/25 33/16
Magazine [1] 8/4
mail [1] 4/11
maintains [1] 25/19
make [11] 6/21 13/4 15/4 16/18 21/10 25/25 28/19 30/7 30/20 31/9 33/23
making [4] 5/15 11/11 12/8 13/8
man [9] 9/6 9/7 10/12 10/24 10/22 12/19 12/22 18/8 18/11
manner [1] 7/4
many [5] 18/14 19/8 22/11 23/7 29/17
March [1] 7/4
March 15 [1] 7/4
MARYLAND [5] 1/1 2/4 9/7 11/15 35/6
master [1] 18/14
material [1] 31/22
matter [2] 2/8 2/10 35/9
matters [1] 26/19
may [4] 3/15 15/18 18/17 21/21
maybe [3] 9/12 22/16 22/19
mean [5] 21/24 23/22 28/2 31/19 33/4
meant [2] 19/19 29/20
measure [1] 21/25
media [1] 12/21
meet [2] 27/2 30/3
member [2] 9/3 11/12
members [1] 7/5
memorial [1] 29/1
men's [1] 9/10
men's/women's [1] 9/10
messenger [2] 13/8 18/14
met [2] 6/25 27/7 32/16
might [6] 7/12 9/12 9/13 18/16 30/17 32/11
millions [1] 12/23
mindful [1] 3/4
minute [2] 6/18 16/1
mishandling [1] 7/13
miss [1] 15/14
mistake [6] 6/15 11/2 11/5 11/6 12/22 13/4
mixing [1] 16/1
modified [1] 22/17
Molina [2] 1/19 2/15
moment [4] 9/22 9/22 10/18 15/16
Montauk [1] 9/15
Moran [11] 10/22 11/9 11/16 11/19 11/22 11/24 12/4 12/7 12/10 12/12 12/14 12/16
more [3] 6/24 20/21 21/10
morning [4] 2/6 2/13 2/16 10/4
most [1] 19/1
motion [8] 2/20 3/20 3/20 3/23 3/24 21/11 22/8 22/14

**M**

move [1]  10/20
Mr. [16]  2/7 2/9 5/2
11/10 13/19 15/8 17/21 19/24 27/21 31/9
Mr. Abrego [7]  4/23 5/7 5/13 6/13 8/7 13/19 17/21
Mr. Ernesto [1]  2/15
Mr. Guynn [5]  3/25 15/18 19/24 27/21 31/9
Mr. President [1]  9/12
Mr. Trump [1]  11/10
Mr. Ulander [1]  2/7
MS [5]  6/24 8/25 9/3 9/5 11/12
MS-13 [5]  6/24 8/25 9/3 9/5 11/12
much [2]  8/10 32/24
multiple [1]  29/12
mushroom [1]  21/7
must [2]  11/3 18/21

**N**

name [1]  7/4
narrow [2]  17/22 30/14 30/15
nature [3]  27/4 27/10 32/6
Nayib [1]  7/5
Nazi [1]  9/14
necessarily [1]  24/7
need [12]  3/16 4/13 21/2 21/21 22/4 22/16 23/21
24/1 26/13 30/1 30/3 33/11
needed [3]  16/22 16/23 19/21
needs [1]  22/17
negotiations [1]  15/3
New [1]  10/4
news [3]  8/5 9/8 10/14
next [1]  21/6
nice [1]  9/7
night [2]  4/5 10/4
no [21]  8/8 9/5 9/6 12/13 12/13 12/13 13/4 13/19
17/9 17/21 21/1 21/17 21/17 25/11 25/11 25/14
25/14 28/13 28/17 29/16
nobody [2]  8/20 9/9
NOEM [2]  1/7 2/10
noncompliance [1]  15/19
not [74]
notes [2]  1/22 15/12
nothing [2]  17/19 28/18
number [4]  1/6 2/9 20/24 20/25
NW [1]  1/17

