# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

Kilmar Armando Abrego Garcia, *et al.*,

                 Plaintiffs,

v.

Kristi Noem, *et al.*,

                 Defendants.

Case No.: 8:25-CV-00951-PX

**REDACTED VERSION**

**Plaintiffs' Motion for Discovery Sanctions**

**Table of Contents**

Table of Authorities.................................................................................................................... ii

Introduction............................................................................................................................... 1

Background................................................................................................................................ 2

      A.      Interrogatories ........................................................................................... 4

             1.      First Response ............................................................................... 4

             2.      Second Response ........................................................................... 5

             3.      Third Response .............................................................................. 6

             4.      Fourth Response............................................................................. 6

      B.      Productions ............................................................................................... 7

      C.      Depositions ............................................................................................... 8

      D.      Public Statements..................................................................................... 10

      E.      Return and Indictment............................................................................. 11

Legal Standard ......................................................................................................................... 12

Argument .................................................................................................................................. 14

Relief Requested ...................................................................................................................... 18

      A.      Adverse Inferences and Preclusion of Claims, Defenses, and Evidence .............. 18

      B.      Additional Production, Including Production Of Purportedly Privileged
            Documents ................................................................................................ 20

      C.      Investigation Into Willful Noncompliance By Appointment Of A
            Special Master.......................................................................................... 21

      D.      Fines ......................................................................................................... 23

      E.      Civil Contempt......................................................................................... 25

Conclusion ............................................................................................................................... 26

# Table of Authorities

**Page(s)**

## Cases

*Abrego Garcia v. Noem*,
2025 WL 1135112 (4th Cir. Apr. 17, 2025) ....................................................... 3, 4

*Aerodyne Sys. Eng'g., Ltd. v. Heritage Int'l. Bank*,
115 F.R.D. 281 (D. Md. 1987) ......................................................................... 15

*Ardrey v. United Parcel Serv.*,
798 F.2d 679 (4th Cir. 1986) ........................................................................... 18

*Beach Mart, Inc. v. L&L Wings, Inc.*,
302 F.R.D. 396 (E.D.N.C. 2014),
*aff'd*, 784 F. App'x 118 (4th Cir. 2019) ........................................................... 17

*Beach Mart, Inc. v. L&L Wings, Inc.*,
784 F. App'x 118 (4th Cir. 2019) ..................................................................... 19

*Belk v. Charlotte-Mecklenburg Bd. of Educ.*,
269 F.3d 305 (4th Cir. 2001) (en banc) ........................................................... 13

*Bradley v. Am. Household Inc.*,
378 F.3d 373 (4th Cir. 2004) ........................................................................... 23

*Bralley v. Carey*,
2011 WL 6326503 (E.D. Va. Dec. 1, 2011) ..................................................... 25

*Cain v. Liberty Mut. Ins. Co.*,
2011 WL 1833096 (N.D. W. Va. May 13, 2011) .............................................. 20

*Carlucci v. Piper Aircraft Corp.*,
775 F.2d 1440 (11th Cir. 1985) ....................................................................... 23

*Chilcutt v. United States*,
4 F.3d 1313 (5th Cir. 1993) ....................................................................... 17, 24

*Cobell v. Norton*,
213 F.R.D. 16 (D.D.C. 2003) ..................................................................... 24, 25

*Doe v. Gen. Hosp. of Dist. of Columbia*,
434 F.2d 427 (D.C. Cir. 1970) ........................................................................ 21

*Fidrych v. Marriott, Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ........................................................................... 13

*Gibbs v. Miracles in Sight*,
    2023 WL 2992825 (M.D.N.C. Mar. 22, 2023),
    *aff'd*, 2023 WL 4742955 (4th Cir. July 25, 2023) .............................................................. 20

*Hoyle v. Freightliner, LLC*,
    650 F.3d 321 (4th Cir. 2011) ................................................................ 13

*Hughley v. Leggett*,
    2013 WL 3353746 (D. Md. July 2, 2013) ........................................................ 16

*In re GMC*,
    61 F.3d 256 (4th Cir. 1995) ...................................................................... 13

*In re Howe*,
    800 F.2d 1251 (4th Cir. 1986) .................................................................. 12

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    2021 WL 3883265 (D. Md. Aug. 31, 2021) .................................................... 22

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ................................................................................ 13

*J. M. Cleminshaw Co. v. City of Norwich*,
    93 F.R.D. 338 (D. Conn. 1981) ................................................................ 23

*Jarzyna v. Home Props., L.P.*,
    783 F. App'x 223 (3d Cir. 2019) ............................................................... 23

*LeCompte v. Manekin Constr., LLC*,
    573 B.R. 187, 195–96 (D. Md.),
    *aff'd*, 706 F. App'x 811 (4th Cir. 2017) ..................................................... 15

*Lee v. Max Int'l, LLC*,
    638 F.3d 1318 (10th Cir. 2011) ............................................................... 17

*Life Techs. Corp. v. Govindaraj*,
    931 F.3d 259 (4th Cir. 2019) ................................................................... 25

*Lynn v. Monarch Recovery Mgmt., Inc.*,
    285 F.R.D. 350 (D. Md. 2012) ................................................................. 13

*Malautea v. Suzuki Motor Co.*,
    987 F.2d 1536 (11th Cir. 1993) ........................................................... 23, 24

*Meredith v. Int'l Marine Underwriters*,
    2012 WL 3025139 (D. Md. July 20, 2012) ................................................. 14

*Mey v. Phillips,*
    71 F.4th 203 (4th Cir. 2023) ................................................................... 16

*Muniz v. Meese,*
    122 F.R.D. 1 (D.D.C. 1988) ................................................................... 20

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs, Inc.,*
    872 F.2d 88 (4th Cir. 1989) ....................................................... 14, 15, 17

*Noem v. Abrego Garcia,*
    145 S. Ct. 1017 (2025) ........................................................................ 2, 9

*Nutramax Lab'ys, Inc. v. Twin Lab'ys, Inc.,*
    32 F. Supp. 2d 331 (D. Md. 1999) ........................................................ 20

*Potter v. District of Columbia,*
    126 F.4th 720 (D.C. Cir. 2025) ............................................................. 21

*Power Home Solar, LLC v. Sigora Solar, LLC,*
    339 F.R.D. 64 (W.D. Va. 2021) ............................................................ 18

*RLI Ins. Co. v. Nexus Services, Inc.,*
    2022 WL 2654227 (W.D. Va. July 8, 2022) ................................... 23, 25

*RLI Ins. Co. v. Nexus Servs., Inc.,*
    2021 WL 11959060 (W.D. Va. Dec. 16, 2021) .................................... 22

