UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

KILMAR ARMANDO ABREGO GARCIA, *et al.*,

        *Plaintiffs*,

  v.

KRISTI NOEM, Secretary of the Department of Homeland Security, *et al.*,

        *Defendants*.

Case No. 8:25-cv-00951 (PX)

**DECLARATION OF BENJAMIN MARK MOSS**

I, Benjamin Mark Moss, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the Acting Senior Counsel for District Court Litigation of the Office of Litigation – General Litigation and Appeals Section ("OIL-GLAS"), an office within the Civil Division of the United States Department of Justice. I joined the Civil Division of the Department of Justice in 2011 as a trial attorney, a career civil service position, within the Office of Immigration Litigation. Since then, in addition to handling cases in federal district and appellate courts, I have performed various management functions, including as a senior litigation counsel and an acting assistant director. In 2025, I was promoted to the position of Acting Senior Counsel for District Court Litigation. In this career federal civil servant role, I support and manage oversight of OIL-GLAS's district court litigation portfolio and personally handle and lead teams handling litigation. My direct supervisor is Acting Deputy Director Glenn Girdharry, also a career federal civil servant.

2. The principal responsibility of OIL-GLAS is to litigate immigration cases originating in federal district courts (including appeals from those cases), as well as petitions for review of final

orders of removal in federal appellate courts. OIL-GLAS represents the Government in the above-captioned case.

3. I make this declaration in support of Defendants' Opposition to Plaintiffs' motion for discovery sanctions in the above-captioned matter based on personal knowledge and review of records and information related to this case. Because I make this declaration for a limited purpose as a summary of some of the steps involved with and challenges faced in completing document discovery by the May 30, 2025 deadline, I do not share here all the information that is known to me about the subjects presented below, but rather, I present a summary and certain illustrative details.

4. I understand that Plaintiffs' request for sanctions relates, among other things, to the government's production of documents in response to Plaintiffs' First Set of Requests for Production, dated April 16, 2025, and Plaintiffs' Amended First Set of Requests for Production, dated April 22, 2025, in this case.

5. Completing these tasks has been extremely burdensome on Defendants, who, as quantified below, dedicated an enormous number of attorney hours between April 15, the date of the Court's order, and the signing of this declaration. As a result of these and prior efforts, Defendants have completed the following document discovery tasks in a very short time frame:

   a. Defendants have responded to Plaintiffs' requests for production with ten (10) productions, which occurred on April 21, May 5, May 7, May 12 (with the foregoing productions supplemented on May 23), May 28, May 30, June 3 (an updated version on June 4), June 11, June 13, (an updated version on June 16), and June 24, 2025.

b. Defendants have reviewed approximately **5,500** documents, spanning approximately **56,899** pages.

c. Defendants have reviewed and produced approximately 404 documents, spanning approximately 4,256 pages, to Plaintiffs.

d. Defendants have reviewed approximately 1,825 documents withheld as privileged, spanning approximately 16,782 pages.

e. Aside from the A-file, which had only a few redactions, the Bates ranges of the documents Defendants withheld from production in whole or part as privileged are as follows:

   i. May 23, 2025 privilege log: KAAG-Noem-PRIV_WH-0000001-11405.

   ii. June 3, 2025 privilege log: KAAG-Noem-PRIV_WH-0011419-13221.

   iii. June 11, 2025 privilege log: KAAG-Noem-PRIV_WH-0013247-13564.

   iv. June 13, 2025 privilege logs as updated on June 16: Noem-PRIV_WH-0013593-13603 and KAAG-Noem-PRIV_WH-0013604-16453.

   v. June 24, 2025 privilege log: KAAG-Noem-PRIV_WH-0016454-18116.

   vi. Note: Defendants' Bates numbers for privileged documents end on KAAG-Noem-PRIV_WH-18116, though Defendants withheld approximately 16,782 pages. This is because not all Bates numbers were necessarily used and some documents were designated with the prefix "KAAG-Noem-PRIV_WH" even though they may have been redacted and produced. In any event, all documents withheld or redacted for privilege appear in a privilege log with a Bates range.

