UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, Secretary, United States Department of Homeland Security, *et al.*, <br><br> Defendants. | No. 8:25-cv-951 (PX) <br><br><br> Declaration of Marco Rubio |

**SUPPLEMENTAL DECLARATION OF SECRETARY OF STATE MARCO RUBIO**

I, Marco Rubio, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am the Secretary of State of the United States and head of the United States Department of State, an Executive Department of the United States. A description of my role and duties, the basis for my knowledge about facts and policies relevant to this lawsuit, and of the Court's orders in this suit, are set forth in my first state secrets declaration. ECF No. 112-5, May 5, 2025. The purpose of this Supplemental Declaration is to update the court on the extensive efforts to facilitate the return of Kilmar Abrego Garcia and to comply with discovery obligations. This Supplemental Declaration is based on personal knowledge and on information provided to me by knowledgeable State Department employees.

2. As the U.S. government has repeatedly conveyed to Plaintiffs, before the Fourth Circuit's decision of April 17 clarifying its understanding of "facilitate," the United States took the position that the only steps needed to facilitate the return of Mr. Abrego Garcia involved removing domestic barriers. After that date, diplomatic discussions with the Salvadoran government were

1

necessary with a view to persuading it to release Mr. Abrego Garcia into our custody. As Judge Boasberg found with respect to the Venezuelan nationals deported, to El Salvador on March 15, the United States did not retain custody, constructive or otherwise, over the deported individuals. The same was true for Mr. Abrego Garcia, a Salvadoran national *not* subject to the March 13-14 arrangement between the United States and El Salvador, during his confinement in CECOT and Centro Industrial. This fact was evidenced, among other ways, in El Salvador's unilateral decision to move him from CECOT to Centro Industrial in mid-April, which the United States only found out about after Mr. Abrego Garcia told Senator Van Hollen this fact in a meeting with the Senator arranged by the Salvadoran government. It is also evidenced in El Salvador's unilateral decisions to grant certain members of the U.S. Congress access to Mr. Abrego Garcia and deny such access to different members of Congress. As such, the decision to release him was not up to us; it was El Salvador's decision alone to make.

3. The United States has reiterated to Plaintiffs that diplomatic efforts were ongoing, telling them truthfully in successive iterations of interrogatory responses that the State Department continued to engage in appropriate diplomatic discussions with El Salvador, including direct communications between Salvadoran President Nayib Bukele and me. Ambassador Kozak conveyed a similar message to the court in a declaration dated April 22, where he noted we were having high-level diplomatic discussions with the Salvadoran government to determine whether it would be willing to release Mr. Abrego Garcia into U.S. custody in order for us to return him to the United States. Deputy Secretary of State Landau updated the court on these efforts in a letter dated April 29 in which he explained my decision to personally handle ongoing discussions regarding Mr. Abrego Garcia, given my personal relationship with President Bukele and senior officials in the Salvadoran government. As Deputy Secretary Landau explained, I understood the

court's order to facilitate Mr. Abrego Garcia's release, and I was committed to making prompt and diligent efforts to comply. Deputy Secretary Landau reiterated Ambassador Kozak's caution that these diplomatic efforts would require weeks—perhaps months—to bear fruit. He added that the fact that the State Department had not immediately secured Mr. Abrego Garcia's release was evidence of the difficulty of the task, not a lack of diligence. He also cautioned that it was uncertain whether President Bukele or others within the Salvadoran government would ever consent to release Mr. Abrego Garcia.

4. In public testimony before the Senate Foreign Relations Committee on May 20 and the House Foreign Affairs Committee on May 21, I explained that I was complying with the court's order to facilitate Mr. Abrego Garcia's return, including directly communicating with President Bukele to that end. In an addendum to my Supplemental State Secrets declaration dated May 23, I elaborated on the sensitivities surrounding these discussions, and why we could not divulge certain details to the court or the Plaintiffs. The reasons why those details cannot be divulged still stand.

5. While I will likewise not divulge the details of discussions about Mr. Abrego Garcia's release that occurred following his May 21 indictment in the Middle District of Tennessee, I can confirm that these discussions and the presentment of a criminal warrant resulted in El Salvador's decision to release Mr. Abrego Garcia into U.S. custody on June 6. President Bukele's tweet from June 6 indicates why the changed circumstances mattered to him: "As I said in the Oval Office: 1. I would never smuggle a terrorist into the United States. 2. I would never release a gang member onto the streets of El Salvador. That said, we work with the Trump administration, and if they request the return of a gang member to face charges, of course we wouldn't refuse."[1]

---

[1] https://x.com/nayibbukele/status/1931084729840800096?s=46.

3

6.  I and my Department have worked diligently to comply with the order of this court and those of the Fourth Circuit and the United States Supreme Court. As Deputy Secretary Landau, Ambassador Kozak, and I explained for the court, diplomacy can take time and is not always successful. In this instance it did take time, but it was successful. Mr. Abrego Garcia has been returned to the United States, as the court ordered.

7.  My Department has also made extensive efforts to comply with our discovery obligations. Personnel from the Department's Bureau of Administration searched the Department's e-Records database to locate emails potentially responsive to Plaintiffs' Requests for Production. These personnel updated and repeated these searches as parameters and search terms were negotiated with Plaintiffs. This process was completed for nine total State Department custodians, identifying a total of 878 email records for review in the Relativity database of the Department of Justice. The Department also provided to Plaintiffs "non-custodial" documents as requested, including the diplomatic note arrangement with El Salvador (declassifying the arrangement for this purpose) and the letter grant of foreign assistance funds for El Salvador. The Office of the Legal Adviser worked closely with the Bureau of Administration, Executive Secretariat personnel, and custodians to identify and collect non-email documents, including Word and pdf documents from the Microsoft environment, Teams chats, chats from apps such as WhatsApp and Signal on cellular telephones, and other documents not included in the e-Records database. Seven attorneys in the Office of the Legal Adviser have spent a total of approximately 700 hours over the course of ten weeks, including nights, weekends, and the Easter holiday, reviewing and marking these emails and other documents for responsiveness and privilege, drafting privilege justifications, and discussing these designations and justifications with attorneys in the Departments of Justice and Homeland Security. Three Office of the Legal Adviser attorneys spent approximately 150 total

hours supporting Department principals in drafting privilege declarations and other written material for this case. In sum, these hundreds of hours of work by many people in multiple offices at the Department confirm our extensive and diligent efforts to comply with discovery obligations.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 24 day of June 2025.

_____
Marco Rubio
Secretary of State