UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KILMAR ARMANDO ABREGO GARCIA, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, Secretary of U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 8:25-CV-00951-PX<br><br>**DECLARATION OF KATELAND JACKSON** |

# DECLARATION OF KATELAND JACKSON

I, Kateland Jackson, do hereby declare and say:

1. Since April 2025, I have been employed by the U.S. Department of Homeland Security ("DHS") as the Chief of Staff for the Office of the General Counsel ("OGC"). As the Chief of Staff, I supervise attorneys and other professional staff who are coordinating efforts at DHS Headquarters (DHS HQ) to respond to court orders and discovery requests in this case, as well as in other litigation in which DHS HQ is a party or has equities. I make the following statements based on my personal knowledge and upon information furnished to me in the course of my official duties.

2. The matters contained in this declaration are based upon my personal knowledge or information provided to me in my official capacity relating to the case of *Abrego Garcia v. Noem*, No. 25-cv-00951, pending in the U.S. District Court for the District of Maryland.

1

3. It is my understanding that Plaintiffs have filed a motion for sanctions against Defendants in connection to discovery ordered in this litigation and Defendants are opposing that motion.

4. For the RFPs, DHS HQ originally identified two custodians likely to have responsive information: James Percival and Joseph Mazzara. Defendants worked together to create a list of search terms likely to pull responsive documents and to identify an appropriate time frame based on the court order.

5. DHS's search capabilities are limited, and the process takes significant time. Resource limitations resulting from both technical limitations and the limited availability of personnel make the process of searching data contained in emails and drives burdensome. DHS HQ currently has one employee who works on, among other work streams, fulfilling data search requests for all of DHS HQ, including requests for data for merits and FOIA litigation, congressional inquiries, and data needed by clients, including the Secretary of Homeland Security. The time intensity of the search requests varies depending on the complexity of searches and the platform that is being searched.

6. Between April 18 and April 25, DHS HQ OCIO (Office of the Chief Information Officer) personnel conducted approximately three data pulls running the search terms crafted by Defendants against the DHS HQ custodians' e-mails, OneDrive, calendars, and Microsoft team chats. These systems have limited searching, collecting, and processing capabilities, which necessitates collecting overbroad amounts of data.

7. Immediately following each data pull, DHS HQ transferred the data to DOJ to process and upload into DOJ's Relativity platform. From there, based on information learned while performing my duties, DOJ set up the document review panel, tagging system, and batched

documents for DHS HQ review.

8. DHS OGC has limited personnel to dedicate to document review. DHS OGC's significant litigation team—which manages all significant litigation for the entire Department—is comprised of six attorneys, one paralegal, and one supervisor, all of whom are working on multiple matters. DHS OGC is not able to commit any staff to full-time document review. DHS HQ rarely engages in such extensive discovery and does not have attorneys (or support staff) whose normal duties are substantially anticipated to include such a significant volume of document review. DHS OGC does not have a contract for document review attorneys, and putting a contract in place would take months at a minimum—assuming that funding was available.

9. Once initial batches were created by DOJ, DHS OGC attorneys reviewed the documents for responsiveness, confidentiality, and privilege. Four DHS OGC attorneys, one supervisor and three attorney advisors, were brought in over the Easter weekend to develop a document review protocol and begin the first level of document review. After first-level review was completed, a SES DHS OGC attorney was then brought in to assist the supervising attorney with second-level review of documents marked responsive as a quality control check. The DHS HQ supervisory attorney also conducted second line review of documents from U.S. Immigration and Customs Enforcement.

10. Based on information learned while performing my duties, following completion of second-level review, DHS HQ documents with interagency equities went to the respective agencies containing equities in those documents. DHS OGC attorneys also reviewed responsive documents identified by other Defendants as a document with DHS HQ equities. Based on information learned while performing my duties, DOJ handled final review of DHS HQ

responsive documents and made an initial document production on May 5, 2025.

11. Based on information learned while performing my duties, Plaintiffs requested a different set of search terms, broader time frame, an additional custodian from DHS HQ—the Secretary of Homeland Security—and mobile data from all three custodians during meet and confers occurring the two weeks following the initial production. DHS HQ, using a combination of OGC attorneys and IT personnel, completed three additional data pulls and transfers to DOJ on May 9, 14, and 28. The May 28 pull was made after realizing DHS had mistakenly not pulled the full date range for the expanded search terms requested by Plaintiffs for all three custodians; once DHS realized the error the Department moved expeditiously to correct it. The process of pulling data, transferring data, and uploading data took approximately 24-48 hours for each pull.  Once the new documents were batched, the new batches then went through the same four levels of review—1L, 2L, interagency, and DOJ review. During this time, Defendants were also revising their privilege log to add additional details per court order.

12. DHS OGC sought assistance from one of DHS's components, ICE, to complete review of the documents pulled and transferred to DOJ on May 28, 2025, following DHS's discovery that it had not pulled the entire date range for the extensively expanded search terms requested by Plaintiffs. Those documents were processed for DHS review the afternoon of May 30, 2025.  Approximately 6 ICE attorneys were brought in to assist two DHS OGC attorneys with first-level review of DHS HQ documents. After completion of first-level review, a DHS OGC supervising attorney completed almost all second-level review for ICE by May 30, 2025. That attorney also conferred with DOJ regarding ongoing technical issues for DHS HQ documents, which were not resolved until the following week.  Over the next

two weeks, DHS OGC learned there were additional documents that had not been batched for DHS HQ review and worked to complete review of those documents as they were batched out. This review was completed June 12, 2025.

13. DHS HQ spent approximately 154 hours completing document pulls, transfers, and review; used 7 OGC attorneys, 3 OCIO personnel, and approximately 6 ICE attorneys; and reviewed approximately 4,658 documents.  This does not include the significant time allotted to other parts of the discovery process, including conferring within DHS and with interagency counsel regarding the review to ensure consistency on collection of information and review of documents and assertion of privileges, as well as preparing witness for and attending depositions of agency employees.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 25th day of June 2025, in Washington, DC.

Kateland Jackson
Chief of Staff
Office of the General Counsel
Department of Homeland Security
Washington, District of Columbia