UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

Kilmar Armando Abrego Garcia, *et al.*,

    Plaintiffs,

v.

Kristi Noem, *et al.*,

    Defendants.

Case No.: 8:25-CV-00951-PX

**Plaintiffs' Emergency Motion For An Order To Return Kilmar Armando Abrego Garcia To The District Of Maryland After Release In The Tennessee Criminal Proceedings**

    When his custody in the Tennessee criminal case ends, Kilmar Armando Abrego Garcia should return here, to the District of Maryland, where his civil litigation began and remains. The Government has stated that once Abrego Garcia is released from criminal custody, it will take him into immigration custody and again try to remove him to El Salvador, where it illegally removed him over three months ago. Plaintiffs therefore move under the All Writs Act and the Court's inherent equitable authority for an order directing the Government to (1) return Abrego Garcia to the District of Maryland immediately upon his release from confinement in the criminal proceedings ongoing in the Middle District of Tennessee, *see United States v. Abrego Garcia*, No. 3:25-cr-00115 (M.D. Tenn.), and (2) refrain from removing Abrego Garcia from the continental United States or transferring him outside this District (other than to travel to Tennessee to participate in the criminal proceedings) absent further order of this Court.

    Plaintiffs file this motion on an emergency basis because on June 22, 2025, the Tennessee district court denied the Government's motion to continue to detain Abrego Garcia in criminal custody, *see* Exhibit A, and on June 25, the Tennessee court denied the Government's motion to stay Abrego Garcia's release, *see* Exhibit B, instead indicating at a hearing that day that Abrego

Garcia would be released from criminal custody, subject to specified conditions, as early as Friday, June 27. If this Court does not act swiftly, then the Government is likely to whisk Abrego Garcia away to some place far from Maryland.

This motion does not ask this Court to adjudicate Abrego Garcia's custodial status in the Tennessee criminal proceedings; that is for the Tennessee district court to resolve. Nor does this motion seek to alter any of the conditions of release set by the Tennessee district court or otherwise interfere with the Tennessee criminal proceedings. This motion simply seeks to ensure that when Abrego Garcia is released from criminal custody, he returns to, and remains in, this District (other than to travel to Tennessee as needed), until further order from this Court.

Both the All Writs Act and the Court's inherent equitable power authorize this relief. The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). It thereby "empowers a federal court to 'issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" *Scardelletti v. Rinckwitz*, 68 F. App'x 472, 477 (4th Cir. 2003) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)).

Courts nationwide rely on the All Writs Act to keep immigration detainees within their jurisdictional reach. *See, e.g.*, *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025) ("We had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter [by ordering that they not be removed from the United States until further order of the Court]. 28 U.S.C. §1651(a).") (referring to the Supreme Court's earlier order at 145 S. Ct. 1034 (2025)); *Ozturk v. Trump*, --- F. Supp. 3d ----, 2025 WL 1145250, at *23 (D. Vt. Apr. 18, 2025) (ordering detainee's return from Louisiana to Vermont), *stay and mandamus denied*

*sub nom.*, *Ozturk v. Hyde*, 136 F. 4th 382 (2d Cir. 2025); *Perez v. Noem*, 2025 U.S. Dist. Lexis 113509, at *4–5 (S.D.N.Y. June 13, 2025) (barring detainee's transfer outside of Districts in New York and New Jersey absent further order). This Court does too. *See* Amended Standing Order 2025-01 (May 28, 2025), https://www.mdd.uscourts.gov/sites/mdd/files/Amended%202025-01.pdf (enjoining the Government from removing certain alien detainees from the continental United States or altering their legal status for a specified time to preserve the Court's jurisdiction).

Beyond the All Writs Act, this Court "undeniably has an 'inherent authority to protect [its] proceedings,' *Degen v. United States*, 517 U.S. 820, 823 (1996), and to 'meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations,' *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)." *Ozturk*, 136 F.4th at 394–95 (rejecting Government's argument to stay order transferring immigration detainee from Louisiana back to Vermont); *see also United States v. Moussaoui*, 483 F.3d 220, 237 (4th Cir. 2007) ("[A] court has the inherent authority to control various aspects of the cases *before that court* so that they can 'protect their proceedings and judgments in the course of discharging their traditional responsibilities.'") (citation omitted).

An order returning Abrego Garcia to the District of Maryland and barring the Government from removing him from here (absent further order) is warranted for at least three reasons.

*First*, it is necessary and appropriate to protect this Court's proceedings and jurisdiction and to prevent the frustration of the prior orders of this Court and the U.S. Supreme Court. Two months ago, the Supreme Court affirmed that the injunction this Court entered "properly requires the Government" not only "to 'facilitate' Abrego Garcia's release from custody in El Salvador," but also "*to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador.*" *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (emphasis added). Treating

3

Abrego Garcia's case as if he had not been unlawfully removed to El Salvador requires returning him to this District. Maryland is where he was on March 12 at the moment his unlawful removal saga began, when ICE agents with "no warrant for his arrest and no lawful basis" arrested him and locked him up at an "ICE facility in Baltimore, Maryland." ECF No. 31 at 4. Maryland is also where his prior immigration proceedings were and thus where any future immigration proceedings should be. *See* ECF No. 1-1 (withholding of removal granted by U.S. Immigration Judge in Baltimore, Maryland). Returning Abrego Garcia to Maryland implements the Supreme Court's directive and safeguards this Court's jurisdiction in this matter.

**Second**, the equities are one-sided in favoring a return to this District. Maryland is Abrego Garcia's longtime home. *See* ECF No. 31 at 3 ("Abrego Garcia lived in Maryland for many years without lawful status."); ECF No. 1 ¶22 ("In the United States, Plaintiff Abrego Garcia has only ever resided in Maryland."); Ex. A at 49 ("[Abrego Garcia] has strong ties to his community in Maryland, where he has lived for the past 13 years."). It is where his wife and three children live and can readily visit him if his detention continues. *See* ECF No. 31 at 4 ("Abrego Garcia lived in Maryland with his wife and their three children."); ECF No. 1 ¶42 ("They all have continuously resided in Prince George's County, Maryland."); *see also* Ex. A at 48–49 ("Abrego has strong family ties, as evidenced by the family members who attended the detention hearing.").

The Government, by contrast, loses nothing by keeping Abrego Garcia where it found him in March 2025; immigration proceedings can run the same in Baltimore as elsewhere. Indeed, Plaintiffs' requested relief *benefits* the Government. In the Tennessee criminal proceedings, the Government represented that *it* would suffer "substantial and irreparable harm" if ICE deports Abrego Garcia and that "[t]his would be irreparable harm to the public" too:

> [A] release of the Defendant [Abrego Garcia] into ICE custody poses potentially irreparable problems for the prosecution in this

4

> case and, therefore, for the public at large whose interests the Government serves. Should this Court not order a stay, and the Defendant is moved to ICE custody and deported from the United States, the prosecution would lose the meaningful opportunity to try its case. This would be irreparable harm to the public. How fast the Defendant could or would be deported remains to be seen. In candor with the Court, such a potential deportation of the Defendant would not be instantaneous. How fast such proceedings could move are difficult to predict. Yet, these immigration proceedings exist as real, potential, substantial and irreparable harm to the United States.

Exhibit C at 7. It is therefore undisputed that the relief sought here—which would bar Defendants, including the heads of the U.S. Department of Homeland Security and ICE, from removing Abrego Garcia from the continental United States or transferring him out of this District (other than to Tennessee to participate in the criminal proceedings) without further order of the Court—will prevent irreparable harm not only to Plaintiffs, but also to the Government and the public.

*Third*, absent order from this Court, the Government will likely shuttle Abrego Garcia elsewhere. The Government's public statements leave little doubt about its plan: remove Abrego Garcia to El Salvador once more. In the Tennessee criminal proceedings, the Government stated that "it is an accepted fact in this case that if the Defendant [Abrego Garcia] is released from U.S. Marshals Custody, he will not be released at liberty but rather, into the custody of Immigration and Customs Enforcement (ICE)," which will commence "immigration proceedings" to deport him. Exhibit C at 6–7. And in several public statements, senior officials have announced that they intend to remove Abrego Garcia to El Salvador again. *See, e.g.*, *Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6, 2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia (video at 0:53–1:00) ("Upon completion of sentence we anticipate he will be returned to his home country of El Salvador."); Exhibit D ("He will be tried, jailed and then deported again to El Salvador."). It is therefore highly likely that

when Abrego Garcia is released from criminal custody, the Government will take him into immigration custody to remove him to El Salvador once more.

    The last time the Government detained Abrego Garcia for removal, it transferred him "to detention facilities in Louisiana and La Villa, Texas" and then illegally removed him. ECF No. 31 at 4. In other high-profile immigration cases in recent months, the Government has engaged in a similar "pattern" of moving immigration detainees "to Louisiana or Texas" in an apparent "attempt at forum shopping." *Suri v. Trump*, 2025 WL 1310745, at *13 (E.D. Va. May 6, 2025) (collecting cases). It is therefore likely that the Government will attempt to hold Abrego Garcia in immigration custody in a jurisdiction other than the District of Maryland, from where it will again seek to remove him to El Salvador. To preserve and protect this Court's jurisdiction and proceedings, and to prevent frustration of the prior orders to treat this case as if Abrego Garcia had not been unlawfully removed, the Court should order the Government to return Abrego Garcia to the District of Maryland once his criminal custody ceases. *Cf. id.* ("The Court declines to transfer Dr. Khan Suri's petition to the Western District of Louisiana for the additional reason that doing so would ratify an attempt at forum shopping. . . . [F]orcing Petitioner to litigate his case in Louisiana or Texas for that matter, many states away from his lawyers and family, would meaningfully deprive him of their ability to aid in his representation for the duration of these habeas proceedings.").

*    *    *

    A prompt order to return Abrego Garcia to Maryland and keep him here after his criminal confinement ends will respect the Supreme Court's mandate and the equities, prevent a repeat of the fiasco in March when the Government unlawfully removed Abrego Garcia to El Salvador, and allow this Court to conclude these proceedings in a just and timely manner.

Plaintiffs reserve all rights to seek additional relief regarding the legality, conditions, and duration of any immigration detention of Abrego Garcia, if the Government follows through on its statements that ICE will detain him upon his release from custody in the Tennessee criminal proceedings. For now, Plaintiffs seek only to preserve this Court's jurisdiction and prevent frustration of its orders by ensuring that Abrego Garcia returns to Maryland.

## Conclusion

For these reasons, the Court should order the Government to return Abrego Garcia to this District when his confinement for the criminal proceedings in Tennessee ends and to refrain from removing him from the continental United States or from transferring him outside this District (except to travel to Tennessee to participate in the criminal proceedings) until further order.

Dated: June 26, 2025

| | |
|---|---|
| **MURRAY OSORIO PLLC**<br>Simon Y. Sandoval-Moshenberg<br>Rina Gandhi<br>4103 Chain Bridge Road, Suite 300<br>Fairfax, Virginia 22030<br>(703) 352-2399<br>ssandoval@murrayosorio.com<br><br>**QUINN EMANUEL URQUHART &<br>  SULLIVAN, LLP**<br>Stephen E. Frank<br>111 Huntington Ave, Suite 520<br>Boston, MA 02199<br>(617) 712-7100<br>stephenfrank@quinnemanuel.com | */s/ Jonathan G. Cooper*<br>**QUINN EMANUEL URQUHART &<br>  SULLIVAN, LLP**<br>Jonathan G. Cooper (D. Md. Bar No. 21345)<br>Olivia Horton*<br>1300 I St. NW, Suite 900<br>Washington, DC 20005<br>(202) 538-8000<br>jonathancooper@quinnemanuel.com<br>oliviahorton@quinnemanuel.com<br>**admitted in Texas; not admitted in D.C.*<br>*Supervised by attorney admitted in D.C.*<br><br>Andrew J. Rossman<br>Sascha N. Rand<br>K. McKenzie Anderson<br>Samuel P. Nitze<br>Courtney C. Whang<br>Roey Goldstein<br>Sam Heavenrich<br>Victoria Martin<br>Morgan L. Anastasio<br>295 Fifth Avenue, 9th Floor<br>New York, NY 10016<br>(212) 849-7000<br>andrewrossman@quinnemanuel.com<br>sascharand@quinnemanuel.com<br>mckenzieanderson@quinnemanuel.com<br>samuelnitze@quinnemanuel.com<br>courtneywhang@quinnemanuel.com<br>roeygoldstein@quinnemanuel.com<br>samheavenrich@quinnemanuel.com<br>victoriamartin@quinnemanuel.com<br>morgananastasio@quinnemanuel.com |

*Counsel for Plaintiffs*