# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>KILMAR ARMANDO ABREGO GARCIA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 3:25-cr-00115<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Underlying this case is an obvious truism that must not be forgotten: the Executive Branch is in control of where Defendant Kilmar Armando Abrego Garcia ("Abrego") awaits trial in this case. This is true because the Executive Branch can elect whether to hold him for pending deportation proceedings or not. This seems overlooked in the Government's Motion to Stay the Magistrate Judge's June 22, 2025 Order. (Doc. No. 46). Abrego has filed an opposition to the Government's Motion to Stay (Doc. No. 49), to which the Government replied (Doc. No. 54). For the following reasons, the Court will deny the Government's Motion to Stay (Doc. No. 46).

**I.    BACKGROUND**

The Court need not extensively recite the background of the instant motion, which has been set forth aptly in the Magistrate Judge's Memorandum Opinion. (See Doc. No. 43). In short, Abrego is charged in the May 21, 2025 Indictment ("Indictment") with one count of conspiracy to unlawfully transport illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v) and (B)(i), and one count of illegal transportation of illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). (Doc. No. 3). Upon Abrego's return to the United States from El Salvador, he was arrested in Nashville on June 6, 2025. (Doc. No. 9); see Noem v.

Abrego Garcia, 604 U.S., 145 S.Ct. 1017, 1018 (2025) (describing Abrego's prior removal from the United States to El Salvador). The Government contemporaneously moved for Abrego's detention. (Doc. No. 8). The Magistrate Judge held a detention hearing pursuant to the Bail Reform Act a week later.

The Magistrate Judge's Memorandum Opinion describes the testimony and evidence from the June 13, 2025 detention hearing:

> At the detention hearing, the government presented testimony from [Immigration and Customs Enforcement] [("ICE")] [Homeland Security Investigations] [("HSI")] Special Agent Peter Joseph [("SA Joseph")] and the following admitted exhibits: body camera footage of the traffic stop by the Tennessee Highway Patrol ("THP") on November 30, 2022; a screenshot taken from the November 30, 2022 traffic stop body camera footage; a passenger roster from the November 30, 2022 traffic stop; a snapchat screenshot between Abrego and cooperator N.V.; an August 2020 temporary order of protection against Abrego; and a May 2021 temporary order of protection against Abrego.
>
> Abrego offered his brother as a third-party custodian, by submission of a sworn declaration, which was admitted as an exhibit. Additionally admitted as defense exhibits were an immigration court memo and order granting Abrego's withholding of removal and a letter from CASA in support of Abrego.

(Doc. No. 43 at 5).

After reviewing the evidence presented at the detention hearing, the Magistrate Judge issued a June 22, 2025 Memorandum Opinion and Order. She concluded that no detention hearing is authorized under the Bail Reform Act because the Government failed to prove that this case involves "(1) a minor victim within the meaning of § 3142(f)(1)(E); (2) a 'serious risk' that Abrego will flee, as required by § 3142(f)(2)(A); or, (3) a 'serious risk' that Abrego will obstruct justice or otherwise interfere with the integrity of this proceeding, as required by § 3142(f)(2)(B)." (Doc. No. 43 at 2). She then reasoned that even if the Government was entitled to a detention hearing, it failed to meet its burden under § 3142(g) because "there are conditions of release that can be

2

imposed to reasonably assure the safety of others and the community and to reasonably assure Abrego's appearance as required." (Id.).

## II.     LEGAL STANDARD

The district court essentially functions as an appellate court under these circumstances, and "[i]t takes time to decide a case on appeal." Nken v. Holder, 556 U.S. 418, 421 (2009). Because "'[n]o court can make time stand still' while it considers an appeal," "'a federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" Id. (quoting Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 9–10 (1942)). This authority "allows an appellate court to act responsibly" by "bring[ing] considered judgment to bear on the matter before it," a process that "cannot always be done quickly enough to afford relief to the party aggrieved by the order under review." Id. at 427.

"At the same time, a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in abeyance pending review." Id. This is because "a stay is an 'intrusion into the ordinary processes of administration and judicial review,'" id. (quoting Virginia Petroleum Jobbers Ass'n. v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam)), and "'is not a matter of right, even if irreparable injury might otherwise result.'" Id. (quoting Virginian R. Co. v. United States, 272 U.S. 658, 672 (1926)). Instead, it is "an exercise of judicial discretion," where "[t]he propriety of its issue is dependent upon the circumstances of the particular case." Virginia R. Co., 272 U.S. at 672–73.

"That the issuance of a stay is left to the court's discretion 'does not mean that no legal standard governs that discretion[.]'" Nken, 556 U.S. at 434 (quoting Martin v. Franklin Cap. Corp., 546 U.S. 132, 139 (2005)). The statute at issue—the Bail Reform Act—does not provide for an automatic stay. See 18 U.S.C. § 3145(a), (c) (providing only that motions to review a release order and appeals of such motions be "determined promptly"). Given this, the Supreme Court has

3

held that the decision of whether to issue a discretionary stay turns on: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken, 556 U.S. at 434 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); see United States v. Fox, 2017 WL 11546291, at *1 (6th Cir. July 5, 2017) (applying Nken factors to detention hearing case). Here, the Government, as the party requesting the stay, "bears the 'heavy burden' of showing that" these factors weigh in favor of a stay. Kentucky v. Biden, 23 F.4th 585, 593 (6th Cir. 2022) (quoting Nken, 556 U.S. at 426–27).[1]

## III.   ANALYSIS

The Court will address each of the four stay factors in order, with emphasis on the "first two factors[,]" which are "the most critical" for the stay analysis. Nken, 556 U.S. at 434.

   1. Likelihood of Success on the Merits

With respect to the first factor, the Government must show that its chances of success on the merits are *likely*, not just "better than negligible." Id. (citation and quotations omitted). Because of this, the movant's failure to satisfy this stringent standard for likelihood of success on the merits is "an arguably fatal flaw for a stay application." Citizens for Resp. & Ethics in

---

[1] The Government cites two cases from this Court that did not apply the Nken factors before issuing status quo orders pending the Court's review of motions to revoke release orders on appeal, United States v. Dejuan Reed, Case No. 3:22-cr-00095, Doc. No. 30, and United States v. Gabryele Watson, 3:24-cr-00098, Doc. No. 11. These cases are readily distinguishable, however, because the defendants in those matters did not file oppositions to the Government's motions to stay prior to the Court granting them. See Reed, Case No. 3:22-cr-00095, Doc. Nos. 29, 30, 33 (where defendant failed to file an opposition to the motion to stay until three days after the Court granted the motion); Watson, 3:24-cr-00098, Doc. Nos. 9, 11 (defendant did not oppose motion to stay). Here, unlike the defendants in Reed and Watson, Abrego is holding the Government to its burden to show that a stay is warranted.

Washington v. Fed. Election Comm'n, 904 F.3d 1014, 1019 (D.C. Cir. 2018). Here, the Government argues it is likely to succeed in showing the Magistrate Judge erred.

### A. Detention Under the Bail Reform Act

As the Magistrate Judge articulated, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). The "provisions for pretrial detention in the Bail Reform Act of 1984 [18 U.S.C. §§ 3141 et seq.] fall within that carefully limited exception." Id. The Act does not authorize detention prior to trial of all arrestees charged with crimes, but rather only those "with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel." Id. To that end, the Act provides four possible outcomes for an arrestee. The person may be: (1) released on their own recognizance; (2) released on conditions; (3) temporarily detained for purposes not relevant to the current proceedings; or (4) detained until trial if the Court finds that "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of others in the community. 18 U.S.C. § 3142(a).

The Bail Reform Act does not authorize a detention hearing for all persons charged with a crime. See United States v. Byrd, 969 F.2d 106, 109 (5th Cir. 1992) (per curiam) (stating that the Act does not "authorize a detention hearing whenever the government thinks detention would be desirable"); see also United States v. Ploof, 851 F.2d 7, 10–11 (1st Cir. 1988) ("[T]he structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."); c.f. United States v. Hardon, 149 F.3d 1185 (table) (6th Cir. June 4, 1998) (reversing district court order denying revocation of detention order and remanding

5

to set conditions of release because threshold § 3142(f) circumstances not shown). Instead, the Court is authorized to conduct a detention hearing only if the Government first establishes that one of the circumstances articulated under § 3142(f) exists. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988) ("After a motion for detention has been filed, the district court must undertake a two-step inquiry . . . It must first determine by a preponderance of the evidence . . . that the defendant has either been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice."); United States v. White, 2021 WL 2155441, at *4 (M.D. Tenn. May 27, 2021) (same).

Only if the Government satisfies its burden to show it is entitled to a detention hearing does the Court consider whether there are reasonable conditions that may permit the defendant's release. Id.; see United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y 2009) (same); United States v. Medoza-Balleza, 420 F. Supp. 3d 716, 716–17 (E.D. Tenn. 2019) (same). That analysis focuses on whether there are conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making that determination, the Court considers: "(1) the nature and circumstances of the offense charged[;]" "(2) the weight of the evidence against the person; (3) the history and characteristics of the person[;]" and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

Based on the Magistrate Judge's ruling and the Government's briefing here, the Court understands that the Government's Motion for Revocation of Release Order (Doc. No. 45)

challenges the Magistrate Judge's conclusion on the first step of the Bail Reform Act analysis.[2] Accordingly, the Court will place its focus there.

> B. Whether the Government Can Demonstrate it is Entitled to a Detention Hearing Under § 3142(f)

The Government challenges the Magistrate Judge's determination that it is not entitled to a detention hearing under § 3142(f)(1)(E) and (2)(A) and (B). The Government initially argued that Abrego is a "danger to the community and a risk of flight." (Doc. No. 46 at 3–4). In response, Abrego asserts that the Government's position is a mere recitation of arguments properly rejected by the Magistrate Judge. (See Doc. No. 49 at 3–4). Perhaps recognizing the weakness of its opening arguments, the Government then elected to supplement its original arguments for a stay. In its reply, the Government states that (1) the Magistrate Judge committed legal error, and (2) it is likely to succeed on appeal on three separate grounds. (Doc. No. 54 at 2–3).[3] The Court will consider each of the Government's arguments for a stay on the merits.

---

[2] There are two steps to the Bail Reform Act analysis that inform the Government's likelihood of success on the merits. But the posture of the case at this stage of the proceedings renders the second step not properly before the Court at this time. On June 22, 2025, the Magistrate Judge ruled that the Government has not satisfied the first step of the Bail Reform Act, and on that basis will order Abrego's release. (Doc. No. 43 at 2 ("The Court finds that no detention hearing is authorized under the Bail Reform Act in this case[.]"); see id. at 51 (stating release order is forthcoming)). This renders the Magistrate Judge's ruling about the applicability of 18 U.S.C. § 3142(g) at this point in time dicta. Accordingly, the parties have properly focused their briefing on the first step of the Act's analysis, and the second step—the applicability and sufficiency of the 18 U.S.C. § 3142(g) considerations—is not yet before this Court for review. Accordingly, the Court will not consider it in ruling on the instant motion.

[3] While a party typically waives arguments first raised on reply because it deprives the other party of an opportunity to respond, for the sake of thoroughness and given the expedited nature of the proceedings at issue, the Court will consider all of the Government's arguments. On appeal, the Court will ensure both parties are fully heard on all pertinent disputes before conducting its de novo review.

> i. Whether the Government is Entitled to a Detention Hearing Under § 3142(f)(2)(A)

The Court starts with the Government's summary argument that Abrego is a serious risk of flight within the meaning of § 3142(f)(2)(A). Because the Government does little to explain or expand the basis of its belief that Abrego is a risk of flight, the Court infers the Government rests on the same arguments it raised before the Magistrate Judge.

As the Magistrate Judge explained, a defendant's potential risk of flight is different from a risk of nonappearance. (See Doc. No. 43 at 30). The former is taken into consideration when determining whether a detention hearing is warranted, and the latter is considered only after the Government has shown by a preponderance of the evidence that a case is detention eligible. (See id. (citing White, 2021 WL 2155441, at *8–10)). Accordingly, the proper definition for risk of flight at this stage is whether Abrego is at risk of intentionally avoiding appearing in court as required. (Id. (citing White, 2021 WL 2155441, at *10)). The Government's argument on this issue, and the lack of evidence proffered at the June 13, 2025 hearing, fall far short of meeting the heavy burden to show a likelihood of success on this issue.

As an initial matter, it appears the Magistrate Judge may be correct that the nature of the charges against Abrego do not infer that he is at a greater risk of flight just by their nature. For instance, the Magistrate appears correct that the severity of a potential sentence matters little in the context of whether § 3142(f)(2)(A) applies, given the Bail Reform Act's preference favoring release in federal criminal cases. Considering this, the crimes Abrego is charged with—the transportation of undocumented immigrants—are hardly extraordinary in light of the array of federal crimes. Indeed, as the Magistrate Judge recognized, human smuggling is a transportation-based crime that often involves people voluntarily taking the risk of entering the United States without documentation. (See Doc. No. 43 at 31 (citing The Cornerstone Report, Human

8

Trafficking vs Human Smuggling, Vol. XIII, No. 1, Summer 2017, p.1)).  Even considering the crimes at issue in the § 3142(f)(2)(A) analysis, the Magistrate Judge's observation that Abrego likely faces far less time in incarceration, if convicted, than the Government believes, seems possible given that the likely advisory sentencing guideline range may be less than what the Government seeks.[4]  See United States v. Ortega-Torres, 174 F.3d 1199, 1200–02 (11th Cir. 1999).

This aside, the Government's likelihood of success is not readily apparent because the current factual record contains little suggesting that Abrego is a flight risk for the purposes of § 3142(f)(2)(A).  The Government does not suggest he has failed to appear to court in the past; does not explain why his lack of ties to this District warrant a finding that he will intentionally not appear in the future; and does not explain why Abrego's newfound prominence somehow ensures he will flee the District.  In fact, the Government primary rationale for why Abrego may not appear in Court if released is his possible desire to avoid deportation if not detained by the Department of Homeland Security ("DHS").  While Abrego's motivation to avoid ICE detention may be considered in this analysis, the Court is skeptical that likely provides a basis for a detention hearing.  See United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018) ("deportable aliens are not per se ineligible for bail").

Even Abrego's potential detention by DHS does not make him a flight risk.  As another District Court in Tennessee opined, "[a]s long as [the defendant] remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of his flight is admittedly nonexistent."  Mendoza-Balleza, 420 F. Supp. 3d at 718.  Whether Abrego may be detained by DHS after his release is of no moment in the instant proceedings.  Instead, "the

---

[4] The average sentencing range for alien smuggling is 15 months.  See United States Sentencing Comm'n, Alien Smuggling, https://www.ussc.gov/research/quickfacts/alien-smuggling.

9

Executive has a choice to make. It may take an alien into custody for the purpose of removing or deporting that individual or it may temporarily decline to do so while criminal proceedings are maintained against that person." Veloz-Alonso, 910 F.3d at 268 (citation and quotations omitted). That choice does not dictate that Abrego poses a risk of flight thereby entitling the Government to a detention hearing under § 3142(f)(2)(A).

Accordingly, the Court finds that the Government has not shown that it is likely to succeed on the issue that Abrego is a risk of flight such that it is entitled to a detention hearing under § 3142(f)(2)(A).

> ii. Whether the Government is Entitled to a Detention Hearing Under § 3142(f)(2)(B) and Standard of Review

The Court next turns to the Government's argument that it is likely to succeed in showing that it is entitled to a detention hearing under § 3142(f)(2)(B) because Abrego poses a serious risk to the community. Under § 3142(f)(2)(B), the Government is entitled to a detention hearing if it can establish by a preponderance of the evidence that Abrego is "a serious risk that" he will "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). Having offered no factual proffer, the Government rests on the same rationale it offered to the Magistrate Judge: that Abrego's alleged association with the MS-13 street gang, his alleged participation in the charged smuggling conspiracy, and his prior altercations establish he is at serious risk of conduct falling within § 3142(f)(2)(B).

On this issue, the Court must determine whether the defendant will interfere or attempt to interfere with the integrity of a judicial proceeding or intimidate a witness or juror. 18 U.S.C. § 3142(f)(2)(B); see United States v. DeGrave, 539 F. Supp. 3d 184, 199–200 (D.D.C. 2021) ("This danger does not arise whenever a defendant is charged with obstructive conduct; it instead arises

10

from the risk that the defendants will obstruct the judicial proceeding or its integrity.") (collecting cases). Critically, the Government's invocation of Abrego's alleged association with the MS-13 gang may be at best circumstantial evidence on this issue, but without more or even when considered with additional evidence, does not demonstrate that he is likely to obstruct justice, threaten a potential juror or witness, or attempt to do so. See Ploof, 851 F.2d at 10–11. In any event, the Government's reliance on Abrego's alleged MS-13 association, if true, may be weak circumstantial evidence because the evidence at the June 13, 2025 hearing did little to confirm, and at times may have undermined, this assertion. (See Doc. No. 43 at 39–40 (explaining the inconsistencies with the Government's evidence on Abrego's gang affiliation)). Further, his alleged altercation with an unnamed co-conspirator and the temporary orders of protection obtained by Ms. Vasquez do little at this stage to satisfy the Government's burden on this issue.

Based on the foregoing, the Court finds that the Government is not likely to succeed in establishing that Abrego is a flight risk or a serious risk of interfering with or attempting to interfere with a judicial proceeding, witness, or potential juror, such that it is entitled to a detention hearing under § 3142(f)(2).

      iii.    Whether the Government is Entitled to a Detention Hearing Under § 3142(f)(1)(E)

To be fair, the Government has come close to showing that it may succeed on the merits of its appeal on two issues, either of which could carry the day. Specifically, the Government argues that the Magistrate Judge erred in finding it was not entitled to a detention hearing because she: (1) applied a "sliding scale" approach to the Government's evidence during the detention hearing that does not comport with legal precedent or this Court's typical procedure; and (2) erred in finding that the crimes Abrego is charged with do not constitute crimes involving a minor under § 3142(f)(1)(E). On both points, the Government's arguments deserve further development.

11

As to the first, the Government and the Magistrate Judge are correct that the rules of evidence do not apply in detention hearings. See 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."). Consistent with the statutory language and precedent, the Government can and routinely does proffer evidence at such hearings. See Salerno, 481 U.S. at 743 (discussing proffered evidence in this context). Even still, the Magistrate Judge made the logical and legally supported observation that the suspension of evidentiary rules does not mean that evidentiary reliability and accuracy fall by the wayside. See United States v. Webb, 149 F.3d 1185 (table) (6th Cir. 1998); (see also Doc. No. 43 at 8). Still, if the Government is correct that the Magistrate Judge failed to properly weigh evidence at the detention hearing in contravention of the required statutory language and precedent, upon de novo, review the Government's appeal and motion to revoke Abrego's detention may be successful.

On its second argument, the Government takes issue with the Magistrate Judge's failure to consider and abide by United States v. Watkins, 940 F.3d 152 (2d Cir. 2019) in interpreting the word "involves" as used in 18 U.S.C. § 3142(f)(1)(E), and as applied to minor victims. Instead, the Government argues that the Magistrate Judge rejected the application of the Watkins in favor of a novel approach to the definition of "involves" under 18 U.S.C. § 3142(f)(1)(E) that is unsupported by precedent. This argument pushes the envelope because Watkins itself does not speak to how the definition of "involves" applies to this case, nor do cases cited by the Government before the Magistrate Judge do as much. (See Doc. No. 43 at 16). Still, that the Magistrate Judge dedicates four pages to defining "involves" in this context speaks to the difficult and pertinence of this question. Upon further briefing and argument, the Government may be correct that a broader

definition of "involves," if legally supported, could establish that the crimes Abrego is charged with "involve" minor victims.

At minimum, the Government has made a showing that its success on either issue is more than possible. See In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985) (movant must show "serious questions" going to the merits). Accordingly, the Court concludes that this factor weighs slightly in favor of a stay. See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991) (in considering this factor, "a movant need not always establish a high probability of success on the merits") (citation omitted).

2. Whether the Government Will Suffer Irreparable Injury Absent a Stay

The second Nken factor requires more than "simply showing some possibility of irreparable injury." Nken, 556 U.S. at 434. Where, as here, there is not a high likelihood of success on the merits, a movant must show a proportionally greater irreparable injury. See A. Philip Randolph Inst. v. Husted, 907 F.3d 913, 919 (6th Cir. 2018) (citation omitted). But the Government has not shown this here, as it controls whether it will or will not suffer irreparable harm.

The Government emphasizes that absent a stay, it will incur the irreparable injury of Abrego possibly facing deportation from the United States pursuant to the immigration detainer lodged against him by DHS. If deported, the Government argues, the Department of Justice will be deprived of the opportunity to pursue its criminal charges against Abrego. (Doc. No. 46 at 4). At bottom, the Government asks the Court to save it from itself because it may suffer irreparable harm completely of its own making. This contravenes basic legal understanding of what constitutes "irreparable" harm for this analysis. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("The key word in this consideration is *irreparable* . . . "[t]he possibility that . . . other corrective

relief will be available . . . weighs heavily against a claim of irreparable harm."); see also Mexichem v. Specialty Resins, Inc. v. EPA, 787 F.3d 544, 555 (D.C. Cir. 2015) (to be considered an irreparable injury, the injury "must be both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm") (citation and quotations omitted).  It is the Executive Branch's decision that places the Government in this predicament.  See supra, Section III.1.B.i.  Because the Department of Justice and DHS can together prevent the harm the Government contends it faces, it can hardly be considered certain, great, or beyond remediation.  If the Court were to indulge the Government's argument, it could lead to the inevitable conclusion that the Executive's injury on itself satisfies this strict standard.  That defies logic.  See United States v. Vasquez-Robles, 2025 WL 1090884, at *7 (E.D. Va. 2025) (finding the exact harm posed here insufficient, given "that harm is threatened by the Government itself and does not provide a basis for a stay").

The Government concedes that Abrego's impending deportation "would not be instantaneous." (Doc. No. 54 at 7).  But this underscores who the Department of Justice should be making these arguments to: DHS.  If the Government finds this case to be as high priority as it argues here, it is incumbent upon it to ensure that Abrego is held accountable for the charges in the Indictment.  If the Department of Justice and DHS cannot do so, that speaks for itself. Accordingly, this factor counsels against a stay, and all but dooms the Government's motion.  See D.T. v. Sumner Cnty. Schs., 942 F.3d 324, 326–27 (6th Cir. 2019) ("even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement") (citation and quotations omitted).

3. <u>Whether a Stay Will Substantially Injure Abrego</u>

The Government contends that Abrego will not be substantially injured by staying his release pending appeal because he will likely be detained by DHS even if released. While the Court agrees with the premise that Abrego will likely be detained by DHS, it departs from the Government's position that the Executive Branch's pursuit of Abrego on multiple fronts somehow renders these proceedings academic. This forgoes the basic tenets of due process and judiciary diligence underlying Article III.

The focus here is not what will happen to Abrego after he is released, but whether the Government has made the proper showing to trigger the statutory authority to detain him. The answer to that question is important, as it is axiomatic that an individual has a "strong interest in liberty." <u>Salerno</u>, 481 U.S. at 750. Courts should "not minimize the importance and fundamental nature of this right." <u>Id.</u> Considering these foundational principles, detaining Abrego absent the Government making the required showing would constitute a substantial injury to his right to liberty and due process protections. <u>See id.</u> at 755. The third factor counsels against a stay.

4. <u>Where the Public Interest Lies</u>

The last stay factor, the public interest, again weighs against the Government's request for a stay, given the public has an interest in the Court properly adhering to the requirements of the Bail Reform Act. The Government's arguments to the contrary—that the public interest rests in allowing this Court the opportunity to conduct meaningful review of the evidence and to permit resolution of this matter—do not change its mind. The Court does not disagree that these are valuable goals. Indeed, the Supreme Court in <u>Nken</u> emphasized the importance of appellate review being done in a manner that is responsible, thoughtful, and considerate. <u>See</u> <u>Nken</u>, 556 U.S. at 427. However, this argument is undermined by the Supreme Court's instruction in <u>Nken</u> that this

Court cannot issue a stay, absent a finding that the four Nken factors warrant it, for this purpose alone. Id. On the Government's second point, whether the Executive Branch favors the proceedings in the Department of Justice or those in DHS, or which one being resolved is more in the public's favor, is for *itself* to determine. See supra, Sections III.1.B.i, III.2. Accordingly, the fourth factor weighs against granting a stay.

## IV. CONCLUSION

Because the Government has not made the "strong showing" required to justify the grant of a stay under these circumstances, Nken, 556 U.S. at 426, the Government's Motion for Stay of Release Order (Doc. No. 46) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE