**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| Kilmar Armando Abrego Garcia, *et al.*, | |
| Plaintiffs, | |
| v. | Case No.: 8:25-CV-00951-PX |
| Kristi Noem, *et al.*, | |
| Defendants. | |

**Plaintiffs' Opposition to Defendants' Motion To Dismiss As Moot**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction.................................................................................................................1

Background ...............................................................................................................3

Legal Standard ........................................................................................................7

Argument .................................................................................................................8

I.      Plaintiffs' claims are not moot...........................................................................8

        A.     A live dispute remains about restoring Abrego Garcia to the status quo ante...............................................................................................................8

        B.     A live dispute remains about handling Abrego Garcia's immigration case as if he had not been unlawfully removed to El Salvador. .......................9

        C.     A live dispute remains about Plaintiffs' requested declaratory relief...................11

II.     The Court maintains jurisdiction under two exceptions to the mootness doctrine. ...........13

III.    The Court retains jurisdiction for sanctions and contempt. .................................17

IV.    The Court should not dissolve its injunction. .....................................................19

V.     Plaintiffs' upcoming revised complaint will further confirm this case is not moot..........20

Conclusion ...............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Abrego Garcia v. Noem*,
   2025 WL 1021113 (4th Cir. Apr. 7, 2025) ...........................................................................3, 4

*Abrego Garcia v. Noem*,
   2025 WL 1135112 (4th Cir. Apr. 17, 2025) .............................................................................4

*Cedar Coal Co. v. United Mine Workers of Am.*,
   560 F.2d 1153 (4th Cir. 1977) ................................................................................................17

*Chafin v. Chafin*,
   568 U.S. 165 (2013) ..........................................................................................................1, 8, 9

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (1992) ...................................................................................................................8, 9

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) ................................................................................................................13

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ............................................................................................................2, 18

*District 29, United Mine Workers of America v. New Beckley Mining Corp.*,
   895 F.2d 942 (4th Cir. 1990) ..................................................................................................10

*FBI v. Fikre*,
   601 U.S. 234 (2024) ......................................................................................................2, 13, 14

*Fidrych v. Marriott, Int'l, Inc.*,
   952 F.3d 124 (4th Cir 2020) ...................................................................................................18

*Firefighters Local Union No. 1784 v. Stotts*,
   467 U.S. 561 (1984) ................................................................................................................10

*First Nat. Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) ................................................................................................................17

*Global Newspaper Co. v. Superior Court for Norfolk Cnty.*,
   457 U.S. 596 (1982) ................................................................................................................16

*In re GMC*,
   61 F.3d 256 (4th Cir. 1995) ....................................................................................................18

*Guzman Chavez v. Hott*,
    940 F.3d 867 (4th Cir. 2019) .......................................................................12

*Heinrichs v. Marshall & Stevens, Inc.*,
    921 F.2d 418 (2d Cir. 1990).........................................................................18

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
    2025 WL 1431263 (4th Cir. May 19, 2025) .................................................19

*Kerns v. United States*,
    585 F.3d 187 (4th Cir. 2009) .........................................................................7

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
    567 U.S. 298 (2012)................................................................................14, 15

*L.J. v. Wilbon*,
    633 F.3d 297 (4th Cir. 2011) .......................................................................19

*Lackey v. Sinnie*,
    145 S. Ct. 659 (2025)...........................................................................1, 2, 13

*Leonard v. Hammond*,
    804 F.2d 838 (4th Cir. 1986) .......................................................................16

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011) ..................................................................16, 17

*Martinez-Benitez v. U.S. ICE*,
    2019 WL 5295694 (S.D. W. Va. Sept. 27, 2019) .......................................11

*Nken v. Holder*,
    556 U.S. 418 (2009).....................................................................................20

*Noem v. Abrego Garcia*,
    145 S. Ct. 1017 (2025)..................................................................2, 4, 10, 19

*Nutt v. Ritter*,
    707 F. Supp. 3d 517 (E.D.N.C. 2023).....................................................16, 17

*Porter v. Clarke*,
    852 F.3d 358 (4th Cir. 2017) .............................................................13, 14, 15

*Powell v. McCormack*,
    395 U.S. 486 (1969).....................................................................................11

*Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*,
    608 F. App'x 130 (4th Cir. 2015) ................................................................10

*Richmond, Fredericksburg & Potomac R.R. v. United States,*
    945 F.2d 765 (4th Cir. 1991) ................................................................8

*Roe v. Dep't of Def.,*
    947 F.3d 207 (4th Cir. 2020) ..............................................................20

*SEC v. Tsao,*
    317 F.R.D. 31 (D. Md. 2016).................................................................19

*Southern Pacific Terminal Co. v. Interstate Commerce Commission,*
    219 U.S. 498 (1911)..............................................................................17

*Stone v. Trump,*
    400 F. Supp. 3d 317 (D. Md. 2019).................................................19, 20

*Super Tire Eng'g Co. v. McCorkle,*
    416 U.S. 115 (1974)....................................................................11, 12, 16

*System Fed'n No. 91 v. Wright,*
    354 U.S. 642 (1961)...............................................................................11

*Thompson v. U.S. Dep't of Hous. & Urban Dev.,*
    404 F.3d 821 (4th Cir. 2005) ...............................................................11

*Turner v. Rogers,*
    564 U.S. 431 (2011)...............................................................................17

*U.S. Home Corp. v. Settlers Crossing, LLC,*
    2015 WL 3973071 (D. Md. June 29, 2015)..........................................10

*United States v. Abrego Garcia,*
    No. 25-cr-00115 (W.D. Tenn. May 21, 2025) ....................................6, 7

*United States v. Mine Workers,*
    330 U.S. 258 (1947)...............................................................................18

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953)...............................................................................13

*United States v. Welsh,*
    879 F.3d 530 (4th Cir. 2018) ...............................................................20

*Wall v. Wade,*
    741 F.3d 492 (4th Cir. 2014) ..........................................................14, 15

*Zwickler v. Koota,*
    389 U.S. 241 (1967)...............................................................................11

**Statutes**

8 U.S.C. §1231(b)(3)(A) ................................................................................................3

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................7

Federal Rule of Civil Procedure 37 .............................................................................18

Federal Rule of Civil Procedure 60(b) ...................................................................19, 20

**Other Authorities**

*Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6,
    2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-
    charges-against-abrego-garcia ..............................................................................6, 12

Hamed Aleaziz & Alan Feuer, *How Trump Officials Debated Handling of the
    Abrego Garcia Case: 'Keep Him Where He Is'*, N.Y. Times (May 21, 2025).........................4

## INTRODUCTION

The Government says this case is over. ECF No. 200. And it is not hard to see why the Government wishes that were true. But it is not. A case does not become moot simply because the Government begrudgingly, belatedly, and only partially remedies its unlawful conduct in order to save face and escape the consequences of its defiance of court orders. Here, after months of openly resisting orders of this Court, the Fourth Circuit, and the Supreme Court, the Government finally returned Kilmar Armando Abrego Garcia to the United States from El Salvador, but not to Maryland where he resides and which was the status quo ante before his illegal arrest and removal. Rather, the Government transported him to Tennessee to face criminal charges that it investigated and brought while asserting to this Court that it was powerless to bring him home—and to anyone who would listen that he would never again walk on American streets as a free person. Having done that, it insists that the case is moot because there is nothing left for this Court to do to remedy Plaintiffs' injuries. Not so.

Mootness requires both that it is impossible for the Court to grant any effective relief, *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013), and that it is "absolutely clear" that the Government's wrongdoing is not expected to recur, *Lackey v. Sinnie*, 145 S. Ct. 659, 669 (2025) (citation omitted). Neither is true here. The Court should deny the Government's motion for five reasons.

***First***, ample effective relief remains for this Court to order and enforce. Plaintiffs seek to "restore the status quo ante," including by returning Abrego Garcia "to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to CECOT." ECF No. 31 at 16–17. That has not happened. The Court can order Abrego Garcia's return to Maryland, which is where he was on March 12, as well as other relief to restore the status quo ante.

In addition, the injunction this Court entered "properly requires the Government" to "ensure that his case is handled as it would have been had he not been improperly sent to El

1

Salvador." *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). That, too, has not happened. Indeed, the Government itself does not argue that this aspect of the injunction is moot, because it is not. It remains in full force and will provide effective relief in any future removal proceedings.

This Court can also grant the declaratory relief Plaintiffs seek that removing Abrego Garcia to El Salvador was unlawful and remains unlawful. That is a live dispute because Defendant Bondi and other officials have announced that they plan to once again remove Abrego Garcia to El Salvador after he is released from custody in the Tennessee criminal proceedings. There is also a live dispute regarding whether Abrego Garcia can be removed to a third country, as the Government's statements at the June 26, 2025 scheduling conference confirmed, as well as the scope of his due process rights in connection with future removal proceedings.

*Second*, the Government cannot moot a case after a preliminary injunction is entered unless it satisfies the "formidable" burden of proving that no reasonable expectation remains that it will return to its old ways. *Lackey*, 145 S. Ct. at 669; *FBI v. Fikre*, 601 U.S. 234, 241 (2024). The Government cannot satisfy that burden given its plans to remove Abrego Garcia again.

*Third*, the case also is not moot because the Government has violated several orders of this Court, including discovery orders and the preliminary injunction. A court retains jurisdiction to enforce its own orders and to impose sanctions and contempt. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).

*Fourth*, the Government's alternative argument to dissolve the injunction fails because the Government does not even attempt to satisfy its burden of showing that enforcement of the injunction is detrimental to the public interest.

*Fifth*, Plaintiffs will file by July 2 a motion for leave to amend and supplement their Complaint. *See* ECF No. 206. The Court should grant that motion, which will provide further

reasons to deny the motion to dismiss, including that Plaintiffs will seek relief in connection with any effort by the Government to remove Abrego Garcia to a country other than El Salvador.

For all these reasons, the Court should deny the Government's motion to dismiss.

## BACKGROUND

Since 2019, Abrego Garcia has resided in Maryland under a final order granting him withholding of removal as to El Salvador, pursuant to Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §1231(b)(3). ECF No. 1 (**Complaint**) ¶¶41–42; ECF No. 1-1. On March 12, 2025, without a warrant or any lawful basis to take him into custody, ICE officers arrested Abrego Garcia in Maryland and falsely told him that his "status has changed." Complaint ¶¶48– 50. Three days later, the Government "took the only action which [the withholding of removal order] expressly prohibited" and illegally removed Abrego Garcia to El Salvador. *Abrego Garcia v. Noem*, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring).

On March 24, Plaintiffs commenced this action and moved for a temporary restraining order. ECF Nos. 1, 2. The Complaint alleges violations of 8 U.S.C. §1231(b)(3)(A), the Due Process Clause, and the Administrative Procedure Act, with a habeas claim pleaded in the alternative. Complaint ¶¶72–99. The Complaint seeks an order compelling the Government to facilitate Abrego Garcia's return to the United States, a declaration that the Government's actions violated federal law and the Constitution, costs and fees under the Equal Access to Justice Act, and such other relief at law and in equity as justice requires. *Id.* at 21. In their TRO papers, Plaintiffs emphasized that they seek to restore the status quo ante. ECF No. 10 at 5; ECF No. 15 at 2.

Despite acknowledging that Abrego Garcia's removal was in error, the Government sought to keep Abrego Garcia illegally confined in El Salvador and refused to follow its standard practice to resolve wrongful removal "cases without further litigation by correcting the error." Exhibit A (**Reuveni Letter**) at 22. Indeed, on March 28, Senior Counselor to the Secretary of Homeland

Security James Percival informed colleagues that the U.S. Department of Homeland Security (**DHS**) was "working to fix it so he doesn't need to be returned to the U.S." Hamed Aleaziz & Alan Feuer, *How Trump Officials Debated Handling of the Abrego Garcia Case: 'Keep Him Where He Is'*, N.Y. Times (May 21, 2025), https://www.nytimes.com/2025/05/21/us/politics/trump-abrego-garcia-el-salvador-deportation.html. DHS Acting General Counsel Joseph Mazzara concurred: "We're also trying to keep him where he is." *Id.* These communications have to this date not been disclosed in discovery in this case—despite the fact that they are clearly responsive to discovery requests and do not fall under the protection of any recognized privilege.

This Court granted a preliminary injunction on April 4, ordering the Government to "facilitate and effectuate" Abrego Garcia's return to the United States to "restore the status quo and to preserve Abrego Garcia's access to due process in accordance with the Constitution and governing immigration statutes." ECF No. 21 at 2. The Fourth Circuit denied the Government's emergency stay motion on April 7, characterizing the Government's opposition as "unconscionable." *Abrego Garcia v. Noem*, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring). On April 10, the Supreme Court ruled that this Court's injunction "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. Later that day, this Court amended its injunction to direct the Government to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." ECF No. 51 at 1. A week later, the Fourth Circuit denied another emergency stay motion and clarified that the injunction requires "[a]ctive . . . steps be taken," beyond merely "remov[ing] any *domestic* barriers to Abrego Garcia's return." *Abrego Garcia v. Noem*, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025).

Meanwhile, on April 15, with the Government having "done nothing to aid in Abrego Garcia's release from custody and return to the United States," ECF No. 79 at 5, this Court ordered expedited discovery "to ascertain what, if anything, the Defendants have done to 'facilitate Abrego Garcia's release from custody in El Salvador,'" *id.* at 6–7 (citation omitted). Such relief would also "assist the Court in determining whether contempt proceedings are warranted." *Id.* at 6.

The Government responded by engaging in a determined stalling campaign. It filed several stay motions, recycled already-rejected arguments, requested lengthy extensions at the last minute, and pursued a frivolous emergency appeal—all while Abrego Garcia languished in a foreign prison. *See* ECF No. 196 at 3 (detailing the Government's dilatory tactics). Document production has been a slow trickle of publicly available documents and the filings in this case. *See id.* at 7–8. Depositions were—as this Court put it—"an exercise in utter frustration." May 16 Motions Tr. 25:12–26:9. Deponents uniformly claimed to lack personal knowledge (despite filing sworn declarations on the same topics) and were prevented from answering questions based on meritless privilege assertions. *See id.* Tr. 9:10–13 ("I don't want to tell you how long it took my wonderful law clerks to count up the 'I don't knows' in each of those depositions."); ECF Nos. 129 at 5, 129-6 (identifying the more than 90 times the Government instructed deponents not to answer on the basis of an asserted privilege). Plaintiffs have moved for sanctions to redress the Government's bad faith refusal to comply with the discovery orders. ECF No. 196. That motion remains pending.

Outside of court, the Government has made no secret of its defiance. *See* ECF No. 196, Ex. D (providing a non-exhaustive list of nearly 100 public statements administration officials have made about this case). On April 16, Defendant Bondi publicly announced that Abrego Garcia "is not coming back to our country . . . . There is no situation ever where he was going to stay in this country. None, none." *Id.* at No. 31. On May 8, Defendant Noem testified under oath during a

Senate hearing that Abrego Garcia "will not be coming back to this country. There is no scenario where Abrego Garcia will be back in this country." *Id.* at No. 78. And on May 20, Defendant Rubio confirmed that "No judge can tell me how I have to outreach to a foreign partner or what to say to them . . . I won't comply with . . . an order to disclose what I am saying." *Id.* at No. 83.  Although the Government has purportedly agreed to produce documents from all three Defendants, including their cell phones and electronic devices, no such documents have been produced to Plaintiffs.

Simultaneously, the Government worked in secret to charge Abrego Garcia with two felony counts in Tennessee based on alleged conduct that occurred years ago during a traffic stop that resulted in neither a ticket nor even a warning, much less any investigation. *See* Indictment, *United States v. Abrego Garcia*, No. 25-cr-00115 (W.D. Tenn. May 21, 2025), ECF No. 3. Public reporting indicates that the criminal investigation commenced in April 2025, precisely when this Court ordered expedited discovery into the Government's apparent defiance of Court orders. *See* ECF No. 196, Ex. E. Even *after* the grand jury returned the indictment on May 21, the Government represented to this Court that it "do[es] not have the power to produce [Abrego Garcia]," ECF No. 165 at 5, and argued that Plaintiffs' claims were not redressable because he was "in the custody of El Salvador," *id.* at 7–9.

On June 6, just in time for a press conference unveiling its indictment, the Government returned Abrego Garcia—not to Maryland to restore the status quo ante—but to Tennessee to face the criminal charges it rushed to bring.

Since then, the Government has announced several times that it will send Abrego Garcia back to El Salvador following his criminal proceedings. Immediately upon his return, Defendant Bondi declared: "Upon completion of sentence we anticipate he will be returned to his home country of El Salvador." *Attorney General Bondi Announces Charges Against Abrego Garcia* (June

6, 2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia (video at 0:53–1:00). Senior White House official Stephen Miller echoed that Abrego Garcia is "now being prosecuted. After a lengthy prison sentence, it is back home to El Salvador." Exhibit B. Miller later reiterated: "He will be tried, jailed, and then deported again to El Salvador." ECF No. 203-4. Indeed, the Government has represented in the Tennessee criminal proceedings that Abrego Garcia should not be "released from U.S. Marshals Custody" because he will "not be released at liberty but rather, into the custody of Immigration and Customs Enforcement (**ICE**)" and "deported from the United States," which poses "real, potential, substantial and irreparable harm to the United States." ECF No. 203-3 at 6–7. The Government represented that the deportation Abrego Garcia faces is "to El Salvador." *Id.* at 6.

At a hearing before this Court on June 26, an attorney for the Government stated that it may seek to remove Abrego Garcia to a third country when he is released from criminal custody. Because of the risk that the Government will illegally remove him if he enters ICE custody, Abrego Garcia has taken the extraordinary step of petitioning the Tennessee court to postpone until July 16 his release from custody in the criminal proceedings. *United States v. Abrego Garcia*, No. 3:25-cr-00115, ECF No. 63 at 1–2. That request remains pending as of the date of this brief.

It is against this backdrop that the Government now moves to dismiss this case as moot, on the basis that "there is no longer a live controversy" and this Court "no longer has effective relief to offer." ECF No. 200 at 7 (cleaned up).

## LEGAL STANDARD

The Government's motion challenges this Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The motion raises a factual challenge because it depends on factual information outside the Complaint—namely, the return of Abrego Garcia to the United States. In factual challenges, "the district court is entitled to decide disputed issues of fact with

respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

"The moving party"—here the Government—"should prevail only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,*

*Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## ARGUMENT

## I.    Plaintiffs' claims are not moot.

The Government's lead argument (at 7) is that, because it brought Abrego Garcia back to

the United States to face criminal charges, "Plaintiffs have received the complete relief they

requested in the Complaint, [and] this Court 'no longer has effective relief to offer.'" This argument

ignores both the operative orders in this case, which remain unfulfilled, and the relief Plaintiffs

seek beyond Abrego Garcia's return to the United States.

### A.    A live dispute remains about restoring Abrego Garcia to the status quo ante.

"A case 'becomes moot only when it is impossible for a court to grant any effectual relief

whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted);

*accord, e.g.*, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (applying this

rule against the United States). "As long as the parties have a concrete interest, however small, in

the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172 (citation omitted).

*Chafin* is instructive. In that case, the Supreme Court held that a father's challenge to a

court's order to return a child to a foreign country to live with the child's mother did not become

moot when the child returned to the foreign country. The mother argued that the district court

lacked authority under the applicable treaty or under its equitable powers to issue a re-return order,

but the Court rejected that argument as "confus[ing] mootness with whether [the plaintiff] has

established a right to recover," which are distinct inquiries. *Id.* at 174 (citation omitted). The

mother also argued that any such order may be difficult to enforce, but the Court concluded that

"such uncertainty does not typically render cases moot." *Id.* at 175. There was a "live dispute between the parties over where their child will be raised" and there was "a possibility of effectual relief for the prevailing parent," so the case was not moot. *Id.* at 180.

The dispute in this case is just as live. On March 12, Abrego Garcia was driving home from work in Maryland when he "was stopped by ICE agents" who "had no warrant for his arrest and no lawful basis to take him into custody." ECF No. 31 at 4. As this Court recognized in its preliminary-injunction opinion, "Abrego Garcia requests relief designed to [restore] the status quo ante"—that is, "to return him to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to CECOT." ECF No. 31 at 16–17; *see* ECF No. 10 at 5 (seeking relief to restore status quo ante); ECF No. 15 at 2 (same).[1] The Government has not returned Abrego Garcia to "where he was on March 12, 2025, before he was apprehended by ICE"—namely, to Maryland. This Court can order relief to return Abrego Garcia to Maryland, *see* ECF No. 203 (Plaintiffs' emergency motion to return Abrego Garcia to Maryland), as well as other relief to restore the status quo ante, such as ordering that Abrego Garcia be released from ICE custody when it seeks to detain him after his release in the Tennessee criminal proceedings. That alone means this case is not moot. *See Chafin*, 568 U.S. at 173–76; *Church of Scientology*, 506 U.S. at 12–13 (case against Government not moot where court can enter order that brings the parties closer to the status quo ante, even if it does not fully restore the status quo ante).

**B.    A live dispute remains about handling Abrego Garcia's immigration case as if he had not been unlawfully removed to El Salvador.**

The parties also have a live dispute about the handling of Abrego Garcia's immigration status. As the Supreme Court explained, this Court's injunction "properly requires the

---

[1] To the extent the Government maintains that only the Plaintiffs' initial briefs, and not their Complaint, expressly state that Plaintiffs seek a return to the status quo ante, Plaintiffs will clarify that in their forthcoming amended complaint. *See* Section V, below.

Government" to both (1) "'facilitate' Abrego Garcia's release from custody in El Salvador" and (2) "ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. The Government contends that it has satisfied the first requirement, but it neglects the second. *See* Mot. at 7 (arguing only that the Government can do no more to "return Plaintiff Abrego Garcia to the United States").

Fulfilling *part* of an injunction does not moot a case. A court that "enters an injunctive order retains jurisdiction to enforce its order." *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. App'x 130, 131 (4th Cir. 2015) (cleaned up); *U.S. Home Corp. v. Settlers Crossing, LLC*, 2015 WL 3973071, at *11 (D. Md. June 29, 2015) (same). And when an injunction remains in force, the case is not moot. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 569 (1984) (rejecting mootness argument because an "injunction is still in force" and "unless set aside must be complied with"); *District 29, United Mine Workers of America v. New Beckley Mining Corp.*, 895 F.2d 942, 944 (4th Cir. 1990) (similar).

The Government does not (and cannot) argue that it has fulfilled the portion of this Court's injunction requiring it "to ensure that [Abrego Garcia's] case is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. As Justice Sotomayor explained in her statement accompanying the Supreme Court's decision, this language means "that the proper remedy is to provide Abrego Garcia with all the process to which he would have been entitled had he not been unlawfully removed to El Salvador." *Id.* at 1019 (statement of Sotomayor, J.). To do so, "the Government must comply with its obligation to provide Abrego Garcia with 'due process of law,' including notice and an opportunity to be heard, in any future proceedings"; it "must also comply with its obligations under the Convention Against Torture"; and it must abide by "[f]ederal law governing detention and removal of immigrants." *Id.* (citations omitted). The

Government has represented that after Abrego Garcia is released from custody in the criminal case, ICE will take him into custody and commence removal proceedings. *See* ECF No. 203-3 at 6–7. This Court therefore retains jurisdiction to enforce the injunction requiring it to handle Abrego Garcia's case as it would have had he not been improperly removed to El Salvador, including by ensuring that he receives all requisite process. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 833 (4th Cir. 2005) ("Injunctions 'often require[] continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.'") (quoting *System Fed'n No. 91 v. Wright*, 354 U.S. 642, 647 (1961)). Because this aspect of the injunction remains in force, the case is not moot.[2]

## C.    A live dispute remains about Plaintiffs' requested declaratory relief.

Abrego Garcia's request for a declaration that removing him to El Salvador is illegal and unconstitutional also remains live. *See* Complaint at 21 ¶a. Where, as here, plaintiffs seek both "declaratory relief as well as an injunction," a court has "the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974) (quoting *Zwickler v. Koota*, 389 U.S. 241, 254 (1967)). Even if Plaintiffs' requested injunctive relief were moot (which, as explained above, it is not), this Court could still issue declaratory relief so long as there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 121–22; *see also Powell v. McCormack*, 395 U.S. 486, 518 (1969) ("The availability of declaratory relief depends

---

[2] The Government's citation (at 5–6) to *Martinez-Benitez v. U.S. ICE*, 2019 WL 5295694, at *1 (S.D. W. Va. Sept. 27, 2019), is unavailing. There, the petitioner requested that an ICE detainer be cancelled and that ICE verify that he is a U.S. citizen. *Id.* at *1. After the detainer was cancelled, the court determined that only the "portion of his claim" seeking to cancel the detainer was moot. *Id.* *2. The petitioner's other claims were dismissed for other reasons. *Id.* at *3.

on whether there is a live dispute between the parties, . . . and a request for declaratory relief may be considered independently of whether other forms of relief are appropriate.").

That standard is met here. There has been no final adjudication on the merits of whether Abrego Garcia's removal was illegal or unconstitutional, what specific actions were illegal, or which Defendants violated those laws and how. Abrego Garcia's return does not render these questions academic. Abrego Garcia's immigration status has not changed, and he remains vulnerable to removal. Indeed, on the same day that Abrego Garcia returned to the United States, Defendant Bondi announced that the Government intends to send him back to El Salvador all over again. *See Attorney General Bondi Announces Charges Against Abrego Garcia* (June 6, 2025), https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia (video at 0:53–1:00) ("Upon completion of sentence we anticipate he will be returned to his home country of El Salvador."); Exhibit B; ECF No. 203-4. And the Government has reiterated in the Tennessee proceedings that Abrego Garcia faces removal "to El Salvador." ECF No. 203-3 at 6. The continued threat of removal "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on [Plaintiffs'] interests." *Super Tire*, 416 U.S. at 122. Plaintiffs' request for declaratory relief is therefore not moot.

The statement by a Government attorney at the June 26 hearing that it may remove Abrego Garcia to a third country does not alter this conclusion, and in fact injects a new case or controversy regarding the propriety of third country removal for Abrego Garcia. The Government has not pointed to any documentation specifying which, if any, third country the Government plans to remove Abrego Garcia to. Nor is there any evidence in the record that removal to any such third country would be lawful, especially given the risk that it would immediately re-deport Abrego Garcia onward to El Salvador. *Cf. Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) ("[I]f

a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to *that* particular country."), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 594 U.S. 523 (2021). Plaintiffs anticipate that their forthcoming supplemental complaint will seek relief in connection with any attempt to remove Abrego Garcia to a third country, which is a further reason the case is not moot. *See* Section V, below.

## II.    The Court maintains jurisdiction under two exceptions to the mootness doctrine.

Even if the Court finds that Plaintiffs' claims are moot (it should not), their claims should not be dismissed because two exceptions to mootness apply.

*First*, the Government's argument (at 6–7) that "[a]fter extensive diplomatic efforts, . . . Defendants have complied with the Court's order and have successfully facilitated Abrego Garcia's return to the United States" places its mootness challenge squarely within the "well-recognized exception to the mootness doctrine holding that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). When the Government loses at the preliminary injunction stage, it cannot then moot the case through its own conduct "unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Lackey v. Stinne*, 145 S. Ct. 659, 669 (2025) (citations omitted).

Making such a showing imposes a "formidable burden" on the Government. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). For "governmental defendants no less than for private ones," to "show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)). A "defendant satisfies this heavy burden when, for example, it enters into an

'unconditional and irrevocable' agreement that prohibits it from returning to the challenged conduct" or "the governmental entity 'has not asserted its right to enforce [the challenged conduct] at any future time.'" *Porter*, 852 F.3d at 364. But a defendant's mere say so that it has no present plans to take the challenged action does not suffice. *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). A defendant's "maneuvers designed to insulate a decision from review . . . must be viewed with a critical eye." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). Applying this standard in *Fikre*, the Supreme Court held that the government's submission of a declaration stating that it would not relist a plaintiff on the no-fly list based on "currently available information" was not sufficient to demonstrate that the government "cannot reasonably be expected to do again in the future what it is alleged to have done in the past." 601 U.S. at 242.

The Government cannot meet its "formidable burden" here. It has not "unconditional[ly] and irrevocabl[y]" agreed not to again remove Abrego Garcia to El Salvador or taken the position that it is powerless to do so. To the contrary, Defendant Bondi and other officials have announced the Government's intent to do exactly that. *See* page 12, above.

The most the Government has done is make a single, unsubstantiated attorney assertion at the June 26 hearing that it may remove Abrego Garcia to a third country rather than El Salvador. The Court should "view" that claim "with a critical eye," *Knox*, 567 U.S. at 307. Notably, unlike in *Fikre*, where the government at least submitted a declaration stating it would not relist the plaintiff on the no-fly list based on "currently available information" (which the Supreme Court still found insufficient to moot the case), the Government here has not provided a sworn declaration with any assurances concerning its future intentions. But even if the Government's latest claim were true, it is legally insufficient. "[B]ald assertions of a defendant—whether governmental or

private—that it will not resume a challenged policy fail to satisfy *any burden* of showing that a claim is moot." *Wall*, 741 F.3d at 498 (emphasis added).

In *Wall*, the district court ruled that the plaintiff's claims for equitable relief challenging a change in prison policy were moot after the prison "abandoned" the policy. 741 F.3d at 495–96. The Fourth Circuit vacated that ruling because "[u]nsubstantiated assurances in their appellate brief aside, [the defendants] failed to put forth even a single piece of evidence establishing that the [policy] has been terminated once and for all." *Id.* at 497. Although the defendants cited a memorandum describing the "purported policy change," the Fourth Circuit found it "fail[ed] to establish [the prison] w[ould] not reinstate the policy following completion of the lawsuit." *Id.* "Nothing in the memo," the Fourth Circuit reasoned, "suggest[ed] that [the prison was] actually barred—or even consider[ed] itself barred—from reinstating the . . . policy should it so choose." *Id.* It ultimately had "no difficulty concluding that the defendants failed to meet their 'heavy burden' of establishing that it [was] 'absolutely clear' the . . . policy w[ould] not be reinstated." *Id.*

The Government has done even less here. It offers no evidence that it even considers itself barred from removing Abrego Garcia to El Salvador, or to a third country that might then remove him there. "[V]iew[ed] . . . with a critical eye," *Knox*, 567 U.S. at 307, and in light of the Administration's public statements—including from Defendant Bondi herself—the Court should "have no difficulty concluding that the defendants failed to meet their 'heavy burden'" to show Plaintiffs' claims are moot, *Wall*, 741 F.3d at 497; *see also Porter*, 852 F.3d at 364–65 ("courts have been particularly unwilling to find that a defendant has met its heavy burden to establish that its allegedly wrongful conduct will not recur when the defendant expressly states that, notwithstanding its abandonment of a challenged policy, it could return to the contested policy in

the future" or the defendant has "refuse[d] . . . to promise not to resume the prior practice . . . or to otherwise unambiguously terminate the challenged practice.") (cleaned up).

Even if the Government could give a binding commitment that it will never remove Abrego Garcia to El Salvador or to a third country that in turn will send him onward to El Salvador, there will remain a live dispute as to whether removal of Abrego Garcia to a third country is lawful and appropriate and what is the scope of his due process rights attendant to such removal proceedings. To the extent that the issue concerning the Government's recently-threatened third country removal is not already within the ambit of the existing complaint, we anticipate that it will be addressed expressly in the forthcoming amended and supplemental complaint.

*Second*, dismissal is not warranted because the issues here are "capable of repetition, yet evading review." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011). "This exception applies when '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (citation omitted). Both requirements are easily met.

As to the first factor, courts routinely hold that that lawsuits generally "do not last long enough for complete judicial review of the controversies they engender." *Leonard v. Hammond*, 804 F.2d 838, 843 (4th Cir. 1986) (quoting *Super Tire*, 416 U.S. at 126); *see also Global Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 602 (1982) ("because criminal trials are typically of 'short duration,' . . . such an order will likely "evade review"); *Nutt v. Ritter*, 707 F. Supp. 3d 517, 533 (E.D.N.C. 2023) ("The dispute is also reasonably capable of evading review. Like criminal cases, civil cases can have exceedingly short durations."). Indeed, according to the Government's theory, "the actual duration of the parties' dispute—from the moment it became viable to the moment" Abrego Garcia was returned—was 83 days, far less than other courts have

found to be "too short." *Nutt* 707 F. Supp. 3d at 533 (time "from the moment [the dispute] became viable to the moment the state lawsuit's dismissal was affirmed—was nineteen months"); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) ("Our precedent makes clear that the 'challenged action,' Turner's imprisonment for up to 12 months, is 'in its duration too short to be fully litigated' through the state courts (and arrive here) prior to its 'expiration.'") (citing *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (18-month period too short); *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 514–16 (1911) (2-year period too short)); *Cedar Coal Co. v. United Mine Workers of Am.*, 560 F.2d 1153, 1165 (4th Cir. 1977) ("The challenged action of each of the unions is its strike which ended prior to the time it was fully litigated.").

Moreover, for all the reasons explained above (at 13–16), although Abrego Garcia is now back in the United States, he faces a substantial risk of again being removed to El Salvador, either directly or via a third country. The Court need look only to the Government's own statements to "reasonably assume that Abrego Garcia "will someday be subjected to another [removal without lawful process] . . . should the court no longer have jurisdiction to settle the dispute." *Nutt v. Ritter*, 707 F. Supp. 3d 517, 533–34 (E.D.N.C. 2023); *see also Cedar Coal*, 560 F.2d at 1166 (allegations and examples of "pattern and practice" of the challenged activity "sufficient to show that there was a reasonable expectation that the same complaining parties . . . would be subjected to the same action again"); *Lux*, 651 F.3d at 401 (plaintiff's confirmation he was "considering" again running for election and "inten[ded]" to take certain actions "support[ed] a reasonable expectation [he would] be adversely affected" by election requirements). Because this dispute is capable of repetition while evading review, it is not moot.

## III. The Court retains jurisdiction for sanctions and contempt.

Even if the Government were correct that Abrego Garcia's return to the United States resolved every claim (it does not), this Court still retains jurisdiction to find contempt and impose

sanctions for violations of its prior orders. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated."); *Fidrych v. Marriott, Int'l, Inc.*, 952 F.3d 124, 145 (4th Cir 2020) ("Because sanction proceedings are collateral to the merits of the underlying case, an otherwise proper sanction award may be imposed even if the court lacks jurisdiction to enter a judgment on the merits."); *In re GMC*, 61 F.3d 256, 259 n.3 (4th Cir. 1995) ("contempt proceeding is not moot" even after case settles).

Plaintiffs have moved for discovery sanctions for the Government's repeated violations of this Court's discovery orders. *See* ECF No. 196. Under *Cooter* and *Fidrych*, this Court retains jurisdiction to impose sanctions irrespective of whether the merits of the case have been resolved. *See also Heinrichs v. Marshall & Stevens, Inc.*, 921 F.2d 418, 421 (2d Cir. 1990) (applying *Cooter* to hold that discovery sanctions under Federal Rule of Civil Procedure 37 remain available even after merits of underlying case are resolved).

The Court ordered expedited discovery for several reasons, including "to assist the Court in determining whether contempt proceedings are warranted." ECF No. 79 at 6. Once the remaining discovery issues are resolved, Plaintiffs anticipate that they may seek contempt against the Government for violations of this Court's preliminary injunction—especially in light of the recent whistleblower revelations against the Government. *See* Exhibit A (Reuveni Letter). Under *Cooter*, *Fidrych*, and *In re GMC*, this Court retains jurisdiction to oversee any such contempt proceedings irrespective of whether the underlying case becomes moot. *See also United States v. Mine Workers*, 330 U.S. 258, 294 (1947) ("Violations of an order are punishable as criminal contempt even though . . . the basic action has become moot.").

IV.    **The Court should not dissolve its injunction.**

In the alternative, the Government asks (at 8) that this Court dissolve the preliminary injunction under Federal Rule of Civil Procedure 60(b)(5). Yet the Government fails to meet its burden of establishing "'a significant change either in factual conditions or in law' that makes 'enforcement of the preliminary injunction detrimental to the public interest.'" *Stone v. Trump*, 400 F. Supp. 3d 317, 332 (D. Md. 2019) (cleaned up) (quoting *L.J. v. Wilbon*, 633 F.3d 297, 304–05 (4th Cir. 2011)); *see also J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *3 (4th Cir. May 19, 2025) (Benjamin, J., with Gregory, J., concurring).

The Government's motion contains no argument addressing how continued enforcement of the injunction would be detrimental to the public interest. Instead, it merely asserts that Abrego Garcia's return makes enforcement "impossible" and would "waste judicial resources."  ECF No. 200. These conclusory statements are wrong: it is not impossible to enforce the injunction. *See* Section I.B, above. And the mere fact that the Government has finally returned Abrego Garcia to the United States does not, by itself, justify dissolving the injunction. *Cf. SEC v. Tsao*, 317 F.R.D. 31, 35 (D. Md. 2016) (collecting cases for the proposition that even "prolonged obedience to an injunction, standing alone, is not enough to justify dissolution, although it may be a factor to be considered"). Simply put, having failed to even argue that enforcement of the injunction would harm the public interest, the Government's motion should be denied.

If the Court independently evaluates the public interest, it strongly favors maintaining the injunction, which continues to require that the Government ensure that Abrego Garcia's case "is handled as it would have been had he not been improperly sent to El Salvador." *Noem*, 145 S. Ct. at 1018. Everything this Court concluded about the public interest in this case when it entered the preliminary injunction remains true today. "[T]here is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial

harm." ECF No. 31 at 21 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). And "the public remains acutely interested in 'seeing its governmental institutions follow the law . . . .'" *Id.* (quoting *Roe v. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020)). This substantial public interest in maintaining the injunction makes it improper to dissolve it. *See United States v. Welsh*, 879 F.3d 530, 537 (4th Cir. 2018) (affirming district court's denial of Rule 60(b)(6) motion where, "although there was a change in circumstances, the public nonetheless had a substantial countervailing interest in" keeping the court's order in place).

The Government's comparison to *Stone v. Trump* is inapposite. In that case, a preliminary injunction enjoined the enforcement of a 2017 memorandum banning transgender people from serving in the military. The court dissolved that injunction only when the Government rescinded the memorandum and issued a formal Implementation Plan that did not "suffer from the same procedural defects" as the August 2017 Memorandum. 400 F. Supp. 3d at 332. Here, the Government has not shown that all the enjoined conduct has been withdrawn or remedied. In particular, the order to treat Abrego Garcia's case as if he had not been unlawfully removed remains in force, so the rationale of *Stone v. Trump* is inapplicable.

## V.    Plaintiffs' upcoming revised complaint will further confirm this case is not moot.

For all the reasons above, the Government's motion should be denied. In addition, Plaintiffs will move by July 2 for leave to file an amended and supplemental complaint. Plaintiffs anticipate that the amended complaint will clarify that the relief they seek includes restoring the status quo ante, including requiring the Government to return Abrego Garcia to Maryland and handling his case as it would have been had he not been unlawfully removed.

The supplemental component of the pleading will address facts postdating the initial complaint, including Abrego Garcia's return to the United States and the Government's statements that it plans to deport him again. And it will address the additional relief Plaintiffs seek in

connection with these new facts, including ensuring that Abrego Garcia receives all the process he is due under U.S. law before he can be removed to El Salvador or any third country. These amended and supplemental allegations will further establish that the case is not moot and that the Government's motion should be denied.

## CONCLUSION

The Court should deny the Government's motion to dismiss.

Dated: June 30, 2025

/s/ Jonathan G. Cooper
_____

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

**QUINN EMANUEL URQUHART &**
  **SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Plaintiffs*