UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| Kilmar Armando Abrego Garcia, *et al.*, | |
| Plaintiffs, | |
| v. | Case No.: 8:25-CV-00951-PX |
| Kristi Noem, *et al.*, | |
| Defendants. | |

**Plaintiffs' Reply In Support Of Emergency Motion For An Order
To Return Kilmar Armando Abrego Garcia To The District Of Maryland
After Release In The Tennessee Criminal Proceedings**

The Government's opposition (ECF No. 208) does not contest any aspect of the merits of

Plaintiffs' emergency motion to return Kilmar Armando Abrego Garcia to Maryland. Among other

things, the Government does not dispute that:

- The All Writs Act, 28 U.S.C. §1651, and inherent equitable powers authorize the requested relief. ECF No. 203 at 2–3.

- This Court's injunction "properly requires the Government . . . to ensure that [Abrego Garcia's] case is handled as it would have been had he not been improperly sent to El Salvador," *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025), and achieving that—*i.e.*, restoring the status quo ante—requires returning Abrego Garcia to Maryland. ECF No. 203 at 3–4.

- The equities are one-sided in favoring a return to Maryland. *Id.* at 4–5.

- If this Court does not act, the Government will likely shuttle Abrego Garcia elsewhere for forum-shopping purposes. *Id.* at 5–6.[1]

---

[1] Yesterday, the Fourth Circuit denied the Government's motion to stay and petition for mandamus in *Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025), which is one of the cases Plaintiffs cited to support their assertion that the Government will seek to forum shop. ECF No. 203 at 6. In its decision, the Fourth Circuit noted that "[t]he government does not contest the district court's finding that it used these tactics to shop for a forum it perceived as more favorable and to make it difficult for Suri's attorney to file a habeas petition on his behalf." 2025 WL 1806692 at *5.

Indeed, the Government's brief does not even *mention* the All Writs Act, courts' equitable powers, the Supreme Court's decision in this case, or the equities. *See generally* ECF No. 208.

Instead of contesting the merits, the Government presses three jurisdictional defenses: (1) the case is moot, *id.* at 1–2; (2) certain statutory provisions—8 U.S.C. §1252(a)(2)(B)(ii), §1252(b)(9), and §1252(g)—bar jurisdiction, *id.* at 2–6; and (3) the requested relief sounds in habeas, yet this Court lacks habeas jurisdiction, *id.* at 6–7. Each defense fails.

**First**, as explained in Plaintiffs' opposition to the Government's latest motion to dismiss, the case is not moot. *See* ECF No. 207. We will not repeat all those reasons, but to highlight one: "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). Here, "Abrego Garcia requests relief designed to [restore] the status quo ante"—that is, "to return him to where he was on March 12, 2025, before he was apprehended by ICE and spirited away to CECOT." ECF No. 31 at 16–17. This Court issued an injunction "to restore the status quo," ECF No. 21 at 2, and the Supreme Court affirmed that the injunction "properly requires the Government . . . to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador," *Noem*, 145 S. Ct. at 1018. Despite those orders, the Government has resisted restoring the status quo ante and treating Abrego Garcia as if he had not been illegally removed. The Government refuses—as evidenced by its opposition to this motion—to return Abrego Garcia to Maryland, even though that is "where he was on March 12, 2025, before he was apprehended by ICE." This case is therefore not moot. It is possible for the Court to grant effectual relief, both by enforcing its existing injunction and by granting any additional relief needed to restore the status quo ante.

**Second**, consistent with longstanding principles of statutory interpretation, and because this Court retains jurisdiction "over at least some of [Abrego Garcia's] claims," it is not barred by

§1252(a)(2)(B)(ii), §1252(b)(9), or §1252(g) from exercising its authority to "transfer" Abrego

Garcia to this District. *Ozturk v. Hyde*, 136 F.4th 382, 394–401 (2d Cir. 2025) (denying challenge

to district court order transferring detainee from Louisiana to Vermont); *see also Suri v. Trump*,

2025 WL 1806692, at *7–9 (4th Cir. July 1, 2025) (citing *Ozturk* with approval).

Judicial review is precluded by 8 U.S.C. §1252(a)(2)(B)(ii) "only when Congress itself set

out the [Secretary of Homeland Security's] discretionary authority in the statute." *Kucana v.

Holder*, 558 U.S. 233, 247 (2010). The Government argues that this requirement is met because 8

U.S.C. §1231(g)(1) "expressly commits decisions about where to detain an alien pending removal

proceedings to the discretion of the Secretary of Homeland Security." ECF No. 208 at 2. But the

Fourth Circuit has rejected this exact argument because "the language of §1231(g) does not address

transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland

Security discretion with respect to transfers." *Vega Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209

(4th Cir. 2019); *see also Ozturk*, 136 F.4th at 395 (holding that the Government was unlikely to

succeed on its contention that §1252(a)(2)(B)(ii) strips the district court of authority to order the

custodial transfer of a noncitizen); *Aguilar v. U.S. ICE*, 510 F.3d 1, 20 (1st Cir. 2007) ("[S]ection

1231(g) fails to 'specify' that individualized transfer decisions are in the Attorney General's

discretion.").

The Government cites (at 3) to *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999), to

support the opposite view, but the Fourth Circuit rejected *Van Dinh* when it disagreed with the

Government's jurisdictional argument in *Vega Reyna*, 921 F.3d at 210 (citing *Van Dinh* with a

"*But see*" to signal it as contrary to the Fourth Circuit's ruling). This Court, of course, must follow

the Fourth Circuit's decisions, not the Tenth Circuit's.[2] And none of the other cases the

Government cites to support its §1252(a)(2)(B)(ii) argument is any more on point.[3]

Next, "[t]he government dramatically overstates the reach of §1252(g)." *Ozturk*, 136 F.4th

at 396. Indeed, this Court has already rejected the Government's argument that §1252(g) strips it

of jurisdiction. ECF No. 31 at 12–16. "The provision applies only to three discrete actions that the

Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases,

or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482

(1999) (quoting 8 U.S.C. §1252(g)). Plaintiffs' motion "does not challenge the Government's

decision to commence proceedings, adjudicate [his] case, or execute a removal order," but instead

seeks an order to return him to Maryland after his criminal confinement ends, and thus "fall[s]

outside of §1252(g)'s narrow jurisdictional bar." *Ozturk*, 136 F.4th at 397. "Section 1252(g) 'does

not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.'" *Id.*

(quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)). And none of the cases the

Government cites holds that §1252(g) strips this Court of jurisdiction to order the Government to

"refrain from removing him from the continental United States or from transferring him outside

this district . . . until further order." ECF No. 203 at 7. To the contrary, such orders are common

---

[2] Other courts have likewise rejected *Van Dinh*, which represents "a minority view." *Aguilar*, 510 F.3d at 20; *see also Zhao v. Gonzales*, 404 F.3d 295, 303 n.6 (5th Cir. 2005) ("*Van Dinh . . .* misstates the statutory text"); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (*Van Dinh* misconstrues "the plain language of §1252(a)(2)(B)(ii)").

[3] Both *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024), and *Polfliet v. Cuccinelli*, 955 F.3d 377 (4th Cir. 2020), concern decisions to revoke a visa petition under 8 U.S.C. §1155; they have nothing to do with transfer orders or §1231(g). The other four cases the Government cites—*Gambrana v. BIA*, 44 F.3d 1251 (4th Cir. 1995), *Sasso v. Milhollan*, 735 F. Supp. 1045 (S.D. Fla. 1990), *Wood v. United States*, 175 F. App'x 419 (2d Cir. 2006), and *Rios-Berrios v. INS*, 776 F.2d 859 (9th Cir. 1985)—all predate *Vega Reyna*, and thus cannot alter the Fourth Circuit's rejection of the Government's jurisdictional argument in *Vega Reyna*. In any event, the courts in each of those four cases *exercised* judicial review; none concluded that it lacked jurisdiction.

while courts resolve claims by immigration detainees. *See, e.g.*, ECF No. 203 at 2–3 (collecting cases); *Suri v. Trump*, 2025 WL 914757, at \*1 (E.D. Va. Mar. 20, 2025) ("Petitioner shall not be removed from the United States unless and until the Court issues a contrary order."); *Ozturk v. Trump*, --- F. Supp. 3d ----, 2025 WL 1009445, at \*11 (D. Mass. Apr. 4, 2025) (transferring case and "enjoining the government from removing [detainee] from the United States . . . unless and until the transferee court orders otherwise"); *Khalil v. Joyce*, 771 F. Supp. 3d 268, 291 (S.D.N.Y. 2025) (same); *Lin v.* Nielsen, 377 F. Supp. 3d 556, 565 (D. Md. 2019) ("Defendants shall be preliminarily enjoined from removing Mr. Lin from the United States pending further proceedings."). Indeed, this Court has a standing order enjoining the Government from "removing" certain habeas petitioners "from the continental United States or altering their legal status" for a specified period, which confirms that §1252(g) does not strip the Court of jurisdiction to issue such relief under the All Writs Act and its equitable powers. *See* Amended Standing Order 2025-01 (May 28, 2025), https://www.mdd.uscourts.gov/sites/mdd/files/Amended%202025-01.pdf.

The Government's assertion (at 4–5) that §1252(b)(9) bars review is contravened by the Supreme Court's teaching that "§1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). Plaintiffs' motion concerns none of those things; instead, it seeks relief with respect to the location of Abrego Garcia if and when ICE takes him into custody following his release in Tennessee. The Government's attempts to characterize Plaintiffs' motion as a challenge to a removal order are therefore misplaced. *See Ozturk*, 136 F.4th at 399 (rejecting the Government's contention that "the mere fact of [a non-citizen's] detention funnels all her unlawful detention claims into §1252(b)(9)"). "Construing an independent . . . challenge to detention as

necessarily implying a challenge to removal would lead to . . . an 'absurd' result." *Id.* at 401 (quoting *Jennings*, 583 U.S. at 293 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.)).

The Government also argues (at 5–6) that the relief sought is "infeasible" because there "are no ICE detention facilities in Maryland for long-term detention." Yet Abrego Garcia was detained at an ICE facility in Baltimore. *See* ECF No. 31 at 4 ("He was first transported to an ICE facility in Baltimore, Maryland."); ECF No. 1-2 ¶¶36–37 (describing calls Abrego Garcia made from an ICE facility in Baltimore). And the Government's supporting declaration acknowledges that ICE has "temporary hold rooms, designed for detention for periods of 12 hours or less," in Maryland. ECF No. 209 ¶5. That evidence does not show that it is infeasible for the Government to *return* Abrego Garcia to Maryland (or even to *detain* him in Maryland); at most, it suggests that *ICE* (but not the other agencies led by Defendants) lacks facilities to keep him in *long-term* detention in Maryland. So the relief sought in this motion is feasible: the Government can return Abrego Garcia to Maryland and, if it acts on its stated intent to detain him in immigration custody, then it can detain him here in the short term. At that point, Abrego Garcia can make any challenge to his immigration detention.[4] If long-term detention proves necessary before any such challenge is resolved, and no long-term detention space is available in Maryland, then he can be held in the nearest ICE facility outside Maryland. *Cf. Perez v. Noem*, 2025 U.S. Dist. Lexis 113509, at *3–4 (S.D.N.Y. June 13, 2025) (ordering that detainee can remain detained in "the District of New Jersey until space becomes available in the Southern District of New York").

---

[4] This motion does not challenge the validity of any immigration detention of Abrego Garcia— that is for a future proceeding. *See* ECF No. 203 at 7 (reserving all rights to challenge detention).

***Third***, the Government contends that Plaintiffs' requested relief sounds in habeas and therefore must be filed in Abrego Garcia's current district of conferment. Both the premise and the conclusion are mistaken.

If a claim "does not go to the validity of a conviction or sentence," then it "falls outside habeas's core." *Nance v. Ward*, 597 U.S. 159, 168 (2022). For example, a "prison-conditions claim," or a claim "challenging the adequacy of a prison's medical care" does not sound in habeas. *Id.* That is the situation here. The relief Plaintiffs seek in this motion goes to the *location* of Abrego Garcia if he is in immigration custody, not to the *validity* of any such confinement.

The requested relief is grounded not in habeas but in the All Writs Act and inherent equitable authority. *See* ECF No. 203 at 2–3. The All Writs Act empowers the Court to issue orders "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *Scardelletti v. Rinckwitz*, 68 F. App'x 472, 477 (4th Cir. 2003) (quoting *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)). And inherent equitable authority empowers the Court to protect its proceedings. *See Ozturk*, 136 F.4th 394–95.

The requested relief is necessary to effectuate, and to prevent the frustration of, the Court's injunction. If the Government does not return Abrego Garcia to Maryland—which is where he was "on March 12, 2025, before he was apprehended by ICE and spirited away to CECOT," ECF No. 31 at 16–17—then the injunction the Court issued to "restore the status quo," ECF No. 21 at 2, will be frustrated. And if the Government unlawfully removes Abrego Garcia from the continental United States again, then that, too, will frustrate the injunction, which the Court fashioned "to preserve Abrego Garcia's access to due process in accordance with the Constitution and governing immigration statutes," ECF No. 21 at 2–3, and to "require[] the Government . . . to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador," *Noem*, 145

S. Ct. at 1018; *see also id.* at 1019 (statement of Sotomayor, J.) ("I agree with the Court's order that the proper remedy is to provide Abrego Garcia with all the process to which he would have been entitled had he not been unlawfully removed to El Salvador."). Because Plaintiffs seek relief to protect the Court's proceedings from frustration, the relief sounds not in habeas but in the Court's powers under the All Writs Act and its equitable authority.

Indeed, this Court previously ruled that Plaintiffs' claims fall outside habeas's core because they challenge Abrego Garcia's unlawful *removal*, not his *confinement*. ECF No. 31 at 8. The Court crafted the injunction to remedy those non-habeas claims by ordering relief designed to restore the status quo. ECF No. 21 at 2. It necessarily follows that relief that seeks to effectuate and prevent the frustration of that injunction also falls outside habeas's core.

In any event, even if the requested relief sounded in habeas (which it does not), this Court would have jurisdiction. Citing *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), the Government insists (at 6) that habeas jurisdiction always lies in only one district: "the district of confinement." But that is only a *general* rule, not an *absolute* rule. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("[T]he general rule [is] that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). There are several exceptions. Indeed, just yesterday the Fourth Circuit held that, under the "unknown-custodian exception," a district court in Virginia properly exercised jurisdiction over a habeas petition filed when the petitioner was detained in Louisiana. *Suri*, 2025 WL 1806692, at *4–6.[5]

Here, Plaintiffs have pleaded a habeas claim. *See* ECF 1 ¶¶96–99. That habeas claim was properly filed in this District because, at the time it was filed, Abrego Garcia was incarcerated in

---

[5] The Government wrongly asserts (at 7) that the petitioner in *Suri* was "located in the district of confinement when the habeas petition[] w[as] filed." In fact, "Suri was physically present in Louisiana when his habeas petition was filed." *Suri*, 2025 WL 1806692, at *4.

El Salvador at the behest of the U.S. Government. *See Abrego Garcia v. Noem*, 2025 WL 1021113, at \*4 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring) ("[A]ll publicly available information about the Government's agreement with El Salvador indicates that the Government has outsourced part of the United States' prison system. . . . Considering these facts, and with no evidence to the contrary provided by the Government, the district court properly determined that 'just as in any other contract facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included.'") (cleaned up; quoting ECF No. 31 at 12). The fact that the Government was able to return Abrego Garcia to the United States at a time of its choosing (namely, to face criminal charges it investigated and brought only after it had removed him) confirms that it had constructive custody over Abrego Garcia while he was in El Salvador.

That suffices for habeas jurisdiction. When a habeas "petitioner and his immediate custodian are 'outside the territory of any district court,'" the "petitioner may name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 44 (D.D.C. 2004) (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 498 (1973)); *see also id.* at 45–51 (denying motion to dismiss federal habeas petition where individual plausibly alleged he was detained in Saudi Arabia at behest of U.S. officials). Neither of the Government's two pending motions to dismiss assert that this Court lacks personal jurisdiction over Defendants under Federal Rule of Civil Procedure 12(b)(2), so any personal jurisdiction defense has been waived. *See* Fed. R. Civ. P. 12(h)(1). It follows that this Court had habeas jurisdiction when Plaintiffs filed this claim. And once the petition was properly filed in this District, the Court did not lose jurisdiction when the Government moved Abrego Garcia from El Salvador to Tennessee. *See Lennear v. Wilson*, 937 F.3d 257, 263 n.1 (4th Cir. 2019) ("When the 'Government moves a habeas petitioner after [he]

properly files a petition naming [his] immediate custodian, the District Court [where the petitioner filed a petition] retains jurisdiction.'") (quoting *Padilla*, 542 U.S. at 441; brackets in *Lennear*).

\* \* \*

The relief Abrego Garcia seeks in this motion is critical "to restore the status quo and preserve Abrego Garcia's access to due process in accordance with the Constitution and governing immigration statutes." ECF No. 21 at 2–3. This Court should therefore enter the order under the All Writs Act and the Court's inherent equitable authority. Because of the threat the Government will remove Abrego Garcia unlawfully if ICE takes him into custody and no such order is in place, Abrego Garcia requested, and the Tennessee court agreed, to delay issuance of its release order so that he remains in U.S. Marshal custody, rather than ICE custody, until the hearing scheduled in that case for July 16, 2025. *See* ECF No. 67 in *United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn. June 30, 2025). Plaintiffs request that the Court enter the requested relief by then.

## Conclusion

For these reasons, the Court should order the Government to return Abrego Garcia to this District when his confinement for the criminal proceedings in Tennessee ends and to refrain from removing him from the continental United States or from transferring him outside this District (except to travel to Tennessee to participate in the criminal proceedings) until further order.

Dated: July 2, 2025

/s/ Jonathan G. Cooper

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &
 SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

**QUINN EMANUEL URQUHART &
 SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Plaintiffs*

11