# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Greenbelt Division

| | |
|---|---|
| Kilmar Armando Abrego Garcia,<br>Jennifer Stefania Vasquez Sura,<br>A.A.V., *a minor, by and through his next friend*<br>    *and mother, Jennifer Vasquez Sura*,<br><br>    c/o Murray Osorio PLLC<br>    8630 Fenton Street, Suite 918,<br>    Silver Spring, MD 20910<br><br>    *Plaintiffs,*<br><br>v.<br><br>Kristi Noem, *Secretary of Homeland Security*,<br><br>    Secretary of Homeland Security<br>    Washington, DC 20508<br><br>Todd Lyons, *Acting Director, U.S. Immigration*<br>    *and Customs Enforcement*,<br>Kenneth Genalo, *Acting Executive Associate*<br>    *Director, ICE Enforcement and Removal*<br>    *Operations*,<br>Nikita Baker, *ICE Baltimore Field Office Director*,<br><br>    500 12th St., SW<br>    Washington, D.C. 20536<br><br>Pamela Bondi, *Attorney General*,<br><br>    950 Pennsylvania Avenue, NW<br>    Washington, DC 20530-0001<br><br>Marco Rubio, *Secretary of State*,<br><br>    The Executive Office of the Legal Adviser<br>    and Bureau of Legislative Affairs<br>    Suite 5.600<br>    600 19th Street NW<br>    Washington DC 20522<br><br>    *Defendants.* | Civil Action No. _____ |

1

## <u>COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT</u>

In 2019, Plaintiff Kilmar Armando Abrego Garcia won an order from an immigration judge granting him a form of relief called withholding of removal, which prohibits Defendants from removing him to El Salvador. Should Defendants wish to remove Plaintiff Abrego Garcia to El Salvador, the law sets forth specific procedures by which they can reopen the case and seek to set aside the grant of withholding of removal. Should Defendants wish to remove Plaintiff Abrego Garcia to any other country, they would have no legal impediment in doing so. But Defendants found those legal procedures bothersome, so they merely ignored them and deported Plaintiff Abrego Garcia to El Salvador anyway, ripping him away from his U.S.-citizen wife, Plaintiff Vasquez Sura, and his disabled U.S.-citizen child, Plaintiff A.A.V. Defendants sent Plaintiff Vasquez Sura to El Salvador knowing that he would be immediately incarcerated and tortured in that country's most notorious prison; indeed, Defendants have *paid the government of El Salvador millions of dollars to do exactly that*. Such conduct shocks the conscience and cries out for immediate judicial relief.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear this case under 28 U.S.C. § 2201, the Declaratory Judgment Act, and 28 U.S.C. § 1331, Federal Question Jurisdiction; and because the individual Defendants are United States officials. 28 U.S.C. § 1346(a)(2).

2.    The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable powers.

3.    Venue lies in this District because Plaintiffs reside in Beltsville, Maryland and each Defendant is an agency or officer of the United States sued in his or her official capacity.  28

2

U.S.C. § 1391(e)(1). In addition, Defendant Baker's principal place of business is in Baltimore, Maryland, and the legal violations described herein took place at the direction and under the supervision of her predecessor in office.

**THE PARTIES**

4.      Plaintiff Kilmar Armando Abrego Garcia is a citizen and native of El Salvador who resides in Beltsville, Maryland. Defendants have deported him to El Salvador without any legal process whatsoever, and in violation of an immigration judge order and a federal statute prohibiting them from doing so.

5.      Plaintiff Jennifer Vasquez Sura is a U.S. citizen, and the wife of Plaintiff Abrego Garcia.

6.      Plaintiff A.A.V., a U.S. citizen, is a minor child.  He is the child of Plaintiff Abrego Garcia and Plaintiff Vasquez Sura.

7.      Defendant Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"). She is the cabinet-level secretary responsible for all immigration enforcement in the United States.

8.      Defendant Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"). He is the head of the federal agency responsible for all immigration enforcement in the United States.

9.      Defendant Kenneth Genalo is the Acting Executive Associate Director of ICE Enforcement and Removal Operations. He is the head of the ICE office that carries out arrests of noncitizens and removals from the United States.

10. Nikita Baker is the ICE Baltimore Field Office Director. She is the head of the ICE office that unlawfully arrested Plaintiff, and such arrest took place under the direction and supervision of her predecessor in office.

11. Pamela Bondi is the Attorney General of the United States. The Immigration Judges who decide removal cases and application for relief from removal do so as her designees.

12. Marco Rubio is the Secretary of State of the United States. He is the individual whom Plaintiffs request this Court order to request the return of Plaintiff Abrego Garcia to the United States from El Salvador.

13. All government defendants are sued in their official capacities.

## LEGAL BACKGROUND

14. Federal law prohibits the government from removing a noncitizen to a country where he is more likely than not to face persecution on account of a statutorily protected ground. 8 U.S.C. § 1231(b)(3)(A). This protection is usually referred to as "withholding of removal."

15. For an immigration judge (serving as the designee of Defendant Bondi) to grant withholding of removal to a noncitizen, the noncitizen must prove that he is more likely than not to suffer persecution. "The burden of proof is on the applicant for withholding of removal [] to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b).

16. If a noncitizen is granted withholding of removal, "DHS may not remove the alien to the country designated in the removal order unless the order of withholding is terminated." *Johnson v. Guzman Chavez*, 594 U.S. 523, 531 (2021). No exceptions lie. However, withholding

of removal is a country-specific form of relief, and an individual granted withholding of removal can still be deported to any other country.

17.     Federal regulations provide a procedure by which a grant of withholding of removal issued by an immigration judge may be terminated: DHS must move to reopen the removal proceedings before the immigration judge, and then DHS will bear the burden of proof, by a preponderance of the evidence, that grounds for termination exist. 8 C.F.R. § 1208.24(e). After a grant of withholding of removal is terminated, there would be no impediment to removal.

## FACTS

18.     Plaintiff Kilmar Armando Abrego Garcia is a citizen of El Salvador and no other country.

19.     Plaintiff Abrego Garcia is not a member of or has no affiliation with Tren de Aragua, MS-13, or any other criminal or street gang. Although he has been accused of general "gang affiliation," the U.S. government has never produced an iota of evidence to support this unfounded accusation.

20.     Plaintiff Abrego Garcia has no criminal history. He has never been charged or convicted of any criminal charges, in the United States, El Salvador, or any other country.

### *Plaintiff Abrego Garcia's 2019 removal proceedings*

21.     Plaintiff Abrego Garcia left El Salvador when he was around sixteen years old, fleeing gang violence. Beginning around 2006, gang members had stalked, hit, and threatened to kidnap and kill him in order to coerce his parents to succumb to their increasing demands for extortion.

22.     Sometime around 2011, Plaintiff Abrego Garcia entered the United States without inspection. He then made his way to the state of Maryland, where his older brother, a U.S. citizen, resided. In the United States, Plaintiff Abrego Garcia has only ever resided in Maryland.

23.     Around 2016, Plaintiff Abrego Garcia met Plaintiff Jennifer Vasquez Sura, a U.S. citizen with two U.S.-citizen children from a prior relationship. Over time, they became close and eventually became romantically involved.

24.     Around December 2018, Plaintiff Abrego Garcia moved in with Plaintiff Vasquez Sura and her two children, after Plaintiff Vasquez Sura learned she was pregnant with their child. Plaintiff Abrego Garcia supported himself, Plaintiff Vasquez Sura, and her two children through work in the construction industry.

25.     On March 28, 2019, Plaintiff Abrego Garcia went to a Home Depot in Hyattsville, Maryland to solicit employment. When he arrived, he joined three other young men who were also at Home Depot soliciting employment, two of whom he recognized from prior occasions at the Home Depot, though he had never interacted with them in any other context. The young men proceeded to chat to pass the time.

26.     At 2:27 PM, while the four of them were chatting, a detective from the Hyattsville City Police approached the group. The detective did not speak to Plaintiff Abrego Garcia, but only one of the other men. Soon thereafter, officers from Prince George County Police Department ("PGPD") arrived on the scene and proceeded to handcuff all four young men, including Plaintiff Abrego Garcia. At no point did police explain why they were arresting Plaintiff Abrego Garcia, nor was Plaintiff Abrego Garcia ever charged with any crime. This was Plaintiff Abrego Garcia's first and only time in state custody.

27.    At the police station, the four young men were placed into different rooms and questioned. Plaintiff Abrego Garcia was asked if he was a gang member; when he told police he was not, they said that they did not believe him and repeatedly demanded that he provide information about other gang members. The police told Plaintiff Abrego Garcia that he would be released if he cooperated, but he repeatedly explained that he did not have any information to give because he did not know anything.

28.    Plaintiff Abrego Garcia was then transferred to another room and told that ICE officers would be coming to take him into federal immigration custody. Eventually, ICE officers arrived and took Plaintiff Abrego Garcia into detention.

29.    The following day, Plaintiff Abrego Garcia was served with a Notice to Appear, 8 U.S.C. § 1229, commencing removal proceedings against him pursuant to 8 U.S.C. § 1229a. He was charged as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible"), and no other charges.

30.    On April 24, 2019, Plaintiff Abrego Garcia appeared for his first hearing in immigration court. Through counsel, he moved for release on bond pursuant to 8 U.S.C. § 1226(a), submitting over seventy pages of evidence in support thereof. ICE opposed a change in custody status, arguing that Plaintiff Abrego Garcia presented a danger to the community because local police had supposedly "verified" that he is an active gang member.

31.    In support thereof, ICE offered a Gang Field Interview Sheet ("GFIS") generated by PGPD. The GFIS explained that the only reason to believe Plaintiff Abrego Garcia was a gang member was that he was wearing a Chicago Bulls hat and a hoodie; and that a confidential informant advised that he was an active member of MS-13 with the Westerns clique. The GFIS

had been entered into PGPD's database at 6:47 PM, approximately four hours after police met Plaintiff Abrego Garcia for the first time.

32.     According to the Department of Justice and the Suffolk County District Attorney's Office, the "Westerns" clique operates in Brentwood, Long Island, in New York, a state that Plaintiff Abrego Garcia has never lived in.

33.     The attorney for Plaintiff Abrego Garcia subsequently made multiple attempts to obtain additional information from law enforcement concerning these allegations. PGPD indicated that it did not have any incident report related to the Home Deport episode at all, nor did the Department have any incident reports containing his name. The Hyattsville City Police Department ("HCPD"), on the other hand, confirmed it had an incident report for the Home Depot incident, but that only 3 people were named and Plaintiff Abrego Garcia was not one of them, nor did it have any other incident reports with his name in its database. His attorney also contacted the PGPD Inspector General requesting to speak to the detective who authored the GFIS sheet, but was informed that the detective had been suspended. A request to speak to other officers in the Gang Unit was declined.

34.     On June 25, 2019, Plaintiff Vasquez Sura and Plaintiff Abrego Garcia were married in the Howard Detention Center. Plaintiff Vasquez Sura was in her third trimester of pregnancy at the time. Due to a pre-existing condition, uterus didelphys, her pregnancy was categorized as high-risk. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

35.     Plaintiff Abrego Garcia then filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture with the Baltimore Immigration Court and was scheduled for an individual hearing. His individual hearing spanned over two days: August 9, 2019, and September 27, 2019.

36.     In advance of his hearing, Plaintiff Abrego Garcia, through counsel, filed a motion for a subpoena to require the appearance of two PGPD detectives, and any evidence substantiating his alleged gang membership.

37.     In addition, Plaintiff Abrego Garcia, through counsel, submitted a legal brief and a voluminous evidentiary filing establishing his eligibility for protection and contesting the unfounded allegation of gang membership levied against him.

38.     On August 9, 2019, the attorney for ICE indicated on the record that ICE had conferred with its law enforcement partners and that all the evidence and intelligence they had was what was contained in the GFIS. As a result, a subpoena was deemed unnecessary.

39.     On August 11, 2019, Plaintiff Vasquez Sura gave birth to the couple's son, Plaintiff A.A.V. Plaintiff Abrego Garcia was unable to witness the birth of his son as he remained detained, awaiting to continue the second part of his hearing.

40.     A.A.V. was born with Microtia, congenital malformation of the external ear, resulting in an underdeveloped ear. Testing later confirmed that A.A.V. was deaf in his right ear. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

41.     On October 10, 2019, Plaintiff Abrego Garcia was granted withholding of removal pursuant to 8 U.S.C. § 1232(b)(3)(A), after the immigration judge agreed that he had established it was more likely than not that he would be persecuted by gangs in El Salvador because of a protected ground. *See* Ex. A (Immigration Judge order). ICE did not appeal the grant of relief, *see* Ex. E (immigration court "Automated Case Information" page); and Plaintiff Abrego Garcia was then promptly released from custody.

42.     Plaintiff Abrego Garcia went home to his wife and children. They all have continuously resided in Prince George's County, Maryland.

43.     In addition to hearing problems, A.A.V., who is now five years old, is intellectually disabled and has a speech disorder. To this day, he is unable to verbally communicate and in October 2024 he was diagnosed with autism.

44.     Both Plaintiff Vasquez Sura and Plaintiff Abrego Garcia work to support their family of five. Plaintiff Abrego Garcia is a union member and is employed full-time as a first-year Sheetmetal Apprentice. In addition, he has been pursuing his own license at the University of Maryland.

45.     As a condition of his withholding of removal status, Plaintiff Abrego Garcia is required to check in with ICE once a year, and has been fully compliant. He appeared for his most recent check-in on January 2, 2025, without incident. *See* Ex. C (ICE check-in record).

46.     Aside from these check-ins, after being granted withholding protection and being released from custody, Plaintiff Abrego Garcia has had no contact with any law enforcement agency.

47.     Plaintiff Abrego Garcia has never been arrested or charged with any crime in the U.S. or in El Salvador. There is no known link or association between him and the MS-13 gang. Prince George's County law enforcement never again questioned him regarding MS-13 or accused him of membership in MS-13.

### *Plaintiff Abrego Garcia's 2025 arrest and removal*

48.     In the early afternoon of Wednesday, March 12, 2025, after completing a shift as a sheet metal worker apprentice at a new job site in Baltimore, Plaintiff Abrego Garcia picked up his five-year old son, A.A.V., from his grandmother's house.

49.     While driving with his son A.A.V. in the backseat, Plaintiff Abrego Garcia was pulled over by ICE officers acting at the direction and under the supervision of Defendant Baker's predecessor in office.

50.     One ICE officer, who identified himself as part of Homeland Security Investigations, told Plaintiff Abrego Garcia that his "status has changed." Within minutes, Plaintiff Abrego Garcia was handcuffed and detained in one of several ICE vehicles on the scene. Plaintiff Vasquez Sura was called and instructed to appear at their location within ten minutes to get her five-year old son, A.A.V.; otherwise, the ICE officers threatened that the child would be handed over to Child Protective Services. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

51.     After Plaintiff Vasquez Sura arrived at the scene, she was able to briefly talk with Plaintiff Abrego Garcia, who appeared confused, distraught, and crying. Moments later, Plaintiff Abrego Garcia was driven away. No explanation was provided to Jennifer as to why her husband was detained, where he was going, or what was happening. *Id.*

52.     Almost immediately after Plaintiff Vasquez Sura left with her son A.A.V., she began to try to locate Plaintiff Abrego Garcia through the online ICE Detainee Locator system and by calling various immigration detention centers and facilities. It appeared that between Wednesday, March 12, and Saturday, March 15, Plaintiff Abrego Garcia was moved to various different locations across the country. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

53.     The evening after his arrest, Plaintiff Vasquez Sura received a call from Plaintiff Abrego Garcia. At that time, it appeared that he was in Baltimore. During that conversation, Plaintiff Abrego Garcia informed Plaintiff Vasquez Sura that he was being questioned about gang affiliations. He repeatedly informed his interviewers that he was never a gang member and had no gang affiliations. He was shown several photos where he appeared in public, and asked about other

people in those photos, but was unable to provide any information on them, as he did not know them or anything about them. Plaintiff Abrego Garcia also told his wife that he had been told that he would go before an immigration judge and then be released. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

54.     Plaintiff Vasquez Sura received a call from Plaintiff Abrego Garcia on the evening of March 13. Plaintiff Abrego Garcia told his wife that he believed he was in Louisiana, but was not sure because he had been moved around so many times. Plaintiff Abrego Garcia indicated to his wife that he was very confused. However, he was still being assured that he would be brought before an immigration judge soon. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

55.     In an attempt to ascertain his actual location and find further information about his arrest and detention, Plaintiff Vasquez Sura called different detention centers, trying to speak to someone. She recalls one brief conversation where she was told that "El Salvador was asking for him." Her attempts to protest by saying that he had won protection from being removed to El Salvador fell on deaf ears. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

56.     Around 11:00 AM on Saturday, March 15, 2025, Plaintiff Vasquez Sura received her last call from Plaintiff Abrego Garcia. During that conversation, Plaintiff Abrego Garcia informed her that he was being held by ICE at the East Hidalgo Detention Center in La Villa, Texas. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

57.     Plaintiff Abrego Garcia then relayed that he was told that he was being deported to El Salvador. With a sense of urgency, he asked his wife to contact his mother so their family could get him from "CECOT," as that is where he was told they were sending him.[1]

---

[1] CECOT is the Terrorism Confinement Center in El Salvador, one of the largest prisons in the world.

58.    Since that conversation, Plaintiff Vasquez Sura has not had any further contact with Plaintiff Abrego Garcia. *See* Ex. B (Declaration of Plaintiff Vasquez Sura).

59.    The following day, on Sunday, March 16, Ms. Vasquez Sura was sent a photo from a news article discussing the deportation of alleged Venezuelan gang members that were deported without a hearing. The photo showed men kneeling on the ground, with their shaved heads bowed and their arms over their head. Their faces were not visible. Upon inspection, Jennifer identified one of these men as Plaintiff Abrego Garcia based on her husband's distinctive tattoos and two scars on his head. See Ex. D (CECOT photos).

60.    For the next few days, the ICE Detainee Locator continued to indicate that Plaintiff Abrego Garcia was located at the East Hidalgo Detention Center, even though staff at that detention center told Plaintiff Vasquez Sura that he had left on Saturday. *See* Ex. B (Declaration of Plaintiff Vasquez Sura). (Now, Plaintiff Abrego Garcia no longer appears in the ICE Detainee Locator.)

61.    Watching the news, Plaintiff Vasquez Sura was horrified to see more photos of CECOT prisoners that included her husband, and a video where Plaintiff Abrego Garcia was frog-walked through the CECOT prison. Plaintiff Abrego Garcia's family subsequently hired a lawyer in El Salvador, who has confirmed that Plaintiff Abrego Garcia is, in fact, being held at CECOT. The lawyer has ascertained that to date, there are no known criminal charges levied against Plaintiff Abrego Garcia in El Salvador either.

62.    ICE and DHS took no steps to reopen the removal case of Plaintiff Abrego Garcia, nor to rescind his order of withholding of removal. *See* Ex. E (immigration court "Automated Case Information" page, showing no activity since October 10, 2019).

63.     Upon information and belief, ICE and DHS leadership, including Defendants Noem, Lyons, Genalo, and the predecessor in office of Defendant Baker, decided to deport Plaintiff Abrego Garcia without following the law. Upon information and belief, they did so knowing and intending that the Government of El Salvador would detain Plaintiff Abrego Garcia in CECOT immediately upon arrival.

*Conditions in CECOT*

64.     On March 15, 2025, Defendants deported 261 noncitizens, including 238 Venezuelan nationals and 23 Salvadoran nationals, to El Salvador without going through any legal processes whatsoever in front of an immigration judge. Upon information and belief, Plaintiff Abrego Garcia was one of those 23 Salvadoran nationals. Salvadoran President Nayib Bukele confirmed they have been sent to the country's mega-prison CECOT, the Terrorism Confinement Center. Upon information and belief, Defendants carried out this deportation through extrajudicial means because they believed that going through the immigration judge process took too long, and they feared that they might not win all of their cases before immigration judges.

65.     Upon information and belief, ICE and DHS has paid or continues to pay the Government of El Salvador six million dollars in order for the Government of El Salvador to detain these individuals, including Plaintiff Abrego Garcia.[2]

66.     Upon information and belief, all Defendants are aware that the government of El Salvador tortures individuals detained in CECOT. Indeed, U.S. President Donald Trump has made comments to the press expressing glee and delight at the torture that the Government of El Salvador inflicts upon detainees in CECOT.

---

[2] "US to pay El Salvador to jail 300 alleged gang members, AP reports" (Mar. 15, 2025), *available at* https://www.reuters.com/world/us/us-pay-el-salvador-jail-300-alleged-gang-members-ap-reports-2025-03-15/.

67. CECOT conditions have garnered attention from human rights organizations. Each of the 256 cells is intended to hold approximately 80 inmates but often holds nearly double.[3] The cramped cells are equipped with tiered metal bunks without mattresses, two basins for washing, and two open toilets. There are no windows, fans, or air conditioning, despite the region's warm and humid climate.[4]

68. Inmates in CECOT are confined to their cells for 23.5 hours daily and cannot go outdoors. They are denied access to reading materials, including even letters from friends or family. Inmates are prohibited from receiving visits from family and friends. Meals are provided through the bars, and the facility enforces strict regulations to maintain order.[5]

69. In May 2023, Cristosal, a leading human rights organization in El Salvador, released a comprehensive report detailing severe human rights abuses within the country's prison system, especially CECOT.[6] The investigation documented the deaths of 153 inmates between March 27, 2022, and March 27, 2023, attributing many to torture, beatings, mechanical asphyxiation (strangulation), and lack of medical attention. *Id.* Autopsies revealed common patterns of lacerations, hematomas, sharp object wounds, and signs of choking or strangulation. *Id.* Survivors reported being forced to pick food off the floor with their mouths, subjected to

---

[3] Leire Ventas & Carlos García, "El Salvador's Secretive Mega-Jail," *BBC News* (July 14, 2023), *available at* https://www.bbc.com/news/resources/idt-81749d7c-d0a0-48d0-bb11-eaab6f1e6556.

[4] Maanvi Singh, "US Deportees Face Brutal Conditions in El Salvador Mega-Prison: 'Severe Overcrowding, Inadequate Food,'" *The Guardian* (Mar. 20, 2025), *available at* https://www.theguardian.com/us-news/2025/mar/20/trump-deportations-venezuela-prison

[5] "Inside El Salvador's prison holding Venezuelans deported from US," *CNN* (March 17. 2025), *available at* https://edition.cnn.com/2025/03/17/world/video/el-salvador-prison-holding-venezuelans-deported-us-trump-digvid.

[6] Noé López, "Inmates in El Salvador Tortured and Strangled: A Report Denounces Hellish Conditions in Bukele's Prisons," *El País* (May 29, 2023), *available at* https://english.elpais.com/international/2023-05-29/inmates-in-el-salvador-tortured-and-strangled-a-report-denounces-hellish-conditions-in-bukeles-prisons.html.

electric shocks, and exposed to untreated skin fungus epidemics. *Id.* Cristosal's director has emphasized that these systemic violations have become state policy. *Id.*

70. Plaintiff Abrego Garcia is at imminent risk of irreparable harm with every additional day he spends detained in CECOT, included but not limited to torture and possible death.

71. Plaintiff Abrego Garcia has exhausted all administrative remedies. No administrative remedies are available to Plaintiff Abrego Garcia, precisely because Defendants made the choice to unlawfully forego proceedings before the immigration judge, which would entail a right to administrative review before the Board of Immigration Appeals and then a petition for review to the U.S. Court of Appeals for the Fourth Circuit.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE WITHHOLDING OF REMOVAL STATUTE,**
**8 U.S.C. § 1231(b)(3)(A)**
**(Plaintiff Abrego Garcia)**

72. Plaintiffs incorporate the foregoing paragraphs 1-71 by reference.

73. The Withholding of Removal statute, 8 U.S.C. § 1231(b)(3)(A), prohibits Defendants from removing a noncitizen to any country from which he has been granted withholding of removal, unless such grant is formally terminated by lawful means.

74. As set forth above, Defendants removed Plaintiff Abrego Garcia to El Salvador, the country from which he had been granted withholding of removal, without formally terminating his grant of withholding of removal, thus violating this law.

75. Defendants' violation of law, as set forth herein, is causing Plaintiff Abrego Garcia irreparable harm with each day that he spends outside the United States and detained in CECOT.

76.     Even if Plaintiff Abrego Garcia were released from CECOT, he would still be suffering irreparable harm in the form of separation from his U.S. citizen wife, Plaintiffs Vasquez Sura, and his severely disabled U.S. citizen child, Plaintiff A.A.V.

77.     Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States. This should begin with ordering that Defendants immediately halt all payments to the Government of El Salvador to hold individuals in CECOT, and an order that Defendants immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador.

## SECOND CAUSE OF ACTION:
## PROCEDURAL DUE PROCESS
## U.S. CONSTITUTION, AMENDMENT V
### (Plaintiff Abrego Garcia)

78.     Plaintiffs incorporate the foregoing paragraphs 1-71 by reference.

79.     Plaintiff Abrego Garcia has a procedural due process right not to be removed to El Salvador, the country from which he had been granted withholding of removal, without an immigration judge first carrying out the procedures set forth in statute and federal regulations.

80.     As set forth above, Defendants removed Plaintiff Abrego Garcia to El Salvador, the country from which he had been granted withholding of removal, without formally terminating his grant of withholding of removal, thus violating his procedural due process rights under the Fifth Amendment to the U.S. Constitution.

81.     Defendants' violation of law, as set forth herein, is causing Plaintiff Abrego Garcia irreparable harm with each day that he spends outside the United States and detained in CECOT.

82.     Even if Plaintiff Abrego Garcia were released from CECOT, he would still be suffering irreparable harm in the form of separation from his U.S. citizen wife, Plaintiffs Vasquez Sura, and his severely disabled U.S. citizen child, Plaintiff A.A.V.

83.     Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States. This should begin with ordering that Defendants immediately halt all payments to the Government of El Salvador to hold individuals in CECOT, and an order that Defendants immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador.

### THIRD CAUSE OF ACTION:
### SUBSTANTIVE DUE PROCESS
### U.S. CONSTITUTION, AMENDMENT V
### (All Plaintiffs)

84.     Plaintiffs incorporate the foregoing paragraphs 1-71 by reference.

85.     Plaintiff Abrego Garcia has a substantive due process right under the Fifth Amendment to the U.S. Constitution not to be subjected to government conduct that shocks the conscience.  Defendants' conduct as set forth above violates that right.

86.     Plaintiffs Vasquez Sura and A.A.V., as the U.S.-citizen spouse and minor child of Plaintiff Abrego Garcia, also have a family unity interest in Plaintiff Abrego Garcia not being removed from the United States in a manner that shocks the conscience. Defendants' conduct as set forth above violates that right.

87.     Defendants' conscience-shocking actions, as set forth herein, is causing Plaintiff Abrego Garcia irreparable harm with each day that he spends outside the United States and detained in CECOT.

88.     Even if Plaintiff Abrego Garcia were released from CECOT, he would still be suffering irreparable harm in the form of separation from his U.S. citizen wife, Plaintiffs Vasquez Sura, and his severely disabled U.S. citizen child, Plaintiff A.A.V.

89.     Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States. This should begin with ordering that Defendants immediately halt all payments to the Government of El Salvador to hold individuals in CECOT, and an order that Defendants immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador.

**FOURTH CAUSE OF ACTION:**
**ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(A)**
**(Plaintiff Abrego Garcia)**

90.     Plaintiffs incorporate the foregoing paragraphs 1-71 by reference.

91.     The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion."   5 U.S.C. § 706(2)(A).

92.     Defendants' actions as set forth herein were arbitrary, capricious, and an abuse of discretion.

93.     Defendants' arbitrary and capricious actions, as set forth herein, are causing Plaintiff Abrego Garcia irreparable harm with each day that he spends outside the United States and detained in CECOT.

94.     Even if Plaintiff Abrego Garcia were released from CECOT, he would still be suffering irreparable harm in the form of separation from his U.S. citizen wife, Plaintiffs Vasquez Sura, and his severely disabled U.S. citizen child, Plaintiff A.A.V.

19

95.     Plaintiffs ask the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States. This should begin with ordering that Defendants immediately halt all payments to the Government of El Salvador to hold individuals in CECOT, and an order that Defendants immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador.

### FIFTH CAUSE OF ACTION:
### HABEAS CORPUS
### 28 U.S.C. § 2241
### (Plaintiff Abrego Garcia)

96.     Plaintiffs incorporate the foregoing paragraphs 1-71 by reference.

97.     The writ of habeas corpus is available to any individual who is held in custody of the federal government in violation of the Constitution or laws or treaties of the United States.

98.     As set forth herein, Plaintiff Abrego Garcia is being held in custody by the Government of El Salvador, but the Government of El Salvador is detaining Plaintiff Abrego Garcia at the direct request of Defendants, and at the financial compensation of Defendants.  Such detention is in violation of the Constitution or laws or treaties of the United States.

99.     Plaintiffs ask the Court to immediately order Defendants to immediately cease compensating the Government of El Salvador for its detention of Plaintiff Abrego Garcia, and to immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador.

### REQUEST FOR RELIEF

Plaintiffs pray for judgment against Defendants and respectfully request that the Court enters an order:

a) Declaring that Defendants' actions, as set forth herein, violated the laws of the United States and the Fifth Amendment to the U.S. Constitution;

b) Immediately ordering Defendants to immediately cease compensating the Government of El Salvador for its detention of Plaintiff Abrego Garcia;

c) Immediately ordering Defendants to immediately request that the Government of El Salvador release Plaintiff Abrego Garcia from CECOT and deliver him to the U.S. Embassy in El Salvador;

d) Should the Government of El Salvador decline such request, ordering Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff Abrego Garcia to the United States;

e) Granting Plaintiffs costs and fees under the Equal Access to Justice Act; and

f) Granting such other relief at law and in equity as justice may require.

Respectfully submitted,

*//s// Simon Sandoval-Moshenberg*                                             Date: March 24, 2025
Simon Y. Sandoval-Moshenberg, Esq.
D. Md. Bar no. 30965
*Counsel for Plaintiff*
Murray Osorio PLLC
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
Telephone: 703-352-2399
Facsimile: 703-763-2304
ssandoval@murrayosorio.com