```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
2                      GREENBELT DIVISION

3    _____
                                             )
4    KILMAR ARMANDO ABREGO GARCIA,           )
     et al.,                                 )
5                                            )
           Plaintiffs,                       )
6                                            ) Docket Number
                vs.                          ) 8:25-cv-00951-PX
7                                            )
     KRISTI NOEM, et al.,                    )
8                                            )
           Defendants.                       )
9    _____)

10                  TRANSCRIPT OF MOTIONS HEARING
                 BEFORE THE HONORABLE PAULA XINIS
11               UNITED STATES DISTRICT COURT JUDGE
                 MONDAY, JULY 7, 2025, AT 11:17 A.M.
12
     APPEARANCES:
13
     On Behalf of the Plaintiffs:
14
           BY:  ANDREW ROSSMAN, ESQUIRE
15              SASCHA RAND, ESQUIRE
           QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
16         295 5th Avenue
           New York, NY  10016
17         (212)849-7000

18         BY:  JONATHAN COOPER, ESQUIRE
                OLIVIA HORTON, ESQUIRE
19         QUINN, EMANUEL, URQUHART & SULLIVAN, LLC
           1300 I Street NW
20         Suite 900
           Washington, DC  20005
21         (617)712-7165

22         BY:  SIMON SANDOVAL-MOSHENBERG, ESQUIRE
           MURRAY OSORIO
23         4103 Chain Bridge Road, Suite 300
           Fairfax, VA  22030
24         (434)218-9376

25         ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
```

```
1   APPEARANCES CONTINUED:

2   On Behalf of the Defendants:

3        BY:  JONATHAN GUYNN, ESQUIRE
             DEPUTY ASSISTANT ATTORNEY GENERAL
4            CIVIL DIVISION, DEPARTMENT OF JUSTICE
             950 Pennsylvania Avenue NW
5            Washington, DC  20530
             (202)856-4809
6
     ALSO PRESENT:  Jennifer Stefania Vasquez Sura, Plaintiff
7                   Ernesto Molina, Esquire, DOJ
                    Bridget O'Hickey, Esquire, DOJ
8                   Natasha Patel, Paralegal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<pre>
 1                    P R O C E E D I N G S
 2   (Court called to order.)
 3           DEPUTY CLERK:  All rise.  The United States District
 4   Court for the District of Maryland is now in session.  The
 5   Honorable Paula Xinis presiding.
 6           THE COURT:  Good morning, everyone.
 7            (ALL COUNSEL:  Good morning, Your Honor.)
 8           THE COURT:  You all can have a seat.
 9       Ms. Derro, will you call the case.
10           DEPUTY CLERK:  Yes, Your Honor.  The matter now
11   pending before the Court is Civil Case Number PX25-951, Kilmar
12   Armando Abrego Garcia, et al., v. Kristi Noem, et al.  The
13   matter now comes before the Court for a motions hearing.
14       Counsel, please identify yourselves for the record,
15   beginning with counsel for the plaintiffs.
16           MR. ROSSMAN:  Good morning, Your Honor.  Andrew
17   Rossman for the plaintiffs.
18           MR. COOPER:  Good morning, Your Honor.  Jonathan
19   Cooper for the plaintiffs.
20           MR. SANDOVAL-MOSHENBERG:  Simon Sandoval-Moshenberg.
21           MR. RAND:  Good morning, Your Honor.  Sascha Rand.
22           THE COURT:  And Ms. Sura, good to see you.  Okay.
23       Defense?
24           MR. GUYNN:  Good morning, Your Honor.  Jonathan Guynn
25   with the Department of Justice on behalf of defendants.
</pre>

1          **MS. O'HICKEY:**  Good morning, Your Honor.  Bridget

2    O'Hickey, also for the defendants.

3          **MR. MOLINA:**  Good morning, Your Honor.  Ernesto

4    Molina for the defendants.

5          **THE COURT:**  Good morning.  Just give me one second.

6      Okay.  Today what I would like to address, and I may or

7    may not resolve all of them, are the following motions:  ECF --

8    and we're going to do them in order.

9          ECF 165, the motion to dismiss for lack of jurisdiction;

10   200, the motion to dismiss for lack of jurisdiction; 203, the

11   emergency motion for other relief; and 211, the motion for

12   leave to file an amended and supplemental complaint.

13        And I know that defendants, you have not had an

14   opportunity to formally respond to 211, and that's why we're

15   going to talk about procedurally what are our options here.

16   Okay?

17        But let's start with 165.  It's your motion, defense, so

18   what do you want me to know?

19          **MS. O'HICKEY:**  Good morning, Your Honor.

20          **THE COURT:**  Good morning.  You can sit, you can

21   stand, you can use the podium, whatever you're most comfortable

22   with.  Okay?  All right.

23          **MS. O'HICKEY:**  Thank you, Your Honor.

24        For the motion to dismiss, Number 165, the -- the

25   arguments that we made therein because of changing factual

1    circumstances don't quite apply in the same way to the factual

2    landscape we have now.

3         **THE COURT:**  Right.  But you didn't withdraw it, and I

4    have some questions about it.  Okay?

5         **MS. O'HICKEY:**  Okay.  Yes, Your Honor.

6         **THE COURT:**  So first question is, this motion was

7    filed on May 27th, right?

8         **MS. O'HICKEY:**  Yes, Your Honor.

9         **THE COURT:**  And the first argument is that defendants

10   do not have the power to produce Mr. Abrego, right?

11        **MS. O'HICKEY:**  Correct.

12        **THE COURT:**  But by that point, the same defendants

13   had already secured an indictment against Mr. Abrego, correct?

14        **MS. O'HICKEY:**  I'm --

15        **THE COURT:**  May 21?  Your client secured an

16   indictment against Mr. Abrego on May 21st in the District of

17   Tennessee, in the Middle District of Tennessee.

18       Am I right about that?

19        **MS. O'HICKEY:**  Yes, Your Honor.

20        **THE COURT:**  So then how could you, six days later,

21   tell me you have no power to produce him, when clearly you had

22   at least plans to bring him back?  Because why else would you

23   file a criminal indictment against someone who you can't

24   produce?  It's illogical.

25       So can you explain that to me?

1          **MS. O'HICKEY:**  Your Honor, I think the discussions

2     with the foreign sovereign were still ongoing at that point.

3          **THE COURT:**  Okay.  But you're telling me, in this

4     motion, you have no power to produce him, and yet six days

5     after this motion, you produced him, right?

6          **MS. O'HICKEY:**  That's correct, Your Honor, but he was

7     still in the custody of El Salvador, in the custody of a

8     foreign sovereign.

9          **THE COURT:**  Okay.  But you had the power to produce

10    him because you did produce him.  So I'm a little bit confused

11    as to why you are saying otherwise in this motion.

12         **MS. O'HICKEY:**  I don't believe we still had the power

13    to produce him.  I think we were still in ongoing negotiations

14    with the foreign sovereign to work that out.

15         **THE COURT:**  Well, maybe you can illuminate for me how

16    this went exactly.  Because the way, from my perspective is, on

17    day -- May 25, 2025, you're telling me defendants do not have

18    the power to produce him, and, therefore, there's nothing I can

19    do in the case, I lack jurisdiction.  Those are powerful

20    arguments to say I don't have the power, because you have no

21    power.

22         Yet, at the same time, you're putting in place the power

23    of the prosecutorial arm to charge an individual who you say

24    will never come back to the United States with a crime.

25         The only way that is a logical use of our federal

1  resources is if you're going to bring him back.  Otherwise, why

2  are you charging him?

3       So, again, because of the history of this case, and

4  Ms. O'Hickey, you haven't had the pleasure of all the hearings

5  we've had, so understand that it's important to me to remember

6  the history, how can this representation be one that I can

7  credit given the procedural posture of these -- these cases

8  that were moving in parallel?

9       And let me ask it this way, too.  If what you say today is

10  changed circumstances should be taken into account, why didn't

11  you move to withdraw this motion?

12            **MS. O'HICKEY:**  We didn't move to withdraw the motion,

13  Your Honor, because in the event that the Court determines that

14  this case is not moot, then we would continue to press our

15  argument under 1252(g).

16            **THE COURT:**  Okay.  But how about this part of the

17  motion?  I mean, you tell me on the 27th of May you have no

18  power to produce him.  And then six days later, lo and behold,

19  you had the power to produce him, and you did produce him, and

20  now you're saying I lack jurisdiction because you produced him.

21       At some point, don't you have an obligation, as an officer

22  of the Court, to set the record straight to avoid this very

23  colloquy, the very concern that I have about which one is it?

24  I mean, at some point, don't you have an obligation to me to

25  say, "Judge, we had the power, we produced him, moot, we don't

1    have to deal with argument number one"?

2         **MS. O'HICKEY:**  Well, Your Honor, we -- I believe that

3    we would say that we fulfilled our obligation to the Court by

4    filing our notice and then our subsequent motion to dismiss

5    stating that this Court now lacks jurisdiction on the grounds

6    of mootness.

7         **THE COURT:**  Let me ask you, at the time you filed

8    this motion, did counsel, as officers of the court, know what

9    was in the works with regard to a criminal prosecution that led

10   to Mr. Abrego Garcia's return to the United States?  Did you

11   know that was happening?  They are your clients.

12        **MS. O'HICKEY:**  Your Honor, we were still at that time

13   in negotiations with the foreign sovereign.  The indictment had

14   been filed in tandem with those negotiations.  And while we

15   were aware that those things were proceeding, it was yet

16   uncertain what agreement would be reached with respect to the

17   foreign sovereign and how all of that would play out.

18        **THE COURT:**  Okay.  So I guess for the same reasons,

19   the second argument is also off the table, that there's a lack

20   of redressability on this Court's part because you don't --

21   he's in the custody of El Salvador.

22        Clearly he's not, right?

23        **MS. O'HICKEY:**  Right, he's no longer in the custody

24   of El Salvador, yes, Your Honor.

25        **THE COURT:**  Okay.  So that's off the table as well.

```
 1        And it's your representation to me that while you knew you
 2   were proceeding in this parallel way, what you didn't know is
 3   whether El Salvador would release him at the time you were
 4   securing this indictment; is that what you're saying?
 5           MS. O'HICKEY:  That's correct, Your Honor.  We
 6   weren't certain how El Salvador would respond or how these --
 7   the negotiations would play out.
 8           THE COURT:  But there were some negotiations that led
 9   you to believe you needed a criminal indictment to secure his
10   release?  I just want to understand it, because frankly, to
11   pursue this motion after you clearly had the -- some
12   wherewithal to bring him back is one in which I need some
13   answers, so that's why I want to understand how this all played
14   out.
15        Is it -- is what you're telling me, as an officer of the
16   Court, without getting into the negotiations themselves, that
17   the defendants believed they needed a criminal indictment in
18   order to further the release of Abrego Garcia from custody of
19   El Salvador?
20           MS. O'HICKEY:  It's hard, without getting into the
21   particular negotiations, what defendants thought that they
22   needed in order to secure his release, but I am aware that
23   the -- that the proceedings were moving in tandem and
24   negotiations were ongoing.
25           THE COURT:  Is it a fair inference, though, that you
```

1   had some control and power over this situation, given that you

2   ultimately took steps that resulted in his return?

3          **MS. O'HICKEY:**  I think --

4         **THE COURT:**  You know, is that fair?

5          **MS. O'HICKEY:**  Defendants certainly took steps to

6   facilitate his return, as this Court's injunction required.

7   Whether those were going to be successful is a separate

8   question.

9         **THE COURT:**  Is the indictment one of those steps?

10   Since we're talking about fulfilling my court order.

11          **MS. O'HICKEY:**  Your Honor, the Court --

12         **THE COURT:**  Yep.

13          **MS. O'HICKEY:**  We, of course, were undertaking steps

14   to facilitate his return.  He was under investigation anyways,

15   so if the Court is asking whether the indictment was for the

16   sole purpose of bringing him back --

17         **THE COURT:**  Was it a factor?  I mean, he wasn't under

18   investigation until April 28th, correct?  A month after this

19   case started.

20          **MS. O'HICKEY:**  That --

21         **THE COURT:**  That, I believe, has been confirmed in

22   the Tennessee case.

23          **MS. O'HICKEY:**  I don't think that's true, Your Honor.

24         **THE COURT:**  Okay.  All right.  If that's your

25   position in this case, that's noteworthy to me because I do

1  believe that your client has taken a different position in

2  front of the Tennessee court.  And I believe it's been widely

3  read out as the investigation began on April 28th.  And if my

4  memory serves me, it was confirmed by sworn testimony from a

5  DHS officer who is investigating the case.

6      So are you telling me that when that officer said the

7  investigation began on the 28th of April, he was not candid

8  with the Court?

9      **MS. O'HICKEY:**  I'm not making that representation,

10  Your Honor.  But to my knowledge, that --

11      **THE COURT:**  Okay.  Well, if it didn't start on the

12  28th, when did it start?  Because now I have real concerns, as

13  if I haven't for the last three months.  Okay?

14      But in Tennessee, we've got -- again, please, correct me

15  if I'm wrong, plaintiffs' counsel, I'm looking to you as

16  officers of the court as well, but my memory is that sworn

17  testimony in Tennessee was that this investigation, the

18  criminal investigation began on April 28.  Okay?  So hearing no

19  correction on that, what basis do you have to represent

20  something different to this Court?

21      **MS. O'HICKEY:**  I'm unfamiliar with the timeline.  I

22  can't represent to you an exact date, Your Honor, but it was my

23  understanding that he was being investigated for some time

24  before that.

25      **THE COURT:**  Okay.  But if you can't tell me when, and

1  you can't give me any facts, whatever understanding you have is

2  not based in fact.  Okay?  So I want you to be really careful

3  with me.  Okay?

4      Is what you're saying that you do not have any evidence to

5  the contrary that this case, this criminal investigation, in

6  Tennessee, began before the 28th of April?

7          **MS. O'HICKEY:**  I am unfamiliar with the timeline,

8  Your Honor.

9          **THE COURT:**  Meaning you don't have any other evidence

10  to contradict the DHS officer's testimony in this regard?  Am I

11  getting it right?

12         **MS. O'HICKEY:**  Not in front of me, Your Honor.

13         **THE COURT:**  You don't?

14         **MS. O'HICKEY:**  Not that I can produce at this moment.

15         **THE COURT:**  Well -- and in preparation for this case,

16  you know, logic would have it that I'm going to ask these

17  questions, so it wasn't as if your clients gave you any other

18  information to pass on to me.

19      Am I right?

20         **MS. O'HICKEY:**  I don't have any other information.

21         **THE COURT:**  Okay.  All right.  Okay.  So back to my

22  question.  It may not have been the sole purpose, but was the

23  indictment, in part, to help facilitate Mr. Abrego's return to

24  the United States; is that the defendants' position?

25         **MS. O'HICKEY:**  No, Your Honor, we -- he was not

1    indicted with the purpose of bringing him back.  He was

2    indicted because he was under investigation for those criminal

3    charges.

4            **THE COURT:**  I'm sorry, he was --

5            **MS. O'HICKEY:**  He was indicted because he was under

6    investigation for those criminal charges.

7            **THE COURT:**  Did it play any role in his return?

8            **MS. O'HICKEY:**  I can't represent that to the Court.

9            **THE COURT:**  Can't or won't?

10           **MS. O'HICKEY:**  I don't believe so, Your Honor.

11           **THE COURT:**  You can't.

12       Can you put on the record why?

13           **MS. O'HICKEY:**  I know that he was indicted because he

14   was being investigated for those particular crimes, and that

15   that was the reason for the indictment.  Beyond that --

16           **THE COURT:**  You have no information as to whether it

17   played any role in his return?

18           **MS. O'HICKEY:**  I do not.

19           **THE COURT:**  Did you ask your clients before coming to

20   this court?

21           **MS. O'HICKEY:**  That specific question, I did not.

22           **THE COURT:**  Yeah, well, just get any information that

23   the Court might need in terms of deciding whether your motions

24   to dismiss for mootness are really moot.  I mean, just

25   discussing the background of the case, what's transpired

1    between the last time we saw each other for today -- and today.

2            **MS. O'HICKEY:**  We certainly discussed with our

3    clients, Your Honor, events in this case.

4            **THE COURT:**  Okay.  All right.  But you have nothing

5    more for me on this.

6            **MS. O'HICKEY:**  Not on that point.

7            **THE COURT:**  Okay.  Now, you also say, though, that we

8    should discuss the third and final argument, which is that 8

9    U.S.C. 1252(g) deprives the Court jurisdiction over the case?

10           **MS. O'HICKEY:**  Yes, Your Honor.

11           **THE COURT:**  Okay.  So you're new to the team.  I

12   would assume that you have read my initial decision regarding

13   the injunction?

14           **MS. O'HICKEY:**  Yes, Your Honor.

15           **THE COURT:**  The Fourth Circuit's affirmance of it;

16   the Supreme Court's affirmance, as modified, of that; and then

17   the -- Judge Wilkinson's opinion after that when you took

18   another appeal.  I'm assuming you've read all of those, right?

19           **MS. O'HICKEY:**  Yes.

20           **THE COURT:**  I squarely addressed this issue in the

21   first motion, yes?

22           **MS. O'HICKEY:**  You did address this, yes, Your Honor.

23           **THE COURT:**  Squarely, I said 1252(g) does not deprive

24   me of jurisdiction, right?

25           **MS. O'HICKEY:**  Yes, in the context of the preliminary

1   injunction; yes, Your Honor.

2           **THE COURT:**  Well, because I have to decide whether I

3   have jurisdiction over the case, because I couldn't get to the

4   merits unless I have jurisdiction, correct?

5           **MS. O'HICKEY:**  Correct.

6           **THE COURT:**  And then the Fourth Circuit said, of

7   course she has jurisdiction, right?  That was Judge Thacker

8   said that, that -- that that is not a case which implicates any

9   discretionary authority of the DHS.  And so affirmed that I had

10  jurisdiction.

11          **MS. O'HICKEY:**  It's our position, Your Honor, that in

12  the Supreme Court and the Fourth Circuit's opinions regarding

13  the stay motions, that that wasn't a decision on the merits --

14          **THE COURT:**  Excuse me?  Say it again.

15          **MS. O'HICKEY:**  It's our position that in the Fourth

16  Circuit and the Supreme Court's orders regarding the various

17  stay motions, that they didn't address these jurisdictional

18  issues squarely, so we don't have a ruling on those particular

19  issues.

20          **THE COURT:**  Really?  Because the Fourth Circuit said,

21  quote, 1252(g) does not strip us of jurisdiction here.

22      That's jurisdiction over the case, right?  I'm -- I'm

23  reading from the first opinion that they issued.

24      Why are you saying that's not binding?  Or they didn't

25  squarely address it?  That sounds pretty square to me.

1        **MS. O'HICKEY:**  Is that from the ruling on the stay

2    motion, Your Honor?

3        **THE COURT:**  That's -- yeah, that's the ruling on

4    whether -- you squarely argued to the Fourth Circuit that we

5    shouldn't even get to the merits of this -- this injunction

6    should be kicked out because the Court doesn't have

7    jurisdiction under 1252(g).  You agree that was argued to the

8    Fourth Circuit, no?

9        **MS. O'HICKEY:**  Yes, Your Honor, but if that is -- if

10   the holding of that opinion is with respect to the stay, then

11   it's our position that that isn't a decision on the merits of

12   that argument.

13       **THE COURT:**  Okay.  Jurisdiction is not merits.

14   Right?

15       **MS. O'HICKEY:**  Yes.

16       **THE COURT:**  It's -- it's the threshold, it's about my

17   power.

18       **MS. O'HICKEY:**  Yes.

19       **THE COURT:**  It's all about the power.

20     So when the Court above me says she has the power to hear

21   the case, why would I revisit that now?  It's not she has the

22   power to enjoin the case, because that goes to the merits.

23   Right?  Correct?

24       **MS. O'HICKEY:**  Correct, Your Honor --

25       **THE COURT:**  Tell me if I'm wrong.  I'm looking to you

1  for, like, are we understanding one another?

2      **MS. O'HICKEY:**  Our position is that if the Court is

3  ruling on the stay motion, then it's limited to the stay motion

4  in that it hasn't made a jurisdictional ruling on this argument

5  with respect to the case as a whole.

6      **THE COURT:**  Okay.  This wasn't about the merits of

7  the stay, right?  The point at which the Court affirmed

8  jurisdiction was before it got to the merits of the stay.

9  Right?  Because if I didn't have jurisdiction, it would have

10 been an academic ruling.  They would have dismissed the case

11 because I don't have the power to hear it.

12     But that's not what happened, right?

13     **MS. O'HICKEY:**  That -- without having the opinion in

14 front of me, that --

15     **THE COURT:**  Wait a minute.  This is your argument.

16 You are taking up my time with an argument that has been made

17 before me, before the Fourth Circuit, maybe not expressly

18 before the Supreme Court, I don't remember.  But the last time

19 I checked, the High Court does not take cases for which it

20 believes it lacks subject matter jurisdiction.

21     A court can sua sponte dismiss a case for lack of subject

22 matter jurisdiction.  I find it hard to believe that the High

23 Court would take time in this case if it believed it didn't

24 have jurisdiction.  Okay?

25     So I'm going to read from the Thacker decision, because

1  this has got to -- like, at some point, we have to have

2  finality on some decisions.  And unless you can distinguish

3  your argument here from this, we're going to move on.  Okay?

4      This is what Judge Thacker said for the Court, "I begin

5  with the government's second argument because our first act

6  must always be to determine the existence of jurisdiction.  The

7  government argues that the district court and, thus, this court

8  lacks jurisdiction because the INA strips federal courts of

9  jurisdiction to review, quote, any cause or claim by or on

10  behalf of any noncitizen rising from the decision or action by

11  the Attorney General to," ellipses, "execute removal orders

12  against any noncitizen."

13      "But," the judge goes on, "as the Supreme Court has made

14  clear, 1252(g) strips the federal courts of jurisdiction only

15  to review the Attorney General's exercise of lawful discretion

16  to commence removal proceedings, adjudicate those cases and

17  execute orders of removal.  There are many other decisions or

18  actions that may be part of the deportation process, but the

19  jurisdictional bar applies only to those three discrete

20  actions."

21      And then they go on to find that they have jurisdiction.

22      So why are we revisiting this argument?

23          MS. O'HICKEY:  I told -- told Your Honor that it was

24  our position that if that was limited to the stay, that we

25  thought it wasn't a ruling on that particular argument.

1         But I'm happy to move on to the mootness portion.

2              **THE COURT:**  All right.  Well, there isn't any other

3     arguments with regard to 165, right?  Those are the three?

4              **MS. O'HICKEY:**  Correct.

5              **THE COURT:**  And I do find the position that

6     jurisdiction applies only to the stay to be just -- no

7     foundation in law.  Jurisdiction applies to the case.  It

8     doesn't apply to a defensive action you might take to ask a

9     court to stop proceedings.  And so to tell me that really

10    doesn't do the defense any good.

11        Okay.  So let me -- I don't need to hear from the

12    plaintiffs on this motion.  The next one, perhaps we do, but

13    this one is an easy one.

14        ECF 165 is the first motion to dismiss and the motion is

15    fully briefed.  I'm going to rule from the bench as follows:

16        You make three arguments, defendants, and none are

17    availing.

18        First, you argue that the Court lacks jurisdiction because

19    Mr. Abrego is not in U.S. custody.  And through defendants,

20    through their lawyers, have told me, the Court, in this

21    pleading, lacked the power to hear the case because defendants

22    do not have the power to produce him, end quote; ECF 165 at 6.

23        Obviously you do have the power to produce Mr. Abrego

24    because you did produce him not a week later.  So the lack of

25    custody argument, as suspected from its inception, appears

20

1    meritless.

2        I do also find problematic, at best, that the defendants,

3    the Department of Justice, working in concert with other

4    defendants, clearly had a plan, in my view.

5        You began a criminal investigation, according to the sworn

6    testimony of one of your agents, on April 28th, which was a

7    month after this case began.  And common sense would dictate

8    that the only possible defensible use of investigative criminal

9    resources would be if you eventually secured an indictment to

10   bring Mr. Abrego Garcia back.

11       And so to say that that wasn't in the works or not have

12   any further information, as officers of the court, I do find to

13   be highly problematic.

14       Because at the time the motion was filed, while it had not

15   been public, the grand jury in Tennessee had issued this

16   indictment, and we knew it was coming.  Because eventually, it

17   was unsealed, and it was unsealed on the very day, I believe,

18   that Mr. Abrego Garcia was brought back.

19       Counsel, did you know in advance that Mr. Abrego Garcia

20   was coming back?  I mean, how did you learn?

21           MR. SANDOVAL-MOSHENBERG:  Your Honor, we learned on

22   ABC News.

23           THE COURT:  Okay.  So it just blinks at reality that

24   defendants had no clue what was going on and that this wasn't

25   in parallel, and no one thought, at least common courtesy or

1  decency, to let the plaintiffs know that Mr. Abrego was not

2  only returning, but returning to be criminally prosecuted.

3      So -- but for what it's worth, the motion on this ground

4  is denied, and the defendants have all but conceded as much,

5  because of changed circumstances.

6      And for the same reason, the second argument fails when

7  the defendants, on May 27th, contended that the plaintiffs'

8  injuries aren't redressable, because Mr. Abrego is in the

9  custody of El Salvador, which is a separate sovereign not

10 before this Court.

11     And so defendants argued that this -- it was speculative

12 whether an order to facilitate Mr. Abrego's return would be

13 effective, and yet, defendants took steps contrary to that

14 argument knowing eventually it would likely go nowhere because

15 Mr. Abrego was indicted, and eventually, five days later,

16 brought back.  At no point did defendants seek to withdraw this

17 argument, which still remains a question in the Court's mind.

18     Third and final argument is one that has been well tread,

19 and for once and for all, it is put to bed.  The defendants,

20 again, argue that pursuant to 8 U.S.C. 1252(g), this Court is

21 deprived of jurisdiction over the case.  As we've discussed,

22 counsel, the argument has been made to me and rejected.  It was

23 argued to the Fourth Circuit and rejected.

24     I don't recall whether it was specifically argued to the

25 Supreme Court, but the fact that the Court exercised its

1  jurisdiction and reached the merits of the scope of my order

2  certainly is, at a minimum, an implicit acknowledgement, but I

3  would say explicit, of this Court's power to hear the case.

4      So the argument is, once again, rejected for the same

5  reasons already stated, and the motion to dismiss at ECF 165 is

6  denied.

7      Now we move on to ECF 200, which is the second motion to

8  dismiss.

9      Ms. O'Hickey, are you arguing this one as well?

10      **MS. O'HICKEY:**  Yes, Your Honor.

11      **THE COURT:**  Now, the way I'm reading this motion is,

12  it is now that Mr. Abrego is back, plaintiffs have been

13  accorded all the relief that they have asked for, and so the

14  case is moot.

15      Am I getting that right?

16      **MS. O'HICKEY:**  That's correct, Your Honor.

17      **THE COURT:**  Okay.  Tell me a little bit more about

18  why you believe that to be the case.

19      **MS. O'HICKEY:**  Okay.  Yes.

20      Plaintiffs bring five claims in their original complaint.

21  At the end of each claim, the -- they request that the Court

22  immediately order defendants to take all steps reasonably

23  available to them to return Plaintiff Abrego Garcia to the

24  United States.  They have now received that complete relief.

25  Their prayer for relief reflects the same central request, that

1    he be brought back to the United States.

2        Defendants can do no more to return him to the United

3    States at this point.  And for that reason, there's no more

4    ongoing controversy because they have received the relief that

5    they requested.

6        **THE COURT:**  So what about the injunction, which, as

7    modified, required Mr. Abrego to be returned to the status quo

8    ante, that is from, at least, I think, a fair interpretation of

9    what the Supreme Court said, which is to return him, to restore

10   him to where he had been before he was unlawfully removed to

11   El Salvador?

12       The plaintiffs argue that injunction means returning to

13   Maryland, essentially the status quo ante being where he was on

14   the day he was unlawfully arrested and detained and taken to

15   the very country he shouldn't be removed from.

16       What's -- and you may -- I'm sure you disagree with that,

17   but isn't that a live question that I have to answer, which

18   does mean the case is still a -- a live one?

19       **MS. O'HICKEY:**  I don't think so, Your Honor.  I think

20   we have to look to the relief that plaintiffs requested in

21   their complaint, and they never once in their complaint

22   requested that he be returned to Maryland.

23       Moreover, in their TRO papers for their second TRO before

24   this Court, where they discussed the status quo ante,

25   specifically they say since the controversy in this matter

1    arose when defendants removed Mr. Abrego Garcia from the United

2    States, the last uncontested status between the parties was one

3    in which Mr. Abrego Garcia was present in the United States.

4        So even in their TRO papers, they requested his return to

5    the United States, and only now are they asserting that he

6    should be returned to Maryland.

7        **THE COURT:**  Okay.  They have not pressed the issue

8    that I should fulfill all aspects of my order to return him to

9    the status quo ante so that he can proceed the way he was when

10   he was unlawfully arrested.  I mean, he was on an order of

11   supervision, and he was being supervised by ICE in the

12   Maryland -- in the Baltimore district, right?  I'm not sure if

13   I'm using the right words.  But Mr. Molina, you can probably

14   help me out.  But it was the -- right?  It was that

15   jurisdiction that was having him come in every year for a

16   checkup?

17       **MR. MOLINA:**  That is correct, Your Honor.

18       **THE COURT:**  Okay.  So isn't the status quo ante to

19   restore him to that procedural and substantive posture?  And

20   can't I only do that if I send him back to Maryland or order he

21   be returned here?

22       **MS. O'HICKEY:**  Your Honor, I think plaintiffs, they

23   are the masters of their complaint, and the relief that they

24   requested in their complaint was that he be returned to the

25   United States.

1          **THE COURT:**  Then let's go to the complaint.

2      You would agree that I do have to view the complaint as

3  take all the facts as true in the light most favorable to the

4  plaintiffs, right?

5          **MS. O'HICKEY:**  Yes; on the motion to dismiss

6  standard, yes.

7          **THE COURT:**  Yeah.  For questions of a facial

8  challenge to jurisdiction, right?

9          **MS. O'HICKEY:**  Correct.

10         **THE COURT:**  Do they not, in the complaint, lay out

11  what, in their -- in -- taking it as true, an unlawful, illegal

12  arrest that happened in Maryland which took him away from the

13  lawful supervision of Immigration and his family, where he had

14  lived for many, many years, worked, and that that was part of

15  the cause of -- the causes of action and animate many, if not

16  all, of the claims?

17     So while they may not have specifically said "return to

18  Maryland," do I really hold the plaintiffs to such a

19  restrictive reading of the complaint?  Wouldn't that, like,

20  turn the burden on its head?  Like, turn the presumption on its

21  head?  What do I do with all those allegations that at least

22  plausibly aver that his injuries were -- began in Maryland when

23  he was arrested?

24         **MS. O'HICKEY:**  They do allege, Your Honor, that he

25  was living in Maryland at the time that he was arrested and

1  removed.  However, they never once requested he be returned to

2  Maryland, so defendants do not believe that the Court needs to

3  afford them any relief separate from what they have requested.

4      **THE COURT:**  How about the declaratory relief?  And

5  the reason why I ask about that is while I know that the law

6  says I can't just issue a declaration that you violated the

7  law, that declaratory relief has to go further, but in a

8  situation in which the defendants have very publicly proclaimed

9  that you will initiate further immigration action, query what

10  that's going to be, we'll get to that in a little bit, but how

11  can a declaration which is that you've historically very

12  specifically violated the INA not be relevant to future

13  proceedings?

14      And not just you violated the INA, but very specifically

15  how you did it, which is the declaration that, I think, would

16  advance the plaintiff cause of action later, you know, down the

17  road.

18      So what do I do with the request for declaratory relief in

19  this matter?

20      **MS. O'HICKEY:**  I think it's as Your Honor alluded to,

21  they don't have the -- they lack standing to seek a declaratory

22  judgment regarding class actions when there's no injunctive

23  relief that can be ordered because they have already received

24  all the relief that they requested.

25      **THE COURT:**  So we really come back to whether all of

1  the injunctive relief has been accorded given that there is a

2  provision in the order that says he must be restored to the

3  status quo ante.

4           **MS. O'HICKEY:**  I think it does turn on whether the

5  injunction has been fully complied with, which the defendants'

6  position is that it has because they received the relief.  And

7  even the second portion that requires that his case be handled

8  as if he had never been removed to El Salvador, it's currently

9  being handled that way.  He's receiving all the process to

10 which he is due, and the injunction has been fully complied

11 with.

12          **THE COURT:**  See, I'm not -- I don't have the Supreme

13 Court opinion in front of me.  I can get it, or the plaintiffs,

14 I'm sure, will request me.  But I don't think it's as narrow as

15 if he hadn't been removed to El Salvador.  It's as if he had

16 not been.  And I read that to mean you got to put him back to

17 where he was before you took unlawful action.

18     He was on supervision.  He was complying with supervision.

19 He had a valid withholding of removal order.  And you have to

20 restore him to that place and then take whatever lawful action

21 you may.

22     But you can't drop him, you know, in the -- somewhere else

23 where he's not in that first position and say you fulfilled the

24 order.

25     I think that's -- so for purposes of jurisdiction, you

1   might be right in the end, right?  But there's jurisdiction,

2   because that's a live controversy.  Plaintiffs say you haven't

3   accorded Mr. Abrego all the relief that you ordered, Judge, and

4   you haven't accorded all the relief that the complaint

5   contemplates.  Defendants say I have.  But that gives me

6   jurisdiction to decide that question, right?

7        **MS. O'HICKEY:**  I don't think so, Your Honor.  The

8   language of the particular thing -- I'll have to find it here,

9   but it says something like that his case must be handled as if

10  he had not been unlawfully removed to El Salvador.

11       **THE COURT:**  It says to facilitate Abrego Garcia's

12  release from custody in El Salvador and to ensure that his case

13  is handled as it would have been had he not been improperly

14  sent to El Salvador.

15       Isn't a fair reading of that, the way the plaintiffs want

16  me to read it; your reading is no, it's not as -- as

17  particularized as the plaintiffs say.  That may be, but that's

18  the live case in controversy, whether you've exhausted my order

19  or not, and I haven't decided that yet.  I suppose that's

20  another way to put it, is you've -- in the alternative, you

21  asked me to dissolve the injunction, and I'm not sure

22  dissolution of the injunction is proper at this juncture

23  because of this.

24       **MS. O'HICKEY:**  That's what we're asking Your Honor to

25  decide now on our mootness motion because it's our position

29

1  that the injunction has been fully complied with.

2          **THE COURT:**  Right.  And you do, in the alternative,

3  ask for dissolution of the injunction, right?  ECF 200.

4          **MS. O'HICKEY:**  Yes, Your Honor.

5          **THE COURT:**  Which really kind of highlights the

6  point.  If I'm still struggling with whether you had fulfilled

7  the injunction completely, then there's jurisdiction over the

8  case, because I have to decide -- I have to decide that issue.

9  And then if I find that I've exhausted -- I've given all the

10  injunctive relief that's due, then we go from there.

11      But at a minimum, I haven't decided that yet.

12      Now, your second argument is, all they ask for, the

13  plaintiffs do, in the complaint, is return to the United

14  States, and we've done that.  And so it doesn't really matter,

15  I guess, what the injunction says if you've accorded all the

16  relief requested.

17      Am I getting that right?  Is that the sort of other

18  argument you're making, just so the plaintiffs can respond

19  accordingly?

20          **MS. O'HICKEY:**  I'm not sure I understand separating

21  it out like that, but it is our position that the injunction

22  was designed to facilitate the relief they requested in their

23  complaint, and that we've now fully complied with the

24  injunction to -- which has provided them all the relief that

25  they have requested in their complaint.

1          **THE COURT:**  Let me ask it a different way.

2      If I find that the injunction, again, because a

3  preliminary injunction, it's an extraordinary remedy, it's to

4  preserve the status quo while the case proceeds.  In this case,

5  it was a remedy requested because of this just, you know, some

6  might say, outrageous decision to send Mr. Abrego Garcia to

7  CECOT in El Salvador without any authority.

8      So the injunction could be to, again, just preserve the

9  status quo, get him back to where he was so that we can then

10  assess the merits of the complaint.

11      You're -- you're basically saying that's all the

12  defendants asked for, was to come back, and there really isn't

13  any other -- let me -- let me say it this way maybe,

14  Ms. O'Hickey, and you can tell me why it's wrong.

15      Your reply especially sounds as if this is a

16  garden-variety mistaken removal case where, oh, you know, it

17  happens, mistakes are made, and people get sent back to the

18  very country that they should have had more process to

19  challenge.

20      And since we've brought him back, no harm, no foul.

21  Right?  Isn't that kind of the -- that's at least the tone of

22  the reply.  Am I kind of getting the argument right?

23          **MS. O'HICKEY:**  It certainly is our position that that

24  was what they requested.  He has been returned, and that

25  there's no further action --

1          **THE COURT:**  Necessary?

2          **MS. O'HICKEY:**  Yeah.

3          **THE COURT:**  Okay.  Anything else you want to add

4   before I turn to the plaintiffs on this motion?

5          **MS. O'HICKEY:**  It sounds like Your Honor has had a

6   chance to review the reply.  Is there anything specifically you

7   would like me to address in our reply?

8          **THE COURT:**  Not at this juncture, but you'll

9   certainly have the opportunity to respond to whatever the

10  plaintiffs say.

11         **MS. O'HICKEY:**  Okay, Your Honor.

12         **THE COURT:**  All right.  Great.  Mr. Rossman?

13         **MR. ROSSMAN:**  Your Honor, Andrew Rossman, and I'm

14  going to begin -- and with Your Honor's permission, may I take

15  the --

16         **THE COURT:**  Sure, of course.

17         **MR. ROSSMAN:**  I'm just accustomed to this style.

18     Where I fall short, Mr. Cooper is going to assist me,

19  given the play of all the different motions.  I hope that's

20  acceptable to the Court.

21         **THE COURT:**  Yeah.

22         **MR. ROSSMAN:**  So we're loathe -- given all that the

23  Court has done, we're loathe to ask the Court for more, but

24  more is necessary as the job is unfinished.

25     And what we -- I think Your Honor alighted on precisely,

1    you know, the right language in the Supreme Court's opinion.

2    And I'll turn back to where we started, which is Your Honor's

3    preliminary injunction order itself, which was entered on

4    April 4, I believe, if my memory is right.  And Paragraph 3 of

5    the preliminary injunction order --

6            THE COURT:  Can you give me the ECF number, so I see

7    exactly where you are?  I don't --

8            MR. ROSSMAN:  21.  It's the -- I'm sorry, it's 21 on

9    the ECF, Your Honor.

10           THE COURT:  Got it.  And you're at Paragraph 4?

11           MR. ROSSMAN:  Paragraph 3, Page 2.

12           THE COURT:  Okay.  Got it.

13           MR. ROSSMAN:  Where the Court wrote:  This

14   preliminary relief is used to restore the status quo and to

15   preserve Abrego Garcia's access to due process in accordance

16   with the Constitution and governing immigration statutes.

17       And there remains a live controversy in this case today,

18   and the case, therefore, is not moot, and the Court continues

19   to have jurisdiction, because the government has not assured

20   the plaintiff that the government will refrain from another

21   illegal removal of the plaintiff.

22       So in two respects, there is a very live, critical

23   controversy before the Court.  One is we do not have the

24   complete fulfillment of the injunctive order as affirmed by the

25   Supreme Court, because Mr. Abrego Garcia has not been returned

1    to Maryland.  And that was the status quo ante, and that would

2    be the complete fulfillment of his rights under -- under the

3    Court's order.

4         **THE COURT:**  Do you agree with the government, though,

5    that the only relief you requested that is actionable at this

6    point is to return him to the United States?  In the complaint.

7         **MR. ROSSMAN:**  So I have two points on that, one

8    substantive and one procedural, Your Honor.

9         The substantive point, Your Honor, if we're bound by the

10   existing complaint, then Your Honor is quite right, that we're

11   entitled to all inferences in our favor, including in the

12   prayer, where we ask for other such or further different relief

13   as is necessary, as is customary in the prayer.

14        But the complaint itself, also, Your Honor, seeks in

15   Paragraph A of the prayer, a declaration that defendants'

16   actions as set forth herein violated the laws of the United

17   States and the Fifth Amendment to the U.S. Constitution.  That

18   remains a critical protection for the plaintiff here because

19   the threat of removing Mr. Abrego Garcia again without due

20   process is real.

21        And on that point, Your Honor, we can typically look to

22   what the government has told the Court in the Middle District

23   of Tennessee in the criminal proceeding, where they gave a

24   fairly astonishing proposition, we cited in our emergency

25   motion itself, at Docket 203.  And it's 203-3, which is

1    Exhibit C to that motion.  We actually have the government's

2    brief filed in that case.

3         And the government said, in -- in seeking a stay of the

4    order finding that Mr. Abrego Garcia should not be detained by

5    the criminal authorities in Tennessee, the government writes,

6    should this Court not order a stay, and the defendant is moved

7    to ICE custody and deported from the United States, the

8    prosecution would lose the meaningful opportunity to try its

9    case.

10        It goes on, how fast the defendant could or would be

11   deported remains to be seen, and concludes in that paragraph,

12   yet these immigration proceedings exist as real, potential,

13   substantial and irreparable harm to the United States.

14        Putting aside the irony of that statement, that the United

15   States needs to be protected from itself, as a district court

16   judge observed in the Middle District of Tennessee, putting

17   that to the side, what the United States has said, has

18   represented to the Court in Tennessee, is that the moment

19   Mr. Abrego Garcia is released from the custody of the criminal

20   authorities, released from the U.S. Marshals' custody, he's at

21   immediate, real, potential, substantial risk of being deported

22   again.

23        And it's uncertain to us, and perhaps the government can

24   clarify this, whether their position is that they intend to

25   remove him again to El Salvador, which would be plainly

1    illegal, because in violation of withholding order in 2019.

2    And that's not my word illegal, that's the United States

3    Supreme Court's word illegal, okay?  One.

4         Two, they have raised the spectre in a motion before this

5    court that they may instead remove him to a third country.  And

6    it is our proposition, and we think it's well-established

7    Supreme Court law, we obviously would like to have that

8    protection in this particular case, to protect my client's

9    interest.  But it's our proposition that Mr. Abrego Garcia

10   cannot be removed to a third country without notice and an

11   opportunity to be heard.  And that opportunity to be heard

12   should be in front of a court.

13        **THE COURT:**  Well, I don't even know yet, and I'll ask

14   the defense of this, because I have nothing in front of me that

15   there's any immigration proceedings pending, and that's the

16   rub, because the first time around, Mr. Abrego was removed

17   without a scrap of paper from Immigration supporting that

18   decision.

19        So if today, we're in the same position, which is lots

20   of -- lots of readouts to the world about what's going to

21   happen, some doubling back on each other and inconsistent with

22   one another, but no real paper.  Like, no notice of removal to

23   a third country, or no notice of re-initiation of, you know,

24   termination of withholding of removal.  I think that's the

25   title.

1    If I don't have a paper, then what am I to presume other

2    than the risk of reoffending is real?  And under the voluntary

3    cessation doctrine?  That's where I'm kind of living is, the

4    voluntary cessation doctrine, the -- the government hasn't met

5    the burden, the defendants haven't met the burden.

6        **MR. ROSSMAN:**  I don't think that is quite -- quite

7    exactly right, Your Honor.  I think the threat is real, they

8    have indicated it's real, and the risk the government returns

9    to its old ways, in the language of one of the Supreme Court

10   cases that we cite, Your Honor.

11       We do need protection from the government waking up

12   tomorrow, and upon Mr. Abrego Garcia's release from criminal

13   custody in Tennessee, immediately deporting him to somewhere

14   where they haven't even identified yet, pursuant to a process

15   that they haven't identified, if any process at all.  And

16   that's fundamentally, we think, still a live, critical

17   controversy.

18       **THE COURT:**  Can I ask you, and maybe this will be

19   your bailiwick, Mr. Rossman, or one of your co-counsels', but I

20   want to start the conversation, if a person, in the ordinary

21   course, is now facing removal to a third country, in a similar

22   procedural posture, right?  So not at the time that withholding

23   of removal is granted, but rather five years later, what does

24   that look like in the ordinary course?  I mean, is there a

25   notice that is usually given to the -- to the person facing

1 that?

2        **MR. ROSSMAN:**  On the mechanics, I'm going to phone a

3 friend, Your Honor.  But I would just observe, before I turn it

4 over, I would observe that the *AARP* case, the United States

5 Supreme Court case, did find that no person, no person could be

6 removed without notice and an opportunity to be heard.

7        **THE COURT:**  Some notice, something.

8        **MR. ROSSMAN:**  Some notice.

9        **THE COURT:**  Right.

10        **MR. ROSSMAN:**  So we think that's the constitutional

11 point.

12     But in terms of the immigration mechanics, I would ask

13 Mr. Sandoval --

14        **THE COURT:**  Yeah, it doesn't have to be lengthy,

15 Mr. Moshenberg, but just so I understand what it looks like

16 when it's done in the ordinary course.

17        **MR. SANDOVAL-MOSHENBERG:**  Certainly, Your Honor.

18     The government's current position is that as long as they

19 have received assurances from a country that an individual will

20 not be tortured in that country, they can put a person on a

21 plane to that country with no notice whatsoever.  And that is

22 their position in light of the Supreme Court stay of the

23 nationwide class action in the *DVD* case.  Obviously, we

24 disagree with that.

25     Mr. Abrego Garcia, the last time he was put on a plane,

1   they didn't know where that plane was going until it landed at

2   the airport in El Salvador.  The sum and substance of what

3   we're trying to do today is to prevent that from happening a

4   second time.

5          **THE COURT:**  So in the ordinary course, before *AARP,*

6   you, as an immigration attorney, if you had a client that had

7   been on release, as Mr. Abrego was, and then, you know, the

8   client walks into your office, or a family says the DHS is

9   trying to remove him to a third country, what -- how would that

10  case unfold?

11         **MR. SANDOVAL-MOSHENBERG:**  Well, Your Honor, this

12  was -- as we explained in our amended complaint, this was

13  extraordinarily rare.  It happened in only about 1.6 percent of

14  cases of people granted withholding of removal were ever

15  removed to a third country, and that includes dual nationals,

16  right?  That includes cases in which they later determined that

17  someone's, you know, mother's mother was a citizen of Honduras,

18  and so, therefore, they were a national of Honduras.

19      So I had -- in my 18 years of practice, I had one such

20  case prior to January of this year.

21      There have been several cases before the District of

22  Maryland in which individuals were -- in this position were

23  arrested by ICE, out of the Baltimore field office, for

24  third-country removal.  And other than the -- through the *DVD*

25  preliminary injunction out of Massachusetts, which did require

1   notice, it -- you know, in no such case did we receive any

2   particularized notice.  And that's why this Court was being

3   flooded with TROs for a period of time.

4           THE COURT:  Although, I will note that at least in

5   one case we had, there was a notice that was given.  There was

6   actually a form that was used to say pursuant to this

7   authority, we're taking you into custody because we're removing

8   you to a third country.

9           MR. SANDOVAL-MOSHENBERG:  Yes, Your Honor.  That was

10  the notice -- I think I know which case you're referring to,

11  and that was the notice specifically under the *DVD* preliminary

12  injunction.

13      But I had several cases within the past few months in

14  which individuals were taken into custody -- individuals with

15  prior grants of withholding of removal were taken into custody

16  and given a notice of revocation of their order of supervision,

17  which didn't even happen here.

18      But leaving that aside, were given a notice of revocation

19  of the order of supervision which says DHS intends to remove

20  you to a third country, and didn't even designate which

21  country.

22      In the end, our contention is that they need to name a

23  specific country and then given a reasonable period of time for

24  him to seek protection as to that country.

25          THE COURT:  And the only reason we're having this

1   conversation is because when we had our last recorded status,

2   the government -- defendants represented, through counsel, that

3   they were seeking removal to a third country but didn't know

4   when.

5           **MR. SANDOVAL-MOSHENBERG:**  Your Honor, that was the

6   very first time in either of the two district court actions,

7   either before this Court, or before the Middle District of

8   Tennessee, in which any representative of the government

9   mentioned the possibility of third-country removal, that's

10  right.

11          **THE COURT:**  Up until then, the only public readout is

12  Mr. Abrego would return to El Salvador once he's convicted in

13  the criminal case?

14          **MR. SANDOVAL-MOSHENBERG:**  Yes, that's both -- you

15  know, there's statements to the press, but, of course, we leave

16  those aside.  But their filings in the Middle District of

17  Tennessee were all about, you know, we're going to get this

18  conviction and we're going to re-deport him to El Salvador.

19      Thank you, Your Honor.

20          **THE COURT:**  All right.  Thank you for that.

21      Mr. Rossman?

22          **MR. ROSSMAN:**  Yeah, all I would say before I pause at

23  this moment on this motion, Your Honor, is the government can

24  clarify all of this and make a further ruling unnecessary if

25  the government would in a binding way stipulate to the due

1    process rights that I think we all believe that Mr. Abrego

2    Garcia is entitled to.

3         So if the government is willing to say that upon his

4    release from detention, that he will be brought back here to

5    Maryland, if the government is willing to say that upon his

6    release, they will not seek to remove him again without notice

7    and an opportunity to be heard in a court, then we wouldn't

8    have a case or controversy.  But that's not the position -- as

9    I understand it, that's not the position that they are willing

10   to take, or they can stand up and clarify.

11        **THE COURT:**  And so I understand it, Mr. Rossman.  I

12   think -- I mean, in my view, if the defendants were willing to

13   do that, it would be very limited to the facts of this case

14   because of the historic error that was done.  In other words,

15   it doesn't bind the defendants anywhere else except here.

16        **MR. ROSSMAN:**  It could be, that's right, Your Honor.

17   We could reach a stipulation that applies to one case.

18        **THE COURT:**  And that is, under the voluntary

19   cessation doctrine, one way to moot for sure an issue, right?

20        **MR. ROSSMAN:**  It could be, if they were willing to do

21   that in a binding way, Your Honor.

22        **THE COURT:**  Okay.  Anything else?

23        **MR. ROSSMAN:**  Not for the moment.

24        **THE COURT:**  All right.  Ms. O'Hickey?

25        So this does raise the voluntary cessation doctrine, and

 1   how one -- you know, what the plaintiffs' views are on it, and

 2   how it can really be put to bed.

 3        Do you have anything to add?

 4        **MS. O'HICKEY:**  So my colleague is going to address

 5   further.

 6        But first, regarding voluntary cessation, I would say,

 7   Your Honor, that ordinarily, the voluntary cessation doctrine

 8   concerns a particular policy that the government ceases

 9   complying with or enforcing.

10        Here, there's no -- the government doesn't have a policy

11   that it stopped enforcing.  It made an isolated error in this

12   case.

13        **THE COURT:**  No, but the Fourth Circuit has said it's

14   not a policy, it's not confined to a policy; it says wrongful

15   behavior.  When there is wrongful behavior, that now the

16   defendants have ended that challenged policy or practice --

17   okay? -- then the Court -- well, first, you bear a formidable

18   burden.  It's a formidable burden of showing that it is

19   absolutely clear the alleged wrongful behavior could not

20   reasonably be expected to recur.  And you have to satisfy that

21   burden.

22        So maybe I can ask it this way:  How have you satisfied

23   the burden?  Just by merely bringing Mr. Abrego back, or is

24   there something else you've done?

25        **MS. O'HICKEY:**  Your Honor, yes, we have acknowledged

1    that this was an error, and we have now remediated that error

2    and have no intention of making that error a second time.

3            **THE COURT:**  You know that your own clients have said

4    the opposite to the world, right?  Repeatedly.  "No error

5    here," "Not a problem," "Deserves to be right where he is."

6        So I understand that you, as an officer of the Court, is

7    acknowledging the error, and I think that's wise, but I don't

8    believe your clients have taken that position of acknowledging

9    the error.

10           **MS. O'HICKEY:**  To the extent Your Honor is referring

11   to statements that the plaintiffs have made in their

12   papers from --

13           **THE COURT:**  You mean the defendants have made to the

14   world?  Like, in interviews and Senate hearings and things like

15   that?

16           **MS. O'HICKEY:**  Well, have -- if -- if Your Honor is

17   talking about the Attorney General's statements that he will be

18   returned to El Salvador, I think those statements are recorded

19   out of context because, of course, if he were to be returned to

20   El Salvador, he -- we would have to reopen immigration

21   proceedings and the withholding of removal would have to be

22   terminated.  Of course that hasn't happened yet.  And the

23   government has every intention of providing Mr. Abrego Garcia

24   with all the process which he is due.

25           **THE COURT:**  Okay.  All right.  But you're saying now

1    that because you have acknowledged the error and brought

2    Mr. Abrego back, that that's enough to sustain your formidable

3    burden, that you won't do it again?

4        I mean, again, if voluntary cessation means anything, it's

5    got to be more than just ending the historic bad conduct;

6    otherwise, why would there be any burden at all?  You just have

7    to stop and then we take your word for it.

8        But the law says something different, it says you have to

9    give a showing, you have to show me.  And you can satisfy the

10   burden -- and I'm reading from *Porter v. Clarke,* you can

11   satisfy the burden by entering, for an example, an

12   unconditional and irrevocable agreement that prohibits the

13   defendant from returning to the challenged conduct.  Or in the

14   case of a governmental entity, where the entity has not

15   asserted its right to enforce the challenged policy at any

16   future time.

17       I'm not reading that restrictive to just a policy, and if

18   it were, you had the policy of removing Abrego without lawful

19   authority.

20       So either way, it's -- it's conduct that was historically

21   wrong, you've acknowledged it, but what other showing have you

22   made that you won't do it again in the future?

23           **MS. O'HICKEY:**  Your Honor, it's our position that

24   this was an isolated mistake, and that we engaged in

25   substantial efforts to remediate the mistake, and that we have

1    no intention of --

2         **THE COURT:**  For three months, your clients told the

3    world they weren't going to do anything to bring him back.

4    Doesn't that matter?  I mean, the President said it in two

5    interviews.  Defendant Noem said it.  Arguably Defendant Bondi

6    said it.

7         Like, am I really supposed to ignore all that and say,

8    well, no, we were -- all along, we were in good faith trying to

9    bring Mr. Abrego back?  I mean, isn't that relevant to the

10   voluntary cessation doctrine?

11        **MS. O'HICKEY:**  I don't think so, Your Honor.  He's --

12   he's now back.  We've acknowledged the error and have corrected

13   the error.

14        **THE COURT:**  So in a -- let's just take a

15   garden-variety Title VII case, someone is being discriminated

16   against in the workplace, and they stop discriminating, but

17   they tell the world they are going to keep on discriminating.

18   The voluntary cessation doctrine should just mean that the case

19   is dismissed?  It's moot because they stopped for a day or so

20   their discriminatory ways, but they told the world they were

21   going to keep doing it?  I mean, you see what I'm saying?

22   Like, how is that not relevant to this inquiry?

23        **MS. O'HICKEY:**  Your Honor, I think this situation is

24   unique.  We have acknowledged that this was an administrative

25   error.  And the government doesn't have a policy of committing

 1    administrative errors in this regard, and so --

 2            **THE COURT:**  Do you realize that you're co-counsel at

 3    other hearings, and I'm not sure if it was you, Mr. Guynn, or

 4    Mr. Ensign, that I have been told by lawyers representing the

 5    defendants that there was no error.

 6        I was told there was an error by Mr. Reuveni.  We talked

 7    about it at the first hearing.  And then at subsequent

 8    hearings, I was told no error.  Now I'm being told we

 9    acknowledge from the beginning there was an error.

10        Okay.  That's not going to persuade me.

11        How about we talk about Mr. Rossman's suggestion?  Is

12    there any appetite from the defendants to enter into any sort

13    of agreement about how things will proceed so that it truly is

14    mooted?  It also would address the motion for emergency relief,

15    I believe.

16            **MS. O'HICKEY:**  I'm sorry, what was that, Your Honor?

17            **THE COURT:**  I said it might also address the

18    emergency motion for other relief, which we'll get to.  But in

19    other words, if there is an appetite for a binding agreement,

20    then we may have some room to wrap things up, but you tell me.

21            **MS. O'HICKEY:**  We're always open to meet and confer,

22    but they haven't requested that from us on this particular

23    issue, so we haven't had the opportunity to consider it.

24            **THE COURT:**  Then you haven't offered it either,

25    knowing that -- I mean, you haven't offered it either, fair?

 1          **MS. O'HICKEY:**  We have not.

 2          **THE COURT:**  Okay.  All right.  Well, you tell me what

 3    you want to do, then, because I don't find that at this moment

 4    the case is moot.  And I'll read my order in, but I -- I'm open

 5    to the notion that if you come to a binding agreement, an

 6    irrevocable agreement that really deals with the notice issues

 7    and the due process issues, that doesn't mean I'm at all

 8    sticking my nose in where it doesn't belong.  In other words,

 9    if you intend -- and we'll talk about this in a minute, you

10    intend to proceed on third-party -- third-country removal

11    grounds, or if you intend to proceed on terminating withholding

12    of removal at some point, that's not my jurisdiction.  I just

13    need to assure that you're doing it lawfully, that you start

14    the process lawfully.  That's it.

15      Understood?

16          **MS. O'HICKEY:**  Your Honor, it's the defendants'

17    position that because the injunction in our position has been

18    fully complied with, that this Court, in fact, doesn't have

19    jurisdiction to consider whether any future proceeding proceeds

20    in any particular manner.

21          **THE COURT:**  Okay.  Well, then it sounds like I need

22    to address this motion, and then you can go from there.

23    Because unless you get a ruling on that, then it sounds like

24    your position still remains -- we don't get it out of the box

25    because the plaintiff has been given all relief he sought.

1          Am I right about that?  Okay.

2          Okay.  Then let me address ECF 200, which is the second

3    motion to dismiss.  Again, I'm going to read my ruling into the

4    record.

5          Defendants separately argue that the case is moot because

6    they have accorded all relief by returning Mr. Abrego to the

7    United States, thus, they say, quote, there's no longer a live

8    controversy, and plaintiffs' claims are moot.

9          They quote, *Friedman's, Inc., v. Dunlap,* 290 F.3d 191,

10   197, Fourth Circuit, 2002.  And I am reading from the Fourth

11   Circuit case *Ross v. Reed,* 719 F.2d 689, 693, Fourth Circuit,

12   1983.  Quote, to be justiciable, under Article III of the

13   Constitution, a conflict between the litigants must present a

14   case or controversy both at the time the lawsuit is filed and

15   at the time it's decided.  As Mr. Abrego rightly points out,

16   the controversy is not over simply because defendants have

17   returned him to the United States.

18         First, the plaintiffs are correct that the scope of

19   injunctive relief contemplates return to the status quo ante,

20   that is, arguably return to Maryland to the last place

21   Mr. Abrego had been before his unlawful arrest and unlawful

22   detention and when he was on supervised release with

23   Immigration lawfully pursuant to the INA and its implementing

24   regulations.  That relief has not yet been accorded, so this

25   Court can't conclude that all aspects of injunctive relief have

1    been.

2        And to the extent that there is actually a live

3    controversy over whether the scope of the injunction

4    contemplates return to Maryland, well, then that makes the

5    point, that the case isn't over until I resolve that.

6        So in the alternative, when you ask me to dissolve the

7    injunction, I'm taking that part of the motion under

8    advisement.  I'm not going to reach that, because I do need to

9    think more deeply about that.

10        Second, the risk of future violations is not -- is not off

11   the table.  Mr. Abrego alleges in his -- in his complaint, and

12   what has now been conceded, was deportation in error.  I would

13   call it unlawful.  And he seeks declaratory and injunctive

14   relief which would bar unlawful deportation, essentially.

15        That's what you're asking me to find, is that he was

16   unlawfully deported without any authority, and that this is

17   precisely because currently Mr. Abrego has a lawful, valid

18   withholding-of-removal order to El Salvador.  And simply

19   because the government has rewound that challenge practice

20   today alone does not deprive the federal court of its power to

21   determine the legality of the practice.

22        And I'm citing you to *Porter v. Clarke,* 852 F.3d 358, 363,

23   Fourth Circuit, 2017.  Quote, if it did, the courts would be

24   compelled to leave the defendant free to return to its old

25   ways.

1        And that quote comes from *Friends of the Earth, Inc., v.*

2   *Laidlaw Environmental Services, TOC, Inc.,* 528 U.S., 167, 189,

3   2000.  When a party claims that it voluntarily ended the

4   challenged policy or practice, the Court must consider whether

5   the cessation is a temporary alteration, quote, questionable

6   behavior to evade judicial review, or whether a permanent

7   change that obviates the need for judicial intervention.

8        And that comes from *Porter.*

9        In this context, the defendant bears, quote, a formidable

10  burden of showing that it is absolutely clear the allegedly

11  wrongful behavior could not reasonably be expected to recur.

12       Also from *Porter* at 366, quoting *Laidlaw.*

13       The defendant may satisfy the burden by entering, for an

14  example, an unconditional and irrevocable agreement that

15  prohibits it from returning to the challenged conduct, or in

16  the case of a governmental entity, where that entity has not

17  asserted its right to enforce a challenged policy at any future

18  time.

19       Here, in many ways, we have the opposite.  We've got --

20  despite the defendants having returned Mr. Abrego to the United

21  States, we have certain representations that, upon conviction,

22  Mr. Abrego would return to El Salvador.  That's the very

23  country in which he's categorically barred as of today.

24       There's also representations through counsel that, no, he

25  will be returned to a third -- he will be deported to a third

country, but we don't have a time and we don't have a place,

and we don't have any -- most fundamentally, I have no document

which suggests that either of those actions are imminent, are

lawful, and are clear.

    And so what I'm left with is a record that despite these

representations that Mr. Abrego will be removed, no lawful

basis to do it.  And what I mean by that is, in the ordinary

course, we've all seen them.  There's a notice of removal to a

third country, or there is a -- there is a notice pursuant to

the INA and the regulations that apply that termination of

withholding is imminent or will proceed.

    I don't have anything in front of me.  So without any

indication that the same conduct will not repeat itself, I -- I

cannot find that the defense has met its formidable burden.  So

the motion to dismiss for -- because -- and let me be clear,

because the record does not demonstrate that defendants have

irrevocably eradicated the effects of the violation such that

no case or controversy exists.

    So the motion to dismiss for lack of subject matter

jurisdiction is denied, and I take under advisement the motion

to dissolve the injunction because while I do believe that the

injunction has been met in part, I have yet to really

conclusively determine the remainder of the injunction, and

what -- where we go from here in that regard.

    Okay.  So that's ECF 200.

1          **MR. GUYNN:** Your Honor, can I ask you a question?

2          **THE COURT:** Sure.

3          **MR. GUYNN:** Based on that ruling? And I'm not making

4  any representation that defendants are planning this, but I

5  want to understand your order.

6      Is it -- is it the Court's understanding that if the

7  defendants provided Mr. Abrego Garcia with a notice of removal

8  to a third country, then the Court would conclude that the case

9  is moot?

10          **THE COURT:** I don't know that. Because the next

11  motion we're going to get to is we're really going to get down

12  into the weeds as to what you're doing and when. Okay?

13          **MR. GUYNN:** Okay.

14          **THE COURT:** Because the whole basis of the

15  plaintiffs' motion is, you know, you're -- Mr. Abrego is caught

16  between two actions, one criminal, one immigration, that your

17  clients are taking.

18      And, again, it's chaos. And it's chaos that can be

19  completely avoided because I'm not going to buy for a second

20  that you can't tell this Court, or the plaintiffs, what the

21  plan is. You may not be able to tell me, you know, not in

22  every case, but in this case, Mr. Abrego is detained in

23  criminal custody, and what's going to happen next will inform

24  this motion, right? Could moot it.

25          **MR. GUYNN:** Understood. And we're prepared to

1  address what you just mentioned today.

2      I just want to make sure I understand --

3          **THE COURT:**  So we would have to see what you do,

4  right?

5          **MR. GUYNN:**  Sure, okay.

6          **THE COURT:**  And we have to see in what form it comes,

7  and whether there is -- whether it meets the definition of

8  formidable -- whether you met your formidable burden.  Is it

9  unconditional?  Is it irrevocable?  Whether that's what really

10  *Porter* contemplates.  That's where you all need to talk and

11  figure out if there's room for --

12          **MR. GUYNN:**  Again, it just sounds to me that what the

13  Court is concerned about, based on your discussion of voluntary

14  cessation, is that you're not sure that you know right now that

15  you have -- you know, the formidable burden has been met, that

16  the government doesn't plan to make the same mistake to remove

17  him to El Salvador again.

18          **THE COURT:**  Although that's not the only mistake,

19  right?  So it's without any sort of lawful authority or

20  process.

21          **MR. GUYNN:**  And my question is, is if we provided a

22  notice of removal to a third country that, you know,

23  contemplates and describes what the process will be for that

24  removal, does that address the Court's concerns on voluntary

25  cessation?

1          **THE COURT:**  I don't know yet.  I don't know.  So you

2   have to -- what I would suggest you do is you meet and confer

3   with the plaintiffs, that's what -- and we'll get into what you

4   have today and what you're prepared to do.

5          **MR. GUYNN:**  Sure.

6          **THE COURT:**  But on that separate question, I think

7   it's fair to first require you to meet and confer with the

8   plaintiffs.  Because, again, if the plaintiffs agree, you're

9   going to get a lot further than if they don't agree, because

10  then it's a live controversy, and I've got to deal with it,

11  right?

12      But I do think if you come to some agreement, it -- it may

13  very well.  It's just hard for me to say.

14         **MR. GUYNN:**  Sure.  And my question, I think the Court

15  appreciates it, I may already have my answer, but absent an

16  agreement, if we were to provide that notice, it sounds like

17  the Court is uncertain right now if that were to resolve the

18  voluntary cessation issue.

19         **THE COURT:**  Why don't we do this, why don't we turn

20  to the next motion.  Because again, I want to talk to you about

21  timing.  I'm happy to do it out of order, Mr. Gunn, or hear

22  from the plaintiffs first.  But I think this is going to come

23  up in the next motion.  Again, my preliminary comments to both

24  sides is the order of operations, in my view, is everything,

25  right?

1       We've got Mr. Abrego Garcia detained until July 16.  And

2    one of two things are going to happen, either Judge Crenshaw

3    will affirm, maybe modify but affirm Judge Holmes or reverse

4    Judge Holmes.  If he reverses Judge Holmes and Mr. Abrego is

5    detained in criminal custody, that's where he is, and I can't

6    do anything to affect that order.

7       If he's released, he will be released under the conditions

8    that I understand Judge Holmes was prepared to -- she was

9    addressing in open court, he would be released to Maryland.  He

10   would be supervised criminally by pretrial services in

11   Maryland.  He would be under, I thought I read, electronic

12   monitoring.

13      He's not going anywhere.  He's here.  And he's under the

14   watchful eye of the Court.  That's a different than, you

15   know -- at least as to the plaintiffs' first request that he be

16   returned to Maryland, that would be a -- that would result if

17   he were permitted to return on his own after the release order

18   hits.

19      So the real question is going to be for the defendants, if

20   Mr. Abrego is released on or about July 16, what are you going

21   to do?  And under what authority?  And I -- it's July 7, you

22   know that.  Like, I just don't believe for a second that the

23   defense doesn't know what they are going to do on July 16 if

24   he's released.  So that's my current -- that's my preliminary

25   thinking.

1       Plaintiff, it's your motion, so why don't you start, and

2    then we'll turn to the defense.

3            **MR. ROSSMAN:**  Well, Your Honor, I'll cede all my time

4    if I can get a straight answer from the government to that

5    question.

6            **THE COURT:**  Well, that's the plan.  If I don't get a

7    straight answer, we might have a witness in the next couple of

8    days to give me a straight answer because we need to know.  It

9    will take a lot of judicial resources that I can put to another

10   case if you can tell me.

11           **MR. GUYNN:**  The plan?  You want me to tell you the

12   plan for Mr. Abrego?

13           **THE COURT:**  I do, yes, please.

14           **MR. GUYNN:**  So I would just like to go back maybe a

15   week or two because I think a lot of that is informing the

16   Court's thinking on this issue, either immediately before or

17   after the emergency motion was filed.

18       So, look, there's been some executive personnel who have

19   reacted to some misleading reports that the United States

20   doesn't intend to criminally prosecute Abrego Garcia.  It does.

21           **THE COURT:**  Okay.

22           **MR. GUYNN:**  But the U.S. Attorney's Office and DHS,

23   despite the representation of plaintiffs and certain folks in

24   the media, they are not working at cross purposes with one

25   other.  They are both working towards the same purpose of

1   protecting the United States public from a manifestly dangerous

2   illegal alien.

3           **THE COURT:**  Okay.  So then you are working in concert

4   with one another.  You are communicating.  You are joined in

5   your forces.  Am I right about that?

6           **MR. GUYNN:**  Well, there are mutually exclusive means

7   to protect the public.

8           **THE COURT:**  No, I understand that.  I'm asking

9   whether you are working together.  That's what you just said.

10          **MR. GUYNN:**  Well, you know, we are -- we are the

11  Executive Branch.

12          **THE COURT:**  Yeah.

13          **MR. GUYNN:**  And so if -- if Mr. Abrego Garcia is --

14  if the public can be protected from him by him remaining in

15  U.S. Marshal custody, and then he's criminally prosecuted,

16  we'll pursue that.

17      But if he's going to be released to the public, we -- I

18  can go through the indictment, Your Honor, but like --

19          **THE COURT:**  No, no, you don't need to go through the

20  indictment.  You need to tell me what DHS and ICE will do --

21          **MR. GUYNN:**  I'll do that.

22          **THE COURT:**  -- on -- that's all I want to know.  It's

23  a real simple question.

24          **MR. GUYNN:**  Okay.  This isn't someone that you would

25  want in your community.  And neither will Americans.

1          THE COURT:  Mr. Guynn, that's nonresponsive.

2          MR. GUYNN:  And so my --

3          THE COURT:  I'm asking you as an officer of the Court

4    to answer my question.  As a matter of fact, I'm directing you

5    to.  I do not need the stumping.  What I need to know is on

6    July 16th, if he is released on conditions of release in his

7    criminal case, what will your clients do?

8          MR. GUYNN:  We will detain him for removal.

9          THE COURT:  Okay.  On what authority?

10         MR. GUYNN:  Okay.  So currently he is subject to a

11   final order of removal.

12         THE COURT:  Yeah.

13         MR. GUYNN:  Does the Court dispute that?

14         THE COURT:  Yes, I dispute that -- and the Fourth

15   Circuit said it, I have said it, the Supreme Court has

16   implicitly said it, he is also subject to a lawful withholding

17   of removal.

18         MR. GUYNN:  To El Salvador.

19         THE COURT:  Correct.

20         MR. GUYNN:  But he can be removed elsewhere.

21         THE COURT:  Yeah, we don't have to go back over this.

22    We know that.  So what you're saying --

23         MR. GUYNN:  All right.  Well -- what I'm saying is

24   the Court has -- the government has two options here for

25   removing Abrego Garcia from the United States.  First, it can

1  remove him to a third country.

2      Second -- and these are some of the comments that need to

3  be interpreted with greater nuance, as Ms. O'Hickey mentioned

4  earlier, and I'm going to try to provide that to the Court now,

5  the defendants could seek to revisit Abrego Garcia's order of

6  withholding of removal.

7          **THE COURT:**  Okay.

8      **MR. GUYNN:**  And to do so, they could present evidence

9  that conditions in El Salvador have changed, that the order of

10  withholding of removal is no longer justified.

11         **THE COURT:**  Yep.

12     **MR. GUYNN:**  Or they could present evidence

13  establishing a statutory bar to withholding of removal.

14         **THE COURT:**  Understood.  And you told me all the

15  things you could do.  Now, what are you going to do?

16     **MR. GUYNN:**  Well, defendants are going to consider

17  their options for removal based on the evidence available

18  against him when they take him into custody.

19         **THE COURT:**  Okay.  What evidence is going to change

20  between now and the 16th that you think will -- will help you

21  decide door number one versus door number two?

22     **MR. GUYNN:**  I think it will determine on what --

23  well, it's not clear that he will be released on July 16th.

24         **THE COURT:**  Okay.  I know that.  I know that.

25     Assuming he is, okay?  You have laid out two options.  I

1   don't disagree that these two options are available.  I'm

2   asking you, which one will you choose?

3            **MR. GUYNN:**  Assuming he is, DHS's current plan is to

4   attempt to remove him to a third country.

5            **THE COURT:**  Okay.

6            **MR. GUYNN:**  It is possible, however, that in

7   evaluating the evidence that is available from the U.S.

8   Attorney's Office that may have been developed in the interim,

9   that that might bear on that second option, it is possible that

10  DHS may actually say, you know what?  We would like to revisit

11  his notice of withholding of removal; that will be done through

12  the immigration judge and the immigration proceedings.

13           **THE COURT:**  Right.  Okay.  So what you're saying is

14  you haven't made a decision yet as to which one you'll do.

15           **MR. GUYNN:**  At this point, Your Honor, and it's --

16  it's speculative.  We don't know what the evidence is --

17           **THE COURT:**  See, I don't buy that for a second.

18           **MR. GUYNN:**  Well, I told you, Your Honor.

19           **THE COURT:**  Let me tell you why, though, and then you

20  can respond.

21       You've had a multiple-day hearing in Tennessee.  You've

22  had your witness testify to the investigation, the bona fides

23  of the investigation, the facts of the investigation.  This is

24  not unobtainium for you.  You know it.  Okay?

25       So what exactly, without more, for you to say it would be

1  speculation ten, nine days before the --

2          **MR. GUYNN:**  Well, Your Honor, I think I just told you

3  that the plan currently is to remove him to a third country.

4          **THE COURT:**  Okay.

5          **MR. GUYNN:**  But what I'm not -- I'm not -- I'm not

6  prepared at this point to say that we definitely will not look

7  at the option -- option number two, which is to revisit

8  withholding of removal.

9          **THE COURT:**  All right.

10         **MR. GUYNN:**  I'm not saying -- I'm just trying to -- I

11 don't want to say something to Your Honor that may -- that may

12 change if DHS looks at the evidence again and says, you know

13 what?  We actually think that an IJ would look at this and

14 determine that a statutory bar applies.

15         **THE COURT:**  Okay.  So when is that decision going to

16 be made?

17         **MR. GUYNN:**  It will be made when he is taken into ICE

18 custody.

19         **THE COURT:**  How can you do that?  Don't you have to

20 have a basis to hold someone?

21         **MR. GUYNN:**  We already have a basis to remove him to

22 a third country.

23         **THE COURT:**  So you're saying -- let me try to be

24 really crystal clear.  You're saying that no matter what we

25 decide downstream, we know we're going to take him into custody

1    if he's released on July 16th or thereabouts because we're

2    deporting him to a third country?

3            **MR. GUYNN:**  Yes.

4            **THE COURT:**  Okay.  What third country?  Since you

5    know it today, and you know that's where you're headed, what

6    third country?

7            **MR. GUYNN:**  I do not believe that that has been

8    determined yet.

9            **THE COURT:**  So how do you know you're going to deport

10   him to a third country if you don't know the country he's going

11   to?  Don't you have to get reassurances from that country?

12           **MR. GUYNN:**  I think there's a number of countries

13   with whom we have treaties and agreements, Your Honor, who are

14   willing to accept aliens, such as Mr. Abrego Garcia, and DHS

15   would explore its options for removal closer to the time when

16   they would be taking him into custody.

17           **THE COURT:**  So if I set in an evidentiary hearing for

18   closer to when you would be taking him into custody, maybe we

19   can get an answer from a person under oath with personal

20   knowledge, since I'm not getting very far this way?  I mean,

21   nondescript third countries that apply generally, not

22   necessarily to Mr. Abrego Garcia, in this context when the --

23   at least the proposed amended complaint raises refoulement

24   questions or, you know, re-deportation back to El Salvador,

25   what am I to do other than to try to nail some of this down?

1            MR. GUYNN:  Sure.  So you had a colloquy earlier with

2    plaintiffs' counsel about the procedure --

3            THE COURT:  Yeah.

4            MR. GUYNN:  -- that the parties usually go through

5    when removal proceedings are reopened or their notice is

6    served.

7        Mr. Molina, is there some additional context that you

8    think would be helpful for the Court to explain how that

9    process unfolds, how third-party countries identify and the

10   like?

11           MR. MOLINA:  Well, that's ordinarily what happens,

12   Your Honor, is an individual who is subject to a final order of

13   removal, that, you know, the immigration forces, ICE and CBP,

14   do have statutory authority to take those people into custody

15   under 8 U.S.C. 1231 and take steps to begin to process them for

16   removal to a potential third country.

17           THE COURT:  Right.

18           MR. MOLINA:  Now, that is more of a -- removal to a

19   third country is a little bit more fluid.  There are no

20   standing, you know, agreements that I'm aware of.  But I do

21   know that there are -- you know, ICE and CBP do have

22   communications with other countries and are able to ask them on

23   occasion to accept somebody.

24           THE COURT:  But you do have a memorandum, though, in

25   place, correct?  That was issued on, I think, the 30th of March

1    regarding the process that you --

2              **MR. MOLINA:**  Yes.

3              **THE COURT:**  -- undergo to find that third country?

4              **MR. MOLINA:**  Yes, Your Honor.

5              **THE COURT:**  Have you started that process in this

6    case?

7              **MR. MOLINA:**  I'm unaware of that process having been

8    started in this case.

9              **THE COURT:**  That we know.

10             **MR. MOLINA:**  Yes.  Just recall, Your Honor, that the

11   circumstances for third-country removal have been a little bit

12   fluid as of late.  So I do not know that in this particular

13   circumstance those measures have been taken in the few weeks

14   that Mr. Abrego Garcia has been back in the country.

15             **THE COURT:**  Okay.  Well, you may not have done it,

16   but you acknowledge that there is a -- at least at a minimum,

17   when you're attempting -- DHS is attempting to identify a third

18   country, that you reach out to that third country for

19   assurances that the alien will not be persecuted or tortured;

20   am I right about that?

21             **MR. MOLINA:**  Yes, Your Honor, that's -- that's my

22   understanding of the process.

23             **THE COURT:**  And have you done that here?  The answer

24   is no, right?

25             **MR. MOLINA:**  I do not have information indicating

1    that we have that information.  I know I do not have that

2    information, but I do not know whether, at this point, ICE has

3    pursued that.

4              THE COURT:  But this is your client, right?

5              MR. MOLINA:  Yeah.

6              THE COURT:  I mean, this is this case, you're coming

7    to court in this case with an extraordinary motion that's been

8    filed about what's happening next from your client's

9    perspective, and you haven't -- are you telling me you haven't

10   asked this question?

11             MR. MOLINA:  I have not asked this question, yet,

12   Your Honor.

13             THE COURT:  And you haven't been given the

14   information?

15             MR. MOLINA:  And I have not been given the

16   information, correct.

17             THE COURT:  And that is acceptable to your client and

18   to the Court, you think?

19             MR. MOLINA:  Well, I'm certain --

20             THE COURT:  I mean, it's really like I'm just not

21   going to look.

22             MR. MOLINA:  I'm certain it's not acceptable to the

23   Court.

24             THE COURT:  No, it's not.

25             MR. MOLINA:  And I did not envision this as a

1  particular question in this case, but -- because I know that,

2  you know, it's hard for the agency to begin to process somebody

3  when they don't have that person to begin the process.

4         **THE COURT:**  Why not?

5         **MR. MOLINA:**  Because you need to be able to get

6  certain information from the folks, you got to be able to

7  communicate information about that person to --

8         **THE COURT:**  They have, like, ten lawyers.  If you

9  need information, you call up the lawyer and you ask for the

10  information.  You're saying that you can't make these

11  determinations until he's in your custody in this case?

12         **MR. MOLINA:**  I -- I can only imagine that they have

13  not been made at this point, Your Honor.

14         **THE COURT:**  I'm sorry?

15         **MR. MOLINA:**  I can only imagine that they have not

16  been made.  Again, I have not confirmed this with my client,

17  but I do know that, you know, circumstantially, knowing how

18  busy ICE and CBP are, ordinarily getting a lot of things done

19  in advance is a little bit tougher.

20         **THE COURT:**  How about in this case, though, wouldn't

21  you wish to put all of this to bed by just having a lawful

22  order in place that is based on the memorandum we just read,

23  the INA, the directive, so that there's no doubt that you are

24  complying with the statute and the regs?

25         **MR. MOLINA:**  It is the agency's obligation to make

1  sure that it does comply with the statute and the regs.  And

2  I'm sure that they -- the agent -- because of the agents I

3  know, I know they are committed to doing exactly that, and I am

4  confident that they will.

5          **THE COURT:**  Let me ask you another question.  Which

6  field office would be responsible for this?

7          **MR. MOLINA:**  It would depend on where the individual

8  would be, you know, generally held.  Ordinarily, as you pointed

9  out, in this case, would usually expect the local office, the

10 Baltimore office where Mr. Abrego Garcia had his order of

11 supervision --

12         **THE COURT:**  Right.

13         **MR. MOLINA:**  -- where he was obliged to report, and

14 other such items, ordinarily they would be the ones to start in

15 on that process or begin in the process.

16     But other circumstances do occur.  Sometimes there's not

17 room at a detention facility for somebody to be processed and

18 someone will be moved to another detention facility, then that

19 group will then -- that ERO will then begin that process.

20         **THE COURT:**  So if I understand it, if, on day one,

21 DHS had determined it wished to deport Mr. Abrego Garcia to a

22 third country, that would go through the field office in

23 Baltimore, right?

24         **MR. MOLINA:**  That would be the normal starting point,

25 Your Honor, because again they have the order of supervision.

1    **THE COURT:**  Right.  So it kind of makes the

2    plaintiffs' point, right?  That that's the status quo ante.

3    Because then you can start the proceedings if Mr. Abrego Garcia

4    is in the jurisdiction of the Baltimore field office, right?

5    **MR. MOLINA:**  Sure.  But again, I guess the government

6    would have to figure out what the status quo ante is.  Because

7    again, it was -- it was -- the arrest of Mr. Abrego Garcia was

8    lawful.  It was his removal to El Salvador that it was

9    incorrect.

10    **THE COURT:**  Well, the arrest -- there was no basis

11    for the arrest because there wasn't even a warrant for the

12    arrest.

13        It brings me to another question I have for you, is have

14    you produced the A file to the plaintiffs yet?

15    **MR. MOLINA:**  That was produced, I believe, mostly in

16    discovery, that's my understanding.

17    **THE COURT:**  Was it?

18    **MR. MOLINA:**  As far as I know, the EARM may have --

19    we may have had difficulty in the EARM, but I think the A file

20    went through.

21    **THE COURT:**  And if the A file went through, there

22    would be a warrant for arrest in it?  That's where it would

23    live, right?

24    **MR. MOLINA:**  There should be, yes, Your Honor.

25    **THE COURT:**  Was there a warrant for arrest?  There

1  never has been, as far as I've seen.  I've asked for it from

2  day one.

3      So I'm not accepting that Mr. Abrego was lawfully arrested

4  if there is not a warrant for his arrest.  That was -- I mean,

5  we've had that conversation --

6          **MR. MOLINA:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  So to get back to the question,

8  then, is -- your position is you can't know what third country

9  Mr. Abrego Garcia would -- you would start proceedings to

10 remove him until he's physically in ICE custody?

11         **MR. MOLINA:**  That would be incorrect, Your Honor.  I

12 would tell you, of course, I'm admitting I do not know.  I do

13 know that the agency in dedicating its resources, if they have

14 time, they may try to get -- ascertain that third country ahead

15 of time.

16         **THE COURT:**  And if I ordered testimony in this

17 regard, what would you do next?  You would go back and -- say I

18 leave -- we leave today and I say, you know, I really want a

19 person with personal knowledge as to what DHS and ICE's

20 intentions are if Mr. Abrego Garcia is released from the

21 criminal case for supervision, and I would like you to produce

22 that person.  You know, we'll pick a date in the end of the

23 week.  What would you do next?  Who would you identify?

24         **MR. MOLINA:**  Well, I wouldn't identify the individual

25 myself, Your Honor.  I would be in contact with DHS's Office of

1  the General Counsel and work with them to begin to identify a

2  person who would be able to communicate about that process.

3          **THE COURT:**  Okay.  So if I am accepting as true that

4  the first order of business is to hold Mr. Abrego so that you

5  can deport him to a third country, and if I wish for testimony

6  on that, you would work with the agency to find someone who can

7  give me that testimony?

8          **MR. MOLINA:**  Yes, we would work with the agency to

9  find somebody on that, Your Honor.

10         **THE COURT:**  Okay.  And -- and I guess Mr. Guynn, you

11  had turned over the mic to Mr. Molina on the process.  If I'm

12  getting it right, though, there is no additional information

13  that you have today for me as to what third -- whether you're

14  going to do this, and what third -- no, you have confirmed

15  you're going to do it, it's just a matter of what third country

16  would be considered?

17         **MR. GUYNN:**  And, again, Your Honor, he is in U.S.

18  Marshal custody.  What DHS will do, is if he is released from

19  U.S. Marshal custody, they would take him into custody, and

20  they would go along the lines that I described.  They would

21  begin the removal process.  And the current plan is to remove

22  him to a third country.

23      But there would also be -- there would still be -- I think

24  DHS would consider whether there was an option to revisit the

25  withholding of removal.

1      **THE COURT:**  Okay.  And last question before I turn to

2  the plaintiffs on their motion, is would you hold -- is your

3  plan to hold Mr. Abrego in custody, in immigration custody but

4  defer any action until the criminal case is over?

5      **MR. GUYNN:**  No.  My understanding is that we would be

6  getting the removal -- the removal process would proceed as it

7  normally would and should, consistent with due process.

8      **THE COURT:**  But what I mean by that is, you would --

9  you would not wait for the criminal case, you would move -- I

10  mean, DHS is deporting people --

11      **MR. GUYNN:**  That's correct, Your Honor.

12      **THE COURT:**  -- very, very fast, right?  93,000 people

13  have been deported from this country since the beginning of the

14  administration.  Are you going to take the same speed with

15  Mr. Abrego, or are you going to wait for the criminal case?

16      **MR. GUYNN:**  If your question is -- because I want to

17  understand -- I want to make sure I understand the full

18  indication of your question.  There's no intention to just put

19  him in limbo in ICE custody while we wait for the criminal

20  process to unfold.

21      If he -- if he is released from U.S. Marshal custody and

22  he's taken into custody by ICE, he will be removed, as would

23  any other illegal alien, through that process.

24      **THE COURT:**  Okay.  So you're not waiting, you're not

25  going to press pause --

1              MR. GUYNN:  That's right.

2              THE COURT:  -- until after the criminal case.

3         We don't have a date for the trial yet, do we?  The

4    criminal trial?

5              MR. GUYNN:  So last Wednesday, the government moved

6    for a trial date, but I don't believe that motion has been

7    ruled on yet.

8              THE COURT:  This was very helpful.  I appreciate it.

9    Let me turn to the plaintiff on the motion, and then I'll

10   obviously come back to you.

11             MR. ROSSMAN:  Thank you, Your Honor.  Mr. Rossman

12   again.

13        I think you understand why we're here.

14        So the obvious concern is that the moment that he is

15   released from Marshals' custody, he will be taken into ICE

16   custody, put on a plane, and sent to a third country.  We don't

17   know which country, we don't know under what circumstances, we

18   don't know whether it would be lawful or not.  Our position

19   would be it would not be lawful.

20        I have not heard from the government that they would

21   provide for notice and an opportunity for a court hearing

22   before actually removing Mr. Abrego Garcia to a third country,

23   and that's quite disturbing.

24        So, in fact, what we have is the very real risk that in

25   nine days, we could be faced with the same set of circumstances

1  that -- that got us here in the first place, an illegal

2  removal.

3      And I want to be very clear about that.  It is our

4  position that he cannot simply be removed to a third country

5  without the opportunity of first notice of what that country

6  is, and why, and the basis of appropriate warrant for his

7  arrest and detention.

8      And second, an opportunity to be heard in front of a

9  neutral judicial officer on the propriety of the proposed

10 removal because there are real concerns.  One is the

11 refoulement concern that Your Honor has identified.

12         **THE COURT:**  Let me ask you this question.

13         **MR. ROSSMAN:**  Of course.

14         **THE COURT:**  Isn't that for the immigration process --

15 because I don't even know what the process is.  I'm trying to

16 understand it.  But isn't that for the -- for DHS and ICE and

17 its authority over immigration to decide?

18         **MR. ROSSMAN:**  And ultimately an immigration court.

19 And beyond that, the Bureau of Immigration Appeals --

20         **THE COURT:**  And then the Fourth Circuit.

21         **MR. ROSSMAN:**  -- the circuit court, on up the APA

22 chain, as Your Honor well knows, right?

23         **THE COURT:**  Right.

24         **MR. ROSSMAN:**  But the particular thing, the

25 particular thing that we're asking the Court to do is to fill

1    in the cracks here created by the government's, and I'll say

2    it, bad intentions.  Okay?  The government's intention -- the

3    government's intention appears to be that the moment that he is

4    let out on bail, they will take Mr. Abrego Garcia into ICE

5    custody and immediately proceed to remove him.  I don't want to

6    be caught in any semantic games here.

7        When we think of removal proceedings, we think of

8    proceedings with a court.  The court can be an immigration

9    judge for sure.  We think the appropriate place for that to all

10   unfold is here in Maryland.  The status quo ante is where

11   Mr. Abrego Garcia resides.  There is an ICE Maryland -- there

12   is an ICE Baltimore field office here, and that would be -- and

13   it could very well, and we think should, land on the desk of

14   the same immigration judge who heard his case in 2019, okay?

15       We think that is the appropriate way to proceed.

16       That is not how the government has indicated that they

17   intend to proceed.

18       So the way in which we are asking the Court, right?  To

19   fill in that gap, is with due process, due process required by

20   the Constitution.  And that is before -- before

21   Mr. Abrego Garcia is removed anywhere, he should be given

22   notice and an opportunity to be heard by a court.  Okay?

23   That's the baseline of what we are asking for.

24       We are also asking that he be returned here to Maryland,

25   the starting point of this saga.  And that is the fulfillment

1    of the preliminary injunction, it is within the Court's All

2    Writs Act authority to order him here.  And here, we get the

3    benefit to Mr. Abrego Garcia of -- among other things, we have,

4    you know, a field office that is familiar with his case, and we

5    would expect the opportunity for him to present it.

6              **THE COURT:**  So what do I do with the fact that if I

7    were inclined to do what you're asking me to do, there isn't an

8    ICE detention facility in Maryland?  And if -- if I were to

9    find that there's no impediment to DHS taking him into custody,

10   assume that's proven out, how do I -- what do I do then?

11   Because I can't -- I mean, are you asking me to order his

12   release from there?  Or are you asking me to house him -- to

13   direct that he be housed closer to -- what are you asking me?

14             **MR. ROSSMAN:**  Two separate issues, Your Honor.

15             **THE COURT:**  Okay.

16             **MR. ROSSMAN:**  So there's a jurisdictional juridical

17   issue, if you will, of giving him the full measure of his

18   rights as if his rights were not deprived of him in the first

19   place.  And that requires, in our view, brining him back to

20   Maryland, so that that can be square one.  Okay?

21        And if ICE is not -- it's merely because ICE does not have

22   a detention facility here presumably has not prevented them --

23   we know it has not in this case prevented them from detaining

24   people and seeking to remove them via a process.  Okay.

25        So we can appropriately start from square one here in

1    Maryland.

2        And I'm not asking the Court to make a determination of

3    what facility he should be held in during ICE detention.  We

4    are asking the Court to make sure that he gets the process that

5    is afforded him under the Constitution and under the

6    immigration laws, which we contend and the government seems to

7    dispute, but we contend means notice, workable notice, okay?

8    Meaning more than minutes' notice, okay?  And an opportunity to

9    be heard by an appropriate court of competent jurisdiction.

10       And that court can be an immigration court.  It does not

11   necessarily have to be the federal district court.  But I

12   believe that the -- what I would submit to the Court, that the

13   unique jurisdictional space that you occupy in this particular

14   dispute, is that you can assure a clean handoff.  You can

15   assure that in between the space between Mr. Abrego Garcia

16   leaving the U.S. Marshals' custody and his being placed in ICE

17   detention, that he is assured a day in court.  That's all that

18   we are asking for.

19       We think that's best delivered here in Maryland.  But at a

20   minimum, we think that that is an appropriate extension of the

21   Court's existing injunction order, we think it's within the

22   contemplation of the United States Supreme Court order, and we

23   think it's well within Your Honor's All Writs Act authority to

24   extend that order to provide him with that constitutional due

25   process.  That's the basis for the injunctive motion.

 1      And it's within the government's power to alleviate the

 2  need for the Court to rule on any of these things.  The

 3  government can provide binding assurances and, you know, that

 4  would need to be in the form of some kind of stipulated order,

 5  to be clear, so that we can, you know, trust but verify, as the

 6  phrase goes.

 7      But, you know, the government can do that, and the

 8  government's unwillingness to do that should signal all the

 9  Court, you know, needs to hear about what the government's

10  intentions are, which are to, once again, remove Mr. Abrego

11  Garcia in the dark of night or on no notice to a country that

12  they won't even say, out loud in this courtroom, is their

13  intention.

14      And, you know, that's more than a little bit surprising,

15  that nine days out, they haven't identified a country, haven't

16  begun a process.

17          **THE COURT:**  What's your response to Mr. Molina saying

18  they can't begin the process until he's in custody?

19          **MR. ROSSMAN:**  I didn't hear him quite say that.

20          **THE COURT:**  Maybe I misheard it.

21          **MR. ROSSMAN:**  Right.  And I didn't hear --

22          **THE COURT:**  Of identifying a third country.

23          **MR. ROSSMAN:**  I do think that it would be appropriate

24  for the Court to extend the injunction until that process is

25  given, until the country is identified, right?  Appropriate

1  notification of what their intentions are, and an opportunity

2  to be heard before a competent court.

3       And that does not necessarily -- you know, I don't want to

4  repeat myself, but it could be an immigration judge if not Your

5  Honor.

6       But where we are at -- where my client is at grave risk is

7  without that protection, without this Court's protection, then

8  he'll never get a day in court on third-country removal.

9       That's the open issue that we have right now.

10      And we think in terms of we cite all the cases in our

11  brief, as to Your Honor's authority at issue, that what I think

12  is a fairly modest extension of the existing order, if it even

13  is an extension at all as opposed to an enforcement of the

14  order, but from the *AARP* case to the *Suri v. Trump* case, which

15  was just affirmed in the Fourth Circuit, the *Ozturk* case from

16  the Second Circuit, we think Your Honor has all the authority

17  that Your Honor needs under the due process clause itself to

18  ensure that my client gets his day in court.

19      We're not asking Your Honor to adjudicate his immigration

20  status.  We're not asking Your Honor to be his jailer, if you

21  will, to adjudicate his detention status.  Okay?  All we ask is

22  that before we have a repeat of Mr. Abrego Garcia being dragged

23  away to a foreign country, a foreign prison without ever having

24  an opportunity to present his case, we want to avoid that, I

25  think Your Honor can readily do that, and that's what we're

1    asking for in this motion.  And that's why we set it up the way

2    we have, which is, you know, one, bring him back to Maryland;

3    and, two, ensure that he gets his due process rights.

4        I'll pause there, Your Honor.

5        And I'll say, you know, reflecting on Your Honor's

6    questions about an evidentiary hearing, I think it's

7    appropriate for the Court to get straight answers from the

8    government.  If the government lawyers genuinely can't give you

9    that information as they sit here today, then the Court has all

10   the mechanisms in the world to require them to come forward

11   with that mechanism, including putting a witness in the chair

12   who could be examined, you know, by us, by the Court, in order

13   to provide that information.

14       And what we would ask, while the Court sorts that out, is

15   that my client get the blanket of this Court's protection to

16   ensure that his rights aren't taken away from him.

17            **THE COURT:**  Well, we would do that this week.

18            **MR. ROSSMAN:**  We can do that this week, Your Honor,

19   we're at your disposal.

20            **THE COURT:**  That's where I'm moving, is that we would

21   have someone with personal knowledge.  And I'll hear more from

22   Mr. Molina, perhaps, as to the official title or, you know, who

23   that person is.  Is it the -- is it the field director?  Is it

24   the field officer?  Is it, you know, Officer Baker?  Is it

25   someone else?

1      But I need to know who has personal knowledge who, under

2    oath, can explain what the next steps will be, what is known,

3    what is not known.  And I can make, you know, sufficiency and

4    credibility determinations.  That's where I'm headed, because

5    it's -- again, it's like trying to nail Jello to a wall, like,

6    to figure out what's going to happen next week.

7      And I can -- because all depending on what happens, it may

8    moot your motion.  It just -- it just may take it off the

9    table.

10     And so I feel like I'm bound to make the record before I

11   decide what to do.

12            **MR. ROSSMAN:**  I agree with that, Your Honor, very

13   much.

14     And we're here for it, whatever timing, whatever process

15   Your Honor wants, we will be available for it.

16     Thank you, Your Honor.

17            **THE COURT:**  Okay.  Thank you.  All right.

18            **MR. GUYNN:**  Your Honor, just a couple of points in

19   response.

20     First, there's an indisputable -- undisputed testimony

21   that ICE doesn't have a facility in Maryland where it can hold

22   Mr. Abrego Garcia.  And yet, I nevertheless hear plaintiffs'

23   counsel saying, well, order them to hold him there anyway, even

24   though it might be totally inappropriate.

25            **THE COURT:**  No, I don't think he said that.  But let

 1   me ask you this:

 2       What's so wrong with ICE complying or permitting the very

 3   stringent release conditions that Magistrate Judge Holmes set

 4   to take effect?  I mean, it's really your position that after a

 5   several-day hearing in front of a neutral arbiter in Tennessee,

 6   if it's affirmed, and I understand -- listen, I hear from the

 7   Department of Justice there's going to be more evidence.  And

 8   Judge Crenshaw may disagree.  But if Judge Crenshaw agrees, now

 9   you got two judges, what is so improper?  Or why aren't you

10   exercising your discretion, I suppose, to just let the release

11   order take effect?

12            **MR. GUYNN:**  Well, I appreciate that you recognize

13   that it's the defendants' discretion on --

14            **THE COURT:**  It is.

15            **MR. GUYNN:**  And it's unreviewable.

16            **THE COURT:**  What's that?

17            **MR. GUYNN:**  And it's unreviewable, where he's held,

18   pending the removal proceedings.

19            **THE COURT:**  I don't know if that's accurate because

20   there's more than one court which has ordered detention in

21   another facility, return to the jurisdiction, that's been

22   affirmed.  It's been affirmed by this Fourth Circuit, it's been

23   affirmed by the Second Circuit.  So I don't know if what you're

24   saying is actually true, that it's unreviewable.

25       I was just asking more of a question.  Why aren't you, in

1  your discretion, if you will, just agreeing to let Mr. Abrego

2  Garcia be under the restrictive conditions set by the -- by

3  the --

4         MR. GUYNN:  I'll just -- I'll say, Your Honor, I

5  don't know what all the bases are going to be for the Middle

6  District of Tennessee judge's decision.  I don't know if the

7  judge is going to decide if Mr. Abrego Garcia should be

8  detained or not.

9         THE COURT:  If the release order is affirmed -- okay.

10  I'll give it to you.

11         MR. GUYNN:  I can't say at this point why I would or

12  would not disagree with that.

13     What I can say is that defendants' view is that this is --

14  plaintiff is a danger to the public.

15         THE COURT:  Okay.  You can't tell me right now, based

16  on the order that was about to be entered, until the

17  defendant -- and wisely, I think -- just pressed pause on it?

18     Hold on.

19     Again, the magistrate judge went through a several-day

20  evidentiary hearing.  She issued a 51-page opinion.  She went

21  through not only whether the government is entitled to a

22  detention hearing, but even if they were, that they hadn't met

23  their burden of showing that Mr. Abrego is a danger to the

24  community or a flight risk, given the very stringent release

25  conditions that would be put in place to reasonably assure

1    appearance, right?  And to mitigate danger.  And you've

2    presumably read all that, right?

3         **MR. GUYNN:**  Yes, Your Honor.  My -- the point I'm

4    trying to make is, I don't know what the bases are going to be

5    for the Court's decision after the hearing on June -- on

6    July 16th, pardon me.  So I don't want to prejudge and say why

7    the judge is wrong.  I don't know what that is at this point

8    exactly.

9         **THE COURT:**  For my hypothetical, assume that the

10   government had not appealed it, and Magistrate Judge Holmes'

11   order is to take effect.  Again, why, in the government's

12   discretion, would you not cede to such a restrictive release

13   order?  This isn't to go free and -- you know, freewheeling,

14   fancy, footloose.  No.  My memory is that he would be on

15   electronic monitoring in his home, right?  In this district.

16        **MR. GUYNN:**  And the defendants' position is that

17   because he's a danger to the public, they would seek to remove

18   him.

19        **THE COURT:**  Okay.  And so your answer is simply

20   that -- discretion, you disagree --

21        **MR. GUYNN:**  They believe that he is a dangerous

22   person.

23        **THE COURT:**  So you disagree with the magistrate

24   judge, and that's it.

25        **MR. GUYNN:**  We respectfully disagree with the

1  magistrate judge, yes.

2          **THE COURT:**  All right.  Okay.  So back to then why

3  would we not then take some evidence as to what's going to

4  happen next?  Because it sounds like no matter what, if

5  Mr. Abrego is released, no matter how stringent the conditions

6  are, your clients will move to detain him.  And isn't it fair

7  and proper for me to at least get the information?  I'm not

8  doing anything.  I just need the information.

9          **MR. GUYNN:**  I don't think so, because this court does

10  not have jurisdiction to oversee or preside over the

11  immigration judge's process.

12          **THE COURT:**  I have jurisdiction to maintain my

13  jurisdiction, and I do have jurisdiction to the extent the

14  Fourth Circuit has said so in *Suri*.  It may be narrow, but I

15  still have it.

16          **MR. GUYNN:**  But what plaintiffs are asking you to do

17  is really twofold.  One is to preside over, either directly or

18  indirectly, what the immigration judge does.  That's not

19  proper.

20          **THE COURT:**  They are not asking for that.  They are

21  asking just give him some process.

22      Mr. Rossman, if he said it once, he said it five times,

23  if -- if it's before an immigration judge, we'll accept that.

24          **MR. GUYNN:**  Right.  So I have already told you that

25  the plan is to initiate removal proceedings in the immigration

1    process.

2          **THE COURT:**  And you told me no detail after that.  In

3    other words, where it will be, when it will be, what the next

4    step will be, where will he get his notice and due process.

5          **MR. GUYNN:**  So then if the question is where, then we

6    get back to 1252(g).  And our position is that the Court

7    doesn't have -- that where Mr. Abrego Garcia is detained,

8    pending the immigration proceedings, is an issue that is within

9    the discretion of the Secretary of the Department of Homeland

10   Security.

11         **THE COURT:**  Put to the side whether I can order

12   anything.

13         **MR. GUYNN:**  Sure.

14         **THE COURT:**  Okay?  I'm entitled to the information,

15   no?  I mean --

16         **MR. GUYNN:**  I would love to provide it to you, but --

17         **THE COURT:**  -- all I'm asking for is information.

18         **MR. GUYNN:**  -- if it's in service of an order that

19   you can't enter, I'm not sure you are entitled to it.

20         **THE COURT:**  Well, if it's in service of resolving an

21   open motion, I am entitled to it.

22         **MR. GUYNN:**  If you have jurisdiction to resolve that

23   motion.

24         **THE COURT:**  I do.  I found I have jurisdiction over

25   this case.  That ship has sailed.  So now the pending motion is

1    the plaintiffs' motion for emergency relief.

2            **MR. GUYNN:**  Which they bring pursuant to the All

3    Writs Act, which does not give you jurisdiction here.  So under

4    *United States v. Ferguson*, for example, where a statute

5    specifically addresses a particular issue at hand, it is that

6    authority and not the All Writs Act that is controlling.

7            **THE COURT:**  Which statute are you saying controls?

8            **MR. GUYNN:**  INA Section 1252(g).

9            **THE COURT:**  The one that I just said does not deprive

10   me of jurisdiction over this case?

11           **MR. GUYNN:**  Well, except that what they are asking

12   you to do here is order him detained in a specific place.  The

13   portion of the statute that governs that is 1252(g), or 1252,

14   and you do not have jurisdiction to make a ruling as to where

15   he is detained.

16           **THE COURT:**  So the courts that have blessed -- Fourth

17   Circuit, Second Circuit that have blessed in certain context

18   ordering ICE to make the defendant available in a particular

19   forum, to retain jurisdiction, what would you say to those?

20   What would you say to *Suri*?  How would you distinguish *Suri*,

21   for example?

22           **MR. GUYNN:**  I would say, for example, most of the

23   Fourth Circuit cases that they reference are unpublished, and

24   they also involved habeas proceedings that when they were

25   commenced, the -- the detainee was in the district when they

1    were commenced.  That's not the case here.

2          **THE COURT:**  No, the detainee was in a third country

3    that you disavowed any control over.  I mean, this is a --

4    we're going to get to the merits of this question of the

5    unknown custodian, but that's not what's driving the bus here.

6    I'm -- I'm asking a different question.  I'm asking, under *Suri*

7    and *Ozturk*, why it isn't within the bounds of my jurisdiction

8    to order this interim step to assure Mr. Abrego is not spirited

9    away again.

10         And like Mr. Rossman said, it doesn't -- I haven't decided

11   what that would look like, so it may not be commanding he come

12   back to Maryland.  It may not be any particular -- in other

13   words, the devil is in the details.

14         **MR. GUYNN:**  Again, Your Honor, looking at *Suri* and

15   *Ozturk*, as we said on Page 8 of our opposition, those were

16   habeas petitioners who were located in the district of

17   confinement when the habeas petitions were filed.

18         **THE COURT:**  Where was Mr. Abrego when the habeas

19   petition was filed?  It wasn't just a habeas petition, I've

20   already reached that.  This was not the core of this case in

21   the beginning, it was not only habeas, right?  But where was he

22   exactly?

23         I'll answer it for you:  He was in CECOT.  He was in

24   El Salvador.  He was in --

25         **MR. GUYNN:**  I was going to confer with my clients

whether he was in Texas, Louisiana, or in El Salvador.

        **THE COURT:**  He was nowhere.

    And the amended complaint makes clear in the light most favorable to the plaintiffs that that was by design.  He was kept on a bus for a day.  He was shuttled back and forth.  That sounds a whole lot like *Suri* and --

        **MR. GUYNN:**  I think, Your Honor, though, has put her finger on exactly why *Ozturk* and *Suri* are distinguishable, though, because in those cases, the habeas petitioner was in the district of confinement when their petitions were filed.

        **THE COURT:**  Not *Ozturk* -- not *Suri*.  *Suri* was on a plane.  *Suri* was in between.  That's my memory of Judge Giles' findings of fact.  It was an unknown custodian at the time. Because on day one, she had been moved to four different detention facilities.  On day two, she was on the way to Louisiana, but she was in the air, or whatever day that the petition was filed.

    So she made a very specific finding on -- after an evidentiary hearing, I thought, on that.

    So how is it different here?

        **MR. GUYNN:**  Your Honor, I'm happy to reread *Ozturk* and *Suri* the way, you know, we read those cases, Your Honor. The habeas petitioner was in the district of confinement, and that's how it's distinguishable from this case.

        **THE COURT:**  Then why did she have to reach the

1  unknown -- why did Judge Giles have to reach the unknown

2  custodian rule if the habeas was filed in the district?  She

3  wouldn't have had to go there unless, as a matter of fact, the

4  custodian was unknown.  And then that's what the Fourth Circuit

5  affirmed, right?

6          **MR. GUYNN:**  Your Honor, I think that we would -- Your

7  Honor, I think we're just going to stand on our papers on this

8  point.

9          **THE COURT:**  Okay.  Okay.  All right.  Anything

10 further from the parties?  I'm going to take a break.

11         **MR. GUYNN:**  Which, Your Honor, includes *Benson v.*

12 *McMahon,* which includes *Kiyemba v. Obama,* which includes

13 *Joshua M. v. Barr.*  I mean, these are all cases that support

14 the government's position today.

15         **THE COURT:**  Which is what?  How do they support you?

16         **MR. GUYNN:**  Which is -- which is that a habeas claim

17 must be filed in the district of confinement.  And here,

18 Mr. Abrego Garcia was not in this district.

19         **THE COURT:**  Okay.  Well, okay.  But, again, begs the

20 question, where was he on the day that it was filed?  By your

21 own hand, he was in maximum detention facility in El Salvador.

22 And it just is remarkable to me that that point isn't conceded.

23     And how exactly am I supposed to enforce the immediate

24 custodian rule in this case when it's so clear that from the

25 moment he was picked up, it was -- it was, according to the

1  amended complaint, which we'll talk about in a moment, it

2  was -- it was a matter of trying to find out where he was and

3  trying to overcome this lulling him into believing he was going

4  to see a judge.

5      How does this not at least arguably fall into the

6  exception to the immediate custodian rule on one of the claims,

7  given the factual predicate of *Suri*?

8          **MR. GUYNN:**  Your Honor, I would just encourage you --

9  you know, in *Trump v. JGG,* the Court made very clear that

10  claims fall within the core of the writ of habeas -- that

11  claims that fall within the core of the writ of habeas corpus,

12  jurisdiction lies in only one district, the district of

13  confinement.  That was not the District of Maryland at any

14  point during this case.

15          **THE COURT:**  Do you not find it persuasive that the

16  Supreme Court said that in *JGG* but yet affirmed my order

17  without any concern, at least in terms of the order saying that

18  to facilitate his return, bring him back to the United States,

19  and put him back to where he would have been but for the

20  unlawful --

21          **MR. GUYNN:**  I don't find that persuasive.  The

22  Supreme Court doesn't make jurisdictional decisions ab

23  silencio, and it did not specifically address this issue.

24          **THE COURT:**  So you say that the Court steps out there

25  and exerts jurisdiction when it doesn't have it?  And it

1    knows -- since the argument is obvious to you, and obvious to

2    the Court --

3         MR. GUYNN:  I'm not saying that, Your Honor.  I'm

4    saying there were multiple claims that were -- that plaintiffs

5    brought.  What we're saying is that this motion sounds more in

6    habeas, which is one of the claims.

7         THE COURT:  Oh, the motion does.

8         MR. GUYNN:  That's right.  Which the Court did not

9    necessarily have to address in *JGG v. Trump* or in the prior

10   orders here.

11        But this motion sounds in habeas, and as a result, this

12   procedural rule of habeas applies.  That's our position.

13        THE COURT:  Okay.  Understood.

14        Anything else before I make sure the plaintiff has the

15   last word, before we take a break, on this motion?

16        MR. GUYNN:  Nothing further, Your Honor.

17        MR. ROSSMAN:  Your Honor, briefly, *Suri* was

18   physically present in Louisiana when his habeas petition was

19   filed.  I'm reading from the circuit's decision in --

20        THE COURT:  Yeah, the district decision, I thought,

21   actually mentioned that he had been on a plane when it was

22   filed, which I just found to be noteworthy.  But maybe -- maybe

23   I'm wrong.

24        MR. ROSSMAN:  That's right.

25        And the circuit's opinion also quotes from concurrence

1    from Justice Kennedy in 2004, the -- I think it's

2    *Rumsfeld* v. *Padilla*, in that case.

3            **THE COURT:**  Yeah.

4        **MR. ROSSMAN:**  And the unknown custodian rule plainly

5    is designed to address situations like this one where the

6    government is playing a shell game and moving the physical body

7    of a person that they are seeking to remove around to try to

8    defeat their opportunity to be heard I think is not one that,

9    you know, should result in there being no place where the

10   person can seek appropriate relief, and the Fourth Circuit has

11   so held in this case.

12           **THE COURT:**  But now I think Mr. Guynn is making the

13   point, that over this motion, this motion sounds in habeas,

14   and, therefore, we're back to the immediate custodian rule, and

15   I shouldn't be wading into this because it's all about

16   according relief and habeas.

17       **MR. ROSSMAN:**  Your Honor, we don't think we need

18   habeas for this motion to be adjudicated.  We think All Writs

19   Act authority is all that Your Honor needs.  And that's what

20   the courts found in *Suri*, and in *Ozturk*, and in *AARP* as well,

21   the existence of the All Writs Act is all that Your Honor

22   needs.

23       If the question of habeas were to rise in this case, we

24   think, Your Honor, the right answer to that question is, there

25   was a habeas claim in the alternative raised in the original

1  complaint, it was a habeas claim in the amended complaint,

2  you'll have a chance to address that.

3      The relation back doctrine under Rule 15 should bring us

4  back to the jurisdiction that the Court had on the day the

5  action was commenced.  On the day the action was commenced,

6  where else could such a claim be filed?  Should we have filed

7  it in El Salvador?  This is the obvious place where the --

8      **THE COURT:**  Well, I think it turns on you did bring a

9  habeas claim, but the core wasn't habeas.

10     **MR. ROSSMAN:**  Correct, correct, Your Honor.

11     **THE COURT:**  I mean, it's a claim.  But the initial

12  wrongful action took place in Maryland, and you brought several

13  counts, some of which were sounding in habeas and others

14  weren't.

15     **MR. ROSSMAN:**  Correct.

16     And the primary, you say the -- I forgot Your Honor's

17  precise phrasing, but the primary claims were not sounding in

18  habeas, absolutely, Your Honor, and we don't think we needed a

19  habeas claim in order to vindicate the clients' rights, the

20  plaintiffs' rights under due process and under the immigration

21  statutes.  And those were the primary causes of actions.

22     So I said in the original complaint, there's an

23  alternative claim for habeas.

24     All I'm trying to convey to Your Honor is that even if

25  Your Honor reached that basis, even if Your Honor were to

1  consider this as a habeas motion, we think we have a valid

2  basis for hearing it here, although we don't think you need to

3  reach that.

4        **THE COURT:**  Your first position is, under the All

5  Writs Act, to preserve my jurisdiction.

6        **MR. ROSSMAN:**  Correct.

7        **THE COURT:**  I can order this relief simply to have

8  jurisdiction over the case, because if I don't, and he's

9  removed summarily, then I would lose jurisdiction; is that the

10 argument?

11       **MR. ROSSMAN:**  That is the argument, Your Honor.

12    One second, Your Honor.

13    And to prevent frustration of the existing injunction.  So

14 it's the equivalent of, you know, repetition evading review,

15 Your Honor.

16       **THE COURT:**  Mr. Guynn, do you want to respond to that

17 before we take a break, or are you good?

18       **MR. GUYNN:**  I think we're good, Your Honor.

19       **THE COURT:**  All right.  Let's take 15, and then we

20 will address -- I'm not going to be able to rule, obviously, on

21 this motion today, but we will address the motion for leave to

22 amend.

23       **DEPUTY CLERK:**  All rise.  This Honorable Court stands

24 in recess for 15 minutes.

25    (Recess taken from 1:19 p.m. to 1:44 p.m.)

1          **DEPUTY CLERK:**  All rise.  This Honorable Court

2     resumes in session.

3          **THE COURT:**  All right, counsel, thank you for your

4     patience.

5     All right.  So what I would like to do is, on Thursday,

6     take some testimony from an individual, or individuals,

7     witnesses with personal knowledge about the defendants' next

8     steps, if Mr. Abrego is released from the -- from custody in

9     the criminal case in terms of what the lawyers have told me

10    will be to initiate removal proceedings to a third country.

11    And the purpose -- I'll try to get you all a written order

12    as quickly as possible laying out the contours of this

13    testimony, but it's consistent with what we've talked about.

14    And for lack of a better way to put it, the who, what, when and

15    where of the process, what the process is and how it will be

16    conducted.

17         **MR. MOLINA:**  That makes sense, Your Honor.

18    There's -- the only reason you're seeing a question on my face

19    is that I want to make sure that, you know, the Court

20    understands the government may not have decided by that time

21    what -- what action it will take.  But we will have somebody

22    here that can describe that process to you.  I mean --

23         **THE COURT:**  Well, I guess it would have to be

24    someone, too, who is laying out -- so I heard Mr. Guynn say is

25    that first order of business will be removal to a third

1   country.  And then what has not been decided is whether there

2   would be termination of withholding to El Salvador.

3            **MR. MOLINA:**  That's correct.

4            **THE COURT:**  Do you agree with that?

5            **MR. MOLINA:**  That's the way I heard him, and that's

6   my understanding as well.

7            **THE COURT:**  So what is the part you are concerned by

8   Thursday you would not have decided?

9            **MR. MOLINA:**  I don't know -- the agency right now --

10  I guess you've kind of explained it away for me, Your Honor.

11  The agency, it presently has its current plans as to what it

12  will do.  You know, some of those may still be indefinite, you

13  know, for example, like a third country may not have yet been

14  identified, but they may be working on it.

15           **THE COURT:**  And you can have the person tell me how

16  they are working on it, right?

17           **MR. MOLINA:**  Yes, that's -- yes.

18           **THE COURT:**  Here's the bottom line with what I want

19  to accomplish, is if, in fact, the testimony is substantive and

20  persuasive that you are engaging in the very process you're

21  permitted to engage in, and then there is no due process

22  infirmity, then it moots ECF 203.  Right?  Because plaintiff is

23  seeking to return Mr. Abrego to the district of Maryland and to

24  ask me to issue an order that prohibits his removal to outside

25  the United States absent further order of the Court.  I can't

1   really decide that unless I know what, if anything, you're
2   planning to do and the details of it.
3        That doesn't mean I'm going to interfere with it, right?
4   That's what I'm trying to avoid.  I'm trying to avoid getting
5   out there and issuing an order that may be at cross purposes
6   with what DHS is lawfully permitted to do.
7        But given the history of this case, of an unlawful action,
8   a series of unlawful actions, I do believe it's well within my
9   authority to at least get the information, and then determine
10  whether there's any there-there to this motion or not.
11       So that's the spirit.
12       Does that make -- that's why I want someone, Mr. Molina,
13  or more than one, with firsthand knowledge who will, for lack
14  of a better term, bind the defendants, bind the agencies, who
15  can answer these questions about the immediate next steps, if
16  Mr. Abrego is released from criminal custody.
17       And we'll -- we'll flesh it out more.  It will be subject
18  to examination by you in the first instance, whoever from the
19  team wishes to direct examine, cross-examination by the
20  plaintiffs, and then if I have any questions.  And it can be
21  more than one witness.  I will let you decide.
22       And I don't believe we need any -- I'm going to do it on
23  Thursday, so it's a quick turnaround.  So we'll see of -- the
24  morning of, please give me and the plaintiffs notice as to who
25  it is, and then we'll set in the hearing for -- let's see.  Can

1  we say 1:00?

2          **MR. MOLINA:**  Yes, Your Honor.

3          **THE COURT:**  Okay.  All right.  So 1:00 p.m.  And then

4  we'll go from there, once I just get the facts.  Okay?

5       Any questions about that, plaintiffs?

6          **MR. ROSSMAN:**  No, Your Honor.

7          **THE COURT:**  Okay.  All right.  So we'll see you

8  Thursday at 1:00.  And by 9:00 a.m. that morning, if you could

9  tell me who the witness or witnesses will be, and the

10  plaintiffs, that will be helpful.

11          **MR. MOLINA:**  Yes, Your Honor.

12          **THE COURT:**  All right.  Thank you.

13       Last up for today is 211, which is plaintiffs' motion for

14  leave to amend the complaint.  And I actually want to start

15  with defendants, because in my view, there's two procedural

16  avenues that this can go down.  And I need to get your input as

17  to which you prefer.

18       So you know that leave to amend is freely granted.  It's

19  only denied if it's bad faith, futility, and one other I can't

20  remember because it really doesn't apply.  It seems like the

21  one that would really apply here would be futility; am I right

22  about that?  That if you were to oppose the motion for leave to

23  amend, you would be doing it on futility grounds?

24          **MR. MOLINA:**  I would imagine so, yes, Your Honor.

25          **THE COURT:**  Because you asked to be heard on this, so

1  that's why I wanted to know on what basis you would oppose

2  amendment, and it seems to be futility.

3       **MR. GUYNN:**  Your Honor, so futility, I think, would

4  be the primary argument we would advance, but we do have

5  concerns about some of the amended allegations, and we're not

6  sure whether -- we believe they are false and they might not

7  have been brought in good faith, and we need to explore that

8  with plaintiffs' counsel.

9       **THE COURT:**  Okay.  Well, here's the options, here's

10  the procedural doors you've got.

11      You got door number one, which is I can give you an

12  opportunity to respond to the motion for leave.

13      Apart from any other arguments you might make, you would

14  be expected to make all of your futility arguments in your

15  response.

16      And because futility is assessed under the same grounds as

17  12(b)(6), it's the same standard, right, a motion to dismiss

18  for failure to state a claim or for any other 12(b) reasons,

19  right?  Then your response would satisfy that purpose.  And I

20  would be assessing the sufficiency of the complaint.

21      If I deny -- if I grant the motion in whole or in part,

22  that's it.  I'll file the amended complaint, and then you're

23  going to have to answer it.  Okay?  Because you've made all

24  your futility arguments, which are the same arguments that you

25  would make on a 12(b)(6) basis.

1       Alternatively, I could accept amendment, because I think

2   the great weight of the law says I must accept the amendment.

3   I have to give leave when -- you know, I have to freely grant

4   leave.

5       And then I would permit you the opportunity to move to

6   dismiss one more time, right?  Just one more, to take up -- to

7   take your best shot at all of the claims, response, reply.  And

8   once I decide that if any of the claims survive, then you will

9   answer the complaint.

10      So you're asking for an opportunity to respond.  I just

11  want to be clear, if you respond, you're going to make all of

12  your arguments now so that I can fully and fairly resolve them.

13  And if any of the claims survive, the next step is answering so

14  that we don't have any delay in the case.

15      And I think I'm procedurally, you know, giving you the

16  floor to tell me which one you would like.

17          **MR. GUYNN:**  Under the federal rules, Your Honor, I

18  think we're actually entitled to both, to raise futility

19  arguments in the motion for leave to amend.  And if those are

20  overruled, we nevertheless have the option to then file a

21  motion to dismiss.

22          **THE COURT:**  I disagree with you.  I don't think

23  that's -- you're entitled to that.  I think that's in my

24  authority to control the litigation.  I'm giving you about as

25  crystal clear notice on this one as possible.

1    I mean, again, absent any changed circumstances, the

2    amended complaint is what it is.  You make your -- that you

3    take your best shot on futility, all the 12(b) grounds, and if

4    I deny the motion, then you've got your answer, your arguments

5    were persuasive.

6        If I grant the motion in hole or in part, you've made your

7    arguments and we don't need to hear them again because you keep

8    making many arguments over and over again.  I just want to

9    consolidate them all in one place and let's duke it out and let

10   me make a final decision.

11        **MR. GUYNN:**  Thank you, Your Honor.

12        And I hope you appreciate that we are making many

13   arguments for two reasons.  We think there's many infirmities

14   with their complaint.  And also, we need to preserve --

15        **THE COURT:**  I understand.

16        **MR. GUYNN:**  So I appreciate the Court's position.  I

17   hope the Court appreciates ours.

18        We will oppose the motion.

19        **THE COURT:**  For leave?

20        **MR. GUYNN:**  Yeah, our intention is to oppose the

21   motion for leave to amend.  We will raise our futility

22   arguments.

23        **THE COURT:**  All right.  Plaintiffs, my inclination is

24   to give the defendants the opportunity to do that, you reply.

25   And then I fully intend at this juncture, whatever I decide, we

1   then, if there's any claims that survive, then we go forward,

2   and the defendants are directed to answer.  And we proceed

3   accordingly with discovery.

4      It does seem to be the most efficient way of doing it, and

5   so I'm certainly not going to stand in the way of efficiency.

6      Plaintiffs, do you have any cause or concern about

7   proceeding this way?

8      **MR. SANDOVAL-MOSHENBERG:**  No, that's very good, Your

9   Honor.  Thank you.

10      **THE COURT:**  Okay.  So then the motion for leave to

11   amend was filed on the 2nd.  That would give you two weeks to

12   oppose.  So it would be the 16th that I'd hear from you.

13      Does that work?

14      **MR. GUYNN:**  Yes, under the federal rules.

15      **THE COURT:**  All right.  Great.  And then replies, and

16   then we'll turn right to it, unless something happens, I don't

17   know.  So anyway, good?

18      Any questions or concerns from the plaintiff?

19      **MR. SANDOVAL-MOSHENBERG:**  No, Your Honor.  It's very

20   clear.  Thank you.

21      **THE COURT:**  All right.  So is there anything else,

22   then, that we need to discuss today?

23      **MR. MOLINA:**  Your Honor, I think I was just asked to

24   provide one clarification.  I'm not making argument here.  I'm

25   just sort of clarifying.

1          THE COURT:  Right.

2          MR. MOLINA:  *Suri*, *Ozturk*, and this case, just since

3    there was some confusion over the facts.  *Suri* was a case where

4    the person at issue was in detention in Virginia, was in flight

5    to -- in ICE -- through -- in ICE custody going to Louisiana.

6          THE COURT:  Right.

7          MR. MOLINA:  And filed while in flight.  So there was

8    no idea who the custodian would be at that time.

9          THE COURT:  Right.  So I was remembering it

10   correctly.

11         MR. MOLINA:  You were remembering all the pieces

12   correct.  It's just I just wanted to make sure those came

13   together.

14   *Ozturk* was a case where an individual filed in

15   Massachusetts but had been transferred to Vermont, and

16   thereafter transferred to Louisiana.  And the Court there held

17   that if it had been properly filed at the time it was filed in

18   Massachusetts, the proper custodian would have been Vermont;

19   therefore, the Court transferred it to Vermont.

20         Of course, that was another individual who at all times

21   was in custody of the -- of the Immigration and Customs

22   Enforcement.

23         THE COURT:  Right.  But part of what the Second

24   Circuit affirmed was the directive to bring the plaintiff back

25   to the district of Vermont, correct?

1          **MR. MOLINA:**  Yeah, I was only going for the

2    underlying facts to make sure that everyone was staying clear

3    on those.

4          **THE COURT:**  Sure.

5      I'm also right, though, about the scope of affirmance, is

6    that part of that order was to bring it back to ICE custody in

7    Vermont?

8          **MR. MOLINA:**  That is correct, Your Honor.

9          **THE COURT:**  And I understand that we don't have an

10   ICE detention facility in Baltimore, but to just be -- to

11   remind me that was, in part, the scope of the affirmance.

12         **MR. MOLINA:**  Correct, Your Honor.

13         **THE COURT:**  Okay.  Great.  Thank you.

14      Anything else?

15         **MR. ROSSMAN:**  Not from plaintiffs, Your Honor.  Thank

16   you.

17         **THE COURT:**  Thank you.

18         **MR. GUYNN:**  Nothing further from defendants, Your

19   Honor.

20         **THE COURT:**  All right.  Thank you all.  See you

21   Thursday.

22         **DEPUTY CLERK:**  All rise.  This Honorable Court stands

23   adjourned.

24      (Proceedings were concluded at 1:57 p.m.)

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                           Dated this 8th day of July 2025.

13

14

15                           /S/ Paula J. Leeper
                             _____
16
                             Paula J. Leeper, RPR, CRR
17                           Federal Official Reporter

18

19

20

21

22

23

24

25

DEPUTY CLERK: [5]  3/3 3/10 84/23 96/3 104/22
MR. COOPER: [1]  104/15
MR. GUYNN: [91]  3/24 52/22 52/25 53/15
53/12 53/21 54/5 54/14 56/11 56/14 56/22 57/6
57/10 57/13 57/21 57/24 58/2 58/8 58/10 58/13
58/18 58/20 58/23 59/8 59/12 59/16 59/22 60/3 60/6
60/15 60/18 61/2 61/5 61/12 61/17 61/21 62/3 62/7
62/12 63/1 63/4 70/17 71/5 71/11 71/16 72/1 72/5
80/18 81/12 81/15 81/17 82/4 82/11 83/3 83/16
83/21 83/25 84/9 84/16 84/24 85/5 85/13 85/16
85/18 85/22 86/2 86/8 86/11 86/22 87/14 87/25 88/7
88/21 89/6 89/11 89/16 90/8 90/21 91/3 91/8 91/16
94/18 99/3 100/17 101/11 101/16 101/20 102/14
104/18
MR. MOLINA: [46]  4/3 24/17 63/11 63/18 64/2 64/4
64/7 64/10 64/21 64/25 65/3 65/11 65/15 65/19
65/22 65/25 66/5 66/12 66/15 66/25 67/7 67/13
67/24 68/5 68/15 68/18 68/24 69/4 69/20 74/25
95/17 96/3 96/6 96/9 96/17 98/2 98/11 98/24 102/23
102/17 103/11 104/1 104/8 104/12
MR. RAND: [1]  3/21
MR. ROSSMAN: [39]  3/16 31/13 31/17 31/22 32/8
32/11 32/13 33/7 36/6 37/2 37/8 37/13 40/22 41/16
41/20 41/23 56/3 72/11 73/13 73/18 72/21 73/24
75/14 75/16 77/19 77/21 77/23 79/18 80/12 91/17
91/24 92/4 92/17 93/10 93/15 94/6 94/11 96/8
104/15
MR. SANDOVAL-MOSHENBERG: [9]  3/20 20/21 37/17
38/11 39/9 40/5 40/14 102/18 102/19
MS. O'HICKEY: [84]  4/1 4/19 4/23 5/5 5/8 5/11 5/14
5/19 6/1 6/6 6/12 7/12 8/2 8/12 8/23 9/5 9/20 10/3
10/5 10/11 10/13 10/20 10/23 11/9 11/21 12/7 12/12
12/14 12/20 12/25 13/5 13/8 13/10 13/13 13/18
13/21 14/2 14/6 14/10 14/14 14/19 14/22 14/25 15/5
15/11 15/15 16/1 16/9 16/15 16/18 16/24 17/2 17/13
18/23 19/4 22/10 22/16 22/19 23/19 24/22 25/5 25/9
25/24 26/20 27/4 28/7 28/24 29/4 29/20 30/23 31/2
31/5 31/11 42/4 42/25 43/10 43/16 44/23 45/11
45/23 46/16 46/21 47/1 47/16
THE COURT: [267]

/

/S [1]  105/15

1

1.6 percent [1]  38/13
10016 [1]  1/16
11:17 [1]  1/11
12 [4]  99/17 99/18 99/25 101/3
1231 [1]  63/15
1252 [11]  71/9 14/19 14/23 15/21 16/7 18/14 21/20
85/6 86/8 86/13 86/13
1300 [1]  1/19
15 [3]  93/3 94/19 94/24
16 [3]  55/1 55/20 55/23
165 [7]  4/9 4/17 4/24 19/3 19/14 19/22 22/5
167 [1]  50/2
16th [6]  58/6 59/20 59/23 62/1 83/6 102/12
18 [1]  38/19
189 [1]  50/2
191 [1]  48/9
197 [1]  48/10
1983 [1]  48/12
1:00 [2]  98/1 98/8
1:00 p.m [1]  98/3
1:19 [1]  94/25
1:44 [1]  94/25
1:57 [1]  104/24

2

200 [5]  4/10 22/7 29/3 48/2 51/25
2000 [1]  50/3
2002 [1]  12/10
2003 [1]  48/10
2004 [1]  92/1
2017 [1]  49/23
2019 [2]  35/1 74/14
202 [1]  2/5
2025 [3]  1/11 6/17 105/12
203 [1]  4/10 33/25 96/22
203-3 [1]  33/25
20530 [1]  2/5
21 [3]  51/5 32/8 32/8
211 [3]  4/11 4/14 98/13
212 [1]  1/17
218-9376 [1]  1/24
21st [1]  5/16
22030 [1]  1/23
25 [1]  6/17
27th [3]  5/7 7/17 21/7
28 [2]  11/18 105/6
28th [4]  10/18 11/3 11/12 20/6
28th of [2]  11/7 12/6
290 [1]  48/9
295 [1]  1/16
2nd [1]  102/11

3

300 [1]  1/23
30th of [1]  63/25
358 [1]  49/22
363 [1]  49/22
366 [1]  50/12

4

4103 [1]  1/23
434 [1]  1/24
4809 [1]  2/5

5

52 page [1]  82/20
53 [1]  53/10
5th [1]  1/16

6

617 [1]  1/21
689 [1]  48/11
693 [1]  48/11

7

7000 [1]  1/17
712-7165 [1]  1/21
7165 [1]  1/21
719 [1]  48/11
753 [1]  105/6

8

849-7000 [1]  1/17
852 [1]  49/22
856-4809 [1]  2/5
8:25-cv-00951-PX [1]  1/6
8th [1]  105/12

9

900 [1]  1/20
93,000 [1]  71/12
9376 [1]  1/24
950 [1]  2/4
951 [1]  3/11
9:00 a.m [1]  98/8

A

a.m [2]  1/11 98/8
AARP [4]  37/4 38/5 78/14 92/20
ab [1]  90/22
ABC [1]  20/22
able [6]  52/21 63/22 66/5 66/6 70/2 94/20
above [2]  16/20 105/9
above-entitled [1]  105/9
ABREGO [92]  1/4 3/12 5/10 5/13 5/16 8/10 9/18
19/19 19/23 20/10 20/18 20/19 21/1 21/8 21/15
22/12 22/23 23/7 24/1 24/3 28/3 28/11 30/6 32/15
32/23 33/19 34/4 34/19 35/9 36/12 37/25 38/7
40/12 41/1 42/23 43/23 44/2 44/18 45/9 48/6 48/15
48/21 49/11 49/17 50/20 50/22 51/6 52/7 52/15
52/22 55/1 55/4 55/20 56/20 57/13 58/25 59/5
62/14 62/22 64/14 67/10 67/21 68/3 68/7 69/3 69/9
69/20 70/4 71/3 71/15 72/22 74/4 74/11 74/21 75/3
76/15 77/10 78/22 80/12 82/1 82/7 82/23 84/5 85/7
87/8 87/18 89/18 95/8 96/23 97/16
Abrego's [2]  12/23 21/12
absent [3]  54/15 96/25 101/1
absolutely [3]  42/19 50/10 93/18
academic [1]  17/10
accept [5]  62/14 63/23 84/23 100/1 100/2
acceptable [3]  31/20 65/17 65/22
accepting [2]  69/3 70/3
access [1]  32/15
accomplish [1]  96/19
accordance [1]  32/15
accorded [7]  22/13 27/1 28/3 28/4 29/15 48/6 48/24
according [3]  20/5 89/25 92/16
accordingly [2]  29/19 102/3
account [1]  7/10
accurate [1]  81/19
accustomed [1]  33/17
acknowledge [2]  46/9 64/16
acknowledged [5]  42/25 44/1 44/21 45/12 45/24
acknowledgement [1]  22/2
acknowledging [2]  43/7 43/8
act [8]  18/5 75/2 76/23 86/3 86/6 92/19 92/21 94/5
action [15]  18/10 19/8 25/15 26/9 26/16 27/17
27/20 30/25 37/23 71/4 93/5 93/5 93/12 95/21 97/7
actionable [1]  33/5
actions [19]  18/18 18/20 26/22 33/16 40/6 51/3
52/16 53/21 97/8
actually [10]  34/1 39/6 49/2 60/10 61/13 72/22
81/24 91/21 98/14 100/18
add [2]  31/3 42/23
additional [2]  63/7 70/12
address [18]  4/6 14/22 15/17 15/25 31/7 42/4 46/14
46/17 47/22 48/7 52/3 53/24 90/23 91/9 92/5 93/2
94/20 94/21
addressed [1]  14/20
addresses [1]  86/5
addressing [1]  55/9
adjourned [1]  104/23
adjudicate [3]  18/16 78/19 78/21
adjudicated [1]  92/18
administration [1]  71/14
administrative [2]  45/24 46/1
admitting [1]  69/12
advance [4]  20/19 26/16 66/19 99/4
advisement [2]  49/8 51/20
affect [1]  55/6
affirm [2]  55/3 55/3
affirmance [4]  14/15 14/16 104/5 104/11
affirmed [12]  15/9 17/7 32/24 78/15 81/6 81/22
81/22 81/23 82/9 99/6 99/16 103/24
afford [1]  26/3
afforded [1]  76/5
after [12]  6/5 9/11 10/18 14/17 20/7 55/17 56/17
72/2 81/4 83/5 85/2 88/18
again [38]  7/3 11/14 15/14 21/20 22/4 30/2 30/8
33/19 34/22 34/25 41/6 44/3 44/4 48/3 52/18
53/12 53/17 54/8 54/20 54/23 61/12 66/16 67/25
66/9 66/17 70/17 72/12 77/10 80/5 82/19 83/11 87/9
87/14 89/19 101/1 101/7 101/8
against [6]  5/13 5/16 5/23 18/12 45/16 59/18
agencies [1]  97/14

agency [6]  66/2 69/13 70/6 70/8 96/9 96/11
agency's [1]  66/25
agencies [1]  71/23
agents [2]  17/10 71/23
agree [7]  16/7 25/22 33/4 54/8 54/9 80/12 96/4
agreeing [1]  82/1
agreement [9]  8/16 44/12 46/13 46/19 47/5 47/6
50/14 54/12 54/16
agreements [2]  62/13 63/20
agrees [1]  81/8
ahead [1]  69/14
AIDED [1]  1/25
air [1]  88/16
airport [1]  38/2
al [4]  1/4 1/7 3/12 3/12
alien [3]  57/2 64/19 71/23
aliens [1]  62/14
alighted [1]  31/25
all [111]
allegations [2]  25/21 99/5
allege [1]  25/24
alleged [1]  42/19
allegedly [1]  50/10
alleges [1]  49/11
alleviate [1]  77/1
alluded [1]  26/20
alone [1]  49/20
along [2]  45/8 70/20
already [7]  5/13 22/5 26/23 54/15 61/21 84/24
87/20
also [17]  2/6 4/2 8/19 14/7 20/2 33/14 46/14 46/17
50/12 50/24 58/16 70/23 74/24 86/24 91/25 101/14
104/5
alteration [1]  50/5
alternative [5]  28/20 29/2 49/6 92/25 93/23
Alternatively [1]  100/1
although [3]  39/4 53/18 94/2
always [2]  18/6 46/21
am [20]  5/18 9/22 12/7 12/10 12/19 22/15 29/17
30/22 36/1 45/7 48/1 48/10 57/5 62/25 64/20 67/3
70/3 85/21 89/23 98/21
amend [7]  94/22 98/14 98/18 98/23 100/19 101/21
102/11
amendment [4]  4/12 38/12 42/23 88/3 90/1 93/1 99/5
99/22 101/2
amendment [4]  33/17 99/2 100/1 100/2
Americans [1]  57/25
among [1]  75/3
ANDREW [3]  1/14 3/16 31/13
animate [1]  25/15
another [22]  14/18 17/1 28/20 32/20 35/22 56/9
57/4 67/5 67/18 68/12 82/11 82/21 103/20
answer [16]  23/17 54/15 56/4 56/7 56/8 58/4 62/19
64/23 83/19 87/23 92/24 97/15 99/23 100/9 101/4
102/2
answering [1]  100/13
answers [2]  9/13 79/7
ante [11]  23/8 23/13 23/24 24/9 24/18 27/3 33/1
48/19 68/2 68/6 74/10
anything [15]  31/3 31/6 41/22 42/3 44/4 45/3 51/12
55/6 84/8 85/12 89/9 91/14 97/1 102/21 104/14
anyway [2]  80/23 102/17
anyways [1]  10/14
anywhere [3]  41/15 55/13 74/21
APA [1]  73/21
Apart [1]  99/13
appeal [1]  14/18
appealed [1]  83/10
Appeals [1]  73/19
appearance [1]  83/1
APPEARANCES [2]  1/12 2/1
appears [2]  19/25 74/3
appetite [2]  46/12 46/19
applies [6]  18/19 19/6 19/7 41/17 61/14 91/12
apply [6]  5/1 19/8 51/10 62/21 98/20 98/21
appreciate [4]  72/8 81/12 101/12 101/16
appreciates [2]  54/15 101/17
appropriate [9]  73/6 74/9 74/15 76/9 76/20 77/23
77/25 79/7 92/10
appropriately [1]  75/25
April [7]  10/18 11/3 11/7 11/18 12/6 20/6 32/4
April 28 [1]  11/18
April 28th [3]  10/18 11/3 20/6
April 4 [1]  32/4
arbiter [1]  81/5
aren't [4]  21/8 79/16 81/9 81/25
arguably [3]  45/5 48/20 90/5
argue [4]  19/18 21/20 23/12 48/5
argued [5]  16/4 16/7 21/11 21/23 21/24
argues [1]  18/7
arguing [1]  22/9
argument [28]  5/9 7/15 8/1 8/19 14/8 16/12 17/4
17/15 17/16 18/3 18/5 18/22 18/25 19/25 21/6 21/14
21/17 21/18 21/22 22/4 29/12 29/18 30/22 91/1
94/10 94/11 99/4 102/24
arguments [15]  4/25 6/20 19/3 19/16 99/13 99/14
99/24 99/24 100/12 100/19 101/4 101/7 101/8 101/13
101/22
arm [1]  6/23
ARMANDO [2]  1/4 3/12
arose [1]  24/1
around [2]  35/16 92/7
arrest [10]  25/12 48/21 68/7 68/10 68/11 68/12
68/22 68/25 69/4 73/7
arrested [6]  23/14 24/10 25/23 25/25 38/23 69/6
Article [1]  48/12
ascertain [1]  69/14
aside [3]  34/14 39/18 40/16
ask [25]  7/9 8/7 12/16 13/19 19/8 26/5 29/3 29/12
30/1 31/23 33/12 35/18 37/12 42/22 49/6 52/1
62/6 64/9 67/5 73/12 78/21 79/14 81/1 96/24
asked [8]  22/13 28/21 30/12 65/10 65/11 69/1 98/25
102/23

## A

asking [29] 10/15 28/24 49/15 57/8 58/3 60/2 73/22
74/18 74/23 75/8 76/21 77/25 81/23 84/16 84/20 84/21
85/17 86/11 87/6 87/6 100/10
aspects [2] 24/8 48/25
asserted [2] 44/15 50/17
asserting [1] 24/5
assess [1] 30/10
assessed [1] 99/16
assessing [1] 99/20
assist [1] 31/18
ASSISTANT [1] 2/3
assume [3] 14/12 75/10 83/9
assuming [3] 14/18 59/25 60/3
assurances [1] 37/19 64/19 77/3
assure [5] 47/13 76/14 76/15 82/25 87/8
assured [2] 32/19 76/17
astonishing [1] 33/24
attempt [1] 60/4
attempting [2] 64/17 64/17
attorney [5] 2/3 18/11 18/15 38/6 43/17
Attorney's [2] 56/22 60/8
authorities [2] 34/5 34/20
authority [18] 15/9 30/7 39/7 44/19 49/16 53/19
55/21 58/9 63/14 73/17 75/2 76/23 78/11 78/16 86/6
92/19 97/9 100/24
available [6] 22/23 59/17 60/1 60/7 80/15 86/18
availing [1] 19/17
Avenue [2] 1/16 2/4
avenues [1] 98/16
aver [1] 25/22
avoid [4] 7/22 78/24 97/4 97/4
avoided [1] 52/19
aware [3] 8/15 9/22 63/20
away [5] 25/12 78/23 79/16 87/9 96/10

## B

back [48] 5/22 6/24 7/1 9/12 10/16 12/21 13/1
20/10 20/18 20/20 21/16 22/12 23/1 24/20 26/25
27/16 30/9 30/12 30/17 30/20 32/2 35/21 41/4 42/23
44/2 45/3 45/9 45/12 56/14 58/21 62/24 64/14 69/7
69/17 72/10 75/19 79/2 82/4 85/6 87/12 88/5 90/18
90/19 92/14 93/3 93/4 103/24 104/6
background [1] 13/25
bad [3] 44/5 74/2 98/19
bail [1] 74/4
bailiwick [1] 36/19
Baker [1] 79/24
Baltimore [7] 24/12 38/23 67/10 67/23 68/4 74/12
104/10
bar [4] 18/19 49/14 59/13 61/14
Barr [1] 89/13
barred [1] 50/23
based [6] 12/2 52/3 53/13 59/17 66/22 82/15
baseline [1] 74/23
bases [2] 82/5 83/4
basically [1] 30/11
basis [12] 11/19 51/7 52/14 61/20 61/21 68/10 73/6
76/25 93/25 94/2 99/1 99/25
bear [2] 42/17 60/9
bears [1] 50/9
because [105] 4/25 5/22 6/10 6/16 6/20 7/3 7/13
7/20 8/20 9/10 10/25 11/12 13/2 13/5 13/13 15/2
15/3 15/20 16/6 16/22 17/9 17/11 17/25 18/5 18/8
19/18 19/21 19/24 20/14 20/16 21/5 21/8 21/14 23/4
26/23 27/6 28/2 28/23 28/25 29/8 30/2 30/5 32/19
32/25 33/18 35/1 35/14 35/16 39/7 40/1 41/4 41/9
44/1 45/19 47/3 47/17 47/23 47/25 48/5 48/16 49/8
49/17 49/19 51/15 51/16 51/21 52/10 52/14 52/19
54/8 54/9 54/20 56/8 56/15 62/1 66/1 66/5 67/2
67/25 68/3 68/6 68/11 71/16 73/10 73/15 75/11
75/21 80/4 80/7 81/19 83/17 84/4 84/9 88/9 88/14
92/15 94/8 96/2 98/25 99/2 99/16 99/23
100/1 101/7
bed [3] 21/19 42/2 66/21
before [37] 1/10 3/11 3/13 11/24 12/6 13/19 17/8
17/17 17/17 17/18 21/10 23/10 23/23 27/17 31/4
32/23 35/4 37/3 38/5 38/21 40/7 40/7 40/22 48/21
56/16 61/1 71/1 72/22 74/20 74/20 78/2 78/22 80/10
84/23 91/14 91/15 94/17
began [7] 11/3 11/7 11/18 12/6 20/5 20/7 25/22
begin [10] 18/4 31/14 63/15 66/2 66/3 67/15 67/19
70/1 70/21 77/18
beginning [4] 3/15 46/9 71/13 87/21
begs [1] 89/19
begun [1] 77/16
behalf [4] 1/13 2/2 3/25 18/10
behavior [5] 42/15 42/15 42/19 50/6 50/11
behold [1] 7/18
being [12] 11/23 13/14 23/13 24/11 27/9 34/21 39/2
45/15 46/8 76/16 78/22 92/9
believe [25] 6/12 8/2 9/9 9/21 10/21 11/1 11/2 13/10
17/22 20/17 22/18 26/2 32/4 41/1 43/8 46/15 51/21
55/22 62/7 68/15 72/6 76/12 83/21 97/8 97/22 99/6
believed [2] 9/17 17/23
believes [1] 17/20
believing [1] 90/3
belong [1] 47/8
bench [1] 19/15
benefit [1] 75/3
Benson [1] 89/11
best [4] 20/2 76/19 100/7 101/3
better [2] 95/14 97/14
between [8] 14/1 24/2 48/13 52/16 59/20 76/15
76/15 88/12
beyond [2] 13/15 73/19
bind [3] 41/15 97/14 97/14
binding [6] 15/24 40/25 41/21 46/19 47/5 77/3
bit [7] 6/10 22/17 26/10 63/19 64/11 66/19 77/14
blanket [1] 79/15
blessed [2] 86/16 86/17

blinks [1] 20/23
body [1] 92/6
bombardment [?] ...
both [5] 40/14 48/14 54/23 56/25 100/18
bottom [1] 96/18
bound [2] 33/9 80/10
bounds [1] 87/7
box [1] 47/24
Branch [1] 57/11
break [3] 89/10 91/15 94/17
Bridge [1] 1/23
Bridget [2] 2/7 4/1
brief [2] 34/2 78/11
briefed [1] 19/15
briefly [1] 91/17
bring [14] 5/22 7/1 9/12 20/10 22/20 45/3 45/9
79/2 86/2 90/18 93/3 93/8 103/24 104/6
bringing [3] 10/16 13/1 42/23
brings [1] 68/13
brining [1] 75/19
brought [9] 20/18 21/16 23/1 30/20 41/4 44/1 91/5
93/12 99/7
burden [17] 35/20 36/5 36/5 42/18 42/18 42/21
42/23 44/3 44/6 44/10 44/11 50/10 50/13 51/14 53/8
Bureau [1] 73/19
bus [2] 87/5 88/5
business [2] 70/4 95/25
busy [1] 66/18
buy [2] 52/19 60/17

## C

call [3] 3/9 49/13 66/9
called [1] 3/2
came [1] 103/12
can't [13] 5/23 11/22 11/25 12/1 13/8 13/9 13/11
24/20 26/6 27/22 48/25 52/20 55/5 66/10 69/8 75/11
77/18 79/8 82/11 82/15 85/19 96/25 98/19
candid [1] 11/7
cannot [3] 35/10 51/14 73/4
careful [1] 12/2
case [109]
cases [13] 7/7 17/19 18/16 36/10 38/14 38/16 38/21
39/13 78/10 86/23 88/9 88/22 89/13
categorically [1] 50/23
caught [2] 51/6 59/15
cause [4] 18/9 25/15 26/16 102/6
causes [2] 25/15 93/21
CBP [3] 63/13 63/21 66/18
ceases [1] 42/8
CECOT [2] 30/7 87/23
cede [2] 56/3 83/12
central [1] 22/25
certain [7] 9/6 50/21 50/23 65/19 65/22 66/6 66/17
certainly [7] 10/5 14/2 22/2 30/23 31/9 37/17
102/5
CERTIFICATE [1] 104/25
certify [1] 105/6
cessation [13] 36/3 36/4 41/19 41/25 42/6 42/7
44/4 45/10 45/18 50/5 53/14 53/25 54/18
chain [2] 1/23 73/22
chair [1] 79/11
challenge [3] 25/8 30/19 49/19
challenged [6] 42/16 44/13 44/15 50/4 50/15 50/18
chance [2] 31/6 93/2
change [3] 50/7 59/19 61/12
changed [4] 7/10 21/5 59/9 101/1
changing [1] 4/25
chaos [2] 52/18 52/18
charge [1] 6/23
charges [2] 13/3 13/6
charging [1] 7/2
checked [1] 17/19
checkup [1] 24/16
choose [1] 60/2
circuit [26] 15/6 15/16 15/20 16/4 16/8 17/17
21/23 42/13 48/10 48/11 48/11 49/23 58/15 73/20
73/21 78/15 78/16 81/22 81/23 84/14 86/17 86/17
86/23 89/4 92/10 103/24
circuit's [4] 14/15 15/12 91/19 91/25
circumstance [1] 64/13
circumstances [8] 5/1 7/10 21/5 64/11 67/16 72/17
72/25 101/1
circumstantially [1] 66/17
cite [2] 36/10 78/10
cited [1] 33/24
citing [1] 49/22
citizen [1] 38/17
CIVIL [2] 2/4 3/11
claim [11] 18/9 22/21 89/16 92/25 93/1 93/6 93/9
93/11 93/19 93/23 99/18
claims [14] 22/20 25/16 48/8 50/3 90/6 90/10 90/11
91/4 91/6 93/17 100/7 100/8 100/13 102/1
clarification [1] 102/24
clarify [3] 14/24 40/24 41/10
clarifying [1] 102/25
Clarke [2] 44/10 49/22
class [2] 26/22 37/23
clause [1] 78/17
clean [1] 76/14
clear [16] 18/14 42/19 50/10 51/4 51/15 59/23
61/24 73/3 77/5 88/3 89/24 90/9 100/11 100/25
102/20 104/2
clearly [4] 5/21 8/22 91/1 20/4
client [10] 5/15 11/1 38/6 38/8 65/4 65/17 66/16
78/6 78/18 79/15
client's [2] 35/8 65/8
clients [11] 8/11 12/17 13/19 14/3 43/3 43/8 45/2
52/17 58/7 84/6 87/25
clients' [1] 93/19
closer [3] 62/15 62/18 75/13
clue [1] 20/24

co [2] 36/19 46/2
co-counsel [1] 46/2
co-conspirators [?] ...
colloquy [1] 7/23 63/1
come [10] 6/24 24/15 26/25 30/12 47/5 54/12 54/22
72/10 79/10 87/11
comes [4] 3/13 50/1 50/8 53/6
comfortable [1] 4/21
coming [4] 13/19 20/16 20/20 65/6
commanding [1] 87/11
commence [1] 18/16
commenced [4] 86/25 87/1 93/5 93/5
comments [2] 54/23 59/2
committed [1] 67/3
committing [1] 45/25
common [2] 20/7 20/25
communicate [2] 66/7 70/2
communicating [1] 57/4
communications [1] 63/22
community [2] 57/25 82/24
compelled [1] 49/24
competent [2] 76/9 78/2
complaint [32] 4/12 22/22 23/21 23/21 24/23 24/24
25/1 25/2 25/10 25/19 28/4 29/13 29/23 29/25 30/10
33/6 33/10 33/14 38/12 49/11 62/23 88/3 90/1 93/1
93/1 93/22 98/14 99/20 99/22 100/9 101/2 101/14
complete [3] 22/24 32/24 33/2
completely [2] 29/7 52/19
complied [1] 50/12
complies [2] 17/21 29/1 29/23 47/18
comply [1] 67/1
complying [4] 27/18 42/9 66/24 81/2
COMPUTER [1] 1/25
COMPUTER-AIDED [1] 1/25
conceded [3] 21/4 49/12 89/22
concern [5] 7/23 72/14 73/11 90/17 102/6
concerned [2] 53/13 96/7
concerns [6] 11/12 42/8 53/24 73/10 99/5 102/18
concert [2] 20/3 57/3
conclude [2] 48/25 52/8
concluded [1] 104/24
concludes [1] 34/11
conclusively [1] 51/23
concurrence [1] 91/25
conditions [7] 55/7 58/6 59/9 81/3 82/2 82/25 84/5
conduct [5] 44/5 44/13 44/20 50/15 51/13
conducted [1] 95/16
confer [4] 46/21 54/2 54/7 87/25
Conference [1] 105/10
confident [1] 67/4
confined [1] 42/14
confinement [5] 87/17 88/10 88/23 89/17 90/13
confirmed [4] 10/21 11/4 66/16 70/14
conflict [1] 48/13
conformance [1] 105/10
confused [1] 6/10
confusion [1] 103/3
consider [6] 46/23 47/19 50/4 59/16 70/24 94/1
considered [1] 70/16
consistent [1] 71/7 95/13
consolidate [1] 101/9
Constitution [3] 32/16 33/17 48/13 74/20 76/5
constitutional [2] 37/18 39/22
contact [1] 69/25
contemplates [5] 28/5 48/19 49/4 53/10 53/23
contemplation [1] 76/22
contend [2] 76/6 76/7
contended [1] 21/7
contention [1] 39/22
context [6] 14/25 43/19 50/9 62/22 63/7 86/17
continue [1] 7/14
CONTINUED [1] 2/1
continues [1] 32/18
contours [1] 95/12
contradict [1] 12/10
contrary [2] 12/5 21/13
control [3] 10/1 87/3 100/24
controlling [1] 86/6
controls [1] 86/7
controversy [14] 23/4 23/25 28/2 28/18 32/17 32/23
36/17 41/8 48/8 48/14 48/16 49/3 51/18 54/10
conversation [3] 36/20 40/1 69/5
convey [1] 93/24
convicted [1] 40/12
conviction [2] 40/18 50/21
COOPER [3] 1/18 3/19 31/18
core [4] 87/20 90/10 90/11 93/9
corpus [1] 90/21
correct [29] 5/11 5/13 6/6 9/5 10/18 11/14 15/4
15/5 16/23 16/24 19/4 22/16 24/17 25/9 48/18 58/19
63/25 65/16 71/11 93/10 93/10 93/15 94/6 96/3
103/12 103/25 104/8 104/12 105/7
corrected [1] 45/12
correction [1] 11/19
correctly [1] 103/10
couldn't [1] 15/3
counsel [15] 3/7 3/14 3/15 8/8 11/15 20/19 21/22
40/2 46/22 50/24 62/3 70/1 80/23 95/3 99/8
counsels' [1] 36/19
countries [4] 62/12 62/21 63/9 63/22
country [64] 23/15 30/18 35/5 35/10 35/23 36/21
37/19 37/20 37/21 38/9 38/15 38/24 39/8 39/20
39/21 39/23 39/24 40/9 47/10 50/23 51/1 51/9
52/8 53/22 59/1 60/4 61/3 61/22 62/2 62/4 62/6
62/10 62/10 62/11 63/16 63/19 64/3 64/11 64/14
64/18 64/18 67/22 69/8 69/14 70/5 70/15 70/22
71/13 72/16 72/17 72/22 73/4 73/5 77/11 77/15
77/22 77/25 78/8 78/23 87/2 95/10 96/1 96/13
counts [1] 93/13
couple [2] 56/7 80/18
course [14] 10/13 15/7 31/16 36/21 36/24 37/16
38/5 40/15 43/9 42/22 51/8 69/12 73/13 103/20
court [139]

## C

Court's [18] 8/20 10/6 14/16 15/16 21/22 22/3 22/17
33/15 35/3 52/24 53/8 53/25 54/5 54/12 83/4 83/13
83/5 101/16
courtesy [1] 20/25
courtroom [1] 77/12
courts [5] 18/8 18/14 49/23 86/16 92/20
cracks [1] 74/1
created [1] 74/1
credibility [1] 80/4
credit [1] 7/7
Crenshaw [3] 55/2 81/8 81/8
crime [1] 6/24
crimes [1] 13/14
criminal [28] 5/23 8/9 9/9 9/17 11/18 12/5 13/2
13/6 20/5 20/8 33/23 34/5 34/19 36/12 40/13 52/16
52/23 55/5 58/7 69/21 71/4 71/9 71/15 71/19 72/2
72/4 95/9 97/16
criminally [4] 21/2 55/10 56/20 57/15
critical [3] 32/22 33/18 36/16
cross [3] 56/24 97/5 97/19
cross-examination [1] 97/19
CRR [1] 105/16
crystal [2] 61/24 100/25
current [5] 37/18 55/24 60/3 70/21 96/11
currently [4] 27/8 49/17 58/10 61/3
custodian [10] 87/5 88/13 89/2 89/4 89/24 90/6
92/4 92/14 103/8 103/18
custody [46] 6/7 6/7 8/21 8/23 9/18 19/19 19/25
21/9 28/12 34/7 34/19 34/20 36/13 39/7 39/14 39/15
52/23 55/5 57/15 59/18 61/8 61/25 62/16 62/18
63/14 66/11 69/10 70/18 70/19 70/19 71/3 71/3
71/19 71/21 71/22 72/13 72/15 74/5 75/9 76/16
77/18 95/8 97/16 103/5 103/21 104/6
customary [1] 33/13
Customs [1] 103/21
cv [1] 1/6

## D

danger [4] 82/14 82/23 83/1 83/17
dangerous [2] 57/1 83/21
dark [1] 77/11
date [4] 11/22 69/22 72/3 72/6
Dated [1] 105/12
day [20] 6/17 20/17 23/14 45/9 60/21 67/20 69/2
76/17 78/8 78/8 81/5 82/19 88/5 88/14 88/15 88/16
89/20 93/4 93/5 105/12
days [8] 5/20 6/4 7/18 21/15 56/8 61/1 72/25 77/15
DC [2] 1/20 2/5
deal [2] 8/1 54/10
deals [1] 47/6
decency [1] 21/6
decide [14] 15/2 28/6 28/25 29/8 29/8 59/21 61/25
73/17 80/11 82/7 97/1 97/21 100/8 101/25
decided [7] 28/19 29/11 48/15 87/10 95/20 96/1
96/8
deciding [1] 13/23
decision [14] 14/12 15/13 16/11 17/25 18/10 30/6
35/18 60/14 61/15 82/6 83/5 91/19 91/20 101/10
decisions [3] 18/2 18/17 90/22
declaration [4] 26/6 26/11 26/15 33/15
declaratory [5] 26/4 26/7 26/18 26/21 49/13
dedicating [1] 69/13
deeply [1] 49/9
defeat [1] 92/8
defendant [10] 34/6 34/10 44/13 45/5 45/5 49/24
50/9 50/13 82/17 86/18
defendants [53] 1/8 2/2 3/25 4/2 4/4 4/13 5/9 5/12
6/17 9/17 9/21 10/16 19/19 19/21 20/2 20/4
20/24 21/4 21/7 21/11 21/13 21/24 22/22 23/2
24/1 26/2 26/8 28/5 30/12 36/5 40/2 41/12 41/15
42/16 43/13 46/5 46/12 48/5 48/16 50/20 51/16 52/4
54/24 56/9 56/16 57/14 98/15 101/24 102/2
104/18
defendants' [8] 12/24 27/5 33/15 47/16 81/13 82/13
83/16 95/7
defense [7] 3/23 4/17 19/10 35/14 51/14 55/23 56/2
defensible [1] 20/8
defensive [1] 19/8
defer [1] 71/4
definitely [1] 61/6
definition [1] 53/7
delay [1] 100/14
delivered [1] 76/19
demonstrate [1] 51/16
denied [4] 21/4 22/6 51/20 98/19
deny [2] 99/21 101/4
DEPARTMENT [5] 2/4 3/25 20/3 81/7 85/9
depend [1] 67/7
depending [1] 80/7
deport [4] 40/18 62/9 67/21 70/5
deportation [2] 18/18 49/12 49/14 62/24
deported [6] 34/7 34/11 34/21 49/16 50/25 71/13
deporting [3] 36/13 62/2 71/10
deprive [3] 14/23 49/20 86/9
deprived [2] 21/21 75/18
deprives [1] 14/9
DEPUTY [1] 2/3
Derro [1] 3/9
describe [1] 95/22
described [1] 70/20
describes [1] 53/23
Deserves [1] 43/5
design [1] 88/4
designate [1] 39/20
designed [2] 29/22 92/5
desk [1] 74/13
despite [3] 50/20 51/5 56/23
detail [1] 85/2
details [2] 87/13 97/2
detain [2] 58/8 84/6
detained [9] 23/14 34/4 52/22 55/1 55/5 82/8 85/7
86/12 86/15
detainee [2] 86/25 87/2
detainees [2] 86/10 87/2
detention [4] 78/21 80/12 80/22 88/15 89/21
103/4 104/10
determination [1] 76/2
determinations [2] 66/11 80/4
determine [6] 18/6 49/21 51/23 59/22 61/14 97/9
determined [3] 38/16 62/8 67/5
determines [1] 7/13
developed [1] 60/8
devil [1] 87/13
DHS [19] 11/5 12/10 15/9 38/8 39/19 56/22 57/20
60/10 61/12 62/14 64/17 67/21 69/19 70/18 70/24
71/10 73/16 75/9 76/9
DHS's [2] 60/3 69/25
dictate [1] 20/7
different [10] 11/1 11/20 30/1 31/19 33/12 44/8
55/14 87/6 88/14 88/20
difficulty [1] 68/19
direct [2] 75/13 97/19
directed [1] 102/2
directing [1] 58/4
directive [2] 66/23 103/24
directly [1] 84/17
director [1] 79/23
disagree [9] 23/16 37/24 60/1 81/8 82/12 83/20
83/23 83/25 100/22
disavowed [1] 87/3
discovery [2] 68/16 102/3
discrete [1] 18/19
discretion [7] 18/15 81/10 81/13 82/1 83/12 83/20
85/9
discretionary [1] 15/9
discriminated [1] 45/15
discriminating [2] 45/16 45/17
discriminatory [1] 45/20
discuss [2] 14/8 102/22
discussed [3] 14/2 21/21 23/24
discussing [1] 13/23
discussion [1] 53/13
discussions [1] 6/1
dismiss [16] 4/9 4/10 4/24 8/4 13/24 17/21 19/14
22/5 22/8 25/5 48/3 51/15 51/19 99/17 100/6 100/21
dismissed [2] 17/10 45/19
disposal [1] 79/19
dispute [4] 58/13 58/14 76/7 76/14
dispute that [1] 58/14
dissolution [2] 28/22 29/3
dissolve [3] 28/21 49/6 51/21
distinguish [2] 18/2 86/20
distinguishable [2] 88/8 88/24
district [34] 1/1 1/1 1/11 3/3 3/4 5/16 5/17 18/7
24/12 33/22 34/15 34/16 38/21 40/6 40/7 40/16
76/11 82/6 83/15 86/25 87/16 88/10 88/23 89/2
89/17 89/18 90/12 90/12 90/13 91/20 96/23 103/25
105/5 105/5
disturbing [1] 72/23
DIVISION [2] 1/2 2/4
do [118]
Docket [2] 1/6 33/25
doctrine [8] 36/3 36/4 41/19 41/25 42/7 45/10
45/18 93/3
document [1] 51/2
doing [7] 45/21 47/13 52/12 67/3 84/8 98/23 102/4
DOJ [2] 2/7 2/7
door [2] 59/21 59/21 99/11
doors [1] 99/10
doubling [1] 35/21
doubt [1] 66/23
down [4] 52/6 52/11 62/25 98/16
downstream [1] 61/25
dragged [1] 78/22
driving [1] 87/5
drop [1] 27/22
dual [1] 38/15
due [16] 27/10 29/10 32/15 33/19 40/25 43/24 47/7
71/7 74/19 74/19 76/24 78/17 79/1 85/4 93/20 96/21
duke [1] 101/9
Dunlap [1] 48/9
during [2] 76/3 90/14
DVD [3] 37/23 38/24 39/11

## E

each [3] 14/1 22/21 35/21
earlier [2] 59/4 63/1
EARM [2] 68/18 68/19
Earth [1] 50/1
easy [1] 19/13
ECF [12] 4/7 4/9 19/14 19/22 22/5 22/7 29/3 32/6
32/9 48/2 51/25 96/22
effect [3] 81/4 81/11 83/11
effective [1] 12/1
effects [1] 51/17
efficiency [1] 102/5
efficient [1] 102/4
efforts [1] 44/25
either [9] 40/6 40/7 44/20 46/24 46/25 51/3 55/2
56/16 64/17
El [32] 6/7 8/21 8/24 9/3 9/6 9/19 21/9 23/11 27/8
27/15 28/10 28/12 28/14 30/7 34/25 38/2 44/20
40/18 43/18 43/20 49/18 50/22 53/17 58/18 59/9
62/24 68/8 87/24 88/1 89/21 93/7 96/2
El Salvador [3] 23/11 87/24 89/21
electronic [2] 55/11 83/15
ellipses [1] 18/11
else [11] 5/22 27/22 31/3 41/15 41/22 42/24 79/25
91/14 93/6 102/21 104/14
elsewhere [1] 58/20
EMANUEL [2] 1/15 1/19
emergency [6] 4/11 33/24 46/14 46/18 56/17 86/1
encourage [1] 90/8
end [5] 19/22 22/21 28/1 39/22 69/22
ended [2] 42/16 50/3
ending [1] 49/9
enforce [2] 73/13 103/22
enforcement [2] 78/13 103/22
enforcing [2] 42/9 42/11
engage [1] 96/21
engaged [1] 44/24
engaging [1] 96/20
enjoin [1] 16/22
enough [1] 44/2
Ensign [1] 46/4
ensure [4] 28/12 78/18 79/3 79/16
enter [2] 46/12 85/19
entered [2] 32/3 82/16
entering [2] 44/11 50/13
entitled [9] 33/11 41/2 82/21 85/14 85/19 85/21
100/18 100/23 105/9
Environmental [1] 50/2
envision [1] 65/25
equivalent [1] 94/14
eradicated [1] 51/17
Ernesto [2] 2/7 4/3
ERO [1] 67/19
error [17] 41/14 42/11 43/1 43/1 43/2 43/4 43/7
43/9 44/1 45/12 45/13 45/25 46/5 46/6 46/8 46/9
49/12
errors [1] 46/1
especially [1] 30/15
ESQUIRE [8] 1/14 1/15 1/18 1/18 1/22 2/3 2/7 2/7
essentially [2] 23/13 49/14
established [1] 35/6
establishing [1] 59/13
et [4] 1/4 1/7 3/12 3/12
evade [1] 50/6
evading [1] 94/14
evaluating [1] 60/7
even [15] 16/5 24/4 27/7 35/13 36/14 39/17 39/20
68/11 73/15 77/12 78/12 80/23 82/22 93/24 93/25
event [1] 7/13
events [1] 14/3
eventually [4] 20/9 20/16 21/14 21/15
ever [2] 38/14 78/23
every [3] 24/15 43/23 52/22
everyone [2] 3/6 104/2
everything [1] 54/24
evidence [11] 12/4 12/9 59/8 59/12 59/17 59/19
60/7 60/16 61/12 81/7 84/3
evidentiary [4] 62/17 79/6 82/20 88/19
exact [1] 11/22
exactly [9] 6/16 32/7 36/7 60/25 67/3 83/8 87/22
88/8 89/23
examination [2] 97/18 97/19
examine [1] 97/19
examined [1] 79/12
example [6] 44/11 50/14 86/4 86/21 86/22 96/13
except [2] 41/15 86/11
exception [1] 90/6
exclusive [1] 57/6
Excuse [1] 15/14
execute [2] 18/11 18/17
executive [2] 56/18 57/11
exercise [1] 18/15
exercised [1] 21/25
exercising [1] 81/10
exerts [1] 90/25
exhausted [2] 28/18 29/9
Exhibit [1] 34/1
Exhibit C [1] 34/1
exist [1] 34/12
existence [2] 18/6 92/21
existing [4] 33/10 76/21 78/12 94/13
exists [1] 51/18
expect [2] 67/9 75/5
expected [3] 42/20 50/11 99/14
explain [3] 5/25 63/8 80/2
explained [2] 38/12 96/10
explicit [1] 22/3
explore [2] 62/15 99/7
expressly [1] 17/17
extend [2] 76/24 77/24
extension [3] 76/20 78/12 78/13
extent [3] 43/10 49/2 94/13
extraordinarily [1] 38/13
extraordinary [2] 30/3 65/7
eye [1] 55/14

## F

F.2d [1] 48/11
F.3d [2] 48/9 49/22
face [1] 95/18
faced [1] 72/25
facial [1] 25/7
facilitate [1] 10/6 10/14 12/23 21/12 28/11 29/22
90/18
facilities [1] 88/15
facility [9] 67/17 67/18 75/8 75/22 76/3 80/21
81/21 89/21 104/10
facing [2] 36/21 36/25
fact [9] 12/2 21/25 47/18 58/4 72/24 75/6 88/13
89/3 96/19
factor [1] 10/17
facts [7] 12/1 25/3 41/13 60/23 98/4 103/3 104/2
factual [4] 4/25 5/1 90/7
fails [1] 21/6
failure [1] 99/18
fair [7] 9/25 10/4 23/8 26/15 46/25 54/7 84/6
Fairfax [1] 1/23
fairly [3] 33/24 78/12 100/12
faith [3] 45/8 98/19 99/7
fall [4] 31/18 90/5 90/10 90/11
false [1] 99/6

**F**

familiar [1] 75/4
family [2] 72/2 86/4
fancy [1] 83/14
far [3] 62/20 68/18 69/1
fast [2] 34/10 71/12
favor [1] 33/11
favorable [2] 25/3 88/4
federal [9] 6/25 18/8 18/14 49/20 76/11 100/17
102/14 105/4 105/17
feel [1] 80/10
Ferguson [1] 86/4
few [2] 39/13 64/13
fides [1] 60/22
field [8] 38/23 67/6 67/22 68/4 74/12 75/4 79/23
79/24
Fifth [1] 33/17
figure [3] 53/11 68/6 80/6
file [7] 4/12 5/23 68/14 68/19 68/21 99/22 100/20
filed [24] 5/7 8/7 8/14 20/14 34/2 48/14 56/17
65/8 87/17 87/19 88/10 88/17 89/2 89/17 89/20
91/19 91/22 93/6 93/6 102/11 103/7 103/14 103/17
103/17
filing [1] 8/4
filings [1] 40/16
fill [2] 73/25 74/19
final [5] 14/8 21/18 58/11 63/12 101/10
finality [1] 18/2
find [19] 17/22 18/21 19/5 20/2 20/12 28/8 29/9
30/2 37/5 47/3 49/15 51/14 64/3 70/6 70/9 75/9
90/2 90/15 90/21
finding [2] 34/4 88/18
findings [1] 88/13
finger [1] 88/8
first [26] 5/6 5/9 14/21 15/23 18/5 19/14 19/18
27/23 35/16 40/6 42/6 42/17 46/7 48/18 54/7 54/22
55/15 58/25 70/4 73/1 73/5 75/18 80/20 94/4 95/25
97/18
firsthand [1] 97/13
five [4] 21/15 22/20 36/23 84/22
flesh [1] 97/17
flight [3] 82/24 103/4 103/7
flooded [1] 39/3
floor [1] 100/16
fluid [2] 63/19 64/12
folks [2] 56/23 66/6
following [1] 4/7
follows [1] 19/15
footloose [1] 83/14
forces [2] 57/5 63/13
foregoing [1] 105/7
foreign [7] 6/2 6/8 6/14 8/13 8/17 78/23 78/23
forgot [1] 93/16
form [3] 39/6 53/6 77/4
formally [1] 4/14
format [1] 105/9
formidable [8] 42/17 42/18 44/2 50/9 51/14 53/8
53/8 53/15
forth [2] 33/16 88/5
forum [1] 86/19
forward [2] 79/10 102/1
foul [1] 30/20
found [3] 85/24 91/22 92/20
foundation [1] 19/7
four [1] 88/14
Fourth [23] 14/15 15/6 15/12 15/15 15/20 16/4 16/8
17/17 21/23 42/13 48/10 48/10 48/11 49/23 58/14
73/20 78/15 81/22 84/14 86/16 86/23 89/4 92/10
frankly [1] 9/10
free [2] 49/24 83/13
freely [2] 98/18 100/23
freewheeling [1] 83/13
Friedman's [1] 48/9
friend [1] 37/3
Friends [1] 50/1
front [9] 11/2 12/12 17/14 27/13 35/12 35/14 51/12
73/8 81/5
frustration [1] 94/13
fulfill [1] 24/8
fulfilled [3] 8/3 27/23 29/6
fulfilling [1] 10/10
fulfillment [3] 32/24 33/2 74/25
full [2] 71/17 75/17
fully [8] 19/15 27/5 27/10 29/1 29/23 47/18 100/12
100/25
fundamentally [2] 36/16 51/2
further [13] 9/18 20/12 26/7 26/9 30/25 33/12
40/24 42/5 54/9 89/10 91/16 96/25 104/18
futility [11] 98/19 98/21 98/23 99/2 99/3 99/14
99/16 99/24 100/18 101/3 101/21
future [6] 26/12 44/16 44/22 47/19 49/10 50/17

**G**

game [1] 92/6
games [1] 74/6
gap [1] 71/19
GARCIA [45] 1/4 3/12 9/18 20/10 20/18 20/19 22/23
24/1 24/3 30/6 32/25 33/19 34/4 34/19 35/9 37/25
41/2 43/23 52/7 55/1 56/20 57/13 58/25 62/14 62/22
64/14 67/10 67/21 68/3 68/7 69/13 69/20 72/24 74/4
74/11 74/21 75/3 76/15 77/11 78/22 80/22 82/2 82/7
85/7 89/18
Garcia's [5] 8/10 28/11 32/15 36/12 59/5
garden [2] 30/16 45/15
garden-variety [2] 30/16 45/15
gave [2] 12/17 33/23
GENERAL [3] 2/3 18/11 70/1
General's [2] 18/15 43/17
generally [2] 62/21 67/8
genuinely [1] 79/8
getting [11] 9/16 9/20 12/11 22/15 29/17 30/22
62/20 66/18 70/12 71/6 97/4

**Giles**

Giles [1] 89/1
Giles' [1] 88/12
give [19] 7/7 10/1 27/1 29/9 31/19 31/22 36/25
39/5 39/16 39/18 39/23 47/25 65/13 65/15 74/21
77/25 82/24 90/7 97/7
gives [1] 28/5
giving [3] 75/17 100/15 100/24
go [20] 18/21 21/14 25/1 26/7 29/10 47/22 51/24
56/14 57/18 57/19 58/21 63/4 67/22 69/17 70/20
83/13 89/3 98/4 98/16 102/1
goes [4] 16/22 18/13 34/10 77/6
going [69] 4/8 4/15 7/1 10/7 12/16 17/25 18/3
19/15 20/24 26/10 31/14 31/18 35/20 37/2 38/1
40/17 40/18 42/4 45/3 45/17 45/21 46/10 48/3 49/8
52/11 52/11 52/19 52/23 54/9 54/22 55/2 55/13
55/19 55/20 55/23 57/17 59/4 59/15 59/16 59/19
61/15 61/25 62/9 62/10 65/21 70/14 70/15 71/14
71/15 71/25 80/6 81/7 82/5 82/7 83/4 84/3 87/4
87/25 89/7 89/10 90/3 94/20 97/3 97/22 99/9
100/11 102/5 103/5 104/1
good [19] 3/6 3/7 3/16 3/18 3/21 3/22 3/24 4/1 4/3
4/5 4/19 4/20 19/10 45/8 94/17 94/18 99/7 102/8
102/17
got [16] 11/14 17/8 18/1 17/16 32/10 32/12 44/5
50/19 54/10 55/1 66/6 73/1 81/9 99/10 99/11 101/4
governing [1] 32/6
government [38] 8/17 32/19 32/20 33/4 33/22 34/3
34/5 34/23 36/4 36/8 36/11 40/2 40/8 40/23 40/25
41/3 41/5 42/8 42/10 43/23 45/25 49/19 53/16 56/4
58/24 68/5 72/5 72/20 74/16 76/6 77/3 77/7 79/8
79/8 82/21 83/10 92/6 95/20
government's [11] 18/5 34/1 37/18 74/1 74/2 74/3
77/1 77/8 77/9 93/11 93/14
governmental [2] 44/14 50/16
governs [1] 86/13
grand [1] 20/15
grant [3] 99/21 100/3 101/6
granted [3] 36/23 38/14 98/18
grants [1] 39/15
grave [1] 78/6
great [4] 31/12 100/2 102/15 104/13
greater [1] 59/3
GREENBELT [1] 1/2
ground [1] 21/3
grounds [5] 8/5 47/11 98/23 99/16 101/3
group [1] 67/19
guess [6] 9/18 29/15 68/5 70/10 95/23 96/10
GUYNN [9] 2/3 3/24 46/3 54/21 58/1 70/10 92/12
94/16 95/24

**H**

habeas [29] 86/24 87/16 87/17 87/18 87/19 87/21
88/9 88/23 89/2 89/16 90/10 90/11 91/6 91/11 91/12
91/18 92/13 92/16 92/18 92/23 92/25 93/1 93/9 93/9
93/13 93/18 93/19 93/23 94/1
hadn't [2] 27/15 82/22
hand [2] 86/5 89/21
handled [4] 27/7 27/9 28/9 28/13
handoff [1] 76/14
happen [6] 35/21 39/17 52/23 55/2 80/6 84/4
happened [4] 17/12 25/12 38/13 43/4
happening [3] 8/11 38/3 65/8
happens [4] 30/17 63/11 80/7 102/16
happy [3] 19/1 54/21 88/21
hard [4] 9/20 17/22 54/13 66/2
harm [2] 30/20 34/13
hasn't [3] 17/4 36/4 43/22
having [7] 17/13 24/15 39/25 50/20 64/7 66/21
78/23
he'll [1] 78/8
head [2] 25/20 25/21
headed [2] 62/5 80/4
hear [14] 16/20 17/11 19/11 19/21 22/3 54/21 77/9
77/19 77/21 79/21 80/22 81/6 101/7 102/12
heard [14] 35/11 35/11 37/6 41/7 72/20 73/8 74/14
74/22 76/9 78/2 92/8 95/24 96/5 98/21
hearing [15] 1/10 3/13 11/18 46/7 60/21 62/17
72/21 79/6 81/5 82/20 82/22 83/5 88/19 94/2 97/25
hearings [4] 7/4 43/14 46/3 46/8
held [6] 67/8 76/3 81/17 92/11 103/16 105/8
help [3] 12/23 24/14 59/20
helpful [3] 63/8 72/8 98/10
hereby [1] 105/6
herein [1] 33/16
High [2] 17/19 17/22
highlights [1] 29/5
highly [1] 20/13
him [86] 5/21 5/22 6/4 6/5 6/10 6/10 6/13 6/18 7/1
7/2 7/18 7/19 7/19 7/20 7/25 9/9 9/22 11/3 13/1
19/22 19/24 23/2 23/9 23/10 24/8 24/15 24/19 24/20
25/12 27/16 27/20 27/22 30/9 30/10 33/16 34/25 35/5
36/13 38/9 39/24 48/18 40/6 45/3 48/17 53/17 57/14
57/14 58/8 59/1 59/18 59/18 60/4 61/3 61/21 61/25
62/2 62/10 62/16 62/18 69/10 70/5 70/19 70/22
71/19 74/5 75/2 75/9 75/19 75/12 75/17 75/18 75/19
76/5 76/24 77/19 79/2 79/16 80/23 83/18 84/6 84/21
86/22 90/3 90/18 90/19 96/5
historic [2] 41/14 44/5
historically [2] 26/11 44/20
history [3] 7/3 7/6 97/7
hits [1] 55/18
hold [8] 25/18 61/20 70/4 71/2 71/3 80/21 80/23
82/18
holding [1] 16/10
hole [1] 101/6

**Holmes**

Holmes [5] 55/3 55/4 55/4 55/8 81/3
Holmes' [1] 83/10
homeless [1] 50/23
homeland [2] 38/17 38/18
Honduras [2] 38/17 38/18
Honor [159]
Honor's [6] 31/14 32/2 76/23 78/11 79/5 93/16
HONORABLE [5] 1/10 3/5 94/23 95/1 104/22
hope [3] 31/19 101/12 101/17
HORTON [1] 1/18
house [1] 75/12
housed [1] 75/13
however [2] 26/1 60/6
hypothetical [1] 83/9

**I**

I'd [1] 102/12
I'll [17] 28/8 32/2 35/13 47/4 56/3 57/21 72/9
74/1 79/4 79/5 79/21 82/4 82/4 82/10 87/23 95/11
97/9
I'm [99] 5/14 6/10 11/9 11/15 11/15 11/21 12/16
13/4 14/18 15/22 15/22 16/25 16/25 17/25 19/1
19/15 22/11 23/16 24/12 24/13 27/12 27/14 28/21
29/6 29/20 31/13 31/17 32/8 36/3 37/2 44/10 44/17
45/21 46/3 46/8 46/16 47/4 47/7 48/7 48/9 49/7 49/8
49/22 51/5 52/5 52/19 54/21 57/8 58/3 58/4 58/23
59/4 60/1 61/5 61/5 61/5 61/10 61/10 62/10 63/20
64/7 65/19 65/20 65/22 66/14 67/2 69/3 69/12 70/11
73/15 76/2 79/20 80/4 80/10 83/3 84/7 85/14 85/17
85/19 87/6 87/6 87/6 88/21 89/10 91/3 91/3 91/19
91/23 93/24 94/20 97/3 97/4 97/4 97/22 100/15
100/24 102/5 102/24 102/24 104/5
I've [29] 9/22 29/9 54/10 69/1 69/1 87/19
ICE [29] 24/11 34/7 38/23 57/20 61/17 63/13 63/21
65/2 66/18 69/10 71/19 71/22 72/15 73/16 74/4
74/11 74/12 75/8 75/21 75/21 76/3 76/16 80/21 81/2
86/18 103/5 103/5 104/6 104/10
ICE's [1] 69/19
idea [1] 101/9
identified [6] 36/14 36/15 73/11 77/15 77/25 96/14
identify [6] 3/14 63/9 64/17 69/23 69/24 70/1
identifying [1] 77/22
ignore [1] 45/7
III [1] 48/12
IJ [1] 61/13
illegal [8] 25/11 32/21 35/1 35/2 35/3 57/2 71/23
73/1
illogical [1] 5/24
illuminate [1] 6/15
imagine [3] 66/12 66/15 98/24
immediate [5] 34/21 89/23 90/6 92/14 97/15
immediately [4] 22/22 36/13 56/16 74/5
immigration [32] 25/13 26/9 32/16 34/12 35/15
35/17 37/12 38/6 43/10 48/23 52/16 60/12 60/12
63/13 71/3 73/14 73/17 73/18 73/19 74/8 74/14 76/6
76/10 78/4 78/19 84/11 84/18 84/23 84/25 85/8
93/20 103/21
imminent [2] 51/3 51/11
impediment [1] 75/9
implementing [1] 48/23
implicates [1] 15/8
implicit [1] 22/2
implicitly [1] 58/16
important [1] 7/15
improper [1] 81/9
improperly [1] 28/13
INA [7] 18/8 26/12 26/14 48/23 51/10 66/23 86/8
inappropriate [1] 80/24
Inc [3] 48/9 50/1 50/2
inception [1] 19/25
inclination [1] 101/23
inclined [1] 75/7
includes [5] 38/15 38/16 89/11 89/12 89/12
including [2] 33/11 79/11
inconsistent [1] 35/21
incorrect [2] 68/9 69/11
indefinite [1] 96/12
indicated [2] 36/8 74/6
indicating [1] 64/25
indication [2] 51/13 71/18
indicted [5] 13/1 13/2 13/5 13/13 21/15
indictment [15] 5/13 5/16 5/23 8/13 9/4 9/9 9/17
10/9 10/15 12/23 13/15 20/9 20/16 57/18 57/20
indirectly [1] 84/18
indisputable [1] 80/20
individual [6] 6/23 37/19 63/12 67/7 69/24 95/6
103/14 103/20
individuals [4] 38/22 39/14 39/14 95/6
inference [1] 9/25
inferences [1] 33/11
infirmities [1] 101/13
infirmity [1] 96/22
inform [1] 52/23
information [22] 12/18 12/20 13/16 13/22 20/12
64/25 65/1 65/2 65/4 65/16 66/6 66/7 66/9 66/10
70/12 79/9 79/13 84/7 84/8 85/14 85/17 97/9
initial [2] 14/12 93/11
initiate [3] 26/9 84/25 95/10
initiation [1] 35/23
injunction [33] 10/6 14/13 15/1 16/5 23/6 23/12
27/5 27/10 28/22 29/21 29/3 29/7 29/15 29/21 29/24
29/24 30/2 30/3 30/8 32/3 32/5 38/25 39/12 47/17
49/3 49/7 51/21 51/22 51/23 75/1 76/21 77/24 94/13
injunctive [8] 22/21 27/1 29/10 32/24 48/19 48/25
49/13 76/21
injuries [2] 21/8 25/22
input [1] 98/16
inquiry [1] 45/22
insistence [1] 97/18
instead [1] 35/5
intend [7] 34/24 47/9 47/10 47/11 56/20 74/17
101/25

**I**

intends [1]  39/19
intention [2]  47/4 67/17
 77/13 101/20
intentions [4]  69/20 74/2 77/10 78/1
interest [1]  35/9
interfere [1]  97/3
interim [2]  60/8 87/8
interpretation [1]  23/8
interpreted [1]  59/3
intervention [1]  50/7
interviews [2]  43/14 45/5
investigated [1]  11/23 11/14
investigating [1]  11/5
investigation [13]  10/14 10/18 11/3 11/7 11/17
 11/18 12/5 13/4 13/20/5 60/22 60/23 60/23
investigative [1]  20/8
involved [1]  86/24
irony [1]  34/14
irreparable [1]  34/13
irrevocable [4]  44/12 47/6 50/14 53/9
irrevocably [1]  51/17
is [367]
isn't [17]  16/11 19/2 23/17 24/18 28/15 30/12
 30/21 45/9 49/5 57/24 73/14 73/16 75/7 83/13 84/6
 87/7 89/22
isolated [2]  42/11 44/24
issue [16]  14/20 24/7 26/6 29/8 41/19 46/23 54/18
 56/16 75/17 78/9 78/11 85/9 86/5 90/23 96/24 103/4
issued [4]  25/23 10/25 63/25 82/20
issues [5]  15/18 15/19 47/6 47/7 75/14
issuing [1]  97/5
items [1]  67/14
itself [6]  32/3 33/14 33/25 34/15 51/13 78/17

**J**

jailer [1]  78/20
January [1]  38/20
Jello [1]  80/5
Jennifer [1]  2/6
JGG [3]  90/9 90/16 91/9
job [1]  31/24
joined [1]  57/4
JONATHAN [4]  1/18 2/3 3/18 3/24
Joshua [1]  89/13
Joshua M [1]  89/13
judge [31]  1/11 7/25 14/17 15/7 18/4 18/13 28/3
 34/16 55/2 55/3 55/4 55/8 60/12 74/9 74/14
 78/4 81/3 81/8 81/22 82/7 83/8 83/10 83/24
 84/1 84/18 84/23 88/12 89/7 90/4
judge's [2]  82/6 84/11
judges [1]  81/9
judgment [1]  26/22
judicial [5]  50/6 50/7 56/9 73/9 105/10
JULY [10]  1/11 55/1 55/20 55/21 55/23 58/6 59/23
 62/1 83/6 105/12
July 16 [3]  55/1 55/20 55/23
July 16th [4]  58/6 59/23 62/1 83/6
July 7 [1]  55/21
juncture [3]  28/22 31/8 101/25
June [1]  83/5
juridical [1]  75/16
jurisdiction [60]  4/9 4/10 6/19 7/20 8/5 14/9
 14/24 15/3 15/4 15/7 15/10 15/21 15/22 16/7 16/13
 17/8 17/9 17/20 17/22 17/24 18/6 18/8 18/9 18/14
 18/21 19/6 19/7 19/18 21/21 22/1 24/15 25/8 27/25
 28/1 28/6 29/7 32/19 47/12 47/19 51/20 68/4 76/9
 81/21 84/10 84/12 84/13 84/13 85/22 85/24 86/3
 86/10 86/14 86/19 87/7 90/12 90/25 93/4 94/5 94/8
 94/9
jurisdictional [6]  15/17 17/4 18/19 75/16 76/13
 90/22
jury [1]  20/15
JUSTICE [5]  2/4 3/25 20/3 81/7 92/1
justiciable [1]  48/12
justified [1]  59/10

**K**

keep [3]  45/17 45/21 101/7
Kennedy [1]  92/1
kept [1]  88/5
kicked [1]  16/6
KILMAR [1]  1/4 3/11
kind [7]  29/5 30/21 30/22 36/3 68/1 77/4 96/10
Kiyemba [1]  89/12
knew [2]  9/1 20/16
knowing [3]  21/14 46/25 66/17
knowledge [7]  11/10 62/20 69/19 79/21 80/1 95/7
 97/13
known [2]  80/2 80/3
knows [2]  73/22 91/1
KRISTI [2]  1/7 3/12

**L**

lack [11]  4/9 4/10 6/19 7/20 8/19 17/21 19/24
 26/21 51/19 95/14 97/13
lacked [1]  19/21
lacks [4]  15/7 17/20 18/8 19/18
laid [1]  59/25
Laidlaw [2]  50/2 50/12
land [1]  74/13
landed [1]  38/1
landscape [1]  5/2
language [3]  28/8 32/1 36/9
last [11]  11/13 14/1 17/18 24/2 37/25 40/1 48/20
 71/1 72/5 91/15 98/13
late [1]  64/12
later [7]  5/20 7/18 19/24 21/15 26/16 36/23 38/16
law [6]  19/7 26/5 26/7 35/7 44/8 100/2
lawful [13]  18/15 25/13 27/20 44/18 49/17 51/4
 51/6 53/19 58/16 66/21 68/8 72/18 72/19
lawfully [5]  47/13 47/14 48/23 69/3 97/6

**laws** [2]  33/16 76/6
lawsuit [1]  48/14
lawyer [2]  37/18 46/8
lawyers [1]  72/6
lay [1]  51/13
laying [2]  95/12 95/24
learn [1]  20/20
learned [1]  20/21
least [13]  5/22 20/23 23/8 25/21 30/21 39/4 55/15
 62/23 64/16 84/7 90/5 90/17 97/9
leave [4]  4/12 40/15 49/24 69/18 69/18 94/21
 98/14 98/18 98/22 99/12 100/3 100/4 100/19 101/2
 101/21 102/10
leaving [2]  39/18 76/16
led [2]  8/9 9/8
leeper [3]  105/4 105/15 105/16
left [1]  51/25
legality [1]  49/21
lengthy [1]  37/14
lies [1]  90/12
light [3]  25/3 37/22 88/3
likely [1]  21/14
limbo [1]  71/19
limited [3]  17/3 18/24 41/13
line [1]  96/18
lines [1]  70/20
listen [1]  81/6
litigants [1]  48/13
litigation [1]  100/24
little [7]  6/10 22/17 26/10 63/19 64/11 66/19
 77/14
live [11]  23/17 23/18 28/2 28/18 32/17 32/22 36/16
 48/7 49/2 54/10 68/23
lived [1]  25/14
living [2]  25/25 36/3
LLC [1]  1/19
LLP [1]  1/18
lo [1]  7/18
loathe [2]  31/22 31/23
local [1]  67/9
located [1]  87/16
logic [1]  12/16
logical [1]  6/25
long [1]  37/18
longer [3]  8/23 48/7 59/10
look [8]  23/20 33/21 36/24 56/18 61/6 61/13 65/21
 87/11
looking [3]  11/15 16/25 87/14
looks [2]  37/15 61/12
lose [2]  34/8 94/9
lot [5]  54/9 56/9 56/15 66/18 88/6
lots [2]  35/19 35/20
loud [1]  77/12
Louisiana [5]  88/1 88/16 91/18 103/5 103/16
love [1]  85/16
lulling [1]  90/3

**M**

made [19]  4/25 17/4 17/16 18/13 21/22 30/17 42/11
 43/11 43/13 44/22 61/14 61/16 61/17 66/13 66/16
 88/18 90/9 99/23 101/16
magistrate [5]  81/3 82/19 83/10 83/23 84/1
maintain [1]  84/12
make [26]  19/16 40/24 53/2 53/16 66/10 66/25 71/17
 76/2 76/4 80/3 80/10 83/4 86/14 86/18 90/22 91/14
 95/19 97/12 99/13 99/14 99/25 100/1 101/2 101/10
 103/12 104/2
makes [4]  49/4 68/1 88/3 95/17
making [8]  11/9 29/18 43/2 52/3 92/12 101/8 101/12
 102/24
manifestly [1]  57/1
manner [1]  47/20
many [8]  18/17 25/14 25/14 25/15 50/19 101/8
 101/12 101/13
March [1]  63/25
Marshal [1]  57/15 70/18 70/19 71/21
Marshals' [3]  34/20 72/15 76/16
MARYLAND [34]  1/1 3/4 23/13 23/22 24/6 24/12 24/20
 25/12 25/18 25/22 25/25 26/22 33/1 38/22 41/5 48/20
 49/4 55/9 55/11 55/16 74/10 74/11 74/24 75/8 75/20
 76/5/6 79/22 80/21 87/12 90/13 93/12 96/23
Massachusetts [3]  38/25 103/15 103/18
masters [1]  24/23
matter [17]  3/10 3/13 17/20 17/22 23/25 26/19
 29/14 45/4 51/19 58/4 61/24 70/15 84/4 84/5 89/3
 90/2 105/9
maximum [1]  89/21
may [40]  4/6 4/7 5/7 5/15 5/16 6/17 7/17 12/22
 18/18 21/7 23/16 25/17 27/21 28/17 31/14 35/5
 46/20 50/13 52/21 54/12 54/15 60/8 60/10 61/11
 61/11 64/15 68/18 68/19 69/14 80/7 80/8 81/8 84/14
 87/11 87/12 95/20 96/12 96/13 96/14 97/5
May 21 [1]  5/15
May 21st [1]  5/16
May 25 [1]  6/17
May 27th [2]  5/7 21/7
maybe [6]  6/15 17/17 33/10 36/18 42/22 55/3 56/14
McMahon [1]  89/12
mean [34]  7/17 7/24 10/17 13/24 20/20 23/18 24/10
 27/16 36/24 41/12 43/13 44/4 45/4 45/9 45/18 45/21
 46/25 47/7 51/7 62/20 65/6 65/20 69/4 71/8 71/10
 75/11 81/4 85/15 87/3 89/13 93/11 95/22 97/3 101/1
Meaning [2]  37/10 76/6
meaningful [1]  34/8
means [4]  23/12 44/4 57/6 76/7
measure [1]  75/17
measures [1]  64/13
mechanics [2]  37/22 37/12
mechanism [1]  79/11
mechanisms [1]  79/10
media [1]  56/24

**meet** [3]  46/21 54/2 54/7
meets [1]  53/7
memoranda [2]  27/12
memos [4]  40/9 53/1 59/3 91/21
merely [2]  42/23 75/21
meritless [1]  20/1
merits [11]  15/4 15/13 16/5 16/11 16/13 16/22 17/6
 17/8 22/1 30/10 87/4
met [7]  36/4 36/5 51/14 51/22 53/8 53/15 82/22
mic [1]  70/11
Middle [6]  5/17 33/22 34/16 40/7 40/16 82/5
might [10]  13/23 19/8 28/1 30/6 46/17 56/7 60/9
 80/24 99/6 99/13
mind [1]  21/17
minimum [4]  22/2 29/11 64/16 76/20
minute [2]  17/15 47/9
minutes [1]  94/24
misheard [1]  76/16
misheard [1]  77/20
misleading [1]  56/19
mistake [4]  44/24 44/25 53/16 53/18
mistaken [1]  30/16
mistakes [1]  30/17
mitigate [1]  83/1
modest [1]  78/12
modified [2]  14/16 23/7
modify [1]  51/9
Molina [8]  2/7 4/4 24/13 63/7 70/11 77/17 79/22
 97/17
moment [9]  12/14 34/18 40/23 41/23 47/3 72/14 74/3
 89/25 90/1
MONDAY [1]  1/11
monitoring [2]  55/12 83/15
month [2]  10/18 20/17
months [3]  11/13 39/13 45/2
moot [13]  7/1 71/22 73/24 22/14 32/18 41/19 45/19
 47/4 48/5 48/8 52/9 52/24 80/8
mooted [1]  46/14
mootness [4]  8/6 13/24 19/1 28/25
moots [1]  96/22
more [24]  14/5 22/17 23/2 23/3 30/18 31/23 31/24
 44/5 49/9 60/25 63/18 63/19 76/8 77/14 79/21 81/7
 81/20 81/25 91/5 97/13 97/17 97/21 100/6 100/6
Moreover [1]  23/23
morning [3]  3/6 3/7 3/16 3/18 3/24 4/1 4/3
 4/5 4/19 4/20 79/24 98/14
MOSHENBERG [3]  1/22 3/20 37/15
most [6]  4/21 25/3 51/2 86/22 88/3 102/4
mostly [1]  68/15
mother [1]  38/17
mother's [1]  38/17
motion [84]  4/9 4/10 4/11 4/11 4/17 4/24 5/6 6/4
 6/5 6/11 7/11 7/12 7/17 8/4 8/8 9/11 14/21 16/2
 17/3 17/3 19/12 19/14 19/14 20/14 21/3 22/5 22/7
 22/11 25/5 28/25 31/4 33/25 34/1 35/4 40/23 46/14
 46/18 47/22 48/3 49/7 51/15 51/19 51/20 52/11
 52/15 52/24 54/20 54/23 56/1 56/17 65/7 71/12 72/6
 72/9 76/25 79/1 80/8 85/21 85/23 85/25 86/1 91/5
 91/7 91/11 91/15 92/13 92/13 92/18 94/1 94/21
 94/21 97/10 98/13 98/22 99/12 99/17 100/10 100/10
 100/21 101/4 101/6 101/18 102/1 102/1 102/10
motions [7]  1/10 3/13 4/7 13/23 15/13 15/17 31/19
moved [8]  7/11 7/12 18/3 19/1 22/7 71/9 84/6 100/5
moving [4]  7/8 9/23 79/20 92/6
Mr [2]  31/18 40/21
Mr. [108]
Mr. Abrego [81]  5/10 5/13 5/16 8/10 19/19 19/23
 20/10 20/18 20/19 21/1 21/8 21/15 22/12 23/7 24/1
 24/3 28/3 30/6 32/25 33/19 34/4 34/19 35/9 35/16
 36/12 37/25 38/7 40/12 41/1 42/23 43/23 44/2 45/9
 48/6 48/15 48/21 49/11 49/17 50/20 50/22 51/6 52/7
 52/15 52/22 55/1 55/4 55/20 56/12 57/13 62/14
 62/22 64/14 67/10 67/21 68/3 68/7 69/3 69/9 69/20
 70/4 71/3 71/15 72/22 74/4 74/11 75/3 76/15 77/10
 78/22 80/22 82/3 82/23 84/5 85/7 87/8 87/18
 89/18 95/8 96/23 97/16
Mr. Abrego Garcia [1]  74/21
Mr. Abrego's [2]  12/23 21/12
Mr. Ensign [1]  46/4
Mr. Guynn [7]  46/3 54/21 58/1 70/10 92/12 94/16
 95/24
Mr. Molina [6]  24/13 63/7 70/11 77/17 79/22 97/12
Mr. Moshenberg [1]  37/15
Mr. Reuveni [1]  46/6
Mr. Rossman [6]  31/12 36/19 41/11 72/11 84/22
 87/10
Mr. Rossman's [1]  46/11
Mr. Sandoval [1]  37/13
Ms. [7]  3/9 3/22 7/4 22/9 30/14 41/24 59/3
Ms. Derro [1]  3/9
Ms. O'Hickey [5]  7/4 22/9 30/14 41/24 59/3
Ms. Sura [1]  3/22
much [2]  21/4 80/13
multiple [2]  60/21 91/4
multiple-day [1]  60/21
MURRAY [1]  1/22
must [7]  18/6 27/12 28/9 48/13 50/4 89/17 100/2
mutually [1]  57/6
my current [1]  55/24
myself [2]  59/20 78/4

**N**

nail [2]  62/25 80/5
name [1]  39/22
narrow [2]  27/14 84/14
Natasha [1]  2/8
national [1]  38/18
nationals [2]  38/15
nationwide [1]  37/23
necessarily [4]  62/22 76/11 78/3 91/9
necessary [3]  31/1 31/24 33/13

**N**

**need [30]** 9/12 13/23 19/13 26/11 30/23 37/23 49/17 49/8 50/7 51/12 51/16 60/17 64/17 65/20 66/5 66/9 77/2 77/4 80/3 81/13 82/22 91/7 94/2 97/22 98/16 99/17 99/9 9/22 93/18
**needed [4]** 9/9 9/17 9/22 93/18
**needs [6]** 26/2 34/15 77/9 78/17 92/19 92/22
**negotiations [8]** 6/13 8/13 8/14 9/7 9/8 9/16 9/21 9/24
**neither [1]** 57/25
**neutral [2]** 73/9 81/5
**never [6]** 6/24 23/21 26/1 27/8 69/1 78/8
**nevertheless [2]** 80/22 100/20
**new [2]** 1/16 14/11
**News [1]** 20/22
**next [16]** 19/12 52/10 52/23 54/20 54/23 56/7 65/8 69/17 69/23 80/2 80/6 84/4 85/3 95/7 97/15 100/13
**night [1]** 77/11
**nine [3]** 61/1 72/25 77/15
**no [69]** 5/21 6/4 6/20 7/17 8/23 11/18 12/25 13/16 16/8 19/6 20/24 20/25 21/16 23/2 23/3 26/22 28/16 30/20 30/20 30/25 35/22 35/22 35/23 37/5 37/5 37/21 39/1 42/10 42/13 43/2 43/4 45/1 45/8 46/5 46/8 48/7 50/24 51/2 51/6 51/18 57/8 57/19 57/19 59/10 61/24 63/19 64/24 65/24 66/23 68/10 70/12 70/14 71/5 71/18 75/9 77/11 80/25 83/14 84/4 84/5 85/2 85/15 87/2 92/9 96/21 98/6 102/8 102/19 103/8
**NOEM [3]** 1/7 3/12 45/5
**noncitizen [2]** 18/10 18/12
**nondescript [1]** 62/21
**none [1]** 19/16
**nonresponsive [1]** 58/1
**normal [1]** 61/24
**normally [1]** 71/7
**nose [1]** 47/9
**not [187]**
**note [1]** 39/4
**NOTES [1]** 1/25
**noteworthy [2]** 10/25 91/22
**nothing [5]** 6/18 14/4 35/14 91/16 100/18
**notice [35]** 8/4 35/10 35/22 35/23 36/25 37/6 37/7 37/8 37/21 39/1 39/2 39/5 39/10 39/11 39/16 39/18 41/6 47/6 51/8 51/9 52/7 53/22 54/16 60/11 63/5 72/21 73/5 74/22 76/7 76/7 76/8 77/11 85/4 97/24 100/25
**notification [1]** 78/1
**notion [1]** 47/5
**nowhere [2]** 21/14 88/2
**nuance [1]** 59/3
**number [10]** 1/6 3/11 4/24 8/1 32/6 59/21 59/21 61/7 62/12 99/11
**NW [2]** 1/19 2/4
**NY [1]** 1/16

**O**

**O'Hickey [7]** 2/7 4/2 7/4 22/9 30/14 41/24 59/3
**oath [2]** 6/12 80/2
**Obama [1]** 89/12
**obligation [4]** 7/21 7/24 8/3 66/25
**obliged [1]** 67/13
**observe [2]** 37/3 37/4
**observed [1]** 34/16
**obviates [1]** 50/7
**obvious [4]** 72/14 91/1 91/1 93/7
**obviously [5]** 19/23 35/7 37/23 72/10 94/20
**occasion [1]** 63/23
**occupy [1]** 76/13
**occur [1]** 67/16
**off [4]** 8/19 8/25 49/10 80/8
**offered [2]** 46/24 46/25
**office [12]** 38/8 38/23 56/22 60/8 67/6 67/9 67/10 67/22 68/4 69/25 74/12 75/4
**officer [9]** 7/21 9/15 11/5 11/6 43/6 58/3 73/9 79/24 79/24
**officer's [1]** 12/10
**officers [3]** 8/8 11/16 20/12
**official [4]** 79/22 105/1 105/4 105/17
**oh [2]** 30/16 91/7
**okay [97]** 3/22 4/6 4/16 4/22 5/4 5/5 6/9 7/16 8/18 8/25 10/24 11/11 11/13 11/18 11/25 12/2 12/3 12/21 12/21 14/4 14/7 14/11 16/13 17/6 17/24 18/3 19/11 20/23 22/17 22/19 24/7 24/18 31/3 31/11 32/12 35/3 41/22 42/17 43/25 46/10 47/2 47/21 48/1 48/2 51/25 52/12 52/13 53/5 56/21 57/3 57/24 58/9 58/10 59/7 59/19 59/24 59/25 60/5 60/13 60/24 61/4 61/15 62/4 64/15 69/7 70/3 70/10 71/1 71/24 74/2 74/14 74/22 75/15 75/20 75/24 76/7 76/8 78/21 80/17 82/9 82/15 83/19 84/2 85/14 89/9 89/9 89/19 89/19 91/13 98/3 98/4 98/7 99/9 99/23 102/10 104/13
**old [2]** 36/9 49/24
**OLIVIA [1]** 1/18
**once [9]** 21/19 22/4 23/21 26/1 40/12 77/10 84/22 98/4 100/8
**one [63]** 4/5 7/6 7/23 8/1 9/12 10/9 17/1 19/12 19/13 19/13 20/6 20/25 21/18 22/9 23/18 24/2 32/23 33/7 33/8 35/3 35/22 36/9 37/19 38/19 39/5 41/17 41/19 42/1 52/16 52/16 55/2 56/24 57/14 59/21 60/2 60/14 67/20 69/2 73/10 75/20 75/25 79/2 81/20 84/17 86/9 88/14 90/9 90/12 91/6 92/5 92/8 94/12 97/13 97/21 98/19 98/21 99/11 100/6 100/6 100/16 100/25 101/9 102/24
**ones [1]** 67/14
**ongoing [4]** 6/2 6/13 9/24 23/4
**only [21]** 6/25 18/14 18/19 19/6 20/8 21/2 24/5 24/20 33/5 38/13 39/25 40/11 53/18 66/12 66/15 82/21 87/21 90/12 95/18 98/19 104/1
**open [5]** 46/21 47/4 55/9 78/9 85/21
**operations [1]** 54/24
**opinion [8]** 14/17 15/23 16/10 17/13 27/13 32/1 82/20 91/25
**opinions [1]** 15/12

**opportunity [21]** 4/14 31/9 34/8 35/11 35/11 37/6 41/7 46/23 72/21 73/8 74/22 75/5 76/8 78/5 80/16 80/17 80/18 98/16 101/18 106/4 106/4 106/6
**opposed [2]** 78/13
**opposite [2]** 43/4 50/19
**opposition [1]** 87/15
**option [5]** 60/9 61/7 61/7 70/24 100/20
**options [7]** 4/15 58/24 59/17 59/25 60/1 62/15 99/9
**order [68]** 3/2 4/8 9/18 9/22 10/10 21/12 22/1 22/22 24/8 24/10 24/20 27/3 27/6 32/18 32/3 32/5 32/24 33/3 34/4 34/6 35/1 39/16 39/19 47/4 49/18 52/5 54/21 54/24 55/6 55/17 58/11 59/5 59/9 63/12 66/22 67/10 67/25 70/4 75/21 76/11 76/21 76/22 76/24 77/4 78/12 78/14 79/12 80/23 81/11 82/9 82/16 83/11 83/13 85/11 85/18 86/12 87/8 90/16 90/17 93/19 94/7 95/11 95/25 96/24 96/25 97/5 104/6
**ordered [4]** 26/23 28/3 69/16 81/20
**ordering [1]** 86/18
**orders [4]** 15/16 18/11 18/17 91/10
**ordinarily [5]** 42/7 63/11 66/18 67/8 67/14
**ordinary [5]** 36/20 36/24 37/14 38/5 51/7
**original [3]** 22/20 92/25 93/22
**OSORIO [1]** 1/22
**other [32]** 4/11 12/9 12/17 12/20 14/1 18/17 19/2 20/3 29/17 30/13 33/12 35/21 36/1 38/24 41/14 44/21 46/3 46/18 46/19 47/8 56/25 62/25 63/22 67/14 67/16 71/23 75/3 85/3 87/12 98/19 99/13 99/18
**others [1]** 93/13
**otherwise [3]** 6/11 7/1 44/6
**out [33]** 6/14 8/17 9/7 9/14 11/3 16/6 24/14 25/10 29/21 38/23 38/25 43/19 47/24 48/15 53/11 54/21 59/25 64/18 67/9 68/6 74/4 75/10 77/12 77/15 79/14 80/6 90/2 90/24 95/12 95/24 97/5 97/17 101/9
**outrageous [1]** 30/6
**outside [1]** 96/24
**over [24]** 10/1 14/9 15/3 15/22 21/21 29/7 37/4 48/16 49/3 49/5 58/21 70/11 71/4 73/17 84/10 84/17 85/24 86/10 87/23 94/8 101/8 101/8 103/3
**overcome [1]** 90/3
**overruled [1]** 100/20
**oversee [1]** 84/10
**own [3]** 43/3 55/17 89/21
**Ozturk [2]** 78/15 87/7 87/15 88/8 88/11 88/21 92/20 102/3 103/14

**P**

**p.m [4]** 94/25 94/25 98/3 104/24
**Padilla [1]** 92/2
**page [42]** 32/11 82/20 87/15 105/9
**paper [3]** 35/17 35/22 36/1
**papers [4]** 23/23 24/4 43/12 89/7
**papers from [1]** 43/12
**paragraph [5]** 32/4 32/10 32/11 33/15 34/11
**Paralegal [1]** 2/8
**parallel [3]** 7/8 9/2 20/25
**pardon [2]** 83/6
**part [13]** 7/16 8/20 12/23 18/18 25/14 49/7 51/22 96/7 99/21 101/6 103/23 104/6 104/11
**particular [17]** 9/21 13/14 15/18 18/25 28/8 35/8 42/8 42/22 47/20 64/12 66/1 73/24 73/25 76/13 86/5 86/18 87/12
**particularized [2]** 28/17 39/2
**parties [3]** 24/2 63/4 89/10
**party [3]** 47/10 50/3 63/9
**pass [1]** 12/18
**past [1]** 39/13
**Patel [1]** 2/8
**patience [1]** 95/4
**PAULA [5]** 1/10 3/5 105/4 105/15 105/16
**pause [4]** 40/22 71/25 79/4 82/17
**pending [5]** 3/11 35/15 81/18 85/8 85/25
**Pennsylvania [1]** 2/4
**people [6]** 30/17 38/14 63/14 71/10 71/12 75/24
**percent [1]** 38/13
**perhaps [3]** 19/12 34/23 79/22
**period [2]** 39/3 39/23
**permanent [1]** 50/6
**permission [1]** 31/14
**permit [1]** 100/5
**permitted [3]** 55/17 96/21 97/6
**permitting [1]** 81/2
**persecuted [1]** 64/19
**person [17]** 36/20 36/25 37/5 37/5 37/20 62/19 66/3 66/7 69/19 69/22 70/2 79/23 83/22 92/7 92/10 96/15 103/4
**personal [5]** 62/19 69/19 79/21 80/1 95/7
**personnel [1]** 56/18
**perspective [2]** 6/16 69/5
**persuade [1]** 46/10
**persuasive [4]** 90/15 90/21 96/20 101/5
**petition [4]** 87/19 87/19 88/17 91/18
**petitioner [2]** 88/9 88/23
**petitioners [1]** 87/16
**petitions [2]** 87/17 88/10
**phone [1]** 37/2
**phrase [1]** 77/6
**phrasing [1]** 93/17
**physical [1]** 92/6
**physically [2]** 69/10 91/18
**pick [1]** 69/22
**picked [1]** 89/25
**pieces [1]** 103/11
**place [15]** 6/27 27/20 48/20 51/1 63/25 66/22 73/1 74/9 75/19 82/25 86/12 92/19 93/7 93/12 101/9
**placed [1]** 76/16
**plainly [2]** 34/25 92/4
**plaintiff [3]** 2/6 22/23 26/16 32/20 32/21 33/18 47/25 56/1 72/9 82/14 91/14 96/22 102/18 103/24
**plaintiffs [42]** 1/5 1/13 3/15 3/17 3/19 19/12 21/1 22/12 22/20 23/12 23/20 24/22 25/4 25/18 27/13

**28/2 28/15 28/17 29/13 29/18 31/4 31/10 43/11 48/18 52/20 54/3 54/8 54/8 54/22 56/23 68/14 71/2 84/7 84/9 97/14 97/14 98/5 98/10 101/23 102/4 102/15 102/18**
**plaintiffs' [13]** 11/15 21/7 42/1 48/8 52/15 55/15 63/2 68/2 80/22 86/1 93/20 98/13 99/8
**plan [24]** 50/4 52/21 53/16 56/6 56/11 56/12 60/3 61/3 70/21 71/3 84/25
**plane [6]** 37/21 37/25 38/1 72/16 88/12 91/21
**planning [2]** 52/4 97/2
**plans [2]** 5/22 96/11
**plausibly [1]** 25/22
**play [4]** 8/17 9/7 13/7 31/19
**played [2]** 9/13 13/17
**playing [1]** 92/6
**pleading [1]** 19/21
**please [4]** 3/14 11/14 56/13 97/24
**pleasure [1]** 7/4
**podium [1]** 4/21
**point [30]** 5/12 6/2 7/21 7/24 14/6 17/7 18/1 21/16 23/3 29/6 33/6 33/9 33/21 37/11 47/12 49/5 60/15 61/6 65/2 66/13 67/24 68/2 74/25 82/11 83/3 83/7 89/8 89/22 90/14 92/13
**pointed [1]** 67/8
**points [3]** 33/7 48/15 80/18
**policy [11]** 42/8 42/10 42/14 42/14 42/16 44/15 44/17 44/18 45/25 50/4 50/17
**Porter [5]** 44/10 49/22 50/8 50/12 53/10
**portion [3]** 19/1 27/7 86/13
**position [36]** 10/25 11/1 12/24 15/11 15/15 16/11 17/2 18/24 19/5 27/6 27/23 28/25 29/21 30/23 34/24 35/19 37/18 37/22 38/22 41/8 41/9 43/8 44/23 47/17 47/17 47/24 69/8 72/18 73/4 81/4 83/16 85/6 89/14 91/12 94/4 101/16
**possibility [1]** 40/9
**possible [5]** 20/8 60/6 60/9 95/12 100/25
**posture [1]** 7/7 24/19 36/22
**potential [3]** 34/12 34/21 63/16
**power [24]** 5/10 5/21 6/4 6/9 6/12 6/18 6/20 6/21 6/22 7/18 7/19 7/25 10/1 16/17 16/19 16/20 16/22 17/11 19/21 19/22 19/23 22/3 49/20 77/1
**powerful [1]** 6/1
**practice [5]** 38/19 42/16 49/19 49/21 50/14
**prayer [4]** 22/25 33/12 33/13 33/15
**precise [1]** 93/17
**precisely [2]** 31/25 49/17
**predicate [1]** 90/7
**prefer [1]** 98/17
**prejudge [1]** 83/6
**preliminary [10]** 14/25 30/3 32/3 32/5 32/14 38/25 39/11 54/23 55/24 75/1
**preparation [1]** 12/15
**prepared [4]** 52/25 54/4 55/8 61/6
**present [8]** 2/6 24/3 48/13 59/8 59/12 75/5 78/24 91/18
**presently [1]** 96/11
**preserve [5]** 30/4 30/8 32/15 94/5 101/14
**preside [2]** 84/10 84/17
**President [1]** 45/4
**presiding [1]** 3/5
**press [3]** 7/14 40/15 71/25
**pressed [2]** 24/7 82/17
**presumably [2]** 75/22 83/2
**presume [1]** 36/1
**presumption [1]** 25/20
**pretrial [1]** 55/10
**pretty [1]** 15/25
**prevent [2]** 38/3 94/13
**prevented [2]** 75/22 75/23
**primary [4]** 93/16 93/17 93/21 99/4
**prior [3]** 38/20 39/15 91/9
**prison [1]** 78/23
**probably [1]** 24/13
**problem [1]** 43/5
**problematic [2]** 20/22 20/22
**procedural [7]** 7/7 24/19 33/8 36/22 91/12 98/15 99/10
**procedurally [2]** 4/15 100/15
**procedure [1]** 63/2
**proceed [10]** 24/9 46/13 47/10 47/11 51/11 71/6 74/5 74/15 74/17 102/2
**proceeding [5]** 8/15 9/2 33/23 47/19 102/7
**proceedings [20]** 9/23 18/16 19/9 26/13 34/12 35/15 43/21 60/12 63/5 68/3 69/9 74/7 74/8 81/18 84/25 85/8 86/24 95/10 104/24 105/8
**proceeds [2]** 30/4 47/19
**process [54]** 18/18 27/9 30/18 32/15 33/20 36/14 36/15 41/1 43/24 47/7 47/14 50/20 53/23 63/9 63/15 64/1 64/5 64/7 64/22 66/2 66/3 67/15 67/19 70/2 70/11 70/21 71/6 71/7 71/20 71/23 73/14 73/15 78/19 80/14 84/11 84/21 85/1 85/4 93/20 95/15 95/15 95/22 96/20 96/21
**processed [1]** 67/17
**proclaimed [1]** 26/8
**produce [16]** 5/10 5/21 5/24 6/4 6/9 6/10 6/13 6/18 7/18 7/19 7/19 12/14 19/22 19/23 19/24 69/21
**produced [5]** 6/5 7/20 7/25 68/14 68/15
**prohibits [3]** 44/12 50/15 96/24
**proper [4]** 28/22 84/7 84/19 103/18
**properly [1]** 103/17
**proposed [2]** 62/23 73/9
**proposition [3]** 33/24 35/6 35/9
**propriety [1]** 73/9
**prosecute [1]** 56/20
**prosecuted [2]** 21/2 57/15
**prosecution [2]** 8/9 34/8
**prosecutorial [1]** 6/2
**protect [2]** 35/8 57/7
**protected [2]** 34/15 57/14
**protecting [1]** 57/1
**protection [5]** 33/18 35/8 36/11 39/24 78/7 78/7 79/15

**P**

proven [1] 75/19
provide [8] 14/24 17/2 24/8
85/16 102/24
provided [3] 29/24 52/7 53/21
providing [1] 43/23
provision [1] 27/2
public [8] 20/15 40/11 57/1 57/7 57/14 57/17 82/14
83/17
publicly [1] 26/8
purpose [6] 10/16 12/22 13/1 56/25 95/11 99/19
purposes [7] 27/25 56/24 97/5
pursuant [7] 21/20 36/14 39/6 48/23 51/9 86/2
105/6
pursue [9] 9/11 57/16
pursued [1] 65/3
put [16] 13/12 21/19 27/16 28/20 37/20 37/25 42/2
56/9 66/21 71/18 72/16 82/25 85/11 88/7 90/19
95/14
putting [4] 6/22 34/14 34/16 79/11
PX [1] 1/6
PX25 [1] 3/11
PX25-951 [1] 3/11

**Q**

query [1] 26/9
question [33] 5/6 10/8 12/22 13/21 21/17 23/17
28/6 52/1 53/21 54/6 54/14 55/19 56/5 57/23 58/4
65/10 65/11 66/1 67/5 68/13 69/7 71/1 71/16 71/18
73/12 81/25 85/5 87/4 87/6 89/20 92/23 92/24 95/18
questionable [1] 50/5
questions [9] 5/4 12/17 25/7 62/24 79/6 97/15
97/20 98/5 102/18
quick [1] 97/23
quickly [1] 95/12
QUINN [2] 1/15 1/19
quite [6] 5/1 33/10 36/6 36/6 72/23 77/19
quo [14] 23/7 23/13 23/24 24/9 24/18 27/3 30/4
30/9 32/14 33/1 48/19 68/2 68/6 74/10
quota [10] 15/21 18/9 19/22 48/7 48/9 48/12 49/23
50/1 50/5 50/9
quotes [1] 91/25
quoting [1] 50/12

**R**

raise [3] 41/25 100/18 101/21
raised [2] 35/4 92/25
raises [1] 62/23
RAND [2] 1/15 3/21
rare [1] 38/13
rather [1] 36/23
re [3] 35/23 40/18 62/24
re-deport [1] 40/18
re-deportation [1] 62/24
re-initiation [1] 35/23
reach [6] 41/17 49/8 64/18 88/25 89/1 94/3
reached [4] 8/16 22/1 87/20 93/25
reacted [1] 56/19
read [12] 11/3 14/12 14/18 17/25 27/16 28/16 47/4
48/3 55/11 66/22 83/2 88/22
readily [1] 78/25
reading [9] 15/23 22/21 22/11 25/19 28/15 28/16 44/10
44/17 48/10 91/19
readout [1] 40/11
readouts [1] 35/20
real [12] 11/12 33/20 34/12 34/21 35/22 36/2 36/7
36/8 55/19 57/23 72/24 73/10
reality [1] 20/23
realize [1] 46/2
really [23] 12/2 13/24 15/20 19/9 25/18 26/25 29/5
29/14 30/12 42/2 45/7 47/6 51/22 52/11 53/9 61/24
65/20 69/18 81/4 84/17 97/1 98/20 98/21
reason [6] 13/15 21/6 23/3 26/5 39/25 95/18
reasonable [1] 39/23
reasonably [4] 22/22 42/20 50/11 82/25
reasons [4] 8/18 22/5 99/18 101/13
reassurances [1] 62/11
recall [2] 21/24 64/10
receive [1] 39/1
received [5] 22/24 23/4 26/23 27/6 37/19
receiving [1] 27/9
recess [2] 94/24 94/25
recognize [1] 81/12
record [7] 3/14 7/22 13/12 48/4 51/5 51/16 80/10
recorded [2] 40/1 43/18
recur [2] 42/20 50/11
redressability [1] 8/20
redressable [1] 21/8
Reed [1] 48/11
reference [1] 86/23
referring [2] 39/10 43/10
reflecting [1] 79/5
reflects [1] 22/25
refoulement [2] 62/23 73/11
refrain [1] 32/20
regard [6] 8/9 12/10 19/3 46/1 51/24 69/17
regarding [6] 14/12 15/12 15/16 26/22 42/6 64/1
regs [2] 66/24 67/1
regulations [3] 48/24 51/10 105/10
rejected [3] 21/22 21/23 22/4
relation [1] 93/3
release [18] 9/3 9/10 9/18 9/22 28/12 36/12 38/7
41/4 41/6 48/22 55/17 58/6 75/12 81/3 81/10 82/9
82/24 83/12
released [18] 34/19 34/20 55/7 55/7 55/9 55/20
55/24 57/17 58/6 59/10 62/20 70/18 71/21
72/15 84/5 95/8 97/16
relevant [3] 26/12 45/9 45/22
relief [36] 4/11 22/12 22/24 22/25 23/4 23/20
24/23 26/3 26/4 26/7 26/18 26/23 26/24 27/1 27/6
28/3 28/4 29/10 29/16 29/22 29/24 32/14 33/5 33/12
46/14 46/18 47/25 48/6 48/19 48/24 48/25 49/14

86/1 92/10 92/16 94/7
remainder [1] 51/23
remaining [1] 35/20
remains [2] 33/18 33/18
remarkable [1] 89/22
remarks [1] 44/25
remediated [1] 43/1
remedy [2] 30/3 30/5
remember [3] 7/5 17/18 98/20
remembering [2] 103/9 103/11
remind [1] 104/11
removal [52] 18/11 18/16 18/17 27/19 30/16 32/21
35/22 35/24 36/21 36/23 38/14 38/24 39/15 40/3
40/9 43/21 47/10 47/12 49/18 51/8 52/7 53/22 53/24
58/8 58/11 58/17 59/6 59/10 59/13 59/17 60/11 61/8
62/15 63/5 63/13 63/16 63/18 64/11 68/8 70/21
70/25 71/6 71/6 73/2 73/10 74/7 78/8 81/18 84/25
95/10 95/25 96/24
remove [17] 34/25 35/5 38/9 39/19 41/6 53/16 59/1
60/4 61/3 61/21 69/10 70/21 74/5 75/24 77/10 83/17
92/7
removed [7] 23/10 23/15 24/1 26/1 27/8 27/15
28/10 35/10 35/16 37/6 38/15 51/6 58/20 71/22 73/4
74/21 94/9
removing [5] 33/19 39/7 44/18 58/25 72/22
reoffending [1] 36/2
reopen [1] 43/20
reopened [1] 63/5
repeat [3] 51/13 78/4 78/22
Repeatedly [1] 43/4
repetition [1] 94/14
replies [1] 102/15
reply [6] 30/15 30/22 31/6 31/7 100/7 101/24
report [1] 67/13
reported [1] 105/8
REPORTER [3] 105/1 105/4 105/17
reports [1] 51/9
represent [3] 11/19 11/22 13/8
representation [5] 7/6 9/1 11/9 52/4 56/23
representations [3] 50/21 50/24 51/6
representative [1] 40/8
represented [2] 34/18 40/2
representing [1] 46/4
request [5] 22/21 22/25 26/18 27/14 55/15
requested [15] 23/5 23/20 24/2 24/24 24/24 26/1
26/3 26/24 29/19 29/22 29/25 30/5 30/24 33/5 46/22
require [3] 38/25 54/7 79/10
required [3] 10/6 23/7 74/19
requires [2] 27/7 75/19
reread [1] 88/21
resides [1] 74/11
resolve [5] 4/7 49/5 54/17 85/22 100/12
resolving [1] 85/20
resources [4] 7/1 20/9 56/9 69/13
respect [3] 8/16 16/10 17/5
respectfully [1] 83/25
respects [1] 32/22
respond [9] 4/14 9/6 27/19 34/22 60/20 94/16 99/12
100/10 100/11
response [5] 77/17 80/19 99/15 99/19 100/7
responsible [1] 67/6
restore [4] 23/9 24/19 27/20 32/14
restored [1] 27/2
restrictive [4] 25/19 44/17 82/2 83/12
result [3] 55/16 91/11 92/9
restricted [1] 10/2
resumes [1] 95/7
retain [1] 86/19
return [26] 8/10 10/2 10/6 10/14 12/23 13/7 13/17
21/12 22/23 23/2 23/9 24/4 24/8 25/7 29/13 33/6
40/12 48/19 48/20 49/4 49/24 50/22 55/17 81/21
90/18 96/21
returned [15] 23/7 23/22 24/6 24/21 24/24 26/1
30/24 32/25 43/18 43/19 48/9 50/17 50/20 50/25 55/16
74/24
returning [6] 21/2 21/2 23/12 44/13 48/6 50/15
returns [1] 36/8
Reuveni [1] 46/6
reverse [1] 55/3
reverses [1] 55/4
review [5] 18/9 18/15 31/6 50/6 94/14
revisit [5] 16/21 59/5 60/10 61/7 70/24
revisiting [1] 18/22
revocation [2] 39/16 39/18
rewound [1] 49/19
right [125]
rightly [1] 48/15
rights [8] 33/2 41/1 75/18 75/18 75/16 93/19
93/20
rise [5] 3/3 92/23 94/23 95/1 104/22
rising [1] 18/10
risk [7] 34/21 36/2 36/8 49/10 72/24 78/6 82/24
road [2] 13/23 26/17
role [2] 13/7 13/17
room [3] 46/20 53/11 67/17
Ross [1] 48/11
ROSSMAN [13] 1/14 3/17 31/12 31/13 36/19 40/21
41/11 72/11 84/22 87/10
Rossman's [1] 96/1
RPR [1] 105/16
rub [1] 35/16
rule [10] 19/15 77/2 89/2 89/24 90/6 91/12 92/4
92/14 93/3 94/20
ruled [1] 72/7
rules [2] 100/17 102/14
ruling [22] 15/18 16/1 16/3 17/3 17/4 17/10 18/25
40/24 47/23 48/3 52/3 86/14
Rumsfeld [1] 92/2
Rumsfeld v. Padilla [1] 92/2

**S**

saga [1] 74/25
sailed [1] 85/25

Salvador [32] 6/7 8/21 8/24 9/3 9/6 9/19 21/9
23/11 27/8 27/15 28/10 28/12 28/14 30/7 34/25 38/2
40/7 40/9 48/8 48/18 48/18 50/22 53/17 58/18
58/23 58/24 58/24 59/1 59/3 59/5 59/5 59/21 93/7 96/2
same [17] 5/1 5/12 6/22 8/18 21/6 22/4 22/25 35/19
51/13 53/16 56/25 71/14 72/25 74/14 99/16 99/17
99/24
SANDOVAL [3] 1/22 3/20 3/13
SANDOVAL-MOSHENBERG [1] 1/22 3/20
SASCHA [2] 1/15 3/21
satisfied [1] 42/22
satisfy [5] 42/20 44/9 44/11 50/13 99/19
saw [1] 14/1
saying [23] 6/11 7/20 9/4 12/4 15/24 30/11 43/25
45/21 58/22 58/23 60/13 61/10 61/23 61/24 66/10
77/17 80/23 81/24 86/7 90/17 91/3 91/4 91/5
scope [5] 22/1 48/18 49/3 104/5 104/11
scrap [1] 35/17
seat [1] 3/8
second [23] 4/5 8/19 18/5 21/6 22/7 23/23 27/7
29/12 38/4 43/2 48/2 49/10 52/19 55/22 59/2 60/9
60/17 73/8 78/16 81/23 86/17 94/12 103/23
Secretary [1] 85/9
Section [1] 86/3
secure [2] 9/9 9/22
secured [3] 5/13 5/15 20/9
securing [1] 9/4
Security [1] 85/10
see [12] 3/22 27/12 32/6 45/21 53/3 53/6 60/17
90/4 97/23 97/25 98/7 104/20
seeing [1] 95/18
seek [7] 21/16 26/21 39/24 41/6 59/5 83/17 92/10
seeking [5] 34/3 40/3 75/24 92/7 96/23
seeks [2] 33/14 49/13
seem [1] 102/4
seems [3] 76/6 98/20 99/2
seen [3] 34/11 51/8 69/1
semantic [1] 74/6
Senate [1] 43/14
send [2] 24/20 30/6
sense [2] 20/7 95/17
sent [3] 28/14 30/17 72/16
separate [5] 10/7 21/9 26/3 54/6 75/14
separately [1] 48/5
separating [1] 29/20
series [1] 97/8
served [1] 63/6
serves [1] 11/4
service [2] 85/18 85/20
services [2] 50/2 55/10
session [2] 3/4 95/2
set [8] 7/22 33/16 62/17 72/25 79/1 81/3 82/2
97/25
several [5] 38/21 39/13 81/5 82/19 93/12
several-day [2] 81/5 82/19
shell [1] 92/6
ship [1] 85/25
short [1] 31/18
shot [2] 100/7 101/3
shouldn't [3] 16/5 23/15 92/15
show [1] 44/9
showing [5] 42/18 44/9 44/21 50/10 82/23
shuttled [1] 88/5
side [2] 34/17 85/11
sides [1] 54/24
signal [1] 77/8
silencio [1] 90/23
similar [1] 36/21
SIMON [2] 1/22 3/20
simple [1] 57/23
simply [5] 48/16 49/18 73/4 83/19 94/7
since [8] 10/10 23/25 30/20 62/4 62/20 71/13 91/1
103/2
sit [2] 4/20 79/9
situation [3] 10/1 26/8 45/23
situations [1] 92/5
six [3] 5/20 6/4 7/18
so [163]
sole [2] 10/16 12/22
somebody [5] 63/23 66/2 67/17 70/9 95/21
someone [10] 5/23 45/15 57/24 61/20 67/18 70/6
79/21 79/25 95/24 97/12
someone's [1] 16/9
something [7] 11/20 28/9 37/7 42/24 44/8 61/11
102/16
Sometimes [1] 67/16
somewhere [2] 27/22 36/13
sorry [4] 13/4 32/8 64/16 66/14
sort [4] 29/17 46/12 53/19 102/25
sorts [1] 79/14
sought [1] 47/25
sounding [2] 93/13 93/17
sounds [10] 15/25 30/15 31/5 47/21 47/23 53/12
54/16 84/4 88/6 91/5 91/11 92/13
sovereign [6] 6/2 6/8 6/14 8/13 8/17 21/9
space [2] 76/13 76/15
specific [4] 13/21 39/23 86/12 88/18
specifically [7] 21/24 23/25 25/17 26/12 26/14
31/6 39/11 86/5 90/23
spectre [1] 35/4
speculation [1] 61/1
speculative [2] 21/11 60/16
speed [1] 71/14
spirit [1] 97/11
spirited [1] 87/8
sponte [1] 17/21
square [3] 15/25 75/20 75/25
squarely [5] 14/20 14/23 15/18 15/25 16/4
stand [4] 4/21 41/10 89/7 102/5
standard [2] 25/6 99/17
standing [2] 26/21 63/20
stands [2] 94/23 104/22
start [11] 4/17 11/11 11/12 36/20 47/13 56/1 67/14

**S**

start... [1]   68/3 69/9 75/25 98/14
started [4]   23/4 78/9 78/10 78/14
starting [2]   67/24 74/25
state [1]   99/18
stated [1]   22/5
statement [1]   34/14
statements [4]   40/15 43/11 43/17 43/18
STATES [34]   1/1 1/11 3/3 6/24 8/10 12/24 22/24
 23/1 23/3 24/2 24/3 24/5 24/25 29/14 33/6 33/17
 34/7 34/13 34/15 34/17 35/2 37/4 48/7 48/17 50/21
 56/19 57/1 58/25 76/22 86/4 90/18 96/25 105/5
 105/11
staying [1]   8/5
status [18]   23/7 23/13 23/24 24/2 24/9 24/18 27/3
 30/4 30/9 32/14 33/1 40/1 48/19 68/2 68/6 74/10
 78/20 78/21
statute [5]   66/24 67/1 86/6 86/7 86/13
statutes [2]   32/16 93/21
statutory [3]   59/13 61/14 63/14
stay [13]   15/13 15/17 16/1 16/10 17/3 17/3 17/7
 17/8 18/24 19/6 34/3 34/6 37/22
staying [1]   104/2
Stefania [1]   2/6
stenographically [1]   105/8
stenographically-reported [1]   105/8
STENOTYPED [1]   1/25
step [3]   85/4 87/8 100/13
steps [11]   10/2 10/5 10/9 10/13 21/13 22/22 63/15
 80/2 90/24 95/8 97/15
sticking [1]   47/8
still [13]   6/2 6/7 6/12 6/13 8/12 21/17 23/18 29/6
 36/16 47/24 70/23 84/15 96/12
stipulate [1]   40/25
stipulated [1]   77/4
stipulation [1]   41/17
stop [3]   19/9 44/7 45/16
stopped [2]   42/11 45/19
straight [5]   7/22 56/4 56/7 56/8 79/7
Street [1]   1/19
stringent [3]   81/3 82/24 84/5
strip [1]   15/21
strips [2]   18/8 18/14
struggling [1]   29/6
stumping [1]   58/5
style [1]   31/17
sua [1]   17/21
subject [7]   17/20 17/21 51/19 58/10 58/16 63/12
 97/17
submit [1]   76/12
subsequent [2]   8/4 46/7
substance [1]   38/2
substantial [3]   34/13 34/21 44/25
substantive [4]   24/19 33/8 33/9 96/19
successful [1]   10/7
such [9]   25/18 33/12 38/19 39/1 51/17 62/14 67/14
 83/12 93/6
sufficiency [2]   80/3 99/20
suggest [1]   54/2
suggestion [1]   46/11
suggests [1]   51/3
Suite [2]   1/20 1/23
SULLIVAN [2]   1/15 1/19
sum [1]   38/2
summarily [1]   94/9
supervised [3]   24/11 48/22 55/10
supervision [9]   24/11 25/13 27/18 27/18 39/16
 39/19 67/11 67/25 69/21
supplemental [1]   4/12
support [2]   89/13 89/15
supporting [1]   35/17
suppose [2]   28/19 81/10
supposed [2]   45/7 89/23
Supreme [19]   14/16 15/12 15/16 17/18 18/13 21/25
 23/9 27/12 32/1 32/25 35/3 35/7 36/9 37/5 37/22
 58/15 76/22 90/16 90/22
Sura [2]   2/6 3/22
Suri [17]   78/14 84/14 86/20 86/20 87/6 87/14 88/6
 88/8 88/11 88/11 88/12 88/22 90/7 91/17 92/20
 103/2 103/3
surprising [1]   77/14
survive [3]   100/8 100/13 102/1
suspected [1]   19/25
sustain [1]   44/2
sworn [3]   11/4 11/16 105/5

**T**

table [4]   8/19 8/25 49/11 80/9
taken [12]   7/10 11/1 23/14 39/14 39/15 43/8 61/17
 64/13 71/22 72/15 79/16 94/25
taking [8]   17/16 25/11 39/7 49/7 52/17 62/16 62/18
 75/9
talk [4]   4/15 46/11 47/9 53/10 54/20 90/1
talked [2]   46/6 95/13
talking [2]   10/10 43/17
tandem [2]   8/14 9/23
team [2]   14/11 97/19
tell [21]   5/21 7/17 11/25 16/25 19/9 22/17 30/14
 45/17 46/20 47/2 52/20 52/21 56/10 56/11 57/20
 60/19 69/12 82/15 96/15 98/9 100/16
telling [5]   6/3 6/17 9/15 11/6 65/9
temporary [1]   50/5
ten [2]   61/1 66/8
Tennessee [18]   5/17 5/17 10/22 11/2 11/14 11/17
 12/6 20/15 33/23 34/5 34/16 34/18 36/13 40/8 40/17
 60/21 81/5 82/6
term [1]   97/14
terminated [1]   43/22
terminating [1]   47/11
termination [3]   35/24 51/10 96/2
terms [5]   13/23 37/12 78/10 90/17 95/9
testify [1]   60/22

**U**

testimony [11]   11/4 11/17 12/10 20/6 69/16 70/5
 70/7 80/20 96/6 96/16 105/6
Text [1]   3/1
themselves [1]   9/16
there-there [1]   97/10
thereabouts [1]   62/1
thereafter [1]   103/16
therefore [5]   6/18 32/18 38/18 92/14 103/19
therein [1]   4/25
thing [3]   28/8 73/24 73/25
things [9]   8/15 43/14 46/13 46/20 55/2 59/15 66/18
 75/3 77/2
think [85]   6/1 6/13 10/3 10/23 23/8 23/19 23/19
 24/22 26/15 26/20 27/4 27/14 27/25 28/7 31/25 35/6
 35/24 36/6 36/7 36/16 37/10 39/10 41/1 41/12 43/7
 43/18 45/11 45/23 49/9 54/6 54/12 54/14 54/22
 56/15 59/20 59/22 61/2 61/13 62/12 63/8 63/25
 65/18 68/19 70/23 72/13 74/7 74/7 74/9 74/13 74/15
 76/19 76/20 76/21 76/23 77/23 78/10 78/11 78/16
 78/25 79/6 80/25 82/17 84/9 88/7 89/4 91/5 91/23
 92/8 92/12 92/17 92/18 94/22 94/9 93/18 94/1 94/2
 94/18 99/3 100/1 100/15 100/18 100/22 100/23
 101/13 102/23
thinking [2]   55/25 56/16
third [53]   14/8 21/18 35/5 35/10 35/23 36/21 38/9
 38/15 38/24 39/8 39/20 40/3 40/9 47/10 47/14 50/25
 50/25 51/9 52/8 53/22 59/1 60/4 61/3 61/22 62/2
 62/4 62/6 62/10 62/21 63/9 63/16 63/19 64/3 64/11
 64/17 64/18 67/22 67/23 68/9 69/14 70/5 70/13 70/14
 70/15 70/22 72/16 72/22 73/4 77/22 78/8 87/2 95/15
 95/25 96/13
third-country [5]   38/24 40/9 47/10 64/11 78/8
third-party [2]   47/10 63/9
though [11]   9/25 14/7 33/4 60/19 63/24 66/20 70/12
 80/24 88/7 88/9 104/5
thought [6]   9/21 18/25 20/25 55/11 88/19 91/20
threat [2]   33/19 36/7
three [5]   11/13 18/19 19/3 19/16 45/2
threshold [1]   16/16
through [16]   19/19 19/20 38/24 40/2 50/24 57/18
 57/19 60/11 63/4 67/22 68/20 68/21 71/23 82/19
 82/21 103/5
Thursday [5]   95/5 96/8 97/23 98/8 104/21
thus [2]   18/7 48/7
time [33]   6/22 8/7 8/12 9/3 11/23 14/1 17/16 17/18
 17/23 20/14 25/25 35/16 36/22 37/25 38/4 39/3
 39/23 40/6 43/2 44/16 48/14 48/15 50/18 51/1 56/3
 62/15 69/14 69/15 88/13 95/20 100/6 103/8 103/17
timeline [1]   11/21 12/7
times [2]   84/22 103/20
timing [2]   54/21 80/14
title [3]   35/25 45/15 79/22
TOC [1]   50/2
today [19]   4/6 7/9 14/1 14/1 32/17 35/19 38/3
 49/20 50/23 53/1 54/4 62/5 69/18 70/13 79/9 89/14
 94/21 98/13 102/22
together [2]   57/9 103/13
told [16]   18/23 18/23 19/20 33/22 45/2 45/20 46/4
 46/6 46/8 46/8 59/14 60/18 61/22 64/22 95/9
tomorrow [1]   36/12
tone [1]   30/21
took [7]   10/2 10/5 14/17 21/13 25/12 27/17 93/12
tortured [2]   37/20 64/19
totally [1]   80/24
tougher [1]   60/19
towards [1]   56/25
transcript [2]   1/10 105/7 105/9
TRANSCRIPTION [1]   1/25
transferred [3]   103/15 103/16 103/19
transpired [1]   13/25
tread [1]   21/18
treaties [1]   62/13
trial [3]   72/3 72/4 72/6
TRO [3]   23/23 23/23 24/4
TROs [1]   39/3
true [6]   10/23 25/3 25/11 70/3 81/24 105/7
truly [1]   46/13
Trump [3]   78/14 90/9 91/9
trust [1]   77/5
try [7]   34/8 59/4 61/23 62/25 69/14 92/7 95/11
trying [12]   8/23 17/8 45/8 61/10 73/15 80/5 83/4
 90/2 90/3 93/24 97/4 97/4
turn [11]   25/20 25/20 27/4 31/4 32/2 37/3 54/19
 56/2 71/1 72/9 102/16
turnaround [1]   97/23
turned [1]   70/11
turns [1]   93/8
two [20]   32/22 33/7 35/4 40/6 45/4 54/16 55/2
 56/15 58/24 59/21 59/25 60/1 61/7 75/14 79/3 81/9
 96/25 100/13 102/11
twofold [1]   84/17
typically [1]   33/21

**U**

U.S [11]   19/19 33/17 34/20 50/2 56/22 57/15 60/7
 70/17 70/19 71/21 76/14
U.S.C [4]   14/9 21/20 63/15 105/6
ultimately [2]   10/2 73/18
unaware [1]   64/7
uncertain [2]   8/16 34/23 54/17
unconditional [3]   44/12 50/14 53/9
uncontested [1]   24/2
under [35]   7/15 10/14 10/17 13/2 13/5 16/7 33/2
 33/2 36/2 39/11 41/18 48/12 49/7 51/20 55/7 55/11
 55/13 55/21 62/19 63/15 72/17 76/5 76/5 78/17 80/1
 82/2 86/3 87/6 93/3 93/20 93/20 94/4 99/16 100/17
 102/14
undergo [1]   64/3
underlying [1]   104/2
understand [20]   7/5 9/10 9/13 29/20 37/15 41/9
 41/11 43/6 52/5 53/2 55/8 57/8 67/20 71/7 71/7
 72/13 73/16 81/6 101/15 104/9

**Understanding/body column (3rd col)**

understanding [8]   11/23 12/1 17/1 52/6 64/22 68/16
 71/5 96/6
understood [2]   49/14 89/6
undertaking [1]   10/13
undisputed [1]   80/20
unfamiliar [2]   11/21 12/7
unfinished [1]   31/24
unfold [3]   38/10 71/20 74/10
unfolds [1]   63/9
unique [2]   45/24 76/13
UNITED [34]   1/1 1/11 3/3 6/24 8/10 12/24 22/24
 23/1 23/2 24/1 24/3 24/5 24/25 29/13 33/6 33/16
 34/7 34/13 34/14 34/17 35/2 37/4 48/7 48/17 50/20
 56/19 57/1 58/25 76/22 86/4 90/18 96/25 105/5
 105/11
unknown [6]   87/5 88/13 89/1 89/1 89/4 92/4
unlawful [9]   25/11 27/17 48/21 48/21 49/13 49/10
 50/7 90/7 97/8
unlawfully [5]   23/10 23/14 24/10 28/10 49/16
unless [6]   15/4 18/2 47/23 89/3 97/1 102/16
unnecessary [1]   40/24
unobtanium [1]   60/24
unpublished [1]   86/23
unreviewable [3]   81/15 81/17 81/24
unsealed [2]   20/17 20/17
until [13]   10/18 38/1 40/11 49/5 55/1 66/11 69/10
 71/4 72/2 77/18 77/24 77/25 82/16
unwillingness [1]   77/8
up [12]   17/16 36/11 40/11 41/10 46/20 54/23 66/9
 73/21 79/1 89/25 98/13 100/6
upon [4]   36/12 41/3 41/5 50/21
URQUHART [2]   1/15 1/19
use [3]   4/21 6/25 20/8
used [2]   32/14 39/18
using [1]   24/13
usually [3]   36/25 63/4 67/9

**V**

v. [2]   91/9 92/2
v. Trump [1]   91/9
VA [1]   1/23
valid [3]   27/19 49/17 94/1
variety [2]   30/16 45/15
various [1]   15/16
Vasquez [1]   2/6
verify [1]   77/5
Vermont [5]   103/15 103/18 103/19 103/25 104/7
versus [1]   59/21
very [20]   7/22 7/23 20/17 23/15 26/8 26/11 26/14
 30/18 32/22 40/6 41/13 50/22 54/13 62/20 71/12
 71/12 72/8 72/24 73/3 74/13 80/12 81/2 82/24 88/18
 90/9 96/20 102/8 102/19
via [1]   75/24
view [7]   20/4 25/2 41/12 54/24 75/19 82/13 98/15
views [1]   42/1
VII [1]   45/15
vindicate [1]   93/19
violated [4]   26/6 26/12 26/14 33/16
violation [2]   35/1 51/17
violations [1]   49/10
Virginia [1]   103/4
voluntarily [1]   50/3
voluntary [12]   36/2 36/4 41/18 41/25 42/6 42/7
 44/4 45/10 45/18 53/13 53/24 54/18
vs [1]   1/6

**W**

wading [2]   92/15
wait [4]   17/15 71/9 71/15 71/19
waiting [1]   71/24
waking [1]   36/11
walks [1]   38/8
wall [1]   80/5
want [30]   4/18 9/10 9/13 12/2 28/15 31/3 36/20
 47/3 52/5 53/2 54/20 56/11 57/22 57/25 61/11 69/18
 71/16 71/17 73/3 74/6 73/7 78/24 83/6 94/16 95/19
 96/18 97/12 98/14 100/11 101/8
wanted [2]   99/1 102/13
wants [1]   80/15
warrant [5]   68/11 68/22 68/25 69/4 73/6
was [181]
Washington [2]   1/20 2/5
wasn't [10]   10/17 12/17 15/13 17/6 18/25 20/11
 20/24 68/11 87/19 93/9
watchful [1]   55/14
way [28]   5/1 6/16 6/25 7/9 9/2 22/11 24/7 27/9
 28/15 28/20 30/1 30/13 40/25 41/19 41/21 42/22
 44/20 62/20 74/15 74/18 79/1 88/15 88/22 95/14
 96/5 102/4 102/5 102/7
ways [4]   36/9 45/20 49/25 50/19
we'll [16]   26/10 46/18 47/9 54/3 56/2 57/16 69/22
 84/23 90/1 97/7 97/17 97/23 97/25 98/4 98/7
 102/16
Wednesday [1]   72/5
weeds [1]   52/12
week [6]   19/24 56/15 69/23 79/17 79/18 80/6
weeks [2]   64/13 102/11
weight [1]   100/2
well [50]   6/15 8/2 8/25 11/11 11/16 12/15 13/22
 15/2 19/2 21/18 22/9 35/6 35/13 38/11 42/17 43/16
 45/8 47/2 47/21 49/4 54/13 56/3 56/6 57/10 57/10
 58/23 59/19 59/23 60/18 61/2 63/11 64/15 65/19
 68/10 69/24 73/2 74/13 76/23 79/17 80/23 81/12
 85/20 86/11 89/19 92/20 93/8 95/23 96/6 97/8 99/9
well-established [1]   35/6
went [6]   6/16 68/20 68/21 82/19 82/20
whatever [8]   4/21 12/1 27/20 31/9 80/14 80/14
 88/16 101/25
whatsoever [1]   37/21
wherewithal [1]   9/12
whether [33]   9/3 10/7 10/15 13/16 13/23 15/2 16/4
 21/12 21/24 26/25 27/4 28/18 29/6 34/24 47/19 49/3

**W**

**whether... [17]**   50/4 50/5 51/7 53/7 53/9 53/9 61/9
65/2 70/13 70/25 70/25 71/12 71/13 82/10 89/2 99/6
99/6
**while [10]**   8/14 9/1 20/14 25/17 26/5 30/4 51/21
71/19 79/14 103/7
**whoever [1]**   97/18
**whole [4]**   17/5 52/14 88/6 99/21
**whom [1]**   62/13
**widely [1]**   11/2
**Wilkinson's [1]**   14/17
**willing [6]**   41/3 41/5 41/9 41/12 41/20 62/14
**wise [1]**   43/7
**wisely [1]**   82/17
**wish [2]**   66/21 70/5
**wished [1]**   67/21
**wishes [1]**   97/19
**withdraw [4]**   5/3 7/11 7/12 21/16
**withholding [18]**   27/19 35/1 35/24 36/22 38/14
39/15 43/21 47/11 49/18 51/11 58/16 59/6 59/10
59/13 60/11 61/8 70/25 96/2
**within [10]**   39/13 75/1 76/21 76/23 77/1 85/8 87/7
90/10 90/11 97/8
**without [19]**   9/16 9/20 17/13 30/7 33/19 35/10
35/17 37/6 41/6 44/18 49/16 51/12 53/19 60/25 73/5
78/7 78/7 78/23 90/17
**witness [5]**   56/7 60/22 79/11 97/21 98/9
**witnesses [2]**   95/7 98/9
**won't [4]**   13/9 44/3 44/22 77/12
**word [4]**   35/2 35/3 44/7 91/15
**words [6]**   24/13 41/14 46/19 47/8 85/3 87/13
**work [5]**   6/14 70/1 70/6 70/8 102/13
**workable [1]**   76/7
**worked [1]**   25/14
**working [7]**   20/3 56/24 56/25 57/3 57/9 96/14 96/16
**workplace [1]**   45/16
**works [2]**   8/9 20/11
**world [7]**   35/20 43/4 43/14 45/3 45/17 45/20 79/10
**worth [1]**   21/3
**wouldn't [5]**   25/19 41/7 66/20 69/24 89/3
**wrap [1]**   46/20
**writ [2]**   90/10 90/11
**writes [1]**   34/5
**Writs [7]**   75/2 76/23 86/3 86/6 92/18 92/21 94/5
**written [1]**   95/11
**wrong [7]**   11/15 16/25 30/14 44/21 81/2 83/7 91/23
**wrongful [5]**   42/14 42/15 42/19 50/11 93/12
**wrote [1]**   32/13

**X**

**XINIS [2]**   1/10 3/5

**Y**

**yeah [16]**   13/22 16/3 25/7 31/2 31/21 37/14 40/22
57/12 58/12 58/21 63/3 65/5 91/20 92/3 101/20
104/1
**year [2]**   24/15 38/20
**years [3]**   25/14 36/23 38/19
**Yep [2]**   10/12 59/11
**yes [41]**   3/10 5/5 5/8 5/19 8/24 14/10 14/14 14/19
14/21 14/22 14/25 15/1 16/9 16/15 16/18 22/10
22/19 25/5 25/6 29/4 39/9 40/14 42/25 56/13 58/14
62/3 64/2 64/4 64/10 64/21 68/24 69/6 70/8 83/3
84/1 96/17 96/17 98/2 98/11 98/24 102/14
**yet [22]**   6/4 6/22 8/15 21/13 28/19 29/11 34/12
35/13 36/14 43/22 48/24 51/22 54/1 60/14 62/8
65/11 68/14 72/3 72/7 80/22 90/16 96/13
**York [1]**   1/16
**you'll [3]**   31/8 60/14 93/2
**yourselves [1]**   3/14