**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

---

KILMAR ARMANDO ABREGO GARCIA,
*et al.*,

                        *Plaintiffs*,

        v.

KRISTI NOEM, Secretary of the Department of
Homeland Security, *et al.*,

                        *Defendants*.

Case No. 8:25-cv-00951 (PX)

---

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

## INTRODUCTION

In March 2025, Plaintiff Abrego Garcia was removed to El Salvador. Proposed Am. Compl. (PAC) ¶¶ 96, 100 ECF No. 211-3. Mr. Abrego Garcia, his wife, and child sued Defendants seeking declaratory and injunctive relief, citing an immigration judge's 2019 grant of withholding of removal to that country. Compl. ¶¶ 4–13, ECF No. 1; *id.* at 21. They requested that Defendants return Mr. Abrego Garcia to the United States, and this Court granted an injunction requiring Defendants to "facilitate" his return "to the United States[.]" ECF No. 21 at 2. Defendants complied with the Court's injunction, and Abrego Garcia is now back in the United States. PAC ¶ 4 But Plaintiffs want more and seek leave to amend the complaint to add baseless, speculative claims and seek further relief that this Court lacks jurisdiction to grant. Because the proposed amendment would be futile, the Court should deny leave to amend.

## STATEMENT OF MATERIAL FACTS

The factual and procedural history of this case is well known, so Defendants will summarize certain key allegations.

Plaintiff Abrego Garcia is a citizen and native of El Salvador; Plaintiffs Jennifer Vasquez Sura and A.A.V. are his wife and child. PAC ¶¶ 9-11. Mr. Abrego Garcia broke United States law in 2011 by entering the country without inspection and remaining here. *Id.* ¶ 48.

In March 2019, Mr. Abrego Garcia was served a notice to appear in removal proceedings, charging him as inadmissible as an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." *Id.* ¶¶ 56 (quoting 8 U.S.C. § 1182(a)(6)(A)(i)). On April 24, 2019, Abrego Garcia appeared for his first hearing in immigration court. *Id.* ¶ 57. During a bond hearing, U.S. Immigration and Customs Enforcement ("ICE") stated that local police had verified, through a confidential informant, that Abrego Garcia was an active member of the criminal gang MS-13 and,

1

thus, a danger to the community. *Id.* ¶ 57-58. ICE provided a Gang Field Interview Sheet ("GFIS") generated by the Prince George County Police Department, providing reasons why the government believed that Abrego Garcia was a gang member. *Id.* After reviewing this evidence, an immigration judge denied bond. *See id.* ¶¶ 63, 68. Abrego Garcia then filed an I-589 application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture. *Id.* ¶ 64. Abrego Garcia's individual hearing took place on August 9, 2019, and September 27, 2019. *Id.* The immigration judge found Abrego Garcia was still removable from the United States—*i.e.*, he has no right to be in this country—but granted him withholding of removal to El Salvador, *id.* ¶ 70, because the Barrio 18 gang—a known rival of MS-13—was targeting him and threatening him "because of his family's pupusa business," ECF No. 1-1 at 2.

On March 12, 2025, Mr. Abrego Garcia was detained by ICE officers and later removed to El Salvador and detained by El Salvador at CECOT prison. PAC ¶¶ 80-82, 96 & n.1. On March 24, 2025, Plaintiffs filed a Complaint against Defendants, asserting claims for violating Mr. Abrego Garcia's withholding of removal. Compl. ¶¶ 73-77, 79-83, 85-89, 90-95, 98. Plaintiffs requested that this Court order Defendants to "take all steps reasonably available to them . . . to return Plaintiff Abrego Garcia to the United States." *Id.* ¶¶ 77, 83, 89, 95; *see also id.* ¶ 99.

Plaintiffs moved for a temporary restraining order. ECF No. 6. This Court construed that as a motion for a preliminary injunction and granted it on April 4, 2025, ordering Defendants to "facilitate . . . the return of Plaintiff Kilmar Armando Abrego Garcia to the United States[.]" ECF No. 21 at 2. On April 10, 2025, the Supreme Court upheld the District Court's order that Defendants "facilitate" Abrego Garcia's return and remanded the case to the District Court to clarify the meaning of "effectuate," making clear that this Court must give "due regard for the deference owed to the Executive Branch in the conduct of foreign affairs." *Noem v. Abrego Garcia*,

2

604 U.S. ----, 145 S. Ct. 1017 (2025). On remand, the District Court amended the preliminary injunction and ordered Defendants to take all available steps to facilitate Mr. Abrego Garcia's return as soon as possible. ECF No. 51.

Defendants complied. On June 6, 2025, Defendants' diligent efforts to facilitate Abrego Garcia's return bore fruit and they returned him to the United States. DOJ, Attorney General Bondi Announces Charges Against Abrego Garcia (June 6, 2025), https://www.justice.gov/opa/video/attorney-generalbondi-announces-charges-against-abrego-garcia; *see also United States v. Garcia*, No. 3:25-cr-115, ECF No. 3 (M.D. Tenn. May 21, 2025) (indictment). On July 2, 2025, Mr. Abrego Garcia moved for leave to amend the complaint.  ECF No. 211.

## LEGAL STANDARD

### Rule 15(a)(2)

Rule 15(a) allows a plaintiff to amend a complaint "once as a matter of course no later than: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading . . . [motion] under Rule 12(b), . . . whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may only amend its pleading with the opposing party's written consent or the court's leave." *Id*. 15(a)(2). Leave to amend should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). A claim is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Ledoux v. Subcom, LLC*, 2025 WL 1899682, at *3 (D. Md. July 9, 2025) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). An amended claim is insufficient or frivolous if it would not survive a motion to dismiss. *See id.*; *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995).

Under Rule 12(b)(1), a defendant may facially or factually challenge the sufficiency of the plaintiff's allegations to support subject-matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Courts resolve facial attacks as they would a motion to dismiss under Rule 12(b)(6). *Id*. Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim, if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I.      Granting leave to amend would be futile because the amended complaint would not survive a Rule 12(b)(1) motion.

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Constitution limits the judicial power to "Cases" and "Controversies," U.S. Const. art. III, § 2, which "require[s] that a case embody a genuine, live dispute between adverse parties," to prevent "the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). All three justiciability doctrines—standing, ripeness, and mootness—"originate in Article III's 'case' or 'controversy' language," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), such that federal court lacks jurisdiction to consider a claim that is moot or unripe or that a plaintiff lacks standing to bring. The standing question . . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness— whether the occasion for judicial intervention persists." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). The claims in Plaintiffs' Proposed Amended Complaint are moot to the extent they seek to remedy past harms, and Plaintiffs lack standing to seek the prospective relief they request.

To have standing, a plaintiff must demonstrate he has suffered a concrete and particularized injury that is fairly traceable to the defendant's conduct and "likely, as opposed to merely

speculative[ly]" redressable "by a favorable decision." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury alleged must be "actual or imminent, not conjectural or hypothetical." *Id*. (citing *Whitmore v. Arkansas*, 495 U.S. 148, 155 (1990)) (internal quotations omitted). "Abstract injury is not enough." *Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983). "[T]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged conduct." *Id*. Past harm alone is insufficient to establish standing for prospective relief. *Id.* at 107. The "ripeness inquiry . . . is inextricably linked to [the] standing inquiry" because "both doctrines require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013).

Mootness requires that the case or controversy between the litigants be live "both at the time the lawsuit is filed and . . . the time it is decided." *Ross v. Reed*, 719 F.2d 689, 693 (4th Cir. 1983). "If intervening factual . . . events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Id*. at 693-94; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence . . . ."). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "'[W]hen the claimant receives the relief he or she sought to obtain through the claim,' the case becomes moot, because 'the court no longer has effective relief to offer.'" *Martinez-Benitez v. U.S. Immigr. & Customs Enf't*, 2019 WL 5295694, at *2 (S.D.W. Va. Sept. 27, 2019), *adopted by* 2019 WL 5295585 (S.D.W. Va. Oct. 18, 2019).

**A.      Claims one through four and six are moot.**

Plaintiffs' first four proposed claims are a claim that Defendants violated 8 U.S.C. § 1231(b)(3)(A), a Fifth Amendment procedural-due-process claim, a Fifth Amendment substantive-due-process claim, and an Administrative Procedure Act claim. PAC at 27-31. Claim six contends that his arrest was unlawful. PAC at 33-34. Each of the first four claims includes a request that this Court "immediately order Defendants to take all steps reasonably available to them, . . . to place Plaintiff Abrego Garcia back in the position he would have been had he not been improperly sent to El Salvador," as well as a request that the Court order Defendants "not [to] remove Abrego Garcia to El Salvador or to a third country that will or may send him to El Salvador without prior notice and opportunity to be heard." PAC ¶¶ 150, 156, 162, 168. Claim six also requests a remedy for past harm and asks that Abrego Garia be "release[d] from custody and restore[d]" to supervised release "on the same conditions as before his March 2025 arrest." *Id*. ¶ 185.

The Court lacks jurisdiction to grant Plaintiffs' relief as to past harms—i.e. issue an order that Defendants take all steps to place Abrego Garcia back in the position he would have been in had he not been removed to El Salvador—because those claims for relief are moot. Defendants have already returned Abrego Garcia to the United States, placing him "back in the position he would have been" prior to his removal—an alien subject to an order of removal with an order restricting his removal to El Salvador. PAC ¶¶ 150, 156, 162, 168. There is no basis for monetary damages against the United States.[1] These claims do not amount to a "live" controversy because

---

[1] Absent an express waiver, sovereign immunity shields the federal government and its agencies from monetary damages. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). "[S]overeign immunity is presumed and cannot be overcome without an express and unequivocal statutory waiver [] and all ambiguities must be resolved in favor of the sovereign." *O'Brien v. Moore*, 395 F.3d 499, 503 (4th Cir. 2005). "The Department

"the court no longer has effective relief to offer." *See Martinez-Benitez v. U.S. Immigr. & Customs Enf't*, 2019 WL 5295694, at *2; *see also Powell v. McCormack*, 395 U.S. at 496. They are therefore moot.

**B.    Plaintiffs lack standing to bring claims one through four (to the extent they seek prospective relief) and claims seven through eight.**

To have standing to seek prospective injunctive relief, a plaintiff must either suffer a continuing injury or be under a real and immediate threat of being injured in the future. *See Lyons*, 461 U.S. at 107 n.8. Counts one through four request that the Court order Defendants "not [to] remove Abrego Garcia to El Salvador or to a third country that will or may send him to El Salvador without prior notice and opportunity to be heard." PAC ¶¶ 150, 156, 162, 168. Abrego Garcia is in criminal custody and no action has yet been taken to remove him to another country. *See United States v. Abrego Garcia*, No. 3:25-cr-115 (M.D. Tenn) (ECF 91). Moreover, Defendants have promised that they will not remove him to El Salvador without first terminating his withholding of removal and "[i]f removing him to a third country, Defendants will follow the procedures for third-country removal set forth in the defendants-appellants' stay application, filed and granted in *United States v. Department of Homeland Security v. D.V.D.*, No. 24A1153 28-32 (May 27, 2025); *see also id.* at 54a-55a." Stipulation, ECF No. 221. He is therefore not suffering a continuing injury or under an immediate threat of being injured in the future.

And counts seven and eight request "immediate release" from unlawful "post-removal detention" and "an order" requiring Defendants to provide Abrego Garcia and his counsel with written notice of the specific country they intend to remove him to and a reasonable period of time

---

[of Homeland Security] thus enjoys as a federal agency a presumption of immunity from the present lawsuit." *Robinson v. U.S. Dept. of Educ.*, 917 F.3d 801, 802 (4th Cir. 2019); *see also F.D.I.C. v. Meyer*, 510 U.S. at 475.

to file an application for relief. PAC at 34-37. These future injuries are too speculative to support standing—they depend upon decisions that have not yet been made and actions that have not yet or cannot yet be taken—in some cases decisions by third parties such as the Tennessee federal court and foreign governments.

In claim seven (unlawful detention beyond removal period), Plaintiffs allege that if ICE re-detains him, his detention will eventually become unreasonably prolonged. PAC ¶¶ 187-194. They request "an order from this Court immediately releasing Abrego Garcia from Defendants' custody and placing him on supervision pursuant to 8 U.S.C. § 1231(a)(3)." PAC ¶ 195. But because he is not in DHS custody, this claim is premature, and any injury alleged is speculative. Even if DHS re-detains him, it is speculative to suggest that the length of his immigration detention will exceed the time reasonably necessary to effectuate his removal following any appropriate immigration proceedings.

Similarly, in claim eight (third-country removal), Plaintiffs allege that Abrego Garcia could face persecution or torture if removed to various countries other than El Salvador (third countries), and that until Defendants identify which country, he cannot prepare or file an application for protection from removal to such a country. PAC ¶¶ 197-202. They request "an order from this Court that Defendants may not remove Abrego Garcia from the continental United States without first providing him and his counsel with written notice of the specific country they intend to remove him to and a reasonable period of time . . . to file an application for relief . . ." thereafter. PAC ¶¶ 197-202. But Plaintiffs' belief that the Defendants will not follow appropriate procedures for removing him to a third country is simply speculative—Defendants have noted that they will provide "Mr. Abrego Garcia with all the process which he is due." Hr'g Tr. 43:22-24, ECF No. 217. Moreover, Plaintiffs overlook that Defendants have already promised that "[i]f removing him

to a third country, Defendants will follow the procedures for third-country removal set forth in the defendants-appellants' stay application, filed and granted in *United States v. Department of Homeland Security v. D.V.D.*, No. 24A1153 28-32 (May 27, 2025); *see also id.* at 54a-55a." Stipulation, ECF No. 221.  Thus, Plaintiffs fail to allege a continuing injury or a real and immediate threat of being injured in the future with respect to claims seven and eight, especially in light of Defendants' binding, irrevocable assurances on this Court's docket that he will receive the exact process he seeks.

### C.    Claims one through four and six through eight are statutorily barred.

This Court lacks jurisdiction to consider the claims in Plaintiffs' Proposed Amended Complaint because they are statutorily barred—they either relate to actions concerning the execution of Abrego Garcia's removal order or the commencement of future removal proceedings PAC ¶¶ 145-203. Because the Court lacks jurisdiction over these claims, any amendment to assert them would be futile. *See Ledoux v. Subcom*, *LLC*, 2025 WL 1899682, at *3; *see also Perkins*, 55 F.3d at 916.

### 1.    Claims one through four and eight are barred by 8 U.S.C. 1252(g)

Claims one, two, three, four, and eight are barred by 8 U.S.C. § 1252(g) because they involve claims arising from the Executive's decision to execute a final removal order.  Congress spoke clearly that "no court shall have jurisdiction to hear any . . . claim . . . arising from the decision . . . to commence proceedings, adjudicate cases, or execute removal orders against any alien" "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). Accordingly, this jurisdiction-stripping provision bar review of claims one, two, three, and four., *See Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471, 482 (1999).

Despite a clear Congressional mandate, proposed amended claims one (violation of the restriction of removal statute), two (Procedural Due Process), three (Substantive Due Process), and four (general APA claim) ask this Court to order Defendants "not to remove Plaintiff Abrego Garcia to El Salvador or to a third country that will or may send him to El Salvador." *See* PAC ¶¶ 150, 156, 162, 168. In other words, these proposed claims arise from concerns about executing Abrego Garcia's removal order, Thus, they are barred by 8 U.S.C. § 1252(g). *See Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Hamama v. Adducci*, 912 F.3d 869, 874-77 (6th Cir. 2018) (vacating district court's injunction staying removal, concluding that §1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim").

This Court has ruled that § 1252(g) did not bar claims one through four because the agency had already executed the order of removal to El Salvador, *see* ECF 61 at 15. *See also Abrego Garcia v. Noem,* No. 25-1345, 2025 WL 1021113 at *2 (4th Cir. 2025) (Thacker, J., concurring)

("1252(g) strips the federal courts of jurisdiction only to review the Attorney General's *lawful* discretion to commence removal proceedings.") (emphasis in original).

But that is no longer the posture of this case. Abrego Garcia has been returned to the United States and is subject to an unexecuted order of removal. The Proposed Amended Complaint acknowledges this by requesting that this Court to order Defendants "not to remove Plaintiff Abrego Garcia to El Salvador or to a third country that will or may send him to El Salvador." *See* PAC ¶ 150. The claims in Plaintiffs' Proposed Amended Complaint seek only to: (1) prevent the execution of his removal order by removal to El Salvador (Claim One); (2) prevent the execution his removal order without additional due process (Claim Two); (3) prevent the execution of his removal order "without appropriate substantive due process:" (though lacking any explanation as to why an alien with a valid order of removal cannot be removed under the Constitution) (Claim Three); (4) prevent the execution of his removal order under the Administrative Procedure Act (Claim Four) and (5) prevent the execution of his removal order to a third country (Claim Eight). Each claim attempts to prevent the execution of his removal order, which courts have ruled falls within the ambit of 1252(g). *See Camarena,* 988 F.3d at 1274; *Tazu,* 975 F.3d at 297; *Hamama,* 912 F.3d at 874-77; *Silva*, 866 F.3d at 941; *Foroglou v. Reno,* 241 F.3d 111 (1st Cir. 2001). Accordingly, even if the Court had the authority to remedy the improper execution of the removal order after the fact, as a pre-emptive matter, the Court lacks jurisdiction to stop the execution of the removal order.

**2.    Claims one through four and eight are also barred by 8 U.S.C. 1252(b)(9).**

Independent of § 1252(g), § 1252(b)(9) shuts the door on district-court review of proposed claims one through four and eight. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory

11

> provisions, arising from any action taken or proceeding brought to
> remove an alien from the United States under this subchapter shall
> be available only in judicial review of a final order under this
> section. Except as otherwise provided in this section, no court shall
> have jurisdiction, by habeas corpus under section 2241 of title 28 or
> any other habeas corpus provision, by section 1361 or 1651 of such
> title, or by any other provision of law (statutory or nonstatutory), to
> review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  If Plaintiffs seek to make a fear-based claim related to any speculative third country removal, Abrego Garcia must bring that claim in asserting a fear of removal, which, if found credible, would result in review by an immigration court and, if necessary, the appropriate Court of Appeals—not a District Court. *See* PAC ¶¶ 145-68, 196-03. By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(a)(5), (b)(2). Importantly, 1252(a)(5) explicitly precludes review via "section 2241 of title 28, or any other habeas corpus provision." 8 U.S.C. § 1252(a)(5). Section 1252(b)(9) then eliminates this Court's jurisdiction over Plaintiffs' claims by channeling "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" to the courts of appeals. 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483.

Here, most of Plaintiffs amended claims seek to prevent ICE from taking action to remove him from the United States or seek to challenge "proceedings" relating to his removal. *See* PAC ¶¶ 150, 156, 162, 168, 200-03. Claim one seeks to preclude his removal in contravention to a restriction of removal. *See* PAC ¶¶ 145-150.  Per 1252(a)(5) and (b)(9), that claim belongs only in the court of appeals. Claim two similarly seeks to preclude his removal without formally

terminating his order granting restriction of removal.  *See* PAC ¶¶ 151-156.  As an "action taken" to remove him, it falls within the ambit of 1252(b)(9) and the question belongs only to the court of appeals.  Claim three alleges a "substantive due process violation."  Of course, there is no doubt of the constitutional authority of the government to execute an order of removal, *see Carlson v. Landon, 3*42 U.S. 5*2*4, 534 (1952) ("So long, however, as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders.").  Plaintiffs' direct effort to thwart the execution (an "action taken") to remove an alien is expressly channeled by 1252(b)(9) to the court of appeals. Plaintiffs' claim four fares no better, as it rests on the now-remedied, prior removal to El Salvador. While it lays out a naked allegation that he is entitled to reunification with his wife and child, the validity of that seeks to preclude his removal to El Salvador without further process—the very same flaw as claim two's due process allegation. That is a matter challenging an action taken to remove him, and it belongs solely to the court of appeals. Finally, claim eight seeks to preclude his removal to a third country. As an "action taken" to remove him, and that process—even the "proceedings" associated with it—again falls within the exclusive purview of the court of appeals to hear that question. Therefore, Plaintiffs' claims are barred under Sections 1252(a)(5) and (b)(9) because they "aris[e] from . . . proceeding[s] brought to remove an alien from the United States" and further challenge "any action taken . . . to remove an alien from the United States."  8 U.S.C. § 1252(b)(9).

### E.    Claim five is not within this Court's habeas jurisdiction.

Plaintiffs also attempt to invoke habeas corpus as a basis for the Court's jurisdiction. Congress has expressly conferred on federal courts the authority to issue "[w]rits of habeas corpus . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). *See I.M. v. United States Customs*

*& Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023). The invocation of habeas has several prerequisites. First and foremost, the individual must be in custody. *Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963). Further, "[h]abeas claims . . . must be brought only in the district of detention. *See Rumsfield v. Padilla*, 542 U.S. 426, 435 (2004); *Trump v. J.G.G.,* 604 U.S. ___, 145 S.Ct. 1003, 1005-06 (2025). Importantly, the writ is confined in its scope, going to the question of the validity of confinement. *J.G.G.*, 145 S.Ct. at 1005. Plaintiffs' efforts to invoke habeas fail at meeting one or more of these threshold requirements.

### 1. Abrego Garcia was not in ICE custody when the action was filed.

As a simple matter, Abrego Garcia was not in federal custody at the time the instant action began. As plaintiffs admit, Abrego Garcia was subject to a final order of removal with withholding of removal to El Salvador.  PAC ¶ 70. He was then promptly released from custody. PAC ¶ 71. He thereafter remained at liberty until his arrest on March 12, 2025. PAC ¶ 80. By March 15, 2025, he was removed from the United States and into the custody of the Government of El Salvador. PAC ¶¶ 101, 103-04.  However, the original complaint in this case was not filed until March 24, 2025—more than a week after Abrego Garcia was no longer in the custody of ICE. ECF 1. Of course, the original complaint did attempt to invoke habeas corpus, *see* ECF 1 at 20 (Fifth Cause of Action), as the proposed First Amended Complaint does. *See* ECF 211-3 PAC ¶¶ 169-173 (Fifth Cause of Action). Indeed, the First Amended Complaint attempts to raise several claims that sound in habeas: claim six challenges his detention as a violation of his conditions of release, PAC ¶¶ 174-85; and claim seven challenge is post-order detention as a violation of 8 U.S.C. § 1231(a)(6), PAC ¶¶ 186-95. Fairly construed, his remaining claims (one through four and eight), would seem to likewise seek to invoke habeas jurisdiction as the basis for jurisdiction. In any event, for any such invocation of habeas, there is no question that the requisite custody was and is lacking.

Of course, Abrego Garcia is now in the custody of the United States, but that is pursuant to a pending criminal prosecution. That does not change the lack of the requisite custody by ICE. As mentioned before, habeas exists to challenge an individual's current custody. *See Jones v. Cuningham*, 371 U.S. at 241 ("when petitioner was placed on parole, his cause against the Superintendent of the Virginia State Penitentiary became moot because the superintendent's custody had come to an end . . . ."). When ICE released him to the custody of El Salvador, ICE's custody came to an end, as any alleged unlawful executive custody was at an end. *See DHS v. Thuraissigiam,* 591 U.S. 103, 119 (2020) ("While respondent does not claim an entitlement to release, the Government is happy to release him—provided the release occurs in the cabin of a plane bound for Sri Lanka. That would be the equivalent of the habeas relief Justice Story ordered in a case while riding circuit.  He issued a write requiring the release of a foreign sailor who jumped ship in Boston, but he provided for the failure to be released into custody of the master of his ship.") Unless and until ICE takes him into custody, he lacks the custody that is necessarily to challenge the various aspects of his removal order that he seeks to challenge.

### 2.    Abrego's custody has been by custodians outside of the Court's jurisdiction since this case was filed.

The Court lacks habeas jurisdiction for a second reason. The Supreme Court recently made clear that for claims that "fall within the 'core' of the writ of habeas corpus," "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025) (emphasis added) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). When the original complaint was filed, Abrego was in the custody of El Salvador—clearly outside the Court's geographic jurisdiction. Currently, Abrego is confined in the Middle District of Tennessee—again, outside the confines of the Court's geographical jurisdiction. Thus, he does not have recourse to habeas in the District of Maryland.

Of course, Plaintiffs have previously sought refuge in cases like *Ozturk v. Trump*, --- F. Supp. 3d ----, 2025 WL 1145250 (D. Vt. Apr. 18, 2025); and *Suri v. Trump*, 2025 WL 1310745 (E.D. Va. May 6, 2025). However, neither case provides the safe harbor sought by Plaintiffs. Importantly, in *Ozturk*, the alien was arrested by ICE in Massachusetts, then transported to Vermont and, ultimately, Louisiana. *See Ozturk,* 2025 WL 1145250 at *2-*3, *6. However, her attorney, not knowing of his client's whereabouts, filed the petition in Massachusetts. *Id.* at *3. The court, recognizing the geographical limitation on habeas, transferred the case to Vermont, where petition was at the time of the improvident filing in Massachusetts. *Id.* at *6. *Suri* presented a variation on that theme, where ICE arrested the alien in Virginia and was subsequently flown in ICE custody to Louisiana, then by bus to Texas. *Suri*, 2025 WL 1310745 at *2-3. The habeas petition was filed while Suri was in transit, making the custodian's identity unknown. *Id.* at *3. The court ruled that under the "unknown custodian" and district of confinement exceptions, to the general rules, it could retain habeas jurisdiction over the petition. *Id. at *8-11.*

The reliance on *Ozturk* and *Suri* is clearly misplaced. In both those cases, the alien in question was in the immediate custody of ICE. By contrast, at the start of this case, ICE had already released Abrego from its custody, which terminated any unlawful Executive detention. *See Thuraissigiam,* 591 U.S. at 119. Abrego was in the clear custody and control of El Salvador. Further, even considering his current custody status, both his custodian and the appropriate geographic location are known – both putting the proper place for habeas in the Middle District of Tennessee. Thus, this Court is not the proper geographic location for a habeas petition challenging his current location.

### 3. Abrego's habeas petition improperly tries to raise claims beyond the scope of the writ.

The Court should dismiss Plaintiffs' habeas claims for a separate reason: He seeks review of matters beyond the scope of habeas corpus. As discussed, habeas is intended to test the validity of a prisoner's current detention. Here, Abrego is detained by the U.S. Marshals in the Middle District of Tennessee pursuant to an on-going prosecution. Clearly, the claims he attempts to present in this habeas petition have nothing to do with his current custody and provide no basis for release from the current custodian; rather, they relate solely to ICE's efforts to remove him from the United States. Thus, habeas is unavailable at this juncture.

Further, even assuming he returns to ICE custody, and even assuming the geographic limitations on habeas could be ignored, the several issues he seeks to present are outside of the scope of the core of habeas. Importantly, the Supreme Court has recently—and repeatedly—instructed that certain protections from removal are not part of a final order of removal and do not affect the validity of final order of removal. In *DHS v. Thuraissigiam,* the Supreme Court explored the contours of habeas corpus as available in the removal context. 591 U.S. 103, 111-12 (2020). Importantly, the Court ruled that, given the restrictions on access to habeas corpus imposed by the INA. In examining the limit of habeas corpus available in the context of expedited removal—especially the "credible fear" context, the Court concluded that forms of relief like asylum, withholding, and CAT protection fall outside the limited scope of habeas corpus. *Id.* at 116-118. As the Court explained, "[i]t is clear . . . from the common-law history of the writ . . . that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Id.* at 117 (quoting *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973). It further explained that the alien litigants, in challenging their credible fear processes, "did not ask to be released. Instead, he sought entirely

different relief: vacatur of his removal order and an order directing [the Department] to provide him with a new . . . opportunity to apply for asylum and other relief from removal." *Id*. at 117-118. However, "that relief falls outside the scope of the common law writ." *Id.* at 118. The Cour relied on *Munaf v. Geren,* 553 U.S. 674 (2008). More precisely, the Court observed that the alien petitioner, like the individuals in *Munaf,* where U.S. Citizens in Iraq "filed habeas petitions in an effort to block their transfer to Iraqi authorities for criminal prosecution"—an effort the Court rejected because "'[h]abeas is at its core a remedy for unlawful executive detention' and that what these individuals wanted was not 'simple release' but an order requiring them to be brought to this country. *Thuraissigiam*, 591 U.S. at 119 (quoting *Munaf*, 553 U.S. at 692-63).

Here, Plaintiffs' multiple claims go well beyond the scope of the writ.  For example, in Claim Eight, Abrego challenges the procedures associated with his removal to a third country and the attend screening procedures for asylum, withholding/restriction of removal, and CAT protection. PAC ¶¶ 196-203.  Those procedures are essentially comparable to the procedures being tested in *Thuraissigiam*.  Accordingly, the request is beyond the scope of the writ. Abrego may seek his release from detention, but any effort to change the attendant procedures he is afforded as a part of the execution of his removal order are beyond the scope of the writ.

## II.    Granting leave to amend would be futile as to claims six and seven because those claims would not survive a Rule 12(b)(6) motion.

All of Plaintiffs claims fail for the reasons set forth in section I, however, claims six and seven fail for the additional reasons below.

### a.    Claim six fails because Plaintiff Abrego Garcia's arrest was lawful.

In claim six of Plaintiffs' Proposed Amended Complaint, Plaintiffs allege that "[w]hen ICE arrested Mr. Abrego Garcia on March 12, 2025, they [sic] . . . violated," 8 C.F.R. § 287.8(c)(2)(ii), which Plaintiffs contend "requires" immigration officers to obtain a "warrant of arrest . . . except

when the designated officer has reason to believe the person is likely to escape before a warrant can be obtained," and  8 C.F.R. § 241.4(*l*)(1), which "requires" that upon revocation of supervised release, an "alien . . . be notified of the reasons for revocation of his or her release or parole." PAC ¶¶ 175, 177, 180. But Defendants were not required to obtain a warrant to arrest Abrego Garcia or notify him of the reasons for revoking his supervised release.

Defendants were not required to issue a warrant of arrest pursuant to 8 C.F.R. § 287.8(c)(2)(ii) federal regulations instruct immigration officials to issue "warrants of removal" prior to removing aliens subject to final orders of removal, rather than warrants of arrest. 8 C.F.R. § 241.2(a).

Furthermore, 8 C.F.R. § 241.4(*l*)(2) specifically provides that "the Executive Associate Commissioner shall have authority . . . to revoke release and return to Service custody an alien previously approved for release" when "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien." 8 C.F.R. § 241.4(l)(2)(iii). Section 241(*l*)(2) does not require immigration officials to provide any notice to the alien prior to revoking supervised release, unlike § 241.4(*l*)(1), which specifically concerns revocations for violations of conditions of release and states that the alien "will be notified of the reasons for revocation of his or her release or parole." Section 241.4(*l*)(3) sets forth the procedure for the "normal review process" if an "alien" subject to revocation for violating his or her conditions of release, "is not released from custody following the informal interview provided for in paragraph (*l*)(1)." Subsection (*l*)(3), therefore,  applies only to revocations for violations of conditions of release and not to revocations set forth in subsection (*l*)(2). 8 C.F.R. § 241.4(*l*)(1)-(3). Because Abrego Garcia's supervised release was terminated to enforce a removal order, he was not entitled to

notice.  Defendants lawfully arrested and revoked Abrego Garcia's supervised release. This Court should therefore dismiss this claim.

### b.  Claim seven fails because the clock for § 1231 detention has not begun to run.

In Claim Seven, Plaintiffs allege that Plaintiff Abrego Garcia's "detention violates both the statutory limitations of 8 U.S.C. § 1231(a)(6) and his constitutional due process rights." PAC ¶ 194. But that is wrong.

First, Plaintiff Abrego Garcia is in criminal custody, so any claim challenging ICE custody is unripe for the reasons explained above. Even if he were in ICE custody, however, "after entry of a final removal order . . . , the Government 'may' continue to detain an alien." *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation."). Detention following a final order of removal is presumptively reasonable for six months after which the government must show a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, Abrego Garcia was arrested on March 28, 2019. PAC ¶ 51. He was granted withholding of removal to El Salvador on October 10, 2019, and he was "promptly released from custody on supervised release." *Id*. ¶¶ 70-71. He has therefore not been subject to detention at all under 8 U.S.C. § 1231, and *Zadvydas*'s six-month clock has not even begun to run. Accordingly, Plaintiffs' Claim Seven should be dismissed.

## CONCLUSION

For the reasons stated above, none of Plaintiffs' proposed amended claims would survive a motion to dismiss; this Court should deny Plaintiffs' motion for leave to amend the Complaint as futile.

Dated: July 16, 2025                        Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

/s/ *Drew C. Ensign*
DREW C. ENSIGN
Deputy Assistant Attorney General
Civil Division, Office of Immigration Litigation
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
Email: drew.c.ensign@usdoj.gov

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Civil Division, Torts Branch

BRIDGET K. O'HICKEY
Counsel to the Assistant Attorney General

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2025, I caused to be filed the foregoing document via CM/ECF, which caused a copy to be served on all parties.

/s/ Drew Ensign
Drew C. Ensign
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 514-2000
drew.c.ensign@usdoj.gov