**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

Kilmar Armando Abrego Garcia, *et al.*,

               Plaintiffs,

v.

Kristi Noem, *et al.*,

               Defendants.

Case No.: 8:25-CV-00951-PX

**Plaintiffs' Reply In Support Of**
**Motion For Leave To File Amended And Supplemental Complaint**

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

I.  The Government's jurisdictional arguments do not show leave to amend is futile. ........... 1

    A.  The claims are not moot. .................................................................................... 1

    B.  Plaintiffs have standing to seek prospective relief. ............................................ 2

    C.  Section 1252(g) does not deprive this Court of jurisdiction. ............................... 4

    D.  Section 1252(b)(9) does not deprive this Court of jurisdiction. .......................... 7

    E.  This Court has habeas jurisdiction. .................................................................... 8

II.  The Government's merits arguments do not show leave to amend is futile. .................... 11

    A.  Plaintiffs plausibly allege that the arrest of Abrego Garcia was unlawful. ........... 11

    B.  Plaintiffs plausibly allege that imminent ICE detention will be unlawful. ........... 13

Conclusion ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abrego Garcia v. Noem*,
2025 WL 1021113 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J.,
concurring) ................................................................................................4, 6, 8

*Abu Ali v. Ashcroft*,
350 F. Supp. 2d 28 (D.D.C. 2004) ...............................................................9

*Arce v. United States*,
899 F.3d 796 (9th Cir. 2018) ........................................................................6

*Bowrin v. INS*,
194 F.3d 483 (4th Cir. 1999) ........................................................................6

*Braden v. 30th Jud. Cir. Ct. of Ky.*,
410 U.S. 484 (1973) ..................................................................................9, 10

*Bryant v. Woodall*,
1 F.4th 280 (4th Cir. 2021) ..........................................................................2

*Cordon-Salguero v. Noem*,
No. 25-cv-1626 (D. Md. filed May 20, 2025) .............................................14

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ..........................................................................................7

*Dodson v. Lutheran Vill. at Millers Grant, Inc.*,
2024 WL 3597201 (D. Md. July 30, 2024) .................................................15

*Enriquez-Perdomo v. Newman*,
54 F.4th 855 (6th Cir. 2022) .........................................................................6

*Guzman Chavez v. Hott*,
940 F.3d 867 (4th Cir. 2019), *rev'd on other grounds sub nom. Johnson v.
Guzman Chavez*, 594 U.S. 523 (2021) ......................................................3, 7

*J.G.G. v. Trump*,
No. 25-cv-766 (D.D.C. filed March 15, 2025) ............................................9

*Jennings v Rodriguez*,
583 U.S. 281 (2018) (plurality opinion) ......................................................7

*Johnson v. Helicopter & Airplane Servs. Corp.*,
389 F. Supp. 509 (D. Md. 1974) .................................................................11

*Johnson v. Oroweat Foods Co.*,
   785 F.2d 503 (4th Cir. 1986) .................................................................11

*Kenny v. Wilson*,
   885 F.3d 280 (4th Cir. 2018) ................................................................2, 4

*Kong v. United States*,
   62 F.4th 608 (1st Cir. 2023).....................................................................6

*Kossov v. INS*,
   132 F.3d 405 (7th Cir. 1998) ....................................................................7

*Lennear v. Wilson*,
   937 F.3d 257 (4th Cir. 2019) ..................................................................10

*Madu v. Attorney General*,
   470 F.3d 1362 (11th Cir. 2006) ................................................................6

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ..........................................................11

*Reno v. Am-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999).................................................................................5

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004)...............................................................................10

*Stacy v. Jennmar Corp. of Virginia, Inc.*,
   342 F.R.D. 215 (W.D. Va. 2022).............................................................11

*Suri v. Trump*,
   2025 WL 1806692 (4th Cir. July 1, 2025)................................................9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014).............................................................................2, 4

*Tadros v. Noem*,
   2025 WL 1678501 (D.N.J. June 13, 2025)..............................................14

*Zadvydas v. Davis*,
   533 U.S. 678 (2001).....................................................................13, 14, 15

## Federal Statutes And Regulations

8 C.F.R. §241.2(a)....................................................................................12

8 C.F.R. §241.4(*l*) ...............................................................................11, 12

8 C.F.R. §241.4(*l*)(1)................................................................................12

8 C.F.R. §241.4(*l*)(2) .................................................................................................12

8 C.F.R. §287.8(c)(2)(ii) .......................................................................................11, 12

8 C.F.R. §1208.24(f) .....................................................................................................3

8 U.S.C. §1231 ............................................................................................................14

8 U.S.C. §1231(a) ........................................................................................................13

8 U.S.C. §1252 ...............................................................................................................1

8 U.S.C. §1252(b)(9) .....................................................................................................7

8 U.S.C. §1252(g) ...............................................................................................4, 5, 6, 7

INA §241(b)(3) ...............................................................................................................6

## Federal Rules Of Civil Procedure

Fed. R. Civ. P. 12(b)(6) ...............................................................................................11

Fed. R. Civ. P. 12(h)(1) ................................................................................................9

## Other Authorities

DHS, *March 30, 2025 Memorandum* ...........................................................................3

Frances Vinall, *U.S. Sends 5 Men To Eswatini In Third-Country Deportation, DHS Says*, Wash. Post (July 16, 2025) ....................................................................4

**Introduction**

The core of the Government's opposition to Plaintiffs' motion for leave to amend (ECF No. 236) is yet another attempt to relitigate jurisdictional issues this Court has already decided. By asserting that Plaintiffs' claims are moot, that 8 U.S.C. §1252 strips this Court of jurisdiction, and that habeas jurisdiction is unavailable, the Government repackages arguments this Court already rejected when it granted Plaintiffs' motion for a preliminary injunction, *see* ECF Nos. 21 & 31, and when it denied the Government's motions to dismiss, *see* July 7 Hearing Tr. at 19:14–22:6, 48:2–51:20; ECF No. 218. The Court should deny these oft-rejected arguments once more.

The Government's other arguments—that Plaintiffs lack standing for prospective relief, that Abrego Garcia's arrest was lawful, and that one of Plaintiffs' claims is unripe—fare no better. As this Court ruled last week when it granted Plaintiffs' motion to return Abrego Garcia to Maryland, prospective relief is ripe and necessary to "protect[] Abrego Garcia from re-deportation without due process." ECF No. 238 at 17. The Court also found (as it has before) that the Government "arrested and detained Abrego Garcia without any lawful basis." *Id.* at 2.

Simply put, the Government has not shown that granting leave to file an amended and supplemental complaint would be futile. The Court should therefore grant Plaintiffs' motion.

**Argument**

**I.    The Government's jurisdictional arguments do not show leave to amend is futile.**

The Government advances five jurisdictional arguments—many of which this Court has previously rejected—that it contends render any amendment futile. That is incorrect.

**A.    The claims are not moot.**

The Government's lead argument (at 6–7) is that the first, second, third, fourth, and sixth claims are moot because the Government "already returned Abrego Garcia to the United States." This Court already rejected that argument when it denied the Government's motion to dismiss the

Complaint as moot. *See* July 7 Hearing Tr. at 48:2–51:20; ECF No. 218. The Court explained: "As Mr. Abrego rightly points out, the controversy is not over simply because defendants have returned him to the United States." July 7 Hearing Tr. at 48:15–17. Plaintiffs seek restoration of the *status quo ante*, which requires not only that the Government bring Abrego Garcia back from El Salvador to the United States, but also that it return Abrego Garcia to Maryland, "the last place Mr. Abrego had been before his unlawful arrest and unlawful detention," and that it restore the status he had "when he was on supervised release with [ICE] lawfully pursuant to the INA and its implementing regulations." *Id.* at 48:18–24; *see also* ECF No. 207 (Plaintiffs' arguments as to why the case is not moot). That this dispute is live and can be remedied by this Court was confirmed last week by the Court's decision ordering the Government "to not take Abrego Garcia into ICE custody in Tennessee and to restore him to his ICE Order of Supervision out of the Baltimore Field Office." ECF No. 238 at 17.

**B.     Plaintiffs have standing to seek prospective relief.**

The Government's second argument (at 7–9) is that Plaintiffs lack standing to pursue prospective relief for their first, second, third, fourth, seventh, and eighth claims. A plaintiff has standing to sue the Government if the plaintiff faces a "substantial risk" or "credible threat" of enforcement by the Government. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014) (collecting cases); *Bryant v. Woodall*, 1 F.4th 280, 285 (4th Cir. 2021); *Kenny v. Wilson*, 885 F.3d 280, 287–88 (4th Cir. 2018).

Here, Abrego Garcia faces a substantial risk and credible threat that the Government will remove him unlawfully. The Department of Justice has represented in the Tennessee criminal proceedings that once Abrego Garcia is released from U.S. Marshals custody, he will (absent order from this Court) be taken "into the custody of Immigration and Customs Enforcement (ICE),"

which will commence deportation proceedings, and that those "immigration proceedings exist as real, potential, substantial, and irreparable harm to the United States." ECF No. 203-3 at 6–7.

Despite the "real" and "substantial" risk that the Government will remove Abrego Garcia, the Government argues in its opposition brief in this case (at 7) that there is no risk of harm because the Government has "promised," via a unilateral stipulation (*see* ECF No. 221), that any future removal will follow certain procedures that it insists eliminate any risk of harm.

This Court rejected that argument in last week's ruling. As the Court explained, while it is "meaningful" that the Government promised in its stipulation that it will not attempt to remove Abrego Garcia to El Salvador without first reopening his immigration proceedings and successfully terminating his withholding of removal in accordance with 8 C.F.R. §1208.24(f), the procedures the Government promises to follow when removing Abrego Garcia to a third country are much "less meaningful." ECF No. 238 at 7–8. The Government's "own directives" make it "likely that Abrego Garcia will be removed to at least certain third countries without 'further procedures,'" which would violate due process. *Id.* at 15 (quoting DHS March 30, 2025 Memorandum; *see also Guzman Chavez v. Hott*, 940 F.3d 867, 879 (4th Cir. 2019) ("[I]f a noncitizen who has been granted withholding as to one country faces removal to an alternative country, then she must be given notice and an opportunity to request withholding of removal to that particular country."), *rev'd on other grounds sub nom. Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

The threat Abrego Garcia faces from third-country removal includes that the third country will re-deport Abrego Garcia to El Salvador in an end-run around his withholding order. *See* ECF No. 238 at 16. The Government has "taken no concrete steps to ensure that any prospective third country would not summarily return Abrego Garcia to El Salvador." *Id.* The Court has already

found the threat of re-deportation to El Salvador to be credible, noting that "at least one other alien" was "wrongly deported" recently and then "immediately refouled to the country from which he had a valid withholding order." *Id.* at 16–17 & n.15. That was not a one-off incident. Re-deportation is the policy of at least one country serving as a destination for third-country removals. *See, e.g.*, Ex. A, Frances Vinall, *U.S. Sends 5 Men To Eswatini In Third-Country Deportation, DHS Says*, Wash. Post (July 16, 2025), https://www.washingtonpost.com/immigration/2025/07/16/eswatini-third-country-deportations-trump/ (reporting that Eswatini, which recently received third-country deportees, stated "that the deportees would eventually be repatriated to their respective countries").

Simply put, as this Court found, the Government's promised procedures raise "a substantial risk that Abrego Garcia could once again be removed without due process and in a manner that would evade this Court's jurisdiction and the attendant protection against further constitutional violation." ECF No. 238 at 8. That finding of a "substantial risk" of harm establishes standing to pursue prospective relief. *See Susan B. Anthony List*, 573 U.S. at 158 ("An allegation of future injury may suffice if . . . there is a 'substantial risk that the harm will occur.'") (citation omitted); *Kenny*, 885 F.3d at 288 ("[T]here is a credible threat of future enforcement so long as the threat is not 'imaginary or wholly speculative,' 'chimerical,' or 'wholly conjectural.'") (citations omitted).

### C.    Section 1252(g) does not deprive this Court of jurisdiction.

The Government's third argument (at 9–11) is that 8 U.S.C. §1252(g) strips this Court of jurisdiction over the first, second, third, fourth, and eighth claims. Both the Fourth Circuit and this Court previously rejected this argument as a matter of law. *See Abrego Garcia v. Noem*, 2025 WL 1021113, at *3 (4th Cir. Apr. 7, 2025) (Thacker, J., with King, J., concurring) ("§1252(g) does not strip us of jurisdiction here."); ECF No. 31 at 15 ("Section 1252(g) does not deprive the Court of jurisdiction over the claims."). This Court *again* rejected the Government's §1252(g) argument

when it denied the Government's first motion to dismiss. *See* July 7 Hearing Tr. at 21:18–22:6 ("The defendants, again, argue that pursuant to 8 U.S.C. 1252(g), this Court is deprived of jurisdiction over the case. As we've discussed, counsel, the argument has been made to me and rejected. It was argued to the Fourth Circuit and rejected. . . . [T]he fact that the [Supreme] Court exercised its jurisdiction and reached the merits of the scope of my order certainly is, at a minimum, an implicit acknowledgement, but I would say explicit, of this Court's power to hear the case. So the argument is, once again, rejected for the same reasons already stated.").[1]

Lest there be any doubt, the Court again confirmed in its ruling last week that it can redress Plaintiffs' claims "without impairing Defendants' authority to 'commence proceedings, adjudicate cases, or execute removal orders.'" ECF No. 238 at 13 (quoting *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)) (in turn quoting §1252(g)). The Court should therefore reject the Government's renewed §1252(g) argument just as it has several times before.

If the Court considers the Government's argument afresh, it should reject it once more. The jurisdictional bar in §1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Am-Arab Anti-Discrimination Comm.*, 525 U.S. at 482 (quoting §1252(g)). The Government argues (at 9) that §1252(g) applies because the third type of discrete action—the decision to "execute removal orders"—is at issue here. That is wrong for at least two reasons.

***First***, the Government has "not produced *any* order of removal as to Abrego Garcia, executed or otherwise." ECF No. 31 at 14. The October 2019 immigration order denied Abrego

---

[1] The Government had argued to the Supreme Court that §1252(g) deprived this Court of jurisdiction. *See* Application To Vacate The Injunction at 17–20 (Apr. 7, 2025), https://www.supremecourt.gov/DocketPDF/24/24A949/354843/20250407103341248_Kristi%20Noem%20application.pdf.

Garcia's asylum application as time-barred and granted Abrego Garcia withholding of removal to El Salvador pursuant to INA §241(b)(3); it did not include a final order of removal. ECF No. 211-7 at 14. Indeed, the ICE detainer the Government relied on at the evidentiary hearing on July 11 conspicuously left *unchecked* the box stating that probable cause exists to remove Abrego Garcia based on "[a] final order of removal against the individual." July 11, 2025 Hr'g, Defs.' Ex. 3. Instead, the detainer states that "probable cause exists to remove Abrego Garcia 'based on . . . the pendency of *ongoing* removal proceedings,'" even though "*there are no ongoing removal proceedings*." ECF No. 238 at 10 (quoting July 11, 2025 Hr'g, Defs.' Ex. 3). Because the Government has not produced a valid final order of removal, the jurisdictional bar of §1252(g) is inapplicable. *See Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring); ECF No. 31 at 14; *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 865 (6th Cir. 2022) (§1252(g) is inapplicable "when a removal order is not subject to execution").

**Second**, even if there were a valid removal order, this Court would still have jurisdiction. Section 1252(g) "stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her *discretion* to initiate or prosecute these specific stages in the deportation process." *Bowrin v. INS*, 194 F.3d 483, 488 (4th Cir. 1999) (emphasis added); ECF No. 31 at 13 (collecting cases). The provision does not foreclose challenges raising a *non-discretionary* bar to removal: "Where the Attorney General totally lacks the discretion to effectuate a removal order, §1252(g) is simply not implicated." *Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018). Courts have therefore concluded that §1252(g) does not erase jurisdiction over challenges to the "lawfulness" of the Government's non-discretionary removal-related actions, *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023), including challenges that arise under "statutes," *Bowrin*, 194 F.3d at 488, and challenges that are "constitutional" in nature, *Madu v.*

6

*Attorney General*, 470 F.3d 1362, 1368 (11th Cir. 2006). Here, the order barring Abrego Garcia's removal to El Salvador is mandatory, not discretionary, so §1252(g) does not apply. Nor could the Government remove Abrego Garcia to a third country without providing the notice and following the procedures mandated by law. *See Guzman Chavez*, 940 F.3d at 879; *Kossov v. INS*, 132 F.3d 405, 409 (7th Cir. 1998).

>    **D.    Section 1252(b)(9) does not deprive this Court of jurisdiction.**

The Government's fourth argument (at 11–13) is that 8 U.S.C. §1252(b)(9) strips this Court of jurisdiction over the first, second, third, fourth, and eighth claims. This argument is contravened by the Supreme Court's teaching that "§1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (alterations in original) (quoting *Jennings v Rodriguez*, 583 U.S. 281, 294–95 (2018) (plurality opinion)). Plaintiffs' amended and supplemental complaint does not seek review of any of those things. There are no "ongoing removal proceedings," and the Government has "not yet made *any* decisions as to what [it] will do next," ECF No. 238 at 14, so there are no removal proceedings or removal decisions that Plaintiffs could challenge. Rather, Plaintiffs seek other relief, such as restoration of the *status quo ante*, as well as the notice required by law to ensure that the Government does not remove Abrego Garcia without any necessary proceedings. *See* ECF No. 211-3 ¶¶150, 156, 162, 168, 203 & page 38 (requested relief).

Last week, this Court properly ordered both a restoration of the *status quo ante* and certain notice, *see* ECF No. 238 at 12–17, notwithstanding the Government's argument that §1252(b)(9) deprived this Court of jurisdiction to do so, *see* ECF No. 208 at 4–5. This Court should therefore reject the Government's §1252(b)(9) argument once again.

**E.      This Court has habeas jurisdiction.**

The Government's fifth and final jurisdictional challenge (at 13–18) is that this Court lacks jurisdiction over Plaintiffs' habeas claim. The Government makes three distinct arguments: (1) Abrego Garcia was in the custody of El Salvador, not the U.S. Government, when this case was filed; (2) Abrego Garcia was and is detained outside the District of Maryland; and (3) Abrego Garcia's habeas claim seeks review of matters beyond the scope of habeas corpus. Opp. 13-18. None has merit.

***First***, this Court already rejected the lack-of-custody argument when it denied the Government's first motion to dismiss. July 7 Hearing Tr. at 19:24–20:1 ("[T]he lack of custody argument, as suspected from its inception, appears meritless."). When this case was filed, Abrego Garcia was incarcerated in El Salvador at the behest of the U.S. Government. As pleaded in the proposed Amended Complaint, during that time he was in the U.S. Government's "constructive custody pursuant to arrangements between Defendants and the El Salvadorian government." ECF No. 211-3 ¶2. This Court made findings to that effect, *see* ECF No. 31 at 11-12, which the Fourth Circuit affirmed: "[A]ll publicly available information about the Government's agreement with El Salvador indicates that the Government has outsourced part of the United States' prison system. . . . Considering these facts, and with no evidence to the contrary provided by the Government, the district court properly determined that 'just as in any other contract facility, Defendants can and do maintain the power to secure and transport their detainees, Abrego Garcia included.'" *Abrego Garcia*, 2025 WL 1021113, at *3 (Thacker, J., with King, J., concurring) (cleaned up; quoting ECF No. 31 at 12).

The fact that the U.S. Government maintained control over Abrego Garcia while he was in El Salvador was reinforced by the fact that it was able to return him to the United States at the time

of its choosing (namely, to face criminal charges it investigated and brought only after it had removed him), without any formal extradition or immigration parole paperwork. *See* ECF No. 211-3 ¶135. Official statements by the Government of El Salvador to the United Nations have further confirmed that "the jurisdiction and legal responsibility" for the detainees sent to El Salvador by the United States "lie exclusively with the competent foreign authorities [*i.e.*, the United States], by virtue of international agreements." ECF No. 160-1 in *J.G.G. v. Trump*, No. 25-cv-766 (D.D.C. July 7, 2025), at PDF pages 5, 9, 13, 17.

These plausible allegations (and judicial findings) of functional control are all that is needed to reject the Government's argument at this stage. *See Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 45–51 (D.D.C. 2004) (denying motion to dismiss federal habeas petition where individual plausibly alleged he was detained in Saudi Arabia at the behest of U.S. officials). When a habeas "petitioner and his immediate custodian are 'outside the territory of any district court,'" the "petitioner may name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Id.* at 44 (quoting *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 498 (1973)). The Government has never denied that this Court has personal jurisdiction over Defendants—indeed, the Government waived any personal jurisdiction defense by not moving to dismiss the original complaint for lack of personal jurisdiction *See* Fed. R. Civ. P. 12(h)(1). It follows that this Court had habeas jurisdiction when Plaintiffs filed this case. *See also Suri v. Trump*, 2025 WL 1806692, at *4–6 (4th Cir. July 1, 2025) (affirming habeas jurisdiction in Virginia under unknown-custodian rule despite petitioner's detention in Louisiana).

**Second**, this Court continues to have habeas jurisdiction even though the Government is now detaining Abrego Garcia in Tennessee. Once a habeas claim is properly filed in one judicial

district, that district does not lose jurisdiction when the Government moves the detainee to a new jurisdiction. *See Lennear v. Wilson*, 937 F.3d 257, 263 n.1 (4th Cir. 2019) ("When the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court [where the petitioner filed a petition] retains jurisdiction.") (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); brackets in *Lennear*).

**Third**, the Government's suggestion (at 17) that habeas can only "test the validity of a prisoner's current detention" is wrong. The Supreme Court has squarely held that a habeas petitioner may challenge "confinement that would be imposed in the future," not just "his current confinement." *Braden*, 410 U.S. at 489. The Amended Complaint alleges that "Plaintiff Abrego Garcia will imminently be held in federal ICE custody, without legal basis and in violation of statutes and regulations." ECF No. 211-3 ¶171. Habeas relief is available under *Braden* to challenge imminent confinement that would unlawfully be imposed in the future. *See also* ECF No. 238 at 14 (finding that ICE's detainer to take Abrego Garcia into custody "appears infirm on its face").

The Government also suggests (at 17–18) that Plaintiffs are seeking "asylum," "withholding," "CAT protection," "vacatur of his order of removal," or similar relief in this case. That is incorrect. As the Amended Complaint makes clear, the forms of relief Plaintiffs seek for their habeas claim are "a writ of habeas corpus ad testificandum, ordering that Plaintiff Abrego Garcia be brought before this Court for a habeas corpus hearing," and an order to "Defendants to show cause why continued detention is lawfully permissible; and if they cannot meet their burden of so showing, issue a writ of habeas corpus and order Plaintiff Abrego Garcia's immediate release from custody." ECF No. 211-3 ¶¶172–73; *see also id.* at page 38 ¶c.

Finally, the Government's suggestion (at 18) that "Claim Eight" is infirm because it does not sound in habeas is a *non sequitur*. Plaintiffs' eighth claim is *not* a habeas claim. *See* ECF No. 211-3 ¶¶196–203. Plaintiffs' habeas claim is the fifth claim, *see id.* ¶¶169–73. "In this context, habeas claims need not be brought to the exclusion of all other claims." ECF No. 31 at 8 n.10 (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185-86 (D.D.C. 2015)).

## II.    The Government's merits arguments do not show leave to amend is futile.

Beyond its jurisdictional arguments, the Government argues that two of Plaintiffs claims— the sixth claim for unlawful arrest and the seventh claim for unlawful detention—are futile because they fail on the merits. Not so.

### A.    Plaintiffs plausibly allege that the arrest of Abrego Garcia was unlawful.

The Government argues (at 18–20) that the sixth cause of action—unlawful arrest in violation of 8 C.F.R. §§241.4(*l*) and 287.8(c)(2)(ii)—does not state a plausible claim for relief under Rule 12(b)(6) because "Abrego Garcia's arrest was lawful." This is precisely the sort of merits-based argument that is "not appropriate when considering a motion for leave." *Stacy v. Jennmar Corp. of Virginia, Inc.*, 342 F.R.D. 215, 220 (W.D. Va. 2022) (citing, *inter alia*, *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510-11 (4th Cir. 1986)); *accord Johnson v. Helicopter & Airplane Servs. Corp.*, 389 F. Supp. 509, 514 (D. Md. 1974) ("[T]he merits of the claim are irrelevant in determining whether a motion to amend should be granted.").

Plaintiffs plausibly allege that the arrest was unlawful. *See* ECF No. 211-3 ¶¶80–100, 174– 185. The Court has already found that the arrest was unlawful, concluding that "there were no legal grounds whatsoever for his arrest." ECF No. 31 at 6; *see also* ECF No. 238 at 2 ("On March 12, 2025, . . . [ICE] agents arrested and detained Abrego Garcia without any lawful basis."). And the Government itself has "acknowledge[d]" that it "had no legal authority to arrest him." ECF No. 31 at 2; *see also* ECF No. 33 at 21:14–22 (The Court: "There is no warrant for his arrest by an

order of removal . . . . So what is the actual document that gave these officers the authority to start

this process?" Mr. Reuveni: "That is not in the record, and the government has not put that into

the record. And that's the best I can do.").

The Government insists (at 19) that it needed only a "warrant of removal" under 8 C.F.R.

§241.2(a), not a "warrant to arrest." But the law is clear that a "warrant of arrest" must "be obtained

except when the designated immigration officer has reason to believe that the person is likely to

escape before a warrant can be obtained." 8 C.F.R. §287.8(c)(2)(ii).[2] The Government cannot shirk

its obligation to obtain a valid arrest warrant by referencing a separate removal warrant. And, even

if it could, the Government has not submitted any evidence that it executed Abrego Garcia's arrest

pursuant to *either* a valid warrant of arrest (an I-200) *or* a valid warrant of removal (an I-205).

The Government's arguments (at 19–20) that it complied with 8 C.F.R. §241.4(*l*) are

equally meritless. Subsection (*l*)(2) provides that only the "Executive Associate Commissioner"

or a "district director" may "revoke release," and that a district director may do so only "when, in

the district director's opinion, revocation is in the public interest and circumstances do not

reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R.

§241.4(*l*)(2). The Government does not deny that neither the Executive Associate Commissioner

nor the district director made such a determination. *See* ECF No. 211-3 ¶179.

The Government also contests the applicability of subsection (*l*)(1). That provision

provides certain notice and review requirements when supervised release is revoked. *See* 8 C.F.R.

§241.4(*l*)(1); ECF No. 211-3 ¶¶177–78. The Government argues (at 19) that, as a legal matter,

---

[2] The Government does not argue—nor could it—that Abrego Garcia was "likely to escape before
a warrant can be obtained." Prior to his unlawful arrest, Abrego resided openly in Maryland for
years under an ICE Order of Supervision, during which time he complied with all ICE
requirements to check in periodically. *See* ECF No. 238 at 4–5; ECF No. 31 at 4.

subsection (*l*)(1) applies only to "revocations for violations of conditions of release." It then asserts (at 19), as a matter of fact without any corroborating evidence, that "Abrego Garcia's supervised release was terminated to enforce a removal order." Neither the pleadings nor the record support that factual assertion. Indeed, as noted above, the current ICE detainer states that the Government has probable cause to arrest Abrego Garcia *not* because of a final order of removal but rather because of "ongoing removal proceedings." ECF No. 238 at 10 (quoting July 11, 2025 Hr'g, Defs.' Ex. 3). Resolution of this factual issue is not appropriate at this stage of the case, when the question is simply whether it would be futile as a matter of law to grant leave to amend to allege an unlawful arrest. The Government has not shown that it would be.

**B.     Plaintiffs plausibly allege that imminent ICE detention will be unlawful.**

The Government's final argument (at 20) is that Plaintiffs' seventh cause of action—for unlawful detention in violation of 8 U.S.C. §1231(a), as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001)—fails on the merits for two reasons.

*First*, the Government argues (at 20) that the claim "is unripe" because Abrego Garcia is not yet in ICE custody. But, as explained above with respect to why Plaintiffs have standing to pursue prospective relief, it is substantially likely that (absent order from this Court) ICE will take Abrego Garcia into custody imminently. *See* Section I.B above; ECF No. 203-3 at 6–7; ECF No. 211-3 ¶171. It was precisely because ICE custody is imminent that this Court entered its order last week directing the Government "to not take Abrego Garcia into ICE custody in Tennessee and to restore him to his ICE Order of Supervision out of the Baltimore Field Office." ECF No. 238 at 17. That ruling still allows the Government to order Abrego Garcia "to appear at the Baltimore Field Office for commencement of immigration proceedings," which can include "lawful arrest" and "detention." *Id.* at 14. Plaintiffs' claims about ICE detention are therefore ripe.

**Second**, the Government argues (at 20) that, under *Zadvydas*, detention following a final order of removal is "presumptively reasonable for six months," and the "six-month clock" has not begun because Abrego was on supervised release after being granted withholding of removal in 2019. Several courts, however, have held that the six-month period discussed in *Zadvydas* begins with the final order of removal. For example, the court in *Tadros v. Noem* held that the "final order of removal triggered the six-month detention period under *Zadvydas*, and thus lapsed long ago," regardless of Tadros's release from detention and placement on supervised release shortly after his final order of removal. 2025 WL 1678501, at *3 (D.N.J. June 13, 2025). This Court held the same in *Cordon-Salguero v. Noem*, reasoning that "under the clear language of [8 U.S.C. §1231] . . . Petitioner's 90-day removal period began to run on [the date of his final removal order]," despite subsequently being released from detention and placed on supervised release. ECF No. 21 in *Cordon-Salguero*, No. 25-cv-1626 (D. Md. June 23, 2025), at 32:18–22. The Court went on conclude in *Cordon-Salguero* that "[t]he removal period . . . has expired" and that Cordon-Salguero thus stated a viable claim for relief. *Id.* at 38:1-20. Under these cases, to the extent the Government maintains that Abrego Garcia can be removed pursuant to a final order of removal in 2019, the sixth-month period in which detention would have been presumptively reasonable expired many years ago. Plaintiffs have therefore stated a claim that is viable, not futile.

In any event, *Zadvydas* recognized that six months was merely a "*presumptively* reasonable period." 533 U.S. at 701 (emphasis added). The Government's argument that each of those 180 days counts only if spent behind bars presupposes that removal efforts can take place only while a noncitizen is detained. That is not the case. The Government has had more than five years to work on removal, with Abrego Garcia on close supervision throughout. Whether the five-year post-order-of-removal period was "reasonably necessary" for the Government to effectuate Abrego

14

Garcia's removal, *Zadvydas*, 533 U.S. at 689, is, at minimum, "a fact-bound question, . . . better suited for resolution on summary judgment as opposed to a motion to dismiss," *Dodson v. Lutheran Vill. at Millers Grant, Inc.*, 2024 WL 3597201, at *5 (D. Md. July 30, 2024), much less a motion for leave to amend.

## Conclusion

The Court should grant the motion for leave to amend and supplement the Complaint.

Dated: July 30, 2025

/s/ Jonathan G. Cooper

**MURRAY OSORIO PLLC**
Simon Y. Sandoval-Moshenberg
Rina Gandhi
4103 Chain Bridge Road, Suite 300
Fairfax, Virginia 22030
(703) 352-2399
ssandoval@murrayosorio.com

**QUINN EMANUEL URQUHART &
 SULLIVAN, LLP**
Stephen E. Frank
111 Huntington Ave, Suite 520
Boston, MA 02199
(617) 712-7100
stephenfrank@quinnemanuel.com

**QUINN EMANUEL URQUHART &
 SULLIVAN, LLP**
Jonathan G. Cooper (D. Md. Bar No. 21345)
Olivia Horton*
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000
jonathancooper@quinnemanuel.com
oliviahorton@quinnemanuel.com
*admitted in Texas; not admitted in D.C.
Supervised by attorney admitted in D.C.*

Andrew J. Rossman
Sascha N. Rand
K. McKenzie Anderson
Samuel P. Nitze
Courtney C. Whang
Roey Goldstein
Sam Heavenrich
Victoria Martin
Morgan L. Anastasio
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
andrewrossman@quinnemanuel.com
sascharand@quinnemanuel.com
mckenzieanderson@quinnemanuel.com
samuelnitze@quinnemanuel.com
courtneywhang@quinnemanuel.com
roeygoldstein@quinnemanuel.com
samheavenrich@quinnemanuel.com
victoriamartin@quinnemanuel.com
morgananastasio@quinnemanuel.com

*Counsel for Plaintiffs*

16