**O**

object [1]  22/6
obviously [1]  27/1
office [1]  12/12
official [4]  7/14 35/1 35/4 35/17
officials [2]  5/1 6/20
okay [23]  2/16 4/2 10/3 10/20 10/21 10/21 11/14
15/8 16/20 17/6 21/18 23/15 24/22 25/3 25/12 25/15
25/17 27/18 28/17 29/23 32/10 33/7 34/4
old [1]  7/3
one [19]  2/20 3/6 3/9 7/3 10/22 10/23 12/8 17/7
17/20 18/16 18/21 18/22 18/23 18/25 19/9 20/24
22/10 22/10 29/15
one-week [1]  2/20
ongoing [7]  3/13 4/22 8/1 13/25 26/14 26/15 29/25
only [3]  31/13 32/9 32/12
open [2]  8/3 12/23
openly [2]  13/17 29/18
opportunity [5]  20/3 20/22 28/22 29/17 31/18
order [21]  2/2 5/13 5/16 8/9 10/23 10/25 11/3
11/17 15/17 15/20 15/23 16/17 17/3 22/12 22/17 23/9
23/18 23/22 26/24 28/21 32/7
ordered [6]  12/4 16/7 23/13 25/24 27/11 28/1
orderly [2]  3/2 13/10
ordinary [7]  22/23 25/9 25/11 25/12 25/13 28/19
31/13
other [12]  7/6 7/25 9/8 16/19 18/6 18/23 22/22
29/9 30/9 30/14 30/19 33/15
others [1]  7/22
out [13]  2/22 3/17 8/24 9/22 11/13 12/19 12/21 15/4
15/6 24/1 28/22 28/23 30/4
outside [1]  31/12
over [3]  5/2 7/14 28/12
overarching [1]  21/18
owed [3]  3/4 3/8 23/1
own [2]  8/2 26/13

**P**

p.m [1]  10/15
page [2]  19/17 35/9
part [2]  3/7 25/21
parte [10]  1/10 2/11 3/20 4/10 4/11 15/23 19/1
20/25 21/2 31/13
partially [1]  2/21
parties [4]  3/17 3/18 22/20 22/20
parties' [1]  32/16
parts [1]  22/18
passive [1]  23/24
past [5]  7/12 9/6 16/19
patch [1]  34/3
path [1]  3/19
PAULA [5]  1/10 2/5 35/4 35/15 35/16
pause [1]  11/14
pending [1]  2/8
Pennsylvania [1]  1/17
people [3]  9/7 9/8 12/24
perceived [1]  19/12
perceiving [1]  19/13
perhaps [2]  3/10 18/16
period [1]  9/8
permit [1]  15/18
person [3]  9/3 11/10 11/11
personal [2]  4/25 6/22
personally [1]  4/22
persons [1]  4/12
perspective [1]  30/18

**P**

petrified [1]  11/14
phone [2]  11/19 21/5
pick [1]
picture [1]  30/10
piece [1]  3/7
place [5]  15/15 15/17 22/2 22/9
plaintiff [14]  1/5 3/22 3/23 22/6 25/4 27/3 27/5
30/17 31/6 31/6 32/10 32/19 33/9 33/20
plaintiffs [12]  2/21 21/5 27/19 29/24 30/4 30/8
30/9 30/12 30/24 32/3 33/1 34/3
plaintiffs' [8]  2/24 3/24 16/22 16/23 30/16 31/4
31/5 33/19
plan [2]  3/17 30/22
play [1]  18/18
pleading [1]  30/10
please [2]  2/12 15/14
point [5]  16/17 23/11 26/17 31/12 31/19
points [1]  15/13
political [1]  5/5
position [6]  3/24 30/16 31/4 31/5 31/19 33/1
positioned [1]  5/6
positively [1]  8/15
possible [1]  30/17
post [1]  28/10
power [1]  11/24
precisely [1]  22/2
precision [1]  18/15
prepared [1]  20/16
PRESENT [1]  1/19
presidency [1]  15/3
president [29]  5/1 6/22 7/5 8/2 8/6 8/12 9/12
11/10 11/18 11/21 11/23 11/25 12/2 12/6 12/8 12/10
12/11 12/13 12/14 12/17 13/6 13/17 13/20 18/12
18/13 24/8 24/12 28/9 29/17
presiding [1]  2/5
pressure [1]  23/12
previously [1]  18/18
principles [1]  28/20
prior [1]  16/6
private [1]  28/6
privileges [10]  3/9 15/1 15/2 15/3 20/17 20/18
22/13 25/6 25/6 27/16
privileges [6]  21/22 26/25 28/24 28/24 29/1 29/9
probably [1]  12/15
problem [7]  12/18 13/14 13/16 13/22 18/19 25/8
26/14
procedure [4]  16/8 22/8 29/22 29/24
procedures [1]  22/2
proceed [1]  23/1
proceeding [1]  19/2
proceedings [2]  32/16 34/7 35/8
process [2]  32/17 33/20
progression [2]  3/2 13/11
prompt [1]  5/15
proper [1]  28/19
protect [2]  21/3 22/9
protected [1]  7/7
protection [4]  3/10 19/1 19/3 22/4
protections [3]  15/1 22/22 22/25
protective [5]  10/25 22/12 26/24 32/6
provide [4]  19/14 21/13 23/12 32/13
provided [1]  10/13
providing [2]  19/20 29/21
province [1]  3/4
public [2]  23/5 28/8
publicity [9]  8/1 13/1 13/10 13/12 13/15 23/2 23/5
26/14 26/15
purposes [2]  19/9 30/23
pursuant [1]  33/5
purview [1]  23/20
put [5]  3/24 7/23 10/6 18/24 22/8
putting [1]  6/18
PX [1]  1/6
PX25 [1]  2/9
PX25-951 [1]  2/9

**Q**

Qaeda [1]  9/16
question [16]  8/12 8/14 8/17 8/20 8/22 9/12 9/25
10/22 13/7 16/7 17/22 29/4 30/15 31/2 31/24 33/17
questioning [2]  19/24 19/25
questions [3]  15/19 17/1 17/16
quite [1]  9/6
quote [3]  4/12 10/16 10/17
quoting [1]  6/15

**R**

raised [3]  15/20 26/19 28/18
reach [1]  24/1
read [4]  4/6 14/1 14/2 23/22
reading [1]  19/13
reads [1]  4/9
real [2]  20/21 22/5
really [6]  9/17 20/22 21/17 31/12 31/17 33/2
reason [9]  16/21 17/24 19/7 22/13 24/25 27/17 30/8
31/7 31/13
recalling [1]  18/17
recap [1]  2/19
receive [1]  3/20
received [5]  4/6 4/8 6/8 7/8 7/25
recess [1]  34/6
record [5]  2/12 4/7 6/10 10/6 14/2
REDACTED [1]  1/10
reduce [1]  26/15
refile [1]  21/11
reflect [1]  6/10
regard [3]  4/11 13/15 28/25
regarding [4]  4/13 4/23 7/7 15/19
regulations [1]  35/10
reject [1]  13/13
relations [2]  3/5 5/3
relationship [1]  4/25
release [6]  5/7 5/14 8/7 8/18 12/7 21/4

**R** (continued)

relevant [1]  17/4
relief [2]  25/15 25/17
relitigate [1]
remand [1]  25/18
remedied [1]  28/19
reported [3]  6/11 10/4 35/8
REPORTER [3]  35/1 35/4 35/17
reporting [2]  28/6 28/8
request [2]  16/23 33/18
requesting [1]  4/12
required [1]  23/19
responding [1]  29/10
response [5]  6/25 7/14 10/7 30/10 30/12
responses [3]  28/21 29/21 30/2
result [1]  5/3
resume [1]  34/2
resumption [1]  13/14
retry [1]  9/21
retrying [1]  9/19
return [9]  6/23 8/12 11/3 11/4 13/6 13/20 16/25
17/21 27/11
revisit [1]  17/3
right [22]  2/16 2/18 3/25 9/4 9/5 10/21 11/25
12/15 12/21 12/24 15/7 16/10 16/13 18/22 19/14
23/15 23/25 24/2 24/20 25/2 25/21 34/1
rightly [1]  22/6
rise [2]  2/3 34/5
risk [2]  32/18 32/21
role [1]  6/24
roughed [1]  3/17
RPR [1]  35/16
Rubio [2]  4/21 4/25
rule [1]  11/17
rules [3]  22/3 29/22 29/24
run [1]  13/3

**S**

saboteurs [1]  9/14
saint [2]  8/23 8/24
sake [1]  23/2
Salvador [6]  4/24 5/4 6/21 10/25 11/1 11/25
Salvadoran [3]  5/1 7/11 10/23
Salvadorans [1]  7/3
same [2]  18/10 28/14
satisfaction [1]  28/16
satisfied [1]  15/23
saying [9]  8/10 11/16 12/22 23/6 23/8 23/23 24/14
28/14 31/10
schedule [1]  30/4
scope [2]  25/15 25/17
seal [8]  2/22 19/2 20/25 21/2 22/7 22/20 31/14
32/6
seat [1]  2/17
second [1]  13/23
secondly [1]  3/13
secrecy [1]  27/16
Secretary [3]  4/21 4/25 5/12
Secretary's [1]  5/2 5/4
see [16]  15/7 23/6 24/14 29/4 33/3 33/4
seek [1]  5/6
seeking [1]  3/21
seem [1]  27/4
Senate [1]  5/3
send [1]  11/25
senior [1]  5/1
sense [1]  31/9
sensitive [1]  15/2
sensitivities [2]  5/5 29/9
sensitivity [2]  32/5 32/19
sent [1]  10/25 11/1
separated [1]  7/11
service [1]  5/3
session [1]  2/4
share [3]  27/15 32/3 33/5
shared [2]  3/23 28/8
sharing [1]  32/5
shooting [1]  13/8
shores [1]  9/15
shortage [1]  29/16
shot [1]  31/21
shouldn't [1]  24/12
show [5]  15/22 17/11 18/2 20/23 27/22
showing [14]  3/13 14/24 15/18 17/23 21/10 25/25
28/15 28/19 30/25 31/1 32/3 32/15 33/6 33/16
shown [1]  18/3
shrouded [1]  27/16
side [1]  18/6
significant [1]  15/19
simple [2]  22/10 22/10
simply [2]  3/14 18/24
since [3]  6/9 25/9 27/4
situation [2]  9/22 22/24
situations [1]  18/16
skepticism [1]  7/1
skirmishes [1]  11/13
slice [1]  13/1
snapshot [1]  13/2
so [42]
solicit [1]  6/19
somehow [1]  8/2
someone [1]  3/14
something [5]  8/9 9/19 23/20 24/1 25/4
sometimes [1]  18/15
sought [2]  3/24 7/5
sound [1]  11/4
space [2]  15/4 28/14
speak [3]  18/15 18/21 29/17
speaking [2]  16/19 18/22
specific [1]  11/10
specifically [1]  8/4
splice [1]  21/18
spoken [2]  4/21 19/8

**S**

sports **[1]** 9/10
spread **[1]** 7/14
stake **[1]** 30/9
stamped **[1]** 10/14
stand **[1]** 30/19
stands **[2]** 11/17 34/6
start **[1]** 15/9
starting **[3]** 13/16 15/15 15/17
state **[4]** 4/21 6/23 7/1 18/18
statement **[1]** 26/19
statements **[4]** 13/3 24/8 28/7 28/8
STATES **[13]** 1/1 1/11 2/3 5/16 7/2 8/3 8/7 11/4
13/21 16/25 18/12 35/5 35/11
status **[1]** 7/7
stay **[24]** 2/20 2/25 3/14 3/21 4/13 8/1 14/24 16/4
17/23 17/24 21/6 22/1 22/14 23/23 24/25 25/10 26/1
26/10 28/16 29/7 30/6 30/18 31/5 32/11
stayed **[1]** 21/25
stenographically **[1]** 35/8
stenographically-reported **[1]** 35/8
STENOTYPED **[1]** 1/22
steps **[4]** 20/16 21/6 27/13 27/16
still **[4]** 2/22 23/1 25/19 31/21
stop **[4]** 3/7 12/25 23/4 33/14
stops **[2]** 12/12 33/14
strongly **[2]** 13/18 26/12
submissions **[1]** 17/10
such **[1]** 22/24
sufficiency **[2]** 20/1 30/15 33/18
sufficient **[6]** 14/24 17/23 26/23 26/24 28/15 31/2
suggest **[3]** 13/18 26/12 27/24
suggesting **[1]** 21/4
supplement **[1]** 30/1
supplied **[1]** 6/25
support **[1]** 22/1
Supreme **[13]** 9/24 11/2 11/17 12/16 20/15 23/14
23/16 23/19 25/18 25/20 27/11 27/12 28/1

**T**

taken **[3]** 20/17 20/17 27/14
talk **[8]** 11/14 13/17 15/16 21/6 21/9 22/16 26/13
29/23
talking **[3]** 11/11 20/1 23/4
tattoo **[1]** 9/4
tattooed **[2]** 9/4 9/5
team **[1]** 6/23
tell **[8]** 13/13 15/9 17/4 18/7 19/4 27/13 27/13
33/15
telling **[4]** 13/6 24/12 28/4 32/19
tells **[2]** 14/2 18/11
ten **[1]** 7/5
terms **[5]** 13/12 15/1 15/9 29/8 29/20
terrorists **[1]** 9/16
Terry **[12]** 10/22 11/9 11/16 11/19 11/22 11/24 12/4
12/7 12/10 12/11 12/12 12/16
testimony **[2]** 4/4 4/12
Thanks **[1]** 34/4
thin **[1]** 6/25
thing **[2]** 9/10 33/10
things **[5]** 3/6 6/9 8/25 16/2 18/15
think **[29]** 2/24 6/10 7/22 9/9 9/10 10/6 13/7 15/12
15/15 15/16 15/17 16/1 18/3 19/6 20/23 21/10 23/7
23/12 23/16 24/3 25/3 29/3 29/4 30/2 30/23 31/19
31/21 32/19 32/23
Thirdly **[1]** 14/25
though **[3]** 18/20 25/1 33/19
thought **[2]** 19/20 24/18
threatened **[1]** 7/12
three **[1]** 6/13
throated **[1]** 3/9
through **[2]** 28/19 31/21
thus **[1]** 21/4
time **[10]** 8/4 9/8 10/12 11/6 20/21 22/13 27/3 29/1
32/24 33/21
Times **[1]** 10/5
today **[1]** 4/11
told **[3]** 18/7 26/25 28/4
took **[2]** 3/19 7/14
tool **[1]** 22/10
toolkit **[1]** 22/11
tools **[1]** 23/7
total **[1]** 9/23
tough **[1]** 11/12
transcript **[8]** 1/10 8/5 8/6 10/5 10/13 10/14 35/7
35/9
TRANSCRIPTION **[1]** 1/22
tried **[3]** 15/12 20/21 29/3
true **[1]** 35/7
Trump **[15]** 6/16 7/8 11/10 11/10 11/18 11/21 11/23
12/2 12/6 12/8 12/11 12/13 12/17 18/13 24/8
trying **[2]** 17/5 27/24
turned **[1]** 12/19
twice **[2]** 3/6 31/18
two **[6]** 3/6 6/11 7/22 7/25 20/25 26/1

**U**

U.S **[3]** 2/14 6/21 7/10
U.S.C **[1]** 35/6
Ulander **[1]** 2/7
ultimate **[1]** 30/20
under **[14]** 2/22 7/8 10/24 17/1 19/2 20/25 21/2
21/7 22/2 22/3 22/7 22/20 31/13 32/6
under-seal **[1]** 19/2 32/6
understand **[21]** 5/12 11/8 15/12 16/10 17/8 19/21
20/20 23/8 25/7 25/22 26/17 26/18 26/20 28/11
29/14 31/10 33/5 33/8 33/13 33/24 33/24
understanding **[1]** 16/21
undo **[1]** 6/14
unforced **[1]** 12/18
UNITED **[13]** 1/1 1/11 2/3 5/15 7/2 8/3 8/6 11/4
13/20 16/25 18/12 35/5 35/11

until **[1]** 30/8
up **[3]** 11/22 11/25 16/1
upheld **[1]** 12/23
Upon **[1]** 24/24
use **[1]** 23/7

**V**

verb **[2]** 23/24 23/24
versus **[3]** 18/23 31/2 33/17
very **[17]** 3/9 8/9 9/1 9/1 9/1 9/10 12/19 14/1 16/8
18/8 21/21 22/9 22/10 22/10 27/17 31/17 31/23
view **[4]** 13/22 14/23 27/24 33/10
voice **[3]** 18/21 18/23 18/25
vs **[1]** 1/6

**W**

Wait **[1]** 16/1
want **[26]** 4/5 9/22 10/16 10/16 12/9 12/13 15/9
16/18 21/17 26/15 30/16 30/18 30/18 31/4 31/4
31/7 31/7 32/11 32/11 32/16 32/18 33/5 33/19 33/21
33/21 33/22
wanted **[4]** 6/23 7/10 12/14 14/2
wants **[2]** 5/14 31/6
War **[1]** 9/15
warned **[1]** 3/6
warranted **[1]** 33/2
warrants **[1]** 15/3
was **[41]**
Washington **[1]** 1/17
wasn't **[2]** 3/14 8/24
way **[9]** 3/10 15/5 17/1 22/17 23/17 25/2 29/2 29/21
33/3
ways **[2]** 18/14 19/8
we'll **[2]** 12/25 34/3
WEDNESDAY **[1]** 1/12
week **[10]** 2/19 2/20 3/21 16/13 18/1 18/2 19/4
24/17 29/15 31/4
weigh **[1]** 30/8
welcome **[2]** 21/22 28/25
well **[17]** 8/19 10/22 11/5 17/2 19/11 19/13 21/12
21/15 21/21 22/3 22/16 24/9 24/10 25/24 26/12
27/23 29/23
well-established **[1]** 22/3
went **[1]** 6/20
whatever **[4]** 9/12 23/5 25/24 31/7
whether **[6]** 3/18 13/5 17/1 22/16 25/21 25/23
White **[1]** 7/14
whoever **[1]** 9/13
wholly **[1]** 3/3
widely **[1]** 10/4
wife **[3]** 8/25 11/13 11/13
wife-beater **[1]** 8/25
Wilkinson's **[1]** 23/22
willing **[2]** 32/12 32/14
wish **[4]** 7/23 7/24 21/10 23/10
wishes **[1]** 33/20
within **[5]** 3/3 6/10 6/12 6/13 23/20
without **[2]** 30/20 32/21
witness **[1]** 4/4
women's **[1]** 9/10
won't **[3]** 18/7 18/8 23/4
wonderful **[3]** 9/7 11/15 12/20
word **[4]** 2/23 15/6 19/7 19/8
words **[4]** 19/17 22/22 30/10 30/19
work **[5]** 18/2 20/24 26/25 27/22 30/4
working **[5]** 3/7 3/11 3/15 27/1 27/1
world **[4]** 9/15 18/7 18/11 28/4
wouldn't **[4]** 8/13 8/16 9/20 33/15
write **[1]** 4/10
writing **[1]** 19/17
wrong **[1]** 13/13

**X**

XINIS **[3]** 1/10 2/5 4/10

**Y**

Yeah **[3]** 27/23 29/5 32/25
years **[1]** 7/3
Yes **[6]** 10/9 12/12 15/11 16/5 17/5 31/25
yesterday **[1]** 3/17
yet **[3]** 19/7 27/4 27/7
York **[1]** 10/5
yourselves **[1]** 2/12