*Sines v. Kessler,*
    2019 WL 3767475 (W.D. Va. Aug. 9, 2019) ............................. 12, 17, 18

*Sines v. Kessler,*
    2021 WL 5492826 (W.D. Va. Nov. 19, 2021) ..................................... 19

*Smith v. Devine,*
    126 F.4th 331 (4th Cir. 2025) ............................................................... 17

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.,*
    219 F.R.D. 93 (D. Md. 2003) ............................................................... 13

*United States v. Gavilan Joint Cmty. Coll. Dist.,*
    849 F.2d 1246 (9th Cir. 1988) ........................................................ 18, 23

*United States v. Shaffer Equip. Co.,*
    158 F.R.D. 80 (S.D. W. Va. 1994) ....................................................... 25

*United States v. Sumitomo Marine & Fire Insurance Co.,*
    617 F.2d 1365 (9th Cir. 1980) ............................................................. 24

*United States v. Westinghouse Electric Corp.*,
  648 F.2d 642 (9th Cir. 1981),
  *overruled on other grounds by*
  *FTC v. Actavis*,
  570 U.S. 136 (2013)................................................................................. 23

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  269 F.R.D. 497 (D. Md. 2010),
  *aff'd in part, modified in part*,
  2010 WL 11747756 (D. Md. Nov. 1, 2010)................................................ 25

*Wilson v. Volkswagen of Am., Inc.*,
  561 F.2d 494 (4th Cir. 1977)..................................................................... 14

**Statutes**

18 U.S.C. § 401............................................................................................. 25

Equal Access to Justice Act,
  P.L. 96-481, § 205(a), 94 Stat. 2325 (1980)............................................. 18

**Other Authorities**

8B Wright & Miller,
  Federal Practice & Procedure § 2284 (3d ed. 2002)................................. 12

Dep't of Justice, *Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6,
  2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-
  abrego-garcia............................................................................................. 12

Devlin Barrett, Alan Feuer & Glenn Thrush,
  *U.S. Returns Abrego Garcia From El Salvador to Face Criminal Charges*, N.Y. Times (June
  6, 2025), https://www.nytimes.com/2025/06/06/us/politics/kilmar-abrego-garcia-us-criminal-
  charges.html ............................................................................................. 11

**Rules**

Fed. R. Civ. P. 37(b)............................................................................... passim

Fed. R. Civ. P. 53(c)..................................................................................... 22

## Introduction

For nine weeks, the Government defied this Court's order, affirmed by a unanimous Supreme Court, to facilitate the return of Kilmar Abrego Garcia to the United States following his illegal removal to El Salvador. For nearly eight of those weeks, the Government likewise flouted this Court's order to produce expedited discovery concerning what, if anything, it was doing to comply. This motion addresses the latter, seeking sanctions under Federal Rule of Civil Procedure 37 for the Government's repeated violations of its discovery obligations.

The Government's defiance has not been subtle. It has been vocal and sustained and flagrant. The Defendants' defiance of judicial orders has been accompanied by misrepresentations, stonewalling, and even questioning of this Court's authority. The Defendants' defiance of this Court's discovery orders, in particular, has been egregious, defined by open refusal to produce *any* evidence of its professed compliance and the meritless assertion of an array of purported privileges to shield its actions from scrutiny.

The relevance of the information sought is beyond question—responsive, at its core, to basic questions posed by the Court at the outset regarding Abrego Garcia's custodial status and what efforts the Government had taken or would take to facilitate his return to the United States. The lengths the Government has gone to resist discovery relating to these core questions raises a strong inference that the Government is trying to hide its conduct from the scrutiny of this Court, the Plaintiffs, and the public. What the Government improperly seeks to hide must be exposed for all to see. Accordingly, pursuant to Federal Rule of Civil Procedure 37 and Local Rule 105.8, Plaintiffs respectfully request that the Court impose the following sanctions: (1) find established, for purposes of this action, certain facts set forth below; (2) compel the production of information and documents the Government has improperly withheld or, in the alternative, appoint a Special

Master to investigate the extent of the Government's willful noncompliance with the orders of this Court; and (3) impose fines based on a finding of civil contempt.

**Background**

On April 10, 2025, the Supreme Court unanimously held that this Court had "properly require[d] the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). That same day, this Court issued a clarifying order directing the Defendants to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." ECF No. 51 at 1. In the same order, the Court directed Defendants to file, by the following morning, a declaration addressing "(1) the current physical location and custodial status of Abrego Garcia; (2) what steps, if any, Defendants have taken to facilitate Abrego Garcia's immediate return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate his return." *Id.*

On April 15, the Court ordered expedited discovery "to ascertain what, if anything, the Defendants have done to 'facilitate Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador.'" ECF No. 79 at 6–7 (quoting *Abrego Garcia*, 145 S. Ct. at 1018). The Court held that expedited discovery was necessary for a number of reasons, including the Government's "ongoing refusal to comply" with Court directives and "to assist the Court in determining whether contempt proceedings are warranted." *Id.* at 6. The Court was clear that this was to be "two weeks of intense discovery," directing that there were to be "no business hours while we do this," and that the parties should "cancel vacation[,] [c]ancel other appointments" because the Court "expect[ed] all hands on deck." Apr. 15, 2025 Tr. 14:24–15:1, 27:11–14.

As part of expedited discovery, the Court authorized Plaintiffs to depose four affiants who had submitted declarations accompanying the Government's court-ordered daily status reports. ECF No. 79 at 7. The Government chose these individuals to comply with the order, which required daily status reports "by an individual with personal knowledge as to any information regarding" (1) Abrego Garcia's physical location and custodial status, (2) what steps Defendants had taken to facilitate his immediate return to the United States, and (3) what additional steps Defendants will take to facilitate his return. ECF No. 61 at 2. Even when the Court granted the Government's request for a one-week stay, the Court made clear that the Government must "keep working." Apr. 30 Ex Parte Tr. 2:19–3:16.

Nearly sixty days, ten orders,[1] three depositions,[2] three discovery disputes,[3] three motions for stay,[4] two hearings,[5] a week-long stay,[6] and a failed appeal[7] later, the Plaintiffs still have seen no evidence to suggest that the Defendants took any steps, much less "all available steps," to facilitate Abrego Garcia's return to the United States *as soon as possible*" so that his case could be handled as it would have been had he not been unlawfully deported. ECF No. 51 at 1 (emphasis added). Rather, the record reflects a "pattern of deliberate delay and bad faith refusal to comply with court orders." ECF No. 169 at 2.

---

[1] ECF Nos. 79, 87, 100, 103, 106, 107, 115, 134, 146, 163, 172.

[2] ECF Nos. 129-7, 129-8, 129-9 (containing deposition transcripts).

[3] ECF Nos. 98, 112, 143.

[4] ECF Nos. 86, 101, 104.

[5] ECF Nos. 106, 147.

[6] ECF No. 103.

[7] *Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025).

### A. Interrogatories

When the Court granted Plaintiffs' motion for expedited discovery, it authorized Plaintiffs to serve 15 interrogatories and set a deadline for of April 21 for the Government to respond. ECF No. 79 at 7. The interrogatories were to focus on "(1) the current physical location and custodial status of Abrego Garcia; (2) what steps, if any, Defendants have taken to facilitate Abrego Garcia's immediate return to the United States; … (3) what additional steps Defendants will take, and when, to facilitate his return," and (4) "the lawful basis—if any—for Abrego Garcia's continued detention in CECOT, including who authorized his initial placement there and who presently authorizes his continued confinement." *Id.* at 6 n.3, 7.

Plaintiffs served the interrogatories, along with other discovery requests, the following day, April 16, prompting an immediate Government appeal seeking an emergency stay. *See* ECF No. 86; ECF No. 86-1 at 38–53. The Fourth Circuit Court of Appeals swiftly rejected the appeal. *See Abrego Garcia v. Noem*, 2025 WL 1135112 (4th Cir. Apr. 17, 2025). The Government provided its first response to the interrogatories on April 21 and, amid various objections and conferrals, a series of updated responses on May 5, May 19, and May 30.[8] The responses were patently deficient, and they remain so to this day.

#### 1. First Response

The Government's first response was frivolous. It asserted that several interrogatories, including those merely restating points of inquiry (2) and (3) of the Court's discovery order, were "based on the false premise that the United States can or has been ordered to facilitate Abrego Garcia's *release from custody* in El Salvador." ECF No. 98-1 at 3, 4, 8. But, as the Court noted,

---

[8]  *See* ECF Nos. 98-1, 112-3, 153-2, 177-3. The Court ordered Plaintiffs to narrow a few interrogatories and requests for production on April 22, ECF No. 100 at 7–8, and Plaintiffs promptly did so, ECF No. 112-1.

"Defendants—and their counsel—well know that the falsehood lies not in any supposed 'premise,' but in their continued mischaracterization of the Supreme Court's Order." ECF No. 100 at 2. The Court found that the Government's objection "reflect[ed] a willful and bad faith refusal to comply with discovery obligations." *Id.* So, too, its blanket assertion of numerous privileges, ECF No. 98-1 at 3–5, 7–10, 12–15, 17, for which the Government "refus[ed] to provide *any* basis," ECF No. 100 at 3. The Court found that this likewise "reflect[ed] a willful refusal to comply with this Court's Discovery Order and governing rules," which itself followed "weeks" of "vague and unsubstantiated assertions of privilege." *Id.* "That ends now," the Court admonished. *Id.* But it didn't.

### 2. Second Response

Despite obtaining a week-long stay[9] to prepare further discovery, including proper invocations of privilege and serious responses, the Government did virtually nothing. *See* ECF Nos. 112, 112-3. It simply asserted, flatly and without proof, that "the State Department has engaged in appropriate diplomatic discussions with El Salvador regarding Abrego Garcia." ECF No. 112-3 at 3, 4, 6, 7, 11. Before the Court, the Government refused to say more. May 16, 2025 Motions Tr. 61:17–19. And yet, as the Court properly recognized, even as the Government was claiming in Court that it was complying with the Court's Order, the Department of Homeland Security (DHS) was publicly proclaiming *precisely the opposite*: that Abrego Garcia "will not return to our country under the Trump administration." ECF No. 128-15. The only evidence in the record, the Court found, was "an admission of your client that your client will not take steps to facilitate the return, release or return. . . . That's about as clear as it can get." May 16, 2025 Motions Tr. 52:23–53:4, 53:8–13 (quoting ECF Nos. 128-14, 128-15).

---

[9] *See* ECF No. 103.

The Government's new privilege assertions fared no better. Though the Government filed a declaration by Defendant Marco Rubio asserting the state secrets privilege, ECF No. 112-5, the Secretary of State's declaration was so lacking in specificity it amounted to him telling the court "take my word for it." And the Government submitted *no* declarations from Secretary of DHS Kristi Noem and Attorney General Pam Bondi, asserting that it was under no obligation to do so. The Court rejected this "quite stunn[ing]" proposition, and granted the Government "a little more time to obtain those declarations." May 16, 2025 Motions Tr. 28:15–21; 31:10–14. It never did.

### 3.   Third Response

Although they were accompanied by a supplemental state secrets declaration from Defendant Rubio, *see* ECF No. 155, the Government's May 19 supplemental interrogatories shed no additional light on anything, *see* ECF No. 153-2. Again, the Government insisted, without proof, that ███████████████████████████████████████████████████████ ████████████████████████ *Id.* at 3, 4, 6, 7, 12. Again, it refused to say what that meant. The Government did acknowledge for the first time ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████, and refused to provide any information concerning the basis for his detention. ECF No. 153-2 at 15–16. The Government's assertion—dubious on its face—████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████ May 16 Sealed Tr. 12:3–4.

### 4.   Fourth Response

On the last day of expedited discovery, the Government insisted that █████████████ ████████████████████████████████████████████████████████████████ ███████████████████ ECF No. 177-2 at 4. It produced nothing of substance, declining even

to identify the individuals involved in Abrego Garcia's removal to El Salvador, his confinement in CECOT, and the actions to facilitate his release and return. *See* ECF No. 177 at 2; ECF No. 177-2 at 3.

### B. Productions

To date, the Government has made two purported "productions," and two supplemental "productions." These, like its interrogatory responses, make a mockery of the discovery process.

The first production, served on April 21, consisted *entirely* of public filings from the docket of this case, plus two non-substantive cover emails transmitting declarations filed in this case. *See* ECF No. 98 at 1. The second production, served on May 5, principally contained documents from Abrego Garcia's 2019 immigration proceedings—including documents the Government had released publicly yet refused to submit to the Court. To the extent there were a few new documents in the production—*see, e.g.*, ECF No. 129-19 ██████████████████████████████ ████████████████████████████████████████████████████—they were mostly redacted—and irrelevant to the questions that expedited discovery sought to answer.

On May 7, the Government supplemented its second production with one document—the I-213 form from Abrego Garcia's March 12, 2025, arrest. *See* Ex. A. It provides little information not already contained in his *2019* I-213 form, which the Government had already made public. *See* Ex. B. On May 12, the Government served another supplement: ████████████████████ ████████████████████████████████████████████████████████ ████████████████████ *See* ECF No. 141. Still, the government produced not a single document detailing even a single step to facilitate Abrego Garcia's return.

At a hearing on May 16, the Court ordered the Government to supplement its productions "on a rolling basis, but by no later than May 30, 2025." ECF No. 146. The ball never got rolling. In the two weeks that followed, the Government made only two additional productions of only two

sets of documents: Abrego Garcia's EARM file and his A-file, both of which were incomplete and neither of which shed light on any steps to facilitate his return.  ECF Nos. 169, 177.

In short, virtually *all* of the documents the Government has produced are either documents Plaintiffs already had from Abrego Garcia's immigration proceeding, documents from the public record, or duplicates of previously produced documents.[10]

## C. Depositions

In its order granting Plaintiffs' motion for expedited discovery, the Court also ordered the depositions of Robert L. Cerna, Evan C. Katz, Michael G. Kozak, and Joseph N. Mazzara.  ECF No. 79 at 7.  Each of these officials filed declarations in this case based on their supposed personal knowledge of Abrego Garcia's removal and/or the Government's alleged efforts to comply with the Court's orders.  *See* ECF No. 11-3 (Cerna); ECF No. 63 (Kozak) ECF No. 64 (Katz); ECF Nos. 74 & 77 (Mazzara).  The Court also authorized Plaintiffs to seek two additional depositions by motion for leave, ECF No. 79 at 7, but ultimately granted three additional 30(b)(6) depositions, ECF No. 146.[11]

The Government's chosen deponents provided no useful information, much less any evidence of compliance with the Court's order.  More than 90 times, the Government instructed them not to answer on the basis of an asserted privilege.  *See* ECF Nos. 129 at 5, 129-6.  And when they did answer, the witnesses uniformly testified that they lacked personal knowledge of the very topics concerning which they had previously provided sworn declarations.  *See* ECF No. 117 at 3–

---

[10]   The Government also represented to this Court that it had to "locate, train, and deploy Spanish-speaking personnel" to assist in document production because "some documents are in Spanish." ECF No. 167 at 4.  Yet nothing in the Government's production or privilege log suggests there are documents in Spanish.

[11]   After the depositions of Katz, Mazzara and Cerna, it became clear that further depositions would be useless without a ruling on the Government's bogus privilege assertions.  *See* ECF No. 153 at 3–4.  Accordingly, Kozak and the three 30(b)(6) witnesses have not yet been deposed.

7.  Their flippant demeanor made clear this was no accident, but the product of a practiced disdain for the judicial process.  *Compare* ECF No. 129-9 Tr. 26:2–12 (███████████████████████ ███████████████ ), *with id.* Tr. 154:18-20 █████████████████████████████████ ███████████████████████ ).

The Court has already acknowledged the futility of these depositions, describing them as "a goose egg."  May 16 Motions Tr. 57:22.  "Each of those depositions," the Court explained, was "an exercise in utter frustration."  *Id.* Tr. 25:12–26:9; *see also id.* Tr. 9:10–13 ("I don't want to tell you how long it took my wonderful law clerks to count up the 'I don't knows' in each of those depositions.").  As the Court concluded, it cannot seriously be argued that these depositions were "a good faith effort to" comply with the Supreme Court's order for the Government to "share what it can concerning the steps it has taken and the prospect of future steps" to facilitate Abrego Garcia's return.  *Id.* Tr. 24:19–25; *Abrego Garcia*, 145 S. Ct. at 1018.

More recently, credible press reports suggest that Mazzara—DHS's Acting General Counsel—may have given untruthful testimony.  At the deposition, Mazzara was asked whether he knew by April 12 ████████████████████████████████████████████ ████████████████████  He ultimately answered: ███████████████████████ ████████████████████████  ECF No. 129-9 Tr. 76:9–13.  When pressed about whether anyone at DHS ████████████████████████████████████████████████ ██████████████████  Mazzara claimed he had ████████████████  *Id.* Tr. 155:10–7.  According to the *New York Times*, however, Mazzara "told his colleagues that [DHS Secretary] Kristi Noem . . . had taken steps to seek Mr. Abrego Garcia's segregation from other inmates, including members of Barrio 18."  *See* Ex. C.  The report cites specific emails from Mazzara on or around March 28 in which he noted, "We're also trying to keep him where he is."  *Id.*  On March 30,

James Percival, another custodian from whom Plaintiffs have received no documents,[12] admitted that Abrego Garcia's removal was "an administrative error," but added: "(Not that we should say [so] publicly)." *Id.*

In short, no deponent has identified a single concrete step the Government has taken to facilitate Abrego Garcia's return. And what little information they testified to is belied by public reporting.

### D. Public Statements

Plaintiffs provide at Exhibit D a non-exhaustive list of nearly 100 public statements administration officials have made about this case, though these are by no means exhaustive.[13] Since the start of this case, the Government, through various officials, made clear that it would not facilitate Abrego Garcia's return or otherwise comply with this Court's orders no fewer than 48 times. *See* Ex. D at Nos. 4, 6, 8, 10, 13, 14, 17, 18, 19, 20, 23, 24, 27, 31, 35, 36, 38, 41, 43, 47, 48, 49, 52, 53, 54, 57, 58, 59, 60, 61, 62, 64, 65, 66, 67, 68, 69, 73, 74, 75, 78, 80, 81, 83, 84, 85, 86, 89. For example, on April 16, Bondi stated unequivocally that Abrego Garcia "is not coming back to our country . . . There is no situation ever where he was going to stay in this country. None, none." *Id.* at No. 31. On May 8, Noem stated under oath during a Senate hearing that Abrego Garcia "will not be coming back to this country. There is no scenario where Abrego Garcia will be back in this country." *Id.* at No. 78. On May 14, Noem stated under oath during a House hearing that "we will not be bringing [Abrego Garcia] back to our country." *Id.* at No. 80. On May 20, Rubio stated under oath during a Senate hearing that "No judge can tell me how I have to

---

[12]   *See* ECF No. 177-2 at 1; ECF No. 182 at 5.

[13]   Plaintiffs included a number of these statements in their privileges brief. *See* ECF No. 129 at 16–21; ECF Nos. 129-2, 129-3, 129-4, 129-5, 129-11, 129-12, 129-13, 129-14, 129-15, 129-17, 129-18.

outreach to a foreign partner or what to say to them, and if I do reach out to a foreign partner and talk to them, I have no obligation to share that with the judiciary branch. . . . What I won't comply with is an order to disclose what I am saying." *Id.* at No. 83. And on May 21, Rubio stated under oath during a House hearing that "The conduct of our foreign policy is an executive function and how I conduct it, I don't need to share it with you and I don't need to share it with the court. . . . We've taken steps but I am not going to tell you what they are and I don't have to because we conduct the foreign policy of the United States." *Id.* at No. 85.

### E. Return and Indictment

While the Government was telling this Court one thing and the world something else, it was secretly working to charge Abrego Garcia with two felony immigration charges based on alleged conduct that occurred years ago—and that it previously trumpeted in the media as justifying his removal.[14] Although Attorney General Bondi declined, when asked by reporters, to state when the criminal investigation began,[15] public reporting indicates that it started in April— around the same time that this Court ordered expedited discovery into the Government's apparent defiance of Court orders. *See* Ex. E.

Moreover, even *after* the grand jury returned the indictment on May 21, the Government represented to this Court that Plaintiffs' injuries were not redressable. *See* ECF No. 165 at 7–9. That is, the Government argued there was nothing it could do to return Abrego Garcia pursuant to this Court's order because he was "in the custody of El Salvador" so the Court should just dismiss the case. *Id.* Five days before the indictment was returned, Department of Justice attorneys

---

[14] *See* Indictment, *United States v. Abrego Garcia*, No. 25-cr-00115 (W.D. Tenn. May 21, 2025), ECF No. 3.

[15] *See* Devlin Barrett, Alan Feuer & Glenn Thrush, *U.S. Returns Abrego Garcia From El Salvador to Face Criminal Charges*, N.Y. Times (June 6, 2025), https://www.nytimes.com/2025/06/06/us/politics/kilmar-abrego-garcia-us-criminal-charges.html.

represented to this Court that ███████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████ May 16 Sealed Tr. 34:18–25; *see also id.* Tr. 38:21–25 (█

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████). As recently as May 30, nine days after Abrego Garcia was indicted,

but before it was publicly announced, the Government represented that the Attorney General

████████████████████████████████████████████████████████████████████

███████████████████████████████████████. ECF No. 177-2 at 3. This cannot

have been true. The Attorney General *personally* announced Abrego Garcia's indictment just one

week later.[16] Just hours before filing this motion, t██████████████████████████████

█████████████████████████.

## Legal Standard

Under Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent powers, a

party's violation of a discovery order warrants sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A)

(providing that court "may issue further just orders" if a party "fails to obey an order to provide or

permit discovery"); *In re Howe*, 800 F.2d 1251, 1252 (4th Cir. 1986). Rule 37 sanctions "are not

exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason,

use as many and as varied sanctions as are necessary." *Sines v. Kessler*, 2019 WL 3767475, at *3

(W.D. Va. Aug. 9, 2019) (quoting 8B Wright & Miller, Federal Practice & Procedure § 2284 (3d

ed. 2002)).

---

[16] *See* Dep't of Justice, *Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6, 2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia.

"Once a court makes the threshold determination under Rule 37(b)" that a prior discovery order has been violated, *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 219 F.R.D. 93, 102 (D. Md. 2003), subsection (b)(2)(A) "contains two standards—one general and one specific—that limit [the] court's discretion" in choosing what sanction(s) to impose, *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). "First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* (citing Fed. R. Civ. P. 37(b)(2)(A)). The Fourth Circuit has articulated a four-part test for a district court to use when determining what sanctions are appropriate: "(1) whether the non-complying party acted in *bad faith*, (2) the amount of *prejudice* that noncompliance caused the adversary, (3) the need for *deterrence* of the particular sort of non-compliance, and (4) whether *less drastic* sanctions would have been effective." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc) (emphasis added and quotation marks omitted). Discovery responses that are "incomplete and evasive" are "tantamount to a failure to answer," warranting Rule 37 sanctions. *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 360 (D. Md. 2012).

A court retains jurisdiction to impose sanctions even in circumstances where the underlying case or dispute has been resolved or rendered moot. *See, e.g.*, *Fidrych v. Marriott, Int'l, Inc.*, 952 F.3d 124, 145 (4th Cir. 2020) ("Because sanction proceedings are collateral to the merits of the underlying case, an otherwise proper sanction award may be imposed even if the court lacks jurisdiction to enter a judgment on the merits."); *cf. In re GMC*, 61 F.3d 256, 259 n.3 (4th Cir. 1995) ("contempt proceeding is not moot" even after case settles).

A district court's sanctions determinations are reviewed for abuse of discretion. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329 (4th Cir. 2011).

**Argument**

Plaintiffs respectfully request that the Court impose sanctions against the Defendants pursuant to Rule 37 for their flagrant, repeated violations of this Court's discovery orders. Specifically, the Court should find established, for purposes of this action, certain facts specified below; compel the production of documents previously withheld, or, in the alternative, appoint a Special Master to investigate the Government's willful refusal to comply with valid orders of this Court; and impose financial sanctions. The proposed sanctions are reasonable and necessary in light of the Government's egregious conduct. They also are appropriate under the four-factor test applied in this Circuit based on (1) the Government's bad faith, (2) conduct that prejudiced the Plaintiffs' ability to secure relief, (3) the profound need for deterrence of the sort of non-compliance at issue here, and (4) the inadequacy of less severe sanctions to vindicate the interests at play.

*First,* the Government's pattern of defying this Court's orders and stonewalling Plaintiffs' respectful, sustained efforts to engage in productive conferrals regarding discovery call for a finding of bad faith, consistent with, or the culmination of, prior findings of bad faith already found in this matter. *See* ECF No. 169 (outlining Government's repeated deficiencies); ECF No. 177 (same); ECF No. 182 (same); *see also Meredith v. Int'l Marine Underwriters*, 2012 WL 3025139, at *9 (D. Md. July 20, 2012) (finding bad faith when the party "was given specific instructions by this Court, after his first failure to comply, on how to comply with his discovery obligations," yet once again failed to comply). The Government's failures demonstrate far more than mere noncompliance. They reveal "a pattern of indifference and disrespect to the authority of the court," *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs, Inc.*, 872 F.2d 88, 93 (4th Cir. 1989), and evince a "callous disregard" for the Government's "obligations under the Rules," *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977).

Based on public reporting, there is also a strong basis to infer that the communications and other materials the Government has failed to produce contain evidence that, during the relevant period, the Government chose not to comply with this Court's order to facilitate the return of Abrego Garcia. For example, one of the declarants and deponents in this case—Mazzara—reportedly claimed in DHS documents that "We're trying to keep him where he is." *See* Ex. C; Ex. D; *see also* ECF No. 128 at 17–20 (documenting statements of high-level officials, including Bondi, Noem, and President Trump, revealing an intentional failure to facilitate Abrego Garcia's release).

The Government's "failure to provide a 'satisfactory reason why its discovery requests were not timely is further evidence of bad faith.'" *LeCompte v. Manekin Constr., LLC*, 573 B.R. 187, 195–96 (D. Md.) (quoting *Aerodyne Sys. Eng'g., Ltd. v. Heritage Int'l. Bank*, 115 F.R.D. 281, 290 (D. Md. 1987)), *aff'd*, 706 F. App'x 811 (4th Cir. 2017). "It is not sufficient for a party to assert that it was busy tending to other matters." *Id.* (quotation marks omitted). Rather, "[r]epeated failure to comply with discovery orders is sufficient to establish bad faith because repeated noncompliance 'demonstrates a pattern of indifference and disrespect to the authority of the court.'" *Id.* (quoting *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 93).

Here, there is no dispute that the Government violated both the Court's May 30, 2025 deadline and its denial of the Government's request for an extension. *See* ECF No. 177. The Government has offered no good reason for its refusal to comply with the deadlines. Certainly it had ample time to produce the requested materials in a process that was intended to be expedited discovery but morphed into extended discovery, drawn out by delays and inefficiencies entirely of the Government's own making. See, e.g., ECF No. 177 at 2 ("Defendants also have failed, despite agreeing, to identify knowledgeable witnesses on behalf of DOJ in response to Interrogatory 5.");

ECF No. 177-2 at 3 (Government claiming ███████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████); ECF No. 182 (detailing various Government discovery

errors and misrepresentations).

*Second*, the Government's delays and obfuscation substantially prejudiced Plaintiffs.  As

sole custodian of the relevant documents, and as the sole agencies and personnel empowered to

facilitate Abrego Garcia's return, the Government's refusal to comply with the Court's orders left

the Plaintiffs with no recourse.  Now, the Government possesses all the relevant information

necessary to assess whether it complied with this Court's order, affirmed by the Supreme Court,

requiring it to take immediate steps to facilitate Abrego Garcia's return from custody in El

Salvador.  While the Government—not Plaintiffs—bears the ultimate burden to establish its

compliance with this Court's order to facilitate return and has failed to do so, its failure to timely

produce relevant information in response to Plaintiffs' discovery requests allows the Government

to present a cherry-picked record of compliance.

*Third*, there is a clear and pressing need to deter the Government and other litigants from

engaging in similar obstructive tactics that "directly inhibited and delayed the resolution of this

dispute."  *Hughley v. Leggett*, 2013 WL 3353746, at *3 (D. Md. July 2, 2013); *see also Mey v.

Phillips*, 71 F.4th 203, 221 (4th Cir. 2023) ("Appellants were adequately put on notice as to the

consequences of their actions and that their continued obstinacy warranted a sanction of entry of

default judgment. . . . To find otherwise would be to send the message that the court may be

pushed, ignored and defied to the outermost limits so long as the noncomplying party has even an

inadequate fa[l]lback act ready in the wings should the final curtain be falling." (cleaned up)).

Sanctions are warranted here "both as a matter of justice in the individual case and 'to deter others

who might be tempted to similar conduct,'" *Sines*, 2019 WL 3767475, at *3 (*quoting Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011)); *see, e.g.*, *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 94 (entry of default judgment sends an "unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future."). Indeed, "the need for deterrence is particularly strong where, as here, a party is stalling and ignoring the direct orders of the court with impunity." *Smith v. Devine*, 126 F.4th 331, 344 (4th Cir. 2025) (quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1325 (5th Cir. 1993) ("The Government's lack of concern about the behavior of its counsel and representative clearly demonstrates that it deserved the type of sanctions meted out here. However, even if the Government were to become penitent for its behavior, we do not believe that a lesser sanction would serve the deterrent purposes of Rule 37.")

*Fourth*, less severe sanctions are no longer appropriate. Both the Court and Plaintiffs have made every effort to ensure the Government was timely and appropriately held to its court-ordered obligations, yet, as discussed above, the Government repeatedly thumbed its nose at Plaintiffs and this Court in court filings, hearings, and public statements to the media. *See Smith*, 126 F.4th at 344 (finding less severe sanctions inappropriate when "[d]espite . . . warnings, Appellants continued to disregard court orders and obstruct discovery efforts."). In light of the Government's effectively limitless coffers, it is especially true that "[a]n award of monetary sanctions to cover the costs expended . . . would not account for the time lost in the case or the cost to the court, nor would it provide a deterrent effect." *Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 415 (E.D.N.C. 2014), *aff'd*, 784 F. App'x 118 (4th Cir. 2019).

*Finally*, neither sovereign immunity nor separation-of-powers concerns bar Rule 37 sanctions against the government. *See Chilcutt*, 4 F.3d at 1315–17, 1325–27; *United States v.*

*Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1251 (9th Cir. 1988); *see also* Equal Access to Justice Act, P.L. 96-481, § 205(a), 94 Stat. 2325, 2330 (1980) (repealing provision of Rule 37 that limited sanctions against the United States).

**Relief Requested**

In light of this Court's "wide latitude in controlling discovery," *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986), the Court "may, within reason, use as many and as varied sanctions as are necessary," *Sines*, 2019 WL 3767475, at *3 (quotation marks omitted). Sanctions may include, for example, the drawing of adverse inferences against the violating party, imposition of fines, findings of civil contempt, awards of attorneys' fees, entry of default judgment, and "further just orders" to be fashioned by the Court. Fed. R. Civ. P. 37(b)(2). Plaintiffs here request the relief set forth below, along with any other sanctions the Court may deem appropriate in its discretion.[17]

### A.  Adverse Inferences and Preclusion of Claims, Defenses, and Evidence

Plaintiffs request that the Court make the factual findings set forth below as a component of the discovery sanctions imposed in this matter. The Court may "direct[] that" facts "be taken as established for purposes of the action" and "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). For example, in *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64 (W.D. Va. 2021), the district court found that plaintiff Power Home Solar ("PHS") failed to adequately prepare its Rule 30(b)(6) designee. *Id.* at 76–80. In light of that failure and other "repeated failures to engage meaningfully in discovery," *id.* at 80, the court imposed "significant" preclusion-of-evidence sanctions on PHS, *id.* at 69. *See id.* at 87, 90 ("barring PHS from

---

[17]  Plaintiffs do not seek an award of attorneys' fees as a discovery sanction in this matter.

supplementing the answers given during its Rule 30(b)(6) deposition" and "precluding PHS from offering any evidence not produced to Defendants before Defendants filed" their motion for sanctions). Similarly, in *Sines v. Kessler*, 2021 WL 5492826 (W.D. Va. Nov. 19, 2021), the court imposed an adverse inference sanction in response to a party's withholding of requested discovery documents. *Id.* at *3; *see also Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 122, 130 (4th Cir. 2019) (affirming "sanction precluding L&L from asserting equitable defenses" due to L&L's "egregious discovery misconduct").

Based on the Government's designation of deponents without adequate knowledge of key areas of inquiry and its repeated failure to respond to specific discovery requests that would provide Plaintiffs with evidence of the Government's noncompliance, specific adverse inferences are warranted, including:

- Abrego Garcia was held in El Salvador pursuant to an agreement, arrangement, or understanding between the governments of El Salvador and the United States pursuant to which El Salvador agreed to house certain inmates at the behest of and on behalf of the United States.

- Following this Court's order dated April 10, 2025, issued following the Supreme Court's ruling of that same date, Defendants did not take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible or to ensure that his case would be handled as it would have been had he not been improperly sent to El Salvador.

- Prior to the grand jury returning an indictment against Abrego Garcia in the Middle District of Tennessee on May 21, Defendants did not communicate with El Salvador orally, in writing, or otherwise to (1) state that Abrego Garcia had been sent to El Salvador in error, (2) state that the United States needed Abrego Garcia to be returned to the United States immediately, or (3) to confirm that arrangements had been made for safe and secure transport of Abrego Garcia back to the United States.

- The Government's discovery violations between April 15, 2025, and June 6, 2025, were conducted in bad faith and were prejudicial to Abrego Garcia.

- The Government chose to withhold the requested documents because it was aware that such documents contained evidence that the Government had failed to take any meaningful steps to facilitate Abrego Garcia's release.

- The Government chose not to adequately respond to Plaintiffs' interrogatories because it was aware that, at that time, it had failed to take any meaningful steps to facilitate Abrego Garcia's release.

Moreover, the Government should be precluded from presenting claims or defenses, or introducing evidence, that controvert, rebut, or negate the above findings of fact.

## B. Additional Production, Including Production Of Purportedly Privileged Documents

Plaintiffs move for an order, as a discovery sanction, compelling the Government to produce the documents it has improperly withheld in this matter, or produced in incomplete form, including on the basis of asserted privileges. The district court did just that in *Muniz v. Meese*, 122 F.R.D. 1 (D.D.C. 1988), when it ordered the Government to make additional productions and correct existing productions as a sanction for its "undue and protracted delay" during discovery. *Id.* at 1, 3; *see also Gibbs v. Miracles in Sight*, 2023 WL 2992825, at *1 (M.D.N.C. Mar. 22, 2023) (detailing court's order requiring sanctioned party to supplement discovery responses and productions as part of Rule 37 order), *aff'd*, 2023 WL 4742955 (4th Cir. July 25, 2023). Among the documents the Court may order to be produced as a sanction are the several hundred that the Government has deemed privileged. *E.g.*, *Nutramax Lab'ys, Inc. v. Twin Lab'ys, Inc.*, 32 F. Supp. 2d 331, 333, 338–39 (D. Md. 1999) (prohibiting defendant from invoking privilege as a Rule 37 sanction); *cf. Cain v. Liberty Mut. Ins. Co.*, 2011 WL 1833096, at *6 (N.D. W. Va. May 13, 2011) (deeming discovery objections waived under Rule 37 in light of their "untimeliness and generalized nature"); *see also* ECF No. 182 (detailing Government's privilege log deficiencies).

Though Abrego Garcia has finally been returned, the Court's inquiry into the Government's noncompliance is not over. *See* ECF No. 186. "Injunctions 'creat[e] important

legal rights,' and when those rights have been violated, 'the role of the court on a motion to hold respondents in civil contempt is not to fix blame but to ascertain how the violation occurred, how to prevent a recurrence, and how to repair any damage that has been done.'" *Potter v. District of Columbia*, 126 F.4th 720, 724 (D.C. Cir. 2025) (quoting *Doe v. Gen. Hosp. of Dist. of Columbia*, 434 F.2d 427, 431 (D.C. Cir. 1970)).  The inquiry into the Government's noncompliance continues and serves the important goal of establishing a foundation for what, if any, additional relief Plaintiffs may be entitled to seek, including in connection with the filing of a motion for contempt. *See* ECF No. 79 at 8 (authorizing Plaintiffs to move for additional relief at the conclusion of expedited discovery).  Understanding who, in particular, defied this Court's orders, for example, or directed others not to comply, is relevant to ensuring that Plaintiffs' interests, and the broader interests of justice, are fairly vindicated in connection with the Government's unlawful conduct. In short, the production of documents the Government has deliberately shielded through insufficient claims of privilege will help "ascertain how the violation occurred, how to prevent a recurrence, and how to repair any damage that has been done." *Potter*, 126 F.4th at 724.

With respect to documents withheld on the basis of asserted qualified privileges, some of which are the subject of a separate track of litigation in this matter, ECF No. 182, the Court should find those privileges waived as a component of the imposition of discovery sanctions.  Here, the Plaintiffs' interest in obtaining the shielded information, considered alongside the gravity of the discovery violations, warrants compelled disclosure.  *See generally* ECF No. 129.

### C.     Investigation Into Willful Noncompliance By Appointment Of A Special Master

Alternatively, should the Court be disinclined to order production of purportedly privileged documents to Plaintiffs, it could appoint a special master to investigate the Government's willful noncompliance.  Among the "facts" Plaintiffs suggest should "be taken as established for purposes

of this action," Fed. R. Civ. P. 37(b)(2)(A)(i), is the incontrovertible finding that the Government officials responding to discovery did not just refuse to obey the Court's orders, but willfully sought to impede the discovery process. Divining the identities of these officials is made difficult by the noncompliance itself—although at least a few, such as Mazzara, are already known—which is why it is appropriate for the Court to order an investigation into *which* Government officials willfully evaded the Court's discovery orders. This could entail the Court deeming waived all non-state secrets privileges that the Government has asserted and ordering the prompt production of those documents, *see* Section D, *supra*; ordering the documents for which the Government *has* asserted state secrets privilege to be produced for *in camera* review; and ordering the personal devices of key officials—such as Bondi, ███████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████—to be turned over for *in camera* review as well, *see* ECF No. 177-2 at 3.

Such an investigation could also be conducted by a Special Master appointed by the Court. *See* Fed. R. Civ. P. 53(c)(2) ("The master may by order impose on a party any noncontempt sanction provided by Rule 37 . . . , and may recommend a contempt sanction against a party and sanctions against a nonparty."); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2021 WL 3883265, at *1 (D. Md. Aug. 31, 2021) (adopting Special Master's recommendation regarding search protocol of parties' personal devices). Courts both within and without this Circuit have appointed Special Masters when confronted with similar litigation misconduct that necessitates a thorough and impartial evaluation of whether additional sanctions, including civil and criminal contempt, are warranted. *See, e.g.*, *RLI Ins. Co. v. Nexus Servs., Inc.*, 2021 WL 11959060, at *1, 18–19 (W.D. Va. Dec. 16, 2021); *Carlucci v. Piper Aircraft Corp.*, 775

F.2d 1440, 1453 (11th Cir. 1985) ("We note from the record that the [discovery] misconduct of [defense attorney], *inter alia*, forced the appointment of a special master."); *Jarzyna v. Home Props., L.P.*, 783 F. App'x 223, 227 (3d Cir. 2019) (affirming "special master's recommendation that [plaintiff] pay the bulk of the special master fees because he was mostly responsible for the waste of resources caused by the parties' various discovery disputes").

### D.    Fines

Under Rule 37 and its inherent powers, the Court may levy fines on parties, including the Government, for failing to comply with discovery orders, and should do so here.  *See Bradley v. Am. Household Inc.*, 378 F.3d 373, 378 (4th Cir. 2004); *see also Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d at 1251  ("We have also upheld monetary sanctions against the Government under Rule 37(b).").[18]  For example, in *United States v. Westinghouse Electric Corp.*, 648 F.2d 642, 652 (9th Cir. 1981), *overruled on other grounds by FTC v. Actavis*, 570 U.S. 136, 158 (2013), the Ninth Circuit upheld a $500 per-day civil contempt fine until the parties complied with the district court's order directing them to answer interrogatories.  *Id.* at 651–53.  In *RLI Ins. Co. v. Nexus Services, Inc.*, 2022 WL 2654227 (W.D. Va. July 8, 2022), the district court imposed a $1,000 per-day civil contempt fine until the contemnors "satisfactorily supplement their responses to the post-judgment interrogatories, requests for production of documents, and subpoena responses."  *Id.* at *8.  And in *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993), the Eleventh Circuit upheld a

---

[18]    The Court in *Bradley* determined that the fines were "criminal in nature," thus triggering criminal procedural protections such as notice, the opportunity to be heard, and "to have . . . guilt determined beyond a reasonable doubt."  378 F.3d at 378–79 (quotation marks omitted).  Fines imposed in this case, by contrast, can be brought under the court's *civil* contempt powers, as they would be "conditioned on compliance with a court order," *id.* at 378, namely ECF Nos. 51, 61, 79, 100, and 146, among others, *see J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 351 (D. Conn. 1981) (Cabranes, J.) (collecting cases for the proposition that court-imposed fines need not require additional procedural safeguards).

$5,000 fine for each defendant and $500 for each defense attorney for "intransigence" that "hampered the discovery process and showed disdain for the court's orders." *Id.* at 1540, 1546.

Courts may impose monetary sanctions against government attorneys personally. For example, in *United States v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365 (9th Cir. 1980), the Ninth Circuit upheld a $500 sanction "against the government's counsel personally" based on "callous disregard for the discovery processes and the orders of this Court." *Id.* at 1367 (quotation marks omitted).

The court may go even further and prohibit the government from reimbursing its attorneys for their costs. In *Chilcutt*, 4 F.3d 1313, the court upheld a Rule 37 monetary sanction against an Assistant United States Attorney for "disobey[ing] the district court's order to fulfill its discovery obligations and attempt[ing] to deceive the court and the plaintiffs into believing that certain documents properly requested either did not exist or were not requested. . . . The court stated that these sanctions were against the attorney, not against the United States, and forbade [the attorney] from seeking reimbursement from the Government." *Id.* at 1315, 1317. And in *Cobell v. Norton*, 213 F.R.D. 16, 31 (D.D.C. 2003), the court dealt with government attorneys who "repeatedly made groundless assertions of attorney-client privilege," sought to improperly narrow the scope of deposition questioning, and "obstructed a legitimate inquiry into whether [the attorney's] co-counsel had lied to the Court." *Id.* at 31; *see also id.* (noting that the government's "discovery abuse" was "compounded" by the DOJ engaging in an "attempted coverup" by "fil[ing] a nineteen-page meritless memorandum that defended her conduct"). The court accordingly imposed Rule 37 monetary sanctions on the government attorneys personally, reasoning that "[t]he Court sees no reason why taxpayers should foot the burden of remedying the harm to plaintiffs caused by the unjustifiable conduct of government attorneys." *Id.* at 32. It stopped short of barring the United

States from reimbursing the government attorneys, but noted that it was within the court's power to do so. *Id.* (citing cases); *cf. United States v. Shaffer Equip. Co.*, 158 F.R.D. 80, 88 (S.D. W. Va. 1994) (imposing monetary sanctions under Rule 26 against government attorneys and forbidding them from seeking reimbursement from the government).

Plaintiffs submit that fines should be imposed on the Defendants, and that personal sanctions are warranted against, at minimum, Joseph Mazzara, based on the conduct detailed above.

### E. Civil Contempt

The Court may "treat[] as contempt of court the failure to obey" a court order. Fed. R. Civ. P. 37(b)(2)(A)(vii); *see also* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority.").[19] The Fourth Circuit has affirmed civil contempt sanctions for parties that have evinced "disregard for the discovery process," such as by failing to produce discovery materials pursuant to a court order, that mirrors the conduct of the Government in the instant case. *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267–68 (4th Cir. 2019); *see also RLI Ins. Co.*, 2022 WL 2654227, at *8 (holding a party in civil contempt for failing to adequately respond to interrogatories or produce requested discovery materials).

---

[19] Civil contempt, unlike criminal contempt, does not trigger "the procedural protections of notice and a hearing." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 499, 537, 540–41 (D. Md. 2010) (holding a party in civil contempt, with the possibility of two years' imprisonment, based on misconduct during discovery process), *aff'd in part, modified in part*, 2010 WL 11747756 (D. Md. Nov. 1, 2010); *see also Bralley v. Carey*, 2011 WL 6326503, at *4–5 (E.D. Va. Dec. 1, 2011) (imposing schedule of increasing monetary sanctions for civil contemnor, with provision for incarceration if contemnor refused to comply with discovery requests for more than 21 days).

**Conclusion**

For these reasons, Plaintiffs respectfully request the Court sanction Defendants for their discovery violations as described above and order any other remedial relief the Court deems appropriate.

Dated: June 11, 2025

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

/s/ Jonathan G. Cooper
**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.*

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Plaintiffs*