6. On May 16, 2025, the Court ordered Defendants to produce a more detailed privilege log. On May 23, 2025, with only one week to do so, Defendants served an amended privilege log of more than 1,000 entries, updated to provide substantially more detailed privilege descriptions as well as a "cast of characters," designed to give Plaintiffs and if necessary the Court the opportunity to better assess Defendants' privilege invocations.

7. On May 30, 2025, Defendants served another detailed privilege log, with 234 entries. Defendants also produced documents with Bates range KAAG-Noem-0000002475 to KAAG-Noem-0000002862. Defendants' May 30, 2025 production included a production letter, attached to this declaration as Exhibit 1, which detailed Defendants' efforts as well as challenges that prevented Defendants from completing production by May 30, 2025.

8. On June 3, 2025, Defendants served an updated version of the May 30 privilege log. Defendants also served a copy of Plaintiff Abrego Garcia's A file, with Bates range KAG_A File_000001 to KAG_A File_000375.

9. On June 4, 2025, in reviewing the A file and preparing the privilege log for the A file, on their own initiative Defendants opted to withdraw some of the redactions they previously made. Defendants therefore provided an updated copy of the A-File with the redactions previously made at KAG_A File_000201 and KAG_A File_000279-324 removed.

10. On June 11, 2025, Defendants served an additional detailed privilege log, with 103 entries. Defendants also produced documents with Bates range KAAG-Noem-0000002863 to KAAG-Noem-0000003023.

11. On June 13, 2025, Defendants served two more detailed privilege logs, with collectively 400 entries. Defendants also produced over 600 pages of documents.

12. On June 16, 2025, Defendants served corrected versions of the June 13, 2025 privilege logs, updated to correct an inadvertent incorrect Bates numbering of the documents described in those logs. Defendants also served an updated version of the June 13, 2025 document production to include a load file and a text file, as owing to a technical issue, these were not included in the June 13, 2025 production. The June 16, 2025 production also included the remaining EARM screenshots.

13. On June 24, 2025, Defendants served an additional privilege log with 193 entries. Defendants also produced 557 pages of documents.

14. In completing document productions in a case such as this, Defendants completed a number of steps. These steps included:

    a. Document custodians and parameters were identified.

    b. Collection occurred.

    c. Data was transmitted as necessary to the Civil Division's Automation Litigation Support Lab ("the Lab"), which processed and loaded the data into Relativity document review software, sometimes referred to internally as "CORA." If data reaches the Lab without having been processed, it normally takes between one and three weeks to process it into a format that can be reviewed using Relativity. In recognition of the expedited discovery ordered in this case, the Lab was able to expedite processing in this case to take days instead of weeks. Still, data had to be processed each time a new collection of data reached the Lab.

    d. Once pre-review data processing was complete, data in Relativity was sorted into batches so that it could be reviewed by document reviewers.

    e. Each batch of documents for review generally went through several layers of review for responsiveness and, if responsive, privilege: first level (1L) and second level (2L) review within the originating agency (here, DHS, ICE, and State); then review by DOJ; and in the event of questions about responsiveness or privilege, a fourth and fifth round of interagency (IA) review was conducted until a final determination was made concerning whether a given document is responsive and, if so, whether any privilege applies.

    f. In the event a document was responsive and privileged, care was taken to draft a privilege description that describes the basis for the privilege. Owing to the expedited nature of discovery ordered by the Court, Defendants made their best efforts to balance thoroughness of privilege description with the need to work speedily to meet expedited discovery deadlines. For a number of documents, it routinely took collectively 30 minutes or more to review a document, consult with colleagues to ask questions, and prepare a privilege description.

    g. When it was time to run a production of documents, all document reviewers were required to exit the Relativity software for a period of time so that a production search could be assembled.

    h. Running a production of documents took the Lab somewhere between two and six hours, depending on various factors.

    i. Once the Lab confirmed that a run of documents was ready for production, it generally took between two and five hours for the DOJ litigation team to conduct quality checks and secure mandatory consultation with leadership before making a production to Plaintiffs.

    j. For the steps above to occur, document reviewers within the Defendant agencies and within DOJ were identified, trained, and assigned batches of documents to review. The departure of over 30 attorneys from OIL-GLAS leading up to and during the production period considerably depleted the personnel with the requisite document review training, leading to emergency efforts to rapidly identify and train document reviewers. The departure of these attorneys from OIL-GLAS also increased the workload on the attorneys who remained at OIL-GLAS, making the task of identifying personnel trained and available to participate in document review significantly more difficult. Nevertheless, mindful of the urgency of the Court's orders, OIL-GLAS expended considerable effort recruiting and training personnel to serve as document reviewers for this case.

15. A significant challenge in producing documents by May 30, 2025, was Plaintiffs' requests that Defendants considerably expand the scope of discovery. At Plaintiffs' requests, Defendants made numerous concessions to Plaintiffs to expand the scope of discovery, requiring Defendants to repeatedly task their IT/records personnel with identifying and collecting—and their limited staff available for document review with reviewing—additional documents. These mid-stream adjustments to Defendants' document review protocols have, by necessity, introduced inefficiencies to the extent they have required additional document collections and processing in the midst of expedited document review and production. For instance, Plaintiffs asked to expand the date range for documents collected and to collect documents from ten additional custodians including two cabinet-level secretaries: Secretary of Homeland Security Kristi Noem and Secretary of State Marco Rubio. Plaintiffs also proposed additional search terms to identify potentially responsive documents. Defendants agreed. Despite best efforts,

the time and resources needed to collect, process, and review the additional documents requested by Plaintiffs exceeded Defendants' ability to complete these tasks within the expedited discovery timeframe.

16. Collecting and reviewing records from high-ranking officials required creating time-consuming controls and procedures to ensure security, including a severely curtailed number of document reviewers granted access to sensitive documents.

17. The Court also ordered Defendants to collect documents in the custody and control of Attorney General Bondi. Defendants complied, collecting paper records and ESI, including mobile device data.

    a. As an illustration of the burden involved in collecting and reviewing documents in the custody and control of Attorney General Bondi, in addition to many hours of work performed by Justice Management Division IT and records management staff and Office of the Attorney General staff facilitating and performing collections, I personally spent approximately 20 hours facilitating the collection and review of data for Attorney General Bondi. A significant amount of time was needed to communicate with relevant chains of command—including the Assistant Attorney General for Administration and the Civil Division's then Acting Assistant Attorney General—and to communicate with the individuals tasked with performing the collection.

    b. In addition, a technological issue prevented the review of data on Attorney General Bondi's mobile device from being completed by the May 30, 2025 deadline, and required the procurement of a separate software package to complete the review of that data. Although data from the Attorney General's mobile device was collected

before the May 30, 2025 deadline, it was not possible to extract and review that data using available software. The Justice Management Division therefore procured software that would do so, but was not able to complete the procurement until after May 30.

c. Thus, despite best efforts and diligence, it was not possible to complete all required steps for the review and collection of Attorney General Bondi's mobile data by the May 30 deadline.

d. As a result of efforts by attorneys and staff from OIL-GLA, Civil Division and Department leadership, and the Justice Management Division, a review of Attorney General Bondi's materials was ultimately completed. Notably, these efforts were not visible in any privilege log or any production of documents because the search revealed no responsive documents for Attorney General Bondi.

e. On June 11, 2025, Defendants notified Plaintiffs that the search of Attorney General Bondi's records was complete and that no responsive materials were identified.

18. An additional challenge that prevented the completion of document discovery within the expedited deadline set by the Court is that this has not been a straightforward document production. The documents at issue include documents collected from high-level officials at the Departments of State, Homeland Security, and Justice, to include three cabinet-level officials that require careful screening for responsiveness and any applicable privileges and time-consuming rounds of conferral with agency attorneys. Further, many of the documents collected were sent to or by senior White House officials, implicating the Presidential Communications Privilege and requiring conferral with a chain of command and potentially review by White House counsel. Similarly, many of the documents collected required

8

screening for the potential invocation of the State Secrets Privilege and Deliberative Process Privilege, requiring time-consuming rounds of conferral with agency attorneys given the potential need for involving the Secretary of State and/or the Secretary of Homeland Security in asserting these government privileges.

19. Most of the documents collected in document discovery were either nonresponsive or privileged, resulting in an enormous expenditure of time with comparatively few documents to produce. The documents collected were highly sensitive, in many cases privileged, and review required extensive coordination across multiple departments, agencies, and the Executive Office of the President.

20. Additionally, other time-consuming technical collection and production issues arose in accomplishing these collections and productions, necessitating time to resolve them. For instance, some documents were in Spanish, requiring time to locate, train, and deploy Spanish-speaking personnel who had been assigned to other priorities to instead conduct document review tasks. The review in Spanish was necessary to determine responsiveness; a review of these documents is ongoing, at least one Spanish language document has been produced (KAAG-Noem-0000004047) and Defendants will produce any remaining responsive, nonprivileged documents as soon as practicable. Additionally, as noted, the collection of mobile device data from some custodians encountered logistical challenges, and Defendants spent substantial time and effort working with relevant IT personnel to understand the scope of those challenges and predict a likely timeline for resolution.

21. On June 2, 2025, a systems outage prevented a large percentage of OIL-GLAS attorneys as well as Lab personnel from accessing their computers. This included the personnel responsible for document review and production in this case. As a result, very little document review and

production was able to be accomplished in this matter on June 2, 2025, and I was not able to regain full access to my computer until late on June 3, 2025.

22. Due to the substantial amount of time it takes to complete these productions within the expedited discovery timeframe, OIL-GLAS assigned more than 30 attorneys at various points to assist with the massive amount of document review necessary to accomplish these productions in such a short timeframe. OIL-GLAS dedicated more than 1239 attorney hours to this enormous task, with attorneys routinely working up to and past midnight and during the weekends, including Easter weekend, and putting their substantial caseloads on hold to facilitate review of documents for these productions.

23. Even with dedicating many attorneys and attorney hours to this case, there reached a time when Defendants became aware that they needed more time to comply with the expedited discovery schedule, and in good faith sought an extension of time to be able to comply with the schedule. On May 29, 2025, Defendants respectfully notified the Court of their partial compliance to date and, "in light of their diligence in complying and collection and production issues that are leading to challenges fully complying with that deadline," Defendants moved the Court to extend the time for them to complete supplemental production of discovery referenced at ECF No. 143 by 14 days. ECF No. 167. However, the Court denied the motion. ECF No. 172.

24. While the Court considered (and ultimately, denied) the extension motion, Defendants nevertheless worked steadily to complete discovery by the May 30, 2025 deadline but, despite diligent efforts, were not able to do so. *See* Exh. 1.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 25th day of June, 2025, in Washington, D.C.

BENJAMIN MOSS
Digitally signed by BENJAMIN MOSS
Date: 2025.06.25 18:41:59 -04'00'

_____
BENJAMIN MARK MOSS
Acting Senior Counsel for District Court Litigation
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section

11

# Exhibit 1



**U.S. Department of Justice**
Civil Division
Office of Immigration Litigation

---

*Washington, D.C. 20530*

May 30, 2025

Sascha N. Rand, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP

*VIA EMAIL*

Re:   Abrego Garcia, et al. v. Noem, et. al., No. 8:25-CV-00951-PX (D. Md.)

Dear Counsel,

Enclosed herewith please find another volume of Defendants' production, which Defendants designate as confidential and/or Attorney's Eyes Only under the Stipulated Confidentiality Order in this case, ECF No. 95.

### Production Status

Defendants share with you a production volume today via an encrypted .zip file sent using the Justice Enterprise File-Sharing Service (JEFS). A link was sent to email addresses we have identified; if additional users need access, please let us know their email addresses. The password for the .zip file is **2Sj6s908u4fgE%nh795**.

This production bears a Bates range of KAAG-Noem-0000002475 to KAAGNoem-0000002862. Please let us know if you have any difficulty accessing the production. Although Defendants' production in response to Plaintiffs' Amended Request for the Production Documents now is substantially complete, Defendants expect to make additional rolling productions of any remaining responsive, nonprivileged documents as soon as practicable.

### Custodians

First, the original 8 custodians:

U.S. Department of State: (1) Michael Kozak, Senior Bureau Official for the Department of State's Bureau of Western Hemisphere Affairs; (2) Amb. William Duncan, U.S. Ambassador to El Salvador; (3) Mauricio Claver-Carone, State Department Special Envoy for Latin America.

U.S. Department of Homeland Security: (4) James Percival, Senior Counselor to the Secretary; and (5) Joseph Mazarra, Acting General Counsel.

U.S. Immigration and Customs Enforcement: (6) Evan Corey Katz, former Assistant Director, Removal; (7) Robert L. Cerna, II, Acting Field Office Director, Harlingen Field Office; (8) Todd Lyons, Acting Director, Enforcement and Removal Operations.

And the additional 10 custodians Defendants agreed to add at Plaintiffs' request:

U.S. Department of State:  (9) Secretary of State Marco Rubio; (10) Dan Holler, Deputy Chief of Staff to Secretary Rubio; (11) Deputy Secretary of State Christopher Landau; (12) State Department Counselor Michael Needham; (13) Lisa Kenna, specific to her position as Executive Secretary for the State Department; and (14) Cartwright Weiland, Senior Bureau Official for the Bureau of International Narcotics and Law Enforcement Affairs.

U.S. Department of Homeland Security: (15) Secretary of Homeland Security Kristi Noem.

U.S. Immigration and Customs Enforcement: (16) Matthew Elliston, Deputy Assistant Director of Field Operations, ICE ERO; (17) Barrett R. McDaniel, Homeland Security Investigations, Assistant Attaché; and (18) Garrett J. Ripa, Deputy Executive Associate Director, ICE ERO.

Finally, by Court order:

U.S. Department of Justice: (19) Attorney General Pamela Bondi

### Time Range of Documents

We have collected documents from all custodians from March 12 through May 1, 2025.

### Repositories

U.S. Department of State: Email files from the State Department eRecords system, local text from custodian mobile devices, and non-custodial documents (separate documents held by the Department but that did not come from one of the custodians listed above).

U.S. Department of Homeland Security: Email; OneDrive Folder; Version Folders; Calendar Data; Teams Chats; Shared Calendars; and mobile device data (explained in further detail below).

U.S. Immigration and Customs Enforcement: Email files from ICE's system of records; OneDrive Folder; Version Folders; Calendar Data; Teams Chats; Shared Calendars; mobile device data (explained in further detail below) and non-custodial documents (separate documents held by DHS but that did not come from one of the custodians listed above).

U.S. Department of Justice:   Attorney General Bondi's paper records, email, calendar, and mobile device data.

### Privilege Log

We are sending to you today along with this letter a privilege log for this production volume.   A technical problem prevented us from including Bates numbers for documents withheld in full

from this production. Defendants are working on that issue and will provide a supplemental privilege log for this volume as soon as practicable.

### 502(d) Clawback Agreement

We note that Plaintiffs have not yet responded to Defendants' May 28, 2025 proposal to file a Rule 502(d) clawback agreement. Accompanying this production is another copy of the proposed agreement. Please let us know if Plaintiffs will consent to the agreement.

### State Secrets Privilege Assertions

As before, in the attached privilege log, there are two columns labeled "TAG – Privilege Description" and "Custodian." For each entry where the custodian is from the Department of State and the privilege description contains an assertion of the state secrets privilege, the May 23, 2025 Declaration of Marco Rubio supports that assertion for the reasons explained therein and in the privilege log's "TAG – Privilege Description" column. Defendants also continue to assert the state secrets privilege where the custodian is from the Department of Homeland Security, for use in the event the Court grants leave to submit a state secrets declaration from that agency.

### Attorney General Bondi Document Collection

A custodian interview of Attorney General Bondi was conducted to identify possible repositories. A manual search of Attorney General Bondi's paper records yielded no responsive documents. A forensic search (no manual collection) of Attorney General Bondi's email and calendars yielded no responsive documents. Attorney General Bondi does not have a classified email account. A forensic search of Attorney General Bondi's mobile device was attempted but encountered a technological issue that prevented a review of the data for responsiveness and privilege. That technical issue is expected to be resolved as soon as practicable. Once that technical issue is resolved, DOJ will assess that data for responsiveness and privilege and will then be able to form a prediction on how long review for responsiveness and privilege will take. In sum, following a diligent search using parameters and repositories Plaintiffs requested, no responsive documents for Attorney General Bondi were identified thus far, and if responsive mobile device data is identified within the collection, Defendants will produce responsive non-privileged documents and a privilege log with respect to any such documents withheld for privilege.

### Documents of Career Government Attorneys

Defendants respectfully decline to undertake the unduly burdensome task of collecting, reviewing, and preparing a privilege log for documents held by a current State Department career attorney and a former Department of Justice career attorney whose only roles in this case have been to provide legal advice and, as to the Department of Justice career attorney, legal advocacy. Plaintiffs may have suggested that these attorneys played a role beyond that of a legal advisor, but Plaintiffs' understanding is mistaken. Moreover, Plaintiffs have failed to explain why these career attorneys' documents will be anything other than duplicative of documents which, if they exist, would be obtained in searches for principal custodians' documents, such as those held by the career and cabinet secretary custodians identified above.

### Interrogatories

Today we are serving Defendants' second supplemental responses to Plaintiffs' amended interrogatories.

### A-File

On May 28, 2025, Defendants produced the record of proceedings from the Executive Office of Immigration Review, which is Bates-stamped KAAG-Noem-0000001578 through KAAG-Noem-0000002474. The record of proceedings contains portions of Plaintiff's A-file. DOJ received the complete A-file from ICE on May 30, 2025, and that document is in the process of being uploaded to DOJ's document review database. Both ICE and DOJ will need to complete review of the A-file before production, but expect to make a production as soon as practicable.

### EARM

ICE provided EARM records to DOJ on May 27, 2025. The files have been uploaded to DOJ's document review database and are in the process of being reviewed. DOJ will need to complete review of the EARM records before production, but expect to make a production as soon as practicable.

### Mobile Device Data

State has collected and turned over mobile device data from six of its nine custodians to DOJ. That data has been uploaded to DOJ's document review database. State is still determining whether Secretary of State Marco Rubio, Deputy Chief of Staff Dan Holler, and Counselor Michael Needham have text and non-email records that need to be reviewed. Both State and DOJ are in the process of reviewing the mobile device data and expect to make a rolling production of any such responsive, non-privileged documents as soon as practicable.

ICE has collected and turned over mobile device data from all custodians to DOJ as of May 30, 2025. The data is being uploaded to DOJ's document review database. Both ICE and DOJ will need to review the mobile device data before producing any responsive, non-privileged data, which will occur as soon as practicable.

DHS has collected and turned over to DOJ mobile device data from all custodians as of May 30, 2025. Both DHS and DOJ will need to review the mobile device data before producing any responsive, non-privileged information, which will occur as soon as practicable.

### Best Efforts to Complete Discovery

Defendants have undertaken best efforts to complete discovery within the deadline the Court set. When it became clear that despite these efforts, additional time would be needed to complete necessary tasks incident to document collection, review, and production, Defendants sought an extension from the Court. The Court denied the extension request, and Defendants have endeavored to comply. Nevertheless, as noted above, there have been instances where it has simply been impossible to complete the collection, review, and production steps necessary to produce all discovery by the deadline. Defendants will continue to work diligently to complete these steps.

5

Regards,

  /s/ Jonathan D. Guynn
JONATHAN D. GUYNN
Deputy Assistant Attorney General
Civil Division, U.S. Department of Justice
Office: (202) 514-7835
Mobile: (202) 856-4809
jonathan.guynn@usdoj